UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
GEIS CONSTRUCTION SOUTH, LLC,

                Plaintiff,                                 **REPORT AND**
                                                   **RECOMMENDATION**
                                                   20-CV-03834 (DRH) (JMW)
        -against-

JAIME DELAHUNT,

                Defendant.
-------------------------------------------------------------X
**WICKS,** Magistrate Judge:

       Plaintiff Geis Construction South, LLC commenced this action against Defendant Jaime Delahunt alleging that Defendant fraudulently induced Plaintiff to enter into two subcontracts with Defendant's company, MDC Home Improvements, Inc. ("MDC"), in connection with Plaintiff's work on the Wonder Lofts Project in Hoboken, New Jersey. To date, Defendant has not answered or otherwise responded to Plaintiff's complaint, nor has it had counsel file a notice of appearance on its behalf. Before the Court, on referral from the Honorable Denise R. Hurley, is Plaintiff's motion for a default judgment against Defendant pursuant to Federal Rule of Civil Procedure 55. (DE 15.) For the reasons that follow, the undersigned respectfully recommends that Plaintiff's motion be granted in part and denied in part.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

       Plaintiff is a construction company based in Ohio. (DE 1 at 1.) Defendant is an individual who resides in Nassau County, New York. (*Id.*) Defendant is the president of MDC, a company that acts as a concrete subcontractor. (*Id.* at 2.) Plaintiff sought to work on the Wonder Lofts Project (the "Project") in Hoboken, New Jersey, and required a concrete subcontractor. (*Id.*)

       In its subcontractor search, Plaintiff was introduced to Defendant and MDC and ultimately selected MDC for the job. (*Id.* at 2.) Under Plaintiff's prime contract with the owner of the Project, a payment and performance bond was not required of a subcontractor "in the event that a surety reasonably approved by the [o]wner's lender provides a surety letter demonstrating the bond capacity of [the subcontractor]." (*Id.*)

Plaintiff accordingly shared this requirement with Defendant and requested a bond availability letter. (*Id.* at 3.) In response, Defendant submitted a letter to Plaintiff that purported to be from Sean P. Flaherty (the "Flaherty letter") from Edwards & Company Insurance which stated that "MDC HI Inc. has a Surety Bond Program with $10,000.00 aggregate limit." (*Id.*) Plaintiff relied on the Flaherty letter and awarded a number of subcontracts to Defendant and MDC. (*Id.* at 4.)

Plaintiff alleges that, after being awarded the subcontracts, Defendant consistently demanded that Plaintiff advance payments to MDC for work not yet performed. (*Id.* at 5.) During the course of working on the Project, Defendant executed at least eight lien waivers under oath, representing that he was properly paying all sub-sub-contractors for the Project. (*Id.* at 5–6.) Plaintiff avers that it relied on these lien waivers in continuing to make payments to Defendant for work on the Project. (*Id.* at 6.)

Plaintiff alleges that it, at some point, came to learn that Defendant and MDC were in fact not paying all subcontractors, and "that Defendant kept promising to make payment by asked the subcontractors to remain patient and quiet." (*Id.*) Plaintiff avers that Defendant took the money paid by Plaintiff to MDC and used that money for personal, rather than Project-related, purposes. (*Id.* at 7.) In an attempt to work with Defendant, Plaintiff remitted past-due payments to MDC's subcontractors and assisted MDC with project management. (*Id.*) Ultimately, Plaintiff was forced to terminate the subcontracts with Defendant and MDC, allegedly costing Plaintiff more than $2,500,000.00. (*Id.* at 8.) Moreover, Plaintiff alleges that it contacted Edwards & Company to inquiry about the status of MDC. (*Id.* at 9.) The CEO of Edwards & Company responded that it does not offer a surety program, did not have a surety bond with MDC, and that Flaherty was not an officer of Edwards & Company and could not have written the Flaherty letter. (*Id.*) Plaintiff alleges that, based on its discussion with Edwards & Company, Defendant forged the Flaherty letter to induce Plaintiff into awarding him and MDC the subcontracts. (*Id.*)

Plaintiff commenced this lawsuit on August 20, 2020, asserting two claims of fraudulent inducement.[1] (DE 1.) Defendants, however, failed to file an answer or otherwise respond to Plaintiff's complaint, prompting Plaintiff to request a certificate of default from the Clerk's office. (DE 13.) The Clerk's office entered the default on April 14, 2021 (DE 8), and Plaintiff filed the present motion on April 26, 2021 (DE 15). The Honorable Denise R. Hurley then referred the motion to the Honorable A. Kathleen Tomlinson for a Report and Recommendation on April 27, 2021. (Electronic Order dated Apr. 27, 2021.) This matter—along with the present motion—was then reassigned to the undersigned on November 18, 2021. (Electronic Order dated Nov. 18, 2021.)

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 55 sets forth a two-step process for obtaining a default judgment against non-answering defendants. Under Rule 55(a), "[w]hen a party against whom a judgment for [default] is sought has failed to plead or otherwise defend, and that failure is show by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). The decision to grant a motion for default is left to the discretion of the district court. *United States v. Dougherty*, CV 15-554 (ADS) (AKT), 2016 WL 5112063, at *3 (E.D.N.Y. Aug. 1, 2016). After the clerk's certificate of default is issued, the moving party may apply for entry of a default judgment in accordance with Rule 55(b). *Trs. of Empire State Carpenters Annuity, Apprenticeship, Lab. Mgmt. Co-op., Pension & Welfare Funds v. Flooring Experts*, *Inc.*, No. CV 12-6317 (ADS) (AKT), 2013 WL 4042357, at *2 (E.D.N.Y. Aug. 8, 2013). Once the motion is granted, the defendant is assumed to have admitted all well-pleaded allegations in the complaint and allegations relating to defendant's liability are taken as true. *Id.* at *4.

---

[1] Plaintiff also filed a demand for arbitration against MDC with the American Arbitration Association on May 15, 2020. (*See* DE 12.) The arbitration panel found that MDC breached of the subcontracts and awarded Plaintiff a total $10,021,831.10 in damages, attorney's fees, and arbitration fees. (*Id.*)

A plaintiff is not, however, entitled to the windfall of default judgment as a matter of right; rather, the plaintiff must demonstrate that the allegations made in the complaint sufficiently "establish the defendant's liability on each asserted cause of action." *Id.* at *2. Even if the plaintiff moves against a non-answering party, the fact that no answer has been filed is insufficient in and of itself to establish defendant's liability, as "a default does not establish conclusory allegations nor does is excuse any defects in the plaintiff's pleading." *Id.* (citing *Said v. SBS Elecs., Inc.*, No. CV 08–3067, 2010 WL 1265186, at *2 (E.D.N.Y. Feb. 24, 2010)). In evaluating whether to grant a default judgment, courts consider (1) whether the defendant's default is willful; (2) whether the defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer if the motion for default judgment is denied. *Id.*

It is beyond cavil that default judgments are disfavored and considered extreme. "A clear preference exists for cases to be adjudicated on the merits," and any doubts must be resolved in favor of the defaulting party. *U.S. Fid. & Guar. Co. v. Petroleo Brasileiro S.A.*, 220 F.R.D. 404, 406 (S.D.N.Y. 2004) (quoting *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 174 (2d Cir. 2001); *Meehan v. Snow,* 652 F.2d 274, 277 (2d Cir. 1981) ("Defaults are not favored, particularly when the case presents issues of fact, and doubts are to be resolved in favor of a trial on the merits[.]").

### III. DISCUSSION

#### A. Choice of Law

As a threshold matter, the Court must determine what law applies to Plaintiff's claims. Plaintiff—rather than argue what state's law applies to this controversy—contends that he has successfully made out his fraudulent inducement claims whether analyzed under New York law or New Jersey law. (DE 15-1 at 9.) This is because, as Plaintiff suggests, the "two jurisdictions . . . have nearly identical elements for fraudulent inducement claims." (*Id.*) Indeed, courts have concluded that "there is no conflict between New

York and New Jersey law regarding fraudulent inducement." *Mohegan Lake Motors, Inc. v. Maoli*, No. 16-CV-6717 (NSR), 2021 WL 4136881, at *14 n.5 (S.D.N.Y. Sept. 10, 2021); *Integrated Constr. Enters., Inc. v. GN Erectors, Inc.*, 16 Civ. 5561 (PAE), 2020 WL 614991, at *4 (S.D.N.Y. Feb. 10, 2020). In circumstances "when the laws of two states do not conflict, the Court is free to bypass the choice-of-law analysis and apply the forum state's laws." *Scharnikow v. Siracuse*, 15-CV-6991 (DRH) (SIL), 2016 WL 7480360, at *4 (E.D.N.Y. Dec. 6, 2016) (citations omitted). Based on the acknowledged similarities between New York and New Jersey fraudulent inducement claims, the Court concludes that the application of New York law is appropriate here.

Accordingly, the undersigned respectfully recommends that New York law apply to Plaintiff's fraudulent inducement claims.

### B. The Relevant Factors Weigh in Favor of a Default Judgment as to Liability

Plaintiff has satisfied the three factors courts consider when contemplating the appropriateness of a default judgment. The Court will discuss each in turn.

#### i. Willful Default

The Court concludes that Defendant willfully defaulted. In this Circuit, failure to respond to a complaint evinces willful default. *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 80 (E.D.N.Y. 2020) (citing *S.E.C. v. M.cNulty*, 137 F.3d 732, 738–39 (2d Cir. 1998)). Here, Plaintiff served Defendant through a process server on September 14, 2020. (DE 10.) To date, Defendant has not filed an answer, otherwise responded to the complaint, had counsel file a notice of appearance, or acknowledge the present motion for default judgment, despite being served over a year and four months ago. Such inaction constitutes a willful default. *See Indymac Bank v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (finding defendants' failure to appear, failure to respond to the complaint, and failure to respond to a motion for default judgment established willful conduct). As such, Defendant's willful default weighs in favor of a default judgment.

### ii. Meritorious Defense

Next, Defendant does not appear to have a meritorious defense to Plaintiff's fraudulent inducement claims. "A defense is meritorious 'if it good at law so as to give the factfinder some determination to make.'" *Antoine*, 489 F. Supp. 3d at 82 (quoting *Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996)). That said, the "meritorious defense" factor weighs in favor of granting a default judgment where a defendant fails to answer the complaint given that, in such circumstances, courts are unable to determine whether a meritorious defense to plaintiff's allegations exists. *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 144 (E.D.N.Y. 2013) (citations omitted). Further, the well-pleaded allegations in plaintiff's complaint are presumed true when a defendant fails to present a defense to the court. *Antoine*, 489 F. Supp. 3d at 82. Because Defendant has failed to file an answer or otherwise respond to the complaint, the Court concludes that he has no meritorious defenses to Plaintiff's allegations. That notwithstanding, Plaintiff still maintains the burden of establishing that the factual allegations contained in the complaint suffice to establish Defendant's liability. *See Said*, 2010 WL 1265186 at *2 ("With respect to liability, a defendant's default does no more than concede the complaint's factual allegations; it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action."). The Court therefore turns to Plaintiff's factual allegations to determine whether they suffice to establish Defendant's liability as to Plaintiff's fraudulent inducement claims.

As discussed above, the Court will apply New York law to Plaintiff's fraudulent inducement claims. The elements of a fraudulent inducement claim in New York are (1) the defendant made a materially false representation; (2) the defendant intended to defraud the plaintiff thereby; (3) the plaintiff reasonable relied upon the representation; and (4) the plaintiff suffered damage as a result of such reliance. *Capax Discovery, Inc. v. AEP RSD Invs., LLC*, 285 F. Supp. 3d 579, 586 (W.D.N.Y. 2018) (quoting *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19 (2d Cir. 1996)). "Fraudulent

inducement requires a misrepresentation of a *present* fact, not a misrepresentation of future intent to perform under the contract." *Barsoumian v. Williams*, 29 F. Supp. 3d 303, 318 (W.D.N.Y. 2014) (emphasis in original), *aff'd sub nom. Barsoumian v. Univ. at Buffalo*, 594 F. App'x 41 (2d Cir. 2015).

Plaintiff's allegations, taken as true, sufficiently establish Defendant's liability as to Plaintiff's fraudulent inducement claims. Plaintiff asserts two counts of fraudulent inducement, the first involving the forged Flaherty letter and the second involving the lien waivers. (DE 1 at 9–15.)

As to the Flaherty letter, Plaintiff alleges that, under the Prime Contract, a subcontractor performance bond was unnecessary "in the event that a surety reasonably approved by the Owner's lender provides a surety letter demonstrating the bonding capacity of [the subcontractor]." (*Id.* at 2.) Plaintiff alleges that it made this known to Defendant and that Defendant, in response, submitted the Flaherty letter, which represented that Defendant "ha[d] a surety bond program with a $10,000.00 aggregate limit." (*Id.* at 10.) Plaintiff alleges that, after subsequently speaking with the CEO of Edwards & Company, it discovered that Edwards & Company does not offer a surety program, did not have a surety bond with MDC, and that Flaherty was not an officer of Edwards and Company and could not have written the letter. (*Id.* at 9.) Plaintiff alleges that Defendant forged this letter with knowledge of its falsity, that Plaintiff reasonably relied on the Flaherty letter in entering subcontracts with Defendant, and that Plaintiff has been damaged in excess of $2,500,000.00 as a result of its reliance on the letter. (*Id.* at 10–11.) Based on these allegations, Plaintiff has established Defendant's fraudulent inducement liability as to the Flaherty letter.

Regarding the lien waivers, Plaintiff avers that Defendant executed approximately eight lien waivers representing that Defendant was properly paying all subcontractors for the project. (*Id.* at 12–13.) Plaintiff further alleges that it soon after learned that Defendant was in fact not making these payments and was delinquent in an amount of approximately $1,170,604.05. (*Id.* at 13.) Moreover, Plaintiff avers that Defendant told Plaintiff that MDC was unable to pay its suppliers, and that Defendant executed the lien waivers intending to deceive Plaintiff. (*Id.* at 13–14.) Finally, Plaintiff alleges that it reasonably relied on

the lien waivers in paying MDC for work on the project, and that Plaintiff has been damaged in excess of $2,500,000.00 as a result of its reliance on the waivers. (*Id.* at 14.) These allegations establish Defendant's fraudulent claim liability as to the lien waivers.

In sum, Plaintiff has established Defendant's liability as to both fraudulent inducement claims, and no meritorious defense exists, weighing in favor of a default judgment.

### iii. Prejudice Toward Plaintiff

The final factor the Court must consider is whether Plaintiff would be prejudiced if its motion for default were denied. Plaintiff would indeed be prejudiced following the denial of its motion "as there are not additional steps available to secure relief in this Court." *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008) (citation omitted). Plaintiff would be thus be unable to recover for its claims adequately set forth in its complaint absent a default judgment. *Antoine*, 489 F. Supp. 3d at 90. As such, this factor also weighs in favor of a default judgment entry.

\* \* \*

In sum, all relevant factors weigh in favor of granting a default judgment as to Defendant's liability. Accordingly, the undersigned respectfully recommends that Plaintiff's motion for default judgment as to Defendant's liability be granted.

**C. Damages**

"On a motion for default judgment, 'while a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages.'" *Double Green Produce, Inc. v. Forum Supermarket Inc.*, 387 F. Supp. 260, 271 (E.D.N.Y. 2019) (quoting *Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012)). Plaintiff has not moved for an award of damages but has rather moved "for determination by the Court through a subsequent written submission by Plaintiff rather than a full-blown damages hearing." (DE 15-1 at 17.)

Plaintiff is correct in that evidentiary hearings on damages for default judgments are not mandatory "so as long as [the Court] ensure[s] that there [i]s a basis for the damages specified in the default judgment," *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997) (citations omitted), which is ordinarily satisfied "upon a review of detailed affidavits and documentary evidence," *Metro Found Contractors Inc.*, 699 F.3d at 234. However, the Court concludes that, at this juncture, Plaintiff's request is premature. Mindful of the Second Circuit's admonition that the entry of a default judgment represents an "extreme sanction," it "must remain a weapon of last, rather than first, resort." *Snow*, 652 F.2d at 277. Because Plaintiff has not yet moved for an award of damages, it would be inappropriate for the Court to get out in front of its skis and determine at this time whether an evidentiary hearing is required. Plaintiff's request is better paired with its motion for an award of damages, which the Court gathers will follow the resolution of the present motion.

As such, the undersigned respectfully recommends that Plaintiff's motion for a determination of damages based on written submission rather than an evidentiary hearing be denied with leave to renew.

## IV. CONCLUSION

Based on the foregoing, the undersigned respectfully recommends that (1) Plaintiff's motion for a default judgment as to Defendant's liability be granted; and (2) Plaintiff's motion for a determination of damages based on written submission rather than an evidentiary hearing be denied with leave to renew.

## V. OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel for Plaintiff. Plaintiff is directed to serve a copy of this Report and Recommendation on Defendant via first-class mail and via email and promptly file proof of service on ECF. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated: Central Islip, New York
December 2, 2021

S O  O R D E R E D

/s/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge