## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

**GEIS CONSTRUCTION SOUTH, LLC,**

          **Plaintiff**

**v.**

**JAIME DELAHUNT,**

          **Defendant**

)
)
)  **CASE NO. 2:20-cv-03834**
)
)
)  **JUDGE DENIS R. HURLEY**
)
)  **MAGISTRATE JUDGE JAMES A.**
)  **WICK**
)

### MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO VACATE ENTRY OF DEFAULT, RESPONSE TO DEFENDANT'S OBJECTIONS TO COURT'S REPORT AND RECOMMENDATION, AND UNOPPOSED MOTION TO REDACT PORTIONS OF MEMORANDUM

13204405.1

## TABLE OF CONTENTS

**PART I--MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO VACATE ENTRY OF DEFAULT** ........................................................................ 1

**I.   INTRODUCTION** ............................................................................................. 1

**II.   STATEMENT OF FACTS** ............................................................................... 4

    **A.   Initiation of Instant Lawsuit** .................................................................. 4

    **B.   Plaintiff Properly Served Defendant With The Summons and Complaint** .......... 4

    **C.   Plaintiff Filed and Served Status Reports Expressing Plan to Move for Default** . 4

    **D.   Entry of Default, Motion for Default Judgment, and Court's Report and Recommendation** ..................................................................................... 5

    **E.   Other Lawsuits And Proceedings Against Defendant And His Companies** .......... 6

        **1.   Cronolly Fraud Lawsuit Against Defendant with Judgment Satisfied In 2019** .... 6

        **2.   Pineda Class Action Lawsuit Against Defendant and His Company Pending in 2022** ...................................................................................................... 6

        **3.   Gerson Vasquez Lawsuit Against MDC Pending in 2022** .......................... 7

        **4.   Moxey Rigby LLC Third Party Lawsuit Against MDC Pending in 2022.** ........... 8

        **5.   State Insurance Fund Judgment Against Defendant's Company Currently Outstanding in 2022.** ............................................................................ 8

        **6.   March 2021 Mortgage Taken Out By Defendant for $567,000.00.** ................ 9

        **7.   Premier Workers' Compensation Judgment against Premier Currently Outstanding in 2022.** ............................................................................ 9

        **8.   December 2020 Workers' Compensation Judgment against Defendant's Company Commercial Contracting Services, Inc** ....................................... 9

        **9.   April 2021 Workers' Compensation Judgment against MDC.** ...................... 10

        **10.   Related 2021 Arbitration Award Against MDC.** ................................... 10

13204405.1

**III.    LAW AND ARGUMENT** .......................................................................... 11

   **A.    The Court Should Deny Defendant's Motion to Vacate**. ...................................... 11

     **1.    Applicable law** ........................................................................... 11

   **B.    Defendant's Motion to Vacate Should Be Denied Because Defendant Cannot Establish Good Cause** ........................................................................... 12

     **1.    Factor (1): Defendant's default was willful.** ......................................... 12

     **2.    Factor (2): Defendant lacks a meritorious defense.** ............................... 20

     **3.    Factor (3): Plaintiff would be prejudiced if Defendant's Motion is granted.** ..... 24

     **4.    Defendant's Additional "Equitable Factors" Do Not Change The Outcome** ..... 27

**PART II--RESPONSE TO DEFENDANT'S OBJECTIONS TO REPORT AND RECOMMENDATION** ........................................................................... 28

**IV.    DEFENDANT'S OBJECTIONS TO REPORT AND RECOMMENDATION SHOULD BE OVERRULED** ........................................................................... 28

   **A.    Applicable Law** ........................................................................... 28

   **B.    The Court Should Not Consider Defendant's New Evidence** ........................... 28

   **C.    Even if Defendant's Evidence is Properly Considered by the Court, Defendant's Objections Should Still Be Overruled** ................................................. 29

**PART III—UNOPPOSED MOTION FOR LEAVE TO REDACT PORTIONS OF THIS OPPOSITION BRIEF** ........................................................................... 30

**V.    THE COURT SHOULD GRANT PLAINTIFF ITS UNOPPOSED MOTION FOR LEAVE TO REDACT PORTIONS OF PLAINTIFF'S OPPOSITION BRIEF.** ............ 30

**VI.    UNOPPOSED REQUEST FOR SHORT PAGE LIMIT EXTENSION** ................. 31

**VII.    CONCLUSION** ........................................................................... 31

## **TABLE OF AUTHORITIES**

**Cases**

*77 Charters, Inc. v. SYC Realty LLC*,
No. CV 2010 01681 SLT, 2012 WL 1077706, (E.D.N.Y. Feb. 27, 2012), *report and recommendation adopted*, No. 10-CV-1681 SLT MDG, 2012 WL 1078466 (E.D.N.Y. Mar. 30, 2012) ..................................................................................................... 26

*Acosta v. AlpineGate Techs. LLC*,
No. CV-14-00452-PHX-JJT, 2014 WL 12773914, (D. Ariz. Nov. 14, 2014) ...................... 17

*Action S.A. v. Marc Rich & Co.*,
951 F.2d 504, 507 (2d Cir. 1991)....................................................................................... 12

*Allegany Cap. Enterprises, LLC v. Cox*,
No. 19-CV-160S, 2021 WL 534803, (W.D.N.Y. Feb. 12, 2021), *reconsideration denied sub nom. Allegany Cap. Enterprises, LLC v. Cox*, No. 19-CV-160S, 2021 WL 1807868 (W.D.N.Y. May 6, 2021)................................................................................................... 22, 23

*Allstate Ins. Co. v. Bogoraz*,
No. 10-CV-5286 (SJF)(ETB) 2012 WL 1655552, (E.D.N.Y. May 9, 2012) .......................... 14

*AMEX Assur. Co. v. Phelps*,
No. CV413-062, 2015 WL 1032856, (S.D. Ga. Mar. 9, 2015) ........................................ 18, 19

*Arbitron, Inc. v. Marathon Media, LLC*,
No. 07 Civ. 2099, 2008 WL 892366, (S.D.N.Y. April 1, 2008)........................................ 13, 14

*Arthur F. Williams, Inc. v. Helbig*,
208 F.R.D. 41, 45 (E.D.N.Y. 2002) ...................................................................................... 24

*Avions De Transp. Reg'l G.I.E. v. Avian Lineas Aereas S.A.*,
No. 19 CIV. 6769 (AKH), 2019 WL 5965206, (S.D.N.Y. Nov. 12, 2019), *reconsideration denied*, No. 19 CIV. 6769 (AKH), 2019 WL 11274574 (S.D.N.Y. Dec. 19, 2019), and *appeal dismissed sub nom. Avions De Transp. Reg'l G.I.E. v. Synergy Aerospace Corp.*, No. 19-4128, 2020 WL 7329104 (2d Cir. Sept. 17, 2020) .......................................................... 24

*Barnes v. Printon, Inc.*,
No. 93 Civ. 5085, 1999 WL 335362, (S.D.N.Y. May 25, 1999)........................................... 11

*Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*,
770 F.3d 182, 186 (2d Cir. 2015).................................................................................... 11, 13

*Brown v. DeFilippis*,
695 F. Supp. 1528, 1530 (S.D.N.Y. 1988)............................................................................ 13

*Capax Discovery, Inc. v. AEP RSD Invs., LLC*,
  285 F. Supp. 3d 579, 589–90 (W.D.N.Y. 2018) ................................................ 21

*Chudomel v. Dynamic Recovery Servs., Inc.,*
  No. 12-CV-05365, 2013 WL 5970613, (E.D.N.Y. Nov. 8, 2013) ........................... 26

*CP Sols. PTE, Ltd. v. Gen. Elec. Co.*,
  553 F.3d 156, 159 (2d Cir. 2009) ..................................................................... 22

*Dave's Specialty Imports, Inc. v. Produce For Less, Inc.,*
  No. 19-cv-7136 (LDH)(PK), 2021 WL 1207121, (E.D.N.Y. March 31, 2021) ...................... 12

*Davis v. Musler*,
  713 F.2d 907, 916 (2d Cir. 1983) ...................................................................... 24

*De Curtis v. Ferrandina,*
  529 F. App'x 85 86 (2d Cir. 2013) .................................................................... 12

*DIRECTV, LLC v. Wright*,
  No. 15-CV-474-FPG, 2019 WL 6841555, (W.D.N.Y. Dec. 16, 2019) ................................ 26

*Gesualdi v. J.H. Reid, Gen. Contractor*,
  No. 14-CV-4212(ADS)(GRB), 2017 WL 752157, (E.D.N.Y. Feb. 27, 2017) ........................ 15

*Gesualdi v. Quadrozzi Equip. Leasing Corp.,*
  No. 11CIV115RJDVMS, 2016 WL 4487668, (E.D.N.Y. Aug. 3, 2016), *report and
  recommendation adopted*, No. 11CV115RJDVMS, 2016 WL 7322333 (E.D.N.Y. Dec. 15,
  2016), *aff'd,* 707 F. App'x 59 (2d Cir. 2017) ........................................... 11, 12, 24

*Government Employees Ins. Co. v. Anikeyev*,
  No. 14-cv-3775 (KAM)(SMG), 2016 WL 1275042, (E.D.N.Y. March 31, 2016) ............ 11, 12

*Guggenheim Capital, LLC v. Birnbaum*,
  722 F.3d 444, 455 (2d Cir. 2013) ....................................................................... 11

*HICA Educ. Loan Corp. v. Feintuch*,
  No. 12-CV-5243 (ADS), 2013 WL 1898997, (E.D.N.Y. May 7, 2013) ............................. 15

*J&J Sports Prods. Inc. v. RK Soto Enterprises*,
  No. 17CV2636WFKVMS, 2020 WL 7041089, (E.D.N.Y. Dec. 1, 2020) ........................... 28

*Jaramillo v. Banana King Rest. Corp.*,
  No. 12CV5649NGGRML, 2016 WL 1084729, (E.D.N.Y. Feb. 26, 2016), *report and
  recommendation adopted*, No. 12CV5649NGGRML, 2016 WL 1108956 (E.D.N.Y. Mar. 18,
  2016) *Jaramillo v. Vega*, 675 F. App'x 76 (2d Cir. 2017) ................................... 11, 12

*Jeri-Jo Knitwear, Inc. v. E.S. Sutton, Inc.*,
    No. CIV. 8551 (DC), 1995 WL 714367, (S.D.N.Y. Dec. 1, 1995) .................................... 13, 14

*Kulwa v. Obiakor OB/GYN P.C.*,
    No. 12-CV-1868, 2013 WL 504383, (E.D.N.Y. Feb. 8, 2013) ................................. 20

*Lopez v. Mohammed*,
    No. 14CV4443PKCMDG, 2017 WL 4277154, (10 (E.D.N.Y. Sept. 26, 2017)...................... 19

*Lucio v. New York City Dep't of Educ. & Marie Douyon*,
    No. 12 CIV. 247 (DAB), 2013 WL 12084546, (S.D.N.Y. May 16, 2013), *aff'd sub nom. Lucio v. New York City Dep't of Educ.*, 575 F. App'x 3 (2d Cir. 2014)......................................... 15, 19

*Marziliano v. Heckler*,
    728 F.2d 151 (2d Cir. 1984).......................................................................... 13

*Murray Engineering, P.C. v. Windermere Properties LLC*,
    No. 12 Civ. 0052 (JPO), 2013 WL 1809637, (S.D.N.Y. April 30, 2013) ............................... 15

*New York v. Green*,
    420 F.3d 99, 110 (2d Cir. 2005)..................................................................... 24

*Odfjell Seachem A/S v. Cont'l De Petrols Et Invs. SA*,
    613 F. Supp. 2d 497, 500 (S.D.N.Y. 2009)....................................................... 13, 14

*Paykina on behalf of E.L. v. Lewin*,
    387 F. Supp. 3d 225, 231 (N.D.N.Y. 2019) ...................................................... 30, 31

*Pierot v. Leopold*,
    154 A.D.3d 791 (2d Dept. 2017) ..................................................................... 15

*RL 900 Park LLC v. Ender*,
    No. 18 CIV. 12121 (AT), 2020 WL 70920, (S.D.N.Y. Jan. 3, 2020).................... 11, 13, 20, 21

*Robinson v. De Niro*,
    No. 19-CV-9156 (KHP), 2022 WL 274677, (S.D.N.Y. Jan. 26, 2022)................................... 30

*Sea Hope Navigation Inc. v. Novel Commodities SA*,
    978 F. Supp. 2d 333, 339 (S.D.N.Y. 2013).......................................................... 20

*Seifts v. Consumer Health Sols. LLC*,
    No. 05 CIV. 9355 ER LMS, 2015 WL 1069270, (S.D.N.Y. Mar. 11, 2015) .......................... 28

*Smith v. Smith*,
    No. 19CV01638AMDRML, 2021 WL 3524160, (E.D.N.Y. Aug. 11, 2021) ......................... 28

*Sony Corp. v. Elm State Electronics, Inc.*,
    800 F.2d 317, 320 (2d Cir. 1986)...................................................................... 11, 20

*Spectrum Lab'ys, LLC v. Vlaze Media Networks, Inc.*,
    No. CV1400262RGKVBKX, 2015 WL 13919099, (C.D. Cal. Aug. 31, 2015) ..................... 18

*Spencer Stuart Hum. Res. Consultancy (Shanghai) Co. v. Am. Indus. Acquisition Corp.*, No.
    17CV2195(DLC), 2017 WL 4570791, (S.D.N.Y. Oct. 12, 2017)............................................ 22

*State Street Bank & Trust Co. v. Inversiones Errazuriz, Limitada*,
    230 F.Supp.2d 313, 316 (S.D.N.Y. 2002) ........................................................ 11, 20

*State Univ. of New York v. Triple O, LLC*,
    No. 119CV1385GLSDJS, 2021 WL 3287774, (N.D.N.Y. Aug. 2, 2021)................................ 12

*STMicroelectronics v. Credit Suisse Grp.*,
    775 F. Supp. 2d 525, 543–44 (E.D.N.Y. 2011) ....................................................... 23

*Sun Prod. Corp. v. Bruch*, No.
    10 CIV. 4816 SAS, 2011 WL 5120307, (S.D.N.Y. Oct. 28, 2011), *aff'd*, 507 F. App'x 46
    (2d Cir. 2013)........................................................................................ 21, 27, 29

*Todtman, Nachamie, Spizz & Johns, P.C. v. Ashraf*,
    241 F.R.D. 451, 454 (S.D.N.Y. 2007) (denying motion to vacate entry of default), *aff'd*, 316 F.
    App'x 51 (2d Cir. 2009)........................................................................................ 13, 14

*Trustees of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity
    Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Abalene Decorating
    Inc.*,
    No. 20-CV-2559 (PKC), 2021 WL 1393455, (S.D.N.Y. Apr. 13, 2021) ................................ 18

*Trustees of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity, & Apprenticeship, &
    Skill Improvement & Safety Funds v. Intercounty Paving Assocs. of New York, LLC*,
    No. 19-CV-4322 (BMC), 2020 WL 32466, (E.D.N.Y. Jan. 2, 2020).................................. 13, 26

*Tygris Asset Fin., Inc. v. Szollas*,
    No. 09 C 4488, 2010 WL 2610652, (N.D. Ill. June 21, 2010) ........................................... 17, 18

*Unique Lotus Gems v. Gholian Enterprises Inc.*,
    No. 18CIV10808ATGWG, 2019 WL 6227856, (S.D.N.Y. Nov. 22, 2019), *report and
    recommendation adopted*, No. 18CIV10808ATGWG, 2019 WL 6701953 (S.D.N.Y. Dec. 9,
    2019) ........................................................................................................ 21

*United Pet Group, Inc. v. Axon US, Corp.*,
    No. 13-cv-126 (WFK)(MDG), 2013 WL 5592617, (E.D.N.Y. Oct. 10, 2013)........................ 12

*United States v. Chesir*,
  862 F. Supp. 2d 286, 290–91 (E.D.N.Y. 2012), *aff'd*, 526 F. App'x 60 (2d Cir. 2013)........... 15

*Wild Bunch, SA v. Vendian Ent., LLC*,
  256 F. Supp. 3d 497, 502–03 (S.D.N.Y. 2017)........................................................................ 27

*Yuan-Leung v. Orsyn Land Servs., Inc.*,
  334 F.R.D. 64, 67 (S.D.N.Y. 2020) ........................................................................................ 16

**Statutes**
28 U.S.C. § 636(b)(1)(C) ............................................................................................................ 28

**Rules**
Fed. R. Civ. P. 19 ............................................................................................................... passim
Fed. R. Civ. P. 19(b) ................................................................................................................. 22
Fed. R. Civ. P. 55 ........................................................................................................................ 2
Fed. R. Civ. P. 55(a) ................................................................................................................. 11
Fed. R. Civ. P. 55(c) .......................................................................................................... passim
Fed. R. Civ. P. 60(b) ................................................................................................................. 11
Fed. R. Civ. P. 60(b)(1)............................................................................................................. 15

# PART I--MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO VACATE ENTRY OF DEFAULT

## I.     INTRODUCTION[1]

Defendant Jaime Delahunt ("Defendant") in his Motion[2] futilely struggles to carry his burden for obtaining relief under Fed. R. Civ. P. 55(c) armed with (i) the facts from a conclusory 7 paragraph declaration; and (ii) vague appeals to equity and public policy. But Defendant's Motion cannot undo the consequences of Defendant burying his head in the sand for ***nearly 15 months*** before he took ***any*** actions in this lawsuit. Significantly, while Defendant claims he was incapable of "dealing with" the instant lawsuit for nearly fifteen months because of a combination of "conditions and events," during this period he nevertheless (i) had an attorney representing his company in two lawsuits in New York state court make filings on his company's behalf; and (ii) managed to execute a mortgage in 2021 for $567,000 in connection with the purchase of a residence in Plainview, New York. Moreover, immediately following the timeframe in which Defendant allegedly was unable to "deal[] with" the instant lawsuit based on these "conditions and events," he nevertheless then managed to have an attorney file a notice of appearance and request for an extension of time to file Objections ***a mere eight days*** after the Court issued its Report and Recommendation on the Motion for Default Judgment in December 2021. These facts suggest that, while managing to attend to his other business and personal affairs, Defendant simply made the calculated decision to (i) ignore the instant lawsuit for well over a year; and then (ii) attempt to vacate the Certificate of Default only after, following the issuance of the Report and Recommendation, it appeared that he faced the prospect of significant damages being awarded against him.

Far from being a naïve first-time participant in the civil legal system, Defendant and/or his companies have been defendants in no fewer than ten legal proceedings in New York since 2014,

---

[1] *See* Section VI, <u>Unopposed Request For Short Page Extension</u> (made pursuant to Paragraph 3.E of the Court's Individual Practice Rules).

[2] For ease of reference, Defendant's Motion to Vacate Certificate of Default Pursuant to FRCP55(c) and related Objections to the Report and Recommendation are collectively referred to as the "Motion."

including a state court lawsuit alleging fraud against Defendant individually where damages were awarded against Defendant. For some of these lawsuits, Defendant and/or his companies retained counsel, and for at least four other lawsuits he and/or his companies never bothered to appear or defend. This steady stream of lawsuits has resulted in 5 judgments, four of which appear to remain unsatisfied.  Other judgments seem likely down the road.

It is hard to imagine a set of facts less appropriate for relief than those presented by the instant lawsuit. Were the Court to vacate the Certificate of Default in this instance, it would be rewarding a strategy whereby a defendant with a proven history of sometimes appearing in lawsuits to defend, and sometimes simply defaulting, is free to ignore a case for over a year, including nearly eight months after the Certificate of Default was entered, until the threat of significant damages becomes concrete enough for the defendant to bother hiring an attorney and seeking to vacate the Certificate of Default. That outcome would contravene both the spirit and intent of Fed. R. Civ. P. 55, and Defendant's Motion should therefore be denied.

As demonstrated by Plaintiff Geis Construction South, LLC ("Plaintiff") below, Defendant for the following reasons fails to carry his burden of establishing each of the three factors demonstrating "good cause" for the purposes of setting aside an entry of default under Fed. R. Civ. P. 55(c).  Accordingly, the Motion should be denied.

**<u>First</u>**, Defendant's default was undoubtedly willful. Courts in the Second Circuit have determined defaults to be willful where "a defendant simply ignores a complaint without action" or has notice of a pending motion for default judgment yet fails to respond. Defendant did both here. Despite being properly served in September 2020 with the Complaint and Summons, Defendant ignored the Complaint and did ***nothing*** for ***nearly fifteen months***. Furthermore, it was not until ***nearly eight months*** after the Court entered its Certificate of Default and Plaintiff filed its Motion for Default Judgment, and only after the Court issued its Report and Recommendation, that Defendant took any action at all in the instant lawsuit. Moreover, none of Defendant's "conditions and events" to which he was allegedly subject demonstrate a lack of willfulness. Despite claiming to have been rendered unable to deal with the instant lawsuit as a result of these

13204405.1

"conditions and events," Defendant nevertheless managed during the same time frame to (i) have an attorney file papers, on behalf of his company MDC Home Improvements, Inc. ("MDC"), in two lawsuits in Nassau County, New York in which MDC is a defendant; and (ii) execute a mortgage for $567,000 in connection with the purchase of a residence in Plainview, New York. These actions strongly suggest that Defendant selectively chose to ignore the instant lawsuit while successfully attending to other business and life matters. For these reasons, Defendant has failed to establish that his default was not willful.

**Second**, Defendant has failed to establish the existence of a meritorious defense. While Defendant claims that Plaintiff failed to allege facts sufficient to warrant the piercing of the corporate veil, he ignores the fact that, under New York law, a director or officer of a corporation may be held individually liable for fraud ***without the piercing of the corporate veil***. Similarly, while Defendant claims, under Fed. R. Civ. P. 19, that MDC is an "indispensable" party in the instant lawsuit, factually analogous cases within the Second Circuit demonstrate that, because (i) Plaintiff brought breach of contract claims against MDC in the prior arbitration; whereas (ii) Plaintiff brought fraudulent inducement claims against Defendant in the instant lawsuit, Defendant's Fed. R. Civ. P. 19 defense fails. Given the differing nature of the two sets of claims, (i) complete relief can be afforded with the present parties and the Court does not need MDC to effect relief in the instant lawsuit; and (ii) MDC's absence from the instant lawsuit does not subject it to the risk of "multiple" or "inconsistent" obligations. For these reasons, MDC is not an "indispensable" party under Fed. R. Civ. P. 19.

**Third**, Defendant has failed to carry his burden of establishing that no prejudice would result from vacating the Certificate of Default. Courts within the Second Circuit have repeatedly held that a plaintiff would be prejudiced, for the purposes of Fed. R. Civ. P. 55(c), where the vacating of an entry of default would likely impair the plaintiff's ability to collect upon a judgment. Defendant and his companies are currently subject to (i) 4 separate unsatisfied judgments totaling $124,061.24; (ii) an unsatisfied arbitration award for $10,021,831; (iii) a mortgage of $567,000; (iv) 5 pending lawsuits where damages are sought; and (v) 4 lawsuits where Defendant and/or his

13204405.1

company failed to appear or defend. Considering the liabilities already faced by Defendant and his companies, and the likelihood that additional liabilities will accrue in the future based on pending lawsuits, Plaintiff will be significantly prejudiced if Defendant's Motion is granted, as the resulting delay in obtaining a judgment against Defendant would likely diminish Plaintiff's ability to collect on a judgment.

For all of these reasons, as well as the reasons set forth below, Plaintiff respectfully requests that the Court (i) overrule Defendant's Objections to the Court's Report and Recommendation; and (ii) deny Defendant's Motion to Vacate the Certificate of Default.

## II.    STATEMENT OF FACTS

### A.    <u>Initiation of Instant Lawsuit</u>

On August 20, 2020, Plaintiff filed this instant lawsuit, alleging that Defendant had fraudulently induced Plaintiff to (i) enter into two (2) Subcontracts with Defendant's company, MDC, in connection with Plaintiff's work on the Wonder Lofts Project at 720 Clinton Street in Hoboken, New Jersey 07030 (the "Project"); and (ii) pay MDC approximately eight (8) pay applications. Complaint [ECF No. 1, PageID# 1 *et seq.*]. Defendant is the president of MDC[3] and, upon information and belief, Defendant is also the sole owner and/or employee of MDC. *Id.* at ¶ 8 [ECF No. 1, PageID # 2].

### B.    <u>Plaintiff Properly Served Defendant With The Summons and Complaint</u>

On September 14, 2020, Plaintiff served Defendant with the Summons and Complaint using a process server. Filed Return of Service [ECF No. 10, Page ID# 308].

### C.    <u>Plaintiff Filed and Served Status Reports Expressing Plan to Move for Default</u>

On March 26, 2021, Plaintiff filed its Status Report where it stated that, *inter alia*, (i) "[b]ased on Defendant's prolonged failure to answer, plead, or otherwise move, Plaintiff intends to move this Court for a Default Judgment against Defendant in the near future" and served Defendant with this Status Report that same day. Plaintiff's Status Report [ECF No. 11, PageID#

---

[3] Subcontract, [ECF No. 1-3, PageID # 39] (Defendant signed subcontract as president of MDC).

310, 312]; Pugh Decl. at ¶ 2; 2021.03.26 S. Marsh email to Delahunt, attached as Ex. A to Pugh Decl.. On April 8, 2021, Plaintiff filed (and served Defendant by email with) its Supplemental Status Report where Plaintiff again stated that, *inter alia*, "[b]ased on Defendant's prolonged failure to answer, plead, or otherwise move, Plaintiff intends to move this Court for a Default Judgment against Defendant." Plaintiff's Supplemental Status Report [ECF No. 12, PageID# 316-317; Pugh Decl. at ¶ 3; 2021.04.08 S. Marsh email to Delahunt, attached as Ex. B to Pugh Decl.

**D. Entry of Default, Motion for Default Judgment, and Court's Report and Recommendation.**

On April 9, 2021, the Court issued its Order directing Plaintiff "to file its proposed motion for default judgment within sixty (60) days of the date hereof." On April 14, 2021, Plaintiff filed (and served Defendant with) its Request for Certificate of Default. Request for Certificate of Default [ECF No. 13, PageID# 320 *et seq.*]; Pugh Decl. at ¶ 4; 2021.04.14 S. Marsh email to Delahunt, attached as Ex. C to Pugh Decl. On April 14, 2021, the Court entered its Certificate of Default. Certificate of Default [ECF No. 14, PageID# 329]. On April 15, 2021, Plaintiff emailed the Court's Certificate of Default to Defendant. Pugh Decl. at ¶ 5; 2021.04.15 S. Marsh email to Delahunt, attached as Ex. D to Pugh Decl.

On April 26, 2021, Plaintiff filed its Motion for Default Judgment and emailed and mailed the Motion for Default Judgment to Defendant that same day. Motion for Default Judgment. [ECF No. 15, PageID# 330 *et seq.*]; Pugh Decl. at ¶ 6; 2021.04.26 S. Marsh email to Delahunt, attached as Ex. E to Pugh Decl. On December 2, 2021, the Court issued its Report and Recommendation recommending that Plaintiff's Motion for Default Judgment be granted as to liability. Report and Recommendation [ECF No. 19, PageID# 666, 673]. On December 3, 2021, Plaintiff filed its Notice of Filing Proofs of Service of Report and Recommendation. Notice of Filing Proofs of Service [ECF No. 20, PageID# 676 *et seq.*].

On December 10, 2021, Defendant's counsel entered an appearance in the instant lawsuit. Appearance of Counsel [ECF No. 21, PageID# 693]. It was not until January 19, 2022, when Defendant's counsel sought leave to file a Motion to Vacate Certificate of Default [Doc. No. 23,

13204405.1

ECF. No. 698] that Defendant, through his counsel, first brought up unspecified "personal tumult" on the part of Defendant.

### E. Other Lawsuits And Proceedings Against Defendant And His Companies

**1. Cronolly Fraud Lawsuit Against Defendant with Judgment Satisfied In 2019.** In 2014, Defendant and his company Premier County Construction Corp. ("Premier") were sued by Thomas and Louise Cronolly in the Supreme Court of New York, County of Nassau, in connection with a construction project. Cronolly Verified Complaint at ¶¶ 4-5, 9-11, attached as Ex. F to Pugh Decl. (the "Cronolly Lawsuit"). In this lawsuit, Defendant was identified as the "president and sole shareholder" of Premier. Cronolly Verified Complaint at ¶ 5, attached as Ex. F to Pugh Decl. Among other claims, the Cronolly Lawsuit alleged a fraud claim against Defendant and Premier. *Id. at ¶¶* 49-58. Attached as exhibits to the Cronolly Lawsuit were (i) a letter from the Office of Consumer Affairs in Nassau County, New York to Defendant accusing Defendant of (i) working in Nassau County without a home improvement license; and (ii) performing an unconscionable trade practice. 2014.04.15 Letter to Delahunt at 3, attached as Ex. G to Pugh Decl. On February 18, 2015, a judgment for $72,463.50 was entered against Defendant and Premier. 2015.02.18 Cronolly Judgment at pg. 4-6, attached as Ex. H to Pugh Decl. According to the findings in the Cronolly Judgment, (i) Defendant and Premier were "duly served" with process and they "failed to answer, appear or move with respect to the Complaint"; (ii) Plaintiff moved for default judgment against Defendant and Premier; and (iii) Defendant and Premier failed to oppose the motion for default judgment. *Id.* at 2-3. It was not until July 2019, **over four years after the entry of the Judgment**, that Defendant and Premier satisfied their Cronolly Judgment. 2019.08.08 Satisfaction of Judgment at pg. 2-3, attached as Ex. I to Pugh Decl.

**2. Pineda Class Action Lawsuit Against Defendant and His Company Pending in 2022.** On January 28, 2021, Julio Pineda filed an amended class action complaint against Jobco, Incorporated ("Jobco"), Defendant individually, and Defendant's company, Commercial Contracting Services, Inc. in the United States District Court for the Eastern District of New York, alleging claims for (i) unpaid overtime under the Fair Labor Standards Act;

13204405.1

(ii) unpaid overtime under New York Labor Law; and (iii) failure to furnish proper wage statements in violation of the New York Labor Law. 2021.01.28 Pineda Class Action Amended Complaint at ¶¶ 1, 11-12, 50, 56, 61 and 67, attached as Ex. J to Pugh Decl. The Complaint identified Defendant as the owner of Commercial Contracting Services, Inc. *Id.* at ¶¶11-12. On February 11, 2021, Jobco filed a crossclaim against Defendant and his company, Commercial Contracting Services, Inc., seeking indemnification "in the event that Plaintiff is awarded any judgment against Jobco…." 2021.02.11 Pineda Jobco Answer and Crossclaim at ¶¶ 35-43, attached as Ex. K to Pugh Decl. On May 20, 2021, Plaintiff filed a Motion for Preliminary Approval of the Class Action Settlement with Jobco where Jobco agreed to pay "the maximum amount of $208,000.00." 2021.05.20 Pineda Motion for Preliminary Approval at PageID # 175, attached as Ex. L to Pugh Decl.  Defendant and his company, Commercial Contracting Services, Inc., are expressly excluded from the proposed release included in the Class and Collective Member's Claim Form. *Id.* at PageID # 182-183. According to the Motion for Preliminary Approval, "***Commercial Contracting Services, Inc. and Jaime Delahunt have chosen not to appear to defend themselves in this action.***" *Id.* at PageID # 238 (emphasis added). In the proposed "Notice of Pendency of Class Action Settlement," class members are to be informed that even if the class members do not opt out, they "may still bring a new lawsuit against Commercial Contracting Services, Inc. or Jaime Delahunt under the NYLL or any New York law governing the payment of wages for hours worked." *Id.* at PageID # 246. The Pineda Class Action Lawsuit remains pending as of March 15, 2022. Pugh Decl. at ¶ 14.

      **3.**     **<u>Gerson Vasquez Lawsuit Against MDC Pending in 2022</u>**. On May 3, 2019, Gerson Vasquez filed a lawsuit in the Supreme Court of the State of New York, County of Nassau, against a number of defendants, including Defendant's company MDC, seeking damages from MDC ("Gerson Vasquez Lawsuit"). Summons and Complaint for Gerson Vasquez Lawsuit at ¶¶ 31, 382-392, attached as Ex. M to Pugh Decl. As of March 15, 2022, the Gerson Vasquez Lawsuit remains pending against MDC.  Pugh Decl. at ¶ 16. As of March 15, 2022, electronic court records indicate that MDC in the Gerson Vasquez Lawsuit is represented in the

lawsuit by Carmen A. Nicolaou of Chartwell Law in White Plains, New York. Pugh Decl. at ¶ 17. As of March 18, 2022, electronic court records indicate that (i) MDC filed a Demand for Authorizations on September 29, 2020; and (ii) MDC filed a Notice in the lawsuit on or about December 7, 2021. Pugh Decl. at ¶ 18.

4. **Moxey Rigby LLC Third Party Lawsuit Against MDC Pending in 2022.** On November 19, 2019, Moxey Rigby LLC filed a third-party Complaint against Defendant's company MDC in the Supreme Court of New York, County of Nassau in the underlying lawsuit of Jose Velasquez v. Moxey Rigby LLC, et al., seeking damages against MDC for the claims of (i) common law indemnification, (ii) common law contribution; (iii) contractual indemnification; (iv) contractual indemnification; (v) breach of contract; and (vi) indemnification ("Moxey Rigby Lawsuit"). Summons and Complaint for Moxey Rigby Lawsuit, attached as Ex. N to Pugh Decl. As of March 15, 2022, the Moxey Rigby Lawsuit remains pending against MDC. Pugh Decl. at ¶ 20. As of March 15, 2022, electronic court records indicate that MDC in the Moxey Rigby LLC Lawsuit is represented by Carmen A. Nicolaou of Chartwell Law in White Plains, New York. Pugh Decl. at ¶ 21. Based on electronic court records as of March 18, 2022, MDC's counsel (i) filed a Demand for Discovery and Inspection on November 24, 2020; (ii) filed a Notice for Discovery and Inspection as to Funding Loans on April 19, 2021; and (iii) filed a Notice of Deposition as late as January 26, 2022. Pugh Decl. at ¶ 22.

5. **State Insurance Fund Judgment Against Defendant's Company Currently Outstanding in 2022.** On May 11, 2015, the Commissioners of the New York State Insurance Fund ("SIF") filed a Complaint against Defendant's company, Premier, in the Supreme Court of New York, County of Nassau, alleging that Premier "breached its contract with SIF and is liable to SIF for damages in the amount of all unpaid premium [for Premier's workers' compensation insurance policy], to wit, $36,709.55." 2015 SIF Summons and Complaint at ¶¶ 5, 8, 14, attached as Ex. O to Pugh Decl. On July 6, 2015, the court entered a judgment against Defendant's company, Premier for $41,561.24. 2015 SIF Judgment at 2-3, attached as Ex. P to Pugh Decl. According to the Judgment, (i) Premier was served with the Summons and Complaint;

(ii) "the time of [Premier] to appear or answer ha[s] expired," and (iii) Premier did not appear or answer. *Id.* at 2. As of March 15, 2022, the electronic property records of Nassau County fail to show any indication that the 2015 SIF Judgment has been satisfied. Pugh Decl. at ¶ 25.

6. **March 2021 Mortgage Taken Out By Defendant for $567,000.00.** On March 19, 2021, Defendant and his wife executed a Mortgage for $567,000 in connection with the purchase of a residence in Plainview, New York. Excerpt from March 2021 Mortgage, attached as Ex. Q to Pugh Decl. As of March 15, 2022, the electronic property records of Nassau County fail to show any indication that the March 2021 Mortgage has been satisfied in full. Pugh Decl. at ¶ 27.

7. **Premier Workers' Compensation Judgment against Premier Currently Outstanding in 2022.** On February 23, 2017, a Judgment was entered in the Supreme Court of New York, County of Nassau, against Defendant's company, Premier, in favor of the Workers' Compensation Board of the State of New York for $3,500, "representing Awards and Penalties having been made against [Premier], after due notice, having defaulted in payment thereof[.]" 2017 Workers' Compensation Judgment at 1, attached as Ex. R to Pugh Decl. As of March 15, 2022, the electronic property records of Nassau County fail to show any indication that the 2017 Workers' Compensation Judgment has been satisfied. Pugh Decl. at ¶ 29.

8. **December 2020 Workers' Compensation Judgment against Defendant's Company Commercial Contracting Services, Inc**. On December 18, 2020, a Judgment was entered in the Supreme Court of New York, County of Nassau, against Defendant's company, Commercial Contracting Services, Inc. in favor of the Workers' Compensation Board of the State of New York for $48,500, "representing Awards and Penalties having been made against [Commercial Contracting Services, Inc.] after due notice, having defaulted in payment thereof." 2020 Workers' Compensation Judgment at p. 1, attached as Ex. S to Pugh Decl.  As of March 15, 2022, the electronic property records of Nassau County fail to show any indication that the 2020 Workers' Compensation Judgment has been satisfied. Pugh Decl. at ¶ 31.

13204405.1

9.      **April 2021 Workers' Compensation Judgment against MDC.**

On April 9, 2021, a Judgment was entered in the Supreme Court of New York, County of Nassau, against Defendant's company, MDC Home Improvements, Inc. ("MDC") in favor of the Workers' Compensation Board of the State of New York for $30,500.00 "representing Awards and Penalties having been made against [MDC], after due notice, having defaulted in payment thereof[.]" 2021 Workers' Compensation Judgment at p. 1, attached as Ex. T to Pugh Decl. As of March 15, 2022, the electronic property records of Nassau County fail to show any indication that the 2021 Workers' Compensation Judgment  has been satisfied. Pugh Decl. at ¶ 33.

10.     **Related 2021 Arbitration Award Against MDC.** On May 15, 2020, Plaintiff filed a Demand for Arbitration against Defendant's company, MDC, with the American Arbitration Association. 2021.04.26 CW Pugh Decl. at ¶ 6. [ECF No. 15-2, PageID # 354]. Pursuant to the terms of the two (2) Subcontracts with MDC, Plaintiff is entitled to full reimbursement of cost overruns relating to MDC's breaches of the two Subcontracts in connection with the Project. *Id.* In the Arbitration, MDC sought over $9 million in damages, including attorney's fees, interest, and arbitration costs. *Id.* in ¶¶ 6-7. On March 11, 2021, the Arbitration took place in Cleveland, Ohio, ***and MDC declined to participate***. *Id.* at ¶ 8 (emphasis added). The arbitration panel issued its Final Award on April 1, 2021, (i) finding "[t][here is no question that [MDC] breached the subcontracts it entered into with [MDC]"; (ii) finding that Plaintiff proved it was damaged in the amount of $9,954,713.86; (iii) awarding attorney's fees of $45,139.75; and (iv) finding that MDC was responsible for the AAA administrative fees and the compensation of the Arbitrators, for a total amount of damages to Plaintiff of $10,021,831.10. Arbitration Panel Final Award at 1-4, attached as Ex. 3 to 2021.04.26 CW Pugh Decl. [ECF No. 15-2, PageID # 644-648]; 2021.04.26 CW Pugh Decl. at ¶ 12. [ECF No. 15-2, PageID # 355]. On April 30, 2021, Plaintiff filed against MDC an Application to Confirm Arbitration Award in the United States District Court for the Eastern District of New York, Case No. 2:21-cv-02407-LDH-ST. Pugh Decl. at ¶ 34. To date, MDC has taken no actions in this parallel litigation and has not appeared in this parallel litigation. Pugh Decl. at ¶ 35.

### III.    LAW AND ARGUMENT

#### A.  <u>The Court Should Deny Defendant's Motion to Vacate</u>.

##### 1. <u>Applicable law</u>

"'Under Rule 55(a) of the Federal Rules of Civil Procedure, 'when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend…, the clerk must enter the party's default.' The entry of default is therefore not discretionary." *RL 900 Park LLC v. Ender*, No. 18 CIV. 12121 (AT), 2020 WL 70920, at *2 (S.D.N.Y. Jan. 3, 2020) (denying motion to vacate entry of default) (citing *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 770 F.3d 182, 186 (2d Cir. 2015)). "Once default is entered, Rule 55(c) provides that '[t]he court may set aside an entry of default for good cause.'" *Id.* "The standard for good cause 'requires a court to weigh (1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party." *Id.* (*citing Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 455 (2d Cir. 2013)).

The defendant "bear[s] the burden of demonstrating that their default was not willful, that they have meritorious defenses, and that no prejudice would result from reopening the judgment." *State Street Bank & Trust Co. v. Inversiones Errazuriz, Limitada*, 230 F.Supp.2d 313, 316 (S.D.N.Y. 2002) (*citing Sony Corp. v. Elm State Electronics, Inc.*, 800 F.2d 317, 320 (2d Cir. 1986)) (denying motion to vacate default judgment).[4] "This burden is not trivial: if the moving party fails to make even one of the three aforementioned showings, vacatur should be denied." *Id.* (*citing Barnes v. Printon, Inc.*, No. 93 Civ. 5085, 1999 WL 335362, at *3 (S.D.N.Y. May 25, 1999)); *Jaramillo v. Banana King Rest. Corp.*, No. 12CV5649NGGRML, 2016 WL 1084729, at *2 (E.D.N.Y. Feb. 26, 2016), *report and recommendation adopted*, No. 12CV5649NGGRML, 2016 WL 1108956 (E.D.N.Y. Mar. 18, 2016), *aff'd sub nom. Jaramillo v. Vega*, 675 F. App'x 76 (2d Cir. 2017) (same); *Gesualdi v. Quadrozzi Equip. Leasing Corp.*, No. 11CIV115RJDVMS,

---

[4] Certain cases cited in this brief apply Fed. R. Civ. P. 60(b) rather than Fed. R. Civ. P. 55(c). The standards of Fed. R. Civ. P. 55(c) and Fed. R. Civ. P. 60(b) "are sufficiently similar, however, that courts often look to Rule 60(b) decisions in deciding Rule 55(c) cases and vice versa. *Government Employees Insurance Co. v. Anikeyev*, No. 14-cv-3775 (KAM)(SMG), 2016 WL 1275042, at *2 n.1 (E.D.N.Y. March 31, 2016).

13204405.1

2016 WL 4487668, at *7 (E.D.N.Y. Aug. 3, 2016), *report and recommendation adopted*, No. 11CV115RJDVMS, 2016 WL 7322333 (E.D.N.Y. Dec. 15, 2016), *aff'd,* 707 F. App'x 59 (2d Cir. 2017) (same); *State Univ. of New York v. Triple O, LLC*, No. 119CV1385GLSDJS, 2021 WL 3287774, at *1 (N.D.N.Y. Aug. 2, 2021) (same).[5]

### B. **Defendant's Motion to Vacate Should Be Denied Because Defendant Cannot Establish Good Cause**

#### 1. **Factor (1)**: Defendant's default was willful.

"Of the three factors, 'willfulness carries the most weight." *Dave's Specialty Imports, Inc. v. Produce For Less, Inc.*, No. 19-cv-7136 (LDH)(PK), 2021 WL 1207121, at *1 (E.D.N.Y. March 31, 2021) (internal citation omitted) (*citing De Curtis v. Ferrandina*, 529 F. App'x 85 86 (2d Cir. 2013)); *Government Employees Ins. Co. v. Anikeyev*, No. 14-cv-3775 (KAM)(SMG), 2016 WL 1275042, at *3 (E.D.N.Y. March 31, 2016) (internal citation omitted)(denying motion to vacate entry of default; "of the three criteria to be evaluated in the context of a default, willfulness is preeminent, and a willful default will not normally be set aside")).

Significantly, courts in the Second Circuit recognize that a finding of a willful default, standing alone, is enough to deny a defendant's motion to vacate an entry of default. *Dave's Specialty Imports, Inc.*, 2021 WL 1207121, at *2 (*citing Jaramillo v. Vega*, 675 F. App'x 76 (2d Cir. 2017) ("[t]he Court's determination that the default was willful is alone sufficient to support the denial of the motion to vacate [the entry of default], and the Court need not consider the other two factors"); *United Pet Group, Inc. v. Axon US, Corp.*, No. 13-cv-126 (WFK)(MDG), 2013 WL 5592617, at *1, *4 (E.D.N.Y. Oct. 10, 2013)(*citing Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 507 (2d Cir. 1991) (denying motion to vacate entry of default; "Defendant's willful default alone justifies denial of the motion to vacate [entry of default]")).

---

[5] While Defendant cobbles together, on page 2 of the Motion, cases from 1983, 1991 and 1996 to claim that "[i]t is well-established that a court may grant a motion to vacate a default even where a party has failed to establish *all* of these criteria," this proposition is belied by the District Court cases in the Second Circuit from as recently as 2021, ***including two cases from this Court from 2016***, that have expressly stated that "if the moving party fails to make even one of the three aforementioned showings [demonstrating good cause under Fed. R. Civ. P. 55(c)], vacatur should be denied."

13204405.1

"The Second Circuit has 'interpreted "willfulness," in the context of a default, to refer to conduct that is more than merely negligent or careless, but is instead egregious and not satisfactorily explained.'" *RL 900 Park LLC*, 2020 WL 70920, at *2 (*citing Bricklayers*, 770 F.3d at 186). "Thus, '[c]ourts have held the default to be willful when a defendant simply ignores a complaint without action.'" *Todtman, Nachamie, Spizz & Johns, P.C. v. Ashraf*, 241 F.R.D. 451, 454 (S.D.N.Y. 2007) (denying motion to vacate entry of default), *aff'd*, 316 F. App'x 51 (2d Cir. 2009) (*citing Brown v. DeFilippis*, 695 F. Supp. 1528, 1530 (S.D.N.Y. 1988) (*citing Marziliano v. Heckler*, 728 F.2d 151 (2d Cir. 1984))); *Arbitron, Inc. v. Marathon Media, LLC*, No. 07 Civ. 2099, 2008 WL 892366, at *5 (S.D.N.Y. April 1, 2008) (denying motion to vacate default judgment; finding default willful where "[b]y their own admission, two senior corporate officers had actual notice of the suit, but defendants did nothing"); *Trustees of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity, & Apprenticeship, & Skill Improvement & Safety Funds v. Intercounty Paving Assocs. of New York, LLC*, No. 19-CV-4322 (BMC), 2020 WL 32466, at *2 (E.D.N.Y. Jan. 2, 2020) (denying motion to vacate entry of default; "[d]efendant's failure to respond to either the summons and complaint or the motion for a default judgment compels the conclusion that its default was willful or in reckless disregard of its legal obligations").

Similarly, courts have found the existence of willfulness where a party has notice of the pending motion for default judgment yet fails to act. *Jeri-Jo Knitwear, Inc. v. E.S. Sutton, Inc.*, No. CIV. 8551 (DC), 1995 WL 714367, at *2 (S.D.N.Y. Dec. 1, 1995) (denying motion to vacate entry of default; finding that, where plaintiff sent defendant letter expressly stating that it would be shortly seeking default judgment, defendant "simply disregarded this letter," defendant's "default was willful, as it had adequate notice of the default but simply did not respond"); *see Odfjell Seachem A/S v. Cont'l De Petrols Et Invs. SA*, 613 F. Supp. 2d 497, 500 (S.D.N.Y. 2009) (vacating, on reconsideration, prior vacatur of default judgment; finding willfulness where, *inter alia*, plaintiff, "after properly serving the defendants, went further and gave written notice to its adversary of the various in-court conferences, and advised them that, should they fail to move, answer, or even just appear in the proceedings, plaintiff would seek default judgment").

13204405.1

Here, Defendant's default was willful for the following two reasons. **First**, Defendant's default was willful because Plaintiff properly served Defendant with the Complaint and Summons on September 14, 2020 via process server, and Plaintiff simply ignored the Complaint and did nothing for ***nearly fifteen months***. *See* Filed Return of Service [ECF No. 10, Page ID# 308]. Significantly, Defendant himself admits that "[i]n or about September 2020, I became aware of a lawsuit that was filed against me." 2022.03.16 Declaration of J. Delahunt at ¶ 2. It was not until December 10, 2021, that Defendant finally took any action in this lawsuit, having an attorney enter an appearance of counsel. Appearance of Counsel [ECF No. 21, PageID# 693]. Under applicable law, this "doing nothing" is enough, in and of itself, to support a finding of willfulness by the Court. *Todtman*, 241 F.R.D. at 454 ("[c]ourts have held the default to be willful when a defendant simply ignores a complaint without action"); *Arbitron*, 2008 WL 892366, at *5 (finding default willful where "[b]y their own admission, two senior corporate officers had actual notice of the suit, but defendants did nothing").

**Second**, Defendant's default was also willful because, despite being notified twice by Defendant of Plaintiff's intention to move for a default judgment, Defendant waited until nearly eight months after the entry of default in April 2021 to appear in the instant lawsuit, and even then waited until the Court issued its Report and Recommendation in December 2021 to take any action at all. *See* Statement of Facts at Sections II.A—Section II.D.

Given that (i) nearly eight months elapsed between when the Clerk entered its Certificate of Default; and (ii) when Defendant took ***any*** actions in the instant lawsuit, Defendant's default is definitely willful. *See Allstate Ins. Co. v. Bogoraz*, No. 10-CV-5286 (SJF)(ETB) 2012 WL 1655552, at *4 (E.D.N.Y. May 9, 2012) (denying motion to vacate entry of default; defendant's 3-month delay in seeking to vacate entry of default is "inexplicable," "unreasonable," and "further supports the Court's finding that [defendant's] default was willful"); *Jeri-Jo Knitwear, Inc.*, 1995 WL 714367, at *2; *Odfjell Seachem*, 613 F. Supp. 2d at 500.

**Finally**, the excuses provided by Defendant are insufficient to demonstrate a lack of willfulness. Defendant in his Motion states that:

13204405.1

> [A]t the time that this action was commenced…he was going through an extremely
> emotional and turbulent time. Specifically, his marriage was in the process of
> collapsing and he was seeking the assistance of a mental health professional to
> manage the effects of his ADHD and post-traumatic stress disorder. The effects of
> these conditions were even further exacerbated by the COVID-19 pandemic and
> his martial [sic] troubles. The net effect of the confluence of these conditions and
> events was that Mr. Delahunt was simply incapable of dealing with the instant
> lawsuit. Under these circumstances, Mr. Delahunt's failure to timely respond to this
> lawsuit was not a willful flouting of this Courts [sic] jurisdiction."

Motion at 10-11.

**Illness**: Defendant's existing health problems are insufficient to support the finding of a

lack of willfulness, and Plaintiff's cases are readily distinguishable from the instant lawsuit.[6]

Significantly, "regardless of its seriousness, illness alone is not a sufficient basis for setting aside

a judgment." *Lucio v. New York City Dep't of Educ. & Marie Douyon*, No. 12 CIV. 247 (DAB),

2013 WL 12084546, at *3 (S.D.N.Y. May 16, 2013), *aff'd sub nom. Lucio v. New York City Dep't*

*of Educ.*, 575 F. App'x 3 (2d Cir. 2014); *also Gesualdi v. J.H. Reid, Gen. Contractor*, No. 14-CV-

4212(ADS)(GRB), 2017 WL 752157, at *8–9 (E.D.N.Y. Feb. 27, 2017) ("it is well-settled that

illness alone is not a sufficient basis for setting aside a judgment under Rule 60(b)(1)"); *United*

*States v. Chesir*, 862 F. Supp. 2d 286, 290–91 (E.D.N.Y. 2012), *aff'd*, 526 F. App'x 60 (2d Cir.

2013) (internal citation omitted) ("general allegations of mental illness insufficient to constitute

---

[6] In *HICA Educ. Loan Corp. v. Feintuch*, No. 12-CV-5243 (ADS), 2013 WL 1898997, at *1-2, *4 (E.D.N.Y. May 7,
2013), (i) the Fed. R. Civ. P. 55(c) motion was unopposed; (ii) (a) Defendant's father, who lived with Defendant, died
3 months before the Complaint was filed; (b) his daughter suffered from "bronchopulmonary dysplasia and other life-
threatening events," "Defendant spent most of the last three years at the hospital and other medical facilities where
[his daughter] was being treated," and (c) Defendant's daughter was "hospitalized three times for different medical
issues and life-threatening emergencies" that occurred the month before, the month of, and the month after the
Complaint was served on Defendant; and (iii) there was "only [a] two-week delay between the entry of default and
Defendant's motion to vacate." Here, by contrast, (i) nearly *eight months* elapsed between (a) when the court entered
the certificate of default; and (b) Defendant's attorney made an appearance in the instant lawsuit; and (ii) Defendant's
medical issues, as described by Defendant, are nowhere near as severe as the defendant in *HICA*. In *Murray
Engineering, P.C. v. Windermere Properties LLC*, No. 12 Civ. 0052 (JPO), 2013 WL 1809637, at *1, *5 (S.D.N.Y.
April 30, 2013), (i) less than a month elapsed between when plaintiff filed a motion for default judgment and defendant
had an attorney write the court and answer the complaint; and (ii) at the time the Motion for Default was filed, the
attorney "had to turn my attention to a dire family crisis…[my son] was suffering severe seizures, and my wife and I
had to devote days and nights at the home attending to" his son. Here, by contrast, Defendant's medical issues are not
nearly as severe as the issues confronted by the attorney in *Murray*. Finally, in *Pierot v. Leopold*, 154 A.D.3d 791
(2d Dept. 2017), the defendant submitted an "affidavit of his treating psychologist which established that his default
was due to diagnosed psychological conditions that rendered him unable to defend himself in this action at the relevant
time." In the instant lawsuit, by contrast, Defendant does not submit any evidence from a mental health professional,
let alone evidence that Defendant's default rendered him unable to defend himself in this lawsuit.

13204405.1

'excusable neglect'"; denying motion to vacate default judgment).

"Illness or disability alone does not constitute excusable neglect. While courts will occasionally rely on the illness or disability of a party or attorney when finding excusable neglect, these cases involve extraordinary circumstances, such as a sudden, unexpected, or catastrophic illness, or the party has pointed to specific facts and circumstances demonstrating why the illness or disability caused them to miss the original deadline." *Yuan-Leung v. Orsyn Land Servs., Inc.*, 334 F.R.D. 64, 67 (S.D.N.Y. 2020) (denying motion to vacate default judgment).

Critically, while Defendant claims that, based on certain events and his medical condition that he "was simply incapable of dealing with the instant lawsuit," the actions that Defendant *did* manage to accomplish during the same time period [September 2020-December 2021] show that his claim of alleged "incapability" in no way prevents a finding by the Court that his default was willful:

- He has counsel representing his company, MDC, in the Gerson Vasquez Lawsuit filed in 2019 and currently pending as of March 16, 2022 in the Supreme Court of the State of New York, County of Nassau. *See* <u>Statement of Facts at Section II.E.3</u>. MDC's counsel filed a Demand for Authorizations on September 29, 2020, fifteen days after Defendant was served with the summons and complaint in the instant lawsuit. *See* <u>Statement of Facts at Sections II.B and II.E.3</u>.

- He has counsel representing his company, MDC, in the Moxey Rigby Lawsuit filed in 2019 and currently pending as of March 15, 2022 in the Supreme Court of the State Court of New York, County of Nassau. *See* <u>Statement of Facts at Section II.E.4</u>. MDC's counsel (i) filed a Demand for Discovery and Inspection on November 24, 2020; (ii) filed a Notice for Discovery and Inspection as to Funding Loans on April 19, 2021; and (iii) filed a Notice of Deposition as late as January 26, 2022. *Id.*

- On March 19, 2021, Defendant and his wife executed a mortgage for $567,000 in connection with the purchase of a residence in Plainview, New York. *See* <u>Statement of Facts at Section II.E.6</u>.

Significantly, during the timeframe in question, Defendant had an attorney defending his company MDC in two state court lawsuits in Nassau County, New York, *the very same County in which the instant lawsuit was filed*. Fifteen days after Defendant was served with the summons and complaint in the instant lawsuit on September 14, 2020, counsel for Defendant's company

MDC filed a Demand for Authorizations in the Gerson Vazquez Lawsuit. *See* Statement of Facts at Sections II.B and II.E.3. Approximately 2 months after Defendant was served with the summons and complaint in the instant lawsuit on September 14, 2020, counsel for Defendant's company MDC filed a Demand for Discovery and Inspection on November 24, 2020 in the Moxey Rigby Lawsuit. *See* Statement of Facts at Section II.E.4. Moreover, four days after Plaintiff emailed the Court's Certificate of Default to Defendant on April 15, 2021, counsel for Defendant's company MDC filed a Notice for Discovery and Inspection as to Funding Loans on April 19, 2021 in the Moxey Rigby Lawsuit. *See* Statement of Facts at Sections II.D. and II.E.4.

Moreover, approximately 7 months after being served with the Complaint in the instant lawsuit, Defendant managed to purchase a house costing more than $560,000. *See* Statement of Facts at Section II.E.6.

Given that (i) Defendant had his company's attorney file a number of documents in two ongoing lawsuits in Nassau County, New York in the days and weeks following (a) Defendant being served with the summons and complaint in the instant lawsuit; (b) Plaintiff serving Defendant with the Certificate of Default; and (ii) Defendant purchasing an expensive house approximately six months after he was served with the summons and complaint in the instant lawsuit, Defendant's claim that his medical condition and personal circumstances prevented him from "dealing with" the instant lawsuit rings hollow. Defendant managed to attend to his business and personal affairs but appears to have strategically decided to ignore the instant lawsuit during the same timeframe. Defendant's default was willful.

**Divorce**. Defendant's pending divorce is not sufficient to demonstrate a lack of willfulness, and, tellingly, Defendant cites no case law to the contrary. *See Acosta v. AlpineGate Techs. LLC*, No. CV-14-00452-PHX-JJT, 2014 WL 12773914, at *2 (D. Ariz. Nov. 14, 2014) (defendant's ongoing divorce proceedings are not "grounds for setting aside the default"); *Tygris Asset Fin., Inc. v. Szollas*, No. 09 C 4488, 2010 WL 2610652, at *2–3 (N.D. Ill. June 21, 2010) (defendant's separation from her husband did not "provide her with a valid excuse for failing to file a timely answer to [plaintiff's] complaint"). If divorce, which as of 2018 ended nearly 40% of all

17

marriages, in the United States[7] was enough to excuse a litigant from answering a complaint and defending a lawsuit, default judgments would be so frequently vulnerable to being vacated that the remedy would be nearly toothless.

**COVID-19**: While Defendant claims in a conclusory manner (with no case law citations) that "the COVID-19 pandemic" exacerbated his existing health conditions, the existence of this pandemic that confronted nearly everyone on the globe is insufficient to demonstrate that Defendant's default is not willful. *See Trustees of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Abalene Decorating Inc.*, No. 20-CV-2559 (PKC), 2021 WL 1393455, at *5 (S.D.N.Y. Apr. 13, 2021) (denying defendant's motion to vacate default; where "[defendant's owner's] declaration places conclusory blame on the COVID-19 pandemic but otherwise provides no details…the Court finds that City View's default was the result of gross negligence").

**Confluence of Conditions and Events Rendered Defendant "Simply Incapable of Dealing With the Instant Lawsuit**. Nor are Defendant's conditions [existing health conditions, marital problems, and COVID-19], taken in total, enough to demonstrate that Defendant's default was not willful. Courts have found that conditions significantly more challenging than those faced by Defendant were insufficient to warrant vacating an entry of default. *See Tygris Asset Fin.*, 2010 WL 2610652, at *2–3 ("[defendant's] hip fracture, [defendant's] father's [medical] condition, [defendants'] separation from [her] husband, [defendant's] cancer diagnosis and the difficulty in finding a [local] attorney [from defendant's home in Florida] [which] all contributed to [her] delay in responding to the Summons and Complaint in this case" were not "grounds for setting aside the default"); *Spectrum Lab'ys, LLC v. Vlaze Media Networks, Inc.*, No. CV1400262RGKVBKX, 2015 WL 13919099, at *2 (C.D. Cal. Aug. 31, 2015) ("family illness, long hours of work, the difficulty of doing business in China and the time difference, financial worries, and exhaustion and lack of sleep….did not constitute good cause"); *AMEX Assur. Co. v. Phelps*, No. CV413-062,

---

[7] *See* Time Magazine article from November 26, 2018, available at https://time.com/5434949/divorce-rate-children-marriage-benefits/

13204405.1

2015 WL 1032856, at *2 (S.D. Ga. Mar. 9, 2015) (denying Fed. R. Civ. P. 55(c) motion where defendant was incarcerated and "under stress and depressed because of her legal situation" and "admit[ed] that she 'simply did not deal with the issue'" and "decided not to involve herself in this case").

Here, similarly, the Court should reject Defendant's request that he be excused from intentionally ignoring his responsibilities in the instant lawsuit due to his personally difficult situation. Just like the incarcerated defendant in *AMEX*, Defendant does not allege that his failure to answer the Complaint was "the result of a technical hiccup or similarly excusable conduct"[8] but instead claims that he was "simply incapable of dealing with the instant lawsuit." Motion at 11. This "utter indifference to the rules of this Court"[9] demonstrates that Defendant's default was willful, in line with this Court's understandable hostility towards the "bury your head in the sand" approach adopted by Defendant. *See Lopez v. Mohammed*, No. 14CV4443PKCMDG, 2017 WL 4277154, at (10 (E.D.N.Y. Sept. 26, 2017) (default was willful where "the Court concludes that Defendants likely sought to bury their heads in the sand and hope that this lawsuit would disappear, only choosing to respond after it was clear…that Defendants might actually have to pay money to Plaintiff").

Finally, even though he was served with the Complaint in September 2020, Defendant did not bring these specific events and conditions to the Court's attention until he filed his Motion on March 16, 2022. Further supporting a finding of willfulness is the fact that Defendant also offers no explanation as to why he previously failed to notify Plaintiff's counsel or the Court about his specific conditions that allegedly were preventing him from "dealing with" the lawsuit. *Lucio v. New York City Dep't of Educ. & Marie Douyon*, No. 12 CIV. 247 (DAB), 2013 WL 12084546, at *3 (S.D.N.Y. May 16, 2013), *aff'd sub nom. Lucio v. New York City Dep't of Educ.*, 575 F. App'x 3 (2d Cir. 2014) (no excusable neglect exists where "Plaintiff's former and current counsel made no attempt to ask for an extension or to notify the Court or Defendants of his illness"). For all of

---

[8] *AMEX Assur. Co.*, 2015 WL 1032856, at *2.
[9] *Id.*

13204405.1

these above reasons, Defendant's default was willful.

### 2. <u>Factor (2)</u>: Defendant lacks a meritorious defense.

"Whether a defense is meritorious is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *RL 900 Park LLC*, 2020 WL 70920, at *4 (*citing State St. Bnk*, 374 F.3d at 167). In other words, "[a]lthough in an answer general denials normally are enough to raise a meritorious defense, the moving party on a motion to reopen a default must support its general denial with some underlying facts." *Sony Corp. v. Elm State Elecs., Inc.*, 800 F.2d 317, 320-321 (2d Cir. 1986). To meet this "meritorious defense" standard, defendants must "articulate a defense with a degree of specificity which directly relates that defense to the allegations set forth in the plaintiff's pleadings and raises a 'serious question' as to the validity of those allegations." *Id.* (*citing Sea Hope Navigation Inc. v. Novel Commodities SA*, 978 F. Supp. 2d 333, 339 (S.D.N.Y. 2013)). "The Second Circuit has held that a defaulting defendant's failure to demonstrate the existence of a meritorious defense, standing alone, is a sufficient reason to deny the motion to vacate the entry of default." *Kulwa v. Obiakor OB/GYN P.C.*, No. 12-CV-1868, 2013 WL 504383, at *7 n.6 (E.D.N.Y. Feb. 8, 2013) (denying motion to vacate entry of default).

Here, both of Defendant's alleged meritorious defenses fail for the following reasons.

**<u>Allegedly Meritorious Defense No. 1: Failure to Allege Facts Sufficient to Pierce the Corporate Veil</u>**. Defendant claims that he has a meritorious defense that "Plaintiff has failed to plead sufficient facts to warrant piercing the corporate veil and holding Defendant personally responsible…." Motion at 5.

However, under New York law,[10] *it is not necessary for a plaintiff to pierce the corporate veil in order to assess direct tort liability against an individual officer or director of the corporation*. In New York, "it is well settled that '[w]here a plaintiff asserts tort claims such as for

---

[10] "Based on the acknowledged similarities between New York and New Jersey fraudulent inducement claims, the Court concludes that the application of New York law is appropriate here." 2021.12.02 Report and Recommendation [ECF. 19, PageID# 670].

13204405.1

fraud or fraudulent misrepresentation, there is *no need to pierce the corporate veil* in order to hold corporate officers or employees individually liable for their own acts of fraud....Instead, [a] corporate officer is individually liable for fraudulent acts or false representations of his own, or in which he participates, even though his actions in such respect may be in furtherance of the corporate business." *Sun Prod. Corp. v. Bruch*, No. 10 CIV. 4816 SAS, 2011 WL 5120307, at *5 (S.D.N.Y. Oct. 28, 2011), *aff'd*, 507 F. App'x 46 (2d Cir. 2013) (emphasis added); *Unique Lotus Gems v. Gholian Enterprises Inc.*, No. 18CIV10808ATGWG, 2019 WL 6227856, at *9 (S.D.N.Y. Nov. 22, 2019), *report and recommendation adopted*, No. 18CIV10808ATGWG, 2019 WL 6701953 (S.D.N.Y. Dec. 9, 2019) (emphasis added) (granting default judgment on fraud claim against defendant individual officers of defendant corporation; "a corporate officer who participates in the commission of a tort may be held individually liable, regardless of whether the officer acted on behalf of the corporation in the course of official duties *and regardless of whether the corporate veil is pierced*"); *Capax Discovery, Inc. v. AEP RSD Invs., LLC*, 285 F. Supp. 3d 579, 589–90 (W.D.N.Y. 2018) (emphasis added) (denying defendants' motion to dismiss fraud claim against individual corporate officers; "under New York law '[a] corporate officer who participates in the commission of a tort may be held individually liability...*regardless of whether the corporate veil is pierced*"). Given that, under New York law, officers and directors of a company may be held individually liable for fraud, regardless of whether the officer acted on behalf of the corporation, without a corporation's veil being pierced, Plaintiff's failure to allege facts supporting the piercing of the corporate veil is ***not*** a meritorious defense, as it is not a "complete defense" under New York law. *RL 900 Park LLC*, 2020 WL 70920, at *4.

      **Allegedly Meritorious Defense No. 2: Failure to Join MDC as a Party**. Defendant claims that he "has a meritorious basis to dismiss this action under FRCP Rule 19 because Defendant's company, MDC, is a necessary and indispensable party that Plaintiff failed to join in this action." Motion at 6. Based on the fact that "[Plaintiff's] contract is with MDC," Defendant claims that MDC is "a necessary and indispensable party under Rule 19." *Id.* at 6. In in support of this alleged defense, Defendant further asserts that "by obtaining the arbitration award [against

13204405.1

MDC] and separately filing the instant lawsuit against [Defendant] personally, Plaintiff has created a risk of inconsistent awards." *Id.* at 7. These interrelated Fed. R. Civ. P. 19 arguments fail for the following reasons.

**First**, MDC's status as a signatory to the subcontracts does not make MDC "indispensable" for the purposes of Fed. R. Civ. P. 19. The Second Circuit has made it clear that a "bright-line rule that all parties to a contract are indispensable" is "inconsistent with Rule 19(b)'s flexible standard." *CP Sols. PTE, Ltd. v. Gen. Elec. Co.*, 553 F.3d 156, 159 (2d Cir. 2009). In *Allegany Cap. Enterprises, LLC v. Cox*, No. 19-CV-160S, 2021 WL 534803, at *17-18 (W.D.N.Y. Feb. 12, 2021), *reconsideration denied sub nom. Allegany Cap. Enterprises, LLC v. Cox*, No. 19-CV-160S, 2021 WL 1807868 (W.D.N.Y. May 6, 2021), the court rejected defendants' argument under Fed. R. Civ. P. 19 that the case should be dismissed because the necessary nonparty, who was a signatory to three contracts relating to this lawsuit, was not and could not be named in the lawsuit. Noting that, rather than asserting breach of contract, plaintiffs' claims were that "they were misled on a crucial provision that led them to enter into [the contracts with the nonparty]," the court concluded that (i) it did not need the nonparty to "effect relief"; (ii) "plaintiffs are not impeded from pursuing their claims and Defendants are not hindered from defending themselves because [the nonparty] is not a party here"; and (iii) "[n]either side is at risk of having inconsistent obligations or incurring multiple liabilities if this case proceeds without [the nonparty]." *Id.*; *Spencer Stuart Hum. Res. Consultancy (Shanghai) Co. v. Am. Indus. Acquisition Corp.*, No. 17CV2195(DLC), 2017 WL 4570791, at *3 (S.D.N.Y. Oct. 12, 2017) (rejecting defendant's motion to dismiss for failure to join an indispensable party; although nonparty was a party to a contract, it was not indispensable given the lack of prejudice to the nonparty or the current parties).

**Second**, Defendant's argument of a risk of inconsistent awards fails for the reasons explained below. In an analogous case, this Court held a non-party subsidiary [CSS] of a defendant [CSG] was not a necessary or indispensable party where (i) the actions of CSG and its officers were the focus of the lawsuit; (ii) the plaintiff completed arbitration proceedings against CSS and the amount of damages owed by CSS to plaintiff had already been litigated; and therefore

13204405.1

(iii) "there is little danger of CSS being bound by findings made in its absence, and CSS need not worry about 'the effect of the doctrines of issue and claim preclusion on a parallel, subsequently-filed' action." *STMicroelectronics v. Credit Suisse Grp.*, 775 F. Supp. 2d 525, 543–44 (E.D.N.Y. 2011). For these reasons, the Court could not "conceive of any interest of CSS that may 'as a practical matter [be] impair[ed] or impede[d]' should this lawsuit proceed in its absence." *Id.* Similarly, the Court found that non-party CSS's absence from the litigation "will not subject CSG to 'multiple' or 'inconsistent obligations.'" *Id.* at 544. The court reasoned that "either CSG is liable as a controlling person or a corporate principal…or it is not; and either CSG is liable for conversion…or it is not….Any of these results is consistent with the previous finding of primary liability as against CSS." *Id.*

Here, similarly, while MDC is a party to the two Subcontracts, it is not "indispensable" for the purposes of Fed. R. Civ. P. 19 because "complete relief can be afforded with the present parties and the Court does not need [MDC] to effect relief." *Allegany Cap. Enterprises, LLC*, 2021 WL 534803, at *17. As with the parties in *Allegany Cap. Enterprises*, Plaintiff is pursuing a fraudulent inducement claim against Defendant, as opposed to the breach of contract claims Plaintiff pursued against MDC in arbitration. *Id.* Moreover, just as in *STMicroelectronics*, (i) the actions of Defendant are the focus of the instant lawsuit; and therefore (ii) "there is little danger" of MDC being "bound by findings made in its absence[.]" *STMicroelectronics*, 775 F. Supp. 2d at 543-544. Furthermore, just like in *STMicroelectronics*, either Defendant is liable for fraudulent inducement or he is not, and "[a]ny of these results is consistent with the previous finding [in the prior MDC arbitration] of…liability against [MDC]." *Id.* at 544. Thus, Defendant's argument that MDC is an indispensable party under Fed. R. Civ. P. 19 fails.

For each of the aforementioned reasons, Defendant has failed to establish the existence of a single meritorious defense.  Defendant's Motion should be denied.

### 3. <u>Factor (3)</u>: Plaintiff would be prejudiced if Defendant's Motion is granted.

"To establish prejudice in the context of a default, there must be a showing that 'the delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion.'" *Gesualdi v. Quadrozzi Equip. Leasing Corp.*, No. 11CIV115RJDVMS, 2016 WL 4487668, at *12 (E.D.N.Y. Aug. 3, 2016), *report and recommendation adopted*, No. 11CV115RJDVMS, 2016 WL 7322333 (E.D.N.Y. Dec. 15, 2016), *aff'd*, 707 F. App'x 59 (2d Cir. 2017) (recommending that court deny motion to vacate default judgment) (*citing Arthur F. Williams, Inc. v. Helbig*, 208 F.R.D. 41, 45 (E.D.N.Y. 2002) (quoting *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983))). Thus, "delay alone is not a sufficient basis for establishing prejudice," and the plaintiff must instead show "[s]omething more," such as that the "***delay may thwart plaintiff's recovery or remedy***." *Id.* (emphasis added) (*citing New York v. Green*, 420 F.3d 99, 110 (2d Cir. 2005)(internal citations omitted)).

Where (i) a default is willful; and (ii) defendant has failed to identify a meritorious defense, courts in the Second Circuit need not even evaluate the issue of prejudice. *See Avions De Transp. Reg'l G.I.E. v. Avian Lineas Aereas S.A.*, No. 19 CIV. 6769 (AKH), 2019 WL 5965206, at *5 (S.D.N.Y. Nov. 12, 2019), *reconsideration denied*, No. 19 CIV. 6769 (AKH), 2019 WL 11274574 (S.D.N.Y. Dec. 19, 2019), and *appeal dismissed sub nom. Avions De Transp. Reg'l G.I.E. v. Synergy Aerospace Corp.*, No. 19-4128, 2020 WL 7329104 (2d Cir. Sept. 17, 2020) (denying motion to vacate entry of default; "[h]aving concluded that Defendants willfully defaulted and lack a meritorious defense, I need not reach the question of whether the Plaintiff would be prejudiced by vacatur of the default").

In his Motion, Defendant claims in a conclusory manner that "no prejudice will flow to Plaintiff as a result of this Court granting the instant motion." Motion at 8. However, to the contrary, if the entry of default is vacated, Plaintiff will suffer prejudice because its ability to collect on a judgment against Defendant would be severely impaired. Since 2014, Defendant has faced a number of lawsuits and judgments including, but not limited, to:

1. **Cronolly Fraud Lawsuit**. A judgment for $72,463,50 was entered against Defendant and his company in 2015 in a lawsuit alleging fraud that took Defendant and his company until 2019 to satisfy. *See* Statement of Facts at Section II.E.1. While Defendant and his company were both properly served, *neither answered the complaint* or *opposed the motion for default judgment*. *Id.*

2. **2015 SIF Judgment**. A 2015 judgment was entered against Defendant's company Premier Construction Corp. for $36,709.55 *that remains unsatisfied as of 2022*. *See* Statement of Facts at Section II.E.5. Defendant's company Premier was properly served *but Premier did not appear or answer*.

3. **Premier Workers' Compensation Judgment.** A 2017 judgment was entered against Defendant's company Premier Construction Corp. for $3,500 *that remains unsatisfied as of 2022*. *See* Statement of Facts at Section II.E.7.

4. **December 2020 Workers' Compensation Judgment.** A 2020 judgment was entered against Defendant's company, Commercial Contracting Services, Inc. for $48,500 *that remains unsatisfied as of 2022*. *See* Statement of Facts at Section II.E.8.

5. **April 2021 Workers' Compensation Judgment**. A 2021 judgment was entered against Defendant's company, MDC, for $30,500 *that remains unsatisfied as of 2022*. *See* Statement of Facts at Section II.E.9.

6. **2021 Arbitration Award**. A 2021 arbitration award was granted against Defendant's company, MDC, *for $10,021,831.10*. *See* Statement of Facts at Section II.E.10.

7. **Pineda Class Action Lawsuit**. A federal class action lawsuit was filed against Defendant and his company Commercial Contracting Services, Inc. in 2021. *See* Statement of Facts at Section II.E.2. Although a settlement has been proposed between Plaintiff and co-defendant Jobco for $208,000.00, Defendant and his company are expressly excluded from the proposed release. *Id.* Furthermore, Jobco has filed a crossclaim against Defendant and Commercial Contracting Services, Inc. *Id.* Defendant and his company *have not appeared or defended in this lawsuit*, and this lawsuit *remains outstanding as of 2022*.

8. **Gerson Vazquez Lawsuit**. A lawsuit filed in 2019 against Defendant's company, MDC, seeking damages from MDC, *remains pending in 2022*. *See* Statement of Facts at Section II.E.3.

9. **Moxey Rigby LLC Third-party Lawsuit.** A third-party Complaint filed in 2019 against Defendant's company, MDC, seeking damages against MDC, *remains pending in 2022*. *See* Statement of Facts at Section II.E.4.

Additionally, in March 2021, Defendant took out a $567,000 mortgage in connection with the purchase of a residence in Plainview, New York. *See* Statement of Facts at Section II.E.6.

As demonstrated in the list above, Defendant and his companies are currently subject to (i) 4 separate unsatisfied judgments totaling $124,061.24; (ii) an unsatisfied arbitration award for $10,021,831; (iii) a mortgage of $567,000; (iv) 5 pending lawsuits where damages are sought; and (v) 4 lawsuits where Defendant and/or his company failed to appear or defend.

Faced with collection difficulties less extensive than those faced by Plaintiff in the instant lawsuit, courts within the Second Circuit have repeatedly held that a plaintiff would be prejudiced, for the purposes of Fed. R. Civ. P. 55(c), where the vacating of an entry of default would likely impair the plaintiff's ability to collect upon a judgment. *See Trustees of Pavers*, 2020 WL 32466, at *2 (prejudice to plaintiff demonstrated where (i) defendant's company had significantly diminished in size, plus (ii) "the fact that there are three other lawsuits pending against defendant for unpaid plan contributions, creates a pretty clear picture of looming if not present insolvency"); *77 Charters, Inc. v. SYC Realty LLC*, No. CV 2010 01681 SLT, 2012 WL 1077706, at *12, *14 (E.D.N.Y. Feb. 27, 2012), *report and recommendation adopted*, No. 10-CV-1681 SLT MDG, 2012 WL 1078466 (E.D.N.Y. Mar. 30, 2012) ("[b]ecause of the apparent financial problems of the defendants, which have resulted in at least one other lawsuit brought by another creditor…any further delay could jeopardize plaintiff's ability to collect on a judgment"); *DIRECTV, LLC v. Wright*, No. 15-CV-474-FPG, 2019 WL 6841555, at *6 (W.D.N.Y. Dec. 16, 2019) (recognizing defendants "indicated that they were poor and had no funds from which [plaintiff] could collect on a judgment" and that "delay can be prejudicial for Rule 55 purposes where it will diminish a plaintiff's ability to collect on a judgment"); *Chudomel v. Dynamic Recovery Servs., Inc.,* No. 12-CV-05365, 2013 WL 5970613, at *6 (E.D.N.Y. Nov. 8, 2013) ( "the potential prejudice to plaintiff if the entry of default were vacated consists of her diminished ability to collect on a judgment against defendant: defendant's attorney acknowledged...that defendant is suffering from financial troubles").

13204405.1

Given the liabilities already faced by Defendant and his companies, and the likelihood that additional liabilities will accrue in the future based on the pending lawsuits, Plaintiff will be prejudiced if Defendant's Motion is granted, as the resulting delay in obtaining a judgment against Defendant would likely significantly diminish Plaintiff's ability to collect on a judgment.

## 4. Defendant's Additional "Equitable Factors" Do Not Change The Outcome

In addition to the three factors considered by the courts in the Second Circuit discussed above, Defendant claims that "[o]ther equitable factors also militate in favor of vacating the certificate of default." Motion at 11. First, Defendant claims that "given the significance" of the amount of damages sought by Plaintiff, "equity demands that the default be vacated." *Id.* But this argument ignores that, because Defendant will be fully able to participate in the future damages phase of the instant lawsuit and bring up any objections at that time, the amount of damages sought by Plaintiff is irrelevant as to whether the Certificate of Default should be vacated.

Additionally, Defendant argues that "given that Plaintiff has already obtained an arbitration award against MDC, permitting Plaintiff to enter a default judgement [sic] would result in Plaintiff obtaining a windfall, double-recovery for the same alleged wrong." *Id.* at 11. However, case law within the Second Circuit makes it clear that Plaintiff is ***not*** seeking a recovery against Defendant "for the same alleged wrong." *Sun Prod. Corp. v. Bruch*, 507 F. App'x 46, 47–48 (2d Cir. 2013) ("the fraud claim is not duplicative of the breach of contract claim" because "a fraud claim may be dismissed as duplicative only as against a defendant against whom the related contract is viable" and defendant "was not a party to his company's contract, and is being sued personally for his willful misrepresentations, not for breach of any contract"); *Wild Bunch, SA v. Vendian Ent., LLC*, 256 F. Supp. 3d 497, 502–03 (S.D.N.Y. 2017) ("a fraud claim may be dismissed as duplicative only as against a defendant against whom the related contract claim is viable….Thus, 'a plaintiff who is induced to enter into a contract with a company due to fraudulent misrepresentations by the company's president may assert a fraudulent inducement claim against the president'").

Furthermore, Defendant's claim that "permitting Plaintiff to [obtain] a default judgement

13204405.1

[sic] would result in Plaintiff obtaining a windfall, double recovery" is nothing more than blatant speculation. Is Defendant (whose attorney does not represent MDC in the parallel litigation) making a judicial admission that MDC has the means to satisfy in full the multimillion dollar judgment Plaintiff obtained in its arbitration proceeding against MDC? Is Defendant making a judicial admission that he has the means to satisfy a multimillion dollar judgment in favor of Plaintiff? This speculation, devoid of any facts, provides no reason for the Court to vacate the Certificate of Default.

# PART II--RESPONSE TO DEFENDANT'S OBJECTIONS TO REPORT AND RECOMMENDATION

## IV.     DEFENDANT'S OBJECTIONS TO REPORT AND RECOMMENDATION SHOULD BE OVERRULED

### A.   <u>Applicable Law</u>

"A district court reviewing a magistrate judge's report and recommendation 'may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.'" *Seifts v. Consumer Health Sols. LLC*, No. 05 CIV. 9355 ER LMS, 2015 WL 1069270, at *2 (S.D.N.Y. Mar. 11, 2015) (*citing* 28 U.S.C. § 636(b)(1)(C)). "Parties may raise 'specific,' 'written' objections to the report and recommendation '[w]ithin fourteen days after being served with a copy.'" *Id.* "A district court reviews *de novo* those portions of the report and recommendation to which timely and specific objections are made." *Id.* (*citing* 28 U.S.C. § 636(b)(1)(C)). Significantly, as this Court has recognized, "[w]here 'the objecting party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the report and recommendation strictly for clear error.'" *J&J Sports Prods. Inc. v. RK Soto Enterprises*, No. 17CV2636WFKVMS, 2020 WL 7041089, at *1 (E.D.N.Y. Dec. 1, 2020).

### B.   <u>The Court Should Not Consider Defendant's New Evidence</u>

This Court has made it clear that the Court should not consider new evidence submitted by a party in its objections to a Report and Recommendation. *Smith v. Smith*, No. 19CV01638AMDRML, 2021 WL 3524160, at *2 (E.D.N.Y. Aug. 11, 2021) ("[h]owever, even in

a *pro se* action, 'absent a most compelling reason, the submission of new evidence in conjunction with objections to  the Report and Recommendation should  not  be permitted'"). By expressly incorporating Defendant's Motion, Defendant improperly attempts to shoehorn new evidence into his Objections to the Report and Recommendation. The Court should therefore decline to consider this new evidence and instead review the Court's Report and Recommendation for "clear error." Under this standard, Defendant's Objections should be overruled.

### C.  Even if Defendant's Evidence is Properly Considered by the Court, Defendant's Objections Should Still Be Overruled

Even if the Court considers the new evidence, Defendant's Objections should nevertheless still be overruled for the reasons explained in Section III above and summarized below.

**First**, Defendant's default was willful. Despite being served with the summons and complaint, he took no steps in the instant lawsuit for nearly fifteen months, thus demonstrating the willfulness of his default. Furthermore, none of the reasons articulated by Defendant for this default are sufficient, even taken together, to support a finding of a lack of willfulness. During the period that Defendant was allegedly so overwhelmed he could not deal with this lawsuit, Defendant managed to (i) purchase a house; and (ii) have an attorney representing his company MDC in two separate state court actions in Nassau County, New York file documents seeking discovery. Defendant's ability to manage his personal and business affairs on other fronts strongly suggest that he strategically decided to ignore the instant lawsuit.  For all of these reasons, Defendant's default was willful.

**Second**, Defendant lacks a meritorious defense. First, while Defendant claims that Plaintiff had failed to allege facts sufficient to pierce the corporate veil, Defendant's argument ignores the fact that, under New York law, it is not necessary for a plaintiff to pierce the corporate veil in order to assess direct liability for fraud against an individual officer or director of a corporation. *Sun Prod. Corp.*, 2011 WL 5120307, at *5. Second, while Defendant cites Plaintiff's failure to join MDC as a Party in the instant lawsuit as a "meritorious defense," this ignores the fact that the arbitration against MDC dealt with breach of contract claims, against MDC, whereas the instant

13204405.1

lawsuit deals with fraudulent inducement claims against Defendant individually. Either Defendant is liable for fraudulent inducement or he is not, and either of these results is consistent with the previous finding of the arbitrators that MDC was liable for breach of contract. Therefore, complete relief may be afforded with the present parties and MDC is not an indispensable party for the purposes of Fed. R. Civ. P. 19.

**Third**, Plaintiff would be prejudiced if Defendant's Motion is granted. As explained in Section III above, Defendant and his companies are currently subject to (i) 4 unsatisfied judgments; (ii) an unsatisfied arbitration award; (iii) a mortgage of $567,000; and (iv) 5 pending lawsuits where damages are sought. Given the liabilities already faced by Plaintiff and his companies, and the likelihood that additional liabilities will accrue in the future, Plaintiff will be prejudiced if Defendant's Motion is granted, as the resulting delay in obtaining a judgment against Defendant would likely considerably diminish Plaintiff's ability to collect on a judgment.

# PART III—UNOPPOSED MOTION FOR LEAVE TO REDACT PORTIONS OF THIS OPPOSITION BRIEF

## V.   THE COURT SHOULD GRANT PLAINTIFF ITS UNOPPOSED MOTION FOR LEAVE TO REDACT PORTIONS OF PLAINTIFF'S OPPOSITION BRIEF.

Plaintiff does not oppose (i) Defendant's "Motion to Seal Defendant's Declaration and Redact this Branch of Defendant's Motion"; and (ii) any Motion to Seal Defendant files with his subsequent Reply Brief. Furthermore, on March 18, 2022, Defendant's counsel indicated via telephone that he would not oppose Plaintiff's Motion to Redact Portions of its Opposition Brief.

For all of the reasons stated in Defendant's "Motion to Seal Defendant's Declaration and Redact this Branch of Defendant's Motion" [which Plaintiff incorporates these arguments by reference] as well as the reasons set forth below, Plaintiff respectfully requests leave to redact (i) Section III.B.1; and (ii) Section V of Plaintiff's Opposition Brief. Case law in the Second Circuit supports the redaction of these sections that deal with Defendant's divorce and mental health. *Robinson v. De Niro*, No. 19-CV-9156 (KHP), 2022 WL 274677, at *4 (S.D.N.Y. Jan. 26, 2022) (granting request to seal material discussing medical issues, marital issues, and questions

about plaintiff's "mental health treatments"); *Paykina on behalf of E.L. v. Lewin*, 387 F. Supp. 3d 225, 231 (N.D.N.Y. 2019) (while Court found that plaintiff's minor child's "mental health records are judicial documents to which there is a 'strong presumption of access,'" the court determined that plaintiff's minor child's "strong privacy interest in such records outweighs the public interest in disclosure" and therefore testimony concerning plaintiff's minor child's "mental health records and treatment…[were] redacted from the publicly filed decision"). For this reason, Plaintiff requests leave to redact (i) Section III.B.1; and (ii) Section V of its Opposition Brief.

## VI.   UNOPPOSED REQUEST FOR SHORT PAGE LIMIT EXTENSION

Pursuant to Paragraph 3.E of the Court's Individual Practice Rules, "[r]equests to exceed [the 25-page limit] are freely granted when a motion addresses numerous claims and so these page limits are not an excuse for failing to fully brief an issue." Here, given (i) the complexities of the legal and factual issues in the instant lawsuit; (ii) the need for Plaintiff to (a) respond to Defendant's underlying Motion to Vacate Certificate of Default; (b) respond to Defendant's objections to the Court's Report and Recommendation; and (c) move the Court to seal certain portions of this Opposition Brief, Plaintiff respectfully requests that the Court permit Plaintiff to modestly exceed this page limit for this document. On March 18, 2022, Defendant's counsel consented via telephone to this request for a short page extension.

## VII.   CONCLUSION

For the reasons stated herein, it is respectfully requested that the Court (i) overrule Defendant's Objections to the Court's Report and Recommendation; and (ii) deny Defendant's Motion to Vacate the Certificate of Default.

Dated: April 4, 2022

Respectfully Submitted,

*/s/ Aaron S. Evenchik*
Aaron S. Evenchik (Ohio Bar No. 0073809)
(admitted *pro hac vice*)

13204405.1

Charles W. Pugh (Ohio Bar No. 0078145)
(admitted *pro hac vice*)
**HAHN LOESER & PARKS LLP**
200 Public Square, Suite 2800
Cleveland, Ohio 44114
Phone: (216) 621-0150
Fax: (216) 241-2824
Email: cpugh@hahnlaw.com
          aevenchik@hahnlaw.com

and


*/s/ Christopher Nucifora*   (New York No. 5473384)
**Kaufman Dolowich Voluck LLP**
40 Exchange Place, 20th Floor
New York, NY 10005
Phone: (212) 485-9600
Fax: (212) 485-9700
Email: cnucifora@kdvlaw.com

**Kaufman Dolowich Voluck LLP**
25 Main Street, Suite 500
Hackensack, New Jersey 07601
Phone: (201) 488-6655
Fax: (201) 488-6652

*Counsel for Plaintiff Geis Construction South,
LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that, pursuant to Rule 3.F. to Judge Hurley's Individual Practice Rules, I emailed Defendant's counsel Joseph Amsel the foregoing on April 4, 2022 at jzamsel@amsellaw.com with the understanding that, pursuant to the Court's "Bundle Rule," Mr. Amsel would on April 11, 2022 (i) file all motion papers together with the Court; and (ii) send a complete set of courtesy copies to the Court. At that time, on April 11, 2022, Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system.

/s/ *Aaron S. Evenchik*
*One of the Attorneys for Plaintiff Geis Construction South, LLC*

33

13204405.1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| GEIS CONSTRUCTION SOUTH, LLC, | ) | |
| | ) | |
| Plaintiff | ) | **CASE NO. 2:20-cv-03834** |
| v. | ) | |
| | ) | |
| JAIME DELAHUNT, | ) | |
| | ) | **JUDGE DENIS R. HURLEY** |
| Defendant | ) | |
| | ) | **MAGISTRATE JUDGE JAMES A.** |
| | ) | **WICK** |
| | ) | |

**DECLARATION OF CHARLES W. PUGH IN SUPPORT OF**
**OPPOSITION TO DEFENDANT'S MOTION TO VACATE**
**ENTRY OF DEFAULT AND RESPONSE TO DEFENDANT'S**
**OBJECTIONS TO THE REPORT AND RECOMMENDATION**

I, Charles W. Pugh, Esq., declare as follows:

1.       I am a partner in the law firm of Hahn, Loeser & Parks LLP ("Hahn Loeser") one of the counsel of record in the instant lawsuit for Plaintiff Geis Construction South, LLC ("Plaintiff"). I make this declaration in support of Plaintiff's Opposition to Defendant Jaime Delahunt's ("Defendant") Motion to Vacate Entry of Default and Response to Defendant's Objections to the December 2, 2021 Report and Recommendation. I make this declaration of my own personal knowledge and, if called as a witness, I could and would testify competently to the truth of the matters set forth herein.

2.       On March 26, 2021, Plaintiff, through a Hahn Loeser employee, emailed Plaintiff's March 26, 2021 Status Report to Defendant. A true and correct copy of the 2021.03.26 Shannon Marsh email to Jaime Delahunt is attached as Ex. A.

3.       On April 8, 2021, Plaintiff, through a Hahn Loeser employee, emailed Plaintiff's April 8, 2021 Supplemental Status Report to Defendant. A true and correct copy of the 2021.04.08 Shannon Marsh email to Jaime Delahunt is attached as Ex. B.

13204405.1

4.      On April 14, 2021, Plaintiff, through a Hahn Loeser employee, emailed Plaintiff's April 14, 2021 Request for Certificate of Default to Defendant. A true and correct copy of the 2021.04.14 Shannon Marsh email to Jaime Delahunt is attached as Ex. C.

5.      On April 15, 2021, Plaintiff, through a Hahn Loeser employee, emailed the Court's April 14, 2021 Certificate of Default to Defendant. A true and correct copy of the 2021.04.15 Shannon Marsh email to Jaime Delahunt is attached as Ex. D.

6.      On April 26, 2021 Plaintiff, through a Hahn Loeser employee, emailed and mailed Plaintiff's Motion for Default Judgment to Defendant. A true and correct copy of the 2021.04.26 Shannon Marsh email to Jaime Delahunt is attached as Ex. E.

7.      A copy of the Verified Complaint in the Cronolly lawsuit (the "Cronolly Lawsuit") filed in the Supreme Court of New York, County of Nassau is attached, without exhibits, as Ex. F.

8.      A copy of the letter from the Office of Consumer Affairs in Nassau County, NY to Defendant and Premier Construction Corp. ("Premier"), an exhibit to the verified complaint in the Cronolly Lawsuit, is attached as Ex.G.

9.      A copy of the judgment entered in the Cronolly Lawsuit is attached as Ex. H.

10.      A copy of the Satisfaction of Judgment in the Cronolly Lawsuit is attached as Ex. I.

11.      A copy of the January 28, 2021 Amended Complaint filed by Julio Pineda in his lawsuit in the United States District Court for the Eastern District of New York (the "Pineda Class Action Lawsuit") is attached as Ex. J.

12.      A copy of the Jobco Answer and Crossclaim filed by Jobco in the Pineda Class Action Lawsuit on February 11, 2021 is attached as Ex. K.

13.      A copy of Pineda's Motion for Preliminary Approval of the Class Action Settlement with Jobco, filed by Pineda on May 20, 2021, is attached as Ex. L.

14.      Based on electronic court records, the Pineda Class Action Lawsuit remains pending as of March 15, 2022.

13204405.1

15.     A copy of a Summons and Complaint filed by Gerson Vasquez (the "Gerson Vasquez Lawsuit") in the Supreme Court of New York, County of Nassau, is attached as Ex. M.

16.     Based on electronic court records, as of March 15, 2022, the Gerson Vasquez Lawsuit remains pending.

17.     As of March 15, 2022, electronic court records indicate that MDC Home Improvements, Inc. ("MDC") is represented in the lawsuit by Carmen A. Nicolaou of Chartwell Law in White Plains, New York.

18.     As of March 18, 2022, electronic court records indicate that (i) MDC filed a Demand for Authorizations on September 29, 2020; and (ii) MDC filed a Notice in the lawsuit on or about December 7, 2021.

19.     A copy of the Summons and Complaint filed by Moxey Rigby on November 19, 2019 in the Supreme Court of New York, County of Nassau (the "Moxey Rigby Lawsuit"), is attached as Ex. N.

20.     Based on electronic court records, as of March 15, 2022, the Moxey Rigby Lawsuit remains pending against MDC.

21.     As of March 15, 2022, electronic court records indicate that MDC is represented in the lawsuit by Carmen A. Nicolaou of Chartwell Law in White Plains, New York.

22.     Based on electronic court records as of March 18, 2022, MDC's counsel (i) filed a Demand for Discovery and inspection on November 24, 2020; (ii) filed a Notice for Discovery and Inspection as to Funding Loans on April 19, 2021; and (iii) filed a Notice of Deposition as recently as January 26, 2022.

23.     A copy of the Summons and Complaint filed by the Commissioners of the State Insurance Fund ("SIF") on May 11, 2015 against Defendant's company, Premier, in the Supreme Court of New York, County of Nassau (the "2015 SIF Matter"), is attached as Ex. O.

24.     A copy of the judgment entered by the court on July 6, 2015 in the 2015 SIF Matter is attached as Ex. P.

13204405.1

25.      As of March 15, 2022, the electronic property records of Nassau County, New York fail to show any indication that the judgment in the 2015 SIF Matter has been satisfied.

26.      An excerpt of a Mortgage executed on March 19, 2021 by Defendant and his wife in connection with the purchase of a residence in Plainview, New York (the "March 2021 Mortgage") is attached as Ex. Q.

27.      As of March 15, 2022, the electronic property records of Nassau County, New York fail to show any indication that the March 2021 Mortgage has been satisfied.

28.      A copy of the workers' compensation judgment entered on February 23, 2017 in the Supreme Court of New York, County of Nassau, against Defendant's company, Premier, in favor of the Workers' Compensation Board of the State of New York (the "2017 Workers' Compensation Judgment"), is attached as Ex. R.

29.      As of March 15, 2022, the electronic property records of Nassau County, New York fail to show any indication that the 2017 Workers' Compensation Judgment has been satisfied.

30.      A copy of the workers' compensation judgment entered on December 18, 2020 in the Supreme Court of New York, County of Nassau, against Defendant's company, Commercial Contracting Services, Inc., in favor of the Workers' Compensation Board of the State of New York (the "2020 Workers' Compensation Judgment"), is attached as Ex. S.

31.      As of March 15, 2022, the electronic property records of Nassau County, New York fail to show any indication that the 2020 Workers' Compensation Judgment has been satisfied.

32.      A copy of the workers' compensation judgment entered on April 9, 2021 in the Supreme Court of New York, County of Nassau, against Defendant's company, MDC, in favor of the Workers' Compensation Board of the State of New York (the "2021 Workers' Compensation Judgment"), is attached as Ex. T.

33.      As of March 15, 2022, the electronic property records of Nassau County, New York fail to show any indication that the 2020 Workers' Compensation has been satisfied.

13204405.1

34.     On April 30, 2021, Plaintiff filed against MDC an Application to Confirm Arbitration Award, titled *Geis Construction South, LLC v. MDC Home Improvements, Inc.*, Case No. 2:21-cv-02407-LDH-ST, a copy is attached as Ex. U.

35.     To date, MDC has taken no action, and has not appeared, in this parallel litigation.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: April 4, 2022           Respectfully submitted,

                              /s/ *Charles W. Pugh*
                              Charles W. Pugh

13204405.1

# EXHIBIT A

**Charles Pugh**

| | |
|---|---|
| **From:** | Shannon N. Marsh <smarsh@hahnlaw.com> |
| **Sent:** | Friday, March 26, 2021 11:25 AM |
| **To:** | jaimemdcinc@gmail.com |
| **Cc:** | Aaron Evenchik; Charles Pugh; Christopher Nucifora; Seth Griep |
| **Subject:** | Geis Construction South, LLC v. Jaime Delahunt - Case No.: 2:20-cv-03834: Geis Status Report |
| **Attachments:** | 011) 2021.03.26 Geis Status Report to Court.pdf |

Good Morning:

On behalf of Attorney Evenchik, please find *Geis Construction South, LLC's Status Report* attached to this email. The attached Status Report was filed with the Court today.

Thank you,
Shannon





**Shannon N. Marsh** | Paralegal
**Hahn Loeser & Parks LLP** | MORE THAN A CENTURY OF CLIENT SERVICE
Tel: (216) 274-2281 | Fax: (216) 297-4161
smarsh@hahnlaw.com | hahnlaw.com
200 Public Square, Suite 2800 | Cleveland, OH 44114

*Hahn Loeser & Parks LLP is a full-service law firm with a national footprint and international reach, with offices in Cleveland, Columbus, Naples, Fort Myers, San Diego, and Chicago.*

*This email may contain information that is confidential or privileged, and it is intended only for the addressee(s). If you are not the intended recipient, you are prohibited from using, copying, or distributing this email, its contents, or any attachment.*

# EXHIBIT B

**Charles Pugh**

| | |
|---|---|
| **From:** | Shannon N. Marsh <smarsh@hahnlaw.com> |
| **Sent:** | Thursday, April 8, 2021 12:11 PM |
| **To:** | 'jaimemdcinc@gmail.com' |
| **Cc:** | Aaron Evenchik; Charles Pugh; 'Christopher Nucifora'; 'Seth Griep' |
| **Subject:** | Geis Construction South, LLC v. Jaime Delahunt - Case No.: 2:20-cv-03834: Geis Supplemental Status Report |
| **Attachments:** | 012) 2021.04.08 Geis Supplemental Status Report to Court.PDF |

Good Afternoon:

On behalf of Attorney Evenchik, please find *Geis Construction South, LLC's Supplemental Status Report* attached to this email. The attached was filed with the Court today.

Thank you,
Shannon





**Shannon N. Marsh** | Paralegal
**Hahn Loeser & Parks LLP** | MORE THAN A CENTURY OF CLIENT SERVICE
Tel: (216) 274-2281 | Fax: (216) 297-4161
smarsh@hahnlaw.com | hahnlaw.com
200 Public Square, Suite 2800 | Cleveland, OH 44114

*Hahn Loeser & Parks LLP is a full-service law firm with a national footprint and international reach, with offices in Cleveland, Columbus, Naples, Fort Myers, San Diego, and Chicago.*

*This email may contain information that is confidential or privileged, and it is intended only for the addressee(s). If you are not the intended recipient, you are prohibited from using, copying, or distributing this email, its contents, or any attachment.*

# EXHIBIT C

| **From:** | Shannon N. Marsh <smarsh@hahnlaw.com> |
| **Sent:** | Wednesday, April 14, 2021 1:25 PM |
| **To:** | 'jaimemdcinc@gmail.com' |
| **Cc:** | Aaron Evenchik; Charles Pugh; 'Christopher Nucifora'; 'Seth Griep' |
| **Subject:** | Geis Construction South, LLC v. Jaime Delahunt - Case No.: 2:20-cv-03834: Geis Request for Certificate of Default |
| **Attachments:** | 013) 2021.04.14 Geis Request for Certificate of Default.pdf |

Good Afternoon:
On behalf of Attorney Evenchik, please find *Geis Construction South, LLC's Request for Certificate of Default* attached to this email. The attached was filed with the Court today.

Thank you,
Shannon





**Shannon N. Marsh** | Paralegal
**Hahn Loeser & Parks LLP** | MORE THAN A CENTURY OF CLIENT SERVICE
Tel: (216) 274-2281 | Fax: (216) 297-4161
smarsh@hahnlaw.com | hahnlaw.com
200 Public Square, Suite 2800 | Cleveland, OH 44114

*Hahn Loeser & Parks LLP is a full-service law firm with a national footprint and international reach, with offices in Cleveland, Columbus, Naples, Fort Myers, San Diego, and Chicago.*

*This email may contain information that is confidential or privileged, and it is intended only for the addressee(s). If you are not the intended recipient, you are prohibited from using, copying, or distributing this email, its contents, or any attachment.*

# EXHIBIT D

**Charles Pugh**

| | |
|---|---|
| **From:** | Shannon N. Marsh <smarsh@hahnlaw.com> |
| **Sent:** | Thursday, April 15, 2021 6:57 PM |
| **To:** | 'jaimemdcinc@gmail.com' |
| **Cc:** | Aaron Evenchik; Charles Pugh; 'Christopher Nucifora'; 'Seth Griep' |
| **Subject:** | Geis Construction South, LLC v. Jaime Delahunt - Case No.: 2:20-cv-03834:  Certificate of Default |
| **Attachments:** | 014) 2021.04.14 Certificate of Default.PDF |

Good Evening:
Please find the *Certificate of Default* issued by the Court attached to this email. A copy of the same has been mailed to you.

Thank you,
Shannon





**Shannon N. Marsh** | Paralegal
**Hahn Loeser & Parks LLP** | MORE THAN A CENTURY OF CLIENT SERVICE
Tel: (216) 274-2281 | Fax: (216) 297-4161
smarsh@hahnlaw.com | hahnlaw.com
200 Public Square, Suite 2800 | Cleveland, OH 44114

*Hahn Loeser & Parks LLP is a full-service law firm with a national footprint and international reach, with offices in Cleveland, Columbus, Naples, Fort Myers, San Diego, and Chicago.*

*This email may contain information that is confidential or privileged, and it is intended only for the addressee(s). If you are not the intended recipient, you are prohibited from using, copying, or distributing this email, its contents, or any attachment.*

# EXHIBIT E

**Charles Pugh**

| | |
|---|---|
| **From:** | Shannon N. Marsh <smarsh@hahnlaw.com> |
| **Sent:** | Monday, April 26, 2021 5:13 PM |
| **To:** | 'jaimemdcinc@gmail.com' |
| **Cc:** | Aaron Evenchik; Charles Pugh; 'Christopher Nucifora'; 'Seth Griep' |
| **Subject:** | Geis Construction South, LLC v. Jaime Delahunt - Case No.: 2:20-cv-03834: Geis Motion for Default Judgment |
| **Attachments:** | 015-5) 2021.04.26 Proposed Order Granting Default Judgment.PDF; 015-4) 2021.04.26 Declaration of Kevin Watts ISO Motion for Default Judgment.PDF; 015-3) 2021.04.26 Declaration of Kevin Rogers ISO Motion for Default Judgment.PDF; 015-2) 2021.04.26 Declaration of Charles Pugh ISO Motion for Default Judgment.PDF; 015-1) 2021.04.26 Geis Memo in Support of Motion for Default Judgment.PDF; 015) 2021.04.26 Geis Motion for Default Judgment.PDF |

Good Evening:

On behalf of Attorney Evenchik, please find *Geis Construction South, LLC's Motion for Default Judgment* attached to this email. The attached was filed with the Court today. A copy of the same has been mailed to you.

Thank you,
Shannon





**Shannon N. Marsh** | Paralegal
**Hahn Loeser & Parks LLP** | MORE THAN A CENTURY OF CLIENT SERVICE
Tel: (216) 274-2281 | Fax: (216) 297-4161
smarsh@hahnlaw.com | hahnlaw.com
200 Public Square, Suite 2800 | Cleveland, OH 44114

*Hahn Loeser & Parks LLP is a full-service law firm with a national footprint and international reach, with offices in Cleveland, Columbus, Naples, Fort Myers, San Diego, and Chicago.*

*This email may contain information that is confidential or privileged, and it is intended only for the addressee(s). If you are not the intended recipient, you are prohibited from using, copying, or distributing this email, its contents, or any attachment.*

# EXHIBIT F

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
-------------------------------------------------------------------X
THOMAS CRONOLLY and LOUISE CRONOLLY,

Plaintiffs,

- against -

PREMIER COUNTY CONSTRUCTION CORP.,
JAMES DELAHUNT, RUKH ENTERPRISES, INC.
and HARJEET SINGH,

Defendants.
-------------------------------------------------------------------X

**VERIFIED COMPLAINT**

Index No. 601454-14

     Plaintiffs, Thomas Cronolly and Louise Cronolly (collectively the "Cronollys") by their attorney, Ruskin Moscou Faltischek, P.C., as and for their complaint against defendants allege, upon information and belief:

     1.    Plaintiff, Thomas Cronolly, is a resident of the State of New York and resides at 327 Harrison Street, Long Beach, New York.

     2.    Plaintiff, Louise Cronolly, is a resident of the State of New York and resides at 327 Harrison Street, Long Beach, New York.

     3.    Upon information and belief, defendant, Premier County Construction Corp. ("Defendant Contractor") was and still is a New York corporation with a place of business at 281 Broadway, Bethpage, New York 11714.

     4.    Upon information and belief, defendant James Delahunt ("Defendant Delahunt") is an individual residing at 23 S. Windhurst Avenue, Bethpage, New York 11714.

     5.    Upon information and belief, Defendant Delahunt is and was at all times the president and sole shareholder of Defendant Contractor.

6.     Upon information and belief, defendant Rukh Enterprises, Inc. ("Defendant Rukh") is a corporation organized under the laws of the State of New York with a place of business at 965 Tyrus Court, North Merrick, New York 11566.

7.     Upon information and belief, defendant Harjeet Singh ("Defendant Singh") is a resident of the State of New York with a place of business at 965 Tyrus Court, North Merrick, New York 11566.

8.     Upon information and belief, Defendant Singh is and was at all times the president and sole shareholder of Defendant Rukh.

## AS AND FOR A FIRST CAUSE OF ACTION

9.     At all relevant times, the Cronollys owned the property located at 327 East Harrison Street, Long Beach, New York ("the Property").

10.    In October 2012, the Cronollys' home, located at the Property, suffered extensive damage due to Hurricane Sandy.

11.    In or about July 2013, the Cronollys hired Defendant Contractor, to, among other things, demolish portions of the structure and to rebuild the house, including the addition of a second floor (the "Project").

12.    Defendant Contractor prepared a contract (the "Contract) that both it and the Cronollys signed to memorialize their arrangement.  A copy of the Contract is attached and incorporated herein as Exhibit A.

13.    Under the Contract, Defendant Contractor agreed to, among other things: perform demolition; repair the slab on grade; install a new roof; construct a second story; install framing, windows, gutters, siding, doors, stairs and a railing; sheet rock the second floor; install bathrooms; install a kitchen; perform electrical and plumbing work; and perform landscaping. *See* Ex. A.

14.     Under the Contract, the Cronollys agreed to pay, and Defendant Contractor agreed to accept, $210,665.00 (the "Contract Price") for the Project. *See* Ex. A.

15.     Moreover, each task for the Project had a line item which set forth the agreed upon cost for that task.

16.     Prior to executing the Contract, the Cronollys informed Defendant Contractor and Defendant Delahunt that the majority of the Project would be funded by insurance monies that the Cronollys were to receive and that they had little in the way of additional funds to pay for the Project.

17.     Prior to executing the Contract, Defendant Contractor and Defendant Delahunt represented to the Cronollys that Defendant Contractor was fully licensed to perform the Project, that Defendant Contractor was fully insured and that they had the requisite skill and experience to perform the Project.

18.     By virtue of the Contract, Defendant Contractor and Defendant Delahunt owed the Cronollys a duty to use reasonable care in performing the Project.

19.     By virtue of the Contract, Defendant Contractor and Defendant Delahunt owed a duty to the Cronollys to provide services with the degree of skill usually possessed by home improvement contractors.

20.     Defendant Contractor and Defendant Delahunt represented to the Cronollys that the Project would take approximately four to six months weeks.

21.     As the damage caused to the Property by Hurricane Sandy had displaced the Cronollys and they were relying on insurance monies to pay for their housing costs, it was important to them that the Project proceed promptly and be completed within the time represented to them.

3

22.     On or about July 25, 2013, and so that Defendant Contractor would commence work, the Cronollys paid Defendant Contractor $15,000 of the Contract Price.

23.     Defendant Contractor acknowledged receipt of the $15,000 payment.

24.     On or about September 6, 2013, the Cronollys delivered a check to Defendant Contractor in the amount of $59,771.30.  Defendant Contractor accepted and acknowledged receipt of that check and returned $9,771.30 to the Cronollys, for a net payment of $50,000.

25.     Defendant Contractor acknowledged receipt of the $50,000 payment.

26.     In or about November 2013, the Cronollys paid Defendant Contractor $5,000.

27.     Defendant Contractor acknowledged receipt of the $5,000.

28.     In total, the Cronollys have paid Defendant Contractor $70,000.

29.     Despite receiving $70,000, Defendant Contractor has performed merely a fraction of the work required under the Contract.

30.     For example, and not by limitation, Defendant Contractor did not:

(a) Install the roof;
(b) Complete the framing;
(c) Install gutters or siding;
(d) Install windows or doors;
(e) Install sheetrock;
(f) Perform any flooring work;
(g) Perform any driveway or landscaping work;
(h) Install bathrooms; or
(i) Install the kitchen.

31.     The only work that Defendant Contractor performed was some demolition work and some foundation and framing work.

32.     However, even the little work that Defendant Contractor performed was performed faulty, negligently, recklessly, was not performed with the requisite degree of care required of home improvement contractors in similar situations, and was not done in a proper and workmanlike manner.

4

33.    The framing performed by Defendant Contractor was improper because Defendant Contractor used wood that did not comply with the Building Code and/or regulations of the Federal Emergency Management Agency.

34.    In addition, Defendant Contractor failed to: (a) properly install footings because it poured concrete over existing wood instead or removing the wood before pouring; (b) failed to properly install a support beam; (c) failed to installs wall studs every 16" on center; and (d) the window openings were not the right size or in the right location.

35.    In or about early December 2013, Defendant Contractor abandoned the Project.

36.    When Defendant Contractor abandoned the Project the home had no roof and was open to the elements.

37.    Initially, the Cronollys attempted to get Defendant Contractor to return to the Project or, at the very least, enclose the home to protect it from the elements.

38.    Despite their efforts, Defendant Contractor failed to return.

39.    On or about May 19, 2014, the Cronollys hired the Clancy Group, Inc., among others, to correct and remediate Defendant Contractor's defective work and to complete the Project.

40.    The Cronollys have paid or will pay over $35,000.00 to correct the improper, defective, negligent, reckless work of Defendant Contractor.

41.    In addition, the Project has been delayed and the Cronollys have suffered substantial additional costs due to those delays.

42.    As a direct and proximate cause of Defendant Contractor's breach of its duty of care and its negligence, the Cronollys have suffered and continue to suffer damages in an amount to be determined at trial but estimated to exceed $70,000.00.

## AS AND FOR A SECOND CAUSE OF ACTION

43.     The Cronollys repeat and reallege each of their prior allegations set forth above with the same force and effect as if fully set forth hereat.

44.     The Cronollys and Defendant Contractor entered into the Contract under which Defendant Contractor agreed to perform the Project for the Contract Price.

45.     The Cronollys paid Defendant Contractor $70,000 of the Contract Price.

46.     The work performed by Defendant Contractor did not have a value of $70,000 and is virtually of no value due to its defective, faulty, negligent and reckless nature.

47.     As set forth above, Defendant Contractor breached the Contract by, among other things, performing work that was not code-compliant, failing to perform required work and abandoning the Project.

48.     As a direct and proximate cause of the foregoing, the Cronollys have been damaged in an amount to be determined at trial and estimated to exceed $70,000.00.

## AS AND FOR A THIRD CAUSE OF ACTION

49.     The Cronollys repeat and reallege each of their prior allegations set forth above with the same force and effect as if fully set forth hereat.

50.     As set forth above, Defendant Contractor and Defendant Delahunt represented that Defendant Contractor was fully licensed to perform the work called for in the Contract.

51.     As set forth above, Defendant Contractor and Defendant Delahunt represented that they had the requisite skill and expertise to perform the work called for in the Contract.

52.     As set forth above, Defendant Contractor and Defendant Delahunt represented that they would complete the Project within four to six months of commencement.

53.     As set forth above, Defendant Contractor and Defendant Delahunt represented that Defendant Contractor was fully insured.

54.     The Cronollys reasonably relied, to their detriment, on the aforementioned representations when they hired Defendant Contractor, when they signed the Contract and when they remitted payment thereunder.

55.     The representations by Defendant Contractor and Defendant Delahunt were false.

56.     The representations by Defendant Contractor and Defendant Delahunt were material.

57.     Defendant Contractor and Defendant Delahunt knew that their representations were false when made but they made the statements nonetheless to induce the Cronollys to sign the Contract and remit payment.

58.     As a direct and proximate result of the foregoing, the Cronollys have been damaged in an amount to be determined at trial and estimated to exceed $70,000.

## AS AND FOR A FOURTH CAUSE OF ACTION

59.     The Cronollys repeat and reallege each of their prior allegations set forth above with the same force and effect as if fully set forth hereat.

60.     As set forth above, the Cronollys remitted $70,000 to Defendant Contractor to be used for the purposes of the Project, including for purchasing supplies, paying laborers and any subcontractors.

61.     The $70,000 constituted trust funds, which were not to be used for any purposes other than the Project unless and until completed.

62.     Upon information and belief, Defendant Delahunt converted to his own personal use the monies that the Cronollys delivered to Defendant Contractor.

63.     As a direct and proximate result of the foregoing, the Cronollys have been damaged in in an amount to be determined at trial and estimated to exceed $70,000.00.

7

## AS AND FOR A FIFTH CAUSE OF ACTION

64.     The Cronollys repeat and reallege each of their prior allegations set forth above with the same force and effect as if fully set forth hereat.

65.     The Project involved residential home improvement work.

66.     In order to perform residential home improvement work in the City of Long Beach a contractor must be licensed.

67.     Defendant Contractor and Defendant Delahunt represented and warranted that Defendant Contractor was fully licensed to perform the residential home improvement work that constituted the Project and/or required under the Contract.

68.     Defendant Contractor was not licensed to perform the Project.

69.     To conceal that fact, Defendant Contractor, Defendant Delahunt, Defendant Rukh and Defendant Singh conspired together and agreed that Defendant Contractor and Defendant Delahunt would apply for the building permit using Defendant Rukh's name and license.  A copy of the building permit application is attached and incorporated herein as Exhibit B.

70.     Defendant Contractor and Defendant Delahunt applied for and received a building permit in the name of, and using the license of, Defendant Rukh.

71.     By allowing Defendant Contractor and Defendant Delahunt to use Defendant Rukh's license, the defendants were able to conceal from the Cronollys that Defendant Contractor was not licensed to perform the Project or apply for the permit.

72.     Upon information and belief, Defendant Rukh and Defendant Singh were aware that Defendant Contractor and Defendant Delahunt were misrepresenting their status and using Defendant Rukh's license to obtain jobs based on false pretenses.

73.     Upon information and belief, this false scheme is part of a pattern and practice engaged in by the defendants.

8

74.     Upon further information and belief, the County of Nassau investigated the relationship between and among the defendants and fined them for their improper actions regarding Defendant Rukh's license.

75.     As set forth above, the Cronollys reasonably relied, to its detriment, on the false representation that Defendant Contractor was licensed.

76.     As a direct and proximate result of the foregoing, the Cronollys have been damaged in an amount to be determined at trial and estimated to exceed $70,000.00.

## AS AND FOR A SIXTH CAUSE OF ACTION

77.     The Cronollys repeat and reallege each of their prior allegations set forth above with the same force and effect as if fully set forth hereat.

78.     As set forth above, Defendant Rukh and Defendant Singh permitted Defendant Contractor to apply for and obtain the building permit using Defendant Rukh's license.

79.     In doing so, Defendant Rukh and Defendant Singh assumed an obligation to ensure that the work performed under its license was performed in a proper and workman-like manner.

80.     As set forth above, the work was performed faulty, improperly, negligently, recklessly and was not done in a proper and workman-like manner.

81.     Defendant Rukh and Defendant Singh breached their duties to the Cronollys by failing to ensure that the work was performed in a proper and workman-like manner and with the same degree of skill and care usually possessed by a licensed home improvement contractor.

82.     As a direct and proximate result of the foregoing, the Cronollys have been damaged in an amount to be determined at trial and estimated to exceed $70,000.

**WHEREFORE,** plaintiffs respectfully request judgment against the defendants as follows:

9

a)      On their first cause of action against defendant Premier County Construction Corp. in an amount to be determined at trial and estimated to exceed $70,000.00, together with costs, expenses and interest;

b)      On their second cause of action against defendant Premier County Construction Corp. in an amount to be determined at trial and estimated to exceed $70,000.00, together with costs, expenses and interest;

c)      On their third cause of action against defendants Premier County Construction Corp. and James Delahunt in an amount to be determined at trial and estimated to exceed $70,000.00 together with costs, expenses and interest;

d)      On their fourth cause of action against defendant James Delahunt in an amount to be determined at trial and estimated to exceed $70,000.00, together with costs, expenses and interest;

e)      On their fifth cause of action against all the defendants in an amount to be determined at trial and estimated to exceed $70,000.00, together with costs, expenses and interest;

f)      On their sixth cause of action against defendants Rukh Enterprises, Inc. and Harjeet Singh in an amount to be determined at trial and estimated to exceed $70,000.00, together with costs, expenses and interest; and

10

g)      Such other and further relief as this Court deems just and appropriate.

Dated: Uniondale, New York
       July 28, 2014

                          RUSKIN MOSCOU FALTISCHEK, P.C.

                          By: _____
                              Adam L. Browser, Esq.
                              Attorney for Plaintiffs
                              East Tower, 15th Floor
                              Uniondale, New York 11556
                              (516) 663-6600

11

**VERIFICATION**

STATE OF NEW YORK          )
                          ) ss.:
COUNTY OF NASSAU          )

Thomas Cronolly, being duly sworn, deposes and says:

I am the plaintiff in the above action. I have read the foregoing Verified Complaint and know the contents thereof, and the same are true to my knowledge, except those matters therein which are stated to be alleged upon information and belief, and as to those matters I believe them to be true.

_____
Thomas Cronolly

Sworn to before me this
__25__ day of July, 2014.

_____
Notary Public

JOSEPH A CAMMARATA
Notary Public - State of New York
NO. 01CA6284719
Qualified in Nassau County
My Commission Expires Jul 8, 2017

598350-v2

12

# EXHIBIT G

Case 2:20-cv-03834-MKB-JMW   Document 26-1   Filed 04/11/22   Page 71 of 307 PageID #: 798

# Exhibit G

EDWARD P. MANGANO
COUNTY EXECUTIVE



MADALYN F. FARLEY
COMMISSIONER

**COUNTY OF NASSAU**
**OFFICE OF CONSUMER AFFAIRS**
240 OLD COUNTRY ROAD
MINEOLA, NEW YORK 11501-4255
(516) 571-2600

July 28, 2014

Jaime Delahunt
Premier County Construction Corp
281 Broadway
Bethpage, NY  11714

Re:  Violation No.: 103

Dear Vendor:

On, May 8, 2014 you appeared for an administrative hearing at which time you were assessed a fine for the above mentioned violation totaling $1,000.00 which was due on July 10, 2014.  As of this time, we have not received your payment.

The disposition form advised you if payment was not received by the due date, the fine would increase to the maximum of $5,000.00 for this violation as allowed by law.

Your failure to pay has now resulted in the fine being increased to $5,000.00.

You must remit the $5,000.00 payment by certified check or postal money order within 5 days to avoid the initiation of legal action against you.

Very truly yours,

MADALYN F. FARLEY
COMMISSIONER

MFF/mer



EDWARD P. MANGANO
COUNTY EXECUTIVE

MADALYN F. FARLEY
COMMISSIONER

## COUNTY OF NASSAU
## OFFICE OF CONSUMER AFFAIRS
240 OLD COUNTRY ROAD
MINEOLA, NEW YORK 11501-4255
(516) 571-2600

April 15, 2014

Jaime Delahunt
Premier County Construction Corp.
281 Broadway
Bethpage, NY    11714

Re: Consumer: Thomas Cronolly
Violation No's: C02014V009, 103
Case No.: 2014000091

Dear Contractor:

Evidence has been received by this office indicating that you are in violation of Local Law 6-1970 and Local Law 2-1970:

　　1. <u>Local Law 6-1970, Section 21-11.2:</u> Working in Nassau County without a home improvement license.

　　2. <u>Local Law 2-1970, Title D, Chapter XXI Section 21-10.2,2c:</u> "Unconscionable Trade Practice": Any act is considered unconscionable if it results in a gross disparity in the rights of a consumer as against the merchant.  Wood materials used below flood elevation, NYS Residential Code R324.1.7, all new framing had to be demoed and removed.

As a consequence of the before-mentioned violations, you are to appear at the Nassau County Office of Consumer Affairs on Thursday, May 1, 2014 at 11:30 a.m.

You may appear with or without an attorney to represent you. Please bring photo identification with you. <u>Any documentation supporting your position should be presented at this hearing</u>.  Please be prepared to discuss the enclosed consumer complaint as well.
Failure to comply with this order will result in maximum fines being assessed, suspension of your license if applicable and the submission of this information to the District Attorney for prosecution.

Very truly yours,

MRS. L. PRESTA
CONSUMER AFFAIRS
(516) 571-3861

LVP/mek

# EXHIBIT H

FILED: NASSAU COUNTY CLERK 02/10/2015 10:22 AM INDEX NO. 601454/2014
NYSCEF DOC. NO. 31 RECEIVED NYSCEF: 02/18/2015

Case 2:20-cv-03834-MKB-JMW Document 26-1 Filed 04/11/22 Page 75 of 307 PageID #: 802



NASSAU COUNTY CLERK'S OFFICE
ENDORSEMENT COVER PAGE

Recorded Date: 02-10-2015      Record and Return To:
Recorded Time: 10:22:18 a

    Liber Book: K      33
    Pages From:      337
           To:      342

       Control
       Number:   441
        Ref #: 2014601454
    Doc Type: JE1  ELECT JUDG SUPREME COURT MONEY


Plnt: CRONOLLY, THOMAS
Plnt: CRONOLLY, LOUISE
Dfnd: PREMIER COUNTY CONSTRUCTION CORP
Dfnd: DELAHUNT, JAMES


Judgment Amount:        72,463.50




                          Taxes Total          .00
                      Recording Totals          .00
TMR001                    Total Payment          .00

THIS PAGE IS NOW PART OF THE INSTRUMENT AND SHOULD NOT BE REMOVED
                    MAUREEN O'CONNELL
                    COUNTY CLERK



2015021000441

At IAS Part 5 of the Supreme Court
of the State of New York held in and for the
County of Nassau at the Courthouse located
at 100 Supreme Court Drive, Mineola, New
York on the 4 day of ~~January,~~ 2015.
February

PRESENT:  Hon. Roy S. Mahon, J.S.C.

--------------------------------------------------------------------X
THOMAS CRONOLLY and LOUISE CRONOLLY,

                   Plaintiffs,

         -against-

PREMIER COUNTY CONSTRUCTION CORP.,
JAMES DELAHUNT, RUKH ENTERPRISES, INC.
and HARJEET SINGH,

                  Defendants.
--------------------------------------------------------------------X

**JUDGMENT**

Index No. 601454-14
(EFILED)

    **WHEREAS,** plaintiffs commenced this action in April 2014 against the defendants and

asserted claims of breach of contract and fraud in connection with a home construction project;

and

    **WHEREAS,** defendants were duly served with process and the defendants Premier

County Construction Corp. and James Delahunt failed to answer, appear or move with respect to

the Complaint and their time to do so expired; and

    **WHEREAS,** defendants Rukh Enterprises, Inc. and Harjeet Singh appeared by their

attorney and served an Answer; and

    **WHEREAS,** plaintiffs served defendants Premier County Construction Corp. and James

Delahunt with an additional copy of the Summons pursuant to CPLR 3215 but they still to

answer, move or otherwise respond to the Complaint; and

WHEREAS on or about November 19, 2014, plaintiffs moved before the Court by DATED NOVEMBER 19, 2014, Notice of Motion, the supporting affidavit of Adam L. Browser, sworn to on November 19, 2014, the supporting affidavit of Thomas Cronolly, sworn to on November 19,, 2014 and the PURSUANT TO CPLR 3215 exhibits annexed thereto, for a default judgment against the defendants Premier County Construction Corp. and James Delahunt and to sever their remaining causes of action against the other defendants; and

WHEREAS, the Court having received no opposition to the motion for a default judgment; and

WHEREAS, the Court having issued a Short Form Order dated January 8, 2015 granting the motion, a copy of which is attached hereto as Exhibit A;

1425 Rexcorp Plaza, East Tower, 15th fl., Uniondale, NY 11556

NOW, on motion of Ruskin Moscou Faltischek, P.C., attorney for the plaintiffs, it is

ORDERED, ADJUDGED AND DECREED, that plaintiffs' motion for default judgment is granted; and it is further

ORDERED, ADJUDGED AND DECREED, that plaintiffs' fifth and sixth causes of action are severed and continued as against defendants Rukh Enterprises, Inc. and Harjeet Singh; and it is further

ORDERED, ADJUDGED AND DECREED, that plaintiffs, Thomas Cronolly and Louise Cronolly, residing at 327 Harrison Avenue, Long Beach, New York, do recover of defendant Premier County Construction Corp., with a place of business at 281 Broadway, Bethpage, New York 11714, and of defendant James Delahunt, residing at 23 S. Windhurst Avenue, Bethpage, New York 11714, jointly and severally, the sum of $66,500.00 plus interest

at the statutory rate of nine (9%) per cent per annum from April 1, 2014 through the date of entry

of this Judgment in the amount of $ 5253.50 , together with costs and disbursements as

taxed by the Clerk in the amount of $ 710.00 for a total judgment amount of $ 72,463.50

and that plaintiffs have execution thereon.

Dated: Uniondale, New York
       January 28, 2015

                                        E N T E R :

                                        _____
                                        HON. ROY S. MAHON, JSC   RG
                                                                 AS TO
609638                                                           FORM

                                        ENTERED
                                        FEB 10 2015
                                        NASSAU COUNTY
                                    COUNTY CLERK'S OFFICE

## Bill of Costs

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

THOMAS CRONOLLY and LOUISE CRONOLLY,

                     Plaintiff,

   - against -

PREMIER COUNTY CONSTRUCTION CORP.,
JAMES DELAHUNT, RUKH ENTERPRISES, INC.
and HARJEET SINGH,

                  Defendants

**COSTS OF
PLAINTIFF**

Index No.  601454-14

| COSTS | | $ | DISBURSEMENTS | $ | |
|---|---|---|---|---|---|
| Costs before note of issue | | | Fee for index number CPLR §8018(a) | 210.00 | |
| CPLR §8201 subd. 1 | | 200.00 | Referee's fees CPLR §8301(a)(1), 8003(a) | | |
| Costs after note of issue | | | Commissioner's compensation CPLR §8301(a)(2) | | |
| CPLR §8201 subd. 2 | | | Clerk's fee, filing notice of pend. or attch. CPLR §8021(a)(10) | | |
| Trial of issue | | | Entering and docketing judgment CPLR §8301(a)(7),8016(a)(2) | | |
| CPLR §8201 subd. 3 | | | Paid for searches CPLR §8301(a)(10) | | |
| Allowance by statute | | | Affidavits & Acknowledgments CPLR §8009 | | |
| CPLR §8202(a),(b) | | | Serving copy summons & complaint CPLR §8011(h)(l), 8301(d) | ~~244.75~~ 140.00 | |
| | | | Request for judicial intervention | 95.00 | |
| Motion costs | | ~~100.00~~ | Note of issue CPLR §8020(a) | | |
| CPLR §8202 | | | Paid referee's report CPLR §8301(a)(12) | | |
| Appeal to Appellate Term | | | Transcripts and filing CPLR §8021 | | |
| CPLR §8203(a) | | | Certified copies of papers CPLR §8301(a)(4) | | |
| Appeal to Court of Appeals | | | Satisfaction piece CPLR §5020(a), 8021 | | |
| CPLR §8204 | | | Certified copy of judgment CPLR §8021 | | |
| Costs upon frivolous claims | | | Postage CPLR §8301(a)(12) | | |
| And counterclaims | | | Jury fee CPLR §8020(c) | | |
| CPLR §8303-a | | | Stenographers' fees CPLR §8002, 8301 | | |
| | 710.00 | | Sheriff's fees on execution CPLR §8011, 8301 | | |
| | | | Sheriff's fees, attachment, arrest, etc. CPLR §8011 | | |
| Additional allowance | | | Paid printing cases CPLR §8301(a)(6) | 20.00 | |
| CPLR 8303(a) | ADJUSTED AT $ | 20 | Clerk's fees Court of Appeals CPLR §8301(a)(12) | | |
| COSTS 10th DAY OF FEB. CONNOLLY | | | Paid copies of papers CPLR §8016(a)(4) | | |
| THIS Maureen CLERK, NASSAU CO. | | | Motion expenses CPLR §8301(b) | 45.00 | |
| | | | Fees for publication CPLR §8301(a)(3) | | |
| | | | Serving subpoena CPLR §8011(h)(8301(d) | | |
| | | | Paid for search CPLR §8301(a)(10) | | |
| | | | Referee's Report | | |
| | | | Attendance of Witnesses CPLR §8001(a)(b)(c), 8301(a)(1) | | |

COSTS ..............................$ ~~$200.00~~ 300.00
DISBURSEMENTS..........................  ~~$510.00~~ 614.75
TOTAL ..............................$  710.00 ~~914.75~~

609892

State of New York, County of New York

ss:

being duly sworn, deposes, and says; that deponent is not a party to the action, is over 18 years of age and resides at

That on
deponent served the within bill of costs and notice of taxation on

attorney(s) for
herein, at his/her office at

during his/her absence from said office.
Strike out either (a) or (b).

(a) by then and there leaving a true copy of the same with

his/her clerk; partner; person having charge of said office.

(b) and said office being closed, by depositing a true copy of the same, enclosed in a sealed wrapper directed to said attorney(s), in the office letter drop or box.

Sworn to before me on

State of New York, County of

ss:

Being duly sworn, deposes, and says; that deponent is not a party to the action, is over 18 years of age and resides at

That on
deponent served the within bill of costs and notice of taxation on

attorney(s) for
at

the address designated by said attorney(s) for that purpose by depositing a true copy of same enclosed in a post paid properly addressed wrapper, in--a post office-- official depository under the exclusive care and custody of the United States Post Service within New York State.

Sworn to before me on

---

Index No.: 601454-14

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK

THOMAS CRONOLLY and LOUISE CRONOLLY,

Plaintiff(s)

Against

PREMIER COUNTY CONSTRUCTION CORP.,
JAMES DELAHUNT, RUKH ENTERPRISES, INC.
and HARJEET SINGH,

Defendant(s)

---

## Bill of Costs

And Notice of                    Taxation

---

Please Take Notice that the within is a true copy of the items of costs and disbursements in the within action

☐   taxed*

☐   and the same will be taxed*
by the clerk of
Court, at his/her office in the courthouse thereof on

at                         M.
of that day--and the amount inserted in the judgment.
Yours, etc.

*Attorney(s) for*

To

*Attorney(s) for Plaintiff*

---

Service of the within bill of costs and notice of taxation is hereby admitted on

*Attorney(s) for*

Attorney's Affirmation
STATE OF NEW YORK, COUNTY OF NASSAU

---

ss:

The undersigned, an attorney admitted to practice in the courts of this state, affirms: that I am Of Counsel with the firm of Ruskin Moscou Faltischek, P.C., the attorney(s) of record for the Plaintiff Wells Fargo Bank, N.A. in the above entitled action, that the foregoing disbursements have been or will be necessarily made or incurred in this action and are reasonable in amount and that each of the persons named as witnesses attended as such witness on the trial, hearing or examination before trial herein the number of days set opposite their names; that each of said persons resided the number of miles set opposite their names, from the place of said trial, hearing or examination; and each of said persons, as such witnesses as aforesaid, necessarily traveled the number of miles to set opposite their names in traveling to, and the same distance in returning from, the same place of trial, hearing or examination; and that copies of documents or papers as charged herein were actually and necessarily obtained for use.

The undersigned affirms that the foregoing statements are true, under the penalties of perjury.

Dated: January 22, 2015

*The name signed must be printed below*
ADAM L. BROWSER

# EXHIBIT I



# Nassau County
## Maureen OConnell
### County Clerk
### Mineola, NY 11501

Ref ID#: EC 2014601454

**Instrument Number: 2019- 00160530**

As

## JS01 - JUDGMENTS-SATISFACTION

Recorded On: August 08, 2019

Parties: CRONOLLY THOMAS

Num Of Pages:

TO PREMIER COUNTY CONSTRUCTION CORP

Comment:

Recorded By: METRO

### ** Examined and Charged as Follows: **

JS01 - JUDGMENTS-SATISFACTI(          0.00

Recording Charge:          0.00

---

### ** THIS PAGE IS PART OF THE INSTRUMENT **

I hereby certify that the within and foregoing was recorded in the Clerk's Office For: Nassau County, NY

**File Information:**

Document Number: 2019- 00160530

Receipt Number: 1570909

Recorded Date/Time: August 08, 2019 09:06:54A

Book-Vol/Pg:

Cashier / Station: 0 MMIK / NCCL-HBRKDP1

**Record and Return To:**



*Maureen O'Connell*

County Clerk Maureen O'Connell

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

-------------------------------------------------------------X

THOMAS CRONOLLY and LOUISE CRONOLLY,

                              Plaintiffs,

      -against-

PREMIER COUNTY CONSTRUCTION CORP.,
JAMES DELAHUNT, RUKH ENTERPRISES, INC.
and HARJEET SINGH,

                              Defendants.

-------------------------------------------------------------X

**SATISFACTION
OF JUDGMENT**

Index No. 601454-2014

      **WHEREAS**, a Judgment was entered in this action on February 10, 2015 (the "Judgment") in the Supreme Court of the State of New York, County of Nassau in favor of plaintiffs Thomas Cronolly and Louis Cronolly and against defendants Premier County Construction Corp. with a place of business at 281 Broadway, Bethpage, New York 11714, and James Delahunt, residing at 23 S. Windhurst Avenue, Bethpage, New York, jointly and severally, in the amount of $72,463.50; and

      **WHEREAS**, the plaintiffs and the defendants Premier County Construction Corp. and James Delahunt have settled this matter and whereby defendants have satisfied the Judgment;

      **WHEREAS**, it is certified that there are no outstanding executions with any Sheriff or Marshall within the State of New York as a result of the Judgment;

**THEREFORE**, Satisfaction of the Judgment is hereby acknowledged, and the Clerk is authorized to enter this Satisfaction upon the docket of said judgment.

Dated: July 29, 2019

                                    RUSKIN MOSCOU FALTISCHEK, P.C.

                    By: _____
                                    Adam L. Browser, Esq.
                                    *Attorney for Plaintiff*
                                    1425 RXR Plaza
                                    Uniondale, New York 11556
                                    (516) 663-6600

STATE OF NEW YORK  )
                                    ) ss.:
COUNTY OF NASSAU  )

On the 29th day of July 2019 before me personally came Adam L. Browser to me known and known to me to be an attorney with Ruskin Moscou Faltischek, P.C., counsel for Plaintiff in the above entitled action, and to be the same person described in and who executed the within Satisfaction of Judgment and acknowledged to me that he executed same.

                                    _____
                                                    Notary Public

865853

DANNETTE PARKER
Notary Public, State of New York
No. 01PA6348736
Qualified in Nassau County
Commission Expires Oct. 3, 20__

# EXHIBIT J

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| JULIO PINEDA, on behalf of himself and all others similarly-situated,<br><br>                   Plaintiff,<br><br>     -against-<br><br>JOBCO INCORPORATED, and COMMERCIAL CONTRACTING SERVICES INC., and JAIME DELAHUNT, individually,<br><br>               Defendants. | **AMENDED COMPLAINT**<br><br>**Docket No.: 20-cv-5321 (JMA)(SIL)**<br><br>Jury Trial Demanded |

JULIO PINEDA ("Plaintiff"), on behalf of himself and all others similarly-situated (collectively as "FLSA Plaintiffs" and/or "Rule 23 Plaintiffs," as those terms are defined below), by and through his attorneys, STEVENSON MARINO LLP, as and for his Amended Complaint against JOBCO INCORPORATED ("Jobco"), and COMMERCIAL CONTRACTING SERVICES INC. ("CCS"), and JAMIE DELAHUNT, individually (collectively, the "Defendants"), alleges upon knowledge as to himself and his own actions and upon information and belief as to all other matters as follows:

## NATURE OF CASE

1. This is a civil action for damages and equitable relief based upon violations that Defendants committed of Plaintiff's rights guaranteed to him by: (i) the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a); (ii) the overtime provisions of the New York Labor Law ("NYLL"), NYLL § 160, N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 12, § 142-2.2; (iii) the NYLL's requirement that employers furnish employees with wage statements containing specific categories of accurate information on each payday, NYLL § 195(3); (iv) the NYLL's requirement that employers furnish their employees with a wage notice containing

1

specific categories of accurate information at hire, NYLL § 195(1); and (v) any other claim(s) that can be inferred from the facts set forth herein.

2.     Plaintiff worked for Defendants, a construction management company and a general contractor, which jointly employed Plaintiff as a non-managerial laborer from in or about June 2018 through September 3, 2018, during which period he performed manual labor on the Moxie Rigby public housing complex in Freeport, New York. As described below, for the duration of this employment period, Defendants willfully failed to pay Plaintiff the wages lawfully due to him under the FLSA and the NYLL, as Defendants failed to compensate Plaintiff at the statutorily-required overtime rate of pay for all hours that Plaintiff worked beyond forty in a workweek.

3.     Additionally, Defendants failed to provide Plaintiff with a wage statement on each payday that accurately stated the total hours that Plaintiff worked each week or the NYLL § 195(1) New York State notice and acknowledgment of pay rate and pay day form upon hire that accurately listed all legally-required information concerning his terms and conditions of employment, including information about his employer and rates of pay.

4.     Defendants' failure to pay overtime in violation of the FLSA and NYLL was not limited to Plaintiff, but also extended to all of Defendants' non-managerial laborers.

5.     Accordingly, Plaintiff brings this lawsuit against Defendants pursuant to the collective action provisions of the FLSA, 29 U.S.C. § 216(b), on behalf of himself and all other persons similarly-situated during the applicable FLSA limitations period who suffered damages as a result of Defendants' violations of the FLSA. Plaintiff additionally brings his claims under New York law on behalf of himself and any FLSA Plaintiff, as that term is defined below, who opts into this action.

6.     Plaintiff also brings this lawsuit as a class action pursuant to Federal Rule of Civil

2

Procedure ("FRCP") 23, on behalf of himself and all other persons similarly-situated during the applicable NYLL limitations period who suffered damages as a result of Defendants' violations of the NYLL and the NYCRR.

## JURISDICTION AND VENUE

7.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201, *et seq*. The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising under New York law.

8.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims for relief occurred within this judicial district.

## PARTIES

9.     At all relevant times herein, Plaintiff worked for Defendants in New York and was an "employee" entitled to protection as defined by the FLSA, the NYLL, and the NYCRR.

10.     At all relevant times herein, Jobco was and is a New York corporation with its principal place of business located at 277 Northern Boulevard, Suite 203, Great Neck, New York 11021.

11.     At all relevant times herein, CCS was and is a New York corporation with its principal place of business located at 15 Sherman Avenue, Bethpage, New York 11714.

12.     At all relevant times herein, Defendant Delahunt was and is CCS's owner. In this role, Defendant Delahunt oversaw CCS's operations, was responsible for paying employees, and had the power to hire and fire and approve all personnel decisions with respect to all of CCS's employees. Defendant Delahunt supervised and paid wages to Plaintiff.

13.     At all relevant times herein, Defendants were and are jointly Plaintiff's

3

"employers" within the meaning of the FLSA and NYLL. Additionally, both Defendants' qualifying annual business revenue individually exceeded and exceeds $500,000.00 for all relevant years, and Defendants were and are each engaged in interstate commerce within the meaning of the FLSA, as Defendants both employed two or more employees, accepted payments in cash that naturally moved across state lines, accepted credit cards as a form of payment based on cardholder agreements with out-of-state companies, and bought and used construction materials, such as tools, equipment, and supplies, from outside of New York, the combination of which subjects Defendants to the FLSA's overtime requirements as an enterprise.

## COLLECTIVE ACTION ALLEGATIONS

14.     Plaintiff seeks to bring this suit to recover from Defendants unpaid overtime compensation and liquidated damages, pursuant to the applicable provisions of the FLSA, 29 U.S.C. § 216(b), on his own behalf, as well as on behalf of those in the following collective:

> Current and former non-managerial laborers, who at any time during the applicable FLSA limitations period, performed any work for Defendants, and who consent to file a claim to recover damages for overtime compensation and liquidated damages that are legally due to them ("FLSA Plaintiffs").

15.     Defendants treated Plaintiff and all FLSA Plaintiffs similarly in that Plaintiff and all FLSA Plaintiffs: (1) performed similar tasks, as described in the "Background Facts" section below; (2) were subject to the same laws and regulations; (3) were paid in the same or similar manner; (4) were required to work in excess of forty hours in a workweek; and (5) were not paid the required one and one-half times their respective regular rates of pay for all hours worked per workweek in excess of forty.

16.     At all relevant times, Defendants are and have been aware of the requirements to pay Plaintiff and all FLSA Plaintiffs at an amount equal to the rate of one and one-half times their

respective regular rates of pay for all hours worked each workweek above forty, yet they purposefully and willfully chose and choose not to do so.

17.     Thus, Plaintiff and all FLSA Plaintiffs are victims of Defendants' pervasive practice of willfully refusing to pay their employees overtime compensation for all hours worked per workweek above forty, in violation of the FLSA.

## RULE 23 CLASS ALLEGATIONS

18.     In addition, Plaintiff seeks to maintain this action as a class action pursuant to FRCP 23(b)(3), on behalf of himself, as well as on behalf of all those who are similarly-situated that Defendants subjected to violations of the NYLL and the NYCRR during the applicable statutory period.

19.     Under FRCP 23(b)(3), a plaintiff must plead that:

   a.   The class is so numerous that joinder is impracticable;

   b.   There are questions of law or fact common to the class that predominate over any individual questions of law or fact;

   c.   Claims or defenses of the representative are typical of the class;

   d.   The representative will fairly and adequately protect the class; and

   e.   A class action is superior to other methods of adjudication.

20.     Plaintiff seeks certification of the following FRCP 23 class:

> Current and former non-managerial laborers, who during the applicable NYLL limitations period, performed any work for any of the Defendants, or any of their successors-in-interest, in New York ("Rule 23 Plaintiffs").

### Numerosity

21.     During the previous six years, Defendants have employed, in total, at least forty employees that are putative members of this class.

5

<u>Common Questions of Law and/or Fact</u>

22.     There are common questions of law and fact that govern the claims of each and every Rule 23 Plaintiff and that predominate over any questions solely affecting individual members of the FRCP 23 class, including but not limited to the following: (1) the duties that Defendants required and require each Rule 23 Plaintiff to perform; (2) whether Defendants required and require each Rule 23 Plaintiff to work in excess of forty hours per week; (3) whether Defendants compensated and compensate the Rule 23 Plaintiffs at the legally-mandated rate of one and one-half times their respective regular rates of pay for all hours worked per week over forty; (4) whether Defendants furnished and furnish the Rule 23 Plaintiffs with accurate wage statements on each payday containing the information required by NYLL § 195(3); (5) whether Defendants furnished and furnish Rule 23 Plaintiffs with an accurate wage notice at the time of hire containing the information required by NYLL § 195(1); (6) whether Defendants kept and maintained records with respect to each hour that the Rule 23 Plaintiffs worked; (7) whether Defendants kept and maintained records with respect to the compensation that they paid to the Rule 23 Plaintiffs; (8) whether Defendants maintain any affirmative defenses with respect to the Rule 23 Plaintiffs' claims; (9) whether Defendants' actions with respect to the Rule 23 Plaintiffs were in violation of the NYLL and its supporting regulations; and (10) if so, what constitutes the proper measure of damages.

<u>Typicality of Claims and/or Defenses</u>

23.     As described in the "Background Facts" section below, Defendants employed Plaintiff and Rule 23 Plaintiffs as non-managerial laborers. Plaintiff's claims are typical of the claims of the Rule 23 Plaintiffs whom Plaintiff seeks to represent, as Plaintiff and the Rule 23 Plaintiffs work and/or have worked for Defendants in New York in excess of forty hours per week,

yet Defendants routinely failed and fail to pay them at the rate of one and one-half their respective regular rates of pay, while also failing to provide them with accurate wage statements on each payday and with proper wage notices upon hire. Plaintiff and the Rule 23 Plaintiffs enjoy the same statutory rights under the NYLL to be paid at the rate of one and one-half times their regular rates for all hours worked per week in excess of forty, to be furnished with accurate wage statements on each payday, and to be furnished with accurate wage notices upon hire. Plaintiff and the Rule 23 Plaintiffs have all sustained similar types of damages as a result of Defendants' failure to comply with the NYLL and its supporting regulations. Plaintiff and the Rule 23 Plaintiffs have all suffered injury, including lack of compensation or under-compensation, due to Defendants' common policies, practices, and patterns of conduct. Thus, Plaintiff's claims and/or Defendants' defenses to those claims are typical of the Rule 23 Plaintiffs' claims and Defendants' defenses to those claims.

<u>Adequacy</u>

24.     Plaintiff, as described below, worked the same or similar hours as the Rule 23 Plaintiffs throughout his employment with Defendants. Defendants did not pay Plaintiff overtime pay for all of his hours worked over forty each week, did not furnish him with accurate wage statements on each payday or a wage notice upon hire, which is substantially similar to how the Defendants paid and treated the Rule 23 Plaintiffs. Plaintiff is no longer employed with Defendants, and thus has no fear of retribution for his testimony. Plaintiff fully anticipates testifying under oath and providing discovery responses as to all of the matters raised in this Complaint and that will be raised in Defendants' Answer that pertain to him. Thus, Plaintiff would properly and adequately represent the current and former employees whom Defendants have subjected to the treatment alleged herein.

25. Additionally, Plaintiff's counsel has substantial experience in this field of law.

Superiority

26. Plaintiff has no, or very few, material facts relating to the Rule 23 Plaintiffs' claims that are atypical of those of the putative class. Indeed, at all relevant times herein, Defendants treated Plaintiff identically, or at the very least, substantially similarly, to the Rule 23 Plaintiffs.

27. Any lawsuit brought by any non-managerial laborer of Defendants for the same violations alleged herein would be identical to a suit brought by any other similar employee for the same violations. Thus, separate litigation would risk inconsistent results.

28. Accordingly, the means of protecting Rule 23 Plaintiffs' rights is superior to any other method, and this action is properly maintainable as a class action under FRCP 23(b)(3).

## BACKGROUND FACTS

29. Jobco is a construction management company located in Great Neck, New York, which provides property development and construction management services to various community projects, including public projects and residential buildings. Jobco was responsible for the construction and property management services provided to the Moxie Rigby project in Freeport, New York ("Freeport Project").

30. CCS is a general contracting service owned by Delahunt and hired by Jobco, which operated as a joint employer with Jobco by assisting the performance of the on-site construction services at the Freeport Project including the day-to-day supervision of the work performed by Jobco's laborers, the maintaining of the laborers' schedules, and the payment of wages to the laborers, including Plaintiff.

31. In June 2018, Jobco hired Plaintiff to work as a non-managerial laborer to perform carpentry services on the Freeport Project, a public project that required Jobco to pay Plaintiff

prevailing wage. At this time, Jobco contracted with K-Squared Developers, a general contracting service that at this time provided on-site construction services and jointly employed Plaintiff and Jobco's non-managerial manual laborers by assisting with the day-to-day operations and paying Plaintiff and Jobco's non-managerial manual laborers its wages. Jobco provided Plaintiff with an identification badge that identified him as a worker for Jobco and listed the location as "Moxey A. Rigby Apartments." The identification badge also included Plaintiff's picture, name, and "K-Squared Developers."

32.     On or around July 11, 2018, Jobco terminated its contract with K-Squared Developers and hired CCS through a contract with Delahunt, another general contracting service that Jobco shifted into the place of K-Squared Developers as the general contractor. Jobco assigned CCS to the same Freeport Project and there was a continuity of all work functions performed by Plaintiff and Jobco-s non-managerial laborers without any material change in duties or responsibilities that existed under K-Squared Developers. Thus, Plaintiff's employment at the Freeport Project, as well as the employment of all the laborers at the Freeport Project, was tied to Jobco and not any particular contractor that Jobco hired.

33.     CCS received all instructions for the work performed at the Freeport Project by Jobco and Plaintiff's duties were overseen on a regular basis by Jobco's project manager, Spiros Triantafyllou, who supervised the laborers three times per week. CCS also employed a supervisor to jointly oversee the project and supervise Plaintiff on a daily basis, who went by the name of "Ali." Defendants were jointly responsible for setting the laborers' schedules and dictating the hours worked by the laborers with the approval of Delahunt, which Defendants routinely extended in order to complete the work that Jobco required to be completed each day. Defendants were also jointly aware of all the hours that Plaintiff worked and were jointly responsible for making sure

that Plaintiff received the wages that Defendants owed.

34.     Jobco maintained the contract to perform work at the Freeport Project and all work that Plaintiff and the laborers performed was exclusive to Jobco's contract to perform work on the site. The Jobco-issued identification badge provided to Plaintiff permitted him to access the worksite to perform his work. All of the equipment used by Plaintiff to perform his work was Jobco's equipment. Additionally, all of the work that Plaintiff performed was integral to Jobco's operation of the Freeport Project, as Jobco always remained responsible for the construction and property development of the Freeport Project.

35.     On or around July 11, 2018, because K-Squared Developers failed to pay Plaintiff and Jobco's non-managerial laborers their outstanding wages owed, Jobco directly paid Plaintiff and all of its non-managerial laborers these wages. This payment enabled the laborers to continue working without any interruption as the contract shifted form K-Squared Developers to CCS.

36.     During his employment, Plaintiff worked five or six days per week, commencing his work each day at approximately 7:00 a.m. and generally working until between 3:30 p.m. and 7:00 p.m. each day. Additionally, although Defendants permitted Plaintiff and the other laborers time to visit the food truck that showed up to the jobsite, Defendants automatically deducted one-half hour from Plaintiff's pay even though Plaintiff did not always receive a full thirty minutes for an uninterrupted break. Thus, Plaintiff routinely worked for Defendants between forty-two and one-half (42.5) and as many as seventy-two (72) hours per workweek.

37.     For his work, Defendants paid Plaintiff at an hourly rate of $79.00 per hour, but failed to pay Plaintiff the statutorily applicable overtime rate of $118.50 for all hours that Plaintiff worked over forty in a workweek.

38.     By way of example only, Plaintiff worked the following five days during the week

10

of July 25 to July 31, 2018, according to the following schedule:

- Wednesday, July 25:   7:00 a.m. to 7:00 p.m.;

- Thursday, July 26:     7:00 a.m. to 7:00 p.m.;

- Friday, July 27:         7:00 a.m. to 4:30 p.m.;

- Saturday, July 28:      Off;

- Sunday, July 29:         Off;

- Monday, July 30:        7:00 a.m. to 7:00 p.m.;

- Tuesday, July 31:        7:00 a.m. to 7:00 p.m.;

Therefore, during this specific workweek, Plaintiff worked fifty-seventy and one-half hours (57.5) hours. For his work performed during this specific workweek, Defendant paid Plaintiff a total of $3,705.00. Thus, Defendants failed to pay Plaintiff at his overtime rate of $118.50 per hour for the seventeen and one-half (17.5) hours that Plaintiff worked in excess of forty that week.

39.      Plaintiff's work performed for Jobco and CCS at the Freeport Project ended on September 3, 2018, which coincided with the end of Jobco's work on the Freeport Project. Thus, for the entirety of Plaintiff's duration of employment with Jobco, he worked exclusively and predominantly for Jobco.

40.      Defendants paid Plaintiff on a weekly basis by check.

41.      On each occasion when Defendants paid Plaintiff, Defendants failed to provide Plaintiff with any wage statement that accurately listed Plaintiff's actual hours worked for that week or the applicable regular and overtime rates of pay.

42.      Upon Plaintiff's hire in June 2018, Jobco did not provide Plaintiff with any wage notice, let alone one that accurately contained, *inter alia*: Plaintiff's rate or rates of pay and basis thereof; whether he would be paid by the hour, salary, or in another manner; allowances, if any,

claimed as part of the minimum wage, including tip or meal allowances; the regular payday designated by Jobco in accordance with the NYLL; the name of employer; any "doing business as" names used by the employer; the physical address of Jobco's main office or principal place of business, and a mailing address if different; and Jobco's telephone number.

43.     Defendants treated Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs in the manner described herein.

44.     Defendants acted in the manner described herein to maximize their profits while minimizing their labor costs and overhead.

45.     Each hour that Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs worked was for Defendants' benefit.

**FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS**
*Unpaid Overtime Under the FLSA*

46.     Plaintiff and FLSA Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

47.     29 U.S.C. § 207(a) requires employers to compensate their employees at a rate not less than one and one-half times their regular rates of pay for all hours worked exceeding forty in a workweek.

48.     As described above, Defendants are employers within the meaning of the FLSA, while Plaintiff and FLSA Plaintiffs are employees within the meaning of the FLSA.

49.     As also described above, Plaintiff and FLSA Plaintiffs worked in excess of forty hours in a workweek, yet Defendants failed to compensate them in accordance with the FLSA's overtime provisions.

50.     Defendants willfully violated the FLSA.

51.     Plaintiff and FLSA Plaintiffs are entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times their respective regular rates of pay.

52.     Plaintiff and FLSA Plaintiffs are also entitled to liquidated damages and attorneys' fees for Defendants' violations of the FLSA's overtime provisions.

## SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Unpaid Overtime Under the NYLL and the NYCRR*

53.     Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

54.     NYLL § 160 and 12 NYCRR § 142-2.2 require employers to compensate their employees at a rate not less than one and one-half times their regular rates of pay for all hours worked exceeding forty in a workweek.

55.     As described above, Defendants are employers within the meaning of the NYLL and the NYCRR, while Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts into this action, are employees within the meaning of the NYLL and the NYCRR.

56.     As also described above, Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts into this action, worked in excess of forty hours in a workweek, yet Defendants failed to compensate them in accordance with the NYLL's and the NYCRR's overtime provisions.

57.     Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts into this action, are entitled to their overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times their respective regular rates of pay.

58.     Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts into this action, are also entitled to liquidated damages, interest, and attorneys' fees for Defendants' violations of the NYLL's and the NYCRR's overtime provisions.

13

## THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Failure to Furnish Proper Wage Statements in Violation of the NYLL*

59.     Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

60.     NYLL § 195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria on each occasion when the employer pays wages to the employee.

61.     As described above, Defendants, on each payday, failed to furnish Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts into this action, with accurate wage statements containing the criteria required under the NYLL.

62.     Prior to February 27, 2015, pursuant to NYLL § 198(1-d), Defendants are liable to Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts into this action, in the amount of $100 for each workweek after the violation occurred, up to a statutory cap of $2,500.

63.     On or after February 27, 2015, pursuant to NYLL § 198(1-d), Defendants are liable to Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts into this action, in the amount of $250 for each workday after the violation occurred, up to a statutory cap of $5,000.

## FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Failure to Furnish A Proper Wage Notice in Violation of the NYLL*

64.     Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

65.     NYLL § 195(1) requires that employers provide employees with a wage notice at the time of hire containing accurate, specifically enumerated criteria.

14

66. As described above, Defendant Jobco is an employer within the meaning of the NYLL, while Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts into this action, are employees within the meaning of the NYLL.

67. As also described above, Defendant Jobco failed to furnish Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts into this action, with any wage notice at hire, let alone one that accurately contained all of the criteria required under the NYLL.

68. Prior to February 27, 2015, pursuant to NYLL § 198(1-b), Defendant Jobco is liable to Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts into this action, in the amount of $50 for each workweek after the violation occurred, up to a statutory cap of $2,500.

69. On or after February 27, 2015, pursuant to NYLL § 198(1-b), Defendant Jobco is liable to Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts into this action, in the amount of $50 for each workday after the violation occurred, up to a statutory cap of $5,000.

## DEMAND FOR A JURY TRIAL

70. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs demand a trial by jury in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs demand judgment against Defendants as follows:

a. A judgment declaring that the practices complained of herein are unlawful and in willful violation of the aforementioned United States and New York State laws;

b. Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert

with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

c.      An order restraining Defendants from any retaliation against Plaintiff, FLSA Plaintiffs, and/or Rule 23 Plaintiffs for participation in any form in this litigation;

d.      Designation of this action as an FLSA collective action on behalf of Plaintiff and FLSA Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the FLSA Plaintiffs, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing a form consenting to join the lawsuit pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

e.      Certification of the claims brought in this case under the NYLL and the NYCRR as a class action pursuant to FRCP 23;

f.      All damages that Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs have sustained as a result of Defendants' conduct, including all unpaid wages and any short fall between wages paid and those due under the law that Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs would have received but for Defendants' unlawful payment practices;

g.      Liquidated damages and any other statutory penalties as recoverable under the FLSA and the NYLL;

h.      Awarding Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs their reasonable attorneys' fees, as well as their costs and disbursements incurred in connection with this action, including expert witness fees and other costs, and a service award to Plaintiff;

i.      Designation of Plaintiff and Plaintiff's counsel as collective and class action representatives under the FLSA and the FRCP;

j.      Pre-judgment and post-judgment interest, as provided by law; and

     k.     Granting Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs such other and further

relief as this Court finds necessary and proper.

Dated: New York, New York
         January 28, 2021

                               Respectfully submitted,

                               Stevenson Marino LLP
                               *Attorneys for Plaintiff*
                               75 Maiden Lane, Suite 402
                               New York, New York 10038
                               (212) 939-7229

By:                                           
                             Jeffrey R. Maguire, Esq.

# EXHIBIT K

# UNITED STATES DISTRICT COURT FOR
# THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JULIO PINEDA, on behalf of himself and all others similarly-situated,<br><br>        Plaintiff,<br><br>       -against-<br><br>JOBCO INCORPORATED, COMMERCIAL CONTRACTING SERVICES INC. and JAIME DELAHUNT, individually,<br><br>        Defendants. | Index No.: 159335/2020<br><br>**Docket No.: 20-cv-5321 (JMA)(SIL)**<br><br><br>**DEFENDANT JOBCO'S ANSWER TO PLAINTIFFS' AMENDED COMPLAINT WITH CROSSCLAIM** |

Defendant, JOBCO INCORPORATED ("Jobco"), by and through its attorneys, VENABLE LLP, for its Answer to the Amended Complaint (the "Amended Complaint") filed by Plaintiff JULIO PINEDA on behalf of himself and others ("Plaintiff") as follows:

1.  Paragraphs 1, 5-8, 13-14, 18-20, 22-23, 28, 47-48, 54-55, 60, 62-63, 65-66, and 68-69 of the Amended Complaint state legal conclusions for which no response is required. To the extent the Court deems that a response is required, Jobco denies all allegations set forth in those above-listed Paragraphs.

2.  Jobco denies the allegations set forth in Paragraphs 2 and 9 of the Amended Complaint, except admits, upon information and belief, that Plaintiff was employed by Defendant Commercial Contracting Services, Inc. ("CCS") or MDC HI, Inc., both of which are owned by Defendant Jaime Delahunt, and was a non-managerial laborer from June 2018 through September 3, 2018, during which period he performed labor on the Moxey Rigby housing project in Freeport, New York (the "Moxey Rigby Project").

3.  Jobco denies the allegations set forth in Paragraphs 3-4, 15-17, 21, 26, 39-46, 49-53, 56-59, 61, 64, 67, and 70 of the Amended Complaint in their entirety.

4.      With regard to the allegations set forth in Paragraphs 11-12, 24-25, 27, 33, 36, and 38 of the Amended Complaint, Jobco denies knowledge or information sufficient to form a belief as to the truth of those allegations.

5.      Jobco denies the allegations set forth in Paragraph 29 of the Amended Complaint, except admits that Jobco is a general contracting company located in Great Neck, New York, and that Jobco was responsible for certain construction services provided to the Moxey Rigby Project.

6.      Jobco denies the allegations set forth in Paragraph 30 of the Amended Complaint, except admits, upon information and belief, that CCS is a concrete contracting service owned by defendant Jaime Delahunt and that Jobco retained CCS as an independent subcontractor to perform concrete work on the Moxey Rigby Project.

7.      Jobco denies the allegations set forth in Paragraph 31 of the Amended Complaint, except admits that Jobco provided its subcontractors' workers with identification badges so as to allow them to gain access the Moxey Rigby Project site.

8.      Jobco denies the allegations set forth in Paragraph 32 of the Amended Complaint, except admits that Jobco terminated its contract with K-Square Developers and thereafter retained CCS.

9.      Jobco denies the allegations set forth in Paragraph 34 of the Amended Complaint, except admits to maintaining a contract to perform construction services at the Moxey Rigby Project and providing Plaintiff with an identification badge.

10.      With regard to the allegations set forth in Paragraph 35 of the Amended Complaint, Jobco denies knowledge or information sufficient to form a belief as to the truth of those allegations, except admits that Jobco paid some of K-Square Developers' laborers on one occasion in July 2018 after the K-Square Developers' contract was terminated by Jobco.

11.     Jobco denies the allegations set forth in Paragraph 37 of the Amended Complaint, except admits, upon information and belief, that Plaintiff's hourly rate was $79.00 per hour.

12.     Jobco denies that Plaintiff is entitled to any of the relief described in the unnumbered paragraphs beginning with "wherefore" and lettered "a" through "k" in the Amended Complaint.

## AFFIRMATIVE DEFENSES

13.     Jobco asserts the following defenses without assuming any burden of proof that Jobco does not have as a matter of law:

## FIRST DEFENSE

14.     The Amended Complaint is barred in whole or in part for its failure to state a claim upon which relief can be granted.

## SECOND DEFENSE

15.     If Plaintiff suffered any damages as a result of the matters alleged in the Amended Complaint, such damages were caused in whole or in part by Plaintiff's own culpable conduct and/or the culpable conduct of one or both of co-defendants CCS and Jaime Delahunt. Any judgment recovered by Plaintiff must be reduced in proportion to the extent that his culpable conduct contributed to the alleged damages, and/or must be apportioned to CCS and Jaime Delahunt for their culpable conduct. This defense also may apply to the claims of some or all of the purported class of allegedly similarly-situated persons.

## THIRD DEFENSE

16.     The Plaintiff's claims must fail, as Jobco acted in good faith, and not willfully, intentionally, or maliciously.

## FOURTH DEFENSE

17.     The Amended Complaint is barred in whole or in part because Plaintiff, at all relevant times herein, was fully and justly compensated for all time he worked on the Moxey Rigby Project. This defense also may apply to the claims of some or all of the purported class of allegedly similarly-situated persons.

## FIFTH DEFENSE

18.     The Amended Complaint is barred in whole or in part, because one or more of the claims concerns insignificant amounts of overtime work performed and/or other monies owed, if any. This defense also may apply to the claims of some or all of the purported class of allegedly similarly-situated persons.

## SIXTH DEFENSE

19.     During the course of his employment with CCS, Plaintiff never complained to Jobco about any purported violations of applicable wage and hour laws, whether due to allegedly unpaid overtime wages or otherwise, and further failed to mitigate any of his alleged damages. This defense also may apply to the claims of some or all of the purported class of allegedly similarly-situated persons.

## SEVENTH DEFENSE

20.     The Plaintiff has not suffered any actual damages as a result of Jobco's actions or inactions. This defense also may apply to the claims of some or all of the purported class of allegedly similarly-situated persons.

**EIGHTH DEFENSE**

21. The Plaintiff's claims are barred, in whole or in part, by documentary evidence. This defense also may apply to the claims of some or all of the purported class of allegedly similarly-situated persons.

**NINTH DEFENSE**

22. The Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver, laches, unclean hands, payment and release, and/or consent. This defense also may apply to the claims of some or all of the purported class of allegedly similarly-situated persons.

**TENTH DEFENSE**

23. Some or all of Plaintiff's claims are barred by the applicable statute of limitations, governing administrative time limitations, and/or contractual time limitations. This defense also may apply to the claims of some or all of the purported class of allegedly similarly-situated persons.

**ELEVENTH DEFENSE**

24. Plaintiff cannot satisfy the requirements of a collective and/or class action, and some or all of the claims asserted in the Amended Complaint are barred, because Plaintiff is not similarly situated to the group of individuals he purports or otherwise seeks to represent, and/or members of the group of individuals Plaintiff purports or otherwise seeks to represent are not similarly situated to each other.

**TWELFTH DEFENSE**

25. Plaintiff cannot satisfy the requirements for a collective and/or class action because Plaintiff is an inadequate representative for the putative collective and/or class action and, as such,

the Court should not authorize notice to be issued or a collective and/or class action to be maintained.

## THIRTEENTH DEFENSE

26.     This case is not appropriate for collective and/or class action treatment because the facts and law common to the case, if any, are insignificant compared to the individual facts and issues particular to Plaintiff. This defense also may apply to the claims of some or all of the purported class of allegedly similarly-situated persons.

## FOURTEENTH DEFENSE

27.     A collective and/or class action is not superior to other available methods for the fair and efficient adjudication of this controversy. This defense also may apply to the claims of some or all of the purported class of allegedly similarly-situated persons.

## FIFTEENTH DEFENSE

28.     Plaintiff cannot prove any uniform policy or practice in violation of state or federal law. This defense also may apply to the claims of some or all of the purported class of allegedly similarly-situated persons.

## SIXTEENTH DEFENSE

29.     Some or all of the claims asserted in the Amended Complaint are barred, because the group of allegedly similarly-situated persons that Plaintiff purports to represent are not so numerous that joinder would be impracticable.

## SEVENTEENTH DEFENSE

30.     Jobco acted in good faith and without willfulness in believing that it was, at all times, complying with all applicable provisions of state and federal law. This defense also may apply to the claims of some or all of the purported class of allegedly similarly-situated persons.

## **EIGHTEENTH DEFENSE**

31.     Jobco has not willfully failed to pay Plaintiff any wages and/or monies claimed to be due, and there is a *bona fide*, good faith dispute with respect to Jobco's obligation to pay any sum that may be alleged to be due. This defense also may apply to the claims of some or all of the purported class of allegedly similarly-situated persons.

## **NINETEENTH DEFENSE**

32.     Plaintiff may not recover liquidated damages and prejudgment interest because such relief would amount to a "double recovery." This defense also may apply to the claims of some or all of the purported class of allegedly similarly-situated persons.

## **TWENTIETH DEFENSE**

33.     Plaintiff's claims are barred, in whole or in part, because Jobco cannot be considered a joint employer. This defense also may apply to the claims of some or all of the purported class of allegedly similarly-situated persons.

## **DEFENSES RESERVED**

34.     Defendant, Jobco, gives notices that it intends to rely upon such other and further defenses as may become available during the pretrial proceedings in this action and hereby reserves all rights to amend this answer and all such defenses to the Plaintiff's Amended Complaint asserted herein.

## **CROSSCLAIM**

## **INDEMNIFICATION AGAINST**
## **CCS AND JAIME DELAHUNT**

35.     Jobco, by its counsel, alleges this crossclaim against Defendants CCS and Jaime Delahunt.

36.     Jobco is a domestic corporation, duly organized and existing pursuant to the laws of the State of New York, with its principal place of business located at 277 Northern Boulevard, Suite 203, Great Neck, New York 11021.

37.     Upon information and belief, Plaintiff is a resident of the State of New York.

38.     Upon information and belief, Defendant CCS is a domestic corporation, duly organized and existing pursuant to the laws of the State of New York, with its principal place of business located at 40 Underhill Boulevard, Suite LB, Syosset, New York 11791.

39.     Upon information and belief, Defendant Jaime Delahunt was and is CCS's owner and is a resident of the State of New York.

40.     Upon information and belief, Defendants CCS and Jaime Delahunt employed Plaintiff and some or all of the purported class of allegedly similarly-situated persons.

41.     Jobco did not employ Plaintiff or any of the purported class of allegedly similarly-situated persons.

42.     According to the allegations of the Amended Complaint, Defendants CCS and Jaime Delahunt failed to pay overtime wages to Plaintiff(s).

43.     In the event that Plaintiff is awarded any judgment against Jobco herein, Jobco demands that Jobco be granted indemnification in accordance with any applicable contracts, agreements, warranties, express or implied, third-party beneficiary status, and implied right of indemnity.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Defendant Jobco Incorporated respectfully requests that the Court grant a judgment dismissing Plaintiff's Amended Complaint against Jobco Incorporated in its entirety, and grant Jobco Incorporated's crossclaim as follows:

A.      With respect to Count I of Jobco's crossclaim, in the event that Plaintiffs, Julio

Pineda, et al., is awarded any judgment against Jobco, Jobco demands that Jobco be granted

indemnification from Defendants Commercial Contracting Services Inc. and/or Jaime Delahunt

for the total amount of damages awarded pursuant to such judgment and costs awarded to Plaintiff;

B.      Pre-judgment and post-judgment interest as provided by law;

C.      Applicable attorneys' fees; and

D.      For such other and further relief as the Court deems just and proper.

Dated: New York, New York
       February 11, 2021                                    Respectfully submitted,


                                                    By:  *Brian G. Lustbader*
                                                       _____
                                                       Brian G. Lustbader, Esq.
                                                       Katherine R. Peluso, Esq.
                                                       1270 Avenue of the Americas
                                                       24th Floor
                                                       New York, New York 10020
                                                       Tel: (212) 307-5500
                                                       Fax: (212) 307-5598
                                                       bglustbader@venable.com
                                                       krpeluso@venable.com

                                                       *Attorneys for Jobco*
                                                       *Incorporated*

To: Jeffrey R. Maguire, Esq.
    Stevenson Marino LLP
    75 Maiden Lane, Suite 402
    New York, New York 10038
    (212) 939-7229
    *Attorneys for Plaintiff*

# EXHIBIT L

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JULIO PINEDA, on behalf of himself and all others similarly-situated,<br><br>     Plaintiff,<br><br> -against-<br><br>JOBCO INCORPORATED, and COMMERCIAL CONTRACTING SERVICES INC., and JAIME DELAHUNT, individually,<br><br>     Defendants. | **Civil Action No.: 20-cv-5321 (JMA)(SIL)** |

### NOTICE OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF THE <u>CLASS ACTION SETTLEMENT</u>

For the reasons set forth in the Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Approval of the Class Action Settlement, and the Declaration of Jeffrey R. Maguire ("Maguire Decl."), and the exhibits attached thereto, both filed contemporaneously herewith, Plaintiffs, on consent of Defendant Jobco, respectfully request that the Court:

(1)  preliminarily approve the proposed Settlement Agreement, annexed to the Maguire Decl. as **Exhibit A**;

(2)  approve the proposed Notice of Pendency of Class Action Settlement, attached to the Maguire Decl. as **Exhibit B**, the proposed Claim Form and Release ("Claim Form"), attached to the Maguire Decl. as **Exhibit C**, and approve the claims procedure detailed in the Settlement Agreement;

(3)  certify, for settlement purposes only, the two overlapping settlement classes under Federal Rule of Civil Procedure 23(a) and (b)(3), and under 29 U.S.C. § 216(b);

(4)     appoint Named Plaintiff Julio Pineda as the Class Representative for both Classes;

(5)     appoint Stevenson Marino LLP as Class Counsel;

(6)     appoint Arden Claims Service, LLC as the Claims Administrator for this settlement;

(7)     approve the Parties' proposed schedule for the filing of a motion for final approval, for Class Members to submit a Claim Form, opt out, or file objections to the proposed settlement, and schedule a Fairness Hearing; and

(8)     enter the Proposed Order attached as **Exhibit D** to the Maguire Decl.

Dated: New York, New York
        May 20, 2021

                                        Respectfully submitted,

                                        _____
                                        Jeffrey R. Maguire
                                        Justin R. Marino
                                        J.R. Stevenson
                                        *Attorneys for Plaintiffs*
                                        75 Maiden Lane, Suite 1821
                                        New York, New York 10017
                                        Tel. (212) 939-7229
                                        jmaguire@stevensonmarino.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JULIO PINEDA, on behalf of himself and all others
similarly-situated,

                Plaintiff,

     -against-

JOBCO INCORPORATED, and COMMERCIAL
CONTRACTING SERVICES INC., and JAIME
DELAHUNT, individually,

                Defendants.

**Docket No.: 20-cv-5321**

**(JMA)(SIL)**


# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT


**STEVENSON MARINO LLP**

Jeffrey R. Maguire
Justin R. Marino
J.R. Stevenson
75 Maiden Lane, Suite 402
New York, New York 10038
*Attorneys for Plaintiff*

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ................................................................................1

II. BACKGROUND ...................................................................................................2

    A. Procedural History, Plaintiffs' Allegations, Discovery, and Mediation ..........2

    B. Settlement Procedure ......................................................................5

    C. The Proposed Classes .....................................................................6

    D. Summary of the Monetary Settlement Terms .......................................6

III. ANALYSIS ........................................................................................................10

    A. The Court Should Grant Preliminary Approval of the Proposed Settlement ...................................................................................10

        1. The legal standards for preliminary approval .............................10

        2. The proposed settlement is fair, reasonable, and adequate considering the complexity, expense, and likely duration of the litigation, the stage of the proceedings, and discovery completed ...............................................................................14

            a. Complexity, expense, and likely duration of the litigation. ...........14

            b. Stage of proceedings and amount of discovery completed. ...........15

        3. The proposed settlement is fair, reasonable, and adequate given the risks of establishing liability and damages, and maintaining the class through trial. .................................................................16

        4. Maintaining the FLSA collective and Rule 23 Class through trial would not be guaranteed. ....................................................17

        5. The Maximum Settlement Amount is substantial, even in light of the best possible recovery and attendant risks of litigation, and the "reasonableness of the proposed settlement" factors support approval of the proposed settlement. .........................................18

    B. Certification Under Rule 23 is Warranted. ........................................20

        1. Numerosity ........................................................................22

        2. Commonality ......................................................................22

        3. Typicality ..........................................................................23

4.      Adequacy of class representative ..................................................................23

5.      Rule 23(a)'s "implied" ascertainability requirement ................................24

6.      Certification under Rule 23(b)(3) is satisfied .............................................24

7.      Plaintiffs' counsel should be appointed as Class Counsel ........................25

**C.**      **The Proposed Notice is Appropriate** ...................................................................26

**IV.**      **CONCLUSION** ....................................................................................................................27

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997)................................................................................... 21, 25

*Bravo v. Palm West Corp.,*
   2015 WL 5826715 (S.D.N.Y. Sept. 30, 2015)........................................................ 10

*Cheeks v. Freeport Pancake House, Inc.,*
   796 F.3d 199 (2d Cir. 2015)........................................................................ 10

*City of Detroit v. Grinnell Corp.,*
   495 F.2d 448 (2d Cir. 1974)........................................................ 2, 12, 13, 18

*Consol. Rail Corp. v. Town of Hyde Park,*
   47 F.3d 473 (2d Cir. 1995)........................................................................ 22

*Deen v. New Sch. Univ.,*
   2008 WL 331366 (S.D.N.Y. Feb. 4, 2008)............................................................ 22

*Denney v. Deutsche Bank AG,*
   443 F.3d 253 (2d Cir. 2006)........................................................................ 23

*Dover v. British Airways, PLC (UK),*
   323 F. Supp. 3d 338 (E.D.N.Y. 2018) ............................................................... 11

*Dunnigan v. Metro. Life. Ins. Co.,*
   214 F.R.D. 125 (S.D.N.Y. 2003) ................................................................... 24

*Garcia v. Pancho Villa's of Huntington Vill., Inc.,*
   2012 WL 5305694 (E.D.N.Y. Oct. 4, 2012)........................................................ 13

*Gay v. Tri-Wire Eng'g Solutions, Inc.,*
   2014 WL 28640 (E.D.N.Y. Jan. 2, 2014) ........................................................... 12

*Gen. Tel. Co. of Sw. v. Falcon,*
   457 U.S. 147 (1982)................................................................................. 22

*Gortat v. Capala Bros., Inc.,*
   2012 WL 1116495 (E.D.N.Y. Apr. 3, 2012) ....................................................... 22

*Granada Invest., Inc. v. DWG Corp.,*
   962 F.2d 1203 (6th Cir. 1992) .................................................................... 16

*Green v. Wolf Corp.*,
  406 F.2d 291 (2d Cir. 1968) ........................................................................... 25

*Hamelin v. Faxton–St. Luke's Healthcare*,
  274 F.R.D. 385 (N.D.N.Y. 2011) .................................................................. 24

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ....................................................................... 21

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) .................................................. 14, 15, 17

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) ............................................................................ 10

*In re Nat'l Football League Players Concussion Injury Litig.*,
  821 F.3d 410 (3d Cir. 2016) ......................................................................... 21

*In re Penthouse Executive Club Comp. Litig.*,
  2013 WL 1828598 (S.D.N.Y. Apr. 30, 2013) ................................................ 11

*In re Traffic Exec. Ass'n*,
  627 F.2d 631 (2d Cir. 1980) .......................................................................... 12

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
  718 F. Supp. 1099 (S.D.N.Y. 1989) ............................................................... 18

*In re Visa Check/MasterMoney Antitrust Litig.*,
  280 F.3d 124 (2d Cir. 2001) .......................................................................... 25

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) .......................................................................... 15

*Joel A. v. Giuliani*,
  218 F.3d 132 (2d Cir. 2000) .......................................................................... 21

*Khait v. Whirpool Corp.*,
  2009 WL 6490085 (E.D.N.Y. Oct. 1, 2009) .................................................. 12

*Landin v. UBS Servs. USA LLC*,
  2012 WL 488284 (S.D.N.Y. Feb. 14, 2012) .................................................. 10

*Marisol A. v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997) .......................................................................... 23

*Massiah v. Metroplus Health Plan, Inc.*,
   2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012) ....................................................................... 13

*Maywalt v. Parker & Parsley Petroleum Co.*,
   67 F.3d 1072 (2d Cir. 1995) ....................................................................................................... 10

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972) ....................................................................................................... 18

*Oppenlander v. Standard Oil Co.*,
   64 F.R.D. 597 (D. Colo. 1974). ................................................................................................. 17

*Paker v. City of New York*,
   2017 WL 6375736 (E.D.N.Y. Dec. 11, 2017) .......................................................................... 11

*Priddy v. Edelman*,
   883 F.2d 438 (6th Cir. 1989) ..................................................................................................... 16

*Republic Nat'l Life Ins. Co. v. Beasley*,
   73 F.R.D. 658 (S.D.N.Y. 1970) ................................................................................................. 18

*Reyes v. Buddha-Bar NYC*,
   2009 WL 5841177 (S.D.N.Y. May 28, 2009) ..................................................................... 15, 17

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993) ................................................................................................. 22, 23

*Rosario v. Valentine Ave. Discount Store*,
   2013 WL 2395288 (E.D.N.Y. May 31, 2013) ........................................................................... 26

*Rossini v. Ogilvy & Mather, Inc.*,
   798 F.2d 590 (2d Cir. 1986) ....................................................................................................... 25

*Saldana v. Middletown Car-G-Cam Uni Corp.*,
   2015 WL 12591678 (S.D.N.Y. Sept. 23, 2015) ........................................................................ 11

*Santo Sierra & Alexander Valentin v. Spring Scaffolding LLC*,
   2015 WL 10934779 (E.D.N.Y. May 8, 2015) .................................................................. *passim*

*Saylor v. Lindsley*,
   456 F.2d 896 (2d Cir. 1972) ....................................................................................................... 18

*Stieberger v. Sullivan*,
   792 F. Supp. 1376 (S.D.N.Y. 1992) ........................................................................................... 14

*Stinson v. City of New York*,
  282 F.R.D. 360 (S.D.N.Y.2012) ..................................................................... 24

*Strougo v. Bassini*,
  258 F. Supp. 2d 254 (S.D.N.Y. 2003) ....................................................... 16, 18

*Sukhnandan v. Royal Health Care of Long Island LLC*,
  2013 WL 4734818 (S.D.N.Y. Sept. 3, 2012) ................................................. 11

*Taylor v. Delta-Sonic Car Wash Sys., Inc.*,
  2017 WL 436045 (W.D.N.Y. Jan. 31, 2017) ................................................. 21

*Toure v. Amerigroup Corp.*,
  2012 WL 1432302 (E.D.N.Y. Apr. 20, 2012) ............................................... 11

*Valerio v. RNC Indus., LLC*,
  314 F.R.D. 61 (E.D.N.Y. 2016) ...................................................................... 21

*Vivaldo v. United Talmudical Acad. of Kiryas Joel, Inc.*,
  2015 WL 4922961 (S.D.N.Y. Aug. 18, 2015) ........................................... 22, 24

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) .......................................................................... 10, 11

*Westerfield v. Washington Mut. Bank*,
  2009 WL 6490084 (E.D.N.Y. June 26, 2009) ................................................ 11

*Wolinsky v. Scholastic, Inc.*,
  900 F. Supp. 2d 332 (S.D.N.Y. 2012) .......................................................... 2, 13

**Rules and Statutes**

29 U.S.C. § 216(b) ........................................................................... *passim*

Fed. R. Civ. P. 23 ............................................................................. *passim*

**Treatises**

*Newberg on Class Actions* (4th Ed. 2002) ............................................. 12, 20

## I.   **PRELIMINARY STATEMENT**

Subject to this Court's approval, this wage and hour collective and class action brought pursuant to the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") is settled for the maximum amount of $208,000.00. The proposed settlement resolves the claims of the Named Plaintiff, Julio Pineda ("Named Plaintiff" or "Pineda"), the opt-in Plaintiffs that opted in to this action by filing consent to join forms with the Court ("Opt-in Plaintiffs," and referred to together with Named Plaintiff as "Plaintiffs"), and the claims of those alleged by Plaintiffs to be similarly-situated putative class and collective members against Defendant, Jobco Incorporated ("Defendant" or "Jobco," and together with Plaintiffs, as "the Parties").  By this motion, including all supporting documents, the Parties respectfully submit that the proposed settlement satisfies all of the criteria for preliminary settlement approval and request that the Court:

(1)   preliminarily approve the proposed Settlement Agreement, annexed to the Declaration of Jeffrey R. Maguire, Esq. ("Maguire Declaration") as **Exhibit A**, the terms of which are described herein and in the Maguire Declaration;

(2)   approve the proposed Notice of Proposed Class and Collective Action Settlement ("Notice"), attached to the Maguire Declaration as **Exhibit B**, the proposed Claim Form and Release ("Claim Form"), attached to the Maguire Declaration as **Exhibit C**, and approve the claims procedure detailed in the Settlement Agreement;

(3)   certify, for settlement purposes only, a settlement class with overlapping state claims under Federal Rule of Civil Procedure ("Fed. R. Civ. P." or "Rule(s)") 23(a) and (b)(3), and federal claims under 29 U.S.C. § 216(b) with individual members jointly referred to as "Class Members," and the class referred to as "the Class," and defined as:

<u>Rule 23 Class</u>

All individuals that Plaintiffs have alleged were employed by Defendant as manual laborers that worked overtime hours at any time during the period of July 13, 2018 through September 28, 2018 at the Moxey Rigby Project located in Freeport, New York according to the time records maintained at the jobsite;

<u>FLSA § 216(b) Collective</u>

> All individuals that Plaintiffs have alleged were employed
> by Defendant as manual laborers that worked overtime hours
> at any time during the period of July 13, 2018 through
> September 28, 2018 at the Moxey Rigby Project located in
> Freeport, New York according to the time records
> maintained at the jobsite, and who timely submit a Claim
> Form, thereby opting into the settlement of all FLSA claims.

(4)      appoint Named Plaintiff Julio Pineda as the Class Representative;

(5)      appoint Stevenson Marino LLP ("the Firm" or "Stevenson Marino"), as Class Counsel;

(6)      appoint Arden Claims Service LLC ("Arden") as the Claims Administrator for this settlement;

(7)      approve the Parties' proposed schedule for the filing of a motion for final approval, for class members to submit Claim Forms, opt out, or file objections to the proposed settlement, and schedule a Fairness Hearing; and

(8)      enter the Proposed Order attached as **Exhibit D** to the Maguire Declaration.

As discussed more fully below, because the settlement is fair, reasonable, and adequate, and, for the purposes of settlement only, otherwise satisfies the requirements of Rule 23(e), 29 U.S.C. § 216(b), *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds*, *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000), and *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012), the Court should preliminarily approve it.

## II.    <u>BACKGROUND</u>

### A.    <u>Procedural History, Plaintiffs' Allegations, Discovery, and Mediation</u>

On November 3, 2020, Named Plaintiff filed a Complaint in this Court asserting FLSA and NYLL claims for unpaid overtime and other statutory damages, on behalf of himself and all others similarly situated pursuant to 29 U.S.C. § 216(b) and Federal Rule of Civil Procedure 23. *See* Dkt.

No. 1. On January 28, 2021, Named Plaintiff filed an Amended Complaint, adding the subcontractor, Commercial Contracting Services, Inc. and its owner, Jaime Delahunt, as defendants (collectively as "CCS"). *See* Dkt. No. 24. On February 11, 2021, Jobco filed an Answer to the Amended Complaint. *See* Dkt. No. 29. Since the filing of the original Complaint on November 3, 2020, sixteen Opt-in Plaintiffs filed consent to join forms opting into the action. *See* Dkt. Nos. 2-8, 12-17, 32-33.

Named Plaintiff claims that he worked for Defendant, a construction management company, which Named Plaintiff alleges jointly employed him as a non-managerial laborer from in or about July 13, 2018 through September 3, 2018, during which period he performed manual labor on the Moxey Rigby public housing complex in Freeport, New York ("Freeport Project"). *See* Dkt. No. 24, ¶ 2. Named Plaintiff alleges that for the duration of this employment period, Defendant failed to compensate him and other non-managerial laborers for the hours they worked over forty each workweek at the applicable overtime rate of pay. *See* Dkt. No. 24, ¶ 2. Named Plaintiff additionally claims that Defendant failed to provide him and the putative class/collective members with accurate wage statements on each payday, in further violation of the NYLL. *See* Maguire Decl., ¶ 3.

In Jobco's Answer to the Amended Complaint filed on February 11, 2021, Jobco denied all of Named Plaintiff's allegations in their entirety and asserted as an affirmative defense that Jobco is not a joint employer under the law. *See* Dkt. No. 29, ¶ 33. Defendant maintains that Jobco would ultimately prevail on the joint employer liability issue through litigation in this matter.

On March 24, 2021, the Parties participated in an all-day mediation before Bonnie Siber Weinstock, Esq., an experienced labor and employment mediator and arbitrator. *See* Maguire Decl., ¶ 6. During the mediation, the Parties analyzed the timesheet records produced by Plaintiffs

that contained the hours worked during the time period in question, enabling the Parties to calculate with specificity the potential damages in question for all Class Members. *See* Maguire Decl., ¶ 6. Through the assistance of the mediator, the Parties were able to reach an agreement in principle to resolve this action on a class-wide basis. *See* Maguire Decl., ¶ 6.

Specifically, the Parties agreed to settle the alleged claims of the putative class, for the total amount of $208,000.00 ("Settlement Amount"), inclusive of attorneys' fees, expenses, claims administrator fees, and service awards. *See* Maguire Decl., ¶ 7; *see generally* **Exhibit A**, Settlement Agreement. As explained below, Plaintiffs are satisfied that the portion of the Settlement Amount that will be distributed to Class Members after attorneys' fees, costs, claims administrator fees, and service awards is reasonable. *See* Maguire Decl., ¶ 8.

Throughout the litigation, Named Plaintiff and Opt-in Plaintiff, Jose Diaz, were instrumental in achieving the resolution of this matter in principle. *See* Maguire Decl., ¶ 9. Indeed, Named Plaintiff not only assumed the full risk commensurate with putting his name on the action, but he remained intimately involved in this matter throughout and assisted with the pre-litigation investigation and complaint-drafting, explanation of the records, response to Jobco's defenses, and participation in mediation preparation. *See* Maguire Decl., ¶ 9.

Opt-in Plaintiff Diaz additionally remained active in document analysis and consultation with respect to conversations and negotiation with Jobco in resolving the case. *See* Maguire Decl., ¶ 9. Opt-in Plaintiff Diaz also attended the Zoom mediation session and participated by answering questions posed by the mediator. *See* Maguire Decl., ¶ 9. In sum, both Named Plaintiff and Opt-in Plaintiff Diaz provided crucial information and analysis on behalf of the Class Members and only through their participation was the matter able to be resolved on the Class Members' behalf. *See* Maguire Decl., ¶ 9.

4

## B.    Settlement Procedure

The Parties reduced their agreement to a comprehensive Settlement Agreement. *See* Maguire Decl., ¶ 11; **Exhibit A**. The Parties also drafted a proposed Notice and Claim Form to be sent to Class Members, advising them of the settlement's material terms and their rights thereunder. Maguire Decl., ¶ 12. The Notice also explains what steps they must take to claim their share of the Settlement Amount. Maguire Decl., ¶ 12. A true and accurate copy of the proposed Notice and Claim Form to be sent to Class Members is attached to the Maguire Declaration as **Exhibits B** and **C**, respectively. The Notice and Claim Form are clear and balanced and easy to understand, and include all material and necessary information, including: (1) information regarding the nature of the lawsuit; (2) why there is a settlement and what a class and collective action is; (3) a summary of the substance of the settlement, including the formula to calculate the approximate share of the settlement that each class member can expect to receive; (4) the procedure and time period for submitting a Claim Form, objecting to the settlement, and excluding oneself from the settlement; and (5) information regarding the Fairness Hearing. Maguire Decl., ¶ 14. The Notice also discusses the release, the requested attorneys' fees and costs, the service awards, the Claims Administrator's duties and fees, and the method for redistributing any unclaimed funds. *See* Maguire Decl., ¶ 14.

Within ten (10) days of the Court's entry of an Order granting the instant motion (the "Preliminary Approval Order"), Defendant will provide a finalized Class Member list ("Class List") to Plaintiffs' counsel and to the Claims Administrator. *See* Maguire Decl., ¶ 15. The Claims Administrator will have fourteen (14) days after the receipt of the Class List to mail, via First Class United States Mail, in both English and Spanish, the Court-approved Notice and Claim Forms to all Class Members. *See* Maguire Decl., ¶ 15. Translation of the Notice is necessary as many Class

Members, including Named Plaintiff, spoke Spanish as their first language. *See* Maguire Decl., ¶ 15. Class Members will then have sixty (60) days from the date that the Notices are initially mailed to return their Claim Forms, object to, or opt-out of the settlement. *See* Maguire Decl., ¶ 15. To be valid, a Claim Form or an Opt-out Statement must be postmarked or received by the Claims Administrator within sixty (60) days after the initial mailing of Notice to the Class, subject to any good cause reason for delay as outlined in the Settlement Agreement. *See* Maguire Decl., ¶ 15. The Notice also contains instructions and a deadline for Class Members who wish to object to the Settlement Agreement and/or appear at the Fairness Hearing, either with or without counsel. *See* Maguire Decl., ¶ 15; **Exhibit B**.

C.     **The Proposed Classes**

The Parties agree that the proposed overlapping classes consist of approximately 63 individuals that Plaintiffs have alleged were employed by Defendant as manual laborers that worked overtime hours at any time during the period from July 13, 2018 through September 28, 2018 at the Moxey Rigby Project located in Freeport, New York according to the time records maintained at the jobsite ("Relevant Time Period"). *See* Maguire Decl., ¶ 16.

D.     **Summary of the Monetary Settlement Terms**

As described above, the Settlement Agreement provides for the creation of a fund of $208,000.00 ("Maximum Settlement Amount"). Defendant will fund the Maximum Settlement Amount via three separate deposits, with $70,000.00 to be deposited withing twenty (20) days after the Preliminary Approval Order, $70,000.00 to be deposited within eighty (80) days after the Notice has been sent to Class Members, and the remaining balance of $68,000.00, as necessary, to be deposited within fourteen (14) days after the Parties receive the executed declaration from the Claims Administrator. Attorneys' fees are to be paid from the Maximum Settlement Amount in

the amount, subject to court approval, of one-third of the Maximum Settlement Amount, plus the Firm's out-of-pocket expenses spent prosecuting and settling this case.

Additionally, subject to the Court's approval, a service award of $5,000.00 each will be paid to the Named Plaintiff and to Opt-In Plaintiff Diaz, for a combined total of $10,000.00, based on services that they each provided to the Class Members in assisting the Firm in prosecuting this action, to be explained in detail in the Parties' final approval motion. *See* Maguire Decl., ¶ 18. These service awards will be deducted from the Maximum Settlement Amount. *See* Maguire Decl., ¶ 18. Finally, as payment for all of its fees, costs, and expenses for its handling of all duties related to administration of the Settlement, including the distribution of checks and tax reporting, the Claims Administrator will be paid $7,000.00, which will also be deducted from the Maximum Settlement Amount. *See* Maguire Decl., ¶ 19. After all claims are paid to all putative class members who submit Claim Forms, any amounts representing uncashed settlement checks, uncashed service awards or any other amount remaining in the Maximum Settlement Amount after one hundred (100) days from the mailing of settlement checks shall be returned to Defendant within thirty (30) days thereafter. *See* Maguire Decl., ¶ 20.

To determine each Class Member's share of the Settlement Amount, each Class Member's share will be calculated based upon points earned according to the timesheets, which show the amount of overtime hours worked by the Class Members during the Relevant Time Period. *See* Maguire Decl., ¶ 21. The Maximum Settlement Amount will be reduced by court-approved attorneys' fees, service awards, and other court-approved fees and expenses, contemplated by the Parties in the Settlement Agreement to calculate the Net Settlement Amount (hereinafter "Net Settlement Amount"). *See* Maguire Decl., ¶ 21. Each Class Member's earned points will be divided by the aggregate earned points from all Class Members to calculate the Class Member's allocated

percentage of the Net Settlement Amount. *See* Maguire Decl., ¶ 21. The Class Member's percentage of the Net Settlement Amount will then be multiplied by the Net Settlement Amount to determine each Class Member's "Individual Gross Amount." *See* Maguire Decl., ¶ 21. This can be expressed through the following formula:

$$NSF \ X \ \frac{Individual \ Class \ Member's \ Points}{Aggregate \ Points \ of \ All \ Class \ Members} = Individual \ Gross \ Amount$$

*See* Maguire Decl., ¶ 21.

Each Class Member that does not opt-out of the Class and that timely submits a Claim Form will be mailed his/her Individual Net Amount, which is the Individual Gross Amount after deductions for taxes and other lawful withholdings to the extent applicable. *See* Maguire Decl., ¶ 22. The monetary terms of the settlement, including the tax treatment of each payment, are explained in the Settlement Agreement. *See* Maguire Decl., ¶ 22; **Exhibit A**. Class Members who do not opt-out will release any NYLL claims against Jobco. *See* Maguire Decl., ¶ 22. If a Class Member submits a Claim Form, thereby opting into the settlement, that Class Member will become a Collective Member and release all FLSA claims against Jobco as well. *See* Maguire Decl., ¶ 22. Each Class and Collective Member's Claim Form will contain the following statement:

> My signature below, on my behalf, and on behalf of my respective current, former, and future heirs, spouses, executors, administrators, agents, and attorneys constitutes a full and complete release and discharge of Jobco Incorporated ("Jobco"), and my signature therefore fully, finally, and forever releases and discharges Jobco, its present and former parent companies, subsidiaries, related or affiliated companies, and their respective shareholders, members, partners, officers, directors, employees, members, managers, fiduciaries, trustees, employee benefit plan administrators, agents, attorneys, insurers, successors, and assigns, and all persons or entities acting by, through, under, or in concert with any of them, for acts taken in their capacities as employees or representatives of Jobco (collectively, the "Releasees"), with the exception of Commercial Contracting Services ("CCS") and any of its shareholders, members, partners, officers, directors, employees,

members and managers, including Jaime Delahunt, from any all wage and hour claims that were or could have been asserted under the New York Labor Law ("State Law Claims") and its implementing regulations by the Plaintiffs and the Class Members. Released New York State Law Claims include, but are not limited to, all claims under New York law for overtime, regular, and minimum wages, including spread of hours, Wage Theft Prevention Act ("WTPA") penalties, tip credit withholdings, and alleged violations, liquidated damages, and any other related wage and hour claims and/or damages resulting from the alleged failure to pay minimum wages, regular wages, spread of hours, and/or overtime wages, comply with the WTPA, interest on such claims, and attorneys' fees, expenses, and costs related to such claims. Moreover, by signing this form, in addition to the release of all State Law Claims described above, I also fully, finally, and forever release and discharge Releasees from all Fair Labor Standards Act claims, which is defined as all wage and hour claims that were or that could have been asserted against Releasees pursuant to the Fair Labor Standards Act and/or its implementing regulations by or on behalf of the Plaintiffs, Collective Members, Class Members, or myself.

By signing this Consent Form and Release, I hereby consent to become a party in this action and authorize Stevenson Marino LLP to file this Form with the Court.

*See* Maguire Decl., ¶ 22.

As discussed more fully below, all Parties believe that the settlement offers a fair and reasonable resolution of the claims at issue. Further, all Parties believe that the settlement incorporates and recognizes the substantial risks that each side faces, whether through class certification and decertification motions, summary judgment motions, at trial, and on appeal, had the litigation continued. *See* Maguire Decl., ¶¶ 23-28. Accordingly, Plaintiffs, with the consent of Defendant, request that the Court preliminarily approve their settlement and grant all other relief requested herein.

## III.   ANALYSIS

### A.   The Court Should Grant Preliminary Approval of the Proposed Settlement

#### 1.   *The legal standards for preliminary approval*

Rule 23(e) requires judicial approval for any compromise of claims brought on a class basis. More specifically, the Court must determine whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). Likewise, the Second Circuit has held that settling and dismissing FLSA claims with prejudice requires a court order. *See Cheeks*, 796 F.3d at 199. The decision whether to approve a class settlement is left to the district court's sound discretion. *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995).

As a general matter, settlement of class action lawsuits is strongly favored. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotation marks and alterations omitted); *Landin v. UBS Servs. USA LLC*, 2012 WL 488284, at *1 (S.D.N.Y. Feb. 14, 2012) (granting preliminary approval of FLSA and NYLL settlement and noting the "strong judicial policy in favor of settlement of class action suits") (internal quotation marks and alterations omitted). "Provisional settlement class certification and appointment of class counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all class members of the terms of the proposed Settlement Agreement, and setting the date and time of the final approval hearing." *Bravo v. Palm West Corp.*, 2015 WL 5826715, at *2 (S.D.N.Y. Sept. 30, 2015) (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 790-92 (3d Cir. 1995)) (noting practical purposes of provisionally certifying settlement class).

This Court has recognized that "courts should give proper deference to the private consensual decision of the parties" bearing in mind "the unique ability of class and defense counsel to assess the potential risks and rewards of litigation . . ." *Santo Sierra & Alexander Valentin v. Spring Scaffolding LLC*, 2015 WL 10934779, at *2 (E.D.N.Y. May 8, 2015) (Azrack, *J.*) (internal quotation marks omitted). Such deference to a privately negotiated settlement is particularly appropriate when the settlement is the product of arms-length negotiations between the parties. *See Wal-Mart Stores*, 396 F.3d at 116 (discussing "strong judicial policy" in favor of settlements).

Crucially, "[t]he force of this presumption is increased when a settlement is reached with the assistance of an experienced mediator." *Saldana v. Middletown Car-G-Cam Uni Corp.*, 2015 WL 12591678, at *1 (S.D.N.Y. Sept. 23, 2015) (citing *Sukhnandan v. Royal Health Care of Long Island LLC*, 2013 WL 4734818, at *2 (S.D.N.Y. Sept. 3, 2012)); *In re Penthouse Executive Club Comp. Litig.*, 2013 WL 1828598, at *2 (S.D.N.Y. Apr. 30, 2013) ("A settlement . . . reached with the help of third-party neutrals enjoys a presumption that the settlement achieved meets the requirements of due process."); *Toure v. Amerigroup Corp.*, 2012 WL 1432302, at *1 (E.D.N.Y. Apr. 20, 2012) ("The assistance of an experienced mediator . . . reinforces that the Settlement Agreement is non-collusive."); *Westerfield v. Washington Mut. Bank*, 2009 WL 6490084, at *1 (E.D.N.Y. June 26, 2009) (same).

Rule 23(e) establishes a "two-step process" for approval of settlements. *Dover v. British Airways, PLC (UK)*, 323 F. Supp. 3d 338, 338 (E.D.N.Y. 2018) (citing FRCP 23(e)). First, the Court must determine whether the proposed class action settlement deserves preliminary approval; then, following preliminary approval and notice to the class, the Court must determine whether final approval is appropriate. *Id.* (citing *Parker v. City of New York*, 2017 WL 6375736, at *4 (E.D.N.Y. Dec. 11, 2017)). Preliminary approval requires only an "initial evaluation" of the fairness

11

of the proposed settlement on the basis of written submissions and informal presentation by the settling parties. *Sierra & Valentin*, 2015 WL 10934779, at *2 (citing *Newberg on Class Actions* § 11.25 (4th Ed. 2002)). To grant preliminary approval, the court need only find "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *Id.* (citing *In re Traffic Exec. Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980)). "If, after a preliminary evaluation of the proposed settlement, the Court finds that it 'appears to fall within the range of possible approval,' the court should order that the class members receive notice of the settlement." *Id.* (quoting *Newberg on Class Actions* § 11.25).

In determining whether a settlement is fair, reasonable, and adequate, courts in this Circuit typically look to the nine "*Grinnell* factors," which are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement;[1] (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through trial; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell Corp.*, 495 F.2d at 463.

In assessing FLSA settlements for approval, courts have considered factors similar to those employed in the Rule 23 context, namely whether the settlement resulted from contested litigation and whether the result represents a fair and adequate resolution of those contested issues. *See Gay v. Tri-Wire Eng'g Solutions, Inc.*, 2014 WL 28640, at *10 (E.D.N.Y. Jan. 2, 2014) (quoting *Khait v. Whirlpool Corp.*, 2010 WL 2025106, at *7 (E.D.N.Y. Jan. 20, 2010)) ("The standard for

---

[1] This factor is not presently at issue, and will be fully addressed in the motion for final approval following the claim submission period, at which point the reaction of the class to the settlement will be determined.

approving a FLSA settlement is lower than for a Rule 23 settlement because the former does not implicate the same due process concerns . . . [c]ourts approve FLSA settlements when they are reached as a 'result of contested litigation to resolve *bona fide* disputes' and when the 'proposed settlement reflects a reasonable compromise over contested issues' . . . "); *Massiah v. Metroplus Health Plan, Inc.*, 2012 WL 5874655, at *5 (E.D.N.Y. Nov. 20, 2012) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement."); *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 2012 WL 5305694, at *6 (E.D.N.Y. Oct. 4, 2012) ("Because the Settlement Agreement resolves a clear and actual dispute waged in contested litigation and resolved through arm's-length settlement negotiations, it should be approved.").

In evaluating a proposed settlement of FLSA claims, courts in this Circuit have routinely applied the five-factor test articulated in *Wolinsky*, 900 F. Supp. 2d at 335. The *Wolinsky* factors examine: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *See id.* Because the *Grinnell* factors subsume the *Wolinsky* factors, this motion only discusses *Grinnell*.

For the reasons detailed below, Plaintiffs maintain, and for settlement purposes only, Defendant does not contest, that the *Grinnell* factors applicable at this preliminary approval stage, which include the factors used to assess FLSA settlements, weigh in favor of approval of the proposed settlement.

2.    ***The proposed settlement is fair, reasonable, and adequate considering the complexity, expense, and likely duration of the litigation, the stage of the proceedings, and discovery completed.***

    a.    <u>*Complexity, expense, and likely duration of the litigation.*</u>

While Defendant disputes the legal and factual issues in this case, the expense and burden associated with fully developing the Parties' claims and defenses, warrants an early settlement in this matter. Indeed, "[m]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd*, 236 F.3d 78 (2d Cir. 2001). Settling this dispute will enable the Parties to focus their resources and energies on other pursuits, rather than on prolonged, expensive, and risk-laden litigation. *See Stieberger v. Sullivan*, 792 F. Supp. 1376, 1377 (S.D.N.Y. 1992), *rep. & rec. modified at* 801 F.Supp. 1079 (S.D.N.Y. 1992) (approving settlement, noting that the "compromises represented therein constitute a reasonable balance, especially bearing in mind the length of time that would elapse, absent a settlement, before any concrete benefits could be delivered to any class member").

Here, the Parties recognized at an early stage in this action that the need to expend substantial time and expense litigating would potentially be disproportionate to the potential recovery and/or litigation burdens and expenses. Indeed, the disputed issue between the Parties is whether Jobco is a joint employer of the Class Members. While there is no question that the subcontractor CCS, and its owner, Jaime Delahunt, are liable for failure to pay overtime to the Class Members for their overtime hours worked on the Freeport Project, there is great uncertainty as to the legal question regarding Jobco's liability. Accordingly, barring a settlement, the Parties expected to take dozens of depositions and engage in robust motion practice concerning, *e.g.*: the suitability of collective action treatment; the appropriateness of class action treatment (likely

on both a motion for class certification, and if need be, a motion for decertification and/or an interlocutory appeal); and summary judgment motion practice on the economic realities of the employment situation. Even if Plaintiffs prevailed at trial and on appeal it could take years for Class Members to recover a monetary judgment. The Parties' settlement, on the other hand, makes monetary relief available promptly and efficiently. Thus, the first *Grinnell* factor weighs in favor of preliminary approval.

> b.    *Stage of proceedings and amount of discovery completed.*

By reaching a mutually agreeable resolution before engaging in formal discovery, dispositive motions, or trial, Plaintiffs and Defendant seek to avoid any additional expense and delay, and for Plaintiffs, to instead ensure recovery for the Class. *Reyes v. Buddha-Bar NYC*, 2009 WL 5841177, at *3 (S.D.N.Y. May 28, 2009) (approving FLSA settlement and noting that "the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation"). In evaluating the settlement's fairness at this stage, the proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004). "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian,* 80 F. Supp. 2d at 176 (internal quotation marks omitted). Here, the extensive information produced, and informal discovery exchanged were part of "an aggressive effort" to learn the relevant facts and circumstances in an efficient and cost-effective manner and exceeds the required standard.

Here, the Parties avoided the time-consuming and costly realities of discovery by engaging in extensive mediation-focused discovery, which included the exchange of class-wide

documents and the analysis of class-wide damages for all Class Members and each week worked in the Relevant Time Period. Indeed, here, the Parties benefit from having substantially complete time records for all weeks in question and are thus able to determine with specificity the damages in question. The only issue that the parties disputed with respect to the hours worked was the allegation that Plaintiffs were not permitted uninterrupted breaks, which Defendant argued Plaintiffs were permitted thirty minutes each day. This issue of fact would most likely not be resolved by formal discovery. Therefore, while this matter is pre-formal discovery, counsel is suitably able to recommend settlement at this juncture. *See* Maguire Decl., ¶¶ 23-28.

3. ***The proposed settlement is fair, reasonable, and adequate given the risks of establishing liability and damages, and maintaining the class through trial.***

To continue this matter through the end of a trial would expose both sides to tremendous risk, including the risk that: Defendant might (or might not) secure summary judgment on some or all of Plaintiffs' claims; the risk that Plaintiffs might (or might not) obtain conditional certification of a collective action or certification of a class action (and the risk that any such class and/or conditionally certified collective action might or might not be decertified before trial); and the risk that legal fees and expenses might unreasonably outweigh the potential damages. The settlement here provides Plaintiffs with a fair and reasonable recovery in relation to their damages and the risks should they not settle at this amount. Even the possibility that the class "might have received more if the case had been fully litigated is no reason not to approve the settlement." *Granada Invest., Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992) (citing *Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989)). The proposed settlement is substantial and "provides for relief now, not some wholly speculative payment of a hypothetically larger amount years down the road." *Strougo v. Bassini*, 258 F. Supp. 2d 254, 260 (S.D.N.Y. 2003); *see also Reyes*, 2009 WL

5841177, at *3. Under these circumstances, it is proper for the Plaintiffs "to take the bird in the hand instead of the prospective flock in the bush." *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974).

Although Plaintiffs' counsel believes Plaintiffs' case is strong, it recognizes considerable risk as to a finding that Jobco is liable as a joint employer considering Jobco hired CCS as the subcontractor to deal with the day-to-day supervision of the Freeport Project and pay Plaintiffs their wages. In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian*, 80 F. Supp. 2d at 177 (quotation marks omitted). Plaintiffs' counsel is experienced and realistic, and understands that the resolution of these issues, and the outcome of trial (if any) and any appeal, are inherently uncertain. If Plaintiffs do not prevail against Jobco on the joint liability question, they may be left with little chance of any recovery against CCS, which is currently in default and believed to be a defunct entity with a shallow-pocketed owner. Moreover, Plaintiffs' claims are entirely past the two-year FLSA statute of limitations and therefore recovery is especially crucial at this stage, as Plaintiffs would need to demonstrate willfulness in order to extend the FLSA's statute of limitations to three years. The proposed settlement alleviates all of this risk and uncertainty and thus, this factor weighs heavily in favor of preliminary approval.

### 4. *Maintaining the FLSA collective and Rule 23 Class through trial would not be guaranteed.*

In the event that this case is not settled, both Parties would still have to conduct discovery following conditional certification under the FLSA, and discovery geared towards a Rule 23 class certification motion. Defendant would likely contest Plaintiffs' motion for conditional certification under the FLSA and any ensuing Rule 23 motion. Even if Plaintiffs prevailed on both motions, after months of discovery, Defendant would likely move for decertification of any Rule 23 class,

necessitating additional rounds of extensive briefing. Defendant could also seek permission to file an interlocutory appeal under Fed. R. Civ. P. 23(f) if Plaintiffs were to prevail. Risk, expense, and delay permeate such a process and settlement eliminates all of it. This fourth factor also favors preliminary approval.

### 5. The Maximum Settlement Amount is substantial, even in light of the best possible recovery and attendant risks of litigation, and the "reasonableness of the proposed settlement" factors support approval of the proposed settlement.

"The determination of a 'reasonable' settlement is not susceptible to a mathematical equation yielding a particularized sum." *Strougo*, 258 F. Supp. 2d at 260. Rather, "there is a range of reasonableness with respect to a settlement . . ." *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). Thus, "[i]n evaluating the proposed settlement, the court is not to compare its terms with a hypothetical or speculative measure of a recovery that might be achieved by prosecution of the litigation to a successful conclusion." *Republic Nat'l Life Ins. Co. v. Beasley*, 73 F.R.D. 658, 668 (S.D.N.Y. 1970). Instead, "[d]ollar amounts are judged . . . in light of the strengths and weaknesses of plaintiffs' case." *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989); *see also Grinnell*, 495 F.2d at 468 (citing *Saylor v. Lindsley*, 456 F.2d 896, 904 (2d Cir. 1972)) ("The evaluation of a proposed settlement requires an amalgam of delicate balancing, gross approximations and rough justice.").

Here, for reasons described above, this settlement is reasonable. The parties produced, reviewed, and analyzed the timesheets for the entire putative class for the Relevant Time Period. Therefore, in assessing damages, the best possible outcome for each Class Member is known with certainty. Based on Plaintiffs' counsel's line-by-line analysis of the records, and the undisputed, uniform hourly and overtime rates of the Class Members, Plaintiffs' counsel contends that these records revealed a maximum potential unpaid overtime recovery of up to $133,004.40 in actual

18

overtime damages. Therefore, when factoring in liquidated damages, Plaintiffs calculated their best possible day for their alleged overtime violations to be $266,008.40. Plaintiffs additionally calculated their NYLL § 195(3) wage statement damages to be $260,000.00, with total damages, including interest, to be $559,312.74.

Defendant provided their analysis of damages based on the timesheets before the mediation as well, which calculated the Class Members' actual overtime damages to be $38,849.00. Defendant contended that while the records only show the start and end times for each workday, they do not factor in the lunch breaks that the Class Members received each day, as a meal truck visited the Freeport Project each day and the workers stopped working upon its arrival for thirty minutes each day. Plaintiffs do not dispute the meal truck arrived at the jobsite each day, but dispute that the Class Members enjoyed an uninterrupted meal break each day. Defendant also contended that based on Jobco's contract with subcontractor CCS to supervise and pay Plaintiffs, not only is Jobco not liable for Plaintiffs' damages, but Jobco is additionally able to demonstrate that it acted in good faith and therefore liquidated damages are not appropriate. The Parties also disputed the merits of Plaintiffs' wage statement claims under NYLL § 195(3) and Jobco's liability under the statute. Plaintiffs argued that even though Jobco was not responsible for paying or providing wage statements to Plaintiffs, Jobco would still be liable *if* the Court determined that Jobco was a joint employer under the law. Jobco countered that it was not liable under NYLL § 195(3) as Jobco inarguably had nothing to do with distribution of wages or wage statements, and that it was a claim derivative of the overtime claims and therefore contingent upon Plaintiffs' success on the joint liability question. Defendant also pointed out that some Class Members worked as little as one day and many only worked one week, thus Plaintiffs' damage calculations for the wage statements was inaccurate as not every Plaintiff reached the $5,000.00 cap under NYLL § 198(1-d).

Plaintiffs recognize that the possibility of Defendant succeeding on the joint employer issue posed serious risk. *See* Maguire Decl., ¶ 24. Thus, a realistic range of recovery spanned from $0 to an estimated $559,312.74, as the outer-most bounds of recovery in this action. Factoring in Defendant's contention that: (1) uninterrupted meal breaks were provided; and (2) many Class Members did not reach the 198(1-d) cap, Plaintiffs' best day is likely much less than their initial damage calculation of $559,312.74. *See* Maguire Decl., ¶ 24. As a result of highly adversarial negotiations by experienced counsel, the Parties compromised at $208,000.00, of which Class Members will receive an estimated $116,666.70 of the potential $133,004.40 actual unpaid overtime. *See* Maguire Decl., ¶ 24. According to Plaintiffs' best day calculations, this represents more than 88.7% of their best-case-scenario of actual unpaid overtime damages potentially recoverable in this matter (not counting liquidated damages and interest). *See* Maguire Decl., ¶ 24. According to Defendant's calculations of $38,849.00, the $116,666.70 recovery represents more than 300% of Plaintiffs' best-case scenario of actual unpaid overtime damages potentially recoverable in this matter. *See* Maguire Decl., ¶ 24. Considering that Defendant could prevail on the joint liability argument and that CCS failed to appear in this action, this represents an especially favorable outcome for Class Members at this stage of the litigation. *See* Maguire Decl., ¶ 24.

Thus, in light of Plaintiffs' claims and Defendant's defenses, the Parties' competing damage calculations, and the risks/burdens/uncertainties of litigation, the *Grinnell* factors overwhelmingly support that this proposed settlement is fair, reasonable, and adequate. Accordingly, the Court should preliminarily approve it for the Class Members' consideration.

### B. <u>Certification Under Rule 23 is Warranted.</u>

Further, for purposes of settlement only, the Parties agree that this class meets all of the requirements for Rule 23 class certification. *See* Newburg, § 11.27 ("When the court has not yet

entered a formal order determining that the action may be maintained as a class action, the parties

may stipulate that it be maintained as a class action for the purpose of settlement only"). Both the

Supreme Court, the Second Circuit, and other circuit courts have recognized that the benefits of a

proposed settlement can only be realized through the certification of a settlement class. *Amchem*

*Prods., Inc. v. Windsor*, 521 U.S. 591, 591 (1997); *Joel A. v. Giuliani*, 218 F.3d 132, 143-44 (2d

Cir. 2000) (noting benefits to class members who will no longer need to wait for system-wide

reform of New York City's administrative system at issue because of the agreement to settle);

*accord In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 433-34 (3d

Cir. 2016) (noting how class settlement will provide recovery for, e.g., deceased class members

"who would otherwise be unable to get the benefits" sought through settlement). Here, for

settlement purposes only, the Parties submit that the elements of Rule 23 are met with respect to

the proposed settlement, which accordingly warrants settlement class certification.[2]

For a lawsuit to be maintained as a class action under Fed. R. Civ. P. 23, a putative class

representative must establish each of the four threshold requirements of subsection (a) of the Rule,

which provides that:

> One or more members of a class may sue or be sued as representative
> parties on behalf of all only if: (1) the class is so numerous that
> joinder of all members is impracticable; (2) there are questions of
> law or fact common to the class; (3) the claims or defenses of the
> representative parties are typical of the claims or defenses of the
> class; and (4) the representative parties will fairly and adequately
> protect the interests of the class.

---

[2] Because 29 U.S.C. § 216(b)'s "similarly situated" requirement is "considerably less stringent" than Rule 23's class certification requirements, if a class meets the requirements of Rule 23, then, as a general matter, it also meets the requirements for certification under the FLSA. *See, e.g., Taylor v. Delta-Sonic Car Wash Sys., Inc.*, 2017 WL 436045, at *4 (W.D.N.Y. Jan. 31, 2017) (approving Rule 23 and FLSA collectives for "substantially the same reasons"); *Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 65 (E.D.N.Y. 2016) (contrasting, in general, requirements for FLSA certification and Rule 23 certification).

21

As discussed below, all such factors are satisfied for settlement purposes.

### 1. Numerosity

The numerosity requirement is met when the class is "so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). In this Circuit, "no magic minimum number establishes numerosity." *Deen v. New Sch. Univ.*, 2008 WL 331366, at *2 (S.D.N.Y. Feb. 4, 2008) (quotation omitted). In determining numerosity, "the relevant considerations a court may consider include: (1) judicial economy arising from the avoidance of multiplicity of actions; (2) geographic dispersion of class members; (3) financial resources of class members; (4) the ability of claimants to institute individual suits; and (5) requests for prospective injunctive relief which would involve future class members." *Gortat v. Capala Bros., Inc.*, 2012 WL 1116495, at *3 (E.D.N.Y. Apr. 3, 2012) (citing *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)). Numerosity is presumed where a class has forty or more members. *Sierra & Alexander*, 2015 WL 10934779, at *3 (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)). Here, numerosity is satisfied as the class is comprised of approximately 63 individuals.

### 2. Commonality

Plaintiffs also maintain, and Defendant does not contest for the purposes of this motion only, that the proposed class satisfies the commonality requirement under Rule 23(a)(2), the purpose of which is to test "whether the named plaintiff's claim and the class claims are so intertwined that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). This case involves common issues of fact and law involving alleged unpaid overtime wages arising from alleged joint employment by Defendant's construction company during a defined period of time. For settlement purposes in this case, this is sufficient to establish commonality under Rule 23. *See Sierra &*

22

*Alexander*, 2015 WL 10934779, at *3 (commonality requirement satisfied where "Plaintiffs and Class Members share common issues of fact and law, including whether Defendants violated the wage and hour laws by failing to pay overtime rates for all hours worked over forty (40) in a workweek").

### 3. Typicality

Plaintiffs also maintain, and Defendant does not contest for the purposes of this motion only, that typicality under Rule 23(a)(3) is satisfied for purposes of the proposed settlement. As a general matter, typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (citation omitted). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux*, 987 F.2d at 936-37. Here, the Plaintiffs' "claims for overtime pay [ ] arise from the same factual and legal circumstances that form the bases of the Class Members claims." *Sierra & Alexander*, 2015 WL 10934779, at *3 (citation omitted).

### 4. Adequacy of class representative

Rule 23(a)(4) requires that "the representative part[y] will fairly and adequately protect the interests of the class." Adequacy requires that "the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). Here, as detailed herein, Named Plaintiff has vigorously pursued the interests of the Class by assisting with the preparation of the lawsuit before filing, assisted with the pre-litigation

investigation and complaint-drafting, explanation of the records, response to Jobco's defenses, and participation in mediation preparation, and thus for purposes of settlement, the interests of Named Plaintiff and the Class are aligned. Accordingly, for purposes of settlement, Plaintiffs maintain, and Defendant does not contest, that Named Plaintiff is an adequate class representative. *See Sierra & Alexander*, 2015 WL 10934779, at *3 (finding Rule 23(a)(4) satisfied "because Plaintiffs' interests are not antagonistic or at odds with Class Members") (citation omitted).

### 5. *Rule 23(a)'s "implied" ascertainability requirement*

Additionally, although not expressly stated in Rule 23(a), "courts have added an implied requirement of ascertainability with respect to the class definition." *Vivaldo*, 2015 WL 4922961, at *5 (citing *Hamelin v. Faxton–St. Luke's Healthcare*, 274 F.R.D. 385, 393 (N.D.N.Y. 2011)). Courts require that "a class be identifiable before it may be properly certified." *Hamelin*, 274 F.R.D. at 396 (citing *Dunnigan v. Metro. Life. Ins. Co.*, 214 F.R.D. 125, 135 (S.D.N.Y. 2003)). "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Stinson v. City of New York*, 282 F.R.D. 360, 367 (S.D.N.Y.2012) (citation omitted). Here, the class is easily identifiable, as the Parties have produced and reviewed a list with the 63 individuals who worked at the Freeport Project during the Relevant Time Period. Thus, this requirement is met.

### 6. *Certification under Rule 23(b)(3) is satisfied*

The two requirements of Rule 23(b)(3), namely superiority and predominance, are also met here for settlement purposes. Rule 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by

24

representation." *See Amchem*, 521 U.S. at 623. Satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality." *Rossini v. Ogilvy & Mather, Inc*., 798 F.2d 590, 598 (2d Cir. 1986).

Here, Plaintiffs maintain, and Defendant does not contest for the purposes of this motion only, that common questions predominate because "the issues in the class action . . . are subject to generalized proof, and thus applicable to the class as a whole." *In re Visa Check/MasterMoney Antitrust Litig*., 280 F.3d 124, 138 (2d Cir. 2001). Indeed, all Class Members are unified by the allegation that they worked at the Freeport Project during the Relevant Time Period, and that they allegedly were not paid for all hours worked over forty at the applicable overtime rate and were not provided with accurate wage statements. As a result, predominance is satisfied.

Further, class certification is a superior method to resolve this action compared to individual actions. *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). No individual Class Member has brought or reasonably will bring an individual action given the small potential individual recovery for each person, as this class action involves only three weeks of substantial overtime pay violations, and there is a strong desirability to efficiently concentrate the claims in this single forum. *See* Fed. R. Civ. P. 23(b)(3). Accordingly, under these circumstances, the requirements of Rule 23(b)(3) are met because a class action is superior to other available methods for adjudication.

### 7.    *Plaintiffs' counsel should be appointed as Class Counsel*

Stevenson Marino should be named as class counsel. Rule 23(g) sets forth the factors that the court should consider in making this determination: (1) the work counsel has done in identifying or investigating potential class claims; (2) counsel's experience in handling class actions of the type asserted; (3) counsel's knowledge of the applicable law; and (4) the resources

counsel will commit to represent the class. As detailed herein, Plaintiffs' counsel: investigated this matter prior to commencing this action; prepared and filed the Complaint; met and spoke with Plaintiffs regularly regarding their claims and allegations; analyzed the timesheets for the Plaintiffs and Class Members; created detailed damages calculations for all Class Members; participated in mediation; negotiated a settlement with Defendant's counsel; and prepared the instant motion and supporting documents.

Furthermore, Plaintiffs' counsel is experienced in class action litigation, and thus adequate to represent the class here. *See* Maguire Decl., ¶ 26 (citing several recent cases where Stevenson Marino and Jeffrey R. Maguire have been appointed as class counsel in Rule 23 class action involving wage and hour claims). Accordingly, Plaintiffs' counsel's professional experience and time spent on this matter qualifies them to represent the class. *See Yuzary*, 2013 WL 5492998, at *3 (deeming lawyers adequate to litigate case because they have "substantial experience prosecuting and settling employment class actions, including wage and hour class actions[,] and are well-versed in wage and hour law and class action law.").

### C.    **The Proposed Notice is Appropriate**

The content of the Proposed Notice and Claim Form, attached as **Exhibits B** and **C** to the Maguire Declaration, fully comply with all requirements under Rule 23. Pursuant to Rule 23(c)(2)(B), the notice must provide the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must be concise and in plain language, and set forth the claims, terms of settlement, method to object or be excluded, and the binding effect of the settlement. The proposed Notice here meets these requirements by providing specific and clear information to the Class Members, in plain language that is easy to understand, and sets forth the terms of the deal therein. The proposed Notice also

clearly informs Class Members: how their individual settlement shares will be calculated, explaining the above-described point-system; how to submit their Claim Forms, object to, or opt-out of the settlement; and adequately informs Class Members of the effects of the settlement, whether they choose to do nothing, participate by submitting their Claim Forms, opt-out, or object.

The Notice will be distributed consistent with the requirements of fairness and due process by sending the same to the Class Members via first class mail. The Claims Administrator will also translate the notice into Spanish and send copies to all Class Members in both English and Spanish. The Claims Administrator will also perform a skip trace to identify any updated or alternative addresses for notices returned as undeliverable, furthering the reasonableness of disseminating notice here. Class Members will have a period of sixty (60) days to decide whether to participate in the settlement by doing nothing, object, or opt-out. As a result, because this Notice and Claim Form, as well as the proposed methods of distribution, fully comply with the requirements under Rule 23, the Court should approve them accordingly.

Finally, the Parties have selected Arden to serve as the Claims Administrator in this action. Arden is an experienced class action settlement administrator that has handled hundreds of class action settlements around the United States. *See* Maguire Decl., ¶ 13.

## IV. <u>CONCLUSION</u>

For the reasons stated above, Plaintiffs, on consent of Defendant, respectfully request that the Court: (1) grant preliminary approval of the settlement described herein and in the Settlement Agreement; (2) approve the proposed Notice and Claim Form attached to the Maguire Declaration as **Exhibits B** and **C**, and approve the claims procedure detailed herein and in the Settlement Agreement; (3) certify the two overlapping settlement classes under Fed. R. Civ. P. 23(a) and (b)(3) and 29 U.S.C. § 216(b) for purposes of effectuating the settlement; (4) appoint Named

Plaintiff as the Class Representative; (5) appoint Stevenson Marino as class counsel; (6) appoint Arden, as the Claims Administrator; (7) approve the Parties' proposed schedule for obtaining final settlement approval and schedule a fairness hearing; and (8) enter the Proposed Order attached to the Maguire Declaration as **Exhibit D**.

Dated: New York, New York
      May 20, 2021

                                       Respectfully submitted,

                                       Jeffrey R. Maguire (JM4821)
                                       STEVENSON MARINO LLP
                                       *Attorneys for Plaintiffs*
                                       75 Maiden Lane, Suite 402
                                       New York, New York 10038
                                       Tel. (212) 939-7229

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JULIO PINEDA, on behalf of himself and all others
similarly-situated,

                Plaintiff,

       -against-

JOBCO INCORPORATED, and COMMERCIAL
CONTRACTING SERVICES INC., and JAIME
DELAHUNT, individually,

             Defendants.

**Docket No.: 20-cv-5321
(JMA)(SIL)**

## <u>DECLARATION OF JEFFREY R. MAGUIRE, ESQ.</u>

I, JEFFREY R. MAGUIRE, ESQ., declare pursuant to 28 U.S.C. § 1746,

1.      I am senior counsel at the law firm Stevenson Marino LLP ("the Firm"), attorneys for the Named Plaintiff Julio Pineda ("Named Plaintiff"), as well as the individuals that opted into this action by filing opt-in forms ("Opt-in Plaintiffs," and collective with Named Plaintiff as "Plaintiffs"), in the above-captioned matter against Defendants Jobco Incorporated ("Jobco"), Commercial Contracting Services Inc. ("CCS"), and Jaime Delahunt ("Defendants," and Jobco together with Plaintiffs as "the Parties"). I submit this Declaration in support of Plaintiffs' Motion for Preliminary Approval of the Class Action Settlement, filed on consent with Defendant Jobco.

## I.    <u>BACKGROUND</u>

2.      On November 3, 2020, Named Plaintiff filed a Complaint in this Court asserting FLSA and NYLL claims for unpaid overtime and other statutory damages, on behalf of himself and all others similarly situated pursuant to 29 U.S.C. § 216(b) and Federal Rule of Civil Procedure 23 ("Class Members").

3.      On January 28, 2021, Named Plaintiff filed an Amended Complaint, adding the subcontractor, CCS. On February 11, 2021, Jobco filed an Answer to the Amended Complaint. Since the filing of the original Complaint on November 3, 2020, sixteen Plaintiffs filed consent to join forms opting into the action.

4.      Named Plaintiff claims that he worked for Defendant, a construction management company, which Named Plaintiff alleges jointly employed him as a non-managerial laborer from in or about July 13, 2018 through September 3, 2018, during which period he performed manual labor on the Moxey Rigby public housing complex in Freeport, New York ("Freeport Project"). Named Plaintiff alleges that for the duration of this employment period, Defendant failed to compensate him and other non-managerial laborers for the hours they worked over forty each workweek at the applicable overtime rate of pay. Named Plaintiff additionally claims that Defendant failed to provide him and the putative class/collective members with accurate wage statements on each payday, in further violation of the NYLL.

5.      In Jobco's Answer to the Amended Complaint filed on February 11, 2021, Jobco denied all of Named Plaintiff's allegations in their entirety and asserted as an affirmative defense that Jobco is not a joint employer under the law. Jobco maintains that it would ultimately prevail on the joint employer liability issue through litigation in this matter.

6.      On March 24, 2021, the Parties participated in an all-day mediation before Bonnie Siber Weinstock, Esq., an experienced labor and employment mediator and arbitrator. During the mediation, the Parties analyzed the timesheet records produced by Plaintiffs that contained the hours worked during the time period in question, enabling the Parties to calculate with specificity the potential damages in question for all Class Members. Through the assistance of the mediator, the Parties were able to reach an agreement in principle to resolve this action on a class-wide basis.

7.      Specifically, the Parties agreed to settle the alleged claims of the putative class, for the total amount of $208,000.00 ("Settlement Amount"), inclusive of attorneys' fees, expenses, claims administrator fees, and service awards. The Parties subsequently worked together to finalize the settlement agreement, motion, and the accompanying documents.

8.      Plaintiffs and their counsel, are satisfied that the portion of the settlement sum that will be distributed to Class Members after attorneys' fees, costs, Claims Administrator fees, and service awards is reasonable.

9.      Throughout the litigation, Named Plaintiff and Opt-in Plaintiff, Jose Diaz, were instrumental in achieving the resolution of this matter in principle. Indeed, Named Plaintiff not only assumed the full risk commensurate with putting his name on the action, but he remained intimately involved in this matter throughout and assisted with the pre-litigation investigation and complaint-drafting, explanation of the records, response to Jobco's defenses, and participation in mediation preparation.

10.      Opt-in Plaintiff Diaz additionally remained active in document analysis and consultation with respect to conversations and negotiation with Jobco in resolving the case. Opt-in Plaintiff Diaz also attended the Zoom mediation session and participated by answering questions posed by the mediator. In sum, both Named Plaintiff and Opt-in Plaintiff Diaz provided crucial information and analysis on behalf of the Class Members and only through their participation was the matter able to be resolved on the Class Members' behalf.

II.      **SETTLEMENT TERMS**

11.      Following their agreement in principle, the Parties reduced the agreement to a comprehensive Settlement Agreement, which is attached hereto as **Exhibit A.**

12.     The Parties also drafted a proposed Notice and Claim Form to be sent to Class Members, advising them of the settlement's material terms and their rights thereunder, and explaining what steps they must take to claim their share of the Settlement Sum. True and accurate copies of the proposed Notice and Claim Form to be sent to Class Members are attached hereto as **Exhibits B** and **C**, respectively.

13.     As stated in the Agreement, the Parties have selected Arden Claims Service, LLC ("Arden" or "Claims Administrator") as the claims administrator in this action. More information on this company can be found at the website http://ardenclaims.com.

14.     The Notice and Claim Form are clear and balanced and easy to understand, and include all materially necessary information, including: (1) information regarding the nature of the lawsuit; (2) why there is a settlement and what a class and collective action is; (3) a summary of the substance of the settlement, including the formula to calculate the approximate share of the settlement that each class member can expect to receive; (4) the procedure and time period for submitting a Claim Form, objecting to the settlement, and excluding oneself from the settlement; and (5) information regarding the Fairness Hearing. The Notice also discusses the release, the requested attorneys' fees and service awards, the Claims Administrator, and the method for redistributing any unclaimed funds.

## III.     PROPOSED SETTLEMENT PROCEDURE

15.     Within ten days of the Court's entry of an Order granting the instant motion (the "Preliminary Approval Order"), Defendant will provide a finalized Class Member list to Plaintiffs' Counsel and to the Claims Administrator in electronic form. The Claims Administrator will have fourteen (14) days after the receipt of the Class List to mail, via First Class United States Mail, in both English and Spanish, the Court-approved Notice and Claim Forms to all Class Members.

Translation of the Notice is necessary as many Class Members with whom Plaintiffs worked spoke Spanish as their first language, as represented by Named Plaintiff in his declaration submitted in support of his conditional certification motion. Class Members will then have sixty (60) days from the date that the Notices are initially mailed to return their Claim Forms, object to, or opt-out of the settlement. To be valid, a Claim Form or an Opt-out Statement must be postmarked or received by the Claims Administrator within sixty (60) days after the initial mailing of Notice to the Class, subject to any good cause reason for delay as outlined in the Settlement Agreement. The Notice also contains instructions and a deadline for Class Members who wish to object to the Settlement Agreement and/or appear at the Fairness Hearing, either with or without counsel.

16.    The Parties agree that the proposed overlapping classes consist of approximately 63 individuals that Plaintiffs have alleged were employed by Defendant as manual laborers that worked overtime hours at any time during the period from July 13, 2018 through September 28, 2018 at the Moxey Rigby Project located in Freeport, New York according to the time records maintained at the jobsite.

17.    As described above, the Settlement Agreement provides for the creation of a fund of $208,000.00 ("Maximum Settlement Amount"). Defendant will fund the Maximum Settlement Amount via three separate deposits, with $70,000.00 to be deposited withing twenty (20) days after the Preliminary Approval Order, $70,000.00 to be deposited within eighty (80) days after the Notice has been sent to Class Members, and the remaining balance of $68,000.00, as necessary, to be deposited within fourteen (14) days after the Parties receive the executed declaration from the Claims Administrator. Attorneys' fees are to be paid from the Maximum Settlement Amount in the amount, subject to court approval, of one-third of the Maximum Settlement Amount, plus the Firm's out-of-pocket expenses spent prosecuting and settling this case.

18.     Additionally, subject to the Court's approval, a service award of $5,000.00 each will be paid to the Named Plaintiff and to Opt-In Plaintiff Diaz, for a combined total of $10,000.00, based on services that they each provided to the Class Members in assisting the Firm in prosecuting this action, to be explained in detail in the Parties' final approval motion. These service awards will be deducted from the Maximum Settlement Amount.

19.     As payment for all of its fees, costs, and expenses for its handling of all duties related to administration of the Settlement, including the distribution of checks and tax reporting, the Claims Administrator will be paid $7,000.00, which will also be deducted from the Maximum Settlement Amount.

20.     After all claims are paid to all putative class members who submit Claim Forms, any amounts representing uncashed settlement checks, uncashed service awards or any other amount remaining in the Maximum Settlement Amount after one hundred (100) days from the mailing of settlement checks shall be returned to Defendant within thirty (30) days thereafter.

21.     To determine each Class Member's share of the Settlement Amount, each Class Member's share will be calculated based upon points earned according to the timesheets, which show the amount of overtime hours worked by the Class Members during the Relevant Time Period. The Maximum Settlement Amount will be reduced by court-approved attorneys' fees, service awards, and other court-approved fees and expenses, contemplated by the Parties in the Settlement Agreement to calculate the Net Settlement Amount (hereinafter "Net Settlement Amount"). Each Class Member's earned points will be divided by the aggregate earned points from all Class Members to calculate the Class Member's allocated percentage of the Net Settlement Amount. The Class Member's percentage of the Net Settlement Amount will then be

multiplied by the Net Settlement Amount to determine each Class Member's "Individual Gross Amount." This can be expressed through the following formula:

$$NSF \ X \ \frac{Individual \ Class \ Member's \ Points}{Aggregate \ Points \ of \ All \ Class \ Members} = Individual \ Gross \ Amount$$

22.     Each Class Member that does not opt-out of the Class and that timely submits a Claim Form will be mailed his/her Individual Net Amount, which is the Individual Gross Amount after deductions for taxes and other lawful withholdings to the extent applicable. The monetary terms of the settlement, including the tax treatment of each payment, are explained in the Settlement Agreement. Class Members who do not opt-out will release any NYLL claims against Jobco. If a Class Member submits a Claim Form, thereby opting into the settlement, that Class Member will become a Collective Member and release all FLSA claims against Jobco as well. Each Class and Collective Member's Claim Form will contain the following statement:

> My signature below, on my behalf, and on behalf of my respective current, former, and future heirs, spouses, executors, administrators, agents, and attorneys constitutes a full and complete release and discharge of Jobco Incorporated ("Jobco"), and my signature therefore fully, finally, and forever releases and discharges Jobco, its present and former parent companies, subsidiaries, related or affiliated companies, and their respective shareholders, members, partners, officers, directors, employees, members, managers, fiduciaries, trustees, employee benefit plan administrators, agents, attorneys, insurers, successors, and assigns, and all persons or entities acting by, through, under, or in concert with any of them, for acts taken in their capacities as employees or representatives of Jobco (collectively, the "Releasees"), with the exception of Commercial Contracting Services ("CCS") and any of its shareholders, members, partners, officers, directors, employees, members and managers, including Jaime Delahunt, from any all wage and hour claims that were or could have been asserted under the New York Labor Law ("State Law Claims") and its implementing regulations by the Plaintiffs and the Class Members. Released New York State Law Claims include, but are not limited to, all claims under New York law for overtime, regular, and minimum wages, including spread of hours, Wage Theft Prevention Act ("WTPA") penalties, tip credit withholdings, and alleged

violations, liquidated damages, and any other related wage and hour claims and/or damages resulting from the alleged failure to pay minimum wages, regular wages, spread of hours, and/or overtime wages, comply with the WTPA, interest on such claims, and attorneys' fees, expenses, and costs related to such claims. Moreover, by signing this form, in addition to the release of all State Law Claims described above, I also fully, finally, and forever release and discharge Releasees from all Fair Labor Standards Act claims, which is defined as all wage and hour claims that were or that could have been asserted against Releasees pursuant to the Fair Labor Standards Act and/or its implementing regulations by or on behalf of the Plaintiffs, Collective Members, Class Members, or myself.

By signing this Consent Form and Release, I hereby consent to become a party in this action and authorize Stevenson Marino LLP to file this Form with the Court..

## IV.    FAIRNESS OF SETTLEMENT

23.    We believe that the settlement offers a fair and reasonable resolution of the claims at issue. Further, we believe that the settlement incorporates and recognizes the substantial risks that each side faces, whether through class certification and decertification motions, summary judgment motions, at trial, and on appeal, had the litigation continued.

24.    Plaintiffs recognize that the possibility of Defendant succeeding on the joint employer issue posed serious risk. Thus, a realistic range of recovery spanned from $0 to an estimated $559,312.74, as the outer-most bounds of recovery in this action. Factoring in Defendant's contention that: (1) uninterrupted meal breaks were provided; and (2) many Class Members did not reach the 198(1-d) cap, Plaintiffs' best day is likely much less than their initial damage calculation of $559,312.74. As a result of highly adversarial negotiations by experienced counsel, the Parties compromised at $208,000.00, of which Class Members will receive an estimated $116,666.70 of the potential $133,004.40 actual unpaid overtime. According to Plaintiffs' best day calculations, this represents more than 88.7% of their best-case-scenario of actual unpaid

overtime damages potentially recoverable in this matter (not counting liquidated damages and interest). According to Defendant's calculations of $38,849.00, the $116,666.70 recovery represents more than 300% of Plaintiffs' best-case scenario of actual unpaid overtime damages potentially recoverable in this matter. Considering that Defendant could prevail on the joint liability argument and that CCS failed to appear in this action, this represents an especially favorable outcome for Class Members at this stage of the litigation.

25. As a result of the foregoing, we ask that the Court preliminarily approve the settlement and grant all other relief requested in Plaintiffs' Motion, including certifying, for settlement purposes only, the proposed Rule 23 class, and appointing Named Plaintiff and Plaintiffs' Counsel as class representatives.

26. Stevenson Marino LLP (the "Firm") has extensive experience in litigating wage and hour collective and class actions in federal and state court. *See Kramer v. Lumber Liquidators, Inc.* 34-2017-002222434, CA. Supreme Court (closed Jan. 17, 2019) ($4.75M Settlement, approving $650 hourly rate for J. Marino and $1,583,333.33 in attorneys' fees); *Flores v. Integrity Express Logistics, LLC*, A1901207, OH, Court of Common Pleas (Hamilton County) (approving $750,000 settlement with $250,000 in attorneys' fees; Ordered Nov. 19, 2019); *Petrou v. Coast Professional Inc.*, 519865/2018 (N.Y. Sup. Feb. 11, 2020) (approving $200,833.33 or 1/3 of total settlement amount in attorneys' fees to Stevenson Marino LLP); *Gardin v. Ohel Children's Home and Family Services* (N.Y. Sup. May 8, 2020) (approving $150,000 or 1/3 of the total settlement amount in attorneys' fees to Stevenson Marino LLP). *Thind v. Healthfirst, Inc. et al*, 1:14-cv-09539-SN (S.D.N.Y.) (closed 07/19/18); *Lewis et al. v. Sarar USA Inc. et al.*, 1:17-cv-02181-VSB (S.D.N.Y.) (closed 05/08/19); *Mason et al v. Lumber Liquidators, Inc.,* 1:17-cv-04780-MKB-RLM (E.D.N.Y.) (filed 08/15/17); *Yang et al v. UES Dental, P.L.L.C. et al*, 1:16-cv-08918-KBF

(S.D.N.Y.) (closed 07/26/17); *Flores Alonso et al v. 181 Duane Ristorante Inc. et al*, 1:17-cv-07381-PGG-HBP (S.D.N.Y.) (closed 11/27/18); *Carchi Buri et al v. 325 H & M Food Corp. et al*, 1:17-cv-08408-ER (S.D.N.Y.) (filed 10/31/17); *Oliveira et al v. Vali Industries, Inc. et al*, 1:17-cv-01528-JO (E.D.N.Y.) (closed 11/13/17); *McFadden v. Radegast Hall LLC et al*, 1:17-cv-05118-CLP (E.D.N.Y.) (closed 10/26/18); *Karlin v. MCS Mortgage Bankers, Inc. et al*, 2:17-cv-06011-ADS-SIL (E.D.N.Y.) (filed 10/14/17). In addition to the foregoing cases where Stevenson Marino LLP has litigated wage and hour class/collective actions, founding partner, Justin Marino, has litigated a significant number of wage and hour class/collective actions during the approximately first ten years of his career at Paul Hastings, LLP, and Littler Mendelson, P.C., in various federal courts. Those litigations where Justin Marino was counsel of record include, but are not limited to: *Guillen v. Marshalls of MA, Inc. et al*, 1:09-cv-09575-LAP-GWG (S.D.N.Y.) (closed 01/09/13); *Cusenza v. The TJX Companies, Inc. et al*, 1:11-cv-08725-LAP-GWG (S.D.N.Y.) (closed 01/09/13); *Arias v. Clear Channel Broadcasting, Inc.*, 1:14-cv-05088-SN (S.D.N.Y.) (closed 02/11/16); *Ikikhueme v. CulinArt, Inc. et al*, 1:13-cv-00293-JMF (S.D.N.Y.) (closed 08/09/13); *Ahmed v. T.J. Maxx Corp. et al*, 2:10-cv-03609-ADS-AYS (E.D.N.Y.) (closed 02/27/17); *Ceron v. T & T Scrap, LLC et al*, 1:16-cv-00063-ARR-JO (E.D.N.Y.) (closed 06/28/16); *Paez et al v. Whaleneck Enterprises et al*, 2:16-cv-02673-ADS-ARL (E.D.N.Y.) (closed 06/16/17); *Gardner v. Kmart Corporation, et al.*, 5:11-cv-01441 (TJM) (ATB) (N.D.N.Y.) (closed 4/22/15); *Essex et al. v. The Children's Place, Inc.*, 2:15-cv-5621 (JMV) (MF), (D. NJ) (closed 6/8/2018); *Ghanem, et al. v. TJX Companies, et al.*, 1:14-cv-12104 (ADB) (D. Mass) (closed 8/13/14). The lead counsel in the matter, Jeffrey Maguire, has recently been appointed class counsel in the following actions: *Angerosa v. Moving Right Along Service, Inc.*, 18-cv-4810-RML, Dkt. No. 37 (E.D.N.Y. Feb. 18, 2020); *Sealock v. Covance, Inc.*, 17-cv-5857-JMF, Dkt. 276

(S.D.N.Y. Oct. 8, 2019); *Crispi v. Mercy Drive, Inc.*, No.23089/2018E, Dkt. No. 36 (Sup. Ct. Bx. Cnty. Sept. 23, 2019); *Mosaid v. Sardi's Enters. Ltd.*, No. 160653/2019, Dkt. No. 31 (Sup. Ct. N.Y. Cnty. Sept. 23, 2019); *Vasquez v. Tibana Finishing, Inc.*, No.17-cv-01907-PK, Dkt. No. 48 (E.D.N.Y. Feb. 6, 2019); *Callaham v. MTC Limousine & Corp. Coach, Inc.*, No. 63099/2017, Doc. No. 21 (Sup. Ct., Westchester Cnty. June 28, 2018); *Jordan v. MV Transportation, Inc. et al.*, No. 513422/2016, Doc. No. 16 (Sup. Ct., Kings Cnty. Apr. 9, 2018); *Copper v. Cavalry Staffing, LLC, et al*, No. 14-3676-FB-RM, Dkt. No. 252 (E.D.N.Y. Sept. 8, 2017); *Davis et al. v. Uptown Communication & Electric, Inc. et al.*, No. 16-cv-3990-LB, Dkt. No. 101 (E.D.N.Y. June 26, 2017); *Russo v. Ruiz et al.*, 15-CV-9789(CS), Dkt. 55 (S.D.N.Y. Mar. 3, 2017); *Vivaldo v. United Talmudical Acad. of Kiryas Joel, Inc., et al*, 2015 WL 4922961, at *5 (S.D.N.Y. Aug. 18, 2015).

27.     A proposed order for the Court's consideration in attached hereto as **Exhibit D.**

28.     In my Firm's opinion, this Settlement is an excellent result for all involved. We recognize and appreciate the costs associated with class certification and decertification motions, summary judgment motions, trial, and/or appeals had the litigation continued. Further, based on our calculations and the factual investigation conducted, and the risk and duration of litigation, as discussed in the accompanying memorandum of law, the settlement is fair and reasonable to all putative class members as well.

Dated: New York, New York
        May 20, 2021

                                    Respectfully submitted,

                                    _____
                                    Jeffrey R. Maguire
                                    STEVENSON MARINO LLP
                                    *Attorneys for Plaintiffs*
                                    75 Maiden Lane, Suite 402
                                    New York, New York 10038
                                    Tel. (212) 939-7229

# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JULIO PINEDA, on behalf of himself and all others similarly-situated,<br><br>                Plaintiff,<br><br>     -against-<br><br>JOBCO INCORPORATED, and COMMERCIAL CONTRACTING SERVICES INC., and JAIME DELAHUNT, individually,<br><br>              Defendants. | **Docket No.: 20-cv-5321 (JMA)(SIL)** |

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is entered into by and between Plaintiff, Julio Pineda ("Named Plaintiff"), individually and on behalf of all other persons similarly situated who comprise the "Class" (as hereinafter defined, and, with the Named Plaintiff, also referred to herein as "Plaintiffs") and Defendant, Jobco Incorporated ("Jobco" or "Defendant") (Plaintiffs and Defendant, collectively as the "Parties").

### RECITALS AND BACKGROUND

A.    Named Plaintiff filed a Class and Collective Action Complaint and a Consent to become a party in a collective action on or about November 16, 2020, in the United States District Court for the Eastern District of New York, which was assigned docket number 20-CV-5321 (JMA)(SIL) (the "Action"). Since the filing of the Complaint, an additional 16 plaintiffs have filed a Consent to become a party in a collective action.

B.    Defendant, while continuing to deny any wrongdoing or liability, nevertheless has agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to be completely free of any further controversy with respect to the claims that were asserted or could have been asserted in, or related in any way whatsoever to, the Action. Nothing in this agreement constitutes an admission of liability by Defendant with respect to any of the claims asserted in the Action.

C.    Plaintiffs' Counsel, having analyzed and evaluated the merits of the claims made against Defendant and the impact of this Agreement on Named Plaintiff and the Class, and based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Action, if not settled now, might not result in any recovery whatsoever, or might result in a recovery that is less favorable and that would not occur for several years, is satisfied that the terms and conditions of this Agreement are fair,

1

reasonable, and adequate and that this Agreement is in the best interest of the Named Plaintiff and the Class.

       D.     Named Plaintiff and Defendant, by and through their respective counsel, have engaged in extensive settlement discussions, and with the assistance of a mutually-retained mediator, Bonnie Weinstock, Esq., in connection with the potential resolution of the Action. The Parties — subject to the approval of the Court — have elected to settle the Action pursuant to the terms set forth in this Agreement, which shall be submitted to the Court for approval through the mechanisms set forth below.

       NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Action on the following terms and conditions:

## 1.    DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

**1.1**    **Agreement.**  "Agreement" means this Settlement Agreement and Release.

**1.2**    **Application for Final Approval.**  "Application for Final Approval" shall have the meaning set forth in Section 2.8 hereof.

**1.3**    **Authorized Claimant.**  "Authorized Claimant" means Named Plaintiff, a Class Member, or the authorized legal representative of such a Class Member, who timely files a Claim Form (and does not file an Opt-Out Statement) in accordance with the terms of this Agreement, and who is therefore entitled to receive a Settlement Check (as hereinafter defined).

**1.4**    **Bar Date.**  "Bar Date" means the date by which any Class Member who wishes to qualify as an Authorized Claimant must file a Claim Form.  Subject to the Court's approval and the provisions of Section 2.3, the Bar Date shall be no later than sixty (60) days after the initial mailing of the Notice, as defined herein, by the Settlement Claims Administrator (as defined herein).

**1.5**    **Claim Form.**  "Claim Form" means the form annexed to the Declaration of Jeffrey R. Maguire, Esq. (the "Maguire Decl.") as Exhibit "C" and which will be published with the Notice of Proposed Settlement of Class Action Lawsuit, attached to the Maguire Decl. as Exhibit "B") that Class Members must complete, sign, and return to the Settlement Claims Administrator by United States Postal Service First Class Mail ("USPS") postmarked on or before the Bar Date. The Claim Form must be received by the Settlement Claims Administrator for a Class Member to be eligible to receive a Settlement Check.

**1.6**    **Class and Class Member.**  "Class" (collectively) and/or "Class Member" (individually) means: all individuals that Plaintiffs have alleged were employed by Defendant as manual laborers that worked overtime hours at any time during the period of July 13, 2018 through

September 28, 2018 at the Moxey Rigby Project located in Freeport, New York according to the time records maintained at the jobsite.

**1.7**   **Class Counsel.**  "Class Counsel" or "Plaintiffs' Counsel" means Stevenson Marino LLP, 75 Maiden Lane, Suite 402, New York, New York 10038.

**1.8**   **Class List.**  "Class List" means a list, in Microsoft Excel format, that includes the names, last known addresses, social security numbers, and weeks worked during the Settlement Period (as defined herein) for each Class Member to the extent such information exists on file with Defendant. Class Counsel agrees not to use this information for any purpose other than to effectuate the terms of this Agreement. Class Counsel shall take all reasonable steps to maintain the confidentiality of the Class List including not divulging the information contained in the Class List to Named Plaintiff or Class Members, and to destroy this information within thirty (30) days of the Final Effective Date, as defined below. Defendant shall use all reasonable efforts to produce a complete Class List. The full social security numbers of each Class Member, to the extent that they are in the possession of Defendant, shall be provided to the Settlement Claims Administrator upon request for purposes of skip tracing and correct identification of Class Members with similar names.

**1.9**   **Costs and Fees.**  "Costs and Fees" means Class Counsels' attorneys' fees, costs, and expenses.

**1.10**   **Court.**  "Court" means the United States District Court for the Eastern District of New York.

**1.11**   **Days.**  "Days" means business days if the specified number of days is less than five, and calendar days if the specified number of days is five or greater.

**1.12**   **Defendant.**  "Defendant" means Jobco Incorporated.

**1.13**   **Defendant's Counsel.**  "Defendant's Counsel" means Venable LLP, 1270 Avenue of the Americas, 24th Floor, New York, New York 10020.

**1.14**   **Fairness Hearing.**  "Fairness Hearing" means the hearing before the Court relating to the Application for Final Approval of the Agreement.

**1.15**   **Final Order.**  "Final Order" means the Order entered by the Court after the completion of the Fairness Hearing, approving the terms and conditions of this Agreement, authorizing distribution of the Settlement Checks and Service Awards, approving distribution of Costs and Fees, and dismissing the Action with prejudice.

**1.16**   **Final Effective Date.**  Provided no appeal is timely filed, and no application has been made for reconsideration or rehearing, the "Final Effective Date" means thirty (30) days after the Court has entered the Final Order.  If such an appeal or application for reconsideration or rehearing is timely filed, the latest of the following, if applicable, becomes the Final Effective Date: (1) any appeal from the Final Order has been finally

3

dismissed; (2) the Final Order has been affirmed on appeal in a form substantially identical to the form of the Final Order entered by the Court; (3) the time to petition for review with respect to any appellate decision affirming the Final Order has expired and no such petition for review has been filed; and/or (4) if a petition for review of an appellate decision affirming the Final Order is filed, the petition has been denied or dismissed, or, if granted, has resulted in affirmance of the Final Order in a form entered by the Court.

**1.17    Final Settlement Amount.**  "Final Settlement Amount" means the sum of the aggregate Individual Gross Amounts (as defined below) to be paid to the Authorized Claimants, plus all Court-approved Costs and Fees, Settlement Claims Administrator fees and costs, and Service Awards.

**1.18    Individual Gross Amount.**  "Individual Gross Amount" means the amount allocated to each individual Class Member prior to any withholdings for taxes and other lawful withholdings and deductions, and without the inclusion of a Service Award, if applicable.

**1.19    Individual Net Amount.**  "Individual Net Amount" means the amount allocated to an Authorized Claimant after deductions for taxes and any other lawful withholdings and deductions as well as any sums that may be withheld pursuant to Section 2.3(E) of this Agreement.

**1.20    Mediator.**  Mediator shall mean Bonnie Siber Weinstock, Esq**.**

**1.21    Maximum Settlement Amount.**  "Maximum Settlement Amount" means the sum of Two Hundred Eight Thousand Dollars and Zero Cents ($208,000.00).

**1.22    Named Plaintiff.**  "Named Plaintiff" refers to Julio Pineda.

**1.24    Net Settlement Amount.** "Net Settlement Amount" means the net amount after deducting the attorneys' fees and costs, claims administration costs, and service awards from the Maximum Settlement Amount.

**1.25    Opt-In Plaintiff.**  "Opt-In Plaintiff" means any individual who filed a consent to join this Action pursuant to § 216(b) of the Fair Labor Standards Act.

**1.26    Notice or Notices.**  "Notice" or "Notices" means the Court-approved Notice of Proposed Settlement of Class Action Lawsuit as authorized in the Preliminary Approval Order, respectively annexed to the Maguire Decl. as Exhibits "B" and "E".

**1.27    Objector.**  "Objector" refers to an individual Class Member who properly and timely files an objection to this Agreement.

**1.28    Opt-out Statement.**  "Opt-out Statement" refers to a written, signed statement that an individual Class Member or that individual's authorized representative uses to elect to exclude himself or herself ("Opt-out") from the settlement and from the Class.

**1.29    Preliminary Approval Motion.**  Preliminary Approval Motion shall have the meaning set forth in Section 2.2 hereof.

4

**1.30    Preliminary Approval Order.** "Preliminary Approval Order" means the Order entered by the Court: (i) preliminarily approving the terms and conditions of this Agreement; (ii) directing the manner and timing of providing Notice to the Class Members; and (iii) setting the dates and deadlines for effectuating settlement, including the Bar Date, date of the publication of Notice, and the Fairness Hearing date. The Proposed Preliminary Approval Order is annexed to the Maguire Decl. as Exhibit "E."

**1.31    Qualified Settlement Fund.** "Qualified Settlement Fund" (or "QSF") means the non-interest-bearing bank account controlled by an authorized Settlement Claims Administrator for the purpose of distributing the Final Settlement Amount in accordance with this Agreement. The QSF will be controlled by the Settlement Claims Administrator subject to the terms of this Agreement, the Preliminary Approval Order, and the Final Order, as well as any other or further Orders of the Court.

**1.32    Released Class Claims.** "Released Class Claims" means any and all compensation or wage-related claims, demands, rights, actions, causes of action, liabilities, damages, losses, obligations, judgments, duties, suits, costs, expenses, matters and issues arising in any way during the period from November 16, 2014 through the date of the Final Order, whether known or unknown, contingent or absolute, suspected or unsuspected, disclosed or undisclosed, liquidated or unliquidated, matured or unmatured, accrued or unaccrued, apparent or unapparent, including unknown claims, that could have been, or might be asserted in any court, tribunal or any other forum or proceeding, against Released Entities and that arise out of, relate to, or concern the payment of compensation or wages, including, but not limited to, any and all claims asserted in the Action, any and all statutory, constitutional, contractual or common law claims for unpaid regular or overtime wages, earned sick time, accrued benefit time prevailing wages, improper notice, improper paystubs, spread of hours, unpaid gratuities, bonuses, service charges, living wage, tips, any related wage and hour claims, interest on such claims, penalties, damages, liquidated damages, attorneys' fees, expenses, disbursements, litigation costs and fees, restitution, or equitable relief.  This release includes any such claims under the New York State Labor Law and any other state or local law governing the payment of wages, but not under the Fair Labor Standards Act.

**1.33    Released Authorized Claimant Claims.** "Released Authorized Claimant Claims" means any and all compensation or wage-related claims, demands, rights, actions, causes of action, liabilities, damages, losses, obligations, judgments, duties, suits, costs, expenses, matters, and issues arising in any way during the period from November 16, 2014 through the date of the Final Order, whether known or unknown, contingent or absolute, suspected or unsuspected, disclosed or undisclosed, liquidated or unliquidated, matured or unmatured, accrued or unaccrued, apparent or unapparent, including unknown claims, that could have been, or might be asserted in any court, tribunal any other forum or proceeding, against Released Entities and that arise out of, relate to, or concern the payment of compensation or wages, including, but not limited to, any and all claims asserted in the Action, any and all statutory, constitutional, contractual, or common law claims for unpaid regular or overtime wages, prevailing wages, improper notice, improper paystubs, spread of hours, earned sick time, accrued benefit time, unpaid gratuities, bonuses, service charges, living wage, tips, any related wage and hour claims, interest on such claims,

penalties, damages, liquidated damages, attorneys' fees, expenses, disbursements, litigation costs and fees, restitution, or equitable relief. This release also includes any such claims under the New York State Labor Law, and the Fair Labor Standards Act.

**1.34    Released Entities.**  "Released Entities" means Defendant and their respective estates, heirs, executors, administrators, agents, successors, and assigns, as well as their individual and collective subsidiaries, parents, affiliates, partners (general and limited), members, lenders (including any administrative agent or collateral agent for such lenders), creditors, insurers, sureties, predecessors, and successors of the foregoing, as well as the officers, managers, owners, directors, employees, agents, representatives, attorneys, trustees, executors, heirs, spouses, transferees, and assigns of any and all of them, in their individual and/or representative capacities.

**1.35    Service Award.**  "Service Award" means the portion of the Maximum Settlement Amount, if any, requested by the Service Award Recipients and approved by the Court as a reasonable incentive award to the Service Award Recipients for representing the interests of the Class Members.

**1.36    Service Award Recipients.**  "Service Award Recipients" means the following individuals: (a) the Named Plaintiff; and (b) Opt-In Plaintiff, Jose Diaz.

**1.37    Service Award Recipient Released Claims.** "Service Award Recipient Released Claims" means the release of claims provided by the Service Award Recipients, and means any and all claims, demands, rights, actions, causes of action, liabilities, damages, losses, obligations, judgments, duties, suits, costs, expenses, matters, and issues arising in any way during their alleged employment with Defendant, whether known or unknown, contingent or absolute, suspected or unsuspected, disclosed or undisclosed, liquidated or unliquidated, matured or unmatured, accrued or unaccrued, apparent or unapparent, including unknown claims, that could have been, or might be asserted in any court, tribunal or any other forum or proceeding, against Released Entities, including, but not limited to, any and all claims asserted in the Action, any and all statutory, constitutional, tort, contractual or common law claims for unpaid regular or overtime wages, prevailing wages, improper notice, improper paystubs, spread of hours, unpaid gratuities, bonuses, service charges, living wage, tips, any related wage and hour claims, interest on such claims, penalties, damages, liquidated damages, attorneys' fees, expenses, disbursements, litigation costs and fees, restitution, or equitable relief. This release also includes any such claims under the New York State Labor Law, and the Fair Labor Standards Act. This release also includes any and all claims arising from the Service Award Recipients' alleged employment with Defendant.

**1.38    Settlement Administrator's Fee.** "Settlement Administrator's Fee" means the Settlement Claims Administrator's professional service fees and costs.

**1.39    Settlement Claims Administrator.**  "Settlement Claims Administrator" means the qualified administrator referred to in Section 2.1.

**1.40 Settlement Checks.** "Settlement Checks" means checks issued to Authorized Claimants for their Individual Net Amount, and for the award of Service Awards (less lawful deductions and withholdings pursuant to Section 3.5(D) of this Agreement) if said Authorized Claimant is also a Service Award Recipient.

**1.41 Settlement Period.** "Settlement Period" means July 13, 2018 through and including September 28, 2018.

**2. PRELIMINARY APPROVAL AND PROCEDURE**

**2.1 Settlement Claims Administrator.**

    A. **Retention.** The Parties hereby designate Arden Claims LLC ("Arden") to act as Settlement Claims Administrator. Within five (5) days after the filing of the Preliminary Approval Motion (as defined below), Class Counsel shall formally engage CA to administer this settlement.

    B. **The Settlement Administrator's Fee.** The Settlement Administrator's Fee, not to exceed Seven Thousand Dollars and Zero Cents ($7,000.00), shall be paid from the Maximum Settlement Amount.

    C. **Funding Settlement Claims Administrator.** A portion of the Settlement Administrator's Fee, totaling Three Thousand Five Hundred Dollars and Zero Cents ($3,500.00), shall be paid by Defendants to the Settlement Claims Administrator following the issuance of the Preliminary Approval Order, but no later than fourteen (14) days before the Notices are mailed to Class Members. The remaining portion of the Settlement Administrator's Fee shall be paid as part of the Final Settlement Amount in accordance with the provisions of Section 3.1(A) herein.

    D. **Responsibilities of Settlement Claims Administrator.** The Settlement Claims Administrator shall be responsible for: (i) preparing, printing and disseminating to Class Members the Notice and Claim Forms; (ii) performing a skip trace and resending, within three (3) days of receipt, any Notice and Claim Form returned without a forwarding address, or resending to those with a new forwarding address; (iii) responding to inquiries from the Parties; (iv) monitoring and maintaining a telephone number for the purpose of responding to inquiries made by Class Members until the Final Effective Date or the termination of this Agreement, whichever comes first; (v) promptly furnishing to counsel for the Parties copies of any requests for exclusion, objections or other written or electronic communications from Class Members that the Settlement Claims Administrator receives; (vi) receiving, retaining and reviewing the Claim Forms submitted by Class Members; (vii) keeping track of requests for exclusion or objection, including maintaining the original envelope in which the request or objection was mailed; (viii) responding to inquiries of Class Members regarding procedures for filing objections, Opt-out Statements, and Claim Forms; (ix) referring to Class Counsel all inquiries by Class Members or Authorized Claimants

regarding matters not within the Settlement Claim Administrator's duties specified herein; (x) responding to inquiries of counsel for the Parties relating to the Settlement Claims Administrator's duties specified herein; (xi) promptly apprising counsel for the Parties of the activities of the Settlement Claims Administrator; (xii) maintaining adequate records of its activities, including the dates of the mailing of Notices and mailing and receipt of Claim Forms, returned mail and any and all other actual or attempted written or electronic communications with Class Members; (xiii) confirming in writing to counsel for the Parties and the Court its completion of the administration of the claims process; (xiv) timely responding to communications from the Parties and their counsel; (xv) providing Defendant with the Authorized Claimants IRS W-9 and W-4 tax forms; and (xvi) such other tasks as the Parties mutually agree or which the Court in the Action is pending directs.

E. **Access to the Settlement Claims Administrator.** The Parties will have equal access to the Settlement Claims Administrator. Class Counsel and Defendant's Counsel agree to use their best efforts to cooperate with the Settlement Claims Administrator and provide reasonable assistance in administering the terms of this Agreement.

## 2.2 Settlement Class Certification and the Preliminary Approval Motion.

A. The Parties stipulate, for settlement purposes only, to the certification by the Court of the Class, as defined in Section 1.6 of this Agreement. Defendant's stipulation to certification of the Class for the limited purpose of this settlement and this Agreement shall in no way be considered any form or waiver of any form of alternative dispute resolution or for any other purpose. Also, Defendant's stipulation to certification of the Class shall not be construed as an admission or acknowledgement of any kind that any class should be certified or given class action treatment. The Class may be provisionally certified pursuant to Fed. R. Civ. P. 23 for the purposes of the monetary relief provided in this Agreement.

B. Upon complete execution of this Agreement, Class Counsel shall file a Motion for Preliminary Settlement Approval (the "Preliminary Approval Motion"). In connection with the Preliminary Approval Motion, Class Counsel will submit to the Court: (1) the proposed Notice; (2) the proposed Claim Form; (3) the proposed Preliminary Approval Order; and (4) a fully-executed version of this Agreement.

C. In the Preliminary Approval Motion, Class Counsel shall inform the Court of the process to obtain a "Final Order" in accordance with the Court-approved schedule, so that at the completion of the Fairness Hearing, the Court may, among other things: (1) approve the settlement as fair, adequate and reasonable; (2) incorporate the terms of the releases, as set forth in Sections 1.31, 1.32, and 1.36 hereof; (3) dismiss the Action with prejudice; (4) award Class Counsel's Costs and Fees; (5) award the Settlement Administrator's Fee; (6) award the Service Awards to the Service Award Recipients; and (7) authorize distribution and payment to the Authorized Claimants.

8

D. Class Counsel will provide a "Microsoft Word" version of the Preliminary Approval Motion, including the Memorandum of Law and Declaration in Support, to Defendant's Counsel no later than twenty-one (21) days in advance of any deadline to file the same for review, revision, and comment. Defendant's counsel shall provide the revised motion to Class Counsel no later than seven (7) days in advance of any deadline for review and revision, and the parties shall confer and finalize the motion no later than one (1) day in advance of any deadline. Upon completion of such review and revision, Class Counsel shall file the motion with Defendant's consent. Defendant reserves the right to oppose such motion, however, if it is inconsistent with the terms and conditions of this Agreement.

**2.3    Notices and Claim Forms to Class Members.**

A. **Class Action Fairness Act Notice.**  Within ten (10) days of the filing of the proposed settlement with the Court, Defendant's Counsel shall issue any notice required by the Class Action Fairness Act, ("CAFA"), 28 U.S.C. § 1715(b).

B. **Class List to Counsel.**  Within ten (10) days of the Preliminary Approval Order being signed by the Court, Defendant shall provide the Settlement Claims Administrator and Class Counsel with the Class List. Class Counsel warrants that they will not use this information for any other purpose other than to effectuate settlement.

C. **Notice.**  The Notice, which shall be published in English and Spanish, will inform Class Members about this settlement, including the language of the release and other information regarding the opportunity to object to, opt-out of, or participate in the settlement, and to appear at the Fairness Hearing.  Within thirty (30) days of the signing of the Preliminary Approval Order, or as otherwise ordered by the Court, the Settlement Claims Administrator shall mail to all Class Members, via First Class United States Mail, the Court-approved Notices, IRS W-9 tax forms, and Claim Forms. Class Counsel and the Settlement Claims Administrator shall not publish and/or publicize the Notice in any manner other than specifically set forth herein. Nothing herein shall impede or prevent Class Counsel from responding to any inquiry from any Class Member or from furnishing any such Class Member(s) with any necessary forms upon their request for same.

D. **Skip Trace and Re-mailing.**  If a Claim Form is returned as undeliverable, the Settlement Claims Administrator shall take all reasonable steps to obtain a current address, including one skip-trace, and shall re-mail the Claim Form to such addresses. The Settlement Claims Administrator shall also mail a Notice and Claim Form to any Class Member who requests them after the initial mailing of the Notice but before the Bar Date. The Settlement Claims Administrator will notify Class Counsel and Defendant's Counsel of any Notices and Claim Forms returned as undeliverable after the first mailing, including those returned as undeliverable after any subsequent mailing. All costs of locating Class Members will be paid from the Settlement Administrator's Fee.

E. **Claim Forms.** To be deemed an Authorized Claimant, a Class Member must submit a completed Claim Form, and a completed IRS W-9 tax form with a valid Social Security Number or Tax Identification Number. If any Class Member fails to include a valid Social Security Number or Tax Identification Number on their IRS W-9 tax form, the Class Member will not be barred from participating in the settlement. However, if the Class Member fails to provide valid Social Security Number or Tax Identification Number within two (2) weeks of the Bar Date the Settlement Claims Administrator shall withhold the amount of said Class Members' Individual Gross Amount, such withholding to be for a reasonable period of time to provide proof that the Authorized Claimant has submitted an application for a valid Social Security Number or Tax Identification Number on their IRS W-9 tax form.

F. **Bar Date.** To be deemed an Authorized Claimant, a Class Member must postmark and mail a completed and signed Claim Form and the additional information submitted as required pursuant to Section 2.3(E) to the Settlement Claims Administrator by the Bar Date.

G. **Class Member Compliance.** To be deemed an Authorized Claimant, a Class Member must fully comply with the requirements of Section 2.3(E) and Section 2.3(F) of this Agreement.

**2.4 Access to Class Member Information.**

A. **Employment Information**. No later than ten (10) days after the Preliminary Approval Order is signed by the Court, Defendant shall provide the Settlement Claims Administrator and Class Counsel with the Class List.

B. **Calculated Individual Gross Amounts.** Within fourteen (14) days of its receipt of the Class List, the Settlement Claims Administrator shall provide Class counsel and Defendant's Counsel with a spreadsheet, in Microsoft Excel Format, containing the anticipated Individual Gross Amounts for each Class Member, which shall be calculated in a manner consistent with Section 3.5(A) of this Agreement.

**2.5 Opt-out: Class Members who Opt-out.**

A. Class Members who elect to opt-out of the settlement as set forth in this Agreement must mail, via First Class United States Mail, postage prepaid, a written, signed statement to the Settlement Claims Administrator that states he or she is opting out of the settlement (the "Opt-out Statement"). In order to be valid, the Opt-out Statement must include the name, address, and telephone number of the Class Member, and an express statement indicating his or her intention to opt-out, such as: "I opt-out of the Jobco wage and hour settlement." To be effective, an Opt-out Statement must be postmarked by United States Postal Service on or before the Bar Date.

B.      The latest date to opt-out of the settlement ("Opt-out Period") shall be on or before the Bar Date.

C.      The Settlement Claims Administrator shall stamp the received date on the original of each Opt-out Statement and send copies of each Opt-out Statement to Class Counsel and Defendant's Counsel not later than ten (10) days after receipt. The Settlement Claims Administrator will, within three (3) days of the end of the Opt-out Period, send a final list of all Opt-out Statements to Class Counsel and Defendant's Counsel by email. The Settlement Claims Administrator shall retain the stamped originals of all Opt-out Statements and originals of all envelopes accompanying Opt-out Statements in its files until such time as the Settlement Claims Administrator is relieved of its duties and responsibilities under this Agreement.

D.      Any Class Member who does not timely submit an Opt-out Statement pursuant to this Agreement will be deemed to have accepted the terms of this Agreement, will be bound by the Final Order, and will have all Released Class Claims released and dismissed with prejudice. Only those Class Members who timely complete and return a Claim Form postmarked or received by the Settlement Claims Administrator by the Bar Date, and otherwise comply with Section 2.3, will be deemed Authorized Claimants. Defendant shall have no obligation to pay or fund any amounts allocated to any Class Member who does not submit a timely Claim Form as set forth in this Agreement, and/or who does not otherwise comply with Section 2.3, unless otherwise ordered by the Court or agreed upon by the Parties.

**2.6    Objectors: Authorized Claimants Who Object to Settlement.**

A.      Class Members who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing and file a valid Claim Form and satisfy applicable requirements of Section 2.3 by the Bar Date. If a Class Member wishes to present objections to the proposed settlement, their Claim Form must be signed before a Notary Public. To be considered, such statement must be mailed to the Settlement Claims Administrator via First Class Mail, postage pre-paid, and postmarked by the United States Postal Service on or before the Bar Date. The statement must include all reasons for the objection, and any supporting documentation. The objecting Class Member shall include the following statement in the written objection: "This statement is truthful and accurate to the best of my knowledge." The statement must also include the name, address, and telephone number of the Class Member making the objection. The Settlement Claims Administrator will stamp the date received on the original of copies which are mailed, emailed, or faxed, and send copies of all objections, supporting documents, as well as a copy of the Notice and Claim Form mailed to the Objector, to Class Counsel and Defendant's Counsel by email delivery no later than three (3) days after receipt of the objection. The Settlement Claims Administrator shall also file the date-stamped originals of any and all objections with the Court.

B.     The Objector has the right to appear at any Fairness Hearing either in person or through counsel hired and paid for by the Objector. An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing in his or her written objections. An Objector may withdraw his or her objections at any time. Any Class Member who has elected to opt-out of the settlement may not submit objections to the settlement. Such objections, if received by the Settlement Claims Administrator, will be disregarded.

**2.7     List & Calculations to Counsel.**

A.     No later than ten (10) days after the Bar Date, the Settlement Claims Administrator shall provide to Class Counsel and Defendant's Counsel: (a) a list of all Authorized Claimants; (b) a list of all Objectors; (c) the Individual Gross Amounts for each Authorized Claimant as well as their aggregate total; and (d) a list of all Class Members who timely submitted an Opt-out Statement. Throughout the period of claims administration, the Settlement Claims Administrator shall provide reports to the Parties, at reasonable intervals, and upon request, regarding: (i) the status of the mailing of the Notices and Claim Forms to Class Members; (ii) the status or progress of the claims administration process; and (iii) any other aspect of the claims administration process. Beginning the second Friday after Notice is mailed to Class Members, the Settlement Claims Administrator shall provide counsel for the Parties a weekly update on the number of Authorized Claimants, Objectors, and Opt-outs.

B.     No later than thirty (30) days prior to the Fairness Hearing, Class Counsel or the Settlement Claims Administrator shall provide notice to Defendant's Counsel of the Final Settlement Amount, together with a Microsoft Excel spreadsheet that designates each Authorized Claimant, his/her allocated share, and the appropriate totals and calculations to confirm the Final Settlement Amount.

**2.8     Fairness Hearing and Application for Final Approval and Dismissal.**

A.     After the Bar Date, in accordance with the schedule set by the Court in the Preliminary Approval Order, and in advance of the Fairness Hearing, Class Counsel shall file supporting documents for final approval by the Court of the settlement ("Application for Final Approval"). The Application for Final Approval may contain a report from the Settlement Claims Administrator, an application for attorneys' fees (consistent with Section 3.3 of this Agreement), and supporting affirmations and documents from Class Counsel regarding the fairness, adequacy, and reasonableness of the settlement or any aspect related to this Agreement. The Application for Final Approval may also include a proposed Final Order.

B.     Class Counsel will provide a "Microsoft Word" version of the Application for Final Approval, including the Memorandum of Law and Declaration in Support, to Defendant's Counsel reasonably in advance of any deadline to file the same for review, revision, and comment and upon completion of such review, Class Counsel shall file the application with Defendant's consent. Defendant reserves the right to

oppose such application, however, if it is inconsistent with the terms and conditions of this Agreement.

C.    At the Fairness Hearing and through the Application for Final Approval, the Parties may request that the Court, among other things: (1) approve the settlement and Agreement as fair, reasonable, adequate, and binding on all Class Members who have not timely opted-out of the settlement and enjoin all Class Members who do not opt-out from pursuing and/or seeking to reopen claims that have been released by this Agreement; (2) order distribution of the Settlement Checks to the Authorized Claimants and any Service Awards to the Service Award Recipients as described in this Agreement; (3) order the costs and professional fees of Class Counsel to be paid, including the costs and fees incurred in the engagement of the Settlement Claims Administrator; (4) dismiss this Action with prejudice, and release the Released Class Claims, Released Authorized Claimant Claims, and Service Award Recipient Released Claims; (5) enter a Final Order in accordance with this Agreement; and (6) retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

**2.9    Termination of Agreement;  Effect of Termination.** Termination of the Agreement shall have the following effects:

A.    In the event this Agreement is terminated, the Parties will continue with the litigation as of the date of this Agreement with all rights and defenses intact as if no agreement had occurred. Nothing contained in this Agreement is intended or shall be deemed to affect in any way the liens or security interests (including perfection or priority) held by the lenders (or their agents) against property of the Defendant.

B.    Defendants shall have no obligation to make any payments to any Party, Class Member, Authorized Claimant, or to Class Counsel other than would be required had this Agreement not been executed. However, the Party terminating this Agreement shall be responsible for paying the costs, fees and expenses of the Mediator that were incurred as a result of the March 24, 2021 mediation, and the costs, fees and expenses of the Settlement Claims Administrator incurred until the mailing of the termination notice is complete, unless such termination is initiated as a result of the Court's amendment and/or disapproval of any of the terms contained herein.

C.    The Parties shall advise the Court of the termination and shall apply to the Court to have a single approved notice mailed to Class Members advising them of the termination. If approved by the Court, then the Settlement Claims Administrator shall provide a Court-approved notice to Class Members and any Authorized Claimants that the Agreement did not receive Final Approval and that, as a result, no payments will be made to Class Members or Authorized Claimants under the

Agreement. Such notice shall be mailed by the Settlement Claims Administrator via First Class United States Mail.

D.  If this settlement is terminated, Defendant retains all rights to: (1) contest the merits of the claims being asserted in the Action; (2) oppose any future motion for class certification; and/or (3) oppose contentions by the Named Plaintiff and Class Members, and raise all other rights and/or defenses.

E.  If this settlement is not consummated for any reason, including: (1) a termination under this Agreement; (2) a ruling by the Court declining to enter a Preliminary Approval Order or Final Order substantially in the form submitted by the Parties (including a reversal and/or modification on appeal of the Court's Preliminary Approval Order or Final Order); or (3) for any other reason not presently contemplated, then the Parties shall first endeavor to resolve the matter jointly and in good faith, including jointly or individually seeking reconsideration of the Court's ruling, if necessary, or involving a mediator, if practical. To the extent such good faith efforts fail, the Parties may continue to litigate the Action as if there was no Agreement.

F.  In the event of termination of the Agreement, the Parties agree that the statute of limitations for all FLSA and NYLL claims shall be tolled as of the date of the Mediation, March 24, 2021, and shall begin to run upon the date that the Agreement is terminated, provided that if Plaintiffs terminate the Agreement there shall be no tolling of the statute of limitations.

G.  By operation of entry of the Final Order, all Released Authorized Claimant Claims, Service Award Recipient Released Claims, and Released Class Claims shall be deemed forever and fully released, discharged, and merged into this Agreement. In the event Plaintiffs initiate proceedings against Defendant to enforce this Agreement for Defendant's failure to make any pre-funding payment in accordance with Section 3.1(A)(1) of this Agreement or for the non-payment of the Final Settlement Amount, minus any and all amounts previously paid, Defendants shall not raise timeliness or laches as a defense to oppose such enforcement.

**3.0  SETTLEMENT TERMS AND DUE DILIGENCE REVIEW**

**3.1  Amount.**

Subject to provisions of Section 2.9 above, the Parties agree to a Qualified Settlement Fund of Two Hundred Eight Thousand Dollars and Zero Cents ($208,000.00), which shall fully resolve and satisfy any and all amounts to be paid to all Authorized Claimants, in accordance with the terms of this Agreement, for releasing claims, and any Court-approved Costs and Fees, Service Awards, and Settlement Administration Costs and Fees.

A.  **Funding the QSF.** Defendant shall fund the QSF in the following payments:

1.  Commencing on a date twenty (20) days after the Court issues the

Preliminary Approval Order, Defendant shall begin pre-funding this settlement by depositing the sum of Seventy Thousand Dollars and Zero Cents ($70,000.00) into the QSF.

2.    Within eighty (80) days after the Notice has been sent to the Class Members, Defendant shall make a second deposit into the QSF in the sum of Seventy Thousand Dollars and Zero Cents ($70,000.00).

3.    Defendant shall pay the remaining portion of Final Settlement Amount (to the extent necessary) to the Settlement Claims Administrator within fourteen (14) days after the parties receive the executed affidavit/declaration from the Settlement Claims Administrator.

B.    **Funding Default.**    If Defendant fails to make any funding payment in accordance with Section 3.1(A) of this Agreement, Class Counsel shall provide Defendant's counsel with notice of the default by email to Defendant at bglustbader@venable.com. Defendant will then have seven (7) days from the date of receipt of such notice within which to cure the default by delivering to Class Counsel at the address listed above via overnight delivery any amounts due and owing to Class Counsel. If Defendant timely cures its breach, no other dates in the above schedule shall become altered or in any way affected. If Defendant fails to timely cure its breach, one hundred percent (100%) of the entire unpaid balance of the payments ($208,000.00 less any payments made under this Agreement) will then become due and owing, and Plaintiff may apply to the Court, which will retain jurisdiction over the Action to enforce the terms of this Agreement, to enter judgment for that amount, plus reasonable attorneys' fees and costs associated with seeking judgment for Defendant's breach including costs and fees for any motion for costs and fees.

3.2    **Payments from the QSF.**  The Settlement Claims Administrator shall make the following payments from the QSF, once the QSF is funded as described in Section 3.1(A):

A.    Within fourteen (14) days of the Final Effective Date as described in Section 1.17, the Settlement Claims Administrator shall: (i) mail all Settlement Checks to Authorized Claimants; (ii) mail any and all Service Awards to the Service Award Recipients; and (iii) wire-transfer payment to Class Counsel of all Court-approved Costs and Fees. Delivery of settlement checks shall be accomplished in the manner specified in Section 3.6(B).

B.    Any amounts representing uncashed Settlement Checks, uncashed Service Awards, or any other amount remaining in the QSF after one hundred (100) days from the mailing of Settlement Checks shall constitute "Undelivered Funds." All Undelivered Funds shall be returned to Defendant within one hundred thirty (130) days from the mailing of Settlement Checks.

**3.3    Amounts Payable as Attorneys' Fees, Expenses, and Costs.**

A.     At the Fairness Hearing, and in connection with the Application for Final Approval, Class Counsel will petition the Court for an award for Costs and Fees of no more than Sixty-Nine Thousand Three Hundred Thirty-Three Dollars and Thirty-Three Cents ($69,333.33) in attorneys' fees and no more than Five Thousand Dollars and Zero Cents ($5,000.00) in costs of the Maximum Settlement Amount. Defendant will not oppose this application, including any appeal or request for reconsideration, so long as the Final Order does not result in an award of Costs and Fees that is greater than Sixty-Nine Thousand Three Hundred Thirty-Three Dollars and Thirty-Three Cents ($69,333.33) in attorneys' fees and Five Thousand Dollars and Zero Cents ($5,000.00) in costs.

B.     The substance of Class Counsel's application for Costs and Fees is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Action. The decision terminating any proceeding related to Class Counsel's application for Costs and Fees shall not terminate this Agreement or otherwise affect the Court's ruling on the Application for Final Approval. In the event the Court approves Class Counsel's application for fees and costs in any amount less than the amounts that Class Counsel apply for, the amount of any reduction of Costs and Fees shall be distributed to the Authorized Claimants in accordance with the provisions of Section 3.6.

C.     Defendant shall fund the Court-approved Costs and Fees into the QSF in the manner described in Section 3.1(A).

**3.4    Service Awards.**

A.     In return for services rendered to Class Members, Authorized Claimants, and the Class, at the Fairness Hearing the Service Award Recipients may apply to the Court to receive a Service Award of no more than a cumulative total of Ten Thousand Dollars and Zero Cents ($10,000.00), which shall be deducted from the Maximum Settlement Amount.

B.     The Service Awards, the aggregate total of which shall not exceed Ten Thousand Dollars and Zero Cents ($10,000.00), shall be divided amongst the Service Award Recipients equally, but subject to the approval of the Court. Class Counsel shall explain the distribution of the Service Awards amongst the Service Award Recipients in the Application for Final Approval. In the event the Court approves Service Awards that total less than Ten Thousand Dollars and Zero Cents ($10,000.00) in the aggregate, the difference between Ten Thousand Dollars and Zero Cents ($10,000.00) and any lesser aggregate amount awarded to the Service Award Recipients shall be distributed to the Authorized Claimants in accordance with the provisions of Section 3.6.

C. The application for the Service Awards is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Action. The Court's decision on the application for the Service Awards will not terminate this Agreement or otherwise affect the Court's ruling on the Application for Final Approval.

D. Defendant shall fund the Court-approved Service Awards in the manner described in Section 3.1(A).

**3.5    Net Settlement Fund, Allocation to Class Members, and Calculation.**

A. **Calculation.** Each Authorized Claimant's Individual Gross Amount shall be calculated based on timesheets produced in the litigation as follows:

1. Calculate the Net Settlement Amount by deducting the attorneys' fees and costs, claims administration costs, and service awards from the Maximum Settlement Amount.

2. Each Class Member shall be assigned one (1) point for each week worked for the following weeks:

   i.   July 13 – July 17, 2018;

   ii.  August 8 – August 14, 2018;

   iii. August 15 – August 21, 2018;

   iv.  August 22 – August 28, 2018;

   v.   August 29 – September 4, 2018;

   vi.  September 5 – September 11, 2018;

   vii. September 12 – September 18, 2018;

   viii. September 19 – September 25, 2018;

3. Each Class Member shall be assigned eight (8) points for the workweek of July 18 – July 24, 2018;

4. Each Class Member shall be assigned seven (7) points for the workweek of July 25 – July 31, 2018;

5. Each Class Member shall be assigned ten (10) points for the workweek of August 1 – August 7, 2018;

6. Add all points for each Class Member together to obtain the "Total Denominator;"

7.     Divide the number of points for each member of the Settlement Class by the Total Denominator to obtain each Class Member's allocated percentage of the class fund amount ("Percentage");

8.     Multiply each Class Member's Percentage against the Net Settlement Amount to determine the Individual Gross Amount of each Class Member;

Once each Class Members' Individual Gross Amount is calculated in accordance with the provisions of this Section 3.5, the Individual Gross Amount shall not be increased unless: (a) the Court approves Service Awards that total less than Ten Thousand Dollars and Zero Cents ($10,000.00); and/or (b) the Court approves Costs and Fees that total less than Seventy-Four Thousand Three Hundred Thirty-Three Dollars and Thirty-Three Cents ($74,333.33).

Defendant enters into this Agreement to calculate each Class Members' Individual Gross Amount in the manner set forth above for the purposes of settlement only. Nothing above or otherwise herein shall be construed as an admission that Defendant was required to pay any overtime wage compensation or any other amount of unpaid wages, at any period of time.

D.     **Tax Treatment**.  One hundred percent (100%) of each Authorized Claimant's Individual Gross Amount will be reported to the IRS as 1099-Misc non-wage income representing liquidated damages and interest. Each Service Award Recipient's Service Award will be reported to the IRS as 1099-Misc non-wage income. By submitting a Claim Form, each Authorized Claimant (and Service Award Recipient, as applicable) agrees to defend and hold Defendant harmless, up to the amount of his or her Individual Gross Amount (and Service Award, if applicable), for any unexpected tax obligations and related expenses that Defendant might incur because of this settlement and/or the failure of any Authorized Claimant (and Service Award Recipient, as applicable) to pay taxes on any income he or she might receive as a participant in the settlement.

### 3.6    Settlement Check Distribution.

A.     The Settlement Claims Administrator shall be responsible for generating checks or wire transfers to pay Service Awards, the Individual Net Amounts to the Authorized Claimants, the Settlement Administrator's Fee, and Costs and Fees. The Settlement Claims Administrator shall deliver all settlement checks to Authorized Claimants by First Class Mail and Class Counsel by wire transfer.

B.     The Settlement Claims Administrator shall deliver all Individual Net Amounts to the Authorized Claimants by check via First Class Mail and Class Counsel's Costs and Fees via wire transfer.

### 3.7 Release of Claims and Covenant Not to Sue.

A  By operation of the entry of the Final Order, and except as to such rights or claims to enforce this Agreement, each individual Class Member who does not timely opt-out of this settlement pursuant to this Agreement, and each individual Authorized Claimant, on behalf of themselves, their heirs, executors, administrators, successors, assigns, estates, representatives, subsidiaries, affiliates, and agents forever and fully releases and discharges the Released Entities from all Released Class Claims.

B.  By operation of the entry of the Final Order, and except as to such rights or claims to enforce this Agreement, each individual Authorized Claimant on behalf of themselves, their heirs, executors, administrators, successors, assigns, estates, representatives, subsidiaries, affiliates, and agents forever and fully releases and discharges the Released Entities from all Released Class Claims and Released Authorized Claimant Claims.

C.  By operation of the entry of the Final Order, and except as to such rights or claims to enforce this Agreement, each Service Award Recipient, on behalf of themselves, their heirs, executors, administrators, successors, assigns, estates, representatives, subsidiaries, affiliates, and agents, fully and forever releases and discharges the Released Entities from all Released Class Claims, all Released Authorized Claimant Claims, and all Service Award Recipient Released Claims.

E.  Unless the Named Plaintiff opts-out of this settlement pursuant to the terms of this Agreement, then by operation of the entry of the Final Order, and except as to such rights or claims to enforce this Agreement, regardless of whether the Named Plaintiff timely submits a Claim Form, the Named Plaintiff forever and fully releases and discharges Released Entities from all Released Class Claims and Released Authorized Claimant Claims.

F.  The Class Members, Authorized Claimants, and Service Award Recipients expressly acknowledge that: (i) the facts and perceived circumstances to which the Released Class Claims, Released Authorized Claimant Claims, and Service Award Recipient Released Claims relate, may hereafter turn out to be other than, or different from the facts and perceived circumstances now known or believed to be known; (ii) the Class Members, Authorized Claimants, and Service Award Recipients expressly assume the risk referred to in "(i)" of this provision; and (iii) the Class Members, Authorized Claimants, and Service Award Recipients agree that the Released Class Claims, Released Authorized Claimant Claims, and Service Award Recipient Released Claims shall be in all respects effective in accordance with their terms and shall not be subject to termination or rescission by reason of such different facts or perceived circumstances.

### 3.8 Settlement Payments Do Not Trigger Additional Benefits or Incentives.
All payments to Authorized Claimants shall be deemed to be paid to such Authorized Claimants solely in the year in which such payments actually are received by the Class Members. The

Parties agree that the payments provided for in this Agreement are the sole payments to be made to the Class Members in connection with this Settlement or the Action, and that the Authorized Claimants are not entitled to any new or additional compensation, benefits or incentives as a result of having received such payments, notwithstanding any contrary language or agreement in any benefit or compensation plan document that might currently be in effect or have been in effect during the period covered by this Settlement.

**3.9** **Non-Admission of Liability.** By entering this Agreement, Defendant in no way admits any violation of law or any liability whatsoever to the Named Plaintiff, Authorized Claimants, Service Award Recipients, and/or the Class Members, individually or collectively, all such liability being expressly denied. Likewise, by entering into this Agreement, Defendant in no way admits to the suitability of this case for class action litigation other than for purposes of settlement. Rather, Defendant enters into this Agreement to avoid further protracted litigation, and to fully resolve and settle all disputes with the Named Plaintiff, Authorized Claimants, Service Award Recipients, and Class Members. Settlement of the Action, negotiation, and execution of this Agreement, and all acts performed and documents executed pursuant to or in furtherance of this Agreement or the settlement: (1) are not, shall not be deemed to be, and may not be used as, an admission or evidence of any wrongdoing or liability on the part of Defendant or of the truth of any of the factual allegations in any and all complaints or other papers filed by Plaintiff in the Action; and (2) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendant in any civil, criminal, regulatory, governmental, administrative, or arbitral proceeding. The Parties understand and agree that this Agreement is a settlement document and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement.

**4.0** **MISCELLANEOUS PROVISIONS.**

**4.1** **Cooperation between the Parties; Further Acts.** The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each Party, upon the request of any other Party, agrees to perform such further acts, and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**4.2** **No Assignment.** Class Counsel and the Named Plaintiff represent and warrant that they have not assigned or transferred or purported to assign or transfer to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Action or any related action.

**4.3** **Entire Agreement.** This Agreement constitutes the entire agreement among the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings among the Parties shall be deemed merged into this Agreement.

**4.4** **Binding Effect.** This Agreement shall be binding upon the Parties and, with respect to Named Plaintiff, and all Class Members, Authorized Claimants, and Service Award

Recipients, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys, and assigns. Notwithstanding the passage of any legislation, bill, regulation, or other change in the law that may materially affect the rights of the Named Plaintiff, the Authorized Claimants, Service Award Recipients, and all Class Members, this Agreement is binding**.**

**4.5** **Survival.** The provisions of Sections 2.9 shall survive termination of this Agreement.

**4.6** **Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arms' length, including through the assistance of private mediation. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

**4.7** **Captions.** The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**4.8** **Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**4.9** **Reference of Disputes to Mediator.** The Parties agree that, in the event of any dispute regarding the interpretation or validity of or otherwise arising out of the settlement or this Agreement, the Parties shall first attempt to resolve any such disputes through the Mediator, and all costs therefor shall be shared equally. The Parties acknowledge and agree that they shall attempt in good faith to resolve any such dispute before the Mediator. In the event that the Mediator determines that she is unable to resolve any such dispute, the Parties agree that they shall be subject to the jurisdiction of the Court as set forth in the subsequent paragraph.

**4.10** **Waivers, etc. to Be in Writing**. No waiver, modification, or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification, or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other Party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**4.11** **When Agreement Becomes Effective; Counterparts.** This Agreement shall become effective upon its full execution. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

**4.12** **Email Signatures.** Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via email to counsel for the other Party. Any signature made and transmitted by email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

**4.13** **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each Party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**4.14** **Consultation and Authority.** Class Counsel warrants and represents that they have consulted with the Named Plaintiff and have full authority to enter into this Agreement on behalf of the Named Plaintiff and the Class.

**4.15** **Notice.** All other notices and documents set forth herein shall be delivered to Defendant's Counsel at the address in Section 1.13 or via email to bglustbader@venable.com, and Class Counsel at the address in Section 1.7 or via email to jmaguire@stevensonmarino.com, respectively.

**WE AGREE TO THESE TERMS,**

**Stevenson Marino LLP**
**For Plaintiffs**

By: _____
             Jeffrey R. Maguire

Dated: _____5/20/2021_____

**Venable LLP**
**For Defendants**

By: _____
             Brian G. Lustbader

Dated: _____5-20-21_____

# EXHIBIT B

## NOTICE OF PENDENCY OF CLASS ACTION SETTLEMENT

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

*A court authorized this notice. This is not a solicitation from a lawyer.*
*This is not a lawsuit against you and you are not being sued.*
*However, your legal rights are affected whether you act or don't act.*

**If you worked as a manual laborer at the Moxey Rigby Project located in Freeport, New York, for Jobco Incorporated or Commercial Contracting Services Inc. or Jaime Delahunt, at any time between July 13, 2018 and September 28, 2018, you may be entitled to money from a class and collective action settlement.**

***PLEASE READ THIS NOTICE CAREFULLY.*** This notice relates to the proposed settlement of class and collective action litigation. It contains important information about your right to participate in the settlement and claim a payment from the settlement and about how to exclude yourself from the litigation.

## I.    INTRODUCTION

Plaintiff Julio Pineda ("Plaintiff"), on behalf of himself and other manual laborers who worked at the Moxey Rigby Project in Freeport, New York, has a pending lawsuit in the United States District Court for the Eastern District of New York, located in Central Islip, New York, entitled *Pineda v. Jobco Incorporated, et al.*, Case No. 1:20-cv-5321-JMA-SIL (the "Lawsuit"). Jobco Incorporated ("Jobco") and Commercial Contracting Services Inc. and Jaime Delahunt are the Defendants.

In the Lawsuit, Plaintiff asserts that he was not paid in accordance with federal and state wage and hour laws. Specifically, he asserts that he was not paid overtime as required by the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") and asserts the right to allegedly unpaid wages and other statutory penalties under the FLSA and the NYLL. The manual laborers that Plaintiff seeks to represent are referred to as the "Class Members." Jobco believes that it was not responsible for paying the manual laborers as it was not the manual laborers' employer, and that Commercial Contracting Services Inc. and Jaime Delahunt are the employers. Jobco maintains that it compensates all its employees fairly and in full compliance with all legal requirements. Commercial Contracting Services Inc. and Jaime Delahunt have chosen not to appear to defend themselves in this action.

Plaintiff and Jobco have settled the matter and have entered into a Settlement Agreement and Release (the "Settlement Agreement"), which is explained in further detail below. Jobco has agreed to create a settlement fund (the "Settlement Fund") that will be used to pay Class Members who qualify. Although Jobco agreed to settle, Jobco decided to do so solely to avoid the continued distraction of litigation. Jobco expressly denies that it did anything wrong.  The Court has not decided who is right and who is wrong.

1

You have been identified as a potential Class Member who may be qualified to participate in the settlement. That is why you are receiving this notice. Please read this notice carefully. Your legal rights will be affected whether you act or don't act.

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **RETURN THE CLAIM FORM** | In order to receive any money from the settlement, you must return the enclosed Claim Form to the Settlement Claims Administrator, **Arden Claims Service, LLC** by **[insert 60 days from date of mailing].** <br><br> If you submit a Claim Form to the Settlement Administrator on time, you will release all of your claims against Jobco under the FLSA, the NYLL, as well as any other New York state or local statute, rule, or ordinance governing the payment of wages. You will also receive a payment from the Settlement Fund. |
| **DO NOTHING** | If you do not return a Claim Form or return the Claim Form late, <u>you will not receive a payment</u>. Nonetheless, unless you exclude yourself from the settlement (see below) you will be deemed to have released your wage and hour-related claims under the NYLL and any other New York state or local rule, statute, or ordinance governing the payment of wages. You will not be deemed to have released any claim you may have under the FLSA. |
| **EXCLUDE YOURSELF** | If you make a timely and valid request to exclude yourself from the settlement by sending a written, signed Opt-out Statement to the Claims Administrator by **[insert 60 days from date of mailing],** you will not release any claims that you may have under the FLSA, the NYLL, or any other law, but you also will not receive a settlement payment. |
| **OBJECT** | If there is something about the settlement that you object to but you want to participate in the settlement, you must object to the settlement. To do so, write to the Claims Administrator and explain why you disapprove of the settlement. Any objection must be sent to the Claims Administrator by **[60 days from date of mailing]**. If you object you may be allowed to appear in Court to present your objection in Court at the final fairness hearing, either with or without counsel. <br><br> Note that to receive a settlement payment you <u>must</u> still return a valid and timely Claim Form even if you also submit a timely objection. |

These rights and options – **and the deadlines to exercise them** – are explained in this notice. Jobco will not take any action against anyone who participates in the Settlement.

- As described more fully below in Paragraph H of this Notice, **to receive a settlement payment, you must return a properly completed Claim Form to the Claims Administrator, which the Claims Administrator must receive or which must be post-marked by no later** than [60 days after the initial mailing of the Notice to the Class]. If you do not submit a Claim Form by the deadline, you will not receive any settlement payment, but you will still release all wage and hour claims under the NYLL.

- Neither Plaintiffs' attorneys ("Class Counsel") nor Jobco or Jobco's attorneys make any representations concerning the tax consequences of receiving a settlement payment. You are advised to seek your own personal tax advice prior to acting in response to this Notice.

- This is only a proposed settlement, which means that the Court in charge of this case still has to decide whether to approve the settlement. Payments will be made only if the Court approves the settlement and after any appeals are resolved. Please be patient.

## II. QUESTIONS AND ANSWERS

### A. Why did I receive this notice?

The records indicate that you are a Class Member because you worked as a manual laborer at the Moxey Rigby Project located in Freeport, New York, for Jobco Incorporated or Commercial Contracting Services Inc., at any time between July 13, 2018 and September 28, 2018.

The Court ordered that this notice be sent to you because you have a right to know about a proposed settlement of a class action lawsuit, and about all of your options, before the Court decides whether to approve the settlement. If the Court approves the settlement and after any objections or appeals are heard, payments will be mailed to those class members who submit a timely and valid Claim Form *and* do not exclude themselves. This notice explains the lawsuit, the settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

### B. What is this Lawsuit about?

Plaintiff alleges that Defendants did not pay Plaintiff and other Class Members overtime pay for all of the hours that they worked over forty each week. Additionally, Plaintiff alleges that Defendants did not provide Plaintiff and the Class Members with accurate wage statements on each payday.

Jobco expressly denies that it did anything wrong, denies that it employed any manual laborers to work at the Moxey Rigby Project, and believes that its pay practices comply fully with the law. The Court has not issued any decision in this case about who is correct.

Commercial Contracting Services Inc. and Jaime Delahunt failed to appear in the action and chose not to defend themselves against Plaintiff's allegations.

### C. What is a class and collective action?

Plaintiff brought this lawsuit as a class action and collective action on behalf of himself and other Class Members. The law provides a way for multiple individuals, or one individual on behalf of others, to sue together for the same relief. For the FLSA claims, this is called a collective action. For the NYLL claims, it is called a class action.

In a class or collective action, one or more people called "Class Representatives" (in this case, Plaintiff Julio Pineda) sue on behalf of people who may have similar claims. All of these potentially similar people are "Class Members." In this case, the Class Members are all individuals who worked as manual laborers at the Moxey Rigby Project located in Freeport, New York, for Jobco Incorporated or Commercial Contracting Services Inc., at any time between July 13, 2018 and September 28, 2018. In a class action, one court resolves the issues for all Class Members, except for those who affirmatively exclude themselves from the class. Paragraphs L through O of this Notice explain how to exclude yourself, or ***"opt-out"*** of the Class.

### D. Why is there a settlement?

The Court did not decide in favor of either the Plaintiffs or the Defendants. Plaintiff thinks he could have won if he went to trial. Jobco thinks that Plaintiff would not have won anything from a trial. Commercial Contracting Services Inc. and Jaime Delahunt failed to appear in the action to defend themselves. But there was no trial. Instead, after extensive negotiations and with the help of a neutral mediator, the parties agreed to settle. That way, both Class Members and Jobco avoid the costs of a trial, the risk of losing, and the delay and expenses of litigating the case and of potential appeals. Plaintiff and his attorneys believe that the settlement is fair and reasonable, and in the best interests of all Class Members. The settlement does not mean that Jobco did anything wrong or violated the law.

### E. How do I know if I am part of the settlement?

You are a member of the Class if you worked as a manual laborer at the Moxey Rigby Project located in Freeport, New York, for Jobco Incorporated or Commercial Contracting Services Inc., at any time between July 13, 2018 and September 28, 2018, which is why you have received this notice.

### F. What does the settlement provide?

Jobco has agreed to pay up to Two Hundred Eight Thousand Dollars ($208,000.00) (the "Gross Settlement Amount"), which will be used to pay the Class Members who submit timely Claim Forms, Class Counsel, service awards, attorneys' fees and out-of-pocket costs, and class settlement administration fees.

### G. How will my payment be calculated?

Based on a formula preliminarily approved by the Court, the settlement payment for each member of the Settlement Class who returns a timely and valid Claim Form will be calculated as follows:

1. Calculate the Net Settlement Amount by deducting the attorneys' fees and costs, claims administration costs, and service awards from the Maximum Settlement Amount.

2. Each Class Member shall be assigned one (1) point for each week worked for the following weeks:

   a. July 13 – July 17, 2018;

   b. August 8 – August 14, 2018;

   c. August 15 – August 21, 2018;

   d. August 22 – August 28, 2018;

   e. August 29 – September 4, 2018;

   f. September 5 – September 11, 2018;

   g. September 12 – September 18, 2018;

   h. September 19 – September 25, 2018.

3. Each Class Member shall be assigned eight (8) points for the workweek of July 18 – July 24, 2018;

4. Each Class Member shall be assigned seven (7) points for the workweek of July 25 – July 31, 2018;

5. Each Class Member shall be assigned ten (10) points for the workweek of August 1 – August 7, 2018;

6. Add all points for each Class Member together to obtain the "Total Denominator."

7. Divide the number of points for each member of the Settlement Class by the Total Denominator to obtain each Class Member's allocated percentage of the class fund amount ("Percentage").

8. Multiply each Class Member's Percentage against the Net Settlement Amount to determine the Individual Gross Amount of each Class Member.

This formula, after subtracting proposed attorneys' fees, costs, and service awards, is accurately represented as follows:

$$\$116,666.70 \; x \; \frac{Individual \; Class \; Member's \; Points}{Aggregate \; Points \; of \; All \; Class \; Members} = Individual \; Gross \; Amount$$

The calculation of all points shall be based on the actual timesheets used to sign in and out from the jobsite. If there is a dispute about weeks worked by a class member that cannot be resolved between the parties, the dispute will be submitted to the mediator, Bonnie Siber Weinstock.

**Note that only Class Members who return timely and valid Claim Forms will be entitled to receive a Settlement Check for their portion of the class fund.**

For those Class Members who return timely and valid Claim Forms, one hundred percent (100%) will be reported to the IRS as 1099-Misc income. Each Service Award Recipient's Service Award will be reported to the IRS as 1099-Misc income. Each Class Member who submits a Claim Form (and Service Award Recipients, as applicable) agrees to defend and hold Jobco harmless, up to the amount of his or her Individual Settlement Payment (and Service Award, if applicable), for any unexpected tax obligations and related expenses that Jobco might incur because of this settlement, if the liability is solely due to the failure of that individual (and Service Award Recipient, as applicable) to pay taxes on the portion of the Settlement Payment reported to the IRS as 1099-Misc income and from which taxes are not withheld. It will be the responsibility of each Class Member receiving a payment to file and pay any taxes associated with any amounts paid for which he/she receives a Form 1099.

In addition, there may be money left over in the Settlement Fund if fewer than all Class Members choose to return their Claim Forms by the deadline to submit them. This is called a "Residual Fund." If this occurs, the Residual Fund will be returned to Jobco.

### H. What do I have to do to collect my settlement payment?

To receive a payment from the settlement, you must return a properly completed and signed Claim Form to the Claims Administrator, which the Claims Administrator must receive or must be post-marked by [60 days after the initial mailing of the Notice to the Class].

You must return your completed Claim Form to the following address:

> Jobco Settlement
> Arden Claims Service, LLC
> Claims Administrator
> P.O. Box 1015
> Port Washington, New York 11050

You may also fax the form to the Claims Administrator at: 516-944-1771.

You may also email the form the Claims Administrator at acsoperations@ardenclaims.com.

**I.     What am I giving up by getting a payment or staying in the Class?**

Unless you exclude yourself from the settlement, you will remain in the Class. You will release all claims under the NYLL relating to the payment of wages for hours worked. If you submit a timely and valid Claim Form, you will also release all claims under the FLSA. That means that you will not be able to bring a new lawsuit or be part of any other lawsuit against Jobco concerning the legal issues in this lawsuit or for any other potential claims arising under the released statute or statutes. It also means that all of the Court's rulings will apply to you and legally bind you.

**J.     When will my payment arrive?**

The Court will hold a hearing on [date of Fairness Hearing] to decide whether to grant final approval to the settlement. If the Court approves the settlement, and no appeal is taken, your payment will be sent to you within forty-four days of the Final Effective Date of the settlement, which is after the deadline to appeal the Court's Final Approval Order has expired.  There may, however, be an appeal challenging the Court's decision. It is impossible to predict whether an appeal will be taken and, if there is, how long it will take to be decided. Please be patient. You can contact Class Counsel at any time for an update on the status of the case or the settlement. It is your responsibility to make sure that the Claims Administrator has your current mailing address.

**K.     Does the settlement fund include any other payments?**

Yes. Plaintiffs' attorneys will ask the Court to approve payment for their attorneys' fees of up to Sixty-Nine Thousand Three Hundred Thirty-Three Dollars and Thirty-Three Cents ($69,333.33), and their costs in the amount of Five Thousand Dollars ($5,000.00), which will come from the Gross Settlement Amount (as defined above) of Two Hundred Eight Thousand Dollars ($208,000.00). Plaintiffs' attorneys will also ask the Court to approve Service Awards totaling Ten Thousand Dollars ($10,000.00), amounting to Five Thousand Dollars ($5,000.00) to Plaintiff Julio Pineda and Five Thousand Dollars ($5,000.00) to opt-in Plaintiff Jose Diaz; and claims administration fees totaling Seven Thousand Dollars ($7,000.00) to Arden Claims Service, LLC. Those amounts will also come from the Gross Settlement Amount.

**L.     How do I exclude myself from the settlement?**

If you wish to exclude yourself (or "opt out") from this Lawsuit and not be bound by the settlement, you must submit to the Claims Administrator a written Opt-out Statement that includes your name, address, and telephone number, and a statement indicating your intention to exclude yourself from the settlement, such as "I opt out of the Jobco wage and hour settlement." The Opt-out Statement must specifically refer to the "Jobco Settlement" and be sent to the Claims Administrator, Arden Claims Service, LLC, P.O. Box 1015, Port Washington, New York 11050. You may also fax your Opt-out Statement to the Claims Administrator at 516-944-1771 or email your Opt-out Statement to the Claims Administrator at acsoperations@ardenclaims.com. You must send your Opt-out Statement to the Claims Administrator, and it must be postmarked or received by the Claims Administrator by on or before _____, 2021 [within 60 days after the initial mailing of the Notice to the Class].

If you exclude yourself, you will not receive any money from this settlement and you cannot object to the settlement. You will not release any claims asserted in the Lawsuit or any other claims against the Defendants, and you will not be legally bound by anything that happens in the Lawsuit. You may, however, pursue other remedies separate and apart from the settlement that may be available to you, such as your own lawsuit based on the same claims as those settled in this lawsuit, bearing in mind that the statute of limitations on your claims may have already expired.

### M.   How do I object to the settlement?

If you want to participate in the settlement but you disapprove of any part of the settlement, you may object to it before it is finally approved by the Court. If you choose to object, you must send your objections, in writing, to the Claims Administrator, Arden Claims Service, LLC, P.O. Box 1015, Port Washington, New York 11050. You may also fax your objection to the Claims Administrator at 516-944-1771 or email your objection to the Claims Administrator at acsoperations@ardenclaims.com. Your objection must be postmarked or received by the Claims Administrator by no later than [60 days after the initial mailing of notice to the class]. Your objection must refer to the "Jobco Settlement," state your reasons for objecting, and include any supporting documentation. Your objection must also state your name, address, and telephone number. Your written statement must include all reasons for the objection. Your written objection must also include the following statement: "The information contained in this statement is truthful and accurate to the best of my knowledge."

If you submit a timely and properly completed objection to the Claims Administrator, you have the right to appear at the Fairness Hearing that the Court will hold to determine whether to finally approve the settlement of this case, which will take place before The Honorable Joan M. Azrack on [**date and time of Fairness Hearing**] in Courtroom 920 at the United States District Court, Eastern District of New York, 100 Federal Plaza, Central Islip, New York 11722. The date and time of this hearing is subject to change by the Court without further notice. If you intend to appear at the Fairness Hearing, your objection must state, "I request leave to appear and present my objection(s) at the Fairness Hearing." If you intend to appear at the Fairness Hearing through an attorney (whom you may retain at your own expense), your objection must state that as well. Your attorney must file a notice of appearance no later than two weeks prior to the date of the Fairness Hearing.

Even if you object to the settlement, in order to receive any payment, you must still submit a timely Claim Form.

Objecting to the settlement is not the same as excluding yourself from the settlement, which is described in the previous section. If the Court overrules your objection, you will be bound by its ruling.

### N.   What's the difference between objecting to the settlement and excluding myself from the settlement?

Objecting is simply telling the Court that you disapprove of something about the settlement. To present an objection, you must also participate in the settlement and be eligible to receive a

settlement payment. To be eligible to receive a settlement payment, you must submit a timely and valid Claim Form.

Excluding yourself (opting out) is telling the Court that you do not want to be part of the Class. If you exclude yourself, you have no basis to object because the case no longer affects you. You will not receive any portion of the proceeds of the settlement if you exclude yourself, nor will you release Defendants from any claims.

**O.     If I don't exclude myself, can I sue Jobco for the same thing later?**

No. If you do not exclude yourself, regardless of whether you submit a timely and valid Claim Form to the Claim Administrator, you cannot bring a new lawsuit against Jobo under the NYLL or any New York law governing the payment of wages for hours worked. You may still bring a new lawsuit against Commercial Contracting Services Inc. or Jaime Delahunt under the NYLL or any New York law governing the payment of wages for hours worked.

**P.     If I submit a Claim Form to the Claims Administrator, can I still sue Jobco for unpaid wages?**

No. If you submit a timely and valid Claim Form to the Claims Administrator, you may not sue Jobco for any claims under the FLSA, the NYLL, or any other New York state or local statute, rule, or ordinance, including the Wage Theft Protection Act, governing the payment of wages for hours worked. You may still bring a new lawsuit against Commercial Contracting Services Inc. or Jaime Delahunt for any claims under the FLSA, the NYLL, or any other New York state or local statute, rule, or ordinance, including the Wage Theft Protection Act, governing the payment of wages for hours worked.

**Q.     Do I have a lawyer in this case?**

The Court has decided that Plaintiffs' lawyers, Stevenson Marino LLP, are qualified to represent you and all Class Members as "Class Counsel." You do not owe Class Counsel any money for their services relating to the Lawsuit or the settlement. You do not need to retain your own attorney to participate in the settlement. If you want to be represented by your own lawyer in connection with the settlement, you may hire one at your own expense.

**R.     When and where will the Court decide whether to approve the settlement?**

The Court will hold a final hearing (Fairness Hearing) at **[__] A.M./P.M. on [_____], 2021** in Courtroom 920 at the United States District Court, Eastern District of New York, 100 Federal Plaza, Central Islip, New York 11722. Again, the date and time of this hearing is subject to change by the Court without further notice, except as is posted on the Court's website or docket.

At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court may listen to people who have asked to speak at the hearing. The Court will also consider Class Counsel's request for Service Awards, and the payment of attorneys' fees and costs. After or at the conclusion of the hearing,

the Court will decide whether to approve the settlement and the requested expenses, Service Awards, and fees. It is impossible to predict how long these decisions will take.

### S.    Do I have to attend the final approval hearing?

No. Plaintiffs' attorneys and Jobco's attorneys are responsible for presenting the settlement to the Court at the final approval hearing. You may choose to attend the hearing at your own expense. If you submit a timely, valid objection, the Court will consider it. You do not have to appear at the hearing to support your objection or pay a lawyer to attend the hearing, but you may if you wish.

### T.    Can Jobco retaliate against me for participating in the settlement?

No. Jobco has voluntarily agreed to enter into this proposed settlement. The FLSA and the NYLL prohibit Jobco, or anyone acting on its behalf, from firing you or otherwise retaliating against you because you have participated in this settlement.

### U.    Where can I get more information about the settlement?

The above is a summary of the basic terms of the settlement.  For the precise terms and conditions of the settlement, you may contact the Settlement Claims Administrator Toll-Free at 877-623-2703, or Plaintiffs' counsel, Jeffrey R. Maguire, Esq. of Stevenson Marino LLP at 212-939-7229.

**Please contact the Claims Administrator at 877-623-2703, AND NOT THE COURT, if you have questions regarding this Notice.**

# EXHIBIT C

Arden Claims Service, LLC
Claims Administrator
P.O. Box 1015
Port Washington, New York 11050

## CLAIM FORM AND RELEASE

In order to receive any portion of the settlement funds described in the Notice of Pendency of Class Action Settlement ("Notice") in the case entitled *Pineda v. Jobco Incorporated, et al.*, 1:20-cv-5321-JMA-SIL, you must sign, date, and return this Claim Form and Release to Arden Claims Service, LLC. It must be postmarked or received by _____. [Within 60 days following sending of form]

## CHANGES OF ADDRESS:

It is **your responsibility** to keep a current address on file with the Settlement Claims Administrator. Please make sure to notify Arden Claims Service, LLC of any change of address.

Arden Claims Service, LLC.

_____ [Date]

## CLAIM FORM AND RELEASE

*THIS FORM MUST BE POST-MARKED OR RECEIVED NO LATER THAN* [**60** DAYS FOLLOWING SENDING OF FORM].

| *TO BE FILLED OUT BY CLAIMS ADMIN.:* | *EMPLOYEE-- FILL IN YOUR PHONE NUMBER AND NOTE ANY CHANGES OR CORRECTIONS TO YOUR NAME OR ADDRESS OR SSN/TIN* |
|---|---|
| NAME:_____ | _____ |
| ADDRESS:_____ | _____ |
| CITY, STATE, ZIP:_____ | _____ |
| SOCIAL SECURITY OR TIN NUMBER:_____ | TELEPHONE NUMBER |

1

I affirm that I was employed by Jobco Incorported and/or Commercial Contracting Services, Inc. and/or Jaime Delahunt, and hereby assert a claim under the Fair Labor Standards Act and the New York Labor Law.

I hereby designate the firm of Stevenson Marino LLP to represent me in this action.

My signature below, on my behalf, and on behalf of my respective current, former, and future heirs, spouses, executors, administrators, agents, and attorneys constitutes a full and complete release and discharge of Jobco Incorporated ("Jobco"), and my signature therefore fully, finally, and forever releases and discharges Jobco, its present and former parent companies, subsidiaries, related or affiliated companies, and their respective shareholders, members, partners, officers, directors, employees, members, managers, fiduciaries, trustees, employee benefit plan administrators, agents, attorneys, insurers, successors, and assigns, and all persons or entities acting by, through, under, or in concert with any of them, for acts taken in their capacities as employees or representatives of Jobco (collectively, the "Releasees"), with the exception of Commercial Contracting Services ("CCS") and any of its shareholders, members, partners, officers, directors, employees, members and managers, including Jaime Delahunt, from any all wage and hour claims that were or could have been asserted under the New York Labor Law ("State Law Claims") and its implementing regulations by the Plaintiffs and the Class Members. Released New York State Law Claims include, but are not limited to, all claims under New York law for overtime, regular, and minimum wages, including spread of hours, Wage Theft Prevention Act ("WTPA") penalties, tip credit withholdings, and alleged violations, liquidated damages, and any other related wage and hour claims and/or damages resulting from the alleged failure to pay minimum wages, regular wages, spread of hours, and/or overtime wages, comply with the WTPA, interest on such claims, and attorneys' fees, expenses, and costs related to such claims. Moreover, by signing this form, in addition to the release of all State Law Claims described above, I also fully, finally, and forever release and discharge Releasees from all Fair Labor Standards Act claims, which is defined as all wage and hour claims that were or that could have been asserted against Releasees pursuant to the Fair Labor Standards Act and/or its implementing regulations by or on behalf of the Plaintiffs, Collective Members, Class Members, or myself.

By signing this Consent Form and Release, I hereby consent to become a party in this action and authorize Stevenson Marino LLP to file this Form with the Court.

I declare under penalty of perjury that the above information is correct.

|  |  |
|---|---|
| _____ | _____ |
| DATE | SIGNATURE |

# EXHIBIT D

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JULIO PINEDA, on behalf of himself and all others similarly-situated, <br><br> Plaintiff, <br><br> -against- <br><br> JOBCO INCORPORATED, and COMMERCIAL CONTRACTING SERVICES INC., and JAIME DELAHUNT, individually, <br><br> Defendants. | **Civil Action No.: 20-cv-5321 (JMA)(SIL)** |

## ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT

This matter comes before the Court on the Plaintiff's Motion for Preliminary Approval of the Class Action Settlement ("Motion"), which was filed on consent of Defendant Jobco Incorporated with the Court on May 17, 2021.

Having reviewed the Motion, and all documents and exhibits submitted therewith, this Court **GRANTS** preliminary approval of the settlement pursuant to Fed. R. Civ. P. 23(e) and 29 U.S.C. § 216(b). Accordingly, the Court hereby **ORDERS** as follows:

## PRELIMINARY APPROVAL

(1)     Upon preliminary review, the settlement reached by the parties, as set forth in both the Motion and in the Settlement Agreement, including the allocation formula, attorneys' fees and costs, service awards, and other terms, appears to be fair and reasonable to all involved, suffers from no obvious defects, was reached after arms-length negotiations between the parties, and appears to constitute a reasonable compromise of the claims and defenses in this matter.

(2)     The Parties are directed to perform according to the terms of their Settlement

Agreement, except as expressly indicated otherwise by this Order or other ruling of this Court.

## CERTIFICATION OF SETTLEMENT CLASSES

(3)     The Court hereby certifies, for settlement purposes only, the settlement classes, defined as:

        a.      Under Fed. R. Civ. P. 23(a) and (b)(3), individuals that Plaintiffs have alleged were employed by Defendant as manual laborers that worked overtime hours at any time during the period of July 13, 2018 through September 28, 2018 at the Moxey Rigby Project located in Freeport, New York according to the time records maintained at the jobsite ("New York Class");

        b.      Under 29 U.S.C. § 216(b), individuals that Plaintiffs have alleged were employed by Defendant as manual laborers that worked overtime hours at any time during the period of July 13, 2018 through September 28, 2018 at the Moxey Rigby Project located in Freeport, New York according to the time records maintained at the jobsite, and who timely submit a Claim Form, thereby opting into the settlement of all FLSA claims ("Federal Class").

(4)     Pursuant to the Motion and attachments thereto, upon preliminary review, the Court, for settlement purposes only, finds that:

        a.      The New York Class is sufficiently numerous that joinder of all putative Class Members under the circumstances of this litigation and the settlement thereof is impracticable, therefore satisfying the requirements of Rule 23(a)(1);

        b.      There are questions of law or fact common to the Class Members, therefore satisfying the requirements of Rule 23(a)(2);

        c.      The claims of the Named Plaintiff are typical for settlement purposes of the

claims of the Class Members, satisfying the requirements of Rule 23(a)(3);

       d.     The Named Plaintiff, Julio Pineda, as the representative party, will fairly and adequately protect the interests of each Class Member, therefore satisfying the requirements of Rule 23(a)(4);

       e.     The Named Plaintiff, Julio Pineda, is hereby appointed as Class Representative;

       f.     Stevenson Marino LLP is hereby appointed as Class Counsel;

       g.     Questions of law and fact common to the members of the New York Class, considered in the context of and in light of settlement, predominate over questions affecting only individual members, and a class action is superior to other methods available for the fair and efficient settlement of the controversy, satisfying the requirements of Rule 23(b)(3); and

       h.     For similar reasons to those set forth above, certification of the Federal Class for purposes of 29 U.S.C. § 216(b) is appropriate for settlement purposes only.

(5)    Certification of the New York Class and Federal Class is contingent on and for purposes of settlement only. If this settlement does not become final for any reason, Plaintiffs and Defendant Jobco shall be restored to their respective positions as if no settlement had been reached. Moreover, if this settlement does not become final for any reason, Defendant Jobco shall not have waived any objections that it may have or may have asserted to the certification of any class or collective under Rule 23 and/or decertification under 29 U.S.C. § 216(b), nor shall this Order be deemed to have any preclusive or precedential value with respect to the appropriateness of certification of any such class or final certification of any such collective for any other purposes or in any other circumstances.

## NOTICE TO SETTLEMENT CLASS MEMBERS

(6)     The Parties' proposed Notice of Pendency of Class Action Settlement ("Notice"), attached as Exhibit B to the Declaration of Jeffrey R. Maguire ("Maguire Declaration") submitted with the Motion, and the Claim Form attached as Exhibit C to the Maguire Declaration, are hereby approved, are found to be a reasonable means of providing notice to Class Members under the circumstances, and when completed, shall constitute due and sufficient notice of the settlement to all persons affected by and/or entitled to participate in the settlement, in full compliance with the notice requirements of Rule 23 of the Federal Rules of Civil Procedure and due process of law.

(7)     Class Counsel has designated, Defendant Jobco has consented to, and the Court hereby appoints Arden Claims Service, LLC ("Claims Administrator") to be responsible for communicating with Class Members, disseminating the Notice, accepting and maintaining documents sent by Class Members, including Claim Forms, Opt-out statements, objections, and other documents relating to claims administration, and administering claims for allocation, according to the formula set forth in the Settlement Agreement.

(8)     By no later than _____ (ten (10) days after entry of this Order), Defendant Jobco is to furnish to the Claims Administrator and Class Counsel, in electronic form, with a list of all Class Members, identified by: (i) name; (ii) last known address; (iii) social security/tax identification numbers; and (iv) weeks worked during the time period from July 13, 2018 until September 25, 2018. The list will be contained in a confidential document that Defendant Jobco shall provide to the Claims Administrator and Class Counsel. The list is to be used by the Claims Administrator to effectuate the settlement and may not be disseminated or used for any other purpose.

(9)     The Parties are directed to require the Claims Administrator to send the Notice and

Claim Form referenced in Paragraph (6) above to putative class members by _____ (thirty (30) days after entry of this Order).

(10)     The Parties may make minor, non-substantive revisions to the Notice and Claim Form following the issuance of this Order as they deem appropriate and necessary and insert deadlines and dates consistent with this Order without requiring further Court involvement.

(11)     The cost of notice, and as incurred, processing of claims and related costs, shall be paid from the settlement fund, as provided for in the Settlement Agreement.

### JOINING OR OPTING OUT OF THE SETTLEMENT

(12)     As described in the Notice, any potential Class Member may opt out of the Class by sending via First Class United States Mail, postage prepaid, fax, or email, a written, signed statement to the Claims Administrator that states that he or she is opting out of the settlement, and that includes his or her name, address, and telephone number, and the following statement: "I opt out of the Jobco wage and hour settlement" to be postmarked or received by on or before _____ (sixty (60) days after notices are mailed as referenced in Paragraph (9) above).  Individuals who request exclusion shall not be entitled to share the benefits of the settlement, nor be bound by any judgment in connection with this litigation, whether favorable or adverse.

(13)     Any Class Member who does not properly and timely mail a letter requesting to be excluded as set forth above shall be included in the New York Class, and shall be bound by all of the terms and provisions of the Settlement Agreement pertaining to the released claims as defined in the Settlement Agreement, including the release of such claims, whether or not such Class Member has objected to the Settlement Agreement and whether or not such Class Member participates in the settlement by negotiating his/her check.

(14)     As also described in the Notice, any potential Class Member may object to the settlement by sending via First Class United States Mail, postage prepaid, fax, or email, a written and signed statement to the Claims Administrator that refers to the "Jobco Settlement," states the name, address, telephone number, and provides a written statement that includes all reasons for the objection with any supporting documentation. The written objection must also include the following statement: "The information contained in this statement is truthful and accurate to the best of my knowledge." Any objection must be postmarked or received by on or before _____ (sixty (60) days after notices are mailed as referenced in Paragraph (9) above).  Any individual who wishes to object to the settlement must still submit a Claim Form to receive money as part of the settlement, as described in Paragraph (15), below.

(15)     As described in the Notice, any potential Class Member may participate in the settlement by returning to the Claims Administrator his or her executed Claim Form, which must be postmarked or received by on or before _____ (sixty (60) days after notices are mailed as referenced in Paragraph (9) above).

(16)     Any Class Member who timely executes and returns his or her Claim Form shall be included in the New York *and* Federal Class and shall be bound by all of the terms and provisions of the Settlement Agreement pertaining to the released claims as defined therein, including the release of such claims, whether or not such individual has objected to the Settlement Agreement, and whether or not such individual timely negotiates his/her check.

## **FAIRNESS HEARING AND FINAL APPROVAL**

(17)     Class Counsel shall file Plaintiffs' Motion for Final Approval by on or before _____ (date no sooner than thirty (30) days after deadline for submission of Claim Forms, opt-out statements, and/or objections as referenced in Paragraphs (12), (13), (14),

(15), (16) and (19)).

(18)    The Court will hold a Fairness Hearing on the above-referenced settlement on _____ (date on or about thirty (30) days after the Motion deadline referenced in Paragraph (17) above) at _____ (time), in Courtroom 920 at the United States District Court, Eastern District of New York, 100 Federal Plaza, Central Islip, New York 11722.

(19)    Any Class Member who has not filed an Opt-out Statement may appear at the Fairness Hearing in person or by counsel and may be heard, either in support of or in opposition to the fairness, reasonableness, and adequacy of the Settlement Agreement, the allocation formula, or Class Counsel's request for attorneys' fees and service awards, provided that such person, individually or through counsel, sends his/her written objection(s) to the Administrator, through first class mail, fax, or email, postmarked or received by the Claims Administrator by no later than _____ (sixty (60) days after the initial mailing of Notice to the Class referenced in Paragraph (9) above). Any individual who wishes to appear at the hearing and be heard must affirmatively state so in his/her objection. Any individual who wishes to appear at the hearing and be heard through counsel must also affirmatively state so in his/her objection, and must have his/her counsel file a notice of appearance by no later than _____ (fourteen (14) days prior to the date of the fairness hearing).

(20)    Any Class Member who does not make his/her objection in the manner and by the time provided herein shall be deemed to have waived such objection and shall be forever foreclosed from making any objection to the fairness or adequacy of the proposed settlement as set forth in the Settlement Agreement or to the award of attorneys' fees to Class Counsel or service awards to any Plaintiff, unless otherwise ordered by the Court.

(21)    The Claims Administrator will stamp the date received on the original and send copies of each Claim Form, objection, and/or opt-out statement, with supporting documents, to Class Counsel and Defendant Jobco's Counsel by email, to be delivered no later than _____ (three (3) business <u>following</u> the sixty (60) day submission period set forth in Paragraph twelve (12), and as set forth in Paragraphs (13), (14), and (15)).

(22)    The date, time, and location of the Fairness Hearing shall be set forth in the Notice but shall be subject to change by the Court without further notice to the Class Members other than that which may be posted at the Court or on the Court's website or docket. The Court may approve the Settlement Agreement, if appropriate, without further notice to the Class Members.

## TERMINATION OF SETTLEMENT AND FUTURE RELIANCE

(23)    In the event that the settlement is terminated in accordance with the provisions of the Settlement Agreement, the settlement and all proceedings had in connection therewith shall be null and void, except to the extent such nullification and voidance would be contrary to the Settlement Agreement, and without prejudice to the *status quo ante* rights of Plaintiffs, Defendant Jobco, and the members of the Settlement Classes. In the event that any party terminates the Settlement Agreement, the terminating party shall be responsible for paying all of the Claims Administrator's fees incurred or that are otherwise owed to the Claims Administrator, subject to the terms agreed to by the Parties in the Settlement Agreement.

(24)    In accordance with the Settlement Agreement, neither the Settlement Agreement itself, nor any of the negotiations, statements, and proceedings in connection therewith, including the Court's entry of this Order as well as any Final Order regarding the settlement, shall be construed or deemed to be evidence of:

a.      An admission or concession by Defendant Jobco, any other Releasees (as

that term is defined in the Settlement Agreement), Plaintiffs, any member of the settlement classes, or any other person regarding the truth or falsity of any claim or allegation in this litigation;

b.      An admission by Defendant Jobco or any other Releasees of liability, fault, or wrongdoing; or

c.      An opinion of this Court as to the appropriateness of class action certification under Fed. R. Civ. P. 23 and/or FLSA final collective action certification under 29 U.S.C. § 216(b) outside the particular circumstances described herein.

**SO ORDERED** this _____ day of _____, 2021.

_____
THE HONORABLE JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE

# EXHIBIT M

Case 2:20-cv-03834-MKB-JMW   Document 26-1   Filed 04/11/22   Page 210 of 307 PageID #: 937

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
-----------------------------------------------------------------------x

GERSON VASQUEZ,

                                      Plaintiff,

                    -against-

MOXEY RIGBY LLC; G&G MOXEY RIGBY LLC;
MOXEY RIGBY DEVELOPER LLC; G&G MOXEY
RIGBY DEVELOPER LLC; MOXEY RIGBY
MANAGERS LLC; JOBCO INC.; MDC HOME
IMPROVEMENTS, INC.; K-SQUARE DEVELOPERS,
INC.; COMMERCIAL CONTRACTING SERVICES INC.;
FREEPORT AFFORDABLE HOUSING
DEVELOPMENT FUND CORP.; THE FREEPORT
HOUSING AUTHORITY; THE INCORPORATED
VILLAGE OF FREEPORT; and THE COUNTY OF
NASSAU,

                                   Defendants.
-----------------------------------------------------------------------X

## SUMMONS

Index No.:

Date Filed:

TO THE ABOVE-NAMED DEFENDANTS:

      YOU ARE HEREBY SUMMONED to answer the Complaint in this action, and to serve a copy of your Answer, or if the Complaint is not served with this Summons, to serve a Notice of Appearance on the their attorney within twenty days after the service of this Summons exclusive of the day of service, where service is made by delivery upon you personally within the state, or within thirty days after completion of service where service is made in any other manner. In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

      This basis of venue is the residence of Defendant, THE FREEPORT HOUSING AUTHORITY.

Case 2:20-cv-03834-MKB-JMW Document 26-1 Filed 04/11/22 Page 211 of 307 PageID #: 938

Defendant, THE FREEPORT HOUSING AUTHORITY, resides and maintains its principal office at 240 South Main Street, Freeport, NY 11520.

Dated: New York, New York
May 3, 2019

Yours, etc.,

_____
Ernest N. Reece, Esq.
**MILLER, LEIBY & ASSOCIATES, P.C.**
*Attorneys for Plaintiff*
*Gerson Vasquez*
32 Broadway, 13th Floor
New York, NY 10004
(212) 227-4200

Defendants' Addresses:

Moxey Rigby LLC
*Pro Se*
50 Jericho Quadrangle, Suite 200
Jericho, NY 11753

G&G Moxey Rigby LLC
*Pro Se*
50 Jericho Quadrangle, Suite 200
Jericho, NY 11753

Moxey Rigby Developer LLC
*Pro Se*
50 Jericho Quadrangle, Suite 200
Jericho, NY 11753

G&G Moxey Rigby Developer LLC
*Pro Se*
50 Jericho Quadrangle, Suite 200
Jericho, NY 11753

Moxey Rigby Managers LLC
*Pro Se*
50 Jericho Quadrangle, Suite 200
Jericho, NY 11753

Case 2:20-cv-03834-MKB-JMW   Document 26-1   Filed 04/11/22   Page 212 of 307 PageID #: 939

Jobco Inc.
*Pro Se*
277 Northern Blvd, Suite 203
Great Neck, NY  11021

MDC Home Improvements, Inc.
*Pro Se*
17B Seaman Avenue
Bethpage, NY  11714

MDC Home Improvements, Inc.
*Pro Se*
13 Baldwin Place
Bethpage, NY  11714-3703

MDC Home Improvements, Inc.
*Pro Se*
57 Brenner Avenue
Bethpage, NY  11714

K-Square Developers, Inc.
*Pro Se*
118 49th Street
Brooklyn, NY  11232

Commercial Contracting Services Inc.
*Pro Se*
15 Sherman Avenue
Bethpage, NY  11714

Freeport Affordable Housing Development Fund Corp.
*Pro Se*
c/o Freeport Housing Authority
240 South Main Street
Freeport, NY 11520

The Freeport Housing Authority
*Pro Se*
240 South Main Street
Freeport, NY  11520

The Incorporated Village of Freeport
*Pro Se*

FILED: NASSAU COUNTY CLERK 05/03/2019 02:49 PM INDEX NO. 606124/2019
NYSCEF DOC. NO. 1 RECEIVED NYSCEF: 05/03/2019

46 North Ocean Avenue
Freeport, NY 11520

County of Nassau
*Pro Se*
240 Old Country Road
Mineola, NY 11501

4 / 4

Case 2:20-cv-03834-MKB-JMW   Document 26-1   Filed 04/11/22   Page 214 of 307 PageID #: 941

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
------------------------------------------------------------------------X

GERSON VASQUEZ,

> Plaintiff,

-against-

MOXEY RIGBY LLC; G&G MOXEY RIGBY LLC; MOXEY RIGBY DEVELOPER LLC; G&G MOXEY RIGBY DEVELOPER LLC; MOXEY RIGBY MANAGERS LLC; JOBCO INC.; MDC HOME IMPROVEMENTS, INC.; K-SQUARE DEVELOPERS, INC.; COMMERCIAL CONTRACTING SERVICES INC.; FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP.; THE FREEPORT HOUSING AUTHORITY; THE INCORPORATED VILLAGE OF FREEPORT; and THE COUNTY OF NASSAU,

> Defendants.

------------------------------------------------------------------------X

**COMPLAINT**

Index No.:

Date Filed:

**JURY TRIAL DEMANDED**

GERSON VASQUEZ, by his attorneys, MILLER, LEIBY & ASSOCIATES, P.C., complaining of the Defendants herein, respectfully show to the Court, and allege as follows:

<u>NATURE OF THE ACTION</u>

1.      This is an action to recover money damages arising out of negligence and violations of Labor Law §§ 200, 240(1), and 241(6) resulting in personal injuries to Plaintiff, GERSON VASQUEZ, while at the interior of the first floor of the building(s) under the construction/replacement/installation project occurring at, within and about the northernmost of the three buildings located at 12 Buffalo Avenue/195 East Merrick Road in Freeport, New York 11520 (hereinafter collectively referred to as "the Subject Location").

1 / 46

Case 2:20-cv-03834-MKB-JMW   Document 26-1   Filed 04/11/22   Page 215 of 307 PageID #:
942

## JURISDICTION AND VENUE

2.      Defendant, THE FREEPORT HOUSING AUTHORITY, resides and maintains its

principal office at 240 South Main Street, Freeport, NY  11520.

3.      This action falls within one or more of the exemptions set forth in N.Y. Civ. Proc.

L. & R. § 1602.

## JURY DEMAND

4.      Plaintiff demands a trial by jury in this action.

## NOTICE OF CLAIM

5.      On or about October 9, 2018, Plaintiff served upon, presented, and filed with

Defendant, THE COUNTY OF NASSAU, a Notice of Claim in writing.

6.      Defendant, THE COUNTY OF NASSAU, was provided with the opportunity to

hold a hearing pursuant to General Municipal Law § 50-h on or about March 15, 2019.

7.      Defendant, THE COUNTY OF NASSAU, has refused or neglected to make any

adjustment or payment.

8.      On or about October 10, 2018, Plaintiff served upon, presented, and filed with

Defendant, THE INCORPORATED VILLAGE OF FREEPORT, a Notice of Claim in writing.

9.      Defendant, THE INCORPORATED VILLAGE OF FREEPORT, was provided

with the opportunity to hold a hearing pursuant to General Municipal Law § 50-h on or about

December 10, 2018.

Case 2:20-cv-03834-MKB-JMW Document 26-1 Filed 04/11/22 Page 216 of 307 PageID #: 943

10.     Defendant, THE INCORPORATED VILLAGE OF FREEPORT, has refused or neglected to make any adjustment or payment.

11.     On or about October 11, 2018, Plaintiff served upon, presented, and filed with Defendant, THE FREEPORT HOUSING AUTHORITY, a Notice of Claim in writing.

12.     Defendant, THE FREEPORT HOUSING AUTHORITY, was provided with the opportunity to hold a hearing pursuant to General Municipal Law § 50-h on or about December 10, 2018.

13.     Defendant, THE FREEPORT HOUSING AUTHORITY, has refused or neglected to make any adjustment or payment.

AS AND FOR A FIRST CAUSE OF ACTION
ON BEHALF OF PLAINTIFF, GERSON VASQUEZ

14.     Plaintiff, GERSON VASQUEZ, repeats and re-alleges each and every preceding allegation as if fully set forth herein.

15.     Plaintiff, GERSON VASQUEZ is a resident of the County of Bronx, State of New York.

16.     Defendant, MOXEY RIGBY LLC, is a domestic limited liability company duly organized and existing pursuant to the laws of the State of New York.

17.     Defendant, G&G MOXEY RIGBY LLC, is a domestic limited liability company duly organized and existing pursuant to the laws of the State of New York.

18.     Defendant, MOXEY RIGBY DEVELOPER LLC, is a domestic limited liability company duly organized and existing pursuant to the laws of the State of New York.

3 / 46

19.     Defendant, G&G MOXEY RIGBY DEVELOPER LLC, is a domestic limited liability company duly organized and existing pursuant to the laws of the State of New York.

20.     Defendant, MOXEY RIGBY MANAGERS LLC, is a domestic limited liability company duly organized and existing pursuant to the laws of the State of New York.

21.     Defendant, JOBCO INC., is a domestic business corporation authorized to do business in the State of New York.

22.     Defendant, JOBCO INC., is a corporation organized under the laws of the State of New York.

23.     Defendant, JOBCO INC., is a duly authorized corporation, duly organized and existing under and by virtue of the laws of the State of New York.

24.     Defendant, JOBCO INC., is a duly authorized domestic corporation doing business in the State of New York.

25.     Defendant, JOBCO INC., is a duly organized foreign corporation authorized to do business in the State of New York.

26.     Defendant, JOBCO INC., is a duly organized foreign corporation transacting business in the State of New York.

27.     Defendant, JOBCO INC., does and/or solicits business within the State of New York.

28.     Defendant, JOBCO INC., derives substantial revenues from goods used or consumed or services rendered in the State of New York.

29.     Defendant, JOBCO INC., is a duly organized partnership existing and doing business under the laws of the State of New York.

Case 2:20-cv-03834-MKB-JMW   Document 26-1   Filed 04/11/22   Page 218 of 307 PageID #: 945

30.     Defendant, JOBCO INC., is a duly organized proprietorship existing and doing business under the laws of the State of New York.

31.     Defendant, MDC HOME IMPROVEMENTS, INC., is a domestic business corporation duly organized and existing pursuant to the laws of the State of New York.

32.     Defendant, K-SQUARE DEVELOPERS, INC., is a domestic business corporation duly organized and existing pursuant to the laws of the State of New York.

33.     Defendant, COMMERCIAL CONTRACTING SERVICES INC., is a domestic business corporation duly organized and existing pursuant to the laws of the State of New York.

34.     Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., is a domestic not-for-profit corporation duly organized and existing pursuant to the laws of the State of New York.

35.     Defendant, THE FREEPORT HOUSING AUTHORITY, is a municipal organization organized under the laws of the State of New York.

36.     Defendant, THE FREEPORT HOUSING AUTHORITY, is a domestic municipal public authority, department, or agency of Defendant, THE INCORPORATED VILLAGE OF FREEPORT.

37.     Defendant, THE FREEPORT HOUSING AUTHORITY, is a domestic municipal public authority, department, or agency of Defendant, THE COUNTY OF NASSAU.

38.     Defendant, THE INCORPORATED VILLAGE OF FREEPORT, is a municipal organization organized under the laws of the State of New York.

39.     Defendant, THE INCORPORATED VILLAGE OF FREEPORT, is a domestic municipal public authority, department, or agency of Defendant, THE COUNTY OF NASSAU.

5 / 46

Case 2:20-cv-03834-MKB-JMW   Document 26-1   Filed 04/11/22   Page 219 of 307 PageID #: 946

40.     Defendant, THE COUNTY OF NASSAU, is a municipal organization organized under the laws of the State of New York.

41.     That at all times hereinafter mentioned, there existed a premises located at 12 Buffalo Avenue/195 East Merrick Road in Freeport, New York 11520 (hereinafter referred to as "the premises").

42.     Defendant, MOXEY RIGBY LLC, owned the premises.

43.     Defendant, MOXEY RIGBY LLC, operated the premises.

44.     Defendant, MOXEY RIGBY LLC, maintained the premises.

45.     Defendant, MOXEY RIGBY LLC, managed the premises.

46.     Defendant, MOXEY RIGBY LLC, supervised the premises.

47.     Defendant, MOXEY RIGBY LLC, controlled the premises.

48.     Defendant, MOXEY RIGBY LLC, managed, supervised, directed and controlled the work being performed at the premises.

49.     On or before August 10, 2018, Defendant, MOXEY RIGBY LLC, was retained to perform construction, excavation, demolition, repair or alteration work at the premises.

50.     Defendant, MOXEY RIGBY LLC, performed construction, excavation, demolition, repair and/or alteration work on the premises.

51.     Defendant, MOXEY RIGBY LLC, performed construction, excavation, demolition, repair and/or alteration work on the premises, pursuant to a contract.

52.     On August 10, 2018, Defendant, MOXEY RIGBY LLC, managed, supervised, directed and controlled the construction, renovation, alteration and/or repair work at the premises.

53.     On August 10, 2018, Defendant, MOXEY RIGBY LLC, was the general contractor

6 / 46

Case 2:20-cv-03834-MKB-JMW   Document 26-1   Filed 04/11/22   Page 220 of 307 PageID #: 947

for the construction work at the premises.

54.   On or before August 10, 2018, Defendant, MOXEY RIGBY LLC, retained contractors to perform construction, excavation, demolition, repair or alteration work at the premises.

55.   On or before August 10, 2018, Defendant, MOXEY RIGBY LLC, retained Defendant, G&G MOXEY RIGBY LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

56.   On or before August 10, 2018, Defendant, MOXEY RIGBY LLC, retained Defendant, MOXEY RIGBY DEVELOPER LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

57.   On or before August 10, 2018, Defendant, MOXEY RIGBY LLC, retained Defendant, G&G MOXEY RIGBY DEVELOPER LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

58.   On or before August 10, 2018, Defendant, MOXEY RIGBY LLC, retained Defendant, MOXEY RIGBY MANAGERS LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

59.   On or before August 10, 2018, Defendant, MOXEY RIGBY LLC, retained Defendant, JOBCO INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

60.   On or before August 10, 2018, Defendant, MOXEY RIGBY LLC, retained Defendant, MDC HOME IMPROVEMENTS, INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

Case 2:20-cv-03834-MKB-JMW  Document 26-1  Filed 04/11/22  Page 221 of 307 PageID #: 948

61.     On or before August 10, 2018, Defendant, MOXEY RIGBY LLC, retained Defendant, K-SQUARE DEVELOPERS, INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

62.     On or before August 10, 2018, Defendant, MOXEY RIGBY LLC, retained Defendant, COMMERCIAL CONTRACTING SERVICES INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

63.     On or before August 10, 2018, Defendant, MOXEY RIGBY LLC, retained Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., to perform construction, excavation, demolition, repair or alteration work at the premises.

64.     On or before August 10, 2018, Defendant, MOXEY RIGBY LLC, retained Defendant, THE FREEPORT HOUSING AUTHORITY, to perform construction, excavation, demolition, repair or alteration work at the premises.

65.     On or before August 10, 2018, Defendant, MOXEY RIGBY LLC, retained Defendant, THE INCORPORATED VILLAGE OF FREEPORT, to perform construction, excavation, demolition, repair or alteration work at the premises.

66.     On or before August 10, 2018, Defendant, MOXEY RIGBY LLC, retained Defendant, THE COUNTY OF NASSAU, to perform construction, excavation, demolition, repair or alteration work at the premises.

67.     Defendant, G&G MOXEY RIGBY LLC, owned the premises.

68.     Defendant, G&G MOXEY RIGBY LLC, operated the premises.

69.     Defendant, G&G MOXEY RIGBY LLC, maintained the premises.

70.     Defendant, G&G MOXEY RIGBY LLC, managed the premises.

Case 2:20-cv-03834-MKB-JMW   Document 26-1   Filed 04/11/22   Page 222 of 307 PageID #: 949

71.     Defendant, G&G MOXEY RIGBY LLC, supervised the premises.

72.     Defendant, G&G MOXEY RIGBY LLC, controlled the premises.

73.     Defendant, G&G MOXEY RIGBY LLC, managed, supervised, directed and controlled the work being performed at the premises.

74.     On or before August 10, 2018, Defendant, G&G MOXEY RIGBY LLC, was retained to perform construction, excavation, demolition, repair or alteration work at the premises.

75.     Defendant, G&G MOXEY RIGBY LLC, performed construction, excavation, demolition, repair and/or alteration work on the premises.

76.     Defendant, G&G MOXEY RIGBY LLC, performed construction, excavation, demolition, repair and/or alteration work on the premises, pursuant to a contract.

77.     On August 10, 2018, Defendant, G&G MOXEY RIGBY LLC, managed, supervised, directed and controlled the construction, renovation, alteration and/or repair work at the premises.

78.     On August 10, 2018, Defendant, G&G MOXEY RIGBY LLC, was the general contractor for the construction work at the premises.

79.     On or before August 10, 2018, Defendant, G&G MOXEY RIGBY LLC, retained contractors to perform construction, excavation, demolition, repair or alteration work at the premises.

80.     On or before August 10, 2018, Defendant, G&G MOXEY RIGBY LLC, retained Defendant, MOXEY RIGBY LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

Case 2:20-cv-03834-MKB-JMW Document 26-1 Filed 04/11/22 Page 223 of 307 PageID #: 950

81.     On or before August 10, 2018, Defendant, G&G MOXEY RIGBY LLC, retained Defendant, MOXEY RIGBY DEVELOPER LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

82.     On or before August 10, 2018, Defendant, G&G MOXEY RIGBY LLC, retained Defendant, G&G MOXEY RIGBY DEVELOPER LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

83.     On or before August 10, 2018, Defendant, G&G MOXEY RIGBY LLC, retained Defendant, MOXEY RIGBY MANAGERS LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

84.     On or before August 10, 2018, Defendant, G&G MOXEY RIGBY LLC, retained Defendant, JOBCO INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

85.     On or before August 10, 2018, Defendant, G&G MOXEY RIGBY LLC, retained Defendant, MDC HOME IMPROVEMENTS, INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

86.     On or before August 10, 2018, Defendant, G&G MOXEY RIGBY LLC, retained Defendant, K-SQUARE DEVELOPERS, INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

87.     On or before August 10, 2018, Defendant, G&G MOXEY RIGBY LLC, retained Defendant, COMMERCIAL CONTRACTING SERVICES INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

88.     On or before August 10, 2018, Defendant, G&G MOXEY RIGBY LLC, retained

Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., to

perform construction, excavation, demolition, repair or alteration work at the premises.

89.     On or before August 10, 2018, Defendant, G&G MOXEY RIGBY LLC, retained

Defendant, THE FREEPORT HOUSING AUTHORITY, to perform construction, excavation,

demolition, repair or alteration work at the premises.

90.     On or before August 10, 2018, Defendant, G&G MOXEY RIGBY LLC, retained

Defendant, THE INCORPORATED VILLAGE OF FREEPORT, to perform construction,

excavation, demolition, repair or alteration work at the premises.

91.     On or before August 10, 2018, Defendant, G&G MOXEY RIGBY LLC, retained

Defendant, THE COUNTY OF NASSAU, to perform construction, excavation, demolition, repair

or alteration work at the premises.

92.     Defendant, MOXEY RIGBY DEVELOPER LLC, owned the premises.

93.     Defendant, MOXEY RIGBY DEVELOPER LLC, operated the premises.

94.     Defendant, MOXEY RIGBY DEVELOPER LLC, maintained the premises.

95.     Defendant, MOXEY RIGBY DEVELOPER LLC, managed the premises.

96.     Defendant, MOXEY RIGBY DEVELOPER LLC, supervised the premises.

97.     Defendant, MOXEY RIGBY DEVELOPER LLC, controlled the premises.

98.     Defendant, MOXEY RIGBY DEVELOPER LLC, managed, supervised, directed

and controlled the work being performed at the premises.

99.     On or before August 10, 2018, Defendant, MOXEY RIGBY DEVELOPER LLC,

was retained to perform construction, excavation, demolition, repair or alteration work at the

Case 2:20-cv-03834-MKB-JMW Document 26-1 Filed 04/11/22 Page 225 of 307 PageID #: 952

premises.

100. Defendant, MOXEY RIGBY DEVELOPER LLC, performed construction, excavation, demolition, repair and/or alteration work on the premises.

101. Defendant, MOXEY RIGBY DEVELOPER LLC, performed construction, excavation, demolition, repair and/or alteration work on the premises, pursuant to a contract.

102. On August 10, 2018, Defendant, MOXEY RIGBY DEVELOPER LLC, managed, supervised, directed and controlled the construction, renovation, alteration and/or repair work at the premises.

103. On August 10, 2018, Defendant, MOXEY RIGBY DEVELOPER LLC, was the general contractor for the construction work at the premises.

104. On or before August 10, 2018, Defendant, MOXEY RIGBY DEVELOPER LLC, retained contractors to perform construction, excavation, demolition, repair or alteration work at the premises.

105. On or before August 10, 2018, Defendant, MOXEY RIGBY DEVELOPER LLC, retained Defendant, MOXEY RIGBY LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

106. On or before August 10, 2018, Defendant, MOXEY RIGBY DEVELOPER LLC, retained Defendant, G&G MOXEY RIGBY LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

107. On or before August 10, 2018, Defendant, MOXEY RIGBY DEVELOPER LLC, retained Defendant, G&G MOXEY RIGBY DEVELOPER LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

108.    On or before August 10, 2018, Defendant, MOXEY RIGBY DEVELOPER LLC, retained Defendant, MOXEY RIGBY MANAGERS LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

109.    On or before August 10, 2018, Defendant, MOXEY RIGBY DEVELOPER LLC, retained Defendant, JOBCO INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

110.    On or before August 10, 2018, Defendant, MOXEY RIGBY DEVELOPER LLC, retained Defendant, MDC HOME IMPROVEMENTS, INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

111.    On or before August 10, 2018, Defendant, MOXEY RIGBY DEVELOPER LLC, retained Defendant, K-SQUARE DEVELOPERS, INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

112.    On or before August 10, 2018, Defendant, MOXEY RIGBY DEVELOPER LLC, retained Defendant, COMMERCIAL CONTRACTING SERVICES INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

113.    On or before August 10, 2018, Defendant, MOXEY RIGBY DEVELOPER LLC, retained Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., to perform construction, excavation, demolition, repair or alteration work at the premises.

114.    On or before August 10, 2018, Defendant, MOXEY RIGBY DEVELOPER LLC, retained Defendant, THE FREEPORT HOUSING AUTHORITY, to perform construction, excavation, demolition, repair or alteration work at the premises.

115.    On or before August 10, 2018, Defendant, MOXEY RIGBY DEVELOPER LLC, retained Defendant, THE INCORPORATED VILLAGE OF FREEPORT, to perform construction, excavation, demolition, repair or alteration work at the premises.

116.    On or before August 10, 2018, Defendant, MOXEY RIGBY DEVELOPER LLC, retained Defendant, THE COUNTY OF NASSAU, to perform construction, excavation, demolition, repair or alteration work at the premises.

117.    Defendant, G&G MOXEY RIGBY DEVELOPER LLC, owned the premises.

118.    Defendant, G&G MOXEY RIGBY DEVELOPER LLC, operated the premises.

119.    Defendant, G&G MOXEY RIGBY DEVELOPER LLC, maintained the premises.

120.    Defendant, G&G MOXEY RIGBY DEVELOPER LLC, managed the premises.

121.    Defendant, G&G MOXEY RIGBY DEVELOPER LLC, supervised the premises.

122.    Defendant, G&G MOXEY RIGBY DEVELOPER LLC, controlled the premises.

123.    Defendant, G&G MOXEY RIGBY DEVELOPER LLC, managed, supervised, directed and controlled the work being performed at the premises.

124.    On or before August 10, 2018, Defendant, G&G MOXEY RIGBY DEVELOPER LLC, was retained to perform construction, excavation, demolition, repair or alteration work at the premises.

125.    Defendant, G&G MOXEY RIGBY DEVELOPER LLC, performed construction, excavation, demolition, repair and/or alteration work on the premises.

126.    Defendant, G&G MOXEY RIGBY DEVELOPER LLC, performed construction, excavation, demolition, repair and/or alteration work on the premises, pursuant to a contract.

127.    On August 10, 2018, Defendant, G&G MOXEY RIGBY DEVELOPER LLC,

Case 2:20-cv-03834-MKB-JMW  Document 26-1  Filed 04/11/22  Page 228 of 307 PageID #: 955

managed, supervised, directed and controlled the construction, renovation, alteration and/or repair work at the premises.

128.    On August 10, 2018, Defendant, G&G MOXEY RIGBY DEVELOPER LLC, was the general contractor for the construction work at the premises.

129.    On or before August 10, 2018, Defendant, G&G MOXEY RIGBY DEVELOPER LLC, retained contractors to perform construction, excavation, demolition, repair or alteration work at the premises.

130.    On or before August 10, 2018, Defendant, G&G MOXEY RIGBY DEVELOPER LLC, retained Defendant, MOXEY RIGBY LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

131.    On or before August 10, 2018, Defendant, G&G MOXEY RIGBY DEVELOPER LLC, retained Defendant, G&G MOXEY RIGBY LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

132.    On or before August 10, 2018, Defendant, G&G MOXEY RIGBY DEVELOPER LLC, retained Defendant, MOXEY RIGBY DEVELOPER LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

133.    On or before August 10, 2018, Defendant, G&G MOXEY RIGBY DEVELOPER LLC, retained Defendant, MOXEY RIGBY MANAGERS LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

134.    On or before August 10, 2018, Defendant, G&G MOXEY RIGBY DEVELOPER LLC, retained Defendant, JOBCO INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

15 / 46

Case 2:20-cv-03834-MKB-JMW Document 26-1 Filed 04/11/22 Page 229 of 307 PageID #: 956

135.    On or before August 10, 2018, Defendant, G&G MOXEY RIGBY DEVELOPER LLC, retained Defendant, MDC HOME IMPROVEMENTS, INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

136.    On or before August 10, 2018, Defendant, G&G MOXEY RIGBY DEVELOPER LLC, retained Defendant, K-SQUARE DEVELOPERS, INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

137.    On or before August 10, 2018, Defendant, G&G MOXEY RIGBY DEVELOPER LLC, retained Defendant, COMMERCIAL CONTRACTING SERVICES INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

138.    On or before August 10, 2018, Defendant, G&G MOXEY RIGBY DEVELOPER LLC, retained Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., to perform construction, excavation, demolition, repair or alteration work at the premises.

139.    On or before August 10, 2018, Defendant, G&G MOXEY RIGBY DEVELOPER LLC, retained Defendant, THE FREEPORT HOUSING AUTHORITY, to perform construction, excavation, demolition, repair or alteration work at the premises.

140.    On or before August 10, 2018, Defendant, G&G MOXEY RIGBY DEVELOPER LLC, retained Defendant, THE INCORPORATED VILLAGE OF FREEPORT, to perform construction, excavation, demolition, repair or alteration work at the premises.

141.    On or before August 10, 2018, Defendant, G&G MOXEY RIGBY DEVELOPER LLC, retained Defendant, THE COUNTY OF NASSAU, to perform construction, excavation, demolition, repair or alteration work at the premises.

142.    Defendant, MOXEY RIGBY MANAGERS LLC, owned the premises.

16 / 46

Case 2:20-cv-03834-MKB-JMW Document 26-1 Filed 04/11/22 Page 230 of 307 PageID #: 957

143.    Defendant, MOXEY RIGBY MANAGERS LLC, operated the premises.

144.    Defendant, MOXEY RIGBY MANAGERS LLC, maintained the premises.

145.    Defendant, MOXEY RIGBY MANAGERS LLC, managed the premises.

146.    Defendant, MOXEY RIGBY MANAGERS LLC, supervised the premises.

147.    Defendant, MOXEY RIGBY MANAGERS LLC, controlled the premises.

148.    Defendant, MOXEY RIGBY MANAGERS LLC, managed, supervised, directed and controlled the work being performed at the premises.

149.    On or before August 10, 2018, Defendant, MOXEY RIGBY MANAGERS LLC, was retained to perform construction, excavation, demolition, repair or alteration work at the premises.

150.    Defendant, MOXEY RIGBY MANAGERS LLC, performed construction, excavation, demolition, repair and/or alteration work on the premises.

151.    Defendant, MOXEY RIGBY MANAGERS LLC, performed construction, excavation, demolition, repair and/or alteration work on the premises, pursuant to a contract.

152.    On August 10, 2018, Defendant, MOXEY RIGBY MANAGERS LLC, managed, supervised, directed and controlled the construction, renovation, alteration and/or repair work at the premises.

153.    On August 10, 2018, Defendant, MOXEY RIGBY MANAGERS LLC, was the general contractor for the construction work at the premises.

154.    On or before August 10, 2018, Defendant, MOXEY RIGBY MANAGERS LLC, retained contractors to perform construction, excavation, demolition, repair or alteration work at the premises.

Case 2:20-cv-03834-MKB-JMW  Document 26-1  Filed 04/11/22  Page 231 of 307 PageID #: 958

155.    On or before August 10, 2018, Defendant, MOXEY RIGBY MANAGERS LLC, retained Defendant, MOXEY RIGBY LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

156.    On or before August 10, 2018, Defendant, MOXEY RIGBY MANAGERS LLC, retained Defendant, G&G MOXEY RIGBY LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

157.    On or before August 10, 2018, Defendant, MOXEY RIGBY MANAGERS LLC, retained Defendant, MOXEY RIGBY DEVELOPER LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

158.    On or before August 10, 2018, Defendant, MOXEY RIGBY MANAGERS LLC, retained Defendant, G&G MOXEY RIGBY DEVELOPER LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

159.    On or before August 10, 2018, Defendant, MOXEY RIGBY MANAGERS LLC, retained Defendant, JOBCO INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

160.    On or before August 10, 2018, Defendant, MOXEY RIGBY MANAGERS LLC, retained Defendant, MDC HOME IMPROVEMENTS, INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

161.    On or before August 10, 2018, Defendant, MOXEY RIGBY MANAGERS LLC, retained Defendant, K-SQUARE DEVELOPERS, INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

162.     On or before August 10, 2018, Defendant, MOXEY RIGBY MANAGERS LLC, retained Defendant, COMMERCIAL CONTRACTING SERVICES INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

163.     On or before August 10, 2018, Defendant, MOXEY RIGBY MANAGERS LLC, retained Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., to perform construction, excavation, demolition, repair or alteration work at the premises.

164.     On or before August 10, 2018, Defendant, MOXEY RIGBY MANAGERS LLC, retained Defendant, THE FREEPORT HOUSING AUTHORITY, to perform construction, excavation, demolition, repair or alteration work at the premises.

165.     On or before August 10, 2018, Defendant, MOXEY RIGBY MANAGERS LLC, retained Defendant, THE INCORPORATED VILLAGE OF FREEPORT, to perform construction, excavation, demolition, repair or alteration work at the premises.

166.     On or before August 10, 2018, Defendant, MOXEY RIGBY MANAGERS LLC, retained Defendant, THE COUNTY OF NASSAU, to perform construction, excavation, demolition, repair or alteration work at the premises.

167.     Defendant, JOBCO INC., owned the premises.

168.     Defendant, JOBCO INC., operated the premises.

169.     Defendant, JOBCO INC., maintained the premises.

170.     Defendant, JOBCO INC., managed the premises.

171.     Defendant, JOBCO INC., supervised the premises.

172.     Defendant, JOBCO INC., controlled the premises.

Case 2:20-cv-03834-MKB-JMW Document 26-1 Filed 04/11/22 Page 233 of 307 PageID #: 960

173.     Defendant, JOBCO INC., managed, supervised, directed and controlled the work being performed at the premises.

174.     On or before August 10, 2018, Defendant, JOBCO INC., was retained to perform construction, excavation, demolition, repair or alteration work at the premises.

175.     Defendant, JOBCO INC., performed construction, excavation, demolition, repair and/or alteration work on the premises.

176.     Defendant, JOBCO INC., performed construction, excavation, demolition, repair and/or alteration work on the premises, pursuant to a contract.

177.     On August 10, 2018, Defendant, JOBCO INC., managed, supervised, directed and controlled the construction, renovation, alteration and/or repair work at the premises.

178.     On August 10, 2018, Defendant, JOBCO INC., was the general contractor for the construction work at the premises.

179.     On or before August 10, 2018, Defendant, JOBCO INC., retained contractors to perform construction, excavation, demolition, repair or alteration work at the premises.

180.     On or before August 10, 2018, Defendant, JOBCO INC., retained Defendant, MOXEY RIGBY LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

181.     On or before August 10, 2018, Defendant, JOBCO INC., retained Defendant, G&G MOXEY RIGBY LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

Case 2:20-cv-03834-MKB-JMW   Document 26-1   Filed 04/11/22   Page 234 of 307 PageID #: 961

182.    On or before August 10, 2018, Defendant, JOBCO INC., retained Defendant, MOXEY RIGBY DEVELOPER LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

183.    On or before August 10, 2018, Defendant, JOBCO INC., retained Defendant, G&G MOXEY RIGBY DEVELOPER LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

184.    On or before August 10, 2018, Defendant, JOBCO INC., retained Defendant, MOXEY RIGBY MANAGERS LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

185.    On or before August 10, 2018, Defendant, JOBCO INC., retained Defendant, MDC HOME IMPROVEMENTS, INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

186.    On or before August 10, 2018, Defendant, JOBCO INC., retained Defendant, K-SQUARE DEVELOPERS, INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

187.    On or before August 10, 2018, Defendant, JOBCO INC., retained Defendant, COMMERCIAL CONTRACTING SERVICES INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

188.    On or before August 10, 2018, Defendant, JOBCO INC., retained Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., to perform construction, excavation, demolition, repair or alteration work at the premises.

Case 2:20-cv-03834-MKB-JMW   Document 26-1   Filed 04/11/22   Page 235 of 307 PageID #:
962

189.     On or before August 10, 2018, Defendant, JOBCO INC., retained Defendant, THE FREEPORT HOUSING AUTHORITY, to perform construction, excavation, demolition, repair or alteration work at the premises.

190.     On or before August 10, 2018, Defendant, JOBCO INC., retained Defendant, THE INCORPORATED VILLAGE OF FREEPORT, to perform construction, excavation, demolition, repair or alteration work at the premises.

191.     On or before August 10, 2018, Defendant, JOBCO INC., retained Defendant, THE COUNTY OF NASSAU, to perform construction, excavation, demolition, repair or alteration work at the premises.

192.     Defendant, MDC HOME IMPROVEMENTS, INC., owned the premises.

193.     Defendant, MDC HOME IMPROVEMENTS, INC., operated the premises.

194.     Defendant, MDC HOME IMPROVEMENTS, INC., maintained the premises.

195.     Defendant, MDC HOME IMPROVEMENTS, INC., managed the premises.

196.     Defendant, MDC HOME IMPROVEMENTS, INC., supervised the premises.

197.     Defendant, MDC HOME IMPROVEMENTS, INC., controlled the premises.

198.     Defendant, MDC HOME IMPROVEMENTS, INC., managed, supervised, directed and controlled the work being performed at the premises.

199.     On or before August 10, 2018, Defendant, MDC HOME IMPROVEMENTS, INC., was retained to perform construction, excavation, demolition, repair or alteration work at the premises.

200.     Defendant, MDC HOME IMPROVEMENTS, INC., performed construction, excavation, demolition, repair and/or alteration work on the premises.

201. Defendant, MDC HOME IMPROVEMENTS, INC., performed construction, excavation, demolition, repair and/or alteration work on the premises, pursuant to a contract.

202. On August 10, 2018, Defendant, MDC HOME IMPROVEMENTS, INC., managed, supervised, directed and controlled the construction, renovation, alteration and/or repair work at the premises.

203. On August 10, 2018, Defendant, MDC HOME IMPROVEMENTS, INC., was the general contractor for the construction work at the premises.

204. On or before August 10, 2018, Defendant, MDC HOME IMPROVEMENTS, INC., retained contractors to perform construction, excavation, demolition, repair or alteration work at the premises.

205. On or before August 10, 2018, Defendant, MDC HOME IMPROVEMENTS, INC., retained Defendant, MOXEY RIGBY LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

206. On or before August 10, 2018, Defendant, MDC HOME IMPROVEMENTS, INC., retained Defendant, G&G MOXEY RIGBY LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

207. On or before August 10, 2018, Defendant, MDC HOME IMPROVEMENTS, INC., retained Defendant, MOXEY RIGBY DEVELOPER LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

208. On or before August 10, 2018, Defendant, MDC HOME IMPROVEMENTS, INC., retained Defendant, G&G MOXEY RIGBY DEVELOPER LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

209.     On or before August 10, 2018, Defendant, MDC HOME IMPROVEMENTS, INC., retained Defendant, MOXEY RIGBY MANAGERS LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

210.     On or before August 10, 2018, Defendant, MDC HOME IMPROVEMENTS, INC., retained Defendant, JOBCO INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

211.     On or before August 10, 2018, Defendant, MDC HOME IMPROVEMENTS, INC., retained Defendant, K-SQUARE DEVELOPERS, INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

212.     On or before August 10, 2018, Defendant, MDC HOME IMPROVEMENTS, INC., retained Defendant, COMMERCIAL CONTRACTING SERVICES INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

213.     On or before August 10, 2018, Defendant, MDC HOME IMPROVEMENTS, INC., retained Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., to perform construction, excavation, demolition, repair or alteration work at the premises.

214.     On or before August 10, 2018, Defendant, MDC HOME IMPROVEMENTS, INC., retained Defendant, THE FREEPORT HOUSING AUTHORITY, to perform construction, excavation, demolition, repair or alteration work at the premises.

215.     On or before August 10, 2018, Defendant, MDC HOME IMPROVEMENTS, INC., retained Defendant, THE INCORPORATED VILLAGE OF FREEPORT, to perform construction, excavation, demolition, repair or alteration work at the premises.

Case 2:20-cv-03834-MKB-JMW   Document 26-1   Filed 04/11/22   Page 238 of 307 PageID #:
965

216.    On or before August 10, 2018, Defendant, MDC HOME IMPROVEMENTS, INC., retained Defendant, THE COUNTY OF NASSAU, to perform construction, excavation, demolition, repair or alteration work at the premises.

217.    Defendant, K-SQUARE DEVELOPERS, INC., owned the premises.

218.    Defendant, K-SQUARE DEVELOPERS, INC., operated the premises.

219.    Defendant, K-SQUARE DEVELOPERS, INC., maintained the premises.

220.    Defendant, K-SQUARE DEVELOPERS, INC., managed the premises.

221.    Defendant, K-SQUARE DEVELOPERS, INC., supervised the premises.

222.    Defendant, K-SQUARE DEVELOPERS, INC., controlled the premises.

223.    Defendant, K-SQUARE DEVELOPERS, INC., managed, supervised, directed and controlled the work being performed at the premises.

224.    On or before August 10, 2018, Defendant, K-SQUARE DEVELOPERS, INC., was retained to perform construction, excavation, demolition, repair or alteration work at the premises.

225.    Defendant, K-SQUARE DEVELOPERS, INC., performed construction, excavation, demolition, repair and/or alteration work on the premises.

226.    Defendant, K-SQUARE DEVELOPERS, INC., performed construction, excavation, demolition, repair and/or alteration work on the premises, pursuant to a contract.

227.    On August 10, 2018, Defendant, K-SQUARE DEVELOPERS, INC., managed, supervised, directed and controlled the construction, renovation, alteration and/or repair work at the premises.

228.    On August 10, 2018, Defendant, K-SQUARE DEVELOPERS, INC., was the general contractor for the construction work at the premises.

Case 2:20-cv-03834-MKB-JMW   Document 26-1   Filed 04/11/22   Page 239 of 307 PageID #: 966

229.    On or before August 10, 2018, Defendant, K-SQUARE DEVELOPERS, INC., retained contractors to perform construction, excavation, demolition, repair or alteration work at the premises.

230.    On or before August 10, 2018, Defendant, K-SQUARE DEVELOPERS, INC., retained Defendant, MOXEY RIGBY LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

231.    On or before August 10, 2018, Defendant, K-SQUARE DEVELOPERS, INC., retained Defendant, G&G MOXEY RIGBY LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

232.    On or before August 10, 2018, Defendant, K-SQUARE DEVELOPERS, INC., retained Defendant, MOXEY RIGBY DEVELOPER LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

233.    On or before August 10, 2018, Defendant, K-SQUARE DEVELOPERS, INC., retained Defendant, G&G MOXEY RIGBY DEVELOPER LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

234.    On or before August 10, 2018, Defendant, K-SQUARE DEVELOPERS, INC., retained Defendant, MOXEY RIGBY MANAGERS LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

235.    On or before August 10, 2018, Defendant, K-SQUARE DEVELOPERS, INC., retained Defendant, JOBCO INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

236. On or before August 10, 2018, Defendant, K-SQUARE DEVELOPERS, INC., retained Defendant, MDC HOME IMPROVEMENTS, INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

237. On or before August 10, 2018, Defendant, K-SQUARE DEVELOPERS, INC., retained Defendant, COMMERCIAL CONTRACTING SERVICES INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

238. On or before August 10, 2018, Defendant, K-SQUARE DEVELOPERS, INC., retained Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., to perform construction, excavation, demolition, repair or alteration work at the premises.

239. On or before August 10, 2018, Defendant, K-SQUARE DEVELOPERS, INC., retained Defendant, THE FREEPORT HOUSING AUTHORITY, to perform construction, excavation, demolition, repair or alteration work at the premises.

240. On or before August 10, 2018, Defendant, K-SQUARE DEVELOPERS, INC., retained Defendant, THE INCORPORATED VILLAGE OF FREEPORT, to perform construction, excavation, demolition, repair or alteration work at the premises.

241. On or before August 10, 2018, Defendant, K-SQUARE DEVELOPERS, INC., retained Defendant, THE COUNTY OF NASSAU, to perform construction, excavation, demolition, repair or alteration work at the premises.

242. Defendant, COMMERCIAL CONTRACTING SERVICES INC., owned the premises.

243. Defendant, COMMERCIAL CONTRACTING SERVICES INC., operated the premises.

Case 2:20-cv-03834-MKB-JMW   Document 26-1   Filed 04/11/22   Page 241 of 307 PageID #: 968

244.    Defendant, COMMERCIAL CONTRACTING SERVICES INC., maintained the premises.

245.    Defendant, COMMERCIAL CONTRACTING SERVICES INC., managed the premises.

246.    Defendant, COMMERCIAL CONTRACTING SERVICES INC., supervised the premises.

247.    Defendant, COMMERCIAL CONTRACTING SERVICES INC., controlled the premises.

248.    Defendant, COMMERCIAL CONTRACTING SERVICES INC., managed, supervised, directed and controlled the work being performed at the premises.

249.    On or before August 10, 2018, Defendant, COMMERCIAL CONTRACTING SERVICES INC., was retained to perform construction, excavation, demolition, repair or alteration work at the premises.

250.    Defendant, COMMERCIAL CONTRACTING SERVICES INC., performed construction, excavation, demolition, repair and/or alteration work on the premises.

251.    Defendant, COMMERCIAL CONTRACTING SERVICES INC., performed construction, excavation, demolition, repair and/or alteration work on the premises, pursuant to a contract.

252.    On August 10, 2018, Defendant, COMMERCIAL CONTRACTING SERVICES INC., managed, supervised, directed and controlled the construction, renovation, alteration and/or repair work at the premises.

253.    On August 10, 2018, Defendant, COMMERCIAL CONTRACTING SERVICES

28 / 46

INC., was the general contractor for the construction work at the premises.

254.    On or before August 10, 2018, Defendant, COMMERCIAL CONTRACTING SERVICES INC., retained contractors to perform construction, excavation, demolition, repair or alteration work at the premises.

255.    On or before August 10, 2018, Defendant, COMMERCIAL CONTRACTING SERVICES INC., retained Defendant, MOXEY RIGBY LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

256.    On or before August 10, 2018, Defendant, COMMERCIAL CONTRACTING SERVICES INC., retained Defendant, G&G MOXEY RIGBY LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

257.    On or before August 10, 2018, Defendant, COMMERCIAL CONTRACTING SERVICES INC., retained Defendant, MOXEY RIGBY DEVELOPER LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

258.    On or before August 10, 2018, Defendant, COMMERCIAL CONTRACTING SERVICES INC., retained Defendant, G&G MOXEY RIGBY DEVELOPER LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

259.    On or before August 10, 2018, Defendant, COMMERCIAL CONTRACTING SERVICES INC., retained Defendant, MOXEY RIGBY MANAGERS LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

260.    On or before August 10, 2018, Defendant, COMMERCIAL CONTRACTING SERVICES INC., retained Defendant, JOBCO INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

Case 2:20-cv-03834-MKB-JMW Document 26-1 Filed 04/11/22 Page 243 of 307 PageID #: 970

261.    On or before August 10, 2018, Defendant, COMMERCIAL CONTRACTING SERVICES INC., retained Defendant, MDC HOME IMPROVEMENTS, INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

262.    On or before August 10, 2018, Defendant, COMMERCIAL CONTRACTING SERVICES INC., retained Defendant, K-SQUARE DEVELOPERS, INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

263.    On or before August 10, 2018, Defendant, COMMERCIAL CONTRACTING SERVICES INC., retained Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., to perform construction, excavation, demolition, repair or alteration work at the premises.

264.    On or before August 10, 2018, Defendant, COMMERCIAL CONTRACTING SERVICES INC., retained Defendant, THE FREEPORT HOUSING AUTHORITY, to perform construction, excavation, demolition, repair or alteration work at the premises.

265.    On or before August 10, 2018, Defendant, COMMERCIAL CONTRACTING SERVICES INC., retained Defendant, THE INCORPORATED VILLAGE OF FREEPORT, to perform construction, excavation, demolition, repair or alteration work at the premises.

266.    On or before August 10, 2018, Defendant, COMMERCIAL CONTRACTING SERVICES INC., retained Defendant, THE COUNTY OF NASSAU, to perform construction, excavation, demolition, repair or alteration work at the premises.

267.    Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., owned the premises.

34 of 52

268.    Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., operated the premises.

269.    Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., maintained the premises.

270.    Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., managed the premises.

271.    Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., supervised the premises.

272.    Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., controlled the premises.

273.    Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., managed, supervised, directed and controlled the work being performed at the premises.

274.    On or before August 10, 2018, Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., was retained to perform construction, excavation, demolition, repair or alteration work at the premises.

275.    Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., performed construction, excavation, demolition, repair and/or alteration work on the premises.

276.    Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., performed construction, excavation, demolition, repair and/or alteration work on the premises, pursuant to a contract.

277.    On August 10, 2018, Defendant, FREEPORT AFFORDABLE HOUSING

Case 2:20-cv-03834-MKB-JMW Document 26-1 Filed 04/11/22 Page 245 of 307 PageID #: 972

DEVELOPMENT FUND CORP., managed, supervised, directed and controlled the construction, renovation, alteration and/or repair work at the premises.

278.    On August 10, 2018, Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., was the general contractor for the construction work at the premises.

279.    On or before August 10, 2018, Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., retained contractors to perform construction, excavation, demolition, repair or alteration work at the premises.

280.    On or before August 10, 2018, Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., retained Defendant, MOXEY RIGBY LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

281.    On or before August 10, 2018, Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., retained Defendant, G&G MOXEY RIGBY LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

282.    On or before August 10, 2018, Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., retained Defendant, MOXEY RIGBY DEVELOPER LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

283.    On or before August 10, 2018, Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., retained Defendant, G&G MOXEY RIGBY DEVELOPER LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

284. On or before August 10, 2018, Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., retained Defendant, MOXEY RIGBY MANAGERS LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

285. On or before August 10, 2018, Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., retained Defendant, JOBCO INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

286. On or before August 10, 2018, Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., retained Defendant, MDC HOME IMPROVEMENTS, INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

287. On or before August 10, 2018, Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., retained Defendant, K-SQUARE DEVELOPERS, INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

288. On or before August 10, 2018, Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., retained Defendant, COMMERCIAL CONTRACTING SERVICES INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

289. On or before August 10, 2018, Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., retained Defendant, THE FREEPORT HOUSING AUTHORITY, to perform construction, excavation, demolition, repair or alteration work at the premises.

Case 2:20-cv-03834-MKB-JMW   Document 26-1   Filed 04/11/22   Page 247 of 307 PageID #:
974

290.   On or before August 10, 2018, Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., retained Defendant, THE INCORPORATED VILLAGE OF FREEPORT, to perform construction, excavation, demolition, repair or alteration work at the premises.

291.   On or before August 10, 2018, Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., retained Defendant, THE COUNTY OF NASSAU, to perform construction, excavation, demolition, repair or alteration work at the premises.

292.   Defendant, THE FREEPORT HOUSING AUTHORITY, owned the premises.

293.   Defendant, THE FREEPORT HOUSING AUTHORITY, operated the premises.

294.   Defendant, THE FREEPORT HOUSING AUTHORITY, maintained the premises.

295.   Defendant, THE FREEPORT HOUSING AUTHORITY, managed the premises.

296.   Defendant, THE FREEPORT HOUSING AUTHORITY, supervised the premises.

297.   Defendant, THE FREEPORT HOUSING AUTHORITY, controlled the premises.

298.   Defendant, THE FREEPORT HOUSING AUTHORITY, managed, supervised, directed and controlled the work being performed at the premises.

299.   On or before August 10, 2018, Defendant, THE FREEPORT HOUSING AUTHORITY, was retained to perform construction, excavation, demolition, repair or alteration work at the premises.

300.   Defendant, THE FREEPORT HOUSING AUTHORITY, performed construction, excavation, demolition, repair and/or alteration work on the premises.

301.   Defendant, THE FREEPORT HOUSING AUTHORITY, performed construction, excavation, demolition, repair and/or alteration work on the premises, pursuant to a contract.

Case 2:20-cv-03834-MKB-JMW Document 26-1 Filed 04/11/22 Page 248 of 307 PageID #: 975

302. On August 10, 2018, Defendant, THE FREEPORT HOUSING AUTHORITY, managed, supervised, directed and controlled the construction, renovation, alteration and/or repair work at the premises.

303. On August 10, 2018, Defendant, THE FREEPORT HOUSING AUTHORITY, was the general contractor for the construction work at the premises.

304. On or before August 10, 2018, Defendant, THE FREEPORT HOUSING AUTHORITY, retained contractors to perform construction, excavation, demolition, repair or alteration work at the premises.

305. On or before August 10, 2018, Defendant, THE FREEPORT HOUSING AUTHORITY, retained Defendant, MOXEY RIGBY LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

306. On or before August 10, 2018, Defendant, THE FREEPORT HOUSING AUTHORITY, retained Defendant, G&G MOXEY RIGBY LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

307. On or before August 10, 2018, Defendant, THE FREEPORT HOUSING AUTHORITY, retained Defendant, MOXEY RIGBY DEVELOPER LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

308. On or before August 10, 2018, Defendant, THE FREEPORT HOUSING AUTHORITY, retained Defendant, G&G MOXEY RIGBY DEVELOPER LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

Case 2:20-cv-03834-MKB-JMW  Document 26-1  Filed 04/11/22  Page 249 of 307 PageID #: 976

309.   On or before August 10, 2018, Defendant, THE FREEPORT HOUSING AUTHORITY, retained Defendant, MOXEY RIGBY MANAGERS LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

310.   On or before August 10, 2018, Defendant, THE FREEPORT HOUSING AUTHORITY, retained Defendant, JOBCO INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

311.   On or before August 10, 2018, Defendant, THE FREEPORT HOUSING AUTHORITY, retained Defendant, MDC HOME IMPROVEMENTS, INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

312.   On or before August 10, 2018, Defendant, THE FREEPORT HOUSING AUTHORITY, retained Defendant, K-SQUARE DEVELOPERS, INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

313.   On or before August 10, 2018, Defendant, THE FREEPORT HOUSING AUTHORITY, retained Defendant, COMMERCIAL CONTRACTING SERVICES INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

314.   On or before August 10, 2018, Defendant, THE FREEPORT HOUSING AUTHORITY, retained Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., to perform construction, excavation, demolition, repair or alteration work at the premises.

315.   On or before August 10, 2018, Defendant, THE FREEPORT HOUSING AUTHORITY, retained Defendant, THE INCORPORATED VILLAGE OF FREEPORT, to perform construction, excavation, demolition, repair or alteration work at the premises.

Case 2:20-cv-03834-MKB-JMW Document 26-1 Filed 04/11/22 Page 250 of 307 PageID #: 977

316. On or before August 10, 2018, Defendant, THE FREEPORT HOUSING AUTHORITY, retained Defendant, THE COUNTY OF NASSAU, to perform construction, excavation, demolition, repair or alteration work at the premises.

317. Defendant, THE INCORPORATED VILLAGE OF FREEPORT, owned the premises.

318. Defendant, THE INCORPORATED VILLAGE OF FREEPORT, operated the premises.

319. Defendant, THE INCORPORATED VILLAGE OF FREEPORT, maintained the premises.

320. Defendant, THE INCORPORATED VILLAGE OF FREEPORT, managed the premises.

321. Defendant, THE INCORPORATED VILLAGE OF FREEPORT, supervised the premises.

322. Defendant, THE INCORPORATED VILLAGE OF FREEPORT, controlled the premises.

323. Defendant, THE INCORPORATED VILLAGE OF FREEPORT, managed, supervised, directed and controlled the work being performed at the premises.

324. On or before August 10, 2018, Defendant, THE INCORPORATED VILLAGE OF FREEPORT, was retained to perform construction, excavation, demolition, repair or alteration work at the premises.

325. Defendant, THE INCORPORATED VILLAGE OF FREEPORT, performed construction, excavation, demolition, repair and/or alteration work on the premises.

Case 2:20-cv-03834-MKB-JMW Document 26-1 Filed 04/11/22 Page 251 of 307 PageID #: 978

326. Defendant, THE INCORPORATED VILLAGE OF FREEPORT, performed construction, excavation, demolition, repair and/or alteration work on the premises, pursuant to a contract.

327. On August 10, 2018, Defendant, THE INCORPORATED VILLAGE OF FREEPORT, managed, supervised, directed and controlled the construction, renovation, alteration and/or repair work at the premises.

328. On August 10, 2018, Defendant, THE INCORPORATED VILLAGE OF FREEPORT, was the general contractor for the construction work at the premises.

329. On or before August 10, 2018, Defendant, THE INCORPORATED VILLAGE OF FREEPORT, retained contractors to perform construction, excavation, demolition, repair or alteration work at the premises.

330. On or before August 10, 2018, Defendant, THE INCORPORATED VILLAGE OF FREEPORT, retained Defendant, MOXEY RIGBY LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

331. On or before August 10, 2018, Defendant, THE INCORPORATED VILLAGE OF FREEPORT, retained Defendant, G&G MOXEY RIGBY LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

332. On or before August 10, 2018, Defendant, THE INCORPORATED VILLAGE OF FREEPORT, retained Defendant, MOXEY RIGBY DEVELOPER LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

Case 2:20-cv-03834-MKB-JMW Document 26-1 Filed 04/11/22 Page 252 of 307 PageID #: 979

333. On or before August 10, 2018, Defendant, THE INCORPORATED VILLAGE OF FREEPORT, retained Defendant, G&G MOXEY RIGBY DEVELOPER LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

334. On or before August 10, 2018, Defendant, THE INCORPORATED VILLAGE OF FREEPORT, retained Defendant, MOXEY RIGBY MANAGERS LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

335. On or before August 10, 2018, Defendant, THE INCORPORATED VILLAGE OF FREEPORT, retained Defendant, JOBCO INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

336. On or before August 10, 2018, Defendant, THE INCORPORATED VILLAGE OF FREEPORT, retained Defendant, MDC HOME IMPROVEMENTS, INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

337. On or before August 10, 2018, Defendant, THE INCORPORATED VILLAGE OF FREEPORT, retained Defendant, K-SQUARE DEVELOPERS, INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

338. On or before August 10, 2018, Defendant, THE INCORPORATED VILLAGE OF FREEPORT, retained Defendant, COMMERCIAL CONTRACTING SERVICES INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

339. On or before August 10, 2018, Defendant, THE INCORPORATED VILLAGE OF FREEPORT, retained Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., to perform construction, excavation, demolition, repair or alteration work at the premises.

Case 2:20-cv-03834-MKB-JMW Document 26-1 Filed 04/11/22 Page 253 of 307 PageID #: 980

340.     On or before August 10, 2018, Defendant, THE INCORPORATED VILLAGE OF FREEPORT, retained Defendant, THE FREEPORT HOUSING AUTHORITY, to perform construction, excavation, demolition, repair or alteration work at the premises.

341.     On or before August 10, 2018, Defendant, THE INCORPORATED VILLAGE OF FREEPORT, retained Defendant, THE COUNTY OF NASSAU, to perform construction, excavation, demolition, repair or alteration work at the premises.

342.     Defendant, THE COUNTY OF NASSAU, owned the premises.

343.     Defendant, THE COUNTY OF NASSAU, operated the premises.

344.     Defendant, THE COUNTY OF NASSAU, maintained the premises.

345.     Defendant, THE COUNTY OF NASSAU, managed the premises.

346.     Defendant, THE COUNTY OF NASSAU, supervised the premises.

347.     Defendant, THE COUNTY OF NASSAU, controlled the premises.

348.     Defendant, THE COUNTY OF NASSAU, managed, supervised, directed and controlled the work being performed at the premises.

349.     On or before August 10, 2018, Defendant, THE COUNTY OF NASSAU, was retained to perform construction, excavation, demolition, repair or alteration work at the premises.

350.     Defendant, THE COUNTY OF NASSAU, performed construction, excavation, demolition, repair and/or alteration work on the premises.

351.     Defendant, THE COUNTY OF NASSAU, performed construction, excavation, demolition, repair and/or alteration work on the premises, pursuant to a contract.

352.     On August 10, 2018, Defendant, THE COUNTY OF NASSAU, managed, supervised, directed and controlled the construction, renovation, alteration and/or repair work at

Case 2:20-cv-03834-MKB-JMW   Document 26-1   Filed 04/11/22   Page 254 of 307 PageID #:
981

the premises.

353.    On August 10, 2018, Defendant, THE COUNTY OF NASSAU, was the general contractor for the construction work at the premises.

354.    On or before August 10, 2018, Defendant, THE COUNTY OF NASSAU, retained contractors to perform construction, excavation, demolition, repair or alteration work at the premises.

355.    On or before August 10, 2018, Defendant, THE COUNTY OF NASSAU, retained Defendant, MOXEY RIGBY LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

356.    On or before August 10, 2018, Defendant, THE COUNTY OF NASSAU, retained Defendant, G&G MOXEY RIGBY LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

357.    On or before August 10, 2018, Defendant, THE COUNTY OF NASSAU, retained Defendant, MOXEY RIGBY DEVELOPER LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

358.    On or before August 10, 2018, Defendant, THE COUNTY OF NASSAU, retained Defendant, G&G MOXEY RIGBY DEVELOPER LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

359.    On or before August 10, 2018, Defendant, THE COUNTY OF NASSAU, retained Defendant, MOXEY RIGBY MANAGERS LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

360.    On or before August 10, 2018, Defendant, THE COUNTY OF NASSAU, retained Defendant, JOBCO INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

361.    On or before August 10, 2018, Defendant, THE COUNTY OF NASSAU, retained Defendant, MDC HOME IMPROVEMENTS, INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

362.    On or before August 10, 2018, Defendant, THE COUNTY OF NASSAU, retained Defendant, K-SQUARE DEVELOPERS, INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

363.    On or before August 10, 2018, Defendant, THE COUNTY OF NASSAU, retained Defendant, COMMERCIAL CONTRACTING SERVICES INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

364.    On or before August 10, 2018, Defendant, THE COUNTY OF NASSAU, retained Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., to perform construction, excavation, demolition, repair or alteration work at the premises.

365.    On or before August 10, 2018, Defendant, THE COUNTY OF NASSAU, retained Defendant, THE FREEPORT HOUSING AUTHORITY, to perform construction, excavation, demolition, repair or alteration work at the premises.

366.    On or before August 10, 2018, Defendant, THE COUNTY OF NASSAU, retained Defendant, THE INCORPORATED VILLAGE OF FREEPORT, to perform construction, excavation, demolition, repair or alteration work at the premises.

367.    On or before August 10, 2018, Plaintiff, GERSON VASQUEZ, was an employee

of Defendant, COMMERCIAL CONTRACTING SERVICES INC.

368.　On or before August 10, 2018, Plaintiff, GERSON VASQUEZ, was not afforded, covered by, and/or provided with Workers' Compensation Insurance while employed with and/or by Defendant, COMMERCIAL CONTRACTING SERVICES INC.

369.　On or after August 10, 2018, Plaintiff, GERSON VASQUEZ, was not afforded, covered by, and/or provided with Workers' Compensation Insurance through and/or from Defendant, COMMERCIAL CONTRACTING SERVICES INC.

370.　On August 10, 2018, while Plaintiff, GERSON VASQUEZ, was performing construction, renovation, repair and/or alteration work as aforesaid at the premises, he was working at an elevated work location.

371.　On August 10, 2018, while Plaintiff, GERSON VASQUEZ, was performing construction, renovation, repair and/or alteration work as aforesaid at the premises, he was working on a ladder.

372.　On August 10, 2018, while Plaintiff, GERSON VASQUEZ, was performing construction, excavation, demolition, repair or alteration work on the premises, when he was caused to fall.

373.　On August 10, 2018, while Plaintiff, GERSON VASQUEZ, was performing construction, excavation, demolition, repair or alteration work on the premises, when an object was caused to fall onto his person.

374.　Plaintiff, GERSON VASQUEZ, was injured.

375.　Plaintiff, GERSON VASQUEZ, was seriously injured.

376.　Said injuries were caused by the negligence of the defendants, their agents,

43 / 46

Case 2:20-cv-03834-MKB-JMW   Document 26-1   Filed 04/11/22   Page 257 of 307 PageID #: 984

servants, contractors and/or employees.

377.    The premises and work area were in a dangerous condition, hazardous to the workers thereat.

378.    The dangerous conditions were caused and created by the defendants, and their agents, servants and/or employees.

379.    The limitations on liability set forth in CPLR Section 1601 do not apply to this action.

380.    The limitations on liability set forth in CPLR Section 1601 do not apply to this action by reason of one or more of the exemptions set forth in CPLR Section 1602, including, but not limited to, Sections 1602(2)(iv), 1602(4), 1602(7) and 1602(8).

381.    As a result of the foregoing, Plaintiff, GERSON VASQUEZ, has been damaged in an amount in excess of the jurisdictional limits of all lower courts in which this matter might otherwise have been brought.

AS AND FOR A SECOND CAUSE OF ACTION
ON BEHALF OF PLAINTIFF, GERSON VASQUEZ

382.    Plaintiff, GERSON VASQUEZ, repeats and re-alleges each and every preceding allegation as if fully set forth herein.

383.    On August 10, 2018, Defendants failed to furnish or erect or cause to be furnished or erected, for the performance of plaintiff's labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes and other devices, which were so constructed, placed and operated as to give proper protection to Plaintiff, GERSON VASQUEZ.

384.    Defendants were in violation of Sections 200, 240 and 241(6) of the Labor Law of

44 / 46

Case 2:20-cv-03834-MKB-JMW  Document 26-1  Filed 04/11/22  Page 258 of 307 PageID #: 985

the State of New York, Rule 23 of the Industrial Code of the State of New York.

385.  The defendants' violation of the above sections of the Labor Law the Industrial Code and OSHA were substantial factors in causing this occurrence.

386.  Plaintiff, GERSON VASQUEZ, was injured.

387.  Plaintiff, GERSON VASQUEZ, was seriously injured.

388.  The serious injuries were due to the defendants' violations of Labor Law §§200, 240, and 241(6) and the provisions of the Industrial Code and OSHA regulations.

389.  As a result of the foregoing, defendants are liable or strictly liable to plaintiff for his injuries.

390.  The limitations on liability set forth in CPLR §1601 do not apply to this action.

391.  The limitations on liability set forth in CPLR §1601 do not apply to this action by reason of one or more of the exemptions set forth in CPLR §1602, including, but not limited to Sections 1602(2)(iv), 1602(4), 1602(7) and 1602(8).

392.  As a result of the foregoing, Plaintiff, GERSON VASQUEZ, has been damaged in an amount in excess of the jurisdictional limits of all lower courts in which this matter might otherwise have been brought.


<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff, GERSON VASQUEZ demands judgment against each of the Defendants on each of the causes of action alleged herein, each separately in a sum of money having a present value that exceeds the jurisdictional limits of all lower courts which would

Case 2:20-cv-03834-MKB-JMW   Document 26-1   Filed 04/11/22   Page 259 of 307 PageID #: 986

otherwise have jurisdiction of this matter; the costs and disbursements of this action; and such

other and further relief as this Court deems just and proper.

Dated: New York, New York
      May 3, 2019

                                 Yours, etc.,

                                 _____
                                 Ernest N. Reece, Esq.
                                 **MILLER, LEIBY & ASSOCIATES, P.C.**
                                 *Attorneys for Plaintiff*
                                 *Gerson Vasquez*
                                 32 Broadway, 13th Floor
                                 New York, NY10004
                                 (212) 227-4200

Case 2:20-cv-03834-MKB-JMW   Document 26-1   Filed 04/11/22   Page 260 of 307 PageID #: 987

## ATTORNEY VERIFICATION

ERNEST N. REECE, an attorney at law, duly admitted to practice in the Courts of the State of New York, affirms under the penalties of perjury that:

He is the attorney for the plaintiff(s) in the above entitled action. That he has read the foregoing COMPLAINT and knows the contents thereof, and upon information and belief, deponent believes the matters alleged therein to be true.

The reason this Verification is made by deponent and not by the plaintiff(s) is that the plaintiff(s) herein reside(s) in a county other than the one in which the plaintiff's attorneys maintain their office.

The source of deponent's information and the grounds of his belief are communication, papers, reports and investigation contained in the file.

DATED: New York, New York
       May 3, 2019

_____
    Ernest N. Reece, Esq.

Case 2:20-cv-03834-MKB-JMW   Document 26-1   Filed 04/11/22   Page 261 of 307 PageID #: 988

Index No.

_____

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

_____

GERSON VASQUEZ,

Plaintiff,

-against-

MOXEY RIGBY LLC; G&G MOXEY RIGBY LLC; MOXEY RIGBY DEVELOPER LLC;
G&G MOXEY RIGBY DEVELOPER LLC; MOXEY RIGBY MANAGERS LLC; JOBCO
INC.; MDC HOME IMPROVEMENTS, INC.; K-SQUARE DEVELOPERS, INC.;
COMMERCIAL CONTRACTING SERVICES INC.; FREEPORT AFFORDABLE HOUSING
DEVELOPMENT FUND CORP.; THE FREEPORT HOUSING AUTHORITY; THE
INCORPORATED VILLAGE OF FREEPORT; and THE COUNTY OF NASSAU,

Defendants.

_____

SUMMONS & VERIFIED COMPLAINT

_____

MILLER, LEIBY & ASSOCIATES, P.C.
ATTORNEYS AT LAW

_____

32 Broadway,13th Floor • New York, NY 10004
Tel 212.227.4200 • Fax 212.504.8369 • MillerLeiby.com

# EXHIBIT N

Case 2:20-cv-03834-MKB-JMW   Document 26-1   Filed 04/11/22   Page 263 of 307 PageID #: 990

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
-------------------------------------------------------------------X

JOSE VELAZQUEZ,                                    Index No.: 605528/2019

                                    Plaintiff,     **STATEMENT PURSUANT
                                                   TO CPLR 3042(b)**

                - against -

MOXEY RIGBY LLC, and JOBCO, INC. and
THE FREEPORT AFFORDABLE HOUSING
DEVELOPMENT FUND CORP.,
                                    Defendants.
-------------------------------------------------------------------X

MOXEY RIGBY LLC, JOBCO, INC., and
THE FREEPORT AFFORDABLE HOUSING
DEVELOPMENT FUND CORP.,

                                    Third-Party Plaintiffs,

                - against –

MDC HOME IMPROVEMENTS, INC.

                                    Third-Party Defendant

-------------------------------------------------------------------X

**COUNSEL:**

   **PLEASE TAKE NOTICE**, that the Defendants/Third-Party Plaintiffs, MOXEY RIGBY

LLC, JOBCO, INC. and THE FREEPORT AFFORDABLE HOUSING DEVELOPMENT

FUND, CORP., have impleaded the above-named Third-Party Defendant, MDC HOME

IMPROVEMENTS, INC., and that henceforth, the caption of this action shall be set forth as

above.

   **PLEASE TAKE FURTHER NOTICE**, that this action has not been placed upon the

trial calendar of this Court.  A copy of this statement is being served upon all parties to this

action.

Case 2:20-cv-03834-MKB-JMW   Document 26-1   Filed 04/11/22   Page 264 of 307 PageID #: 991

Dated: Mineola, New York
November 13, 2019

**HAVKINS ROSENFELD RITZERT
& VARRIALE, LLP**

By: _____
Richard Harms, Esq.
*Attorneys for Defendants/Third-Party
Plaintiffs*
MOXEY RIGBY LLC, JOBCO, INC. and
THE FREEPORT AFFORDABLE HOUSING
DEVELOPMENT FUND CORP.
114 Old Country Road
Mineola, New York 11501
Telephone: (516) 620-1700
HRRV File No. 10310-000442

TO:

Kenneth Klein
**GORAYEB & ASSOCIATES, P.C.**
Attorney for Plaintiff
JOSE VELAZQUEZ
100 William Street, Suite 1900
New York, New York 10038
(212) 257-9222/A10287-LL/JV
(212) 962-5418-Facsimile

**MDC HOME IMPROVEMENTS, INC.**
151 S. 11th Street
Lindenhurst, New York 11757
Via (Personal Service)
& Via Secretary of State

2

Case 2:20-cv-03834-MKB-JMW   Document 26-1   Filed 04/11/22   Page 265 of 307 PageID #: 992

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
----------------------------------------------------------------X
JOSE VELAZQUEZ,                                     Index No.: 605528/2019

                Plaintiff,          **THIRD-PARTY
                                                    SUMMONS**


MOXEY RIGBY LLC, and JOBCO, INC., and
THE FREEPORT AFFORDABLE HOUSING
DEVELOPMENT FUND CORP.,
                Defendants.
----------------------------------------------------------------X

MOXEY RIGBY LLC, JOBCO, INC. and
THE FREEPORT AFFORDABLE HOUSING
DEVELOPMENT FUND CORP.,

                Third-Party Plaintiffs,

        - against –

MDC HOME IMPROVEMENTS, INC.

                Third-Party Defendant

----------------------------------------------------------------X
**TO MDC HOME IMPROVEMENTS, INC.:**

       **YOU ARE HEREBY SUMMONED** and required to answer the Third-Party Complaint

of the Defendants/Third-Party Plaintiffs, MOXEY RIGBY LLC, JOBCO, INC. and

THE FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., a copy of

which is hereby served upon you, and to serve copies of your Answer upon the undersigned,

Havkins Rosenfeld Ritzert & Varriale, LLP, 114 Old Country Road, Suite 300, Mineola, New

York 11501, attorneys for defendants/third-party plaintiffs, MOXEY RIGBY LLC, JOBCO,

INC. and THE FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., ; and

upon Plaintiff's counsel, Gorayeb & Associates, P.C., 100 William Street, Suite 1900, New

York, New York 10038, within twenty (20) days after service of this summons, exclusive of the

Case 2:20-cv-03834-MKB-JMW   Document 26-1   Filed 04/11/22   Page 266 of 307 PageID #: 993

day of service, or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York.  In case of your failure to answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: Mineola, New York
November 13, 2019

HAVKINS ROSENFELD RITZERT
& VARRIALE, LLP
By: _____
　　　　　Richard Harms, Esq.
Defendants/Third-Party Plaintiffs, MOXEY RIGBY LLC, JOBCO, INC. and THE FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP.,
114 Old Country Road
Mineola, New York 11501
Telephone:　(516) 620-1700
HRRV File No. 10310-000442

TO:

Kenneth Klein
GORAYEB & ASSOCIATES, P.C.
Attorney for Plaintiff
JOSE VELAZQUEZ
100 William Street, Suite 1900
New York, New York 10038
(212) 257-9222/A10287-LL/JV
(212) 962-5418-Facsimile

MDC HOME IMPROVEMENTS, INC.
151 S. 11th Street
Lindenhurst, New York 11757
Via (Personal Service)
& Via Secretary of State

2

Case 2:20-cv-03834-MKB-JMW Document 26-1 Filed 04/11/22 Page 267 of 307 PageID #: 994

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
------------------------------------------------------------------------X
JOSE VELAZQUEZ,                                         **Index No.: 605528/2019**

                      Plaintiff,                **THIRD-PARTY**
                                                             **COMPLAINT**

MOXEY RIGBY LLC, and JOBCO, INC.,
THE FREEPORT AFFORDABLE HOUSING
DEVELOPMENT FUND CORP.,
                           Defendants.
------------------------------------------------------------------------X

MOXEY RIGBY LLC, JOBCO, INC. and
THE FREEPORT AFFORDABLE HOUSING
DEVELOPMENT FUND CORP.,

                           Third-Party Plaintiffs,

           - against –

MDC HOME IMPROVEMENTS, INC.

                           Third-Party Defendant

------------------------------------------------------------------------X

       Defendants/Third-Party Plaintiffs, MOXEY RIGBY LLC, JOBCO, INC. and

THE FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., by their

attorneys, HAVKINS ROSENFELD RITZERT & VARRIALE, LLP, as and for its Third-Party

Complaint against MDC HOME IMPROVEMENTS, INC., respectfully allege, upon information

and belief, as follows:

       1.      That at all times mentioned herein, Defendant/Third-Party Plaintiff, MOXEY

RIGBY LLC, is a domestic limited liability company organized and existing under and by virtue

of the laws of the State of New York, and authorized to do business in the State of New York.

Case 2:20-cv-03834-MKB-JMW   Document 26-1   Filed 04/11/22   Page 268 of 307 PageID #: 995

2.     That at all times mentioned herein, defendant/third-party plaintiff, JOBCO INCORPORATED ("JOBCO") is and was a domestic corporation organized and existing under and by virtue of the laws of the State of New York, and authorized to do business in the State of New York.

3.     At all times mentioned herein, defendant/third-party plaintiff, THE FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP. ("FAHDF") is and was a domestic not for profit corporation organized and existing under and by virtue of the laws of the State of New York, authorized to do business in the State of New York.

4.     At all times mentioned herein, third-party defendant, MDC HOME IMPROVEMENTS, INC. (hereinafter "MDC") is and was a domestic business corporation organized and existing under and by virtue of the laws of the State of New York, and authorized to do business in the State of New York.

5.     That at all times mentioned herein, third-party defendant, MDC was and is a foreign corporation authorized to do business under and by virtue of the laws of the State of New York.

6.     At all times mentioned herein, third-party defendant, MDC did domestic business under and by virtue of the laws of the State of New York.

7.     That at all times mentioned herein, third-party defendant MDC maintained its principal place of business at 17B  Seaman Avenue, Bethpage, New York 11714.

8.     That at all times mentioned herein, third-party defendant MDC maintained its principal place of business at 151 South 11th Street, Lindenhurst, New York 11751.

Case 2:20-cv-03834-MKB-JMW Document 26-1 Filed 04/11/22 Page 269 of 307 PageID #: 996

9. At all times mentioned herein, third-party defendant MDC transacted business within the State of New York.

10. That without admitting any of the allegations contained therein, the plaintiff JOSE VELAZQUEZ commenced an action in the Supreme Court, State of New York, County of Nassau, against MOXEY and JOBCO by the filing of a Summons and Verified Complaint, to recover for personal injuries, a copy of which is annexed hereto as *Exhibit "A".*

11. That without admitting any of the allegations contained therein, the plaintiff JOSE VELAZQUEZ, commenced an action in the Supreme Court, State of New York, County of Nassau against FAHDF by the filing of a summons and complaint to recover for personal injuries, a copy of which is annexed hereto as *Exhibit "B".*

12. That MOXEY and JOBCO interposed an Answer on or about November 13, 2018, a copy of which is annexed hereto as *Exhibit "C".*

13. That FAHDF interposed an Answer on or about May 29, 2019, a copy of which is annexed hereto as *Exhibit "D".*

14. That both actions were consolidated by a "So Ordered" Stipulation signed by Judge Libert on October 29, 2019 under index #605528/2019.

15. That without admitting any of the allegations contained therein, in the plaintiff's Verified Complaints, he claims to have been injured on August 16, 2018 while working at a construction project at 12 Buffalo Avenue, Freeport, New York.

16. That in or about July of 2018, MDC entered into a contract or agreement with JOBCO wherein MDC agreed to provide contracting services for the construction project at 12 Buffalo Avenue, Freeport, New York.

3

INDEX NO. 605528/2019
RECEIVED NYSCEF: 11/19/2019
Case 2:20-cv-03834-MKB-JMW Document 26-1 Filed 04/11/22 Page 270 of 307 PageID #: 997

17. That in or about July of 2018, MDC contracted with Commercial Contracting Services, Inc. for work at the construction project at 12 Buffalo Avenue, Freeport, New York.

18. That without admitting any of the plaintiff's allegations, the plaintiff alleges that he was injured performing work at 12 Buffalo Avenue, Freeport, New York.

19. That the contract or agreement between Jobco and MDC, referenced in paragraph "16" was in full force and effect at all relevant times, and applied to the work that the plaintiff was performing when the alleged accident occurred.

20. That without admitting any of the plaintiff's allegations, the plaintiff was performing work in accordance with the terms of the contracts or agreements between Jobco and MDC referenced in paragraph "16".

21. That without admitting any of the plaintiff's allegations, the plaintiff was performing work in accordance with the terms of the contracts or agreements between MDC and Commercial Contracting referenced in paragraph "16".

22. That at all times mentioned herein, including August 16, 2018, MDC was present at the construction project at 12 Buffalo Avenue, Freeport, New York.

23. That at all times mentioned herein, including August 16, 2018, MDC controlled the work that the plaintiff was allegedly engaged in at the construction project at 12 Buffalo Avenue, Freeport, New York.

24. That at all times mentioned herein, including August 16, 2018, MDC supervised the work that the plaintiff was allegedly engaged in at the construction project at 12 Buffalo Avenue, Freeport, New York.

4

INDEX NO. 605528/2019
RECEIVED NYSCEF: 11/19/2019

Case 2:20-cv-03834-MKB-JMW  Document 26-1  Filed 04/11/22  Page 271 of 307 PageID #: 998

25.　That at all times mentioned herein, including August 16, 2018, MDC managed the work that the plaintiff was allegedly engaged in at the construction project at 12 Buffalo Avenue, Freeport, New York.

26.　That at all times mentioned herein, including August 16, 2018, MDC was responsible for maintaining and did maintain the construction project at 12 Buffalo Avenue, Freeport, New York.

27.　That at all times mentioned herein, including August 16, 2018, MDC was responsible for site safety at the construction project at 12 Buffalo Avenue, Freeport, New York, including but not limited to the safety of plaintiff JOSE VELAZQUEZ.

28.　That at all times mentioned herein, including August 16, 2018, the contract between JOBCO and MDC was in full force and effect.

### AS AND FOR A FIRST CAUSE OF ACTION AGAINST MDC

29.　MOXEY RIGBY LLC, JOBCO, INC. and THE FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP. repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "27" inclusive and with the same force and effect as if the same were more fully set forth at length herein.

30.　If the plaintiff sustained damages and/or injuries in the manner alleged in the Verified Complaints, all of which is denied by the third-party plaintiffs, such damages and/or injuries were caused by reason of the negligence, acts and/or omissions MDC, and not by any negligence or culpable conduct of the part of the third-party plaintiffs.

31.　That without admitting the existence of the same, the plaintiff sustained a "grave injury" as defined by Section 11 of the Workers' Compensation Law.

Case 2:20-cv-03834-MKB-JMW   Document 26-1   Filed 04/11/22   Page 272 of 307 PageID #: 999

32.      By reason of the foregoing, the third-party plaintiffs are entitled to common law indemnification from, and to have judgment over and against MDC for all or part of any verdict or judgment that plaintiff may recover against the third-party plaintiffs.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST MDC

33.      MOXEY RIGBY LLC, JOBCO, INC. and THE FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP. repeat, reiterate, and reallege each and every allegation contained in paragraphs "1" through "31" inclusive and with the same force and effect as if the same were more fully set forth at length herein.

34.      If the plaintiff sustained damages and/or injuries in the manner alleged in the Verified Complaints, all of which is denied by the third-party plaintiffs, such damages and/or injuries were caused by reason of the negligence, acts and/or omissions MDC and not by any negligence or culpable conduct of the third-party plaintiffs.

35.      That without admitting the existence of the same, the plaintiff sustained a "grave injury" as defined by Section 11 of the Workers' Compensation Law.

36.      By reason of the foregoing, the third-party plaintiffs are entitled to contribution from, and to have judgment over and against MDC for all or part of any verdict or judgment that plaintiff may recover against the third-party plaintiffs, for Common Law contribution.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST MDC

37.      MOXEY RIGBY LLC, JOBCO, INC. and THE FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP. repeat, reiterate, and reallege each and every allegation contained in paragraphs "1" through "35" inclusive and with the same force and effect as if same were more fully set forth at length herein.

6

Case 2:20-cv-03834-MKB-JMW Document 26-1 Filed 04/11/22 Page 273 of 307 PageID #: 1000

38.     That on or before August 16, 2018, third-party defendant MDC entered into a contract and/or agreement with JOBCO. See *Exhibit "C".*

39.     That pursuant to said contract and/or agreement, third-party defendant MDC is obligated to defend, indemnify and hold harmless defendants/third-party plaintiffs from and against the claims asserted in plaintiff's Verified Complaints.

40.     That said contract and/or agreement was in effect on August 16, 2018.

41.     That if plaintiff sustained any of the injuries and/or damages alleged and complained of, in the manner alleged in the Verified Complaints, all of which is denied by defendants/third-party plaintiffs, such injuries and damages were caused wholly and solely by reason of the negligence, recklessness, carelessness and/or culpable conduct of third-party defendant MDC, its agents, servants and/or employees, without any negligence or culpable conduct on the part of the defendants/third-party plaintiffs.

42.     By reason of the foregoing, defendants/third-party plaintiffs are entitled to contractual indemnification from, and to have judgment over and against third-party defendant MDC for all or part of any judgment that plaintiff may recover against defendants/third-party plaintiffs.

### AS AND FOR A FOURTH CAUSE OF ACTION AGAINST MDC

43.     MOXEY RIGBY LLC, JOBCO, INC. and THE FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP. repeat, reiterate, and reallege each and every allegation contained in paragraphs "1" through "41" inclusive and with the same force and effect as if the same were more fully set forth at length herein.

7

Case 2:20-cv-03834-MKB-JMW Document 26-1 Filed 04/11/22 Page 274 of 307 PageID #: 1001

44.     That on or before August 16, 2018, third-party defendant MDC entered into a contract and/or agreement with JOBCO.  See *Exhibit "C".*

45.     That pursuant to said contract and/or agreement, third-party defendant MDC is obligated to defend, indemnify and hold harmless defendants/third-party plaintiffs from and against the claims asserted in the plaintiff's Verified Complaints.

46.     That said contract and/or agreement was in effect on August 16, 2018.

47.     That if plaintiff sustained any of the injuries and/or damages alleged and complained of, in the manner alleged in the Verified Complaints, all of which is denied by defendants/third-party plaintiffs such injuries and damages were caused wholly and solely by reason of the negligence, recklessness, carelessness and/or culpable conduct of third-party defendant MDC, its agents, servants and/or employees, without any negligence or culpable conduct on the part of defendants/third-party plaintiffs.

48.     By reason of the foregoing, defendants/third-party plaintiffs are entitled to contractual contribution from, and to have judgment over and against third-party defendant MDC for all or part of any judgment that plaintiff may recover against defendants/third-party plaintiffs.

### AS AND FOR A FIFTH CAUSE OF ACTION AGAINST MDC

49.     MOXEY RIGBY LLC, JOBCO, INC. and THE FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP. repeat, reiterate, and reallege each and every allegation contained in paragraphs "1" through "47" inclusive and with the same force and effect as if the same were more fully set forth at length herein.

50.     That on or before August 16, 2018, third-party defendant MDC entered into a contract and/or agreement with JOBCO.  See *Exhibit "C".*

8

51. That pursuant to said contract and/or agreement, third-party defendant MDC was obligated to procure insurance coverage in favor of defendants/third-party plaintiffs that would have covered the defendants/third-party plaintiffs for the claims asserted in plaintiff's Verified Complaints.

52. That said contract and/or agreement was in effect at all relevant times.

53. That third-party defendant MDC breached said contract and/or agreement by failing to procure the requisite insurance coverage.

54. By reason of the foregoing, defendants/third-party plaintiffs are entitled to recover damages from third-party defendant MDC including but not limited to all sums expended in the defense of this action and/or in satisfaction of any settlement or judgment.

**AS AND FOR A SIXTH CAUSE OF ACTION AGAINST MDC**

55. MOXEY RIGBY LLC, JOBCO, INC. and THE FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP. repeat, reiterate, and reallege each and every allegation contained in paragraphs "1" through "53" inclusive and with the same force and effect as if the same were more fully set forth at length herein.

56. That on or before August 16, 2018, third-party defendant MDC entered into a contract and/or agreement with JOBCO. See *Exhibit "C"*.

57. That said contract and/or agreement was in effect on August 16, 2018.

58. In said contract and/or agreement MDC agreed to defend and indemnify defendants/third-party plaintiffs and otherwise fully reimburse defendants/third-party plaintiffs for all costs, fees and expenses incurred in this lawsuit including but not limited to satisfaction of

9

any judgment, payment of any settlement and payment of attorneys' fees and other costs and expenses incurred.

59.     That MDC agreed to procure insurance coverage for the benefit of defendants/third-party plaintiffs on a primary, non-contributory basis.

60.     That if plaintiff sustained damages in the manner alleged in plaintiff's Verified Complaints, all of which is denied by defendants/third-party plaintiffs and should the plaintiff recover judgment against the defendants/third-party plaintiffs then the third-party plaintiffs shall be entitled to full indemnification from MDC for all claims asserted in plaintiff's Verified Complaints.

**WHEREFORE**, defendants/third-party plaintiffs, MOXEY RIGBY LLC, JOBCO, INC. and THE FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., hereby demand judgment as follows:

a.     For common-law indemnification against third-party defendant, MDC, for its proportional share of liability as determined in accordance with the relative culpability of each party including costs, disbursements and expenses including reasonable attorneys' fees;

b.     For common law contribution against third-party defendant, MDC for the full amount of any recovery, judgment or verdict obtained against the defendants/third-party plaintiffs, MOXEY RIGBY LLC, JOBCO, INC. and THE FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., by reason of the allegations set forth in the plaintiff's Verified Complaints, together with all costs, disbursements, expenses, including attorneys' fees incurred by the defendants/third-party plaintiffs; and

c.     For contractual indemnification against third-party defendant, MDC for the full amount of any recovery, judgment or verdict obtained against the defendants/third-party plaintiffs, MOXEY RIGBY LLC, JOBCO, INC. and THE FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., by reason of the allegations set forth in the plaintiff's Verified Complaints, together with all costs, disbursements, expenses, including attorneys' fees incurred by the defendants/third-party plaintiffs; and

d.     For contractual contribution against third-party defendant, MDC for the full amount of any recovery, judgment or verdict obtained against the defendants/third-party

10

Case 2:20-cv-03834-MKB-JMW   Document 26-1   Filed 04/11/22   Page 277 of 307 PageID #: 1004

plaintiffs, MOXEY RIGBY LLC, JOBCO, INC. and THE FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., by reason of the allegations set forth in the plaintiff's Verified Complaints, together with all costs, disbursements, expenses, including attorneys' fees incurred by the defendants/third-party plaintiffs;

   e. For breach of contract against third-party defendant, MDC for the full amount of any recovery, judgment or verdict obtained against the defendants/third-party plaintiffs, MOXEY RIGBY LLC, JOBCO, INC. and THE FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., by reason of the allegations set forth in the plaintiff's Verified Complaints, together with all costs, disbursements, expenses, including attorneys' fees incurred by the defendants/third-party plaintiffs;

   f. For indemnification against third-party defendant, MDC for the full amount of any recovery, judgment or verdict obtained against the defendants/third-party plaintiffs, MOXEY RIGBY LLC, JOBCO, INC. and THE FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., by reason of the allegations set forth in the plaintiff's Verified Complaints, together with all costs, disbursements, expenses, including attorneys' fees incurred by the defendants/third-party plaintiffs; and

   g. For such other relief as this Court deems just and proper.

Dated: Mineola, New York
   November 13, 2019

       **HAVKINS ROSENFELD RITZERT
       & VARRIALE, LLP**

       By: _____
         Richard Harms, Esq.
       *Attorneys for Defendants/Third-Party Plaintiffs*
       MOXEY RIGBY LLC, JOBCO, INC. and THE
       FREEPORT AFFORDABLE HOUSING
       DEVELOPMENT FUND CORP.
       114 Old Country Road
       Mineola, New York 11501
       Telephone: (516) 620-1700
       HRRV File No. 10310-000442

Case 2:20-cv-03834-MKB-JMW   Document 26-1   Filed 04/11/22   Page 278 of 307 PageID #: 1005

**ATTORNEY CERTIFICATION
PURSUANT TO 22 NYCRR 130-1.1a**


Pursuant to 22 NYCRR 130-1.1a, the undersigned, an attorney admitted to practice in the

Courts of New York State, certifies that, upon information and belief, and after reasonable

inquiry, the contentions contained in the annexed document(s) are not frivolous as defined by

Section 130-1.1(c) and was not obtained through illegal conduct, nor was it obtained in violation

of 22 NYCRR 1200.41-a.


Dated: _____ November 13, 2019 _____

Signature: _____

Print Signer's Name: _____ Richard Harms, Esq. _____

# EXHIBIT O

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
-------------------------------------------------------------------------X

COMMISSIONERS OF THE STATE INSURANCE FUND,

                        Plaintiff,

      -against-

PREMIER COUNTY CONSTRUCTION CORP.,

                        Defendant.

-------------------------------------------------------------------------X

Index #:
Date Filed: Policy
#: 22493852

**SUMMONS**

Plaintiff designates Nassau County as the place of trial.

The basis of venue is Plaintiff's Place of Business.

To the above named Defendant:

       YOU ARE HEREBY SUMMONED AND REQUIRED to serve upon the Plaintiff's attorney a written Verified Answer to the attached Verified Complaint.

       If this Summons is served upon you within the State of New York by personal service, you must respond within 20 days after service, not counting the day of service. If this Summons is not personally delivered to you within the State of New York, you must respond within 30 days after service is completed, as provided by law.

       If you do not respond to the attached Verified Complaint within the applicable time limitation stated above, a judgment will be entered against you, by default, for the relief demanded in the Verified Complaint, without further notice to you.

Dated: May 11, 2015
       Melville, New York

                    WILLIAM O'BRIEN,
                    General Attorney of the State Insurance Fund
                    *Attorney for Plaintiff*

                    _____
                    By: THOMAS N. TUMINO, Of Counsel
                    8 Corporate Center Drive, 2nd Floor
                    Melville, NY  11747-9438
                    (T): (631) 756-4186

Business address of defendant:
281 BROADWAY
BETHPAGE, NY 11714

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
-------------------------------------------------------------------------X
COMMISSIONERS OF THE STATE INSURANCE FUND,

                                Plaintiff,

        -against-

PREMIER COUNTY CONSTRUCTION CORP.,

                               Defendant.
-------------------------------------------------------------------------X

**VERIFIED COMPLAINT**

Index #:

Policy #: 22493852

      Plaintiff, Commissioners of the State Insurance Fund, by its attorney, William O'Brien, General Attorney of the State Insurance Fund, as and for its Verified Complaint, respectfully alleges as follows:

      1.     Plaintiff, the Commissioners of the State Insurance Fund, is in charge, supervision and control of the affairs of the State Insurance Fund and is, by virtue of its said offices, invested with the authority to collect all claims and to prosecute any and all actions, including the present action, under and pursuant to the terms of the Workers' Compensation Law for the benefit and on behalf of the State Insurance Fund.

      2.     The State Insurance Fund (hereinafter, "SIF") is an agency of the State of New York authorized to conduct the business of insurance in the State of New York with an office in NASSAU County located at 8 Corporate Center Drive, 2nd Floor, Melville, New York 11747-9438.

      3.     SIF provides workers' compensation and disability insurance coverage to its customers for which it charges premium.

4.      Pursuant to § 93 of the Workers' Compensation Law, plaintiff may bring an action to collect unpaid premium and all other amounts due and owed to SIF in any county wherein SIF maintains an office.

5.      Upon information and belief, the defendant PREMIER COUNTY CONSTRUCTION CORP is a CORPORATION organized and existing under the laws of the State of New York and maintains a place of business at 281 BROADWAY, BETHPAGE, NY 11714.

6.      This action arises out of the defendant's transaction of business or doing business in New York.

7.      Pursuant to the provisions of the New York Workers' Compensation Law and the acts amendatory thereof and supplemental thereto, upon information and belief, defendant signed and filed with SIF an application for workers' compensation insurance, as created by Article VI of said Law.

8.      In compliance with said application, plaintiff issued to the defendant a policy of workers' compensation insurance, policy number 22493852, with an inception date of DECEMBER 13, 2012, for which defendant agreed to pay to SIF premium based upon payroll as provided by the terms of the policy and the New York Workers' Compensation Law.

9.      Defendant agreed to the payment terms as set forth in the policy and consistent with the New York Workers' Compensation Law.

10.      The policy was self renewing on an annual basis until cancellation in accordance with the New York Workers' Compensation Law.

2

11.     SIF fully performed its contractual obligations by providing defendant with workers' compensation insurance from inception to the date the policy was cancelled on JANUARY 16, 2014.

12.     Upon information and belief, the defendant defaulted in the payment of premium due for such insurance coverage in accordance with the terms of said policy and/or controlling law such that the sum of $36,709.55 is now due and owing.

13.     Upon information and belief, no part of said amount has been paid although duly demanded.

14.     As a result, defendant breached its contract with SIF and is liable to SIF for damages in the amount of all unpaid premium, to wit, $36,709.55.

15.     Pursuant to § 18(5) of the State Finance Law, plaintiff may and does herein seek to recover up to an additional 22% of the damages alleged in the preceding paragraph to cover the costs associated with processing, handling and collecting said sum, to wit, up to an additional $8,076.10.

**WHEREFORE**, it is respectfully requested that plaintiff, Commissioners of the State Insurance Fund, be awarded judgment against defendant as follows:

(a) Damages in the amount of $36,709.55;

(b) Interest accruing from JANUARY 16, 2014;

(c) Costs associated with processing, handling and collecting the damages pursuant to State Finance Law § 18(5), up to the amount of $8,076.10

(d) Costs and disbursements of this action;

3

(e)  Such other and further relief as may be just and proper under the circumstances.

**Dated:** **May 11, 2015**
**Melville, New York**



WILLIAM O'BRIEN,
General Attorney of the State Insurance Fund
*Attorney for Plaintiff*

_____
By: THOMAS N. TUMINO, Of Counsel
8 Corporate Center Drive, 2nd Floor
Melville, NY  11747-9438
(T): (631) 756-4186

4

## ATTORNEY'S VERIFICATION BY AFFIRMATION

THOMAS N. TUMINO, the undersigned, duly affirms the following under penalty of perjury.  I am an attorney duly admitted to the practice of law in the State of New York.  I am associated with William O'Brien, General Attorney of the State Insurance Fund, attorney for plaintiff.  I have read the foregoing complaint, know the contents thereof, and the same is true and correct of my own knowledge except as to the matters therein stated to be alleged upon information and belief.  As to those matters, I believe them to be true.  The sources of my information and the grounds of my belief as to the matters therein stated to be alleged upon information and belief are based upon the records of the State Insurance Fund, and other information consisting of communications and statements made by the representatives of the State Insurance Fund.

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed documents are not frivolous.

Dated: May 11, 2015
       Melville, New York

WILLIAM O'BRIEN,
General Attorney of the State Insurance Fund
*Attorney for Plaintiff*

_____

By: THOMAS N. TUMINO, Of Counsel
8 Corporate Center Drive, 2nd Floor
Melville, NY  11747-9438
(T): (631) 756-4186

Index No.:

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

_____

COMMISSIONERS OF THE STATE INSURANCE FUND,

               Plaintiff,

       -against-

PREMIER COUNTY CONSTRUCTION CORP.,

               Defendant(s).

_____

**SUMMONS AND VERIFIED COMPLAINT**

_____

William O' Brien, General Attorney
of the State Fund, Attorney for Plaintiff
By:   Thomas Tumino, Esq.
8 Corporate Ctr Dr 2rd Fl
Melville, New York  11747-3166
(631) 756-4186

_____

Policy No.:  22493852

# EXHIBIT P

FILED: NASSAU COUNTY CLERK 07/06/2015 10:39 AM INDEX NO. 602914/2015
NYSCEF DOC. NO. 8 Case 2:20-cv-03834-MKB-JMW Document 23-1 Filed 04/11/22 Page 288 of 307 PageID #: RECEIVED NYSCEF: 07/08/2015

NASSAU COUNTY CLERK'S OFFICE
ENDORSEMENT COVER PAGE

Recorded Date: 07-06-2015          Record and Return To:
Recorded Time: 10:39:53 a

Liber Book: K       44
Pages From:        243
        To:        245

Control
Number:    469
Ref #: 2015602914
Doc Type: JE1   ELECT JUDG SUPREME COURT MONEY

Plnt: COMMISSIONERS OF THE STATE INSURANCE FUND
Dfnd: PREMIER COUNTY CONSTRUCTION CORP

Judgment Amount:          41,561.24

|                        |        |
| ---------------------- | ------ |
| Taxes Total            | .00    |
| Recording Totals       | .00    |
| Total Payment          | .00    |

BMP001

THIS PAGE IS NOW PART OF THE INSTRUMENT AND SHOULD NOT BE REMOVED
MAUREEN O'CONNELL
COUNTY CLERK



2015070600469

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

--------------------------------------------------------------------------

COMMISSIONERS OF THE STATE INSURANCE FUND,

-against-

PREMIER COUNTY CONSTRUCTION CORP,

Plaintiff,

Defendant(s)

**STATEMENT FOR JUDGMENT**

Index No    602914/2015

Policy No   22493852

An action against a

based upon non-payment
of a contractual obligation.

--------------------------------------------------------------------------

| | |
|---|---|
| Amount claimed in complaint | $36,709.55 |
| Credits (if any) | |
| Sub Total | $36,709.55 |
| Interest From    1/16/2014 | |
| To    7/6/2015    @ 9.00% | $4,851.69 |
| Costs by Statute | |
| Service of Summons and Complaint | |
| Sheriff's Fees on Execution | |
| Misc. | |
| Total | $41,561.24 |

William O'Brien
General Attorney of the State Fund
Attorney of Record for Plaintiff

Thomas Tumino
Senior Attorney
*Attorney for Plaintiff*
THE STATE INSURANCE FUND
8 Corporate Ctr Dr 2rd Fl

Melville , New York 11747

(631) 756-4186

STATE OF NEW YORK, COUNTY OF    NASSAU ss.:

ATTORNEY'S AFFIRMATION

The undersigned, attorney at law in the State of New York,  is associated with General Attorney of the State Fund, attorney of record for the plaintiff herein, states that the disbursements above specified are correct and true and have been or will necessarily be made or incurred herein and are reasonable in amount:  that the time of the defendant(s) to appear or answer herein has expired and that the said defendant(s) has not appeared or answered herein.  The undersigned affirms this statement to be true under the penalties of perjury.

The request for attorney fees/cost of collection in the amount of twenty-two percent (22%) is waived from this Statement For Judgment.

Dated:    July 6, 2015

JUDGMENT entered:    7-6-15

Thomas Tumino

The summons and verified complaint in this action having been served on the following defendant(s):

herein as evidenced by the attached affidavit of service and the time of said defendant(s) to appear or answer having expired, and said defendant(s) not having appeared or answered herein,

Now, on motion of William O'Brien,  General Attorney of the State Fund, for Plaintiff,  it is ADJUDGED that the Commissioners of the State Insurance Fund, plaintiff, residing at: 8 Corporate Ctr Dr 2rd Fl, Melville, New York 11747-3166

do recover of defendant(s):

residing at:       281 BROADWAY

BETHPAGE  NY    11714

the sum of      $36,709.55    plus interest in the sum of        $4,851.69   plus cost and disbursements

in the sum of    0    for a total sum of         $41,561.24       and plaintiff have execution therefore.

7/6/15                            Clerk

INDEX NO. 602914/2015

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NASSAU**

-------------------------------------------------------------------------------------------

COMMISSIONERS OF THE STATE INSURANCE FUND,

Plaintiff,

-against-

PREMIER COUNTY CONSTRUCTION CORP,

Defendant(s)

-------------------------------------------------------------------------------------------

=============================================================

# JUDGMENT ROLL

=============================================================

William O'Brien
General Attorney of the State Fund
Attorney of Record for Plaintiff

By:

Thomas Tumino
Attorneys for Plaintiff
THE STATE INSURANCE FUND
8 Corporate Ctr Dr 2rd Fl
Melville , New York 11747
(631) 756-4186

=============================================================

Amount and interest,                              $41,561.24

Costs and disbursements,

Total                    $41,561.24
==============

Filed

NASSAU COUNTY COUNTY CLERK'S OFFICE
JUL 06 2015
NASSAU INC

2015602914

# EXHIBIT Q

GOL-19-22605-N

Mortgage Recording Tax:

After Recording Return To:

ACADEMY MORTGAGE CORP
105 CONKLIN ST
FARMINGDALE, NEW YORK 11735
Loan Number: 012006046

——————— [Space Above This Line For Recording Data] ———————

# MORTGAGE

MERS Phone: 888-679-6377

**MIN:** 100974500005145098

## WORDS USED OFTEN IN THIS DOCUMENT

(A) **"Security Instrument."** This document, which is dated MARCH 19, 2021 , together with all Riders to this document, will be called the "Security Instrument."

(B) **"Borrower."** JAIME DELAHUNT AND JENNIFER DELAHUNT

46
613
25

whose address is 1 ARGYLE RD, PLAINVIEW, NEW YORK 11803

sometimes will be called "Borrower"
and sometimes simply "I" or "me."

(C) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has a mailing address of P.O. Box 2026, Flint, MI 48501-2026 and a street address of 1901 E. Voorhees Street, Suite C, Danville, IL 61834. MERS telephone number is (888) 679-MERS. **FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD.**

(D) **"Lender."** ACADEMY MORTGAGE CORP

will be called "Lender." Lender is a corporation or association which exists under the laws of NEW YORK
Lender's address is 105 CONKLIN ST, FARMINGDALE, NEW YORK 11735

(E) **"Note."** The note signed by Borrower and dated MARCH 19, 2021 , will be called the "Note." The Note shows that I owe Lender FIVE HUNDRED SIXTY-SEVEN THOUSAND AND 00/100 Dollars (U.S. $ 567,000.00 )

Section: Block: Lot(s)/Unit No(s).:

NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3033 1/01

DocMagic eForms

Page 1 of 17

# EXHIBIT R

SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NASSAU

---------------------------------------------------------------X

WORKERS' COMPENSATION BOARD OF THE STATE OF NEW YORK,      :    JUDGMENT
                                              Plaintiff,   :
                      -against-                            :    EMP#    : 3054737
                                                           :    JUD#    : 2110164
MDC HOME IMPROVEMENTS INC                                  :
                                       Defendant(s)        :    INDEX # :  21 604331
                                                           :
                                                           :    FILING DT: _____
                                                           :
                                                           :
                                                           :
---------------------------------------------------------------X

By order of the Chair of the Workers' Compensation Board of the State of New York, demand for the payment of the sum of $30,500.00, representing Awards and Penalties having been made against the above captioned Defendant(s), after due notice, having defaulted in payment thereof, except the sum of $0.00 leaving $30,500.00 due and payable.

NOW, upon the certified copies of notices attached hereto, and upon motion of the General Counsel of the Workers' Compensation Board of the State of New York, attorney for Plaintiff, pursuant to Section 26 of the Workers' Compensation Law of the State of New York providing for entry of judgment by the County Clerk in event of such default, it is ADJUDGED, that the Plaintiff, Workers' Compensation Board of the State of New York, 328 State Street, Schenectady, NY 12305 does recover from the above-captioned Defendant(s), whose last known address(es) are; 57 BRENNER AVE, BETHPAGE, NY 11714-4301, respectively;  the sum of $30,500.00, and the Plaintiff have execution therefore.


Judgment signed this:____9 th____ day of __Apr.___, _2021__.


                                               _Maureen O'Connell_
                                                        Clerk

                                               F I L E D

                                            Apr 09 2021
                                         COUNTY CLERK OF
                                          NASSAU COUNTY

James R. McGinn, Esq.
Attorney for Plaintiff
Workers' Compensation Board
328 State St.
Schenectady, NY  12305


C-45 6/2007

# EXHIBIT S

Case 2:20-cv-03834-MKB-JMW Document 26-1 Filed 04/11/22 Page 296 of 307 PageID #: 1023

SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NASSAU

---------------------------------------------------------------X

WORKERS' COMPENSATION BOARD OF THE STATE OF NEW YORK,
          Plaintiff,

   -against-

COMMERCIAL CONTRACTING SERVICES INC.
          Defendant(s)

**JUDGMENT**

EMP# : 3071348
JUD# : 2093813

INDEX # : 20 614688

FILING DT: _____

---------------------------------------------------------------X

By order of the Chair of the Workers' Compensation Board of the State of New York, demand for the payment of the sum of $48,500.00, representing Awards and Penalties having been made against the above captioned Defendant(s), after due notice, having defaulted in payment thereof, except the sum of $0.00 leaving $48,500.00 due and payable.

NOW, upon the certified copies of notices attached hereto, and upon motion of the General Counsel of the Workers' Compensation Board of the State of New York, attorney for Plaintiff, pursuant to Section 26 of the Workers' Compensation Law of the State of New York providing for entry of judgment by the County Clerk in event of such default, it is ADJUDGED, that the Plaintiff, Workers' Compensation Board of the State of New York, 328 State Street, Schenectady, NY 12305 does recover from the above-captioned Defendant(s), whose last known address(es) are; 15 SHERMAN AVENUE, BETHPAGE, NY 11714, respectively; the sum of $48,500.00, and the Plaintiff have execution therefore.

Judgment signed this: __18 th__ day of __Dec.__, __2020__.

*Maureen O'Connell*
         Clerk

**F I L E D**

**Dec 18 2020**

**COUNTY CLERK OF
NASSAU COUNTY**

James R. McGinn, Esq.
Attorney for Plaintiff
Workers' Compensation Board
328 State St.
Schenectady, NY 12305

C-45 6/2007

# EXHIBIT T

Case 2:20-cv-03834-MKB-JMW   Document 26-1   Filed 04/11/22   Page 298 of 307 PageID #:
1025

SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NASSAU

---------------------------------------------------------X

WORKERS' COMPENSATION BOARD OF THE STATE OF NEW YORK,    **JUDGMENT**
:                                                         Plaintiff,

                    -against-                            EMP#     : 3054737
                                                        :    JUD#     : 2110164

MDC HOME IMPROVEMENTS INC
:                                        Defendant(s)    INDEX #   : **21 604331**

                                                        :    FILING DT: _____

---------------------------------------------------------X

By order of the Chair of the Workers' Compensation Board of the State of New York, demand for the payment of the sum of $30,500.00, representing Awards and Penalties having been made against the above captioned Defendant(s), after due notice, having defaulted in payment thereof, except the sum of $0.00 leaving $30,500.00 due and payable.

NOW, upon the certified copies of notices attached hereto, and upon motion of the General Counsel of the Workers' Compensation Board of the State of New York, attorney for Plaintiff, pursuant to Section 26 of the Workers' Compensation Law of the State of New York providing for entry of judgment by the County Clerk in event of such default, it is ADJUDGED, that the Plaintiff, Workers' Compensation Board of the State of New York, 328 State Street, Schenectady, NY 12305 does recover from the above-captioned Defendant(s), whose last known address(es) are; 57 BRENNER AVE, BETHPAGE, NY 11714-4301, respectively;  the sum of $30,500.00, and the Plaintiff have execution therefore.

Judgment signed this: **9 th** day of **Apr.**, **2021** .

                                                    _Maureen O'Connell_
                                                        Clerk

                                                    **F I L E D**

                                                    **Apr 09 2021**
                                                    **COUNTY CLERK OF**
                                                    **NASSAU COUNTY**

James R. McGinn, Esq.
Attorney for Plaintiff
Workers' Compensation Board
328 State St.
Schenectady, NY  12305

C-45  6/2007

# EXHIBIT U

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In the matter of American Arbitration**<br>**Association Arb. No. 01-20-0005-2715** | ) |
| | ) |
| | ) **CASE NO.** |
| **GEIS CONSTRUCTION SOUTH, LLC,** | ) |
| | ) |
| **Claimant** | ) |
| **v.** | ) |
| | ) |
| **MDC HOME IMPROVEMENTS, INC.,** | ) |
| | ) |
| | ) |

### Respondent

### NOTICE OF FILING OF APPLICATION TO CONFIRM ARBITRATION AWARD

MDC Home Improvements, Inc.
c/o Mr. Jaime Delahunt
5 Stone Road
Plainview, NY 11803-6017
jaimemdcinc@gmail.com

TO THE ABOVE-NAMED RESPONDENT:

Pursuant to 9 U.S.C. § 9, you are hereby notified that an Application to Confirm Arbitration Award naming you as the Respondent has been filed in this Court pursuant to 9 U.S.C. §§ 9 and 13. A copy of the Application, along with an accompanying Civil Cover Sheet, is being served on you with this notice.

Within 21 days after service of this notice, you must file a response with the Clerk of Court, United States District Court, Eastern District of New York, Long Island Courthouse, 100 Federal Plaza, Central Islip, NY 11722. If you do not timely file a response, judgment by default may be rendered against you for the relief demanded in the Application.

Dated: April 30, 2021

Respectfully Submitted,

*/s/ Christopher Nucifora (*New York No. 5473384)
**Kaufman Dolowich Voluck LLP**
25 Main Street, Suite 500
Hackensack, New Jersey 07601
Phone: (201) 488-6655
Fax: (201) 488-6652
Email: cnucifora@kdvlaw.com

   and

Aaron S. Evenchik (Ohio Bar No. 0073809) (*pro hac vice application to be filed*)
Charles W. Pugh (Ohio Bar No. 0078145) (*pro hac vice application to be filed*)
**HAHN LOESER & PARKS LLP**
200 Public Square, Suite 2800
Cleveland, Ohio 44114
Phone: (216) 621-0150
Fax: (216) 241-2824
Email: cpugh@hahnlaw.com
   aevenchik@hahnlaw.com

*Counsel for Claimant, Geis Construction South, LLC*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In the matter of American Arbitration Association Arb. No. 01-20-0005-2715 | ) ) ) **CASE NO.** |
| GEIS CONSTRUCTION SOUTH, LLC, | ) ) |
| Claimant | ) ) |
| v. | ) ) |
| MDC HOME IMPROVEMENTS, INC., | ) ) |
| Respondent | ) ) |

## <u>GEIS CONSTRUCTION SOUTH, LLC'S APPLICATION TO CONFIRM ARBITRATION AWARD</u>

Pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 9 and 13, Claimant, Geis Construction South, LLC ("Geis") hereby respectfully applies the Court for an order confirming an American Arbitration Association arbitration award in the principal amount of $10,021,831.10 in favor of Geis and against MDC Home Improvements, Inc. ("MDC").

## PARTIES

1.     Geis is an Ohio limited liability company.  Geis's sole member is Geis Construction, Inc., which is an Ohio corporation with its principal place of business at 10020 Aurora-Hudson Road, Streetsboro, Ohio 44241.

2.     MDC is a New York corporation which, upon information and belief (according to the New York State Department of State, Division of Corporations, Entity Information accessed on 4.15.2021), has a principal place of business at 17B Seaman Avenue, Bethpage, New York 11714.

## THE DISPUTE

3.     This dispute arises from Geis's work on the Wonder Lofts Project at 720 Clinton Street in Hoboken, New Jersey 07030 (the "Project").  In need of a concrete and masonry

subcontractor for the Project, Geis ultimately signed two subcontracts with MDC. On approximately June 20, 2019, Geis signed a subcontract agreement with MDC in connection with the Project for the concrete, masonry and earthworks scope of work. *See* June 20, 2019 Geis-MDC Subcontract, attached as Exhibit **A**. On approximately October 22, 2019, Geis signed a second subcontract agreement with MDC in connection with the Project for the masonry and brick repair scope of work. *See* October 22, 2019 Geis-MDC Subcontract, attached hereto as Exhibit **B**. Collectively, the June 20, 2019 and October 22, 2019 subcontracts are referred to as the "Subcontracts."

4.     The Subcontracts contain an arbitration provision, providing in pertinent part as follows:

> **10.8**     In Contractor's sole discretion, any and all claims or disputes between Contractor and Subcontractor arising out or relating to this Agreement or the Contract Documents, or the breach thereof, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect, unless the parties mutually agree otherwise. Notice of the demand for arbitration shall be filed in writing with the other party to this Agreement and with the American Arbitration Association and shall be made within a reasonable time after the dispute has arisen. The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof. Contractor, at its sole option, shall have the right to join in such proceedings any person or entity that is substantially involved in a common question of fact or law, and Subcontractor hereby waives the right to challenge Contractor s decisions relative to joinder. This agreement to arbitrate and any other written agreement to arbitrate referred to herein shall be specifically enforceable under applicable law in any court having jurisdiction thereof. Any arbitration or other dispute resolution shall be exclusively venued in Cleveland, Ohio unless Contractor, in its sole discretion, elects another venue.

*See* June 20, 2019 Geis-MDC Subcontract, at ¶ 10.8; *See* October 22, 2019 Geis-MDC Subcontract, at ¶ 10.8.

5.     Certain disputes arose between Geis and MDC relating to the Project.

## THE ARBITRATION

6.     As a result of the parties' dispute, pursuant to the Subcontracts, on or about May 14, 2020, Geis commenced an arbitration against MDC with the American Arbitration

Association pursuant to the Construction Industry Arbitration Rules of the American Arbitration Association then in effect (the "Arbitration").

7.     A panel of three arbitrators was subsequently appointed by the AAA: Donald W. Gregory, Joseph B. Jerome and David A. Schaefer.

8.     MDC did not respond to the arbitration demand.

9.     Pursuant to Section 10.8 of the Subcontracts, the arbitration was held in Cleveland, Ohio via videoconference on March 11, 2021.  MDC declined to participate in the Arbitration.

10.     On April 1, 2021, the Panel issued its reasoned award (the "Award").  *See* Final Arbitration Award, attached as Ex. **C**.

11.     The arbitration panel concluded that MDC "was properly served with Claimant's Demand for Arbitration."  *Id.* at 2.  The arbitration panel further stated that: (i) MDC "never responded to [Geis's arbitration] demand"; (ii) MDC "failed to appear after due notice by mail in accordance with the Rules of the American Arbitration Association"; and (iii) the arbitration panel "proceeded to hear testimony after a sufficient period of time to allow [MDC's] representatives to appear."

12.     The Award stated that "[t]he Panel finds that [Geis] proved it was damaged in the amount of $9,954,713.86…."  *See id.*

13.     The arbitration panel also credited the materials admitted into evidence "establishing that [Geis's] attorney's fees total $45,139.75."  *Id.*  Additionally, "[t]he Panel finds that both the hourly rates charged and the amount of work done by [Geis's] law firm were reasonable and necessary.  [Geis], therefore, is entitled to recover its attorney's fees."  *Id.*

14.     Finally, the arbitration panel stated that "[t]he administrative fees of the American Arbitration Association totaling $14,700 and the compensation of the Arbitrators totaling $7,277.50, shall be borne by [MDC]" and "[t]herefore, [MDC] shall reimburse [Geis] the sum of $21,977.50, representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by [Geis]."  *Id.*

15.     Accordingly, the arbitration panel awarded Geis: (i) damages, (ii) attorney's fees,

and (iii) arbitration fees against MDC in the total amount of $10,021,831.10.

16.     The Award stated that "[t]he above sums are to be paid on or before ten (10) days from the date of this Award.  Thereafter, interest shall accrue at the statutory rate then in effect." *Id.*  The Award further stated that "[t]his Award is in full settlement of all claims submitted to this Arbitration.  All claims not expressly granted herein are hereby denied." *Id.*

17.     As of the date of this Application, MDC paid nothing to Geis.

## JURISDICTION AND VENUE

18.     This Court has subject-matter jurisdiction under 28 U.S.C.A. § 1332, as the parties are citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

19.     Venue is proper in this district as the Subcontracts specifically provide that an award can be confirmed in any court of competent jurisdiction. [*See* Subcontracts at ¶ 10.8 ("[t]he award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof")].  Additionally, venue is proper in this district under U.S.C. § 1391(b)(1), as MDC resides in this district.  As one federal district court has stated:

> Taylor appears to challenge the venue of these proceedings, arguing that the judgment should not be confirmed in South Carolina but rather in Raleigh, North Carolina, where the arbitration occurred. ECF No. 27 at 4. The undersigned finds that venue is proper in this Court. "[V]enue in an action to confirm an arbitration award may be established either under the FAA's special venue statute or under the general venue statute." *U.S. Ship Mgmt., Inc. v. Maersk Line, Ltd.*, 357 F. Supp. 2d 924, 935 (E.D. Va. 2005); *see Cortez Byrd Chips v. Bill Harbert Constr. Co.*, 529 U.S. 193, 198, 204 (2000) (holding that the venue provisions of the FAA, including sections 9 and 10, should be read permissively such that they supplement, but do not supplant, the general venue provision). The FAA provides that if no court is specified in the agreement of the parties, an application to confirm, vacate or modify an arbitration award may be brought in the district in which the award was made. *See* 9 U.S.C. §§ 9–11. Meanwhile, under the general venue statute, venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1).  In this case, venue is proper in the District of South Carolina under both the FAA's special venue statute and the general venue statute. ***First, the parties' agreements to arbitrate provide that***

4

*"[j]udgment upon any award rendered by an arbitration panel may be entered in any state or federal court of competent jurisdiction."* 2009 Promissory Note, ECF No. 29-1 at 9; 2011 Promissory Note, ECF No. 29-1 at 13; 2012 Promissory Note, ECF No. 29-1 at 17–18. ***Thus, the parties agreed that a motion to confirm could be brought in any federal court, including this Court***. Second, venue is also proper in this Court under 28 U.S.C. § 1391(b)(1). In his Answer, Taylor admitted that he is a citizen of South Carolina….Thus, the undersigned concludes that venue is proper in this Court because Taylor is the only defendant and he resides in this District. *See* 28 U.S.C. § 1391(b)(1).

*Wells Fargo Clearing Servs., LLC v. Taylor*, No. CV 2:20-1103-BHH-MHC, 2020 WL 8713811, at *2–3 (D.S.C. Nov. 23, 2020), *report and recommendation adopted*, No. CV 2:20-1103-BHH, 2021 WL 321102 (D.S.C. Feb. 1, 2021) (emphasis added).

## CONFIRMATION OF AWARD

20.     Geis and MDC's Arbitration proceedings are governed and controlled by the Federal Arbitration Act, 9 U.S.C. §§ 1-16, as the Subcontracts giving rise to the Arbitration evidence transactions involving commerce among various states.

21.     Pursuant to 9 U.S.C. § 9, the Court must confirm an arbitration award unless the award is vacated, modified, or corrected.

22.     No notice of a motion to vacate, modify, or correct the Award has been filed.

23.     MDC has not yet paid the Award, in whole or in part.

24.     Accordingly, Geis respectfully requests that the Court issue an Order: (i) confirming the Award in the principal amount of $10,021,831.10, along with "interest…at the statutory rate then in effect" starting on April 11, 2021; and (ii) enter a judgment in favor of Geis and against MDC in the same amount.

**WHEREFORE**, Geis respectfully requests that the Court enter an Order: (i) confirming the Award in the principal amount of $10,021,831.10, along with "interest…at the statutory rate then in effect" starting on April 11, 2021; and (ii) enter a judgment in favor of Geis and against MDC in the same amount.

Dated: April 30, 2021

Respectfully Submitted,


*/s/ Christopher Nucifora*   (New York No. 5473384)
**Kaufman Dolowich Voluck LLP**
25 Main Street, Suite 500
Hackensack, New Jersey 07601
Phone: (201) 488-6655
Fax: (201) 488-6652
Email: cnucifora@kdvlaw.com

                    and

Aaron S. Evenchik (Ohio Bar No. 0073809) (*pro hac vice application to be filed*)
Charles W. Pugh (Ohio Bar No. 0078145)
(*pro hac vice application to be filed*)
**HAHN LOESER & PARKS LLP**
200 Public Square, Suite 2800
Cleveland, Ohio 44114
Phone: (216) 621-0150
Fax: (216) 241-2824
Email: cpugh@hahnlaw.com
            aevenchik@hahnlaw.com


*Counsel for Claimant, Geis Construction South, LLC*