# 2:20-cv-03834-DRH-JMW
# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

GEIS CONSTRUCTION SOUTH, LLC,

                              *Plaintiff,*

Against

JAMIE DELAHUNT,

                              *Defendant.*

## REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE CERTIFICATE OF DEFAULT PURSUANT TO FRCP 55(C)

Law Office of Joseph Z. Amsel, PLLC
Joseph Z. Amsel, Esq.
*Attorney for Defendant*
43 West 43rd Street, Suite 265
New York, NY 10036
O: 888-558-7425
F: 212-437-9844
JZAmsel@AmselLaw.com

## Table of Contents

**Introduction** ................................................................................................................. 1

**Meritorious Defense** .................................................................................................... 1

**Willfulness of the Default** ........................................................................................... 5

**Other Equitable Factors** ............................................................................................... 8

**Prejudice to Plaintiff** ................................................................................................... 8

**Motion to Seal** ............................................................................................................. 9

    **CONCLUSION** ..................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Cases**

*Am. Exp. Travel Related Servs. Co. v. N. Atl. Res., Inc.*, 261 A.D.2d 310, 311 (1999)........................................................................................................................2
*Espinosa v. Rand*, 24 A.D.3d 102, 102, 806 N.Y.S.2d 186, 187 (1st Dept. 2005) ....2
*Ginter Logistics Serv. Co. v. ACH Freight Forwarding, Inc.*, No. 07 CIV. 8677 (LAP), 2008 WL 11513149, at *2 (S.D.N.Y. July 14, 2008) ...............................2
*In re Vebeliunas*, 332 F.3d 85, 91-92 (2d Cir. 2003)...........................................2, 3
*Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981) ..................................................5
*Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 109–10 (1968) 4
*Telecom Int'l Am., Ltd. v. AT & T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001) ............2
*Wiles v. City of New York*, No. 13-CV-2898 (TPG), 2016 WL 6238609, at *3 (S.D.N.Y. Oct. 25, 2016) ......................................................................................6

**Rules**

FRCP Rule 19 .......................................................................................................1, 4
FRCP Rule 55(c) ........................................................................................................1
FRCP Rule 60 ............................................................................................................5

**Introduction**

Defendant Jamie Delahunt submits this reply memorandum of law in support of his motion to vacate the certificate of default entered on April 14, 2021. For the reasons set forth below and in his initial memorandum, Defendant has demonstrated "good cause" under FRCP Rule 55(c) entitling him to vacatur of the certificate of default. Accordingly, this Court should grant Defendant's motion and permit him to interpose an answer.

**Meritorious Defense**

With respect to the meritorious defense factor, Defendant has established multiple defenses. First, Plaintiff failed to allege sufficient facts to warrant piercing the corporate veil to hold Defendant personally responsible for conduct allegedly committed in furtherance of a corporation, MDC. Second, because Plaintiff failed to join MDC, which is an indispensable party, the case must be dismissed under FRCP Rule 19.

Nonetheless, Plaintiff contends that because the action sounds in tort and fraud, it was not required to establish sufficient facts to pierce the corporate veil. Defendant is wrong. It is well-established that in order to pierce the corporate veil the plaintiff must prove the following: "(1) the owner exercised such control that the corporation has become a mere instrumentality of the owner, who is the real actor; (2) the owner used this control to commit a fraud or other wrong; and (3) the fraud or wrong results in an unjust loss or injury to the plaintiff." *In re Vebeliunas*, 332

1

F.3d 85, 91-92 (2d Cir. 2003). "[A] corporate officer who participates in the commission of a tort may be held individually liable, regardless of whether the officer acted on behalf of the corporation in the course of official duties and regardless of whether the corporate veil is pierced." *Espinosa v. Rand*, 24 A.D.3d 102, 102 (1st Dept. 2005) citing *Am. Exp. Travel Related Servs. Co. v. N. Atl. Res., Inc.*, 261 A.D.2d 310, 311 (1999). Courts, however, have declined to pierce the corporate veil and hold corporate officers liable for fraud where a claim of against an officer was "simply a breach of contract claim in the tort clothing." *Telecom Int'l Am., Ltd. v. AT & T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001); *see also*, *Ginter Logistics Serv. Co. v. ACH Freight Forwarding, Inc.*, No. 07 CIV. 8677 (LAP), 2008 WL 11513149, at *2 (S.D.N.Y. July 14, 2008). Thus, where the underlying facts of a fraud claim against an officer are the same as those underlying a breach of contract claim against the corporation, courts have found the former duplicative and declined to extend liability to corporate officers. *Id.*

Here, as an initial matter, merely because Plaintiff alleges fraud does not end the inquiry into whether such a claim will succeed as a matter of fact or law. Indeed, nothing alleged in the complaint establishes any of the factors courts typically look towards in evaluating whether to pierce the corporate veil. Specifically, Plaintiff fails to allege that Defendant exercised such control that the corporation became "a mere instrumentality of [him], who [wa]s the real actor." *See In re Vebeliunas*, 332

2

F.3d at 91-92. Similarly, Plaintiff did not plead that Defendant "used this control to commit a fraud or other wrong" or that "the fraud or wrong result[ed] in an unjust loss or injury to the plaintiff." *Id*. Thus, Plaintiff has failed to sufficiently plead facts to warrant piercing the corporate veil.

Even assuming *arguendo* that the claim of fraud was sufficient, Plaintiff has already brought a breach of contract claim against MDC arising out of the same underlying facts alleged in this action. That claim was brought in an arbitration proceeding, which Plaintiff won by default and which it is seeking to confirm before this Court. *See Geis Construction South, LLC v. MDC Home Improvements, Inc.*, Case No. 2:21-cv-02407-LDH-ST annexed hereto as Defendant's Exhibit 1. Indeed, before the arbitration panel, Plaintiff presented virtually the exact same evidence before the arbitration panel as it presents to this Court as exhibits to its complaint, including the allegedly fraudulent bond letter. *See, e.g.*, *Id.*, Document 1-2, at 38. Moreover, in response to Defendant's Rule 19 argument, Plaintiff does not deny that the facts underlying the instant case and the arbitration are the same. Thus, given this tacit admission, even if Plaintiff somehow has plead sufficient facts to warrant piercing the corporate the veil, which Defendant does not concede, the fraudulent claims here are separately subject to dismissal as duplicative of claims already brought against MDC in the parallel confirmation proceeding and for which Plaintiff has apparently prevailed. *See Geis Construction South, LLC v. MDC Home*

3

*Improvements, Inc.,* Case 2:21-cv-02407-LDH-ST Document 1-4 (Final Arbitration Award). Thus, for that reason too, Defendant has established a meritorious defense.

The complaint is also subject to dismissal under FRCP Rule 19 for Plaintiff's failure to join MDC, which is a necessary and indispensable party to this litigation. Nonetheless, Plaintiff contends that MDC is not an "indispensable" party merely because it is a signatory to the contract. *See* Plaintiff's Mem. of Law at 22. Plaintiff is wrong. Far from MDC being a mere "signatory" to the contract here, MDC was the *only* party to the contract that Defendant allegedly induced Plaintiff to enter by fraud. Thus, as set forth above, MDC was the *only* party that should have been named here. To the extent Defendant shares liability, which he does not concede, certainly MDC should have been named as well.

The case is also subject to dismissal under Rule 19 because without MDC as part of this action, this may result in double recovery and inconsistent awards, which is the purpose of Rule 19. After all, Plaintiff has already received an arbitration award against MDC for the same underlying conduct alleged in this case for nearly *ten million dollars*. Here, Plaintiff seeks two million. This is precisely the type of double recovery, inconsistent rewards and piecemeal litigation that Rule 19 is designed to avoid. *See Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 109–10 (1968) (The purpose of FRCP Rule 19 is to avoid multiple litigation, "inconsistent relief, or sole responsibility for a liability [a party] shares with

4

another."). Yet, Plaintiff leaves these concerns unaddressed in its opposition. Thus, this case is subject to dismissal under Rule 19, which constitutes an additional defense on the merits.

Accordingly, for the reasons set forth above and in Defendant's opening papers, Defendant has established meritorious defenses to this case. For that reason alone, the Court should grant his motion to vacate the certificate of default.

**<u>Willfulness of the Default</u>**

Defendant has established that his default was not willful. Even if the default was willful, which Defendant does not concede, all other factors militate in favor of granting Defendant's motion to vacate the certificate of default.

Nonetheless, Plaintiff contends that Defendant's default here was willful because he knew of the lawsuit and because he failed to respond once notified of Plaintiff's intent to move for a default. Plaintiff's Mem. of Law at 14. Plaintiff further claims that Defendant's excuses are insufficient. Plaintiff is wrong.

First, the cases Plaintiff relies upon for the proposition that illness" is an insufficient excuse to vacate a default almost universally deal with a motion made pursuant to Rule 60 *after* a default judgment has been entered. Here, by contrast, no such judgment has yet been entered. Indeed, Defendant's motion is to vacate the certificate of default pursuant to Rule 55(c), which is a more lenient and flexible standard than a Rule 60 motion, which seeks to vacate an actual judgement. *See, e.g.*, *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981) ("The lenient standard of

5

Rule 55(c) for determining whether to relieve a party of a default was simply not applied in this case."); *Wiles v. City of New York*, No. 13-CV-2898 (TPG), 2016 WL 6238609, at *3 (S.D.N.Y. Oct. 25, 2016), aff'd, 724 F. App'x 52 (2d Cir. 2018) ("Plaintiff then describes in detail the mechanical operation of Rules 55(a) and (b) of the Federal Rules of Civil Procedure but disregards the more flexible standard by which Rule 55(c) operates.").

Nor is it persuasive, as Plaintiff argues, that Defendant's conditions outlined in his Declaration were insufficient to excuse the default because during the period of time in question, he was represented by counsel in two unrelated state personal injury cases and executed a mortgage with his wife.

As an initial matter, executing a mortgage with a spouse does nothing to undermine any claim of marital disharmony. Indeed, purchasing a home in an attempt to save a marriage or even, for example, having a child with an alienated spouse for the same purpose, is extremely commonplace. Thus, Plaintiff's attempt to extrapolate anything from the fact that Defendant allegedly purchased a home with his wife during this period fails.

Similarly unpersuasive is Plaintiff's attempt to extrapolate willfulness from the fact that Defendant was represented by counsel in two state personal injury matters during the relevant time period. After all, the "Moxey Rigby Lawsuit" was filed on May 3, 2019. *See* Plaintiff's Exhibit M. This action was for personal

6

injuries sustained on a job site by a worker and named no less than thirteen entities. *Id.* On November 19, 2019, Defendant was brought into that litigation by a third-party complaint. *See* Plaintiff's Exhibit N. On March 3, 2020, MDC answered. *See* Plaintiff's Exhibit 2.

Plaintiff, however, presents no evidence that Defendant personally participated in defending this suit. Indeed, the answer is verified by MDC's attorney and not Defendant. *Id.* at 16. Plaintiff also fails to establish when counsel was retained on behalf of MDC. Indeed, upon information and belief, counsel was retained by MDC's insurance carrier, as is typical in such cases. Moreover, the answer was filed *before* the Pandemic began in late-March 2020 and before the events Defendant describes in his Declaration. Additionally, this answer was filed on behalf of MDC, which is not before this Court. Finally, merely because Defendant had insurance-appointed counsel to defend a personal injury matter, does not mean that the same counsel, therefore, was necessarily retained to also represent him in *this* matter. Thus, Plaintiff's claim that MDC's actions in defending "Moxey Rigby Lawsuit" somehow establishes his willfulness fails. For the same reasons, Plaintiff's reliance on MDC's actions in defending the Velazquez lawsuit also fails. *See* Exhibit 3.

Thus, for the reasons set forth above and in his initial filing, Plaintiff has failed to establish that Defendant's default was willful such that a default judgement

7

against Defendant, in his personal capacity for nearly *two million dollars*, is appropriate here.

**Other Equitable Factors**

As noted in Defendant's initial filing, there are other equitable factors that militate in favor of vacating the certificate of default. Specifically, the amount of money that is in issue, at least *two million dollars* plus interest and fees, is, in itself, a sufficient reason to vacate the certificate of default and permit Defendant to defend on the merits. This is especially given that such a default judgment would be against Defendant personally and would run counter to the Second Circuit's long-standing preference that cases be decided on their merits. A*merican Alliance Ins. Co. v. Eagle Ins. Co*., 92 F.3d 57, 61 (2d Cir. 1996).

Furthermore, given that Plaintiff has already obtained an arbitration award against MDC, entering a default judgement here would result in it obtaining a windfall, double recovery for the same alleged wrong. Thus, equity demands that the default be vacated and Defendant be allowed to interpose an answer.

**Prejudice to Plaintiff**

Should this Court vacate the certificate of default, no prejudice would flow to Plaintiff. After all, Plaintiff would be in the same position as every plaintiff in every case: it would have the burden of establishing the merits of its claim by a preponderance of the evidence.

Nonetheless, Plaintiff contends that it would be prejudiced because if this Court vacates the default, "its ability to collect on a judgment against Defendant would be severely impaired" because of other alleged financial obligations of Defendant and MDC. See Plaintiff's Mem. of Law at 24-25. But difficulty collecting a judgement is a possibility for *every* plaintiff regardless of how that judgment is obtained – whether by default or after years of litigation, trial and appeal. Indeed, Plaintiff is likely to have far more difficulty collecting a judgement against Defendant than against MDC, which presumably has assets and equipment.[1] Seemingly, then, what Plaintiff really means when it complains of prejudice is that it would be disappointed by a decision vacating the default considering just how close it came to winning this case without actually having to carry their burden of proof. But this hardly qualifies as prejudice and Plaintiff cites no authority supporting this theory. Thus, because Plaintiff has failed to establish any prejudice should this Court grant Defendant's motion, that factor militates in favor of him.

**Motion to Seal**

The parties agree that portions of the filings related to reasons Defendant defaulted should be sealed. Given that those reasons are inextricably intertwined in

---

[1] Notably, Plaintiff does not claim that Defendant has any amount of assets that would come close to satisfying the multi-million-dollar judgement it seeks here. After all, a house worth a mere $500,000 – hardly a mansion by Long Island standards – that is subject to various protections under New York real property and domestic relations law, will do little to satisfy the multi-million dollar judgement Plaintiff seeks.

the filings of the parties and redacting the filings would be unduly complicated, Defendant hereby respectfully requests that all filings be sealed.

## **CONCLUSION**

Based on the foregoing, Plaintiff submits that he has established that he is entitled to vacatur of the Certificate of Default under FRCP Rule 55(c) has merit. Accordingly, this Court is respectfully requested to vacate the Certificate of Default and permit Defendant to answer the suit and to defend it on the merits.

Dated: April 11, 2022

Respectfully submitted,

/s/ Joseph Z. Amsel, Esq.

*To All Appearing Counsel Via ECF*