# **Defendant's Exhibit 1**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In the matter of American Arbitration Association Arb. No. 01-20-0005-2715**<br><br>**GEIS CONSTRUCTION SOUTH, LLC,**<br><br>**Claimant**<br>**v.**<br><br>**MDC HOME IMPROVEMENTS, INC.,** | )<br>)<br>)   **CASE NO.**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**Respondent**

### NOTICE OF FILING OF APPLICATION TO CONFIRM ARBITRATION AWARD

> MDC Home Improvements, Inc.
> c/o Mr. Jaime Delahunt
> 5 Stone Road
> Plainview, NY 11803-6017
> jaimemdcinc@gmail.com

TO THE ABOVE-NAMED RESPONDENT:

Pursuant to 9 U.S.C. § 9, you are hereby notified that an Application to Confirm Arbitration Award naming you as the Respondent has been filed in this Court pursuant to 9 U.S.C. §§ 9 and 13. A copy of the Application, along with an accompanying Civil Cover Sheet, is being served on you with this notice.

Within 21 days after service of this notice, you must file a response with the Clerk of Court, United States District Court, Eastern District of New York, Long Island Courthouse, 100 Federal Plaza, Central Islip, NY 11722. If you do not timely file a response, judgment by default may be rendered against you for the relief demanded in the Application.

Dated: April 30, 2021

Respectfully Submitted,

*/s/ Christopher Nucifora (*New York No. 5473384)
**Kaufman Dolowich Voluck LLP**
25 Main Street, Suite 500
Hackensack, New Jersey 07601
Phone: (201) 488-6655
Fax: (201) 488-6652
Email: cnucifora@kdvlaw.com

      and

Aaron S. Evenchik (Ohio Bar No. 0073809) (*pro hac vice application to be filed*)
Charles W. Pugh (Ohio Bar No. 0078145) (*pro hac vice application to be filed*)
**HAHN LOESER & PARKS LLP**
200 Public Square, Suite 2800
Cleveland, Ohio 44114
Phone: (216) 621-0150
Fax: (216) 241-2824
Email: cpugh@hahnlaw.com
      aevenchik@hahnlaw.com

*Counsel for Claimant, Geis Construction South, LLC*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In the matter of American Arbitration Association Arb. No. 01-20-0005-2715 | ) ) ) |
| GEIS CONSTRUCTION SOUTH, LLC, | ) ) |
| Claimant | ) ) |
| v. | ) ) |
| MDC HOME IMPROVEMENTS, INC., | ) ) |
| Respondent | ) ) |

CASE NO.

**GEIS CONSTRUCTION SOUTH, LLC'S APPLICATION**
**TO CONFIRM ARBITRATION AWARD**

Pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 9 and 13, Claimant, Geis Construction South, LLC ("Geis") hereby respectfully applies the Court for an order confirming an American Arbitration Association arbitration award in the principal amount of $10,021,831.10 in favor of Geis and against MDC Home Improvements, Inc. ("MDC").

**PARTIES**

1.      Geis is an Ohio limited liability company.  Geis's sole member is Geis Construction, Inc., which is an Ohio corporation with its principal place of business at 10020 Aurora-Hudson Road, Streetsboro, Ohio 44241.

2.      MDC is a New York corporation which, upon information and belief (according to the New York State Department of State, Division of Corporations, Entity Information accessed on 4.15.2021), has a principal place of business at 17B Seaman Avenue, Bethpage, New York 11714.

**THE DISPUTE**

3.      This dispute arises from Geis's work on the Wonder Lofts Project at 720 Clinton Street in Hoboken, New Jersey 07030 (the "Project").  In need of a concrete and masonry

subcontractor for the Project, Geis ultimately signed two subcontracts with MDC.   On approximately June 20, 2019, Geis signed a subcontract agreement with MDC in connection with the Project for the concrete, masonry and earthworks scope of work.  *See* June 20, 2019 Geis-MDC Subcontract, attached as Exhibit **A**.  On approximately October 22, 2019, Geis signed a second subcontract agreement with MDC in connection with the Project for the masonry and brick repair scope of work.  *See* October 22, 2019 Geis-MDC Subcontract, attached hereto as Exhibit **B**.  Collectively, the June 20, 2019 and October 22, 2019 subcontracts are referred to as the "Subcontracts."

4.      The Subcontracts contain an arbitration provision, providing in pertinent part as follows:

> **10.8**   In Contractor's sole discretion, any and all claims or disputes between Contractor and Subcontractor arising out or relating to this Agreement or the Contract Documents, or the breach thereof, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect, unless the parties mutually agree otherwise. Notice of the demand for arbitration shall be filed in writing with the other party to this Agreement and with the American Arbitration Association and shall be made within a reasonable time after the dispute has arisen. The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof. Contractor, at its sole option, shall have the right to join in such proceedings any person or entity that is substantially involved in a common question of fact or law, and Subcontractor hereby waives the right to challenge Contractor s decisions relative to joinder. This agreement to arbitrate and any other written agreement to arbitrate referred to herein shall be specifically enforceable under applicable law in any court having jurisdiction thereof. Any arbitration or other dispute resolution shall be exclusively venued in Cleveland, Ohio unless Contractor, in its sole discretion, elects another venue.

*See* June 20, 2019 Geis-MDC Subcontract, at ¶ 10.8; *See* October 22, 2019 Geis-MDC Subcontract, at ¶ 10.8.

5.      Certain disputes arose between Geis and MDC relating to the Project.

## THE ARBITRATION

6.      As a result of the parties' dispute, pursuant to the Subcontracts, on or about May 14, 2020, Geis commenced an arbitration against MDC with the American Arbitration

Association pursuant to the Construction Industry Arbitration Rules of the American Arbitration Association then in effect (the "Arbitration").

7.      A panel of three arbitrators was subsequently appointed by the AAA: Donald W. Gregory, Joseph B. Jerome and David A. Schaefer.

8.      MDC did not respond to the arbitration demand.

9.      Pursuant to Section 10.8 of the Subcontracts, the arbitration was held in Cleveland, Ohio via videoconference on March 11, 2021.  MDC declined to participate in the Arbitration.

10.     On April 1, 2021, the Panel issued its reasoned award (the "Award").  *See* Final Arbitration Award, attached as Ex. **C**.

11.     The arbitration panel concluded that MDC "was properly served with Claimant's Demand for Arbitration."  *Id.* at 2.  The arbitration panel further stated that: (i) MDC "never responded to [Geis's arbitration] demand"; (ii) MDC "failed to appear after due notice by mail in accordance with the Rules of the American Arbitration Association"; and (iii) the arbitration panel "proceeded to hear testimony after a sufficient period of time to allow [MDC's] representatives to appear."

12.     The Award stated that "[t]he Panel finds that [Geis] proved it was damaged in the amount of $9,954,713.86…."  *See id.*

13.     The arbitration panel also credited the materials admitted into evidence "establishing that [Geis's] attorney's fees total $45,139.75."  *Id.*  Additionally, "[t]he Panel finds that both the hourly rates charged and the amount of work done by [Geis's] law firm were reasonable and necessary.  [Geis], therefore, is entitled to recover its attorney's fees."  *Id.*

14.     Finally, the arbitration panel stated that "[t]he administrative fees of the American Arbitration Association totaling $14,700 and the compensation of the Arbitrators totaling $7,277.50, shall be borne by [MDC]" and "[t]herefore, [MDC] shall reimburse [Geis] the sum of $21,977.50, representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by [Geis]."  *Id.*

15.     Accordingly, the arbitration panel awarded Geis: (i) damages, (ii) attorney's fees,

and (iii) arbitration fees against MDC in the total amount of $10,021,831.10.

16.     The Award stated that "[t]he above sums are to be paid on or before ten (10) days from the date of this Award.  Thereafter, interest shall accrue at the statutory rate then in effect." *Id.*  The Award further stated that "[t]his Award is in full settlement of all claims submitted to this Arbitration.  All claims not expressly granted herein are hereby denied."  *Id.*

17.     As of the date of this Application, MDC paid nothing to Geis.

<h2 align="center">JURISDICTION AND VENUE</h2>

18.     This Court has subject-matter jurisdiction under 28 U.S.C.A. § 1332, as the parties are citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

19.     Venue is proper in this district as the Subcontracts specifically provide that an award can be confirmed in any court of competent jurisdiction. [*See* Subcontracts at ¶ 10.8 ("[t]he award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof")].  Additionally, venue is proper in this district under U.S.C. § 1391(b)(1), as MDC resides in this district.  As one federal district court has stated:

> Taylor appears to challenge the venue of these proceedings, arguing that the judgment should not be confirmed in South Carolina but rather in Raleigh, North Carolina, where the arbitration occurred. ECF No. 27 at 4. The undersigned finds that venue is proper in this Court. "[V]enue in an action to confirm an arbitration award may be established either under the FAA's special venue statute or under the general venue statute." *U.S. Ship Mgmt., Inc. v. Maersk Line, Ltd.*, 357 F. Supp. 2d 924, 935 (E.D. Va. 2005); *see Cortez Byrd Chips v. Bill Harbert Constr. Co.*, 529 U.S. 193, 198, 204 (2000) (holding that the venue provisions of the FAA, including sections 9 and 10, should be read permissively such that they supplement, but do not supplant, the general venue provision). The FAA provides that if no court is specified in the agreement of the parties, an application to confirm, vacate or modify an arbitration award may be brought in the district in which the award was made. *See* 9 U.S.C. §§ 9–11. Meanwhile, under the general venue statute, venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1).  In this case, venue is proper in the District of South Carolina under both the FAA's special venue statute and the general venue statute. ***First, the parties' agreements to arbitrate provide that***

*"[j]udgment upon any award rendered by an arbitration panel may be entered in any state or federal court of competent jurisdiction."* 2009 Promissory Note, ECF No. 29-1 at 9; 2011 Promissory Note, ECF No. 29-1 at 13; 2012 Promissory Note, ECF No. 29-1 at 17–18. ***Thus, the parties agreed that a motion to confirm could be brought in any federal court, including this Court***.  Second, venue is also proper in this Court under 28 U.S.C. § 1391(b)(1). In his Answer, Taylor admitted that he is a citizen of South Carolina….Thus, the undersigned concludes that venue is proper in this Court because Taylor is the only defendant and he resides in this District. *See* 28 U.S.C. § 1391(b)(1).

*Wells Fargo Clearing Servs., LLC v. Taylor*, No. CV 2:20-1103-BHH-MHC, 2020 WL 8713811, at *2–3 (D.S.C. Nov. 23, 2020), *report and recommendation adopted*, No. CV 2:20-1103-BHH, 2021 WL 321102 (D.S.C. Feb. 1, 2021) (emphasis added).

## CONFIRMATION OF AWARD

20.     Geis and MDC's Arbitration proceedings are governed and controlled by the Federal Arbitration Act, 9 U.S.C. §§ 1-16, as the Subcontracts giving rise to the Arbitration evidence transactions involving commerce among various states.

21.     Pursuant to 9 U.S.C. § 9, the Court must confirm an arbitration award unless the award is vacated, modified, or corrected.

22.     No notice of a motion to vacate, modify, or correct the Award has been filed.

23.     MDC has not yet paid the Award, in whole or in part.

24.     Accordingly, Geis respectfully requests that the Court issue an Order: (i) confirming the Award in the principal amount of $10,021,831.10, along with "interest…at the statutory rate then in effect" starting on April 11, 2021; and (ii) enter a judgment in favor of Geis and against MDC in the same amount.

**WHEREFORE**, Geis respectfully requests that the Court enter an Order: (i) confirming the Award in the principal amount of $10,021,831.10, along with "interest…at the statutory rate then in effect" starting on April 11, 2021; and (ii) enter a judgment in favor of Geis and against MDC in the same amount.

Dated: April 30, 2021

Respectfully Submitted,


*/s/ Christopher Nucifora*   (New York No. 5473384)
**Kaufman Dolowich Voluck LLP**
25 Main Street, Suite 500
Hackensack, New Jersey 07601
Phone: (201) 488-6655
Fax: (201) 488-6652
Email: cnucifora@kdvlaw.com

and

Aaron S. Evenchik (Ohio Bar No. 0073809) (*pro
hac vice application to be filed*)
Charles W. Pugh (Ohio Bar No. 0078145)
(*pro hac vice application to be filed*)
**HAHN LOESER & PARKS LLP**
200 Public Square, Suite 2800
Cleveland, Ohio 44114
Phone: (216) 621-0150
Fax: (216) 241-2824
Email: cpugh@hahnlaw.com
        aevenchik@hahnlaw.com


*Counsel for Claimant, Geis Construction South,
LLC*

# EXHIBIT   A



Congratulations on being awarded the contract for the **Wonder Lofts Project**. We look forward to working with you.

Your Project Manager is **Kevin Watts**. He can be reached at **440-454-5195**.

Our insurance certificates are reviewed and monitored by myCOI. You will receive an automated email from myCOI within 48 hours. The email will contain a portal link which will allow you to view a sample certificate of insurance and upload your certificate of insurance for review. We recommend you forward the email to your insurance broker so they can upload the correct information. If your insurance certificate does not meet the minimum requirements, it will be marked non-compliant and you will receive an automated email from myCOI with detailed non-compliance notes. Please amend your certificate of insurance and upload it into myCOI for review. If you have any questions, please contact the myCOI Customer Care Team Monday through Friday, between the hours of 8am-6pm EST.

myCOI Customer Care Team
support@mycoitracking.com
1-317-759-9426 ext 105
Certificates can be sent to: certificates@myCOItracking.com

Please note that if your subcontract is unsigned or your insurance is non-compliant your payment may be withheld. Please sign your agreement as soon as possible.

Please log on to https://app.procore.com/account/login to verify that you have the latest version of drawings for this project.

If you have any questions regarding payments, please contact Phil Teaford. If you have any questions regarding your subcontract, please contact me at the information listed below.

Thank You,

*Debra Gipson*
Debra Gipson
debra@geisco.net
Geis Companies
10020 Aurora-Hudson Rd.
Streetsboro, OH. 44241
330-528-3500 / 216-860-6201



| | P.O. No.: | 1900290-001 |
| | Project Name: | Wonder Lofts |
| | Address: | 720 Clinton Street |
| | | Hoboken, New Jersey 07030 |
| | Job No: | 19-00-290 |

**10020 Aurora – Hudson Road Streetsboro, Ohio 44241 Phone: (330) 528-3500 Fax: (330) 528-0008**

---

# SUBCONTRACT AGREEMENT

M.D.C.                                                    June 20, 2019
151 S. 11th Street
Lindenhurst, New York 11757

The undersigned subcontractor shall furnish all labor, material, and equipment to complete work in accordance with the Prime Contract which will be placed on Procore once fully executed, the terms of the attached proposal dated on or before June 11, 2019, not in conflict with this Agreement, and the terms of the attached Agreement, and the

Cost Codes, Descriptions and Amounts totaling: **$7,678,660.00**

RETAINAGE    Ten Percent (10%), or the amount withheld from Contractor by the Owner.

NOTE:      All permits required by State, City, or other jurisdictional authorities are the Subcontractor's responsibility, as it pertains to the attached scope of work.  Subcontractor shall also be responsible for the continuous cleanup of all debris related to the attached scope of work.

By signing this Agreement or commencing or supplying the work described in this Agreement, you agree to adhere to all the conditions as noted in this Agreement. Failure to do so could result in termination of your contract. No changes to this document are valid unless signed and accepted in writing by an authorized representative of Geis Construction South, LLC.

Contracted By:  M.D.C.

Signed By:  *Jaime Delahunt*
Jaime Delahunt (Jul 16, 2019)
Geis Construction South, LLC.

Signed By:  *Jeff Martin*
Jeff Martin (Jul 16, 2019)

Signed By:  *Brian Wadds*

1

Subcontractor    *JD*
Initials         JD



|  |  |
|---|---|
| **P.O. No.:** | **1900290-001** |
| **Project Name:** | **Wonder Lofts** |
| **Address:** | **720 Clinton Street** |
| | **Hoboken, New Jersey 07030** |
| **Job No:** | **19-00-290** |

This Subcontract Agreement (the "**Agreement**") is entered into this 6th day of June 2019, by and between Geis Construction South, LLC., an Ohio Corporation, 10020 Aurora–Hudson Road, Streetsboro, Ohio 44241 ("**Contractor**"), and M.D.C. ("**Subcontractor**"), having an address at 151 S. 11th Street , North Carolina 28677.

## ARTICLE 1
## THE WORK OF THIS AGREEMENT

**1.1**     Definitions.  For purposes of this Agreement, the term "**Subcontractor**" includes Subcontractor's employees and agents; "**Owner**" means the customer with which Contractor has entered into a contract relating to the Project and that is identified in Section 1.3 and, if such customer is not the owner of the Project, shall include the Project owner; "**Project**" means the project described on **Schedule 1** attached hereto and includes the premises on which the Project is located; "**Work**" means the goods, merchandise, materials, construction, and services related to the Project that is the subject matter of this Agreement, whether completed or partially completed, and includes all other labor, materials, equipment, and services provided or to be provided by Subcontractor to fulfill Subcontractor's obligations; and "**Lower Tier**" means any person or entity that has a direct contract with Subcontractor, or is otherwise in privity with Subcontractor, to furnish or perform a portion of the Work, and includes without limitation Subcontractor's subcontractors, materialmen, suppliers, and vendors, and their respective subcontractors, suppliers, and vendors.

**1.2**     Scope of Work.  The Subcontractor shall execute the Work as described in the Contract Documents (as hereinafter defined) and as detailed more fully in Contractor's agreement with the Owner (the "**Prime Contract**") and/or the attached proposal, which is incorporated by reference to the extent it does not conflict with this Agreement, except to the extent specifically indicated in this Agreement to be the responsibility of others.

**1.3**     The Project and Project Owner.  The Project, of which the Work may constitute the whole or a part, is described on **Schedule 1** attached hereto and made part.  The Project Owner, or person or entity contracting for the improvements, is Prism Construction Management, LLC having an address at 200 Broadacres Drive Suite 180, Bloomfield, NJ 07003.

**1.4**     Architect/Engineer.  The Architect or Engineer for the Project is GLSD Architects, LLC 10020 Aurora Hudson, Streetsboro, Ohio 44241.  In the event that no architect or engineer is named, then all references in this Agreement to the "**Architect**" or "**Engineer**" shall be understood to refer to Contractor.

**1.5**     Project Schedule**.**  The Project schedule applicable to the Subcontractor's work shall be the schedule dated as of the most current version on Procore (the "**Project Schedule**"), which is incorporated by reference, as the same may be amended from time to time in the Contractor's sole discretion.  If no Project Schedule exists as of the date of this Agreement, then Subcontractor shall be bound by the milestone and completion dates set forth in the Prime Contract and Contract Documents and any subsequently published schedule of Contractor, as the same may be amended or supplemented by Contractor in Contractor's sole discretion.

## ARTICLE 2
## DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

**2.1**     Date of Commencement.  The date of commencement shall be the date of this Agreement, as first written above, or the date listed in a Notice to Commence.

**2.2**     Substantial Completion.  Subcontractor shall achieve Substantial Completion of the entire Work not later than as set forth in the Project Schedule, subject to adjustments as provided in the Contract Documents, or such other time as required by the Contractor.  Substantial Completion shall be that point in time when the Work of Subcontractor has been completed with the exception of minor punch list items, the Work has been accepted by Contractor in writing, Subcontractor has obtained all necessary permits and inspections, and the Work is legally available for uninterrupted beneficial use and occupancy by Contractor and Owner without inconvenience.

Subcontractor
Initials   

2

**Geis Construction South, LLC.**



| | |
|---|---|
| **P.O. No.:** | **1900290-001** |
| **Project Name:** | **Wonder Lofts** |
| **Address:** | **720 Clinton Street** |
| | **Hoboken, New Jersey 07030** |
| **Job No:** | **19-00-290** |

**2.3**    Schedule and Reporting.  Scheduling and reporting requirements of Subcontractor are detailed in the Prime Contract and/or the attached **Schedule**, which is incorporated by reference into this Agreement.

### ARTICLE 3
### CONTRACT SUM

**3.1**    <u>Contract Sum</u>.  Contractor, subject to the other terms and conditions of this Agreement, shall pay Subcontractor in current funds for Subcontractor's full performance of the Agreement the Contract Sum as set forth on page one and if applicable as detailed on **Schedule 3** attached hereto and made part hereof (the "**Contract Sum**").  To the fullest extent permitted by applicable law, Contractor's obligation to pay Subcontractor shall be conditioned upon Contractor's receipt of payment for the same from Owner'.

### ARTICLE 4
### PROGRESS PAYMENTS

**4.1**    <u>Invoicing Procedure</u>.  All Applications for Payment are to be filled out and submitted through www.procore.com. Applications for Payment may not be accepted via any other method.  Subcontractor will receive an invitation to submit an Application for Payment through www.procore.com via email on the 18th day of every month.  If Subcontractor is going to be billing that month, Subcontractor must respond affirmatively to that invitation.  Subcontractor must provide the Contractor Project Manager a name and valid email address for its Account Receivable/Invoice contact person to be added to the Procore Directory.  Applications for Payment submitted through www.procore.com after the 25th of the month will not be processed until the following month's billing cycle.  Payments generally will be made after Contractor's billing to Owner for Subcontractor's Work and within seven (7) days of Contractor's receipt of payment for that work from Owner, subject to the provisions in ARTICLE 15.  Training on how to prepare the Application for Payment (or "Requisition") in www.procore.com is offered free through videos available on https://support.procore.com/.  The link to submit a Requisition as a Subcontractor is found at https://support.procore.com/products/online/user-guide/project-level/commitments/tutorials/submit-a-requisition-as-a-subcontractor

**4.2**    <u>Progress Payments</u>.  Based upon Applications for Payment submitted to Contractor by Subcontractor, required to be submitted through www.procore.com, and Certificates for Payment issued by the Architect/Engineer, Contractor shall make progress payments on account of the Contract Sum to Subcontractor as provided below and elsewhere in the Contract Documents.  The period covered by each Application for Payment shall be one calendar month ending on the 25th day of the month.  Contractor will withhold retainage as set forth in the Contract Documents.

**4.3**    <u>Late Payments</u>.  Payments due and unpaid under the Agreement by Contractor to Subcontractor shall bear no interest.

### ARTICLE 5
### FINAL PAYMENT

**5.1**    <u>Final Payment</u>.  Subject to the requirements and conditions below, final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by Contractor to Subcontractor when the Work has been fully completed to the satisfaction of Contractor and Owner, the Agreement has been fully performed, a Final Certificate for Payment has been issued by the Architect/Engineer and Owner for the Work and Project, and Contractor has received its final payment from Owner, including retainage.  A lien waiver must be returned before final payment is released, as set forth in Paragraph 15.1.

### ARTICLE 6
### ENUMERATION OF CONTRACT DOCUMENTS

**6.1**    <u>Contract Documents</u>.  The "**Contract Documents**" consist of this Agreement, any documents listed in any Schedules to this Agreement, Contractor's Subcontractor/Vendor Handbook (the "**Handbook**"), the Prime Contract, and any other documents referenced in, incorporated into, or otherwise made a part of this Agreement or the Prime Contract, including but not limited to Project bid requirements, general conditions, special conditions, supplementary conditions, drawings, specifications, addenda, and change orders.  In the event of any conflict, inconsistency, or ambiguity between the terms of this

Subcontractor
Initials _____

**Geis Construction South, LLC.**



|  | P.O. No.: | 1900290-001 |
|---|---|---|
|  | Project Name: | Wonder Lofts |
|  | Address: | 720 Clinton Street |
|  |  | Hoboken, New Jersey 07030 |
|  | Job No: | 19-00-290 |

Agreement and any of the other Contract Documents, including the Handbook, or within this Agreement or any of the Contract Documents, then the provision imposing the higher quality, greater quantity, or greater duty or obligation on Subcontractor, or granting greater rights or remedies to Contractor or Owner, shall govern.

Subcontractor's quote(s), proposals, bids, assumptions, and qualifications shall not be considered part of this Agreement unless specifically identified herein.  In the event that a proposal or bid of Subcontractor is referenced in this Agreement, it is understood and agreed that the terms of this Agreement shall in all instances control in the event of any discrepancy, inconsistency, or ambiguity.'

**6.2**     Additional Provisions.  **Schedule 5** attached hereto and made part hereof contains additional terms and conditions of the Agreement.

### ARTICLE 7
### GENERAL PROVISIONS

**7.1**     The intent of the Contract Documents is to include all permits, items, labor, materials, equipment, and services necessary for the proper execution and completion of the Work by Subcontractor.  The Contract Documents are complementary and what is required by one shall be as binding as if required by all.  Performance by Subcontractor shall be required to the extent consistent with the Contract Documents and reasonably inferable from them as being necessary to produce the intended results.  It is understood and agreed that the Contract Documents are incorporated into this Agreement by reference, and that Subcontractor hereby assumes toward Contractor all the responsibilities, duties, and obligations that Contractor assumes toward Owner under the Contract Documents with regard to the Project and the scope of Work that is the subject of this Agreement.  Contractor, in addition to all rights of Contractor in this Agreement or at law, shall have against Subcontractor all rights and remedies of Owner against Contractor.

**7.2**     This Agreement and the Contract Documents shall not be construed to create a contractual relationship of any kind (1) between Owner and Subcontractor, (2) between Contractor any Lower Tier of Subcontractor, or (3) between any persons or entities other than the Contractor and Subcontractor.  Subcontractor covenants and agrees to make no claims against Owner or the Architect/Engineer concerning the Project except as provided in this Agreement and, in such instances, only with Contractor's prior written consent.  Subcontractor further releases any and all extra-contractual claims against Contractor, Owner, and Architect/Engineer, it being understood and agreed that all of Subcontractor's claims and rights shall be governed exclusively by this Agreement.

**7.3**     Execution of the Agreement or commencement or supply of Work by Subcontractor is a representation that Subcontractor has visited the Project site and become familiar with the physical and other conditions under which the Work is to be performed, including the local markets, labor pool, site conditions, restrictions affecting the Work, and other matters potentially affecting Subcontractor's performance.

### ARTICLE 8
### CONTRACTOR

**8.1**     Contractor, upon Subcontractor's written request, shall furnish to Subcontractor surveys, layouts, and other documentation in Contractor's possession, but Subcontractor shall be solely responsible for verifying the accuracy and completeness of the information and documentation to the extent that it affects Subcontractor's Work.

**8.2**     Subcontractor is responsible for all fees and permits as noted above.  Contractor shall secure and pay for all other necessary approvals, easements, assessments, and charges required to complete the Work, the construction, use, or occupancy of permanent structures or permanent changes in existing facilities, but only to the extent not applicable to the Work.

### ARTICLE 9
### SUBCONTRACTOR

**9.1**     Subcontractor shall supervise and direct the Work using the highest level of skill and attention.  Subcontractor shall be solely responsible for and have control over construction means, methods, techniques, sequences and procedures and for

4

Subcontractor
Initials _JD_

**Geis Construction South, LLC.**



|  |  |
|---|---|
| P.O. No.: | 1900290-001 |
| Project Name: | Wonder Lofts |
| Address: | 720 Clinton Street |
|  | Hoboken, New Jersey 07030 |
| Job No: | 19-00-290 |

coordinating all portions of the Work under this Agreement, unless the Contract Documents give other specific instructions concerning these matters.

**9.2**     Unless otherwise provided in the Contract Documents, Subcontractor shall provide and pay, as bills are received by Subcontractor, for labor, materials, equipment, tools, construction equipment and machinery, water, heat, utilities, hoisting, transportation, and other facilities and services necessary for the proper execution and completion of the Work, whether temporary or permanent and whether or not incorporated or to be incorporated in the Work, to prevent Subcontractor's Lower Tiers from placing a lien against the Project.

**9.3**     Subcontractor represents and warrants to Contractor that it and all of its employees, agents, and Lower Tiers, as applicable, are duly licensed, authorized, and qualified to perform the Work in the jurisdiction(s) where the Project is located and in which a license, authorization, or qualification is required for their performance in connection with the Project and transaction of business of the character transacted by them.  Subcontractor shall comply with any and all rules and regulations, statutes and ordinances, whether state, federal, or local, applicable to the Work and the Project, whether required by the Contract Documents or otherwise, including without limitation equal employment opportunity, prevailing wage, occupational safety and health, minority and disadvantaged business, and other requirements.

**9.4**     Subcontractor shall enforce strict discipline and good order among Subcontractor's employees and other persons carrying out the Work, and in that regard:  (i) Subcontractor shall not permit employment of unfit persons or persons not skilled in tasks assigned to them; (ii) Subcontractor shall require its employees, agents, and Lower Tiers at the Project to wear and use safety and health equipment, to work in harmony with others working at the Premises, and to comply with Owner's and Contractor's regulations, and the rules and regulations imposed by law covering working conditions; (iii) Contractor shall have the right to furnish any safety or health equipment that Subcontractor fails to provide promptly, and Subcontractor shall upon demand pay Contractor's cost thereof plus twenty percent (20%) for Contractor's overhead and other indirect costs; (iv) Subcontractor shall indemnify Contractor and Owner for fines, penalties, corrective measures, and damages, and shall reimburse Contractor and Owner for costs and expenses, including attorney fees, that result from acts or omissions by Subcontractor, its Lower Tiers, or their respective employees and agents in failing to complying with such safety rules and regulations; (v) Subcontractor, immediately after the occurrence of any accident involving injury to or death of any person, or damage to the Project or any property at the Project or in any way relating to the Work, shall deliver to Contractor's Project Manager and Safety Director a written report thereof, which may be a copy of any accident report delivered to its insurance carrier; (vi) Contractor mandates a drug-free and alcohol-free Project, and Subcontractor shall comply with these requirements, and Subcontractor shall take appropriate precautions (including all requirements applicable to the Project under controlling law) and implement reasonable measures to ensure compliance by Subcontractor's employees and Lower Tiers; (vii) Subcontractor shall furnish to Contractor a copy of Subcontractor's safety plans, including, without limitation, plans for general safety, MSDS, Right to Know, and Drug and Alcohol Abuse; and (viii) Subcontractor and its employees and independent contractors to attend all jobsite Safety Meetings as Contractor may request from time to time.  Contractor shall have the right to demand removal or replacement of any employee of Subcontractor or its Lower Tiers that are working on the Project in Contractor's sole discretion.

**9.5**     Subcontractor warrants to Contractor that materials and equipment furnished under this Agreement will be of good quality and new unless otherwise required or permitted by the Contract Documents, that the Work will be free from defects not inherent in the quality required or permitted, and that the Work will strictly conform to the requirements of the Contract Documents.  Work not conforming to these requirements, including substitutions not properly approved and authorized, shall be considered defective.  If required by the Architect/Engineer, Owner, or Contractor, Subcontractor shall furnish satisfactory evidence as to the kind and quality of materials and equipment.  Manufacturer's warranties on materials and equipment purchased and installed by Subcontractor shall be assigned by Subcontractor to Contractor and Owner for their benefit prior to final payment.

**9.6**     Unless otherwise provided in the Contract Documents, Subcontractor shall pay sales, consumer, use, and other similar taxes which are legally enacted when bids are received or negotiations concluded, whether or not yet effective or merely scheduled to go into effect, and shall secure and pay for the building permit and other permits and governmental fees, licenses and inspections necessary for proper execution and completion of the Work.

Subcontractor
Initials   _JD_

5

**Geis Construction South, LLC.**



|  |  |
|---|---|
| **P.O. No.:** | **1900290-001** |
| **Project Name:** | **Wonder Lofts** |
| **Address:** | **720 Clinton Street** |
| | **Hoboken, New Jersey 07030** |
| **Job No:** | **19-00-290** |

**9.7** Subcontractor shall comply with and give notices required by laws, ordinances, rules, regulations, and lawful orders of public authorities bearing on performance of the Work. Subcontractor shall promptly notify the Architect/Engineer and Contractor in writing, within two (2) days of discovery, if the Drawings and Specifications are at variance therewith, or if Subcontractor discovers or reasonably should have discovered other errors or omissions or other problems, affecting the Work or the Project.

**9.8** Subcontractor shall be responsible to Contractor for the acts and omissions of Subcontractor's employees and Lower Tiers, and their respective agents and employees, and other persons performing portions of the Work under a contract with the Subcontractor or its Lower Tiers.

**9.9** It is understood and agreed that the relationship of Contractor to Subcontractor shall be that of independent contractors. Nothing contained herein or inferable here from shall be deemed or construed to (a) make Subcontractor the agent, servant, or employee of Contractor or (b) create any partnership, joint venture, or other association between Subcontractor and Contractor. Any direction or instruction by Contractor in respect of the Work shall relate to the results Contractor desires to obtain from the Work and shall in no way affect Subcontractor's independent contractor status as described herein. Subcontractor shall prevent any of its employees from representing himself or herself to be an employee of Contractor. Subcontractor shall be solely responsible for its sequences, means, methods and techniques, and those of its Lower Tiers.

**9.10** Subcontractor shall review, approve, and submit to Contractor and Architect/Engineer complete and accurate Shop Drawings, Product Data, Samples, and similar submittals required by the Contract Documents with reasonable promptness, so as not to delay progress of the Work. The Work shall be in accordance only with approved submittals, which shall be evidenced exclusively by Contractor's stamp on such documents. When professional certification of performance criteria of materials, systems, or equipment is required of Subcontractor by the Contract Documents, the Architect/Engineer and Contractor shall be entitled to rely upon the accuracy and completeness of such certifications. All submittals, shop drawings, and related materials shall strictly comply with project requirements.

**9.11** Subcontractor shall provide Contractor and Architect/Engineer with "Record Drawings" prior to final payment.

**9.12** Subcontractor shall, under the direction of Contractor, furnish three complete sets of manuals, containing the manufacturer's instructions for maintenance and operation of each item of equipment and apparatus furnished under the Contract Documents and any additional data specifically requested under the various sections of the Specifications for each division of the Work. The manuals shall be arranged in proper order, indexed, and suitably bound.

**9.13** All plans, drawings, reports, manuals, specifications, test data, or other documents or information prepared by Subcontractor pursuant to this Agreement shall be furnished to Contractor and shall be the joint property of Contractor and Subcontractor. Contractor shall have the unlimited right to publish, transfer, sell, license, and use all or any part of such documents or information without additional payment to Subcontractor. Subcontractor grants Contractor an irrevocable, royalty-free license for such purposes.

**9.14** During the progress of the Work, Subcontractor shall keep the premises and surrounding area free from accumulation of waste materials or rubbish caused by operations under the Agreement. At completion of the Work, Subcontractor shall remove from and about the Project waste materials, rubbish, and Subcontractor's tools, construction equipment, machinery, and surplus materials.

**9.15** Subcontractor shall, at all times, provide Contractor and Architect/Engineer access to the Work wherever located.

**9.16** Subcontractor shall pay all royalties and license fees relating to its Work, shall defend suits or claims of infringement by the Work of a third party's intellectual property rights, and shall indemnify, defend, and hold Contractor harmless from loss on account thereof, but shall not be responsible for such defense or loss when a particular design, process, or product of a particular manufacturer or manufacturers is required by the Contract Documents, unless Subcontractor has reason to believe that there is an infringement of patent and fails to notify Contractor in writing prior to furnishing the Work.

**9.17** To the fullest extent permitted by law, Subcontractor shall defend, indemnify, and hold harmless Contractor, Architect/Engineer, Owner, and the Owner's lessees, and each of them, and their respective agents and employees of any of

Subcontractor<br>Initials    <em>JD</em>

6



|  | |
|---|---|
| **P.O. No.:** | **1900290-001** |
| **Project Name:** | **Wonder Lofts** |
| **Address:** | **720 Clinton Street** |
| | **Hoboken, New Jersey 07030** |
| **Job No:** | **19-00-290** |

them from and against claims, liens, damages, losses and expenses (including but not limited to attorneys' fees and expert and consulting costs), penalties, fines, assessments, arising out of or resulting from performance of the Work, including, without limitation, damage, loss or expense attributable to defective workmanship, non-conforming Work, non-conforming submittals, OSHA fines and assessments, bodily injury, sickness, disease or death, or injury to or destruction of tangible property, including loss of use resulting there from, but only to the extent caused in whole or in part by acts or omissions of the Subcontractor, Subcontractor's Lower Tiers, anyone directly or indirectly employed by them or anyone for whose acts they may be liable.  Subcontractor shall defend and indemnify Contractor and hold Contractor harmless from the above-referenced claims regardless of whether such claim is caused or alleged to be caused in part by any joint or concurrent negligent act (either active or passive) or omission by a party indemnified hereunder; provided however, that Subcontractor shall not be obligated to indemnify for those claims to the extent that the same arise from the sole negligence or willful misconduct of Contractor or Contractor's agents, servants or independent contractors who are directly responsible to Contractor, excluding Subcontractor herein,. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity that would otherwise exist as to a party or person described in this Paragraph.  To the fullest extent permitted by applicable law, the Subcontractor shall further indemnify and hold harmless the Contractor, Architect/Engineer and Owner from and against any and all costs, loss and expense, liability, damages, settlements, or claims for damages (including attorneys' fees and costs for defending any action) suffered, incurred or arising from mechanics' liens by Subcontractor, or liens or other payment claims by Subcontractor's laborers, unions, or Lower Tiers.  In the event that a Lower Tier of Subcontractor files a mechanics' lien against the Project or Property of Owner, Subcontractor shall, immediately upon demand of Contractor, promptly cause such lien to be formally released, bonded off in accordance with applicable statutes, or otherwise satisfied.  Until Subcontractor satisfies its obligations under this paragraph, Contractor shall be entitled to retain from any sums due Subcontractor, an amount equal to two (2) times the amount of any such claim, demand, damage, fine, assessment, penalty, lien or other potential liability.  If Subcontractor fails to immediately remove or satisfy a Lower Tier lien, then Contractor has the right to settle, pay, remove, or bond off Subcontractor's Lower Tier lien/claim and deduct that payment and/or all associated administrative costs, attorney's fees, and bond premium from the Subcontractor balance.  If the Subcontract balance is deficient then Subcontractor must immediately refund the deficiency to Contractor.

**9.18**      In claims against any person or entity indemnified under Paragraph 9.17 by an employee of the Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts Subcontractor may be liable, the indemnification obligation shall not be limited by any limitation on amount or type of damages, compensation or benefits payable by or for the Subcontractor under workers' or workmen's compensation acts, disability benefit acts or other employee benefit acts, such immunity and related defenses being hereby expressly waived.  All such immunity and/or limitations of liability, including without limitation any such immunity or liability limitation defenses under Ohio Constitution Article 2, Section 35 and Ohio Revised Code, Workers' Compensation Act section 4123.74, are hereby waived by Subcontractor.

## ARTICLE 10
### ADMINISTRATION OF THE AGREEMENT

**10.1**      Contractor will provide administration of the Agreement (1) during construction, (2) until final payment is due, and (3) with Subcontractor's concurrence, from time to time during the correction period described in Paragraph 18.1.

**10.2**      Notwithstanding anything in this Agreement or the Contract Documents to the contrary, Contractor reserves the right to permit the Architect to handle review and certification of Applications for Payment and inspections (including, without limitation, for purposes of establishing Substantial Completion and Final Completion) directly.  Contractor shall be entitled, without limitation, to all the Architect/Engineer's rights under the Contract Documents to delay or refuse to certify Applications for Payment or Certificates for Payment or to determine whether and to what extent the Work or any designated portion thereof has achieved Substantial Completion or Final Completion.

**10.3**      Contractor shall have the unrestricted right to visit the Project site and access the Work (a) at all reasonable times to assess the progress of the Work, and (b) at any time, including without limitation on weekends or after hours, as may be necessary in the case of an emergency, work stoppage, or at any other time(s) that Contractor, in its sole discretion, requires such access.  Without limiting the foregoing, Contractor will visit the Project site at intervals appropriate to the stage of

Subcontractor
Initials

**Geis Construction South, LLC.**



| | |
|---|---|
| **P.O. No.:** | **1900290-001** |
| **Project Name:** | **Wonder Lofts** |
| **Address:** | **720 Clinton Street** |
| | **Hoboken, New Jersey 07030** |
| **Job No:** | **19-00-290** |

construction to become generally familiar with the progress and quality of the completed Work and to determine in general if the Work is being performed in a manner indicating that the Work, when completed, will be in accordance with the Contract Documents. However, Contractor will not be required to make exhaustive or continuous on-site inspections to check quality or quantity of the Work.

**10.4** Contractor will not have control over or charge of and will not be responsible for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work, since these are solely Subcontractor's responsibility as provided in this Agreement. The Architect/Engineer will not be responsible to Subcontractor for Subcontractor's failure to carry out the Work in accordance with the Contract Documents. Subcontractor shall not be entitled to rely on Contractor's inspections to insure compliance with this Agreement. Subcontractor shall be solely responsible for such compliance and quality control.

**10.5** Contractor will interpret and decide matters concerning performance under any requirements of the Agreement and the Contract Documents on written request of Subcontractor. All decisions of the Architect/Engineer that are final and binding on Contractor shall equally bind Subcontractor.

**10.6** Contractor will have authority to reject Work that does not conform to the Contract Documents.

**10.7** Contractor will review and approve or take other appropriate action upon Subcontractor's submittals such as Shop Drawings, Product Data and Samples, but only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents.

**10.8** In Contractor's sole discretion, any and all claims or disputes between Contractor and Subcontractor arising out of or relating to this Agreement or the Contract Documents, or the breach thereof, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect, unless the parties mutually agree otherwise. Notice of the demand for arbitration shall be filed in writing with the other party to this Agreement and with the American Arbitration Association and shall be made within a reasonable time after the dispute has arisen. The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof. Contractor, at its sole option, shall have the right to join in such proceedings any person or entity that is substantially involved in a common question of fact or law, and Subcontractor hereby waives the right to challenge Contractor's decisions relative to joinder. This agreement to arbitrate and any other written agreement to arbitrate referred to herein shall be specifically enforceable under applicable law in any court having jurisdiction thereof. Any arbitration or other dispute resolution shall be exclusively venued in Cleveland, Ohio unless Contractor, in its sole discretion, elects another venue.

**10.9** This Project will utilize Procore's (www.procore.com) project management and collaboration system for all Project documentation. Subcontractor will be invited to, and is required to create a Procore username (email) and password if it does not already have one. Subcontractor must obtain drawings, sketches, RFIs, the Project Schedule (and any updates thereto), meeting minutes, coordination drawings, change information, etc. by using Procore. Contractor may notify Subcontractor as relevant items are added or revised; however, it will be the responsibility of Subcontractor to regularly check and review documents as they are added or updated. If Subcontractor does not promptly notify Contractor of any objection to an update to the Project Schedule, Subcontractor shall be deemed to have agreed to such updated Project Schedule. Applicable team members of Subcontractor are required to complete a free, one-hour subcontractor training certification course located at http://learn.procore.com/procore-certification-subcontractor within (2) two weeks following execution of this Agreement. There will be no cost to Subcontractor for use of Procore.

It is mandatory that Subcontractor provide mobile iOS or Android devices with the Procore App installed to on-site staff to provide real-time access to current posted drawings, specifications, RFIs, submittals, the Project Schedule, Change Orders, Commitments, project documents, as well as any deficient observations or punch list items. Providing mobile access will improve communication, efficiency, and productivity for all parties.

Failure to use Procore is a breach of this Agreement, and Subcontractor agrees to reimburse Contractor $65 an hour for administrative help and any direct costs (equipment purchases for subcontractor's benefit) Contractor incurs due to Subcontractor's failure to use Procore. Contractor may deduct these costs from amounts due Subcontractor.

Subcontractor Initials **JD**

8

**Geis Construction South, LLC.**



|  |  |
|---|---|
| **P.O. No.:** | **1900290-001** |
| **Project Name:** | **Wonder Lofts** |
| **Address:** | **720 Clinton Street** |
| | **Hoboken, New Jersey 07030** |
| **Job No:** | **19-00-290** |

## ARTICLE 11
### SUBCONTRACTS

**11.1**     Subcontractor, as soon as practicable after award of the Agreement, shall furnish in writing to Contractor the names of the Lower Tier subcontractors for each of the principal portions of the Work.  Proposed Lower Tiers shall be established, reputable firms of recognized standing with a record of successful and satisfactory past performance with the type of work and/or items proposed to be provided or furnished by them.  Subcontractor shall not contract with any lower-tier subcontractor to whom Contractor, Owner, or Architect/Engineer has made reasonable and timely objection.  Contracts between Subcontractor and any Lower Tier shall (a) require each Lower Tier, to the extent of the Work to be performed by the Lower Tier, to be bound to Subcontractor by the terms of this Agreement and the Contract Documents and to assume toward Subcontractor all the obligations and responsibilities that Subcontractor, by the Contract Documents and this Agreement, assumes toward Contractor, and (2) to the maximum extent permitted by applicable law, prohibit the filing of mechanic's liens against the Project and property of Owner.

## ARTICLE 12
### CONSTRUCTION BY CONTRACTOR OR
### BY SEPARATE SUBCONTRACTORS

**12.1**     Contractor reserves the right to perform construction or operations related to the Project with Contractor's own forces, and to award separate subcontracts in connection with other portions of the Project or other construction or operations on the Project site under conditions of the contract substantially similar to these, including those portions related to insurance and waiver of subrogation.  If Subcontractor claims that delay, hindrance, interference, or additional cost is involved because of such action by Contractor, Subcontractor shall make such claim in writing within two (2) days of the occurrence giving rise to the claim, as provided herein or in the Contract Documents, otherwise Subcontractor waives such claim.  Subcontractor acknowledges and agrees that Subcontractor's recovery of damages on account of any claims for delay, disruption, hindrance, interference, extra work, or other impact costs or damages shall be limited to the amounts actually paid by Owner or other subcontractor to Contractor as a result thereof, all other rights and claims being hereby expressly waived.

**12.2**     Subcontractor shall afford Contractor and separate subcontractors of Contractor reasonable opportunity for the introduction and storage of their materials and equipment and performance of their activities, and shall connect and coordinate Subcontractor's construction and operations with theirs as required by the Contract Documents and Project Schedule.

**12.3**     Costs caused by delays, hindrance, interference, improperly timed activities, or defective construction shall be borne by Subcontractor.

## ARTICLE 13
### CHANGES IN THE WORK / CLAIMS

**13.1**     A Change Order is a written order signed by Contractor and Subcontractor authorizing a change in the Work and/or adjustment in the Contract Sum or Substantial Completion Date.  The Contract Sum and Substantial Completion Date may be changed only by a signed Change Order.

**13.2**     Contractor may order changes in the Work within the general scope of the Agreement consisting of additions, deletions, or other revisions, and the Contract Sum and Substantial Completion Date may be adjusted accordingly so long as Subcontractor notifies Contractor in writing within two (2) days that the proposed change order will require an adjustment to the Contract Sum or Substantial Completion Date and provides Contractor with information necessary to support Subcontractor's request, and if Contractor agrees with Subcontractor's request and then memorializes the same in the written Change Order.  Such changes in the Work shall be authorized by Change Order prior to making the change or performing additional work, and shall be performed under applicable conditions of the Contract Documents.  If after receipt of written notice from Subcontractor, there is the absence of complete or partial agreement relative to the adjustment of the Contract Sum or the Substantial Completion Date, the Contractor may direct the changed work to proceed by way of a written Construction Change Directive, which will advise Subcontractor of Contractor's selected method for pricing the change in accordance with this ARTICLE 13.

Subcontractor
Initials     _JD_

9

**Geis Construction South, LLC.**



|  |  |
|---|---|
| P.O. No.: | 1900290-001 |
| Project Name: | Wonder Lofts |
| Address: | 720 Clinton Street |
|  | Hoboken, New Jersey 07030 |
| Job No: | 19-00-290 |

13.3    Subcontractor's failure to obtain a signed Change Order or Construction Change Directive prior to commencing or completing any extra work, or incurring any additional cost shall conclusively constitute a waiver of any and all claims for additional compensation or extension of time.  The cost of any work, or the extension of time, reflected in any Change Order or Construction Change Directive that is signed by Contractor and Subcontractor shall represent a full accord and satisfaction of any and all claims for additional time or compensation relating directly or indirectly to the work described therein, including ripple effect or cumulative impact costs.

13.4    The cost or credit to Contractor resulting from any change in the Work shall be in accordance with the Contract Documents, or if not identified in the Contract Documents, determined as follows:

(a)    The cost of such changed Work shall be determined on the basis of reasonable expenditures and savings of those performing the Work attributable to the change, including the expenditures for design services and revisions to the Contract Documents.  In case of an increase in the Contract Sum, Subcontractor shall be entitled to a maximum ten percent (10%) mark-up on cost as Subcontractor's fee for its overhead and profit.  Subcontractor shall keep and present an itemized accounting together with appropriate supporting data for inclusion in a Change Order.  In case of a decrease in the Contract Sum, Contractor shall be entitled to ten percent (10%) increase over Subcontractor's cost as reimbursement for Subcontractor's savings on overhead and profit.  Unless otherwise provided in the Contract Documents, cost shall be limited to the following:  cost of materials, including sales tax and cost of delivery; cost of labor, including social security, old age and unemployment insurance, and fringe benefits required by agreement or custom; workers' or workmen's compensation insurance; bond premiums; rental value of equipment and machinery; additional costs of supervision and field office personnel directly attributable to the change; and fees paid to design professionals, engineers, and other professionals; or

(b)    The unit costs, if any, contained in the Contract Documents or negotiated between the parties and confirmed in writing; or

(c)    An agreed upon lump sum price; or

(d)    With respect to additional design services provided by Subcontractor's own employees and personnel, Subcontractor agrees to charge, and Contractor agrees to pay, for such services according to the rate schedule attached as Exhibit E, without additional mark-up for overhead and profit.  It is understood and agreed that the hourly rates in Exhibit E are inclusive of all overhead and profit for such additional hourly services.

13.5    Pending final agreement on the total cost of a Construction Change Directive, amounts not in dispute for such changes in the Work shall be included in applications for payment accompanied by a Change Order indicating the parties' agreement with all or part of the costs.

13.6    If concealed or unknown conditions of an unusual nature affect the performance of the Work or are encountered above or below ground or in an existing structure other than the Work, which conditions are not ordinarily found to exist or which differ materially from those generally recognized as inherent in Work of the character provided for in the Contract Documents, then written notice by the observing party shall be given promptly to the other party and, if possible, before conditions are disturbed, and in no event later than forty eight (48) hours after first observance of the conditions.  To the extent permitted by the Contract Documents, the Contract Sum may be equitably adjusted for such concealed or unknown conditions by Change Order upon claim by either party made in writing within forty eight (48) hours after the claimant becomes aware of the conditions.  In the event that the Contract Documents transfer the risk of differing or changed conditions to Contractor, and Contractor has no recourse against Owner with regard thereto, then Subcontractor hereby assumes the risk of differing or changed conditions and waives such claims against Contractor.

13.7    To the maximum extent permitted by applicable law, Subcontractor agrees that it shall not be entitled to recover any damages from Contractor on account of claims for additional compensation of whatever kind or description unless and until Contractor recovers and collects such damages from Owner, it being agreed that such recovery and collection from Owner is an absolute condition precedent to Subcontractor's right of recovery from Contractor.  Contractor shall act as a conduit for

Subcontractor
Initials   *JD*

10

**Geis Construction South, LLC.**



|  |  |
|---|---|
| P.O. No.: | **1900290-001** |
| Project Name: | **Wonder Lofts** |
| Address: | **720 Clinton Street** |
|  | **Hoboken, New Jersey 07030** |
| Job No: | **19-00-290** |

Subcontractor's claims, and Subcontractor shall be obligated to compensate Contractor for all costs and expenses, including legal and consulting fees and administrative expenses, that Contractor incurs to present Subcontractor's claims to Owner for consideration or payment or to arbitrate, mediate, or litigate such claims. Subcontractor shall furnish all required testimony and documentation to support its claims. Contractor assumes no fiduciary responsibility for prosecution and recovery on Subcontractor's behalf. In the event that Contractor recovers and collects damages from Owner on account of Subcontractor's claims through negotiation, litigation, mediation, or arbitration, then Contractor shall tender to Subcontractor the amount actually recovered and collected less the cost of prosecution and administration, and Subcontractor shall accept that amount as payment in full for its claims and damages releasing Contractor from any additional liability or damages on the claims. If the claim is denied or the amount claimed or recovered is not collected, Subcontractor shall release Contractor from any and all liability for the claims and damages.

**13.8**     It is understood and agreed that Subcontractor shall present all claims in strict accordance with the time limits and documentation requirements in this Agreement and in the Contract Documents, so as to permit Contractor to mitigate damages and advise the Owner. To the extent not covered elsewhere in the Agreement, all claims or requests relating to the Contract Sum or schedule of the Work must be made in writing with supporting detail and documentation within four (4) days of Subcontractor's discovery of the claim, or when Subcontractor otherwise should have discovered the claim with the exercise of reasonable diligence, whichever is earlier. Subcontractor's failure to strictly comply with this provision, and similar provisions in this Agreement and the Contract Documents, shall be conclusively presumed to constitute a waiver of Subcontractor's rights and claim.

**13.9**     To the extent any notice is required under this Agreement, Subcontractor shall give the Project Manager and Contractor President such written notice, of any and all claims related to the Work, with supporting detail and documentation, within the time required but no later than four (4) days of the occurrence of the event for which the claim is made; otherwise, such claims shall be deemed waived.

## ARTICLE 14
## TIME

**14.1**     Subcontractor shall provide services as expeditiously as is consistent with the standards of skill and care set forth in this Agreement applicable to the Work, and the orderly progress of design and construction.

**14.2**     Time limits stated in the Contract Documents are of the essence of this Agreement. The Work to be performed under this Agreement shall commence upon execution of this Agreement and, subject to authorized modifications, Substantial Completion shall be achieved on or before the Substantial Completion Date. Dates set forth on the Project Schedule shall not be modified without Contractor's prior written approval.

**14.3**     If Subcontractor fails to achieve Substantial Completion on or before the Substantial Completion Date, Subcontractor shall pay to Contractor (by direct payment or offset from the Contract Sum, at Contractor's sole option) the amount of $1,000.00 per day for each day that the Work is not substantially completed after the Substantial Completion Date, or any Milestone Date. Contractor and Subcontractor agree that the foregoing liquidated damages are reasonable and bear a relationship to the damages that Contractor might sustain for unanticipated Project-related administrative costs on account of Subcontractor's failure to timely complete the Work. The parties agree that the liquidated damages are not intended to be, and in no event shall be construed to be, a penalty, but are intended as fixed damages agreed to by the parties as settlement of damages in advance in the event of Subcontractor's failure to timely complete the Work. The foregoing liquidated damages are intended only to cover the Project-related administrative damages suffered by the Contractor as a result of delay and shall not be deemed to cover the cost of completion of the Work, damages resulting from defective Work, damages suffered by others who then seek to recover damages from Contractor (for example, liquidated damages of Owner, or delay claims of other contractors or subcontractors), and defense costs thereof or any other damages available to Contractor at law, in equity, or under the Agreement (the "delay claims"). All other delay claims of Contractor are reserved and will be resolved in accordance with the provisions in this Agreement.

**14.4**     If Subcontractor is delayed in the progress of the Project by acts or neglect of Contractor, Contractor's employees, changes ordered in the Work not caused by the fault of Subcontractor, fire, unusual and adverse weather conditions,

Subcontractor
Initials _____

11

**Geis Construction South, LLC.**



|  |  |
|---|---|
| P.O. No.: | 1900290-001 |
| Project Name: | Wonder Lofts |
| Address: | 720 Clinton Street |
|  | Hoboken, New Jersey 07030 |
| Job No: | 19-00-290 |

unavoidable casualties, delay authorized by Contractor, code or building/zoning/occupancy permit-related delays beyond Subcontractor's reasonable control, or another cause that Contractor agrees is justifiable, or by any other reason beyond the reasonable control of Subcontractor, then the Substantial Completion Date may be equitably extended by Change Order; provided that (a) Subcontractor gives Contractor timely notice of the delay, (b) the Owner permits the Substantial Completion Date to be extended, and (c) the delay was to critical path Work.

**14.5**    Subcontractor expressly waives its right to recover extended home office overhead damages, extended field office overhead damages, additional supervision costs, additional equipment costs, or any other indirect expenses arising from or relating to a delay, disruption, suspension, hindrance or interference for which Contractor or Owner is responsible.  In the event of an excusable delay, suspension or disruption of Subcontractor's work, Subcontractor's claim for additional compensation shall be limited only to additional costs associated with escalation of material costs or escalation of hourly labor costs, and Subcontractor agrees to accept such damages as its sole remedy.

## ARTICLE 15
## PAYMENTS AND COMPLETION

**15.1**    Payments shall be made as provided in ARTICLE 4 and ARTICLE 5 of this Agreement.  Concurrent with the submittal of each Application for Payment, Subcontractor shall furnish Affidavits and Waivers of Lien by Subcontractor and all of Subcontractor's Lower Tiers evidencing that all wages for labor and all invoices for material or services that were included in the previous Application for Payment for which payment was made, have been paid in full.  Furnishing of such Affidavits and Waivers of Lien, in the form approved by Contractor, shall be a condition to payment.  Unconditional Lien Waivers from Subcontractor and all lower tiers shall be submitted with Subcontractor's Application for Final Payment.

**15.2**    Payments may be withheld on account of (a) defective Work not remedied, (b) claims filed by third parties, (c) failure of Subcontractor to make payments properly to its Lower Tiers, (d) reasonable evidence that the Work cannot be completed for the unpaid balance of the Contract Sum, (e) damage to Contractor, Owner, or another subcontractor of Contractor, (f) reasonable evidence that the Work will not be completed within the Contract Time and that the unpaid balance would not be adequate to cover actual or liquidated damages for the anticipated delay, (g) failure to carry out the Work in accordance with the Agreement or the Contract Documents, or (h) failure to carry and maintain the insurance coverage required by the Agreement.  Contractor may also nullify a previously authorized payment in whole or in part, to such extent as is necessary, in Contractor's opinion, to protect Contractor or Owner from loss for which Subcontractor is responsible.

**15.3**    When Contractor agrees that the Work is substantially complete, Contractor will, upon Subcontractor's written request and in Contractor's discretion, issue a Certificate of Substantial Completion.  If a certificate of occupancy is required by law in order for the Owner to lawfully occupy the Project, then the Work shall not be deemed substantially complete unless and until such certificate of occupancy is issued to the extent applicable to Subcontractor's Work.

**15.4**    Final payment shall not become due until Subcontractor has delivered to the Contractor all Warranties, Operating & Maintenance Manuals, test data and other close-out documents applicable to the Work, a complete release of all liens arising out of this Agreement or receipts and Waivers in full covering all labor, materials and equipment for which a lien could be filed, or a bond satisfactory to Contractor to indemnify Contractor and Owner against such lien.  If such lien remains unsatisfied after payments are made, Subcontractor shall refund to Contractor all money that Contractor may be compelled to pay in discharging such lien, including all costs, bond premiums, and reasonable attorneys' fees.

**15.5**    The making of final payment by Contractor shall not constitute a waiver of any rights or claims Contractor may have against Subcontractor, including those arising from:

      (a)     liens, claims, security interests or encumbrances arising out of the Agreement and unsettled;

      (b)     failure of the Work to comply with the requirements of the Agreement and the Contract Documents; or

      (c)     terms of special warranties required by the Contract Documents.

Subcontractor
Initials  _JD_

12

**Geis Construction South, LLC.**



|  |  |
|---|---|
| **P.O. No.:** | **1900290-001** |
| **Project Name:** | **Wonder Lofts** |
| **Address:** | **720 Clinton Street** |
|  | **Hoboken, New Jersey 07030** |
| **Job No:** | **19-00-290** |

**15.6** Acceptance of final payment by Subcontractor shall constitute a waiver of claims by Subcontractor of all claims, demands and damages of Subcontractor, except those previously made in writing and identified by Subcontractor as unsettled at the time of submission of the final Application for Payment.

**15.7** Subcontractor acknowledges and agrees that, any payment that is allegedly due from Contractor to Subcontractor, whether for the original scope of Work or for any extra work or impact or schedule damage claims, are expressly conditioned upon Contractor's receipt of payment from Owner. To the maximum extent permitted by applicable law, Contractor's obligation to pay Subcontractor expressly is contingent and conditioned on Contractor's actual receipt of payment from Owner for Subcontractor's Work or claims. Subcontractor voluntarily assumes the risks associated with the creditworthiness of Owner, or Contractor's ability to actually recover damages from Owner for any reason.

### ARTICLE 16
### PROTECTION OF PERSONS AND PROPERTY

**16.1** Subcontractor shall be responsible for initiating, maintaining, and supervising all safety precautions and programs in connection with the performance of the Work required by this Agreement. Subcontractor shall take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury, or loss to:

(a) employees engaged in the Work and other persons who may be affected thereby;

(b) the Work and materials and equipment to be incorporated therein; and

(c) other property at the Project site or adjacent thereto.

Subcontractor shall give notices and comply with applicable laws, ordinances, rules, regulations, and lawful orders of public authorities bearing on safety of persons and property and their protection from damage, injury, or loss. Subcontractor shall promptly remedy damage and loss to property at the site caused in whole or in part by Subcontractor, a Lower Tier, or anyone directly or indirectly employed by any of them, or by anyone for whose acts they may be liable and for which Subcontractor is responsible, except for damage or loss attributable to acts or omissions of Contractor, or by anyone for whose acts Contractor may be liable, and not attributable in any way to any fault or negligence or omission of Subcontractor. The foregoing obligations of Subcontractor are in addition to Subcontractor's obligations under ARTICLE 9.

### ARTICLE 17
### INSURANCE

**17.1** Subcontractor shall purchase and maintain insurance for protection from claims under workers' or workmen's compensation acts and other employee benefit acts which are applicable, claims for damages because of bodily injury, including death, and from claims for damages, other than to the Work itself, to property that may arise out of or result from Subcontractor's operations under the Agreement, whether such operations be by Subcontractor, a lower-tier of Subcontractor, or anyone directly or indirectly employed by any of them. This insurance shall be written for not less than limits of liability specified in **Schedule 6** attached hereto and made a part hereof, and shall include contractual liability insurance applicable to Subcontractor's obligations under ARTICLE 9.

**17.2** myCOI REQUIREMENT. Contractor's insurance is managed and monitored through myCOI. Subcontractor agrees to utilize myCOI in connection with this Agreement. Subcontractor or Subcontractor's insurance agent/broker will contact myCOI at support@mycoitracking.com and will timely respond to all emails, notices, and inquiries from myCOI within forty-eight (48) hours of receipt.

**17.3** In addition to the coverage listed in Schedule 6, Subcontractor, at its expense, shall obtain prior to the commencement of the Work and maintain in effect (and furnish Contractor certificates in triplicate or, if requested by Contractor, copies of the policies evidencing that it has in effect), the following insurance coverages and minimum limits with insurance carriers acceptable to Contractor:

(a) <u>Commercial General Liability</u> - This insurance shall be written on an occurrence basis with limits not less than $1,000,000.00 per occurrence and $2,000,000.00 annual aggregate. The policy shall include coverage for Premises/Operations, Independent Contractors, Contractual Liability (sufficient to cover the liability

13

Subcontractor
Initials _____

**Geis Construction South, LLC.**



|  | P.O. No.: | 1900290-001 |
|---|---|---|
|  | Project Name: | Wonder Lofts |
|  | Address: | 720 Clinton Street |
|  |  | Hoboken, New Jersey 07030 |
|  | Job No: | 19-00-290 |

assumed by the Subcontractor under the Agreement), Property Damage arising out of the "XCU" hazards, Completed Operations, Products Liability, Broad Form Property Damage, and Personal Injury. The Completed Operations coverage shall be maintained for at least three (3) years after the final completion of the Project of which the Work are a part. If the policy contains a general aggregate limitation, then the policy shall be endorsed to provide a $1,000,000.00 specific aggregate for the Work under this Agreement.

(b)  Business Automobile Liability - The policy shall contain limits of not less than $1,000,000.00 Combined Single Limit and include coverage for all Owned, Hired and Non-owned automobiles.

(c)  Excess/Umbrella Liability - The policy(ies) shall be written with limits of not less than $2,000,000.00 Combined Single Limit and shall be endorsed in the same form and manner as the Commercial General Liability, Business Automobile Liability, and Employer's Liability coverages.

(d)  Professional Liability - If Subcontractor is performing design or other professional Services, professional liability (errors and omissions) coverage with a minimum limit of $2,000,000 for each occurrence and $2,000,000 annual aggregate. If the professional liability (errors and omissions) insurance is written on a claims made basis, then such insurance shall have a retroactive date no later than the date of the Agreement and shall include a supplemental extended reporting period provision. Subcontractor shall require each of its subcontractors and consultants providing engineering or architectural services to maintain separate errors and omissions (professional liability) insurance coverages to protect against claims or damages arising out of the performance of their respective services in furtherance of the Agreement.

The policies of insurance and coverage forms shall be in a form acceptable to Contractor and Contractor's agent and shall be written by carriers who are duly licensed to provide coverage in the jurisdiction(s) where the Project is located (and the Work is performed, if different). Each policy (with the exception of any policies for professional liability) shall be properly endorsed to name Contractor as an additional insured for liabilities, claims, or risks arising out of the Work. Subcontractor's insurance policies and coverages also shall be endorsed so as to primary and noncontributory to any liability insurance carried by Contractor for the same risk. No policy of insurance naming Contractor as an additional insured shall contain any exclusion or prohibition against first-party claims or claims by any party named as an additional insured. In lieu of naming Contractor as an additional insured as required herein, and with Contractor's express written consent, Subcontractor, at its sole cost and expense, may purchase an Owner's & Contractor's Protective Liability Policy on behalf of Contractor, all in form and substance acceptable to Contractor. Certificates of Insurance, and copies of policies if requested, acceptable to the Contractor shall be delivered to the Contractor prior to commencement of the Work. Any insurance policies required by this paragraph shall not be canceled or allowed to expire until at least thirty days (30) prior written notice has been given to Contractor. The foregoing insurance coverages are required to remain in full force and effect for a period of three (3) years after final payment by Contractor to Subcontractor, and an additional certificate evidencing continuation of such coverage shall be submitted to the Contractor prior to final payment. Contractor or Subcontractor, as appropriate, shall require from its Lower Tiers by appropriate agreements, written where legally required for validity, similar waivers each in favor of other parties enumerated in this Paragraph.

17.4     Contractor and Subcontractor waive all rights against each other, each other's subcontractors, agents, and employees, and the Owner, Architect/Engineer, Architect/Engineer's consultants, and separate subcontractors described in Article 12, if any, for damages caused by fire or other perils to the extent covered by property insurance applicable to the Project or the Work, if any, except such rights as they may have to the proceeds of such insurance. Subcontractor shall require similar waivers in favor of Contractor and Owner from Subcontractor's Lower Tiers.

## ARTICLE 18
### CORRECTION OF WORK

18.1     Subcontractor shall (a) promptly correct Work rejected by Contractor or known by Subcontractor to be defective or failing to conform to the Contract Documents, whether observed before or after Substantial Completion and whether or not fabricated, installed or completed, and (b) correct Work found to be defective or nonconforming within a period of one (1)

Subcontractor
Initials

**Geis Construction South, LLC.**



|  | P.O. No.: | 1900290-001 |
|--|--|--|
|  | Project Name: | Wonder Lofts |
|  | Address: | 720 Clinton Street |
|  |  | Hoboken, New Jersey 07030 |
|  | Job No: | 19-00-290 |

year from the date of Substantial Completion of the Work or within such longer period provided by controlling law or any applicable warranty in the Contract Documents.

18.2     Nothing contained in this Agreement shall be construed to either (a) establish a period of limitation with respect to other obligations of Subcontractor, or (b) otherwise limit or waive any of Contractor's claims, rights, or remedies under this Agreement, at law, or in equity.  Paragraph 18.1 relates only to the specific obligation of Subcontractor to correct the Work and has no relationship to the time within which the obligation to comply with the Contract Documents may be sought to be enforced, nor to the time within which proceedings may be commenced to establish Subcontractor's liability with respect to Subcontractor's obligations other than correction of the Work.

18.3     If Subcontractor fails to correct Work that is not in accordance with the requirements of this Agreement and the Contract Documents, fails to adequately staff or man the Project, or fails to carry out Work in accordance with the Contract Documents or Project Schedule, then Contractor, by written order signed personally or by an agent specifically so empowered by Contractor in writing, and without waiving any of its other rights and remedies under this Agreement, at law, or in equity, may order Subcontractor to stop the Work or any portion thereof until the cause for such order has been eliminated, or Contractor may supplement Subcontractor's forces to complete or correct the defective Work and deduct all associated costs, including administrative and legal fees, from the balance of the Subcontract Sum; however, Contractor's right to stop the Work or supplement Subcontractors forces shall not give rise to a duty on the part of the Contractor to exercise the right for benefit of the Subcontractor or other persons or entities.  Contractor shall not be liable for damages on account of such suspension or stop work order.

18.4     If Subcontractor defaults or neglects to carry out the Work in accordance with the Contract Documents and fails within forty eight (48) hours after receipt of written notice from Contractor to commence and continue correction of such default or neglect with diligence and promptness, Contractor may, without prejudice to other remedies the Contractor may have, correct such deficiencies.  In such case an appropriate Change Order shall be issued deducting from payments then or thereafter due to Subcontractor the costs of correcting such deficiencies.  If the payments then or thereafter due to Subcontractor are not sufficient to cover the amount of the deduction, Subcontractor shall pay the difference to Contractor.  Such action by Contractor shall be without prejudice to any other rights or remedies of Contractor including, without limitation, those set forth in ARTICLE 9 and ARTICLE 10.

Furthermore, with regard to any loss covered or paid under any policy of insurance of Subcontractor, Subcontractor, for itself and its insurer, waive and release any and all claims of subrogation against Contractor and Contractor's insurer(s).

### ARTICLE 19
### MISCELLANEOUS PROVISIONS

19.1     This Agreement shall be governed by the law of the State of Ohio.

19.2     Should any workers performing the Work engage in a strike or other work stoppage or cease to work due to picketing or a labor dispute of any kind (except those to which Contractor is a party), Contractor may, at its option and without prejudice to any other remedies it may have, after five (5) days' notice to Subcontractor and opportunity to cure, provide any such labor and deduct the cost thereof from any monies then due or thereafter to become due Subcontractor. Further, Contractor may at its option, without prejudice to any other remedies it may have, after five (5) days' notice to Subcontractor and opportunity to cure, terminate this Agreement pursuant to ARTICLE 20.

19.3     (a) All rights granted to Contractor hereunder shall be in addition to, and not in lieu of, Contractor's rights arising by operation of law or in equity; (b) any provisions of this Agreement that are typewritten or handwritten by Contractor and initialed by Contractor shall supersede any contrary or inconsistent printed provisions; (c) no modification of the terms of this Agreement shall be valid unless in writing and signed by Contractor; (d) should any of the provisions of this Agreement be declared by a court of competent jurisdiction or any arbitrator to be invalid, such decision shall not affect the validity of any remaining provisions; (e) all of the terms herein shall apply to additional quantities of merchandise or services or work ordered by Contractor except to the extent covered by a new Agreement; (f) the failure of Contractor to enforce at any time or for any period of time any of the provisions hereof shall not be construed to be a waiver of such provisions or of the right of Contractor at any time to enforce each and every such provision, and (g) this Agreement, together with any information or

15

Subcontractor
Initials



|  | P.O. No.: | 1900290-001 |
|---|---|---|
|  | Project Name: | Wonder Lofts |
|  | Address: | 720 Clinton Street |
|  |  | Hoboken, New Jersey 07030 |
|  | Job No: | 19-00-290 |

documents incorporated herein by reference, shall be deemed to contain the entire agreement between Contractor and Subcontractor and to constitute the complete and exclusive expression of the terms of the agreement, all prior or contemporaneous written or oral agreements or negotiations with respect to the subject matter hereof being merged herein.

**19.4**     For good and valuable consideration, including the negotiated price for the Work, under this Agreement, and to the maximum extent permitted by applicable law, Subcontractor unconditionally waives and releases any and all mechanics' lien rights or claims of lien rights against the property or project or Contractor, or any and all attested account rights.  To the maximum extent permitted by applicable law, Subcontractor agrees not to file any mechanics' liens or attested accounts to secure payment under this Agreement.  Subcontractor further agrees that any such lien shall be void and unenforceable and shall constitute a substantial and material breach of this Agreement.  Contractor shall be entitled to set off against any sums due or to become due Subcontractor under this Purchase Order an amount equal to two times the amount of the lien claim of Subcontractor or any of Subcontractor's Lower Tiers.  Contractor shall be entitled to recover from Subcontractor the attorneys' fees, bond premiums, and expenses that Contractor incurs to defend and/or discharge any such mechanics' lien.

**19.5**     Subcontractor shall not discriminate against any employee or applicant for employment because of race, religion, color, sex, sexual orientation, national origin, disability, age, ethnic group, military status, Vietnam era or disabled veteran status or ancestry.  Subcontractor shall take affirmative action to ensure that applicants for employment are considered for employment, and that employees are treated during employment, without regard to their race, religion, color, sex, sexual orientation, national origin, disability, age, ethnic group, military status, Vietnam era or disabled veteran status or ancestry.  "Treated" means and includes, without limitation, the following: recruited, whether by advertising or by other means; compensated, whether in the form of rates of pay or other forms of compensation; selected for training, including apprenticeship; promoted; upgraded; demoted; downgraded; transferred; laid off and terminated.  Subcontractor will incorporate the requirements of this paragraph in all of its contracts for any of the work undertaken on the Project (other than contracts for standard commercial supplies or raw materials).

### ARTICLE 20
### TERMINATION OF THE CONTRACT

**20.1**     If Subcontractor defaults or fails or neglects to carry out the Work in accordance with the Contract Documents or is in default of any provision of the Agreement, Contractor, after three (3) days' written notice to Subcontractor, and without prejudice to any other remedy Contractor may have under this Agreement, at law, or in equity, may make good such deficiencies and may deduct the cost thereof, including compensation for the Architect/Engineer's and Contractor's services and expenses made necessary thereby, from the payment then or thereafter due to Subcontractor.  Alternatively, at Contractor's option, Contractor may terminate the Agreement and take possession of the site and of all materials, equipment, tools, and construction equipment and machinery thereon owned by Subcontractor and may finish the Work by whatever method Contractor may deem expedient.  If the unpaid balance of the Contract Sum exceeds costs of finishing the Work, including compensation for the Architect/Engineer's services and Contractor's Services, together with a 25% markup for overhead and profit, and expenses made necessary thereby, such excess shall be paid to Subcontractor, but if such costs exceed such unpaid balance, Subcontractor shall pay the difference to Contractor, together with any legal fees incurred by Contractor in enforcing the Agreement.  Any default termination under this Paragraph that subsequently may be determined to be unjustified or unwarranted shall be treated solely as a convenience termination under Paragraph 20.2, and Subcontractor's damages shall be limited accordingly, all other claims and rights of Subcontractor being expressly waived.

**20.2**     Contractor may terminate this Agreement at any time for Contractor's convenience, and without cause.  In such event, Subcontractor shall not be entitled to recover any anticipated lost profits on Work non-performed.  Subcontractor shall only be entitled to recover the value of Work properly completed and stored as of the date of Contractor's written notice to Subcontractor of Contractor's intent to terminate the Agreement, plus any additional work performed thereafter at the written request of Contractor, together with the cost incurred to secure the site, and the cost of any previously fabricated and stored materials that Contractor desires to retain, plus reasonable restocking charges actually paid by Subcontractor to third parties and approved by Contractor.  Cancellation costs are not permitted or compensable.

Subcontractor
Initials   *JD*

16

**Geis Construction South, LLC.**



|  |  |
|---|---|
| **P.O. No.:** | **1900290-001** |
| **Project Name:** | **Wonder Lofts** |
| **Address:** | **720 Clinton Street** |
| | **Hoboken, New Jersey 07030** |
| **Job No:** | **19-00-290** |

## ARTICLE 21
OTHER CONDITIONS OR PROVISIONS

See **Schedule 5** for additional Terms and Conditions, if applicable.


Contractor:   Geis Construction South, LLC.

**By:**  *Jeff Martin*
Jeff Martin (Jul 16, 2019)

**Title:**  **President**


Subcontractor:    M.D.C.

**By:**  *Jaime Delahunt*
Jaime Delahunt (Jul 16, 2019)

**Title:**  pres

Subcontractor
Initials 
JD

**Geis Construction South, LLC.**



|  |  |
|---|---|
| **P.O. No.:** | **1900290-001** |
| **Project Name:** | **Wonder Lofts** |
| **Address:** | **720 Clinton Street** |
| | **Hoboken, New Jersey 07030** |
| **Job No:** | **19-00-290** |

**SCHEDULE 1**

**Contractor Contact Person:**

Project Manager:  Kevin Watts

Phone: 440-454-5195

**Procore Questions:** melissah@geisco,net

**Contract Questions:** debra@geisco.net

**Submit All Documentation To:**

Geis Construction South, LLC.

C/O Construction Accounting

10020 Aurora Hudson Road

Streetsboro, OH 44241

Phone: (330)528-3500

Facsimile: (330)528-0008

Subcontractor
Initials 

18

**Geis Construction South, LLC.**



|  |  |
|---|---|
| **P.O. No.:** | **1900290-001** |
| **Project Name:** | **Wonder Lofts** |
| **Address:** | **720 Clinton Street** |
| | **Hoboken, New Jersey 07030** |
| **Job No:** | **19-00-290** |

## SCHEDULE 2

## Milestone Dates Schedule

<u>Milestone Date</u>                                              <u>Date</u>

To be Determined

### Construction Schedule

Within one week of the date of this Agreement, Subcontractor shall deliver to Contractor a construction schedule relating to Subcontractor's Work.  Contractor, in its discretion, will incorporate the information provided if acceptable to Contractor into the project construction schedule (the "Construction Schedule") consistent with the Milestone Dates Schedule and the Master Project Schedule.  The Construction Schedule information furnished by Subcontractor shall be a detailed and comprehensive schedule utilizing a critical path method (CPM) arrow diagram network that (a) shows all major elements and phases of the Project, (b) breaks down each element or phase by trade and (c) otherwise is in a form satisfactory to Contractor. Subcontractor shall investigate and recommend a schedule for the purchase of materials and equipment requiring long lead time procurement, and shall coordinate the schedule with the early preparation of the Construction Schedule.   The Subcontractor shall update the information relating to its work in relation to the Construction Schedule no less than every two weeks throughout the duration of the Project, and with each payment application.

### Meetings; Reports; Schedule Updates

Subcontractor shall attend pre-construction, construction and progress meetings to discuss such matters as procedures, progress, problems and scheduling as required and/or requested.

Subcontractor shall update and distribute, on a monthly basis, information incorporating the activities of Subcontractors and Sub-subcontractors on the Project, including processing of Shop Drawings and similar required submittals and delivery of products requiring long lead time procurement and showing current conditions and revisions required by actual experience. Subcontractor shall include the Project occupancy requirements showing portions of the Project having occupancy priority, as directed by Contractor.  Subcontractor shall maintain the progress of all Work in accordance with the Construction Schedule.

Subcontractor shall submit to Contractor a form of monthly progress report for use on the Project for Contractor's review, comment, and acceptance.  Upon acceptance by Contractor, the form of monthly Project progress report shall establish the standard for detail required for the remainder of the Project.  At a minimum, the monthly Progress Report will contain the following:  (a) listing of actual costs for completed activities and estimates for uncompleted tasks, (b) include the updated Construction Schedule, (c) progress photos, (d) an executive summary, (e) a discussion of pending items and existing or anticipated problems, status of RFIs, (f) a safety and accident report, (g) information on each Subcontractor and each Subcontractor's work as well as the entire Project, showing percentages of completion and the number and amounts of Change Orders and relating such information to the Construction Schedule, (h) if necessary, the schedule and action plan required by the Agreement and (i) such other relevant information as may be required by Contractor from time to time.  The Progress Report shall be indexed, bound and tabulated in a manner acceptable to Contractor.

Subcontractor shall keep a daily log containing a record of weather, Subcontractor's Work on the site number of workers, Work accomplished, problems encountered, and other similar relevant data as Contractor may require.  Subcontractor shall provide a copy of the log to Contractor upon request.

19

Subcontractor
Initials    *JD*

**Geis Construction South, LLC.**



|  | P.O. No.: | **1900290-001** |
|---|---|---|
|  | Project Name: | **Wonder Lofts** |
|  | Address: | **720 Clinton Street** |
|  |  | **Hoboken, New Jersey 07030** |
|  | Job No: | **19-00-290** |

**SCHEDULE 3**

**Contract Sum**

| REFERENCE NO. / COST | ITEM NO. | DESCRIPTION | UNIT OF MEASURE | QUANTITY | UNIT PRICE | TOTAL |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
| **TOTAL SHEET 1** |  |  |  |  |  |  |

20

Subcontractor
Initials    *JD*

**Geis Construction South, LLC.**

Geis form subcontract (Rev. 2019-4)
10935544.1

|  |  |
|---|---|
| **P.O. No.:** | **1900290-001** |
| **Project Name:** | **Wonder Lofts** |
| **Address:** | **720 Clinton Street** |
|  | **Hoboken, New Jersey 07030** |
| **Job No:** | **19-00-290** |

### SCHEDULE 4

**List of Contract Documents**

1. **Affidavit of Sub (original) Contractor**
2. **Prime Contract documents (See ProCore for Copies)**

21

Initials _JD_ _____

**Geis Construction South, LLC**



| | |
|---|---|
| **P.O. No.:** | **1900290-001** |
| **Project Name:** | **Wonder Lofts** |
| **Address:** | **720 Clinton Street** |
| | **Hoboken, New Jersey 07030** |
| **Job No:** | **19-00-290** |

## SCHEDULE 5

### PART 1

1.  Pay Applications are to be submitted on the approved Contractor Pay Application Form.

2.  Original Notarized Waivers of Lien are required to be submitted with each and every Pay Application from this Subcontractor, as well as this Subcontractor's Lower Tiers,

3.  Insurance Requirements as outlined in this Agreement

4.  **DAMAGE OR DESTRUCTION:** Subcontractor shall cover and at all times adequately protect the work and the Materials or Services from damage until final acceptance by Contractor's customer, and shall properly store and protect its own materials furnished to it by others.  Subcontractor shall be responsible for any damage to or destruction of the work, the Materials or Services, and any other equipment, tools and personal property at the premises, whether owned, rented or used by Subcontractor or anyone performing any of the work.  Subcontractor at its expense shall, as directed by Contractor, replace, repair, or restore any thereof which are damaged or destroyed, whether such destruction or damage results from acts of God, fire, public enemy, civil commotion, vandalism, acts of omission or commission by any person, firm, or corporation.  Risk of loss with respect to the work, Materials, or Services shall remain with Subcontractor until final acceptance of the completed work and the Materials or Services. Until such final acceptance, any damage or destruction of the work or the Materials or Services, however caused, shall be made good by Subcontractor at no extra charge or cost to Contractor.  Such rework at Subcontractor's expense shall not preclude Subcontractor from making a claim under any insurance maintained for the benefit of Subcontractor, but the right to make or the pendency of such claim shall not give cause to Subcontractor to delay the commencement or completion of such rework.

5.  **PRECEDING WORK:** Subcontractor, before beginning the Work, shall carefully examine the work of others which may affect the work or the Materials or Services, determine whether it is in a fit, ready and suitable condition for the proper and accurate performance of the work and furnishing of the Materials or Services, use all means necessary to discover defects in such other work, and notify Contractor in writing of any claimed deficiencies which may affect the work or Materials or Services.  If such notice is not so given, all such work shall be deemed acceptable to Subcontractor.  In case of a dispute as to whether such other work is deficient, Subcontractor nevertheless shall proceed immediately with the Work when notified by Contractor to proceed.

6.  **DEDUCTIONS AND SET-OFF**:  Any sums payable to Subcontractor shall be subject to all claims and defenses of Contractor or any of its affiliated companies, whether arising from this or any other transaction or occurrence, and Contractor may set-off and deduct against any such sums all present and future indebtedness of Subcontractor or any of its affiliated companies to Contractor or any of its affiliated companies.

7.  **SHOP DRAWINGS:**  Subcontractor shall, at its own expense, prepare and submit to Contractor such shop drawings, samples, models and other submittals for the Materials or Services as may be requested by Contractor. Subcontractor must identify in writing any adjustments or modifications of the Contract requirements reflected in Subcontractor's shop drawings.  Such shop drawings, samples, models, and other submittals shall be approved in writing by such persons as Contractor may designate before Subcontractor proceeds under this Agreement.  No approval of any submittals nor the making of any payment to Subcontractor shall constitute an acceptance of any Materials or Services or impair Contractor's right of inspection or rejection or any other rights or remedies to which Contractor may be entitled, or relieve Subcontractor from any of its obligations or warranties hereunder.

22                                    Initials _JD_ _____

**Geis Construction South, LLC.**



|  | |
|---|---|
| **P.O. No.:** | **1900290-001** |
| **Project Name:** | **Wonder Lofts** |
| **Address:** | **720 Clinton Street** |
| | **Hoboken, New Jersey 07030** |
| **Job No:** | **19-00-290** |

**8. <u>NO ASSIGNMENT</u>:**  Absent Contractor's written consent, Subcontractor may not assign any rights or delegate any duties that Subcontractor may have under this Agreement, in whole or in part.  Any assignments or delegation in violation of the foregoing is void and not binding on Contractor.  No such assignment or delegation shall bar Contractor from asserting against Subcontractor, or the transferee, or both, any claim or rights that Contractor may have against Subcontractor, including rights of recoupment or set-off.

23

Initials  JD

**Geis Construction South, LLC.**

Geis Form Rev. 2018-3
10935544.1



|  |  |
|---|---|
| **P.O. No.:** | **1900290-001** |
| **Project Name:** | **Wonder Lofts** |
| **Address:** | **720 Clinton Street** |
| | **Hoboken, New Jersey 07030** |
| **Job No:** | **19-00-290** |

## SCHEDULE 5
## PART 2

## CONTRACTOR HOLD HARMLESS AND INDEMNITY

Subcontractor has agreed that from time to time it will perform as an independent contractor certain work for Geis Construction South, LLC. hereinafter referred to as the Contractor.  The Subcontractor agrees to do the work in a prudent manner, be responsible for the condition of the work site and take all proper steps to carry out the work in a safe manner.  Contractor and Subcontractor further agree as follows:

### INDEMNIFICATION

1.      (a) To the fullest extent permitted by law, Subcontractor shall defend, indemnify and hold harmless Contractor and any related entities ("Indemnitees") from any damages or liabilities which may be incurred by any Indemnitee due to personal injury or death, damage to property or violation by subcontractor of any governmental law, rule or regulation which is in any way connected with Subcontractor's performance of the work, except to the extent caused by the negligence or willful misconduct of an Indemnitee.

       (b) In addition, to the fullest extent permitted by the law Subcontractor agrees to indemnify and hold harmless the Indemnitees against all claims for damages, losses, liens, causes of action or suits, brought by employees of Subcontractor to the extent such are caused by, or alleged to have been caused by, in whole or part the negligence of Subcontractor, Contractor's negligence in its decision to hire Subcontractor, and/or Contractor's failure to adequately supervise Subcontractor or subcontractor's employees.

2.      To the fullest extent permitted by law, Subcontractor shall indemnify and hold harmless all Indemnitees against all liens, claims, and demands which arise in connection with the work or materials supplied by Subcontractor and, upon request by Contractor, Subcontractor shall furnish Contractor with any evidence that it may require to satisfy itself that all such claims, liens or demands have been paid and discharged.

3.      To the fullest extent permitted by law, Subcontractor shall defend, protect, indemnify and hold harmless the Indemnitees against claimed or actual infringement or contributory infringement of any patent or infringement of any copyright or trademark arising from Subcontractor's work.

4.      Subcontractor's indemnity obligations shall not limit and shall not be limited by the insurance coverages set forth anywhere else in this Agreement or any other Agreement.

This Agreement will cover all business relations and transactions between the parties until revoked by written notice in writing to Contractor.  Please sign and return this form to Contractor.

Subcontractor:  M.D.C.                         General Contractor:  Geis Construction South, LLC.

**By** *Jaime Delahunt*                          **By** *Jeff Martin*
   Jaime Delahunt (Jul 16, 2019)                      Jeff Martin (Jul 16, 2019)
         Authorized Representative

151 S. 11th Street, Lindenhurst, New York 11757

                                   24                          Initials *JD*
                                                                      JD

**Geis Construction South, LLC.**



|              |                         |
|--------------|-------------------------|
| P.O. No.:    | 1900290-001             |
| Project Name:| Wonder Lofts            |
| Address:     | 720 Clinton Street      |
|              | Hoboken, New Jersey 07030 |
| Job No:      | 19-00-290               |

25

Initials _JD_

**Geis Construction South, LLC.**



|  |  |
|---|---|
| **P.O. No.:** | **1900290-001** |
| **Project Name:** | **Wonder Lofts** |
| **Address:** | **720 Clinton Street** |
| | **Hoboken, New Jersey 07030** |
| **Job No:** | **19-00-290** |

## SCHEDULE 6

### INSURANCE AND WORKER'S COMPENSATION REQUIREMENTS:

All subcontractors shall purchase and maintain insurance of the following types of coverage and limits of liability (Section 17.2 of the Agreement shall govern over any inconsistent provision below). These coverages shall be primary and non-contributory:

1. Commercial General Liability (CGL) with limits of Insurance of not less than $1,000,000 each occurrence and $2,000,000 Annual Aggregate.
    a. If the CGL coverage contains a General Aggregate Limit, such General Aggregate shall apply separately to each project.
    b. CGL coverage shall be written on ISO Occurrence from CG 00 01 1093 or a substitute form providing equivalent coverage and shall cover liability arising from premises, operations, independent contractors, products-completed operations, and personal and advertising injury.
    c. Contractor, Owner, and all other parties required of the Contractor, shall be included as insured on CGL, using ISO Additional Insured Endorsement CG 2010 and CG 2037  04/13 or their equivalent. This insurance for the additional insureds shall be as broad as the coverage provided for the named insured subcontractor. It shall apply as primary and non-contributing insurance before any other insurance or self-insurance, including any deductible, maintained by, or provided to, the additional insured.
    d. Subcontractor shall maintain CGL coverage for itself and all additional insureds for the duration of the project and maintain Completed Operations coverage for itself and each additional insured for at least 3 years after completion of the Work.
2. Automobile Liability
    a. Business Auto Liability with limits of at least $1,000,000 each accident.
    b. Business Auto coverage must include coverage for liability arising out of all owned, leased, hired and non-owned automobiles.
    c. Contractor, Owner, and all other parties required of the Contractor, shall be included as insureds on the auto policy.
3. Commercial Umbrella
    a. Umbrella Limits must be at least $2,000,000.
    b. Umbrella coverage must include as insureds all entities that are additional insureds on the CGL.
    c. Umbrella coverage for such additional insureds shall apply as primary before any other insurance of self-insurance, including any deductible, maintained by, or provided to, the additional insured other than the CGL, Auto Liability and Employers Liability coverages maintained by the Subcontractor.
4. Workers' Compensation and Employers Liability
    a. Employers Liability Insurance limits of at least $500,000 each accident for bodily injury by accident and $500,000 each employee for injury by disease.
    b. Where applicable, U.S. Longshore and Harbor Workers Compensation Act Endorsement shall be attached to the policy.
    c. Where applicable, the Maritime Coverage Endorsement shall be attached to the policy.

5. Waiver of Subrogation. Subcontractor waives all rights against Contractor, Owner, and Architect and their agents, officers, directors and employees for recovery of damages to the extent these damages are covered by commercial general liability, commercial umbrella liability, business auto liability or workers compensation and employers liability insurance maintained per requirements stated above.

26                                    Initials  _JD_____

**Geis Construction South, LLC.**



|  |  |
|---|---|
| **P.O. No.:** | **1900290-001** |
| **Project Name:** | **Wonder Lofts** |
| **Address:** | **720 Clinton Street** |
| | **Hoboken, New Jersey 07030** |
| **Job No:** | **19-00-290** |

6.  Attached to each certificate of insurance shall be a copy of the Additional Insured Endorsement that is part of the Subcontractor's Commercial General Liability Policy. These certificates and the insurance policies shall contain a provision that coverage under the policies will not be canceled or allowed to expire until at least 30 days prior written notice has been given to the Contractor.

27

Initials ___JD___

**Geis Construction South, LLC.**



**Contract**
**1900290-001**

Geis Companies
10020 Aurora Hudson
Streetsboro, Ohio 44241
Phone: (330) 528-3500
Fax: (330) 528-0008

**Project:** 19-00-290 - Wonder Lofts
720 Clinton Street
Hoboken, New Jersey 07030

## Concrete Masonry & Earthworks

| | | | |
|---|---|---|---|
| **DATE CREATED:** | 06/20/2019 | | |
| **CONTRACT COMPANY:** | M.D.C.<br>151 S 11th Street<br>Lindenhurst, New York 11757<br>Phone: (631) 592-8072 | **CREATED BY:** | Kevin  Watts **(Geis Construction)**<br>10020 Aurora Hudson Road<br>Streetsboro,  44241 |
| **CONTRACT STATUS:** | Approved | **EXECUTED:** | No |
| **START DATE:** | 06/24/2019 | **ESTIMATED COMPLETION DATE:** | 01/24/2020 |
| **SIGNED CONTRACT RECEIVED DATE:** | | **ACTUAL COMPLETION DATE:** | |
| **DEFAULT RETAINAGE:** | 10.0% | | |

**DESCRIPTION:**
Concrete, Masonry, and Earthworks

**INCLUSIONS:**
The concrete scope to include the following for A, B, C, D & E Buildings:

- All pile caps & grade beams
- Matt slabs
- All doweling, rebar, epoxy, expansion bolts, chairs, hangers, accessories, ect
- All flat plate concrete
- New Concrete Columns
- Raised concrete slabs
- Shear walls
- Elevator pits
- All slab on grade concrete
- Slab on Comm-slab concrete
- Metal pan stair concrete
- All concrete column reinforcing/encasement
- Cast in place stairs for the D & E buildings (may be value engineered out for a credit?)
- Shoring of C-building facade wall
- All excavation and backfill for your work
- All layout for your work
- Control and Benchmarks by owner
- All equipment, tools, and formwork as required
- All shoring as required for your work
- Submittals, shop drawwings, and details as required
- Taxes
- Freight

The Masonry Scope to include the following for the A, B, C, D & E building:

- All CMU block
- All Masonry reinforced as required
- All mortar, grout and additive as required
- Equipment tools scaffolding etc as required for your work
- Taxes
- Freight

The Demolition scope to include the following for the A, B & C building

- Demolition and removal of the 4th floor slab and beams
- Demolition of brick parapets and wall sections per bid drawings
- Provide all equipment, tools, and trucking for your work
- Demolition of curbs and sidewalks as required for new installation of same

The Sitework scope shall include the following for the A, B, C, D & E buildings

- All concrete curbs



**Contract**
**1900290-001**

- All asphalt patching
- Excavation and backfill for your work
- 3/4 clean stone under sidewalks
- ADA ramps with ADA tactile inserts
- Relocate storm drain
- Planter Walls
- Traffic control as required for your scope of work
- Trees, soil and plantings by others

**EXCLUSIONS:**

- Permits
- Inspection fees
- Tress soil and plantings by others
- Lead, asbestos and any other abatement's

**ATTACHMENTS:**

MDC SOV.pdf  MDC Proposal.pdf  Surety Bond.pdf  attachment g performance and productivity.pdf  Itemized Estimate.pdf  OCIP Subcontractor Instructions Wonder Lofts-D1.pdf  Attachment E - General Conditions.pdf  Attachment F - Safety..pdf  Attachment H - General Req PCM WL.pdf  Attachment K WL.pdf  GEIS -WL revised with all attachments.pdf

| # | COST CODE | DESCRIPTION | TYPE | AMOUNT |
|---|---|---|---|---|
| 1 | 01-010 - Mobilization,Shop Drawings,Sub | Mobilization,Shop Drawings,Sub | Subcontract | $ 200,000.00 |
| 2 | 01-011 - Demolition (Brick | Demolition (Brick) | Subcontract | $ 65,840.00 |
| 3 | 01-012 - Demolition (4th Flr) | Demolition (4th Flr) | Subcontract | $ 66,600.00 |
| 4 | 01-015 - Concrete Pile Caps | Concrete Pile Caps | Subcontract | $ 1,379,375.00 |
| 5 | 01-021 - Concrete Salb on Grade | Concrete Slab on Grade | Subcontract | $ 438,739.00 |
| 6 | 01-022 - Concrete Salb on Deck/Com-Slab | Concrete Slab on Deck/Com-Slab | Subcontract | $ 178,323.00 |
| 7 | 01-023 - Shear Walls | Shear Walls | Subcontract | $ 428,340.00 |
| 8 | 01-024 - Elevator Pits | Elevator Pits | Subcontract | $ 30,000.00 |
| 9 | 01-025 - Metal Pan Stairs | Metal Pan Stairs | Subcontract | $ 112,500.00 |
| 10 | 01-026 - Column Reinforcing | Column Reinforcing | Subcontract | $ 170,400.00 |
| 11 | 01-027 - Concrete Struct:Deck/Slab/Clm | Concrete Struct:Deck/Slab/Clm | Subcontract | $ 2,245,375.00 |
| 12 | 01-028 - CMU Masonry | CMU Masonry | Subcontract | $ 387,945.00 |
| 13 | 02-011 - Mobilization,Shop Drawings/Sub | Mobilization,Shop Drawings/Sub | Subcontract | $ 25,000.00 |
| 14 | 02-020 - Demolition (NIC) | Demolition (NIC) | Subcontract | $ 0.00 |
| 15 | 02-021 - Concrete Pile Caps | Concrete Pile Caps | Subcontract | $ 243,763.00 |
| 16 | 02-022 - Concrete Salb on Grade | Concrete Slab on Grade | Subcontract | $ 87,716.00 |
| 17 | 02-023 - Shear Walls | Shear Walls | Subcontract | $ 56,640.00 |
| 18 | 02-030 - Cast in Place Stairs | Cast in Place Stairs | Subcontract | $ 50,000.00 |
| 19 | 02-050 - Soncrete Struct;Decks,Sabs,Clm | Concrete Struct;Decks,Slabs,Clm | Subcontract | $ 522,963.00 |
| 20 | 02-052 - CMU Masonry | CMU Masonry | Subcontract | $ 89,347.00 |
| 21 | 04-020 - Mobilization,Shop Drawings,Sub | Mobilization,Shop Drawings,Sub | Subcontract | $ 25,000.00 |
| 22 | 04-021 - Demolition (NIC) | Demolition (NIC) | Subcontract | $ 0.00 |
| 23 | 04-022 - Concrete Pile Caps | Concrete Pile Caps | Subcontract | $ 111,700.00 |
| 24 | 04-029 - Concrete Slab on Grade | Concrete Slab on Grade | Subcontract | $ 34,456.00 |
| 25 | 04-030 - Shear Walls | Shear Walls | Subcontract | $ 68,440.00 |
| 26 | 04-031 - Cast in Place Stairs | Cast in Place Stairs | Subcontract | $ 50,000.00 |
| 27 | 04-032 - Column Reinforcing | Column Reinforcing | Subcontract | $ 218,990.00 |
| 28 | 04-033 - CMU Masonry | CMU Masonry | Subcontract | $ 77,708.00 |
| 29 | 05-010 - Site Demo | Site Demo | Subcontract | $ 38,014.00 |



# Contract
# 1900290-001

| 30 | 05-011 – Concrete Curb | Concrete Curb | Subcontract | $ 23,450.00 |
|----|------------------------|---------------|-------------|-------------|
| 31 | 05-012 – Concrete Side Walks | Concrete Side Walks | Subcontract | $ 237,891.00 |
| 32 | 05-013 – Paving | Paving | Subcontract | $ 14,145.00 |
| | | | **Grand Total:** | **$ 7,678,660.00** |

**Geis Companies**
10020 Aurora Hudson
Streetsboro, Ohio 44241

**M.D.C.**
151 S 11th Street
Lindenhurst, New York 11757

SIGNATURE                                          DATE                SIGNATURE                                          DATE

Job Number 19-00-290
Contract #: 1900290-001
Task Codes Below

| Cost Code # | Description of Work | Scheduled Value |
|---|---|---|
| | **Building A B C** | |
| 01-010 | Mobilization, Shop Drawings, Submittals | 200,000.00 |
| 01-011 | Demolition (Brick ) | 65,840.00 |
| 01-012 | Demolition (4th Fl) | 66,600.00 |
| 01-015 | Concrete pile caps | 1,379,375.00 |
| 01-021 | Concrete slab on grade | 438,739.00 |
| 01-022 | Concrete slab on deck / Comm-Slab | 178,323.00 |
| 01-023 | Shear Walls | 428,340.00 |
| 01-024 | Elevator pits | 30,000.00 |
| 01-025 | Metal pan stairs | 112,500.00 |
| 01-026 | Column reinforcing | 170,400.00 |
| 01-027 | Concrete Structure;Decks, Slabs & Columns | 2,245,375.00 |
| 01-028 | CMU Masonry | 387,945.00 |
| | **Building D** | |
| 02-011 | Mobilization, Shop Drawings, Submittals | 25,000.00 |
| 02-020 | Demolition | NIC |
| 02-021 | Concrete pile caps | 243,763.00 |
| 02-022 | Concrete slab on grade | 87,716.00 |
| 02-023 | Shear Walls | 56,640.00 |
| 02-030 | Cast in Place Stairs | 50,000.00 |
| 02-050 | Concrete Structure;Decks, Slabs & Columns | 522,963.00 |
| 02-052 | CMU Masonry | 89,347.00 |
| | **Building E** | |
| 04-020 | Mobilization, Shop Drawings, Submittals | 25,000.00 |
| 04-021 | Demolition | NIC |
| 04-022 | Concrete pile caps | 111,700.00 |
| 04-029 | Concrete slab on grade | 34,456.00 |
| 04-030 | Shear Walls | 68,440.00 |
| 04-031 | Cast in Place Stairs | 50,000.00 |
| 04-032 | Column reinforcing | 218,990.00 |
| 04-033 | CMU Masonry | 77,708.00 |
| | **Site work** | |
| 05-010 | Site Demo | 38,014.00 |
| 05-011 | Concrete Curb | 23,450.00 |
| 05-012 | Concrete side walks | 237,891.00 |
| 05-013 | Paving | 14,145.00 |
| | | |
| | **Totals** | **7,678,660.00** |



# ESTIMATE

**MDC**
151 S 11th St
Lindenhurst, New York 11757
United States

Phone: (631) 592-8072
Mobile: (516)468-2032
JAIMEMDCINC@GMAIL.COM

BILL TO
**Geis Construction**



DISCOUNTS $100K

**Estimate Number:** 0020
**Estimate Date:** June 11, 2019
**Expires On:** November 11, 2019
**Grand Total (USD):** **$7,558,221.00**

| Items | Quantity | Price | Amount |
|---|---|---|---|
| **Concrete** <br> Concrete foundation/ structure and related work. | 1 | $6,689,721.00 #1 | $6,689,721.00 |
| **SIDEWALKS / PLANTERS / AND CURBS** | 1 | $313,500.00 #2 | $313,500.00 |
| **cmu** | 1 | $555,000.00 #3 | $555,000.00 |
| **Demo** <br> ADD /ALT <br> Demo brick <br> $65840.00 | 1 | $0.00 | $0.00 |
| **Demo** <br> ADD/ ALT <br> DEMO <br> $471600.00 | 1 | $0.00 | $0.00 |

|  | **Total:** | $7,558,221.00 |
|---|---|---|
|  | **Grand Total (USD):** | **$7,558,221.00** |



# ESTIMATE

**MDC**
151 S 11th St
Lindenhurst, New York 11757
United States

Phone: (631) 592-8072
Mobile: (516)468-2032
JAIMEMDCINC@GMAIL.COM

BILL TO
**Geis Construction**

**Estimate Number:** 0013
**Estimate Date:** May 22, 2019
**Expires On:** November 22, 2019
**Grand Total (USD):** $393,100.00

| Items | Quantity | Price | Amount |
|---|---|---|---|
| **demo** <br> 4th floor demo <br> trucks and dump <br> price per sqft | 3700 | $18.00 | $66,600.00 |
| **side walk / planters** <br> demo and install all side walks and planters <br> -planters to be non decorative(rough concrete finish) | 1 | $338,500.00 | $338,500.00 |
| **credit** <br> not using gravel under sog but blinding with blend <br> (d.e.c.manifest) | 1 | ($12,000.00) | ($12,000.00) |

**Total:** $393,100.00

**Grand Total (USD):** $393,100.00



# ESTIMATE

**MDC**
151 S 11th St
Lindenhurst, New York 11757
United States

Phone: (631) 592-8072
Mobile: (516)468-2032
JAIMEMDCINC@GMAIL.COM

BILL TO
**Geis Construction**

**Estimate Number:** 0017

**Estimate Date:** May 30, 2019

**Expires On:** November 30, 2019

**Grand Total (USD):** $471,600.00

| Items | Quantity | Price | Amount |
|---|---|---|---|
| **C BUILDING**<br>DEMO AS PER D101-D103<br>-INCLUDES TRUCK AND DUMP<br>-EXCLUDES LEAD, ASBESTOS, AND ANY OTHER ABATEMENTS<br>-DUST CONTROL WITH WATER<br>-WATER AND/OR ACCESS TO WATER TO BE SUPPLIED BY OWNER<br>-WILL BE DONE IN CONJUNCTION WITH SHEAR WALLS<br>-EXCLUDES SHORING | 1 | $175,000.00 | $175,000.00 |
| **4TH FLOOR**<br>DEMO ENTIRE 4TH FLOOR<br>DEMO AS PER D101-D103<br>-INCLUDES TRUCK AND DUMP<br>-EXCLUDES LEAD, ASBESTOS, AND ANY OTHER ABATEMENTS<br>-DUST CONTROL WITH WATER<br>-WATER AND/OR ACCESS TO WATER TO BE SUPPLIED BY OWNER<br>-EXCLUDES SHORING | 1 | $66,600.00 | $66,600.00 |
| **D BUILDING**<br>DEMO 100'X100<br>-INCLUDES TRUCK AND DUMP<br>-EXCLUDES LEAD, ASBESTOS, AND ANY OTHER ABATEMENTS<br>-DUST CONTROL WITH WATER<br>-WATER AND/OR ACCESS TO WATER TO BE SUPPLIED BY OWNER<br>-PRICE GOOD FOR 30 DAYS DUE TO C&D COST FLUXUATION'<br>-EXCLUDES SHORING | 1 | $195,000.00 | $195,000.00 |

#5



# ESTIMATE

**MDC**
151 S 11th St
Lindenhurst, New York 11757
United States

Phone: (631) 592-8072
Mobile: (516)468-2032
JAIMEMDCINC@GMAIL.COM

| Items | Quantity | Price | Amount |
|---|---|---|---|
| **E BUILDING**<br>EBUILDING/PARKING LOT<br>43'X100'<br>-REMOVE ASPHALT<br>-THICKNESS UNKNOWN<br>-ALLOWANCE FOR 5"<br>-INCLUDES TRUCK AND DUMP<br>-EXCLUDES LEAD, ASBESTOS, AND ANY OTHER ABATEMENTS<br>-DUST CONTROL WITH WATER<br>-WATER AND/OR ACCESS TO WATER TO BE SUPPLIED BY OWNER | 1 | $35,000.00 | $35,000.00 |

**Total:** $471,600.00

**Grand Total (USD):** $471,600.00

*— 66,600.*
*$ 405,000*



EDWARDS AND COMPANY
INSURANCE SINCE 1865
CONSTRUCTION/REAL ESTATE PRACTICE

June 14, 2019

GEIS Companies
10020 Aurora Hudson
Streetsboro OH, 44241

Attention: To whom this may concern
RE: MDC HI, Inc.

Please accept this letter as verification that MDC HI Inc. has a Surety Bond Program with a
$10,000,000.00 aggregate limit procured through Edwards & Company Insurance Brokerage placed with
Liberty Mutual.

There are currently no open bonds outstanding at this time.  2018 tax returns and current interm
financials have been reviewed as of June 1, 2019 and this program is active.

If you should have any questions please feel free to contact me.  I look forward to continuing a long a
prosperous business relationship with Mr. Delahunt and his organization.

Respectfully,

Sean P. Flaherty, CRIS
Senior Vice President
Edwards & Company Insurance
Construction & Real Estate Practice Group
O; (631) 472-8423
C; (516) 445-1018
sflaherty@edwardsandco.net

Cc; File

# ATTACHMENT "G"
## Performance and Productivity Information

Provide all of the open items in the box below:

**Submittal Lead Time:**
Indicate the amount of time from notification to proceed, to prepare and furnish all of the required shop drawings, cut sheets, specification data sheets, samples, etc. Submit separate lead time information for each major component of the work.

**Material Lead Time:**
Indicate the days/weeks for fabrication, shipping, and delivery of equipment and materials to the job site. Submit separate lead time information is to be submitted for each major component of the work.

**Installation Duration:**
Indicate the number of days/weeks that it will take to start and complete the work of each activity.

**Crew Size:**
Indicate the crew size for each specific project activity.

**Quantities:**
List the quantity of materials required for each work activity.

| ACTIVITY | SUBMITTAL LEAD TIME | MATERIAL LEAD TIME | INSTALL DURATION | CREW SIZE | QUANTITY | UNIT |
|---|---|---|---|---|---|---|
| Rebar | 1 Week | 2 Day | 6 month | 15 | | LB |
| Concrete | 1 Week | 1 Day | 6 month | 15 | | M3 |
| Block | 1 Week | 4 Days | 6 Month | 10 | | Utor |
| Brick | 1 Week | 6 Days | 6 Month | 10 | | Utor |
| | | | | | | |
| | | | | | | |

# MDC  Demolition/ Sidewalk/ Concrete/ CMU Block

| Section | Trade | Amount | |
|---|---|---|---|
| 02060 | Demolition 4th Floor Building A | $ | 66,600 |
| 02060 | Demolition Brick Façade | $ | 65,840 |
| | Credit Gravel | $ | (12,000) |
| 02200 | Sidewalks & Curbs | $ | 313,500 |
| 00000 | Demolition Brick Façade | $ | 6,689,721 |
| 04200 | C.M.U. Block | $ | 555,000 |
| | **M.D.C.  Direct Trade Total** | **$** | **7,678,660** |

| 02060 | Demolition 4th Floor Building A | | | | |
|---|---|---|---|---|---|
| | Building A, 4th. Flr. Demo slab & beams | 1 | LS | $ | 66,600 |
| | **Demolition 4th Floor Building A** | | | | |
| 02060 | **Demolition Brick Façade** | | | | |
| | Building C, Brick Façade | 1 | LS | $ | 65,840 |
| | **Demolition Brick Façade** | | | | |
| | **Credit Gravel** | | | | |
| | Building A, B, C, eliminate gravel under S.O.G. | 1 | LS | $ | (12,000 |
| | **Demolition Brick Façade** | | | | |
| | **Foundation & Concrete Structure** | | | | |
| | **Building A** | | | | |
| | Building A, excavate in existing building, small machine & hand excavate in confined space | 316 | CY | $ | 250 |
| | Excess fill dispose off site | 316 | CY | $ | 40 |
| | Concrete Wash Stations | 1 | EA | $ | 3,500 |
| | Pile Caps | 275 | CY | $ | 750 |
| ### | Grade Beam GBM1-1, 223 lf. | 21 | CY | $ | 750 |
| | Mat Slab 36" thk | 12 | CY | $ | 500 |
| | Drill # 6 re bar, 30" long  into ex pile caps, embed 7", 8 per side | 48 | EA | $ | 125 |
| | Form & pour elev pits | 2 | EA | $ | 12,500 |
| | Under Slab Vapor Barrier 6 mil polyethelene; | 3,660 | SF | $ | 1.75 |
| | Crystaline waterproofing interior sides of pits; walls & floors; | 520 | SF | $ | 13 |
| | Surface/Rain Water - Local Dewatering | 1 | LS | $ | 15,000 |
| | **Foundation Building A** | | | | |
| | **Building B** | | | | |
| | Building B, excavate in existing building, small machine & hand excavate in confined space. | 419 | CY | $ | 250 |
| | Excess fill dispose off site | 419 | CY | $ | 40 |
| | PC P3A  & P61  4'-0" thk | 162 | CY | $ | 750 |
| | PC P3B  & PC 3C  3'-6" thk | 18 | CY | $ | 750 |
| | PC P5,P6, P7, P11, P15A, P15B,  P17, P25  3'-9" thk | 221 | CY | $ | 750 |

| | | | | |
|---|---|---|---|---|
| TB03  38" X 36", 25 lf | 9 | CY | $ | 750 |
| TB02  48" X 40", 14 lf | 7 | CY | $ | 750 |
| TB01  42" X 40", 5 lf | 2 | CY | $ | 750 |
| Under Slab Vapor Barrier 6 mil polyethelene; | 231 | SF | $ | 1.75 |
| **Foundation Building B** | | | | |
| **Building C** | | | | |
| Building C,  excavate in existing building, small machine & hand excavate in confined space | 498 | CY | $ | 250 |
| Excess fill dispose off site | 498 | CY | $ | 40 |
| PC P14A  & P23  4'-6" thk | 119 | CY | $ | 750 |
| PC  P2, P4, P6, P12  3'-6" thk | 182 | CY | $ | 750 |
| PC P79 5'-0" thk, | 168 | CY | $ | 750 |
| TB03  60" X 24", 28 lf | 10 | CY | $ | 750 |
| TB02  16" X 30", 47 lf | 6 | CY | $ | 750 |
| TB01  16" X 24", 129 lf | 13 | CY | $ | 750 |
| TB04  48" X 24", 13 lf | 4 | CY | $ | 750 |
| GB  18" X 24", 19 lf | 2 | CY | $ | 750 |
| GB  18" X 18", 28 lf | 2 | CY | $ | 750 |
| Under Slab Vapor Barrier 6 mil polyethelene; | 12,712 | SF | $ | 1.75 |
| Surface/Rain Water - Local Dewatering | 1 | LS | $ | 15,000 |
| **Foundation Building C** | | | | |
| **Building D** | | | | |
| Building D, excavate pile caps, grade beams & elev pit | 233 | CY | $ | 40 |
| Concrete Wash Stations | 1 | EA | $ | 3,500 |
| Excess fill dispose off site | 233 | CY | $ | 40 |
| Backfill & compaction clean fill | 225 | CY | $ | 50 |
| GB 18" X 36", 225 lf | 38 | CY | $ | 750 |
| PC 3 ; 4'-0" thk | 48 | CY | $ | 750 |
| PC 4 ; 3'-6" thk | 67 | CY | $ | 750 |
| PC @ SW;  4'-0" thk | 70 | CY | $ | 750 |
| Form & pour elev pit | 1 | EA | $ | 12,500 |

| Description | Qty | Unit | | Price |
|---|---|---|---|---|
| Under Slab Vapor Barrier 6 mil polyethelene; | 7,356 | SF | $ | 1.75 |
| Crystaline waterproofing interior sides of pits; walls & floors; | 220 | SF | $ | 13 |
| Surface/Rain Water - Local Dewatering | 1 | LS | $ | 15,000 |
| **Foundation Building D** | | | | |
| **Building E** | | | | |
| Building E, excavate pile caps, grade beams & elev pit | 97 | CY | $ | 40 |
| Excess fill dispose off site | 97 | CY | $ | 40 |
| Backfill & compaction clean fill | 75 | CY | $ | 50 |
| GB  12 X 36, 186 lf | 20 | CY | $ | 750 |
| PC 2; 2'-6" w X 5'-6"l X 3'-6"d | 22 | CY | $ | 750 |
| PC 4B  & PC4A 3'-6" thk | 45 | CY | $ | 750 |
| Form & pour elev pit | 1 | EA | $ | 12,500 |
| Under Slab Vapor Barrier 6 mil polyethelene; | 2,663 | SF | $ | 1.75 |
| Crystaline waterproofing interior sides of pits; walls & floors; | 228 | SF | $ | 12.50 |
| Surface/Rain Water - Local Dewatering | 1 | LS | $15,000.00 |
| **Foundation Building E** | | | | |
| | | | | |
| **03300 Concrete Superstructure** | | | | |
| **Building A** | | | | |
| Comslab 1st.flr 11-1/2" | 798 | SF | $ | 14 |
| Raised Conc Slab over existing 2'-4" | 7,569 | SF | $ | 20 |
| Conc slab 10"thk, 3660 sf. | 136 | CY | $ | 485 |
| Shear Walls 12" thk. | 324 | CY | $ | 590 |
| Conc Beams & Link Beams | 143 | CY | $ | 590 |
| Conc Columns | 133 | CY | $ | 590 |
| Com Slab 11.5" ( deck & studs & pour stops by others) | 9,123 | SF | $ | 15 |
| 3-1/2" Lt Wt Conc on Q deck ( deck F&I by others) | 586 | SF | $ | 12 |
| Raised Conc in-fill slab over existing, 1'-6" thk | 720 | SF | $ | 20 |
| Lt Wt Structural Conc Slab 8" thk.11,323 sf | 280 | CY | $ | 485 |
| Lt Wt Structural Conc Slab 9" thk.29,842 sf | 829 | CY | $ | 485 |
| Lt Wt Structural Conc Slab 10-1/2" thk.26,706 sf | 793 | CY | $ | 485 |
| Lt Wt Structural Conc Slab 14" thk.4,150 sf | 179 | CY | $ | 485 |

| Description | Qty | Unit | | Amount |
|---|---|---|---|---|
| Encase Existing columns w/ 4" thk conc/ rebar | 56 | EA | $ | 2,500 |
| Conc fill in metal pan stairs & landings, (metal pan stairs by others) | 14 | LVL | $ | 2,500 |
| **Building A Concrete Structure** | | | | |
| **Building B** | | | | |
| SOG 11" thk, 231 CY | 6,814 | SF | $ | 14 |
| Gravel base 6" thk (deleted by credit) | 126 | CY | | |
| Shear Walls 10" thk | 185 | CY | $ | 590 |
| Columns 12" X 22", 827 lf | 56 | CY | $ | 590 |
| Columns 20" X 20", 42 lf | 4 | CY | $ | 590 |
| Column 18"r. 83 lf | 7 | CY | $ | 590 |
| Column Type B repair, 10"r encased w/ 4"thk conc, 182 lf | 20 | EA | $ | 950 |
| Column Type A repair, 12"r encased w/ 4"thk conc, 112 lf | 12 | EA | $ | 950 |
| Conc Beams & Link beams | 20 | CY | $ | 590 |
| Conc Structural slab 11" Lt Wt, 1st Level Mezz 6,678 sf | 227 | CY | $ | 485 |
| Conc Structural slab 11" Lt Wt, 5th, 6th, 7th. Levels 20,022 sf | 680 | CY | $ | 485 |
| Conc Structural slab 6" Lt Wt, Roof Level 224 sf | 4 | CY | $ | 485 |
| 3-1/2" Lt Wt Conc on Q deck ( deck F&I by others) | 1,602 | SF | $ | 12 |
| Com Slab 11.5" ( deck & studs & pour stops by others) | 270 | SF | $ | 15 |
| Conc fill in metal pan stairs & landings, (metal pan stairs by others) | 7 | LVL | $ | 2,500 |
| **Building B Concrete Structure** | | | | |
| **Building C** | | | | |
| SOG 8" thk, 314 CY | 12,712 | SF | $ | 11 |
| Gravel base 6" thk (deleted by credit) | 235 | CY | | |
| Shear Walls 12" | 217 | CY | $ | 590 |
| Columns 12" X 22", 1,251lf | 85 | CY | $ | 590 |
| Columns 12" X 65", 15 lf | 2 | CY | $ | 590 |
| Conc Beams & Link beams | 39 | CY | $ | 590 |
| Conc Structural slab 8" Lt Wt, 1st Level Mezz 7,887 sf | 195 | CY | $ | 485 |
| Conc Structural slab 9" Lt Wt, 1st Level Mezz 4,546 sf | 127 | CY | $ | 485 |
| Conc Structural slab 8" Lt Wt, 2nd flr 9,431 sf | 233 | CY | $ | 485 |
| Conc Structural slab 9" Lt Wt, 2nd flr 3,579 sf | 99 | CY | $ | 485 |

| | | | |
|---|---|---|---|
| Conc Structural slab 8" Lt Wt, 3rd, 4th, 5th flrs 18,726 sf | 462 | CY | $ 485 |
| Conc Structural slab 14" Lt Wt, 5th flr  2,234 sf | 97 | CY | $ 485 |
| Conc Structural slab 9" Lt Wt, 6th flr  5,958 sf | 165 | CY | $ 485 |
| Conc Structural slab 6" Lt Wt, 7th flr  138 sf | 3 | CY | $ 485 |
| Form & Pour Conc stairs | 6 | LVL | $ 10,000 |
| **Building C Concrete Structure** | | | |
| **Building D** | | | |
| SOG 1st Flr, 8" thk, 182 CY | 7,356 | SF | $ 1 |
| Gravel base 6" thk | 136 | CY | $ 5 |
| Shear walls 1 & 5 12" thk | 43 | CY | $ 590 |
| Shear walls 2, 3, 4  10" thk | 53 | CY | $ 590 |
| Columns 12" X 22", 1,598 lf | 108 | CY | $ 590 |
| Columns 12" X 12", 118 lf | 4 | CY | $ 590 |
| 2nd Flr Conc Slab 8" thk, 7,275 sf | 179 | CY | $ 485 |
| 3rd Flr Conc Slab 8" thk, 7,211 sf | 178 | CY | $ 485 |
| 4th Flr Conc Slab 8" thk, 7,212 sf | 178 | CY | $ 485 |
| 5th Flr Conc Slab 8" thk, 3,331 sf | 82 | CY | $ 485 |
| 5th Flr Conc Slab 12" thk, 3,876 sf | 144 | CY | $ 485 |
| Roof Level Conc Slab 8" thk, 7272 sf | 180 | CY | $ 485 |
| Bulkhead Level Conc Slab 8" thk, 936 sf | 23 | CY | $ 485 |
| Beam  10" X 16", 271 lf | 11 | CY | $ 590 |
| Beam  12" X 18", 105 lf | 6 | CY | $ 590 |
| Beam  12" X  24", 170 lf | 13 | CY | $ 590 |
| LB Beam  12" X  18", 162 lf | 9 | CY | $ 590 |
| Beam  8" X 16", 27 lf | 1 | CY | $ 590 |
| Beam  48" X  24", 18 lf | 5 | CY | $ 590 |
| Form & Pour Conc stairs | 5 | LVL | $ 10,000 |
| **Building D Concrete Structure** | | | |
| **Building E** | | | |
| SOG 1st flr, 9" thk, 74 cu yds | 2,663 | SF | $ 12 |
| Gravel base 6" thk | 50 | CY | $ 5 |

| | | | | | |
|---|---|---|---|---|---|
| | Shear walls 10" thk X 50 ft h | 116 | CY | $ | 590 |
| | Columns 12" X 24" X 50 ft h 12 ea | 44 | CY | $ | 590 |
| | 2nd, 3rd, 4th & 5th floors slabs 9" thk, 9,776 sf | 272 | CY | $ | 590 |
| | 2nd, 3rd, 4th & 5th floors beams 12" X 24", 428 lf | 32 | CY | $ | 590 |
| | Roof slabs 9" thk, 2,527 sf | 70 | CY | $ | 485 |
| | Roof Conc Beams 12" X 24", 114 lf | 8 | CY | $ | 590 |
| | Form & Pour Conc stairs | 5 | LVL | $ | 10,000 |
| | **Building E Concrete Structure** | | | | |
| | **Total Concrete Stucture** | | | | |
| **Demolition Brick Façade** | | | | | |
| **02200** | **Sidewalks & Curbs** | | | | |
| | **Building A, B, C- 720 Clinton St** | | | | |
| | Demo curb & asphalt - saw cut road 2 ft from curb | 651 | LF | $ | 5.40 |
| | Conc Curb | 651 | LF | $ | 25.00 |
| | Asphalt Patch 2ft wide; 2" thk top course, 10" thk. asphalt base, compacted course aggregate | 656 | LF | $ | 15.00 |
| | **720 Clinton - Curbs Total** | | | | |
| | Demo sidewalks | 7,519 | SF | $ | 3.00 |
| | Conc Sidewalk 6" thk. at vehicle drives | 908 | SF | $ | 15.00 |
| | Install Conc Sidewalk 4" thk. | 6,611 | SF | $ | 13.50 |
| | Aggregate base 4" thk over compacted base | 7,519 | SF | $ | 5.00 |
| | ~~Trees~~ | 16 | EA | | NIC |
| | ADA Ramp w/ ADA Tactile insert | 4 | EA | $ | 1,800 |
| | ~~Planting Beds- plant medium & drainage~~ | 1,128 | SF | | NIC |
| | ~~Thermoplastic Crosswalk~~ | 4 | EA | | NIC |
| | Planter walls | 472 | LF | $ | 20.00 |
| | **720 Clinton - Sidewalks Total** | | | | |
| | **Building D - 727 - 733 Clinton St** | | | | |
| | Demo curb & asphalt - saw cut road 2 ft from curb | 243 | LF | $ | 5.40 |
| | Conc Curb | 243 | LF | $ | 25.00 |
| | Asphalt Patch 2ft wide; 2" thk top course, 10" thk. asphalt base, compacted course aggregate | 243 | LF | $ | 15.00 |

| | | | |
|---|---|---|---|
| **727-733 Clinton - Curbs Total** | | | |
| Demo sidewalks | 2,897 | SF | $ 3.00 |
| Trees (not included) | 6 | EA | NIC |
| Relocate Storm drain | 1 | EA | $ 10,017 |
| ADA Ramp w/Tactile | 2 | EA | $ 1,800 |
| ~~Planting Beds- plant medium & drainage~~ | 209 | SF | NIC |
| Conc Sidewalk 6" thk. at vehicle drives | 164 | SF | $ 15.00 |
| Conc Sidewalk 4" thk. | 2,733 | SF | $ 13.50 |
| Aggregate base 4" thk over compacted base | 2,897 | SF | $ 5.00 |
| ~~Thermoplastic Crosswalk ( not included)~~ | 2 | EA | NIC |
| Planter walls | 99 | LF | $ 20.00 |
| **727 - 733 Clinton St - Sidewalks Total** | | | |
| **Building E - 721 Clinton St** | | | |
| Conc Curb | 44 | LF | $ 25.00 |
| Demo curb & asphalt - saw cut road 2 ft from curb | 44 | LF | $ 5.40 |
| Asphalt Patch 2ft wide; 2" thk top course, 10" thk. asphalt base, compacted course aggregate | 44 | LF | $ 15.00 |
| **721 Clinton - Curbs Total** | | | |
| Demo sidewalks | 567 | SF | $ 3.00 |
| ~~Planting Beds- plant medium & drainage~~ | 76 | SF | NIC |
| Conc Sidewalk 4" thk. | 567 | SF | $ 13.50 |
| Aggregate base 4" thk over compacted base | 567 | SF | $ 5.00 |
| Planter walls, 8" thk. X 16" h. | 43 | LF | $ 20.00 |
| **721 Clinton St - Sidewalks Total** | | | |
| MDC bid $338,500 | | | |
| **Sidewalks & Curbs** | | | |
| 04200 **C.M.U. Block** | | | |
| **Building A** | | | |
| Partition Type 19, CMU 8" thk. | 6,534 | SF | $ 15.00 |
| Partition Type 19-E, CMU 8" thk. Filled solid | 11,586 | SF | $ 17.75 |
| **Building A Total C.M.U.** | | | |

| | | | | |
|---|---|---|---|---|
| **Building B** | | | | |
| Partition Type 19, CMU 8" thk. | 1,537 | SF | $ | 15.00 |
| Building B Total C.M.U. | | | | |
| **Building C** | | | | |
| Partition Type 17, CMU 4" thk. | 436 | SF | $ | 13.00 |
| Partition Type 19, CMU 8" thk. | 3,704 | SF | $ | 15.00 |
| Building C Total C.M.U. | | | | |
| **Building D** | | | | |
| Partition Type 18, CMU 6" thk. | 3,000 | SF | $ | 14.00 |
| Partition Type 19, CMU 8" thk. | 1,890 | SF | $ | 15.00 |
| Partition Type 19, CMU 8" thk. ( under windows 3'-6" h) | 299 | SF | $ | 15.00 |
| Roof top parapet, 8" cmu X 4'h. (Det 2/405 & 1/402), 141 lf | 563 | SF | $ | 16.00 |
| Roof top parapet, 8" cmu X 16"h. (Det 2/402 & 2/403), 258 lf | 344 | SF | $ | 16.00 |
| Building D Total C.M.U. | | | | |
| **Building E** | | | | |
| Partition Type 19, CMU 8" thk. ( angle cut tops) | 3,983 | SF | $ | 16.00 |
| Roof top parapet, 8" cmu X 5'h. | 932 | SF | $ | 15.00 |
| Building E Total C.M.U. | | | | |
| **C.M.U. Block** | | | | |

# Wonder Lofs Owner, LLC
# General Liability Owner Controlled Insurance Program (OCIP)
## Project: Wonder Lofts

The Owner has implemented a General Liability Owner Controlled Insurance Program (OCIP) for the West Orange Redevelopment project.  Bidders are required to INCLUDE their normal insurance costs in their bids for this project.   Please refer to the OCIP Insurance Manual dated 08/27/2018 for more information on the program.  The manual is available on the Prism Box.Net website.  Please note that the OCIP Insurance manual is a contract document.

1) Upon award of a contract you will be provided with the OCIP enrollment form package.  The forms are also available on the Box.net site for review.  The forms are to be submitted to the OCIP administrator, Turner Surety and Insurance Brokerage (TSIB), as noted on the next page.  You are also to submit your Certificate of Insurance to TSIB for review and processing.  TSIB will monitor all certificates for compliance with your contractual requirements.  The Enrollment Form 1GL and Certificate of Insurance are required prior to starting work onsite.

   A. **FORM -1GL** Application for Enrollment
   The Form-1GL enrolls the Contractor in the OCIP program & provides the Contractor with General Liability coverage on site.  Please complete the Form prior to working on site.

   B. **FORM- 2GL** Insurance Cost Worksheet
   The Form 2GL will calculate the cost of insurance that you would have paid your insurance carrier if you had not participated in the OCIP.  Please contact your insurance broker for assistance & copies of your General and Excess/Umbrella rating pages.

   C. **FORM- 3GL Quarterly** On-Site Payroll Report
   If your General Liability cost is rated on your onsite payroll exposure you will be required to submit quarterly payrolls identifying your payroll expended onsite during execution of your work.  TSIB will follow up for this documentation with all contractors who will be required to submit payrolls.

   D. **FORM-4GL** Work Completion Form
   The Form-4GL is completed when your work is complete on site.  This form is to be completed then forwarded to Prism Construction Management for approval prior to processing by TSIB.

2) Upon receipt and processing of the Form 1GL, TSIB will issue a welcome letter to each participant and include the OCIP GL certificate of insurance.  Please keep this certificate as you will need it to document your coverage under the OCIP to your Insurance Carriers.

3) Upon receipt of the Form 2GL and rate pages, TSIB will evaluate the information and issue an Insurance Credit letter.  The letter will identify the cost of insurance that you would have paid if

you were not enrolled in the OCIP.  Since this cost is included in your Contract Price, Prism Construction management will issue a credit change order to deduct this from your contract price.

4) Change orders:  All change orders shall be priced to INCLUDE the cost of your insurance.  If your general liability is rated on payroll you will also be required to identify your payroll associated with the changed work.  Insurance Cost adjustments to your contract price associated with change orders will be reconciled by Prism Construction Management at close out of your contract.  The adjustments will be based on your changes in exposure due to change orders and the rating information provided with your Form 2 GL.

5) Form 3GL Payrolls will be collected from all subs whose GL cost is based on their payroll exposure.  TSIB will capture this information and follow up with the contractors for any missing data.  The payroll data will be used in conjunction with change order payroll data to determine the contractors final credit owed for participation in the OCIP.

6) Contact Information:

**Forms and OCIP Insurance Manual are available on the Prism Partners Website:**
**WWW.Prismpartners.net**
**(Please contact Prism Partner for a Username & Password)**

**Please send all the Forms to the:**
**Turner Surety and Insurance Brokerage Wrap-Up Service (TSIB)**
**Email: Smartwrap@tsibinc.com**
Fax: 1-203-666-4352
Mail: 35 Nutmeg Drive, Suite 300
Trumbull, CT 06611


For assistance please contact TSIB:


Service Center Quality Assurance Specialist
Eva Hobson
Email: hobson@tsibinc.com
Direct Phone:  (203) 283-2007

Regional Wrap-Up Manager
Denise Bianchi
Email: dbianchi@tsibinc.com
Direct Phone:  (201) 574-3885

# ATTACHMENT E

## SUPPLEMENTARY GENERAL CONDITIONS FOR BUILDINGS OWNED BY PRISM

1. If any of the Work to be performed by Trade Contractor is in or adjacent to a building occupied by tenants, the convenience and comfort of the tenants shall take priority over the construction operations.   While some tenant inconvenience is anticipated, Trade Contractor shall be considerate of the tenants in all cases, as more specifically set forth below.

2. The loading of materials, tools, etc., in common areas, such as the lobby, shall be performed cleanly, quietly, and inconspicuously.

3. Any core drilling, impact fastening, or work in an existing tenant's ceiling plenum shall be performed after working hours, when possible.  If such operations are attempted during regular working hours, and a tenant complaint is registered, the Work shall cease immediately and be rescheduled for a time, which is more convenient to the tenant.

4. Finished areas of the building must be protected and restored to good condition when affected by Trade Contractor's construction activity.  Clean-up shall be performed on a daily basis, and Trade Contractor shall be backcharged if Construction Manager performs the clean-up.

5. Trade Contractor is responsible for the conduct and attitude of its employees.

6. Due to the constraints imposed by working in an occupied building, Trade Contractor shall perform the Work in a diligent, expeditious fashion, such that working operations shall not be prolonged for an unacceptable length of time.

7. Trade Contractor shall direct its employees to park in an area designated by Construction Manager after unloading materials, etc., and Trade Contractor shall not leave vehicles in unloading zones or visitor parking areas.

8. Building's dumpster shall **NOT** be used to dispose of construction debris.

9. Key(s) (and all copies thereof) issued or loaned to Trade Contractor for the purpose of locking and/or unlocking any part or portion of the Project's site are to be safeguarded at all times and returned to the party issuing said key(s) immediately upon demand by said issuing party.

10. Special working hours (ie, nights, weekends, etc.) shall be arranged in advance with Construction Manager.

11. Trade Contractor shall be **CONSCIOUS** of other building tenants with regard to noise, debris, and disruptions.

12. Elevator walls and floors shall be protected prior to construction materials being delivered.

13. Trade Contractor shall protect hallway walls, doors, etc., when delivering materials.

14. Trade Contractor shall only use designated areas for ingress and egress of construction personnel and materials.

15. Entry doors shall be properly held open.

16. Trade Contractor shall **NOT** use cleaning service's vacuums, etc.

17. Slop sinks may be available by arrangement with Construction Manager.  **Trade Contractor shall NOT** use lavatory sinks to wash/clean contracting materials.

18. Suite doors to lobbies shall be kept closed during construction.

19. Materials and tools shall not be stored in hallways.

**ATTACHMENT E**

SUPPLEMENTARY GENERAL CONDITIONS FOR BUILDINGS OWNED BY PRISM

20. All mechanical and electrical rooms shall be locked at 4:00 PM unless prior arrangements have been made.

21. Any questions arising throughout the day shall be directed to Construction Manager.

22. Any construction activity that shall take place in a tenant-occupied area shall be pre-arranged and scheduled through Construction Manager.

23. The shut down of any mechanical equipment shall be pre-arranged with Construction Manager.

24. A designated lavatory for Trade Contractor's employees shall be identified by Construction Manager and scheduled through same.

25. The main lobby shall **not** be used for ingress/egress by Trade Contractor's employees.

26. Trade Contractor shall be responsible for the appropriate attire of its employees (ie, without limitation, no cutoff jeans, shorts and/or sleeveless T-shirts, in a tenant occupied building.

# ATTACHMENT F

# SAFETY REQUIREMENTS



## ATTACHMENT F

### Supplement to Trade Contract Concerning Safety

---

**PROJECT:**          **Wonder Lofts**
                      **Clinton Street, Hoboken, NJ**

---

**In the event of any inconsistencies between the Attachment F and the Contract to which the Attachment F is attached, then, the terms of the Contract shall govern, prevail and control.**

The Trade Contract or is hereby notified that it is the policy of Contractor to provide a safe and healthful work environment. The Trade Contractor's signature below indicates acceptance of and agreement to the following:

A.   Adhere to the *Safety and Health Policy Statement*, which follows as part of Attachment F.

B.   Adhere to the full *Project Safety Manual*, which is available for review at the Prism Construction Management, LLC offices and at the jobsite.

C.   Adhere to the *Contractors Safety Handbook,* which follows as part of Attachment F.

D.   Acknowledgment and Acceptance of Safety and Health Enforcement Practices (Attachment F-1) by Prism Construction Management, LLC (for completion and signature)

E.   Adhere to the Personal Protective Equipment Safety Guideline that all trade contractors and their employees and visitors wear hard hats and Safety glasses at all times (Attachment F, page F-5).

F.   All Trade Contractors and their on site employees are required to attend the Prism Construction Management, LLC's job site safety orientation  (Attachment F, page 3).

G.   All Trade Contractors are required to provide a copy of the job specific Hazard Communication (MSDS, Material Safety Data Sheets) binder to the project site superintendent. This information is required before any contractor can start work.

H.   All Trade Contractors understand that fines of $1,000.00 and or removal from site will be the consequence for non-compliance with the project's safety requirements, at the sole discretion of Prism Wonder Lofts Construction, LLC or the Project Owner.

---

Signature of Authorized Company Representative                                    Date



## ATTACHMENT F

### SUPPLEMENT TO TRADE CONTRACT CONCERNING SAFETY

### SAFETY AND HEALTH POLICY STATEMENT

It is the policy of Prism Construction Management, LLC to provide a safe and healthful work environment for subcontractors' site workers at every level through the awareness and prevention of occupational injuries and illness.

The objective of Prism Construction Management LLC's Build Safe is to eliminate work-related accidents (thereby injuries) and illness and to promote safety and health in every task undertaken by workers involved with projects managed by Prism Wonder Lofts Construction, LLC. To this end, Prism Construction Management, LLC's Build Safe will include:

A.    Implementation of a Trade Contractor safety committee for overseeing all aspects of safety and health activities at each project.

B.    Implementation of a program for conducting routine safety and health inspections to identify and eliminate unsafe working conditions or practices and control health hazards.

C.    A comprehensive list of safety and health training requirements for all contractors and subcontractors' personnel.

D.    Provisions for the use of personal protective equipment by contracted employees as identified by their respective job task requirements.

E.    Provisions for mechanical and physical safeguards to the maximum extent possible.

F.    Trade Contractor safety and health policies, requiring <u>every</u> site worker of the various companies to comply with these policies as a condition of their contract.

G.    Provisions for a thorough and prompt investigation of every accident to determine its cause, correct the problem and reduce the likelihood of it happening again.

H.    Trade Contractor shall implement a safety incentive program for promoting safety and health, encouraging the <u>active</u> participation of all site workers and acknowledging through rewards individuals whose safety record exemplifies the standards set forth in this program. Trade Contractors shall provide a copy of their safety incentive program to Prism Construction Management, LLC upon request.



## ATTACHMENT F

### SUPPLEMENT TO TRADE CONTRACT CONCERNING SAFETY

**CONTRACTOR'S SAFETY HANDBOOK**

Introduction

Prism Wonder Lofts Construction, LLC is committed to providing a work environment which promotes the health, safety and well-being of employees of our company and those of our Trade Contractors. To this end, sound safety practices are the responsibility of every site worker working on this project.

This Safety Handbook outlines the rules and regulations that the employees of Trade Contractors must adhere to at all times. Prism Wonder Lofts Construction, LLC does not permit nor tolerate unsafe working conditions or practices that might compromise the safety of employees, visitors or property.

It is the responsibility of Trade Contractors and their employees to read this handbook and familiarize themselves with the rules and regulations as they apply to the work to be performed on this project.

**Site Safety Orientation- It is the responsibility of Trade Contractors and their employees to attend the Prism Wonder Lofts Construction Site Safety Orientation. The site Superintendent with the support of Prism Wonder Lofts Construction will provide this on site training. A form will be signed by each worker to verify the training and a Prism Site Safety sticker will be placed on their helmet to show their attendance. The orientation provides an overview of the site safety requirements and pertinent OSHA regulations to all contractors personnel prior to entry onto our sites.**

Rules of Conduct

- Never bring alcoholic beverages, illegal drugs, explosives, guns, knives, ammunition or other weapons on the project site.

- Comply with all posted notices at all times.

- Always wear protective equipment such as hard hats, safety goggles, gloves or respirators if required by the job you are performing.

- Never work alone in a hazardous area. Always employ the buddy system.

Compliance

- Trade Contractors must have in place, prior to beginning work on this project, OSHA-required and other regulatory agency required written programs as dictated by the work they are to perform on this project. Copies of said programs shall be forwarded to Prism Wonder Lofts Construction, LLC Project Safety Coordinator upon request.

- Trade Contractors shall ensure that their site workers comply with policies and procedures outlined in their written programs as well as with the policies and procedures set forth in Prism Wonder Lofts Construction, LLC's BuildSafe.



## ATTACHMENT F
### SUPPLEMENT TO TRADE CONTRACT CONCERNING SAFETY

Housekeeping

- Trade Contractors shall ensure that all aisles and work areas are kept clear of obstructions.

- Trade Contractors shall remove or bend all protruding nails.

- Trade Contractors shall keep all emergency equipment readily available for use. Emergency equipment includes fire extinguishers, SCBA's, blankets, first aid supplies, emergency eyewash stations, stairways, fixed ladders and the like.

- Trade Contractors shall ensure that all broken glass is swept and discarded in designated containers as soon as the breakage occurs.

- Trade Contractors shall always store materials, equipment and tools in their designated storage areas.

- Trade Contractors shall ensure that materials, tools or equipment are never stored in stairwells or beneath stairways.

- Trade Contractors shall ensure that all scrap, metal, and trash is removed from the site at the end of each shift.

- Trade Contractors shall ensure that all secondary containers under their control are labeled.

Fire Safety

- Trade Contractors shall ensure that all emergency equipment be inspected on a monthly basis.

- Trade Contractors shall ensure that site workers have been trained in the selection, use and inspection of fire extinguishers including fire classifications.

- Trade Contractors shall ensure site workers have been trained in project site evacuation and reassembly procedures.

- Trade Contractors shall ensure that site workers have been familiarized with Prism Wonder Lofts Construction, LLC's Emergency Fire Protection and Prevention Plan.

- Trade Contractors shall ensure that they have posted emergency numbers and evacuation routes throughout their work area.

- Trade Contractors shall ensure that fire extinguishers are kept charged and are inspected on a monthly basis by on-site personnel, and annually by an outside source.

Hazard Communication

- Trade Contractors shall ensure that a list of all chemicals brought on site have been identified and listed on the form located in Section 7.4 of Prism Wonder Lofts Construction, LLC's BuildSafe.



## ATTACHMENT F

### SUPPLEMENT TO TRADE CONTRACT CONCERNING SAFETY

♦ Trade Contractors shall ensure that a copy of all MSDS's have been forwarded to Prism Wonder Lofts Construction, LLC's Project Safety Coordinator for insertion into the Project MSDS Control Book.

♦ Trade Contractors shall ensure that site workers maintain a list of all approved chemicals in their tool boxes.

♦ Trade Contractors shall ensure that they maintain an MSDS binder with copies of all of their MSDS's.

♦ Trade Contractors shall ensure that they compile a list of non-routine tasks that may be performed by site workers and submit a copy of this list to Prism Wonder Lofts Construction, LLC.

♦ Trade Contractors shall ensure that they adopt Prism Wonder Lofts Construction, LLC's Hazard Communication Program or provide a copy of their own program to be maintained on the project site for the duration of the project.

♦ Trade Contractors shall ensure that if they do not adopt the NFPA labeling system, they will forward a description of their labeling requirements to Prism Wonder Lofts Construction, LLC's Project Safety Coordinator.

Warning Signs

♦ Trade Contractors are required to comply with all warning signs.

Protective Clothing and Equipment

It is the responsibility of Trade Contractors to provide their employees with Personal Protective Clothing and Equipment as dictated by the job to be performed. Employees are required to wear personal protective equipment and clothing required by the job to be performed.

**Hard Hat Requirement**

**It is mandatory that all Contractors and their employees wear hard hats on all Prism Wonder Lofts Construction, LLC's sites. It is the responsibility of all Trade Contractors to provide their employees with helmets and that they are worn at all times. Workers are not permitted on Prism Wonder Lofts Construction, LLC's sites without this equipment. Protective hats shall be in accordance with the provisions of ANSI Z89.31971 Industrial Protective Helmets for Electrical Workers, Class B, and shall be worn at the jobsite by employees who are exposed to the hazards of falling objects, electric shock, or burns.**

**Eye Protection**

**It is the responsibility of Trade Contractors to provide their employees with eye protection. All workers and visitors are required to wear eye protection that will comply with ANSI Z87.1-1989.**



## ATTACHMENT F

### SUPPLEMENT TO TRADE CONTRACT CONCERNING SAFETY

Hearing Protection

Hearing protection is required in all posted areas and whenever noise levels exceed 85 decibels. It is the responsibility of Trade Contractors to provide their employees with hearing protection as required.

Safety Shoes

Trade Contractors shall ensure that sturdy shoes are worn by all project personnel. Whenever there is the potential for injury to toes, safety shoes with toe protection are required.

Chemical Protective, Chemical Resistant Suits and Rubber Boots

It is the responsibility of Trade Contractors to provide employees with the necessary protective suits, gloves and boots whenever their job requires the handling of chemicals or hazardous materials.

Overhead Work

Prior to performing any overhead work that requires the use of a ladder, Trade Contractors are required to barricade the area, and evacuate the area of all non-essential personnel. **Note: Prior to barricading an area that restricts aisles or access routes, be sure to provide for alternate routes or ensure that the area has been vacated.**

Ladders

♦   Prior to using ladders, Trade Contractors are required to inspect them for defects such as broken or loose steps or rungs, cracks or weak side rails, frayed rope on extension ladders, and damaged feet on extension ladders.

♦   Prior to using an extension ladders, Trade Contractors are required to secure them from slipping, shifting or other potential hazards.

♦   Prior to using step ladders, Trade Contractors are required to prevent them from slipping, shifting or other potential hazards.

♦   Trade Contractors are prohibited from separating extension ladders.

♦   Trade Contractors are required to extend ladders a minimum of 36 inches (3 rungs) above the level to be reached. If this cannot be accomplished, Trade Contractors shall ensure that a grab rail is accessible.

♦   Trade Contractors are prohibited from using stepladders as straight ladders.

♦   Trade Contractors are required to secure unopened ladders, left leaning against a wall, to keep from falling.

♦   Trade Contractors shall ensure that site workers always face the ladder when climbing up or down.



## ATTACHMENT F

### Supplement to Trade Contract Concerning Safety

♦ Trade Contractors shall ensure that all materials are hoisted or lowered in a safe manner to prevent dropping.

<u>Floor Openings and Stairs</u>

♦ It is the responsibility of Trade Contractors to ensure that all floor openings are guarded with barriers on all exposed sides.

♦ Trade Contractors shall ensure that temporary hatchways and floor openings are guarded by a hinged cover or a removable standard railing with toe board on no more than two sides.

♦ Trade Contractors shall ensure that all stairs with four or more risers be equipped with handrails approximately 34 inches from the tread.

♦ Trade Contractors shall ensure that stairs intended for two-way passage be a minimum of 44 inches wide with maximum 12 feet height between landings.

<u>Scaffolds</u>

♦ Trade Contractors shall always inspect upright scaffolds to ensure they are plumb, secure and have firm footing.

♦ Trade Contractors shall always secure stationary upright scaffolds to a building or other structure.

♦ Trade Contractors shall ensure that all portable maintenance staging be outfitted with outriggers.

♦ Trade Contractors shall ensure that scaffold planks or platforms be designed to hold a minimum of four times the weight they are intended to hold.

♦ Trade Contractors shall ensure that platform planks be overlapped by a minimum of twelve inches or secured.

♦ Trade Contractors shall always provide for safe access to work platforms.

♦ Trade Contractors shall ensure that scaffolds less than 45 inches wide and more than 4 feet above the ground be equipped with guardrails.

♦ Trade Contractors shall ensure that scaffolds more than 8 feet above ground be equipped with guardrails and toe boards on all open sides and ends.

♦ Trade Contractors are required to provide safety harnesses for all work performed on swinging or portable scaffolds and on all scaffolds 8 feet above ground level.

♦ Trade Contractors shall ensure that all swinging scaffolds are anchored and suspension ropes be designed to hold a minimum of 6 times the weight intended to hold.



## ATTACHMENT F

### SUPPLEMENT TO TRADE CONTRACT CONCERNING SAFETY

- Trade Contractors are required to provide guardrails, intermediate rails and toe boards on all open sides of scaffolds ten feet above ground level.

- Trade Contractors shall ensure that strong, secure locations are selected as anchors for suspension ropes and lifelines.
- Trade Contractors are required to provide safety harnesses whenever employees are suspended from lifelines that are anchored independently.

Compressed Air, Compressed Nitrogen or Other Gases

- Eye protection is required for all work performed using compressed air.  It is the responsibility of Trade Contractors to provide their employees with eye protection.

- Trade Contractors when using compressed air for cleaning purposes shall do so only when employing the safest work practices.

- Trade Contractors are required to always direct air stream away from face or other individuals.

- Trade Contractors shall ensure that pressure relief valves on air gun nozzles are never blocked.

Compressed Gas Cylinders

- Employees of Trade Contractors are required to immediately report cylinder leaks, to their Manager/Supervisor/Foreman, and are prohibited from moving leaking cylinders.

- Trade Contractors shall ensure that compressed gas cylinders are *always* maintained in an upright position and secured by strap, chain bar or other rigid retaining device.

- Trade Contractors shall ensure that compressed gas cylinders are kept free from rust and leaks.

- Cylinders are outfitted with regulators to reduce compressed gases to safe operating levels. Trade Contractors shall ensure that regulators are marked for only one type of gas cylinder and will be used for that purpose only.

- Trade Contractors shall ensure that all cylinders are permanently labeled in accordance with American National Standards Institute (ANSI) to identify the type of gas in the cylinder.

- Trade Contractors shall ensure that cylinders are stored in a safe manner in their designated storage area only.

- Trade Contractors shall ensure that grease or oil is never used to lubricate the valve or joints of compressed gas cylinders.  Oxygen and oil react violently under pressure.  Using grease to lubricate an oxygen valve can result in an explosion.

- Trade Contractors shall ensure that oxygen and acetylene cylinders are stored a minimum of 20 feet apart in an upright position only.



## ATTACHMENT F

### SUPPLEMENT TO TRADE CONTRACT CONCERNING SAFETY

- Trade Contractors shall ensure that cylinder valves are closed tightly when not in use as well as at the end of each work day, and that protective caps are placed on cylinders when not in use.

- Trade Contractors shall ensure that prior to moving cylinders, regulators are removed and caps are securely fastened.

- Trade Contractors shall ensure that cylinders are not subjected to dropping, bumping or to atmospheres or cylinder temperatures exceeding 130 degrees.

### Hand and Power Tools

- Trade Contractors shall ensure that they have familiarized themselves with Prism Wonder Lofts Construction, LLC's general safety policies set forth in Section 9.1 of the BuildSafe.

- Trade Contractors shall ensure that hand and power tools are inspected prior to use to ensure safe operating condition.

- Prior to using hand or power tools, Trade Contractors shall ensure that their employees have received proper training for safe operation.  Certification of training shall be provided to Prism Wonder Lofts Construction, LLC upon request.

- Trade Contractors shall ensure that tools are not over strained to accomplish work they are not intended for.

- Trade Contractors shall ensure that tools are not left on stepladders, scaffolds, stairs or any place where they may become dislodged and fall.

- Trade Contractors shall ensure that only non-sparking tools be used in areas where flammables are handled or where sparks could create an explosion.

- Trade Contractors shall ensure that pneumatic or air-powered tools are handled with care and that air hoses are turned off when not in use.

- When operating a jack-hammer, hearing protection and metal toe guards are required.  It is the responsibility of Trade Contractors to provide their employees with protective equipment.

- Trade Contractors shall ensure that all pneumatic impact (percussion) tools be outfitted with safety clips or retainers to prevent attachments from being ejected.

### Grinding

- Trade Contractors are required to provide their employees with goggles prior to their performing grinding, buffing or working with wire brushes.

- Trade Contractors are required to provide their employees with face shields whenever the potential for flying objects presents itself.



## ATTACHMENT F

### SUPPLEMENT TO TRADE CONTRACT CONCERNING SAFETY

♦ Trade Contractors shall ensure that grinding wheels or buffers be equipped with safety guards prior to operation.

<u>Smoking and Using Open Flames</u>

Trade Contractors shall ensure that smoking policies are adhered to and that employees never smoke or use open flames in areas where flammable liquids, gases or highly combustible materials are stored, handled, or processed.

<u>Gas Heaters, Burning, Welding, Cutting or Grinding</u>

♦ It is the responsibility of Trade Contractors to ensure that they familiarized themselves with the policies set forth in Section 10.1 of Prism Wonder Lofts Construction, LLC's BuildSafe entitled Welding, Cutting and Brazing.

♦ It is the responsibility of Trade Contractors to provide their employees with adequate training prior to their use of open-flame or spark-producing equipment for the purpose of burning, soldering, cutting, grinding or prior to operating gas heaters or salamanders. Certification of training shall be provided to Prism Wonder Lofts Construction, LLC upon request.

♦ Whenever burning, welding, cutting or grinding operations are performed in and around combustible materials, Trade Contractors must first ensure that a fire watch be assigned and maintained for a period of one-half hour upon completion of the job.

♦ Prior to welding or cutting operations, Trade Contractors shall ensure that the immediate area is wetted down.

♦ Trade Contractors shall ensure that a fire watch is provided on both sides of the roof or wall prior to cutting through or welding an existing roof or wall.

♦ Trade Contractors are required to provide welding shields or screens whenever employees may be exposed to flash burns, and they shall ensure that this protective equipment is worn by employees.

♦ It is the responsibility of Trade Contractors to provide their employees with fire extinguisher training including the proper selection and use of fire extinguishers prior to engaging in any operation utilizing equipment that produces open flames or sparks. Certification of training shall be provided to Prism Wonder Lofts Construction, LLC upon request.

<u>Mobile Cranes</u>

♦ Trade Contractors shall ensure that proper clearance from overhead electrical power lines be maintained prior to operating cranes, derricks, power shovels or similar equipment.

♦ Trade Contractors engaged in crane operations shall ensure that all cranes are certified annually. Copies of certification shall be forwarded to Prism Wonder Lofts Construction, LLC upon request.



## ATTACHMENT F

### SUPPLEMENT TO TRADE CONTRACT CONCERNING SAFETY

- Trade Contractors shall ensure that all backhoes and other excavating equipment are certified annually whenever this equipment is used as a crane. Copies of certification shall be forwarded to Prism Wonder Lofts Construction, LLC upon request.

- Trade Contractors shall ensure that loads are not lifted over the front area of a truck-mounted crane unless approval is granted by the manufacturer of the crane.

Excavations and Trenching

- Prior to the start of any excavation, Trade Contractors are responsible for identifying the location of all underground utilities by calling **DIGSAFE (1-800-272-1000),** the utility companies or other appropriate agency.

- Trade Contractors are required to brace or slope holes, when 5 feet deep or more, to prevent cave-ins.

- Trade Contractors are required to use additional bracing whenever excavations are subject to vibration from vehicles or machinery.

- Whenever working in trenches more than 4 feet deep, Trade Contractors are required to provide for exiting via ladders or steps.

- Whenever excavating in or around a structure, Trade Contractors are required to exercise caution so as not to weaken the structure.

- Trade Contractors are required to barricade and restrict access to excavations.

- Trade Contractors are required to use warning lights, outdoors, by excavation and trenches.

- Trade Contractors shall ensure that whenever walkways are installed over open trenches, the walkways will be strong enough to handle pedestrian traffic, and will be equipped with guardrails on both sides which are bevelled to the ground on both ends.

Safety Harnesses

- OSHA and ANSI standards are being revised and may change in the near future. Trade Contractor shall strictly abide by all of said revisions and changes.

- Trade Contractors shall ensure that employees performing confined space entry are provided with and required to wear safety harnesses with O rings.

- Trade Contractors are required to provide safety harnesses with a minimum of 1/2 inch diameter nylon lanyard. Safety harnesses must have a suitable means for adjustment and a minimum breaking strength of 5,400 pounds.

- Trade Contractors shall ensure that safety harnesses are inspected for damage or worn parts prior to each use.



## ATTACHMENT F

### SUPPLEMENT TO TRADE CONTRACT CONCERNING SAFETY

- Trade Contractors are required to provide lifelines for all work performed on roofs within 10 feet of an unprotected edge and shall ensure that an attendant be present under these circumstances. Whenever lifelines are impractical, a safety net must be used.

Confined Spaces

- Prior to performing confined space entry work, Trade Contractors must provide Prism Wonder Lofts Construction, LLC with a copy of their Confined Space Safety Program.

- Prior to allowing entry into a confined space, Trade Contractors must first secure a permit to ensure the atmosphere is safe for entry.

- Trade Contractors shall ensure that their site workers have been trained to perform the confined space entry operations.

- Whenever required, Trade Contractors must provide for atmospheric testing.

- Trade Contractors must always use the entry-attendant system when entering confined spaces. Trade Contractors must ensure that their entry attendant never enters a confined space.

- Trade Contractors shall ensure that the entry attendant outside the confined space is responsible for maintaining constant verbal communication with his/her coworker inside the confined space.

- Trade Contractors shall provide a two-way radio or other communication device whenever access to a telephone is restricted.

- Trade Contractors shall ensure that confined spaces have positive ventilation prior to entry.

Performing Electrical Work

- All electrical work regardless of the nature must be approved by Prism Wonder Lofts Construction, LLC or the project electrical Trade Contractor.

- Trade Contractors shall ensure that, **prior to working on any system greater than 120 volts**, the system be totally de-energized, properly grounded out and tested dead.

- Trade Contractors shall ensure that **"do not operate"** tags are placed on all electrical switches or circuit breakers used to de-energize a system.

- Trade Contractors are required to make available lockout devices for placement on energy isolating devices to hold them in a safe position.

- Trade Contractors shall ensure that employees never remove covers or panels from any compartment in which there are exposed energized connections greater than 600 volts.

- Trade Contractors shall ensure that, **prior to working on any system less than 600 volts**, power is turned off to the maximum extent possible.



## ATTACHMENT F

### SUPPLEMENT TO TRADE CONTRACT CONCERNING SAFETY

- Trade Contractors shall ensure that the scope of work to be performed is approved by Prism Wonder Lofts Construction, LLC prior to beginning work.

- Trade Contractors shall ensure that only employees who are qualified electricians, journeymen or master electricians are permitted to perform electrical work.

- Trade Contractors shall ensure that only qualified authorized personnel be allowed in the work area.

- Trade Contractors are required to barricade the area prior to work commencing.

- Trade Contractors are required to provide their employees with safety glasses for all electrical work.

- Trade Contractors shall ensure that only proper tools that are in good repair are used.

- Trade Contractors shall ensure that Prism Wonder Lofts Construction, LLC be notified of any changes to the sequence of work prior to implementing the change.

- When working in high-voltage rooms, Trade Contractors shall ensure that aisles with switches and controls be kept free from tools and equipment at all times.

- Trade Contractors are required to provide proper protective equipment and clothing and ensure its use by employees working on electrical equipment.  Such equipment and clothing may include:

  | — Rubber Gloves | — Rubber Blankets | — Safety Glasses |
  | — Glow Lamp Tester | — Grounding Sets | — Hot Sticks |
  | — Glow Tector | — Tags and Lockouts | — High-Dielectric Safety Helmets |

<u>Tarpaulins</u>

Trade Contractors shall ensure that tarpaulins be flame resistant (asbestos free) and in good condition.

<u>Salamanders</u>

- Trade Contractors shall ensure that salamanders be positioned away from all combustible materials.

- Trade Contractors shall ensure that salamanders are equipped with overheating and tip-over protection devices.

<u>Combustible Trash</u>

Trade Contractors are required to remove all combustible trash from work areas and store it a safe distance from all buildings at the end of each workday.



## ATTACHMENT F
### SUPPLEMENT TO TRADE CONTRACT CONCERNING SAFETY

Emergency Equipment

Trade Contractors are required to label all emergency equipment and store it in a readily accessible location.

Chemicals and Paints

- Trade Contractors shall ensure that all containers are properly labeled with the original manufacturer's label and includes the chemical name and its hazards.

- Trade Contractors shall ensure that employees take all precautions when handling chemicals and that they review the MSDS prior to handling chemicals.

- Trade Contractors shall ensure that all chemical waste or empty chemical containers are disposed of in accordance with the standards set forth in Prism Wonder Lofts Construction, LLC's BuildSafe.

- Contractor/Trade Contractor employees must report all chemical spills immediately to their Manager/Supervisor/Foreman. Contractor/Trade Contractor Manager/Supervisor/ Foreman must report all chemical spills to Prism Wonder Lofts Construction, LLC as soon as possible.

Transporting Material and Equipment

- Prism Wonder Lofts Construction, LLC recommends that when carrying pipe or conduit in excess of ten feet in length, the services of two men is employed.

- Trade Contractors shall ensure that carts, tools, equipment or materials are never left unattended in aisles unless providing for a barricade.

Motor Vehicle Requirements

- Trade Contractors are required to park vehicles in designated parking areas.

- Trade Contractors shall ensure that vehicles do not block exits, fire hydrants, walkways or emergency equipment.

- Trade Contractors shall ensure that speed limits are obeyed at all times.

- Trade Contractors are required to enforce the wearing of safety belts by employees whenever operating a company vehicle on the project premises.

- Trade Contractors shall ensure that all vehicles used on the project are equipped with emergency equipment.

### SITE SAFETY ENFORCEMENT PRACTICES



## ATTACHMENT F

### SUPPLEMENT TO TRADE CONTRACT CONCERNING SAFETY

Policy Statement

The Occupational Safety and Health Administration (OSHA) establishes minimum regulatory requirements under 29 CFR 1926 for the construction industry. Trade Contractor shall adhere to these standards during all construction activities. The Environmental Protection Agency (EPA) also establishes minimum environmental standards that have been adopted by every State in the country. It is the responsibility of every Trade Contractor to be knowledgeable of these regulations and know which regulations need to be followed based on the activities of their employees. **Prism Wonder Lofts Construction provides Trade Contractor with *guidance documents* which are intended to provide compliance assistance and are <u>not</u> substitutes for the necessary regulatory knowledge and understanding that each Trade Contractor is responsible to have concerning their employees activities**.

Trade Contractor Accountability

**Included with this Contract is the *Trade Contractor Project Information Form*. This document <u>must</u> be filled out for each project and returned to Prism Wonder Lofts Construction.** When these forms are returned, Prism Wonder Lofts Construction will send you the *Prism Wonder Lofts Construction Project Information Form* which will provide particular site specific safety information about the project. Each Prism Wonder Lofts Construction Project Manager will maintain a copy of the Project Safety Manual for your review.

Enforcement Practices

As stated previously, each subcontractor is responsible for following the necessary safety and health practices specific to OSHA. Trade Contractor shall adhere to these standards. Trade Contractor may be requested to furnish written programs, training documentation and records as required by OSHA. In addition, subcontractor employees will be expected to comply with these requirements and you will be held accountable for their actions.

Prism Wonder Lofts Construction Job Superintendent may report any violations to the Prism Wonder Lofts Construction Project Manager who will be required to take one of two options; issue a written warning to the subcontractor Project Manager/Supervisor, or issue a Violation Report to Prism Wonder Lofts Construction Corporate Offices where fines will be assessed based on frequency and severity. *Non-Serious Violations* (not an imminent threat to an employee(s) health and safety but a violation of OSHA standards or activities that resulted in the injury of an employee(s)) will carry a $100.00 fine. Repeat non-serious violations will be added to previous fines.

*Serious Violations* (an imminent threat to the health and safety of an employee(s) or actions which have resulted in the injury of an employee(s)) will carry a fine of $500.00. Repeat violations of the same offense will be added to previous fines and may be grounds for dismissal from the project. **All fines will be subtracted from monies owed to the Trade Contractor by Prism Wonder Lofts Construction, LLC.**



## ATTACHMENT F

### SUPPLEMENT TO TRADE CONTRACT CONCERNING SAFETY

It is sincerely hoped that this course of action is not necessary and we can all work together to provide a quality product as safely as possible.  Any questions regarding this policy should be directed to Prism Wonder Lofts Construction **973-562-9580.**



## ATTACHMENT F
### SUPPLEMENT TO TRADE CONTRACT CONCERNING SAFETY

---

### *Prism Wonder Lofts Construction, LLC*
### TRADE CONTRACTOR PROJECT INFORMATION FORM

Subcontractor Name:_____     Date:_____

Address:_____     Project Number:_____

_____

_____

Project Manager Name:_____

Telephone Number:_____

---

## Chemical List:

| Product Name | Manufacturer |
|---|---|
| 1. _____ | _____ |
| 2. _____ | _____ |
| 3. _____ | _____ |
| 4. _____ | _____ |
| 5. _____ | _____ |
| 6. _____ | _____ |
| 7. _____ | _____ |
| 8. _____ | _____ |
| 9. _____ | _____ |
| 10. _____ | _____ |

**ATTENTION:  Provide the Prism Wonder Lofts Construction Site Superintendent with the job specific MSDS Binder.  The Binder will be returned at the end of the project.**

# ATTACHMENT H
# PROJECT REQUIREMENTS

# ATTACHMENT H
## PRISM WONDER LOFTS CONSTRUCTION, LLC

## GENERAL PROJECT REQUIREMENTS
## FOR TRADE CONTRACTORS

## I.   CONTRACT ADMINISTRATION REQUIREMENTS

### A.   Contract Documents

The form of contract shall be Prism Wonder Lofts Construction, LLC (hereafter referred to as "Contractor") "Form of Trade Contract between Contractor and Trade Contractor". By submitting a bid, the trade contractor acknowledges receipt and review of the contract form and agrees to be bound by its terms and to satisfy all requirements of the contract and its attachments.

### B.   Insurance

Trade contractor shall satisfy the insurance requirements as described in Article 9 and Attachment "D".

### C.   Invoicing

All billings are to be in accordance with the "Invoicing Requirements" attachment to the contract, and are to be submitted on the forms provided.

## II.   COORDINATION REQUIREMENTS

### A.   Design Clarifications

Any design clarifications and/or supplemental information required to facilitate proper execution of the subcontract work are to be requested in writing by the trade contractor in a timely, expeditious, and specific manner so as to avoid delays to execution of the work.

### B.   Layout

All trade contractors are responsible for laying out their own work.  Start of work by this Trade Contractor signifies acceptance of all work in place by others.

### C.   Work Hours
Normal jobsite work hours are 8:00 AM to 4:00 PM Monday through Friday.

### D.   Overall Coordination

Trade contractor shall coordinate its work with the work of all adjoining and interfacing trades. Trade contractor is obligated to review and understand the intent of all of the design documents, and shall maintain its own complete set of drawings at the jobsite for reference purposes.  Any questions and clarifications (conflicts of available space, interface discrepancies, etc.) are to be requested well in advance of the execution of the work.   Any work that proceeds without appropriate consideration and coordination of other trades is to be removed and/or modified as required at the trade contractor's expense.

### E.   Delays

Any delays to the progress schedule which are caused by a trade contractor's failure to perform or satisfy the contract requirements shall be the sole responsibility of that trade contractor, and any costs associated with the delays will be assigned to that trade contractor.

### F.   Progress Meetings

**ATTACHMENT H**
**GENERAL PROJECT REQUIREMENTS**

All trade contractors shall attend and participate in the coordination and progress meetings as requested and required by Contractor. All contractors are required to have an approved representative of the company attend all meetings. The approved individual shall be empowered to represent the company and make decisions for the company. The approved individual must remain the same throughout the project unless otherwise requested or approved by Contractor. Failure to attend any meeting will be considered a delay to the project.

G. Inspections, Permits, & Approvals

Trade contractor shall cooperate and coordinate its work with all applicable inspectors and/or testing agencies. This includes local code officials and inspectors, and independent testing agencies. Trade contractor is responsible for obtaining its own inspections and approvals from authorities having jurisdiction. Trade contractor shall provide all necessary documentation relative to its work that may be required for permitting, approvals, or inspections. Permit fees will be paid by others.

H. Material & Equipment Storage

Storage of material and equipment at the site shall be permitted only to the extent approved in advance by Contractor. If anything so stored obstructs the progress of any portion of work, it shall be promptly removed or relocated by the subcontractor without reimbursement. Facilities for storage at the site will be limited and it shall be the subcontractor's responsibility to make whatever arrangements may be necessary to ensure proper material availability for maintenance of job progress. This includes items furnished by other contractors.

I. Trade Contractor Trailers

The Trade Contractor shall place and relocate its trailers when and where directed by Contractor. The Trade Contractor is responsible for the acquisition, maintenance, and removal of all utilities and telephone services required for its trailers. All energy charges for same will be the Trade Contractors responsibility. The Trade Contractor shall be responsible to replace, at no cost to the project, any trailer determined to be in a condition unacceptable for the Project.

III. **MANPOWER AND EQUIPMENT REQUIREMENTS**

A. Field Supervision

All subcontractors shall provide adequate field supervision.

B. Tools & Equipment

All trade contractors are responsible for providing all necessary tools, equipment, scaffolding, etc. required to execute the work. Trade contractors are responsible for reasonable safeguarding of their own tools, equipment, and materials.

C. Labor

All jobsite labor shall be competent and fully qualified to perform the work.

D. Temporary Power

Temporary power is to be 110 volt only provided between the hours of 8:00 AM to 4:00 PM weekdays. Any other voltage or times of operation will be at the Trade Contractor's expense. Any Trade Contractors working at the site prior to the establishment of temporary construction power are responsible for providing their own power at their own expense.

E. Access To Jobsite

Normal jobsite work hours are 8:00 AM to 4:00 PM Monday to Friday. Trade Contractor is responsible for any costs of standby trades should work be performed other than during normal working hours or on Saturdays, Sundays, and Holidays. All trade contractors shall keep their materials, equipment, workers, and representatives within the limits of the work area only, and shall access the site only from the construction entrances provided. Trade contractors are strictly

**ATTACHMENT H**
**GENERAL PROJECT REQUIREMENTS**

prohibited from accessing adjoining properties. All trade contractors shall comply.  Violators will be subject to dismissal and banishment from the jobsite.

F.  Schedule

Contractor shall establish the construction schedule and sequence, which will be updated and modified periodically.  All trade contractors shall submit specific man-day and proposed crew size information for discrete work activities, as determined and requested by Contractor.  Trade contractor shall supply adequate manpower and supervision, and expedite all materials and equipment as necessary, to meet the schedule requirements.  All "float" belongs to Contractor.

## IV.  PERFORMANCE REQUIREMENTS

A.  Daily Cleanup

All trade contractors are responsible for clean up of their own work, and shall place their debris on a daily basis in dumpsters provided by Contractor.  All Hazardous waste must be disposed of from the jobsite, by approved methods and personnel, at the expense of the Trade Contractor.

B.  Accessories

All accessory and appurtenant items necessary for a complete installation of the trade contractor's work, and work "normal to the trade", are included in the subcontract price; whether or not such items are specifically noted on the contract documents.

C.  Safety

All trade contractors are to comply with all applicable state and federal safety guidelines and regulations. All requirements of Attachment "F" to the contract, "Supplement to Trade Contract Concerning Safety", are to be fulfilled and strictly adhered to by the trade contractor.

D.  Existing Conditions

Trade contractor has visited the site and familiarized himself to all existing conditions that may affect the work of this subcontract.

E.  Cutting & Patching

All subcontractors are responsible for their own cutting, patching, core drilling, and fire stopping.

F.  Finishes

Subcontractor is to clean and protect all finished surfaces and equipment that are to remain.  Provide temporary protection of all surfaces installed by this subcontractor for the duration of the project.  This Trade Contractor is responsible for protecting the work of others from damage due to this Trade Contractor's operations.

G.  Deliveries

Subcontractors are solely responsible for ordering and accepting delivery of their own material.

H.  Workmanship

All work is to be performed in a professional and workman-like manner.

## V.  SUBMITTAL / SHOP DRAWING REQUIREMENTS

A.  Submittals

All submittals are to be made by the trade contractor expeditiously upon contract award, and in a timely, complete, and coordinated manner, so as to avoid delays to material fabrication and execution of the work.

## ATTACHMENT H
### GENERAL PROJECT REQUIREMENTS

B. Design Clarification

Any design clarifications and/or supplemental information required to facilitate proper execution of the subcontract work are to be requested in writing by the trade contractor in a timely, expeditious, and specific manner so as to avoid delays to execution of the work.

C. Submittals

Submittals are to be submitted to the Contractor as follows:

1. Shop Drawings – Reproducible Transparencies and six (6) folded 8½" x 11" size) black line prints.

2. Catalog Cuts, Brochures, etc. – six (6) copies for approvals, ten (10) copies for distribution.

3. Samples – Four (4) each.

D. Substitution Process

1. Submission of request for substitution shall constitute a representation that the entity making the request:

   a. Has investigated the proposed product and determined that it is equal to or better than the specified product.

   b. Will provide the same warranty for the proposed product as for the specified product.

   c. Will coordinate the installation and make other changes which may be required for the work to be complete in all respects, including;

      ➢ Re-design.

      ➢ Additional components and capacity required by other work affected by the change.

      ➢ Waives all claims for additional costs and time extensions which subsequently may become apparent and which are caused by the change.

      ➢ Will reimburse the Owner for additional costs for evaluation of the substitution request, redesign by the Architect if required, and re-approval by authorities having jurisdiction if required.

   d. Substitutions will not be considered when acceptance would require substantial revision of the contract documents.

   e. Substitutions will not be considered when they are indicated or implied on shop drawing or product data Submittals without separate written request.

   f. Substitution requests will not be considered when submitted directly by sub-Subcontractor, supplier or vendor.

   g. Substitution Request Procedure:  Submit written request with complete date sustaining compliance of the proposed product with the requirements of the contract documents.

   h. Submit request within 15 days of the issuance of construction documents by Contractor.

   i. Submit request to Contractor.

   j. Submittal quantities must be in accordance with the requirements of Section 5.3.

   k. Submit request accompanied by the "Request for Substitution" form included in the Project Manual.

2. The Architect will determine acceptability of the proposed substitution.

E. As-Builts

Provide final as-builts, warranties, guarantees, part lists, owner manuals, maintenance guides, instruction manuals, user manuals, etc. for equipment provided and as required by the Contract Documents.

# ATTACHMENT K
## ADDENDUM TO
## TRADE CONTRACT



# ATTACHMENT "K"

## SUPPLEMENTAL INFORMATION

The following supplementary project requirements have been developed to ensure proper coordination of the project and apply to all trade contractors. Prism Wonder Lofts Construction, LLC reserves the right to amend these requirements as needed:

1.    Construction activities are only permitted as follows:

    -    Monday through Friday 8:00 AM – 4:00 PM

    No heavy equipment shall be permitted to arrive or depart outside of the above listed hours.

2.    Subcontractor employees shall sign in and out of the site daily.

3.    Excavation of any kind shall require a permit issued by Prism Construction Management.

4.    Subcontractor employees shall park in areas designated by Prism Wonder Lofts Construction, LLC.  Failure to park in designated areas will result in permanent dismissal from the Project.

5.    All subcontractor invoices/requisitions must be submitted to Prism Wonder Lofts Construction by the 20th of each month – no exceptions.  See Attachment C "Invoicing Requirements" in the contract for detailed information.

6.    All subcontractors are responsible for hoisting their materials into the building.

ATTACHMENT/EXHIBIT "A"
WONDER LOFTS DRAWING LIST-720 CLINTON

| Sheet Name | Version | Description | |
|---|---|---|---|
| A-000 | Architectural-720 Clinton | Title Sheet/Tax Map/General Notes/Drawing List | 02/26/19 |
| A-100 | Architectural-720 Clinton | Site & Impact Plans | 02/26/19 |
| A-101 | Architectural-720 Clinton | Site Circulation & Lighting Plans | 02/26/19 |
| A-102 | Architectural-720 Clinton | Site Landscaping & Topography Plan | 02/26/19 |
| A-103 | Architectural-720 Clinton | Flood Proofing Plan | 02/26/19 |
| A-150 | Architectural-720 RFI-34 Updated | Wall Partition Types/Floor Assemblies | 03/29/19 |
| A-151 | Architectural-720 Clinton | Soundproofing/Signage | 02/26/19 |
| A-200 | Architectural-720 Clinton | Architectural Plan Floor 0 (basement) | 02/26/19 |
| A-201 | Architectural-720 Clinton | Architectural Plan Floor 1 | 02/26/19 |
| A-201.1 | Architectural-720 RFI-8 | Architectural Plan 1st Floor Partial Plan | 03/19/19 |
| A-201.2 | Architectural-720 Clinton | Architectural Plan 1st Floor Partial Plan | 02/26/19 |
| A-201.3 | Architectural-720 RFI 31 | Architectural Plan 1st Floor Partial Plan | 03/12/19 |
| A-201.4 | Architectural-RFIs Misc. | Architectural Plan 1st Floor Partial Plan | 03/12/19 |
| A-201M | Architectural-720 RFI 31 | Architectural PlanFloor 1M Upper Parking | 03/12/19 |
| A-202 | Architectural-720 Clinton | Architectural Plan Floor 2 | 02/26/19 |
| A-202.1 | Architectural-720 RFI-1 | Architectural Plan 2nd Floor Partial Plan | 03/12/19 |
| A-202.2 | Architectural-720 Clinton | Architectural Plan 2nd Floor Partial Plan | 02/26/19 |
| A-202.3 | Architectural-720 Clinton | Architectural Plan 2nd Floor Partial Plan | 02/26/19 |
| A-202.4 | Architectural-720 Clinton | Architectural Plan 2nd Floor Partial Plan | 02/26/19 |
| A-203 | Architectural-720 Clinton | Architectural Plan 3rd | 02/26/19 |
| A-203.1 | Architectural-720 Clinton | Architectural Plan 3rd Floor Partial Plan | 02/26/19 |
| A-203.2 | Architectural-720 Clinton | Architectural Plan 3rd Floor Partial Plan | 02/26/19 |
| A-203.3 | Architectural-720 Clinton | Architectural Plan 3rd Floor Partial Plan | 02/26/19 |
| A-204 | Architectural-720 Clinton | Architectural Plan 4th Floor | 02/26/19 |
| A-204.1 | Arch-5/15/19-Misc. Revisions | Architectural Plan 4th Floor Partial Plan | 05/15/19 |
| A-204.2 | Arch-5/15/19-Misc. Revisions | Architectural Plan 4th Floor Partial Plan | 05/15/19 |
| A-204.3 | Architectural-720 Clinton | Architectural Plan 4th Floor Partial Plan | 02/26/19 |
| A-204.4 | Architectural-720 RFI-14 | Architectural Plan 4th Floor Partial Plan | 03/12/19 |
| A-205 | Architectural-720 Clinton | Architectural Plan Floor 5 | 02/26/19 |
| A-205.1 | Architectural-720 RFI-23 | Architectural Plan 5th Floor Partial Plan | 03/22/19 |
| A-205.2 | Architectural-720 Clinton | Architectural Plan 4th Floor Partial Plan | 02/26/19 |
| A-205.3 | Architectural-720 Clinton | Architectural Plan 4th Floor Partial Plan | 02/26/19 |
| A-205.4 | Architectural-720 Clinton | Architectural Plan 4th Floor Partial Plan | 02/26/19 |
| A-206 | Architectural-720 Clinton | Architectural Plan Floor 6 | 02/26/19 |
| A-206.1 | Architectural-720 Clinton | Architectural Plan 6th Floor Partial Plan | 02/26/19 |
| A-206.2 | Architectural-720 Clinton | Architectural Plan 6th Floor Partial Plan | 02/26/19 |
| A-206.3 | Architectural-REV30 | Architectural Plan 6th Floor Partial Plan | 04/16/19 |
| A-206.4 | Architectural-720 Clinton | Architectural Plan 6th Floor Partial Plan | 02/26/19 |
| A-207 | Architectural-720 Clinton | Architectural Plan Floor 7 | 02/26/19 |
| A-207.1 | Architectural-REV30 | Architectural Plan 7th Floor Partial Plan | 04/16/19 |
| A-207.2 | Architectural-REV30 | Architectural Plan 7th Floor Partial Plan | 04/16/19 |
| A-207.3 | Architectural-REV30 | Architectural Plan 7th Floor Partial Plan | 04/16/19 |
| A-208 | Architectural-720 RFI-50 | Architectural Plan Floor 8-Bulkhead Plan | 04/16/19 |
| A-211 | Architectural-720 Clinton | Roof Details | 02/26/19 |
| A-212 | Architectural-720 Clinton | Roof Details/Extensive Green Roof | 02/26/19 |
| A-213 | Architectural-720 RFI-48 | Roof Details/Pedestal System Details | 04/10/19 |
| A-221.1 | Architectural-720 Clinton | Reflected Ceiling Plan 1st Floor | 02/26/19 |
| A-221.2 | Architectural-720 Clinton | Reflected Ceiling Plan 1st Floor | 02/26/19 |
| A-221.3 | Architectural-720 Clinton | Reflected Ceiling Plan 1st Floor | 02/26/19 |
| A-221.4 | Architectural-720 Clinton | Reflected Ceiling Plan 1st Floor | 02/26/19 |
| A-222.1 | Architectural-720 Clinton | Reflected Ceiling Plan 2nd Floor | 02/26/19 |
| A-222.2 | Architectural-720 Clinton | Reflected Ceiling Plan 2nd Floor | 02/26/19 |
| A-222.3 | Architectural-720 Clinton | Reflected Ceiling Plan 2nd Floor | 02/26/19 |
| A-222.4 | Architectural-720 Clinton | Reflected Ceiling Plan 2nd Floor | 02/26/19 |
| A-223.1 | Architectural-720 Clinton | Reflected Ceiling Plan 3rd Floor Partial Plan | 02/26/19 |
| A-223.2 | Architectural-720 Clinton | Reflected Ceiling Plan 3rd Floor Partial Plan | 02/26/19 |
| A-223.3 | Architectural-720 Clinton | Reflected Ceiling Plan 3rd Floor Partial Plan | 02/26/19 |
| A-224.1 | Architectural-720 Clinton | Reflected Ceiling Plan 4th Floor Partial Plan | 02/26/19 |

ATTACHMENT/EXHIBIT "A"
WONDER LOFTS DRAWING LIST-720 CLINTON

| A-224.2 | Architectural-720 Clinton | Reflected Ceiling Plan 4th Floor Partial Plan | 02/26/19 |
|---------|---------------------------|-----------------------------------------------|----------|
| A-224.3 | Architectural-720 Clinton | Reflected Ceiling Plan 4th Floor Partial Plan | 02/26/19 |
| A-224.4 | Architectural-720 Clinton | Reflected Ceiling Plan 4th Floor Partial Plan | 02/26/19 |
| A-225.1 | Architectural-720 Clinton | Reflected Ceiling Plan 5th Floor Partial Plan | 02/26/19 |
| A-225.2 | Architectural-720 Clinton | Reflected Ceiling Plan 5th Floor Partial Plan | 02/26/19 |
| A-225.3 | Architectural-720 Clinton | Reflected Ceiling Plan 5th Floor Partial Plan | 02/26/19 |
| A-225.4 | Architectural-720 Clinton | Reflected Ceiling Plan 5th Floor Partial Plan | 02/26/19 |
| A-226.1 | Architectural-720 Clinton | Reflected Ceiling Plan 6th Floor Partial Plan | 02/26/19 |
| A-226.2 | Architectural-720 Clinton | Reflected Ceiling Plan 6th Floor Partial Plan | 02/26/19 |
| A-226.3 | Architectural-720 Clinton | Reflected Ceiling Plan 6th Floor Partial Plan | 02/26/19 |
| A-226.4 | Architectural-720 Clinton | Reflected Ceiling Plan 6th Floor Partial Plan | 02/26/19 |
| A-227 | Architectural-720 Clinton | Reflected Ceiling Plan Floor 7 Partial Plan | 02/26/19 |
| A-227.1 | Architectural-720 Clinton | Reflected Ceiling Plan 7th Floor Partial Plan | 02/26/19 |
| A-227.2 | Architectural-720 Clinton | Reflected Ceiling Plan 7th Floor Partial Plan | 02/26/19 |
| A-227.3 | Architectural-720 Clinton | Reflected Ceiling Plan 7th Floor Partial Plan | 02/26/19 |
| A-228 | Architectural-720 Clinton | Reflected Ceiling Plan 8th Floor | 02/26/19 |
| A-230 | Architectural-720 Clinton | ANSI Compliant Bathrooms & Details | 02/26/19 |
| A-240 | Architectural-720 Clinton | ANSI Compliant Kitchen & Details | 02/26/19 |
| A-300 | Architectural-06/14/19 Updates | Building Elevations Grand Street | 06/14/19 |
| A-301 | Architectural-06/14/19 Updates | Building Elevations Eighth Street | 06/14/19 |
| A-302 | Architectural-06/14/19 Updates | Building Elevations Clinton Street | 06/14/19 |
| A-303 | Architectural-06/14/19 Updates | Building Elevations South Building A Interior | 06/14/19 |
| A-304 | Architectural-720 Clinton | Building Elevations/Sections -Section AA (Building A) | 02/26/19 |
| A-305 | Architectural-720 Clinton | Building Elevations/Sections -Section BB (Building A) | 02/26/19 |
| A-306 | Architectural-720 Clinton | Building Elevations/Sections -Section CC (Building B/C/Court) | 02/26/19 |
| A-307 | Architectural-720 Clinton | Building Elevations/Sections -Section DD (Building A/B) | 02/26/19 |
| A-308 | Architectural-5/30/019 Updates | Building Elevations/Sections -Section EE (Building A/Court) | 05/30/19 |
| A-309 | Architectural-06/14/19 Updates | Building Elevations/Sections -Section FF (Building A/Court) | 06/14/19 |
| A-310 | Architectural-720 Clinton | Building Elevations/Sections -Section GG (Building A/C) | 02/26/19 |
| A-311 | Architectural-5/30/019 Updates | Glazing Schedule | 05/30/19 |
| A-312 | Architectural-5/30/019 Updates | Glazing Schedule (Continued) | 05/30/19 |
| A-313 | Architectural-5/30/019 Updates | Glazing Schedule-Commercial (Continued) | 05/30/19 |
| A-320 | Architectural-06/14/19 Updates | Brick Repair Details | 06/14/19 |
| A-411 | Architectural-720 Clinton | Wall Sections-Building A | 02/26/19 |
| A-412 | Architectural-720 Clinton | Wall Sections-Building B | 02/26/19 |
| A-413 | Architectural-720 Clinton | Wall Sections-Building C | 02/26/19 |
| A-414 | Architectural-720 RFI-2 | Wall Sections Building C | 03/12/19 |
| A-415 | Architectural-720 Clinton | Section Details | 02/26/19 |
| A-416 | Architectural-720 RFI 10 | Enlarged Sections-Building A | 03/22/19 |
| A-420 | Architectural-720 Clinton | Enlarged North West Stair Plans-Building A & Stair Details | 02/26/19 |
| A-421 | Architectural-720 Clinton | Enlarged North East Stair Plans-Building A | 02/26/19 |
| A-422 | Architectural-720 Clinton | Enlarged South West Stair Plans-Building B | 02/26/19 |
| A-423 | Architectural-720 Clinton | Enlarged South East Stair Plans-Building C | 02/26/19 |
| A-424 | Architectural-720 RFI-13 | Enlarged Typical Unit Interior Stairs | 03/12/19 |
| A-500 | Architectural-720 Clinton | Door Schedule-1st & 2nd Floor | 02/26/19 |
| A-501 | Architectural-720 Clinton | Door Schedule-3rd Floor | 02/26/19 |
| A-502 | Architectural-5/15/19 revision Door Schedule | Door Schedule-4th Floor | 05/15/19 |
| A-503 | Architectural-720 Clinton | Door Schedule-5th Floor | 02/26/19 |
| A-504 | Architectural-720 Clinton | Door Schedule-6th Floor | 02/26/19 |
| A-505 | Architectural-720 Clinton | Door Schedule-7th, 8th & 9th Floor & Hardware Schedule | 02/26/19 |
| A-506 | Architectural-720 Clinton | Door Types/Door Details | 02/26/19 |
| A-510 | Architectural-720 Clinton | Title Sheet/Tax Map/General Notes/Drawing List | 02/26/19 |
| A-600 | Architectural-720 Clinton | Miscellaneous Details 1 & Masonry/Firestopping | 02/26/19 |
| A-601 | Architectural-720 Clinton | Metal Stud Framing Details | 02/26/19 |
| A-602 | Architectural-720 Clinton | ACM Panel Details | 02/26/19 |
| A-603 | Architectural-720 Clinton | Miscellaneous Details | 02/26/19 |
| E-001 | MEP-Electrical Updates 4/29/19 | Electrical Sybol List & General Notes | 04/29/19 |
| E-002 | MEP-Electrical Updates 4/29/19 | Electrical Specifications | 04/29/19 |
| E-003 | MEP-Electrical Updates 4/29/19 | Electrical Specifications | 04/29/19 |
| E-100 | MEP-Electrical Updates 4/29/19 | Electrical Lighting Plan-First Floor | 04/29/19 |
| E-101 | MEP-Electrical Updates 4/29/19 | Electrical Lighting Plan-Mezzanine | 04/29/19 |

ATTACHMENT/EXHIBIT "A"
WONDER LOFTS DRAWING LIST-720 CLINTON

| E-102 | MEP-Electrical Updates 4/29/19 | Electrical Lighting Plan-Second Floor | 04/29/19 |
| E-103 | MEP-Electrical Updates 4/29/19 | Electrical Lighting Plan-Third Floor | 04/29/19 |
| E-104 | MEP-Electrical Updates 4/29/19 | Electrical Lighting Plan-Fourth Floor | 04/29/19 |
| E-105 | MEP-Electrical Updates 4/29/19 | Electrical Lighting Plan-Fifth Floor | 04/29/19 |
| E-106 | MEP-Electrical Updates 4/29/19 | Electrical Lighting Plan-Sixth Floor | 04/29/19 |
| E-107 | MEP-Electrical Updates 4/29/19 | Electrical Lighting Plan-Seventh Floor | 04/29/19 |
| E-108 | MEP-Electrical Updates 4/29/19 | Electrical Lighting Plan-Roof | 04/29/19 |
| E-200 | MEP-Electrical Updates 4/29/19 | Electrical Power Plan-First Floor | 04/29/19 |
| E-201 | MEP-Electrical Updates 4/29/19 | Electrical Power Plan-Mezzanine | 04/29/19 |
| E-202 | MEP-Electrical Updates 4/29/19 | Electrical Power Plan-Second Floor | 04/29/19 |
| E-203 | MEP-Electrical Updates 4/29/19 | Electrical Power Plan-Third Floor | 04/29/19 |
| E-204 | MEP-Electrical Updates 4/29/19 | Electrical Power Plan-Fourth Floor | 04/29/19 |
| E-205 | MEP-Electrical Updates 4/29/19 | Electrical Power Plan-Fifth Floor | 04/29/19 |
| E-206 | MEP-Electrical Updates 4/29/19 | Electrical Power Plan-Sixth Floor | 04/29/19 |
| E-207 | MEP-Electrical Updates 4/29/19 | Electrical Power Plan-Seventh Floor | 04/29/19 |
| E-208 | MEP-Electrical Updates 4/29/19 | Electrical Power Plan-Roof | 04/29/19 |
| E-209 | MEP-Electrical Updates 4/29/19 | Electrical Power Plan-Bulkhead | 04/29/19 |
| E-300 | MEP-Electrical Updates 4/29/19 | Electrical Riser Diagram | 04/29/19 |
| E-310 | MEP-Electrical Updates 4/29/19 | Electrical Panel Schedules-Residential Typical | 04/29/19 |
| E-311 | MEP-Electrical Updates 4/29/19 | Electrical Panel Schedules | 04/29/19 |
| E-312 | MEP-Electrical Updates 4/29/19 | Electrical Panel Schedules | 04/29/19 |
| FA-100 | MEP-Fire Alarm Updates 4/29/19 | Fire Alarm Riser & Notes | 04/29/19 |
| FA-200 | MEP-Fire Alarm Updates 4/29/19 | Fire Alarm Plan-First Floor | 04/29/19 |
| FA-201 | MEP-Fire Alarm Updates 4/29/19 | Fire Alarm Plan-Mezzanine | 04/29/19 |
| FA-202 | MEP-Fire Alarm Updates 4/29/19 | Fire Alarm Plan-Second Floor | 04/29/19 |
| FA-203 | MEP-Fire Alarm Updates 4/29/19 | Fire Alarm Plan-Third Floor | 04/29/19 |
| FA-204 | MEP-Fire Alarm Updates 4/29/19 | Fire Alarm Plan-Fourth Floor | 04/29/19 |
| FA-205 | MEP-Fire Alarm Updates 4/29/19 | Fire Alarm Plan-Fifth Floor | 04/29/19 |
| FA-206 | MEP-Fire Alarm Updates 4/29/19 | Fire Alarm Plan-Sixth Floor | 04/29/19 |
| FA-207 | MEP-Fire Alarm Updates 4/29/19 | Fire Alarm Plan-Seventh Floor | 04/29/19 |
| FA-208 | MEP-Fire Alarm Updates 4/29/19 | Fire Alarm Plan-Eighth Floor | 04/29/19 |
| FP-001.00 | MEP-Fire Protection Updates 4/29/19 | Fire Protection Details & Notes-1 | 04/29/19 |
| FP-001.00-720 | MEP-Fire Protection | Fire Protection Details & Notes-1 | 02/26/19 |
| FP-002.00 | MEP-Fire Protection Updates 4/29/19 | Fire Protection Details & Notes-2 | 04/29/19 |
| FP-002.00-720 | MEP-Fire Protection | Fire Protection Details & Notes-2 | 02/26/19 |
| FP-003.00 | MEP-Fire Protection Updates 4/29/19 | Fire Protection Details & Notes-3 | 04/29/19 |
| FP-003.00-720 | MEP-Fire Protection | Fire Protection Details & Notes-3 | 02/26/19 |
| FP-100.00 | MEP-Fire Protection Updates 4/29/19 | Fire Protection Plan-1st Floor | 04/29/19 |
| FP-100.00-720 | MEP-Fire Protection | Fire Protection Plan-1st Floor | 02/26/19 |
| FP-110.00 | MEP-Fire Protection Updates 4/29/19 | Fire Protection Plan-1st Floor & Mezzanine | 04/29/19 |
| FP-110.00-720 | MEP-Fire Protection | Fire Protection Plan-1st Floor & Mezzanine | 02/26/19 |
| FP-200.00 | MEP-Fire Protection Updates 4/29/19 | Fire Protection Plan-2nd Floor | 04/29/19 |
| FP-200.00-720 | MEP-Fire Protection | Fire Protection Plan-2nd floor | 02/26/19 |
| FP-300.00 | MEP-Fire Protection Updates 4/29/19 | Fire Protection Plan-3rd Floor | 04/29/19 |
| FP-300.00-720 | MEP-Fire Protection | Fire Protection Plan-3rd floor | 02/26/19 |
| FP-400.00 | MEP-Fire Protection Updates 4/29/19 | Fire Protection Plan-4th Floor | 04/29/19 |
| FP-400.00-720 | MEP-Fire Protection | Fire Protection Plan-4th floor | 02/26/19 |
| FP-500.00 | MEP-Fire Protection Updates 4/29/19 | Fire Protection Plan-5th Floor | 04/29/19 |
| FP-500.00-720 | MEP-Fire Protection | Fire Protection Plan-5th floor | 02/26/19 |
| FP-600.00 | MEP-Fire Protection Updates 4/29/19 | Fire Protection Plan-6th Floor | 04/29/19 |
| FP-600.00-720 | MEP-Fire Protection | Fire Protection Plan-6th floor | 02/26/19 |
| FP-700.00 | MEP-Fire Protection Updates 4/29/19 | Fire Protection Plan-Penthouse Floor | 04/29/19 |
| FP-700.00-720 | MEP-Fire Protection | Fire Protection Plan-Penthouse Floor | 02/26/19 |
| FP-800.00 | MEP-Fire Protection Updates 4/29/19 | Fire Protection Plan-Roof | 04/29/19 |
| FP-800.00-720 | MEP-Fire Protection | Fire Protection Plan-Roof | 02/26/19 |
| FP-901.00 | MEP-Fire Protection Updates 4/29/19 | Fire Protection Riser Diagram & Details-1 | 04/29/19 |
| FP-901.00-720 | MEP-Fire Protection | Fire Protection Riser Diagram & Details-1 | 02/26/19 |
| FP-902.00 | MEP-Fire Protection Updates 4/29/19 | Fire Protection Riser Diagram & Details-2 | 04/29/19 |
| FP-902.00-720 | MEP-Fire Protection | Fire Protection Riser Diagram & Details-2 | 02/26/19 |
| H-100 | MEP-HVAC 4/29/19 Updates | HVAC Notes, Symbols, & Abbreviations | 05/29/19 |
| H-210 | MEP-HVAC 4/29/19 Updates | HVAC 1st Floor Plan | 05/29/19 |

ATTACHMENT/EXHIBIT "A"
WONDER LOFTS DRAWING LIST-720 CLINTON

| | | | |
|---|---|---|---|
| H-215 | MEP-HVAC 4/29/19 Updates | HVAC 1st Floor Parking Mezzanine Plan | 05/29/19 |
| H-220 | MEP-HVAC 4/29/19 Updates | HVAC 2nd Floor Plan | 05/29/19 |
| H-230 | MEP-HVAC 4/29/19 Updates | HVAC 3rd Floor Plan | 05/29/19 |
| H-240 | MEP-HVAC 4/29/19 Updates | HVAC 4th Floor Plan | 05/29/19 |
| H-250 | MEP-HVAC 4/29/19 Updates | HVAC 5th Floor Plan | 05/29/19 |
| H-260 | MEP-HVAC 4/29/19 Updates | HVAC 6th Floor Plan | 05/29/19 |
| H-270 | MEP-HVAC 4/29/19 Updates | HVAC 7th Floor Plan | 05/29/19 |
| H-280 | MEP-HVAC 4/29/19 Updates | HVAC 8th Floor Plan | 05/29/19 |
| H-290 | MEP-HVAC 4/29/19 Updates | HVAC 8th Floor Roof Plan | 05/29/19 |
| H-300 | MEP-HVAC 4/29/19 Updates | HVAC Schedules-Sheet 1 | 05/29/19 |
| H-310 | MEP-HVAC 4/29/19 Updates | HVAC Schedules-Sheet 2 | 05/29/19 |
| H-320 | MEP-HVAC 4/29/19 Updates | Ventilation Schedules Sheet 1 | 05/29/19 |
| H-330 | MEP-HVAC 4/29/19 Updates | Ventilation Schedules Sheet 2 | 05/29/19 |
| H-350 | MEP-HVAC 4/29/19 Updates | HVAC Diagrams | 05/29/19 |
| H-400 | MEP-HVAC 4/29/19 Updates | HVAC Details | 05/29/19 |
| OA-018 | MEP-Plumbing | Plumbing Details-2 | 02/26/19 |
| P-001 | MEP-Plumbing Updates 4/29/19 | Plumbing Specification 1 of 3 | 04/29/19 |
| P-001.00 | MEP-Plumbing | Plumbing Specifications 1 of 4 | 02/26/19 |
| P-001.00 (729) | MEP-Plumbing | Plumbing Notes & Abbreviations | 02/26/19 |
| P-002 | MEP-Plumbing Updates 4/29/19 | Plumbing Specification 2 of 3 | 04/29/19 |
| P-002.00 | MEP-Plumbing | Plumbing Specifications 2 of 4 | 02/26/19 |
| P-002.00 (729) | MEP-Plumbing | Plumbing Fixtures Schedule | 02/26/19 |
| P-003 | MEP-Plumbing Updates 4/29/19 | Plumbing Specification 3 of 3 | 04/29/19 |
| P-003.00 | MEP-Plumbing | Plumbing Specifications 3 of 4 | 02/26/19 |
| P-003.00 (729) | MEP-Plumbing | Plumbing Specifications 1 | 02/26/19 |
| P-004.00 | MEP-Plumbing | Plumbing Specifications 4 of 4 | 02/26/19 |
| P-004.00 (729) | MEP-Plumbing | Plumbing Specifications 2 | 02/26/19 |
| P-005.00 | MEP-Plumbing | Schedules Plumbing | 02/26/19 |
| P-005.00 (729) | MEP-Plumbing | Plumbing Specifications 3 | 02/26/19 |
| P-098 | MEP-Plumbing Updates 4/29/19 | Plumbing Legends, Notes & Schedules | 04/29/19 |
| P-099 | MEP-Plumbing Updates 4/29/19 | Plumbing Schedule | 04/29/19 |
| P-099.00 | MEP-Plumbing | 1st Floor Plumbing Sanitary & Storm Underground Plan | 02/26/19 |
| P-100.00 | MEP-Plumbing Updates 4/29/19 | 1st Floor Plumbing Sanitary | 04/29/19 |
| P-100.00 (720) | MEP-Plumbing | 1st Floor Plumbing Sanitary | 02/26/19 |
| P-101.00 | MEP-Plumbing Updates 4/29/19 | 1st Floor Mezz Plumbing Sanitary | 04/29/19 |
| P-101.00 (720) | MEP-Plumbing | 1st Floor Mezz Plumbing Sanitary | 02/26/19 |
| P-101.01 | MEP-Plumbing | Plumbing 1st Floor Sanitary Plan | 02/26/19 |
| P-102.00 | MEP-Plumbing Updates 4/29/19 | 2nd Floor Plumbing Sanitary | 04/29/19 |
| P-102.00 (720) | MEP-Plumbing | 2nd Floor Plumbing Sanitary | 02/26/19 |
| P-102.00 (729) | MEP-Plumbing | Plumbing 2nd Floor Sanitary & Storm Plan | 02/26/19 |
| P-103.00 | MEP-Plumbing Updates 4/29/19 | Plumbing 3rd Floor Sanitary Plan | 04/29/19 |
| P-103.00 (720) | MEP-Plumbing | 3rd Floor Plumbing Sanitary | 02/26/19 |
| P-103.00 (729) | MEP-Plumbing | Plumbing 3rd Floor Sanitary & Storm Plan | 02/26/19 |
| P-104.00 | MEP-Plumbing Updates 4/29/19 | 4th Floor Plumbing Sanitary | 04/29/19 |
| P-104.00 (720) | MEP-Plumbing | 4th Floor Plumbing Sanitary | 02/26/19 |
| P-104.00 (729) | MEP-Plumbing | Plumbing 4th Floor Sanitary & Storm Plan | 02/26/19 |
| P-105.00 | MEP-Plumbing Updates 4/29/19 | 5th Floor Plumbing Sanitary | 04/29/19 |
| P-105.00 (720) | MEP-Plumbing | 5th Floor Plumbing Sanitary | 02/26/19 |
| P-105.00 (729) | MEP-Plumbing | Plumbing 5th Floor Sanitary & Storm Plan | 02/26/19 |
| P-106.00 | MEP-Plumbing Updates 4/29/19 | 6th Floor Plumbing Sanitary | 04/29/19 |
| P-106.00 (720) | MEP-Plumbing | 6th Floor Plumbing Sanitary | 02/26/19 |
| P-106.00 (729) | MEP-Plumbing | Plumbing Roof Sanitary & Storm Plan | 02/26/19 |
| P-106.00-729 | MEP-Fire Protection | | 02/26/19 |
| P-107.00 | MEP-Plumbing Updates 4/29/19 | 7th Floor Plumbing Sanitary Plan | 04/29/19 |
| P-107.00 (720) | MEP-Plumbing | 7th Floor Plumbing Sanitary | 02/26/19 |
| P-108.00 | MEP-Plumbing Updates 4/29/19 | Roof Plumbing Sanitary | 04/29/19 |
| P-199 | MEP-Plumbing Updates 4/29/19 | Basement Water & Gas Plan | 04/29/19 |
| P-200 | MEP-Plumbing Updates 4/29/19 | 1st Floor Domestic Water & Gas Plan | 04/29/19 |
| P-200.00 | MEP-Plumbing | Plumbing Details | 02/26/19 |
| P-201 | MEP-Plumbing Updates 4/29/19 | 1st Floor Mezzanine Domestic Water & Gas Plan | 04/29/19 |
| P-201.00 | MEP-Plumbing | 1st Floor Domestic Water & Gas Plan | 02/26/19 |

ATTACHMENT/EXHIBIT "A"
WONDER LOFTS DRAWING LIST-720 CLINTON

| P-201.00 (729) | MEP-Plumbing | 1st Floor Domestic Water & Gas Plan | 02/26/19 |
|---|---|---|---|
| P-202 | MEP-Plumbing Updates 4/29/19 | 2nd Floor Domestic Water & Gas Plan | 04/29/19 |
| P-202.00 | MEP-Plumbing | 2nd Floor Domestic Water & Gas Plan | 02/26/19 |
| P-202.00 (729) | MEP-Plumbing | 2nd Floor Domestic Water & Gas Plan | 02/26/19 |
| P-203 | MEP-Plumbing Updates 4/29/19 | 3rd Floor Domestic Water & Gas Plan | 04/29/19 |
| P-203.00 | MEP-Plumbing | 3rd Floor Domestic Water & Gas Plan | 02/26/19 |
| P-203.00 (729) | MEP-Plumbing | 3rd Floor Domestic Water & Gas Plan | 02/26/19 |
| P-204 | MEP-Plumbing Updates 4/29/19 | 4th Floor Domestic Water & Gas Plan | 04/29/19 |
| P-204.00 | MEP-Plumbing | 4th Floor Domestic Water & Gas Plan | 02/26/19 |
| P-204.00 (729) | MEP-Plumbing | 4th Floor Domestic Water & Gas Plan | 02/26/19 |
| P-205 | MEP-Plumbing Updates 4/29/19 | 5th Floor Domestic Water & Gas Plan | 04/29/19 |
| P-205.00 | MEP-Plumbing | 5th Floor Domestic Water & Gas Plan | 02/26/19 |
| P-205.00 (729) | MEP-Plumbing | 5th Floor Domestic Water & Gas Plan | 02/26/19 |
| P-206 | MEP-Plumbing Updates 4/29/19 | 6th Floor Domestic Water & Gas Plan | 04/29/19 |
| P-206.00 | MEP-Plumbing | Roof Domestic Water & Gas Plan | 02/26/19 |
| P-206.00 (729) | MEP-Plumbing | Roof Domestic Water & Gas Plan | 02/26/19 |
| P-207 | MEP-Plumbing Updates 4/29/19 | 7th Floor Domestic Water & Gas Plan | 04/29/19 |
| P-208 | MEP-Plumbing Updates 4/29/19 | Penthouse Level Domestic Water & Gas Plan | 04/29/19 |
| P-300.00 | MEP-Plumbing | Plumbing Sanitary Riser Diagram | 02/26/19 |
| P-300.00 (729) | MEP-Plumbing | Plumbing Sanitary Risers | 02/26/19 |
| P-301 | MEP-Plumbing Updates 4/29/19 | Water Riser Part 1 | 04/29/19 |
| P-301.00 | MEP-Plumbing | Plumbing Water Riser Diagram | 02/26/19 |
| P-301.00 (729) | MEP-Plumbing | Water Risers-Bldg 729 | 02/26/19 |
| P-302 | MEP-Plumbing Updates 4/29/19 | Water Riser Part 2 | 04/29/19 |
| P-302.00 | MEP-Plumbing | Gas Supply Riser Diagram | 02/26/19 |
| P-302.00 (729) | MEP-Plumbing | Gas Risers-Bldg 729 | 02/26/19 |
| P-303 | MEP-Plumbing Updates 4/29/19 | Water Riser Part 3 | 04/29/19 |
| P-303.00 | MEP-Plumbing | Plumbing Storm Riser Diagram | 02/26/19 |
| P-303.00 (729) | MEP-Plumbing | Plumbing Storm Risers | 02/26/19 |
| P-304 | MEP-Plumbing Updates 4/29/19 | Water Riser Part 4 | 04/29/19 |
| P-305 | MEP-Plumbing Updates 4/29/19 | Water Riser Part 5 | 04/29/19 |
| P-306 | MEP-Plumbing Updates 4/29/19 | Water Riser Part 6 | 04/29/19 |
| P-307 | MEP-Plumbing Updates 4/29/19 | Water Riser Part 7 | 04/29/19 |
| P-308 | MEP-Plumbing Updates 4/29/19 | Water Riser Part 8 | 04/29/19 |
| P-400 | MEP-Plumbing Updates 4/29/19 | Pluming Sanitary Riser Part 1 | 04/29/19 |
| P-401 | MEP-Plumbing Updates 4/29/19 | Pluming Sanitary Riser Part 2 | 04/29/19 |
| P-402 | MEP-Plumbing Updates 4/29/19 | Pluming Sanitary Riser Part 3 | 04/29/19 |
| P-403 | MEP-Plumbing Updates 4/29/19 | Pluming Sanitary Riser Part 4 | 04/29/19 |
| P-404 | MEP-Plumbing Updates 4/29/19 | Pluming Sanitary Riser Part 5 | 04/29/19 |
| P-405 | MEP-Plumbing Updates 4/29/19 | Pluming Sanitary Riser Part 6 | 04/29/19 |
| P-406 | MEP-Plumbing Updates 4/29/19 | Pluming Sanitary Riser Part 7 | 04/29/19 |
| P-407 | MEP-Plumbing Updates 4/29/19 | Pluming Sanitary Riser Part 8 | 04/29/19 |
| P-408 | MEP-Plumbing Updates 4/29/19 | Pluming Sanitary Riser Part 9 | 04/29/19 |
| P-409 | MEP-Plumbing Updates 4/29/19 | Pluming Sanitary Riser Part 10 | 04/29/19 |
| P-410 | MEP-Plumbing Updates 4/29/19 | Pluming Sanitary Riser Part 11 | 04/29/19 |
| P-411 | MEP-Plumbing Updates 4/29/19 | Pluming Sanitary Riser Part 12 | 04/29/19 |
| P-412 | MEP-Plumbing Updates 4/29/19 | Pluming Sanitary Riser Part 13 | 04/29/19 |
| P-499.00 | MEP-Plumbing Updates 4/29/19 | 1st Floor Plumbing Utility Plan | 04/29/19 |
| P-499A.00 | MEP-Plumbing Updates 4/29/19 | Plumbing Sanitary & Storm Utility Plan | 04/29/19 |
| P-499B.00 | MEP-Plumbing Updates 4/29/19 | Plumbing Details | 04/29/19 |
| P-500 | MEP-Plumbing | 1st Floor Storm Plan | 02/26/19 |
| P-501 | MEP-Plumbing | 1st Floor Storm Plan | 02/26/19 |
| P-501.00 | MEP-Plumbing Updates 4/29/19 | 1st Floor Mezzanine Storm Plan | 04/29/19 |
| P-502 | MEP-Plumbing | 2nd Floor Storm Plan | 02/26/19 |
| P-502.00 | MEP-Plumbing Updates 4/29/19 | 2nd Floor Storm Plan | 04/29/19 |
| P-503 | MEP-Plumbing | 3rd Floor Storm Plan | 02/26/19 |
| P-503.00 | MEP-Plumbing Updates 4/29/19 | 3rd Floor Storm Plan | 04/29/19 |
| P-504 | MEP-Plumbing | 4th Floor Storm Plan | 02/26/19 |
| P-504.00 | MEP-Plumbing Updates 4/29/19 | 4th Floor Storm Plan | 04/29/19 |
| P-505 | MEP-Plumbing | 5th Floor Storm Plan | 02/26/19 |
| P-505.00 | MEP-Plumbing Updates 4/29/19 | 5th Floor Storm Plan | 04/29/19 |

ATTACHMENT/EXHIBIT "A"
WONDER LOFTS DRAWING LIST-720 CLINTON

| | | | |
|---|---|---|---|
| P-506 | MEP-Plumbing | 6th Floor Storm Plan | 02/26/19 |
| P-506.00 | MEP-Plumbing Updates 4/29/19 | 6th Floor Storm Plan | 04/29/19 |
| P-507 | MEP-Plumbing | 7th Floor Storm Plan | 02/26/19 |
| P-507.00 | MEP-Plumbing Updates 4/29/19 | 7th Floor Storm Plan | 04/29/19 |
| P-508 | MEP-Plumbing | Penthouse Floor Storm Plan | 02/26/19 |
| P-508.00 | MEP-Plumbing Updates 4/29/19 | Roof Storm Plan | 04/29/19 |
| P-530 | MEP-Plumbing Updates 4/29/19 | Gas Riser-Part 1 | 04/29/19 |
| P-531 | MEP-Plumbing Updates 4/29/19 | Gas Riser-Part 2 | 04/29/19 |
| P-532 | MEP-Plumbing Updates 4/29/19 | Gas Riser-Part 3 | 04/29/19 |
| P-630 | MEP-Plumbing Updates 4/29/19 | Storm Riser-Part 1 | 04/29/19 |
| P-631 | MEP-Plumbing Updates 4/29/19 | Storm Riser-Part 2 | 04/29/19 |
| P-632 | MEP-Plumbing Updates 4/29/19 | Storm Riser-Part 3 | 04/29/19 |
| P-920 | MEP-Plumbing Updates 4/29/19 | Plumbing Details-1 | 04/29/19 |
| P-920 (729) | MEP-Plumbing | Plumbing Details-1 | 02/26/19 |
| P-921 | MEP-Plumbing Updates 4/29/19 | Plumbing Details-2 | 04/29/19 |
| S-02 | USG DRYWALL SUSPENSION SYSTEM DETAILS | USG Drywall Suspension System Details | 06/05/17 |
| S-100 | Structural-Revised Piles | Cellar & Foundation Plan | 04/23/19 |
| S-101 | Structural-5/24/19 Updates | First Floor Framing Plan (revised Foundations B&C 05.02.19) | 05/24/19 |
| S-101A | Structural-5/24/19 Updates | Building A-Pile Caps Sections & Details | 05/24/19 |
| S-101M | Structural-5/24/19 Updates | First Floor Mezzanine Framing Plan | 05/24/19 |
| S-102 | Structural-5/24/19 Updates | Building A Second Floor Framing Plan | 05/24/19 |
| S-103 | Structural-Updates 2 | Third Floor Framing Plan | 04/05/19 |
| S-104 | Structural-Updates 2 | Fourth Floor Framing Plan | 04/05/19 |
| S-105 | Structural-Updates 2 | Fifth Floor Framing Plan | 04/05/19 |
| S-106 | Structural-Updates 2 | Sixth Floor Framing Plan | 04/05/19 |
| S-107 | Structural-Updates 2 | Seventh Floor Framing Plan | 04/05/19 |
| S-108 | Structural-Updates 2 | High Roof Framing Plan | 04/05/19 |
| S-109 | Structural-Updates 2 | Building A Bulkhead & Dunnage Framing Plan | 04/05/19 |
| S-201 | Structural-Updates 2 | Sections I | 04/05/19 |
| S-202 | Structural | Sections II | 12/14/18 |
| S-210 | Structural-5/24/19 Updates | Pile Cap Details and Sections | 05/24/19 |
| S-211 | Structural-5/24/19 Updates | Building B Pile Cap Details and Sections | 05/24/19 |
| S-401 | Structural-Revised Piles | Beam Schedule | 04/23/19 |
| S-500 | Structural-Updates 2 | Building A Existing Column Schedule | 04/05/19 |
| S-501 | Structural-Updates 2 | Building A Column Schedule I | 04/05/19 |
| S-502 | Structural-Updates 2 | Building A Column Schedule II & Sear Walls Loads | 04/05/19 |
| S-503 | Structural-Updates 2 | Building B Existing & New Column Schedule | 04/05/19 |
| S-504 | Structural-Updates 2 | Building C Column Schedule | 04/05/19 |
| S-510 | Structural-Updates 2 | Building A Columns Details | 04/05/19 |
| S-520 | Structural-Updates 2 | Building A Details | 04/05/19 |
| S-521 | Structural-Updates 2 | Building B Shear Rails Details | 04/05/19 |
| S-522 | Structural-Updates 2 | Building C Shear Rails Details | 04/05/19 |
| S-530 | Structural-Updates 2 | Building A Shear Wall Details | 04/05/19 |
| S-531 | Structural-Updates 2 | Building B Shear Wall Details | 04/05/19 |
| S-532 | Structural-Updates 2 | Building C Shear Wall Details & Beam Schedule | 04/05/19 |
| S-601 | Structural-Updates 2 | Typical Repair Details | 04/05/19 |
| S-700 | Structural-Updates 2 | Building A General Notes & Design Criteria | 04/05/19 |
| S-701 | Structural-Updates 2 | Building A Typical Details I | 04/05/19 |
| S-702 | Structural-Updates 2 | Building A Typical Details II | 04/05/19 |
| S-703 | Structural-Updates 2 | Building A Typical Details III | 04/05/19 |
| S-704 | Structural-Updates 2 | Building A Typical Details IV | 04/05/19 |
| S-705 | Structural-Updates 2 | Building A Typical Details V | 04/05/19 |
| S-706 | Structural-Updates 2 | Building A Typical Details VI | 04/05/19 |
| S-707 | Structural-Updates 2 | Building A Typical Details VII | 04/05/19 |
| S-708 | Structural-Updates 2 | Building A Typical Details VIII | 04/05/19 |
| S-800 | Structural-Updates 2 | Building C-Found, 1st,2nd,3rd flr Framing Plans-Partial Demo Ph1 Construction at Facade | 04/05/19 |
| S-801 | Structural -04.26.19 | Building C-Partial Demo & Ph 1 Construction Facade Bracing | 04/26/19 |
| S02 | Architectural-720 Clinton | USG Drywall Suspension System Details | 02/26/19 |
| SD-100 | Structural-Updates 2 | Cellar & Foundation Demolition Plan | 04/05/19 |
| SD-101 | Structural-Updates 2 | First Floor Demolition Plan | 04/05/19 |

ATTACHMENT/EXHIBIT "A"
WONDER LOFTS DRAWING LIST-720 CLINTON

| SD-102 | Structural-Updates 2 | Existing Second Floor Demolition Plan | 04/05/19 |
| SD-103 | Structural-Updates 2 | Existing Third Floor Demolition Plan | 04/05/19 |
| SD-104 | Structural-Updates 2 | Building A Existing 4th Floor Demolition Plan | 04/05/19 |
| SD-105 | Structural-Updates 2 | Existing 5th Floor Demolition Plan | 04/05/19 |
| SD-106 | Structural-Updates 2 | Existing Roof Demolition Plan | 04/05/19 |
| SP-001.00-729 | MEP-Fire Protection | Fire Protection Notes, Symbols & Details | 02/26/19 |
| SP-002.00-729 | MEP-Fire Protection | Fire Protection Specifications 1-2 | 02/26/19 |
| SP-003.00-729 | MEP-Fire Protection | Fire Protection Specifications 2-2 | 02/26/19 |
| SP-100.00-731 | MEP-Fire Protection | Fire Protection Notes and Details | 02/26/19 |
| SP-101.00-729 | MEP-Fire Protection | 1st Floor Fire Sprinkler Plan | 02/26/19 |
| SP-101.00-731 | MEP-Fire Protection | 1st Floor Fire Sprinkler Plan | 02/26/19 |
| SP-102.00-729 | MEP-Fire Protection | 2nd Floor Fire Sprinkler Plan | 02/26/19 |
| SP-102.00-731 | MEP-Fire Protection | 2nd Floor Fire Sprinkler Plan | 02/26/19 |
| SP-103.00-729 | MEP-Fire Protection | 3rd Floor Fire Sprinkler Plan | 02/26/19 |
| SP-103.00-731 | MEP-Fire Protection | 3rd Floor Fire Sprinkler Plan | 02/26/19 |
| SP-104.00-729 | MEP-Fire Protection | 4th Floor Fire Sprinkler Plan | 02/26/19 |
| SP-104.00-731 | MEP-Fire Protection | 4th Floor Fire Sprinkler Plan | 02/26/19 |
| SP-105.00-729 | MEP-Fire Protection | | 02/26/19 |
| SP-105.00-731 | MEP-Fire Protection | 5th Floor Fire Sprinkler Plan | 02/26/19 |
| SP-106.00-731 | MEP-Fire Protection | Roof Fire Sprinkler Plan | 02/26/19 |
| Z-4B | Landscaping-Pool Relocation Revisions | Proposed Landscaping Plans & Details (Upper Roof) | 03/05/19 |
| MISC | Masonry Façade Demo | "ATTACHED TO EXHIBIT A" | 6/20/2019 |

ATTACHMENT "A"-WONDER LOFTS
721 CLINTON DRAWING LIST

| Sheet Name | Version | Description | Date Issued |
|---|---|---|---|
| A-000 | Architectural-721 Clinton | Zoning Map | 02/26/19 |
| A-100 | Architectural-721 Clinton | Existing Demo & Staging/Building Impact Plan | 02/26/19 |
| A-101 | Architectural-721 Clinton | Site Plans | 02/26/19 |
| A-102 | Architectural-721 Clinton | Site Details | 02/26/19 |
| A-105 | Architectural-721 Clinton | Flood Proofing Plan | 02/26/19 |
| A-151-1 | Architectural-721 Clinton | Wall Partition Types/Signage Schedule | 02/26/19 |
| A-151-2 | Architectural-721 Clinton | Soundproofing/Signage | 02/26/19 |
| A-201 | Architectural-721 Clinton | First & Second Floor Plans | 02/26/19 |
| A-202 | Architectural-721 Clinton | Third & Fourth Floor Plans | 02/26/19 |
| A-203 | Architectural-721 Clinton | Fifth Floor Plan & Roof Plan | 02/26/19 |
| A-204 | Architectural-721 Clinton | Bulkhead Plan & Details | 02/26/19 |
| A-221 | Architectural-721 Clinton | First & Second Floor Plans | 02/26/19 |
| A-222 | Architectural-721 Clinton | Third & Fourth Floor Plans | 02/26/19 |
| A-223 | Architectural-721 Clinton | Fifth & Roof Plans | 02/26/19 |
| A-230 | Architectural-721 Clinton | ANSI Compliant Bathroom Plans | 02/26/19 |
| A-231 | Architectural-721 Clinton | ANSI Compliant Bathrooms & Details | 02/26/19 |
| A-240 | Architectural-721 Clinton | ANSI Compliant Kitchen Plans | 02/26/19 |
| A-241 | Architectural-721 Clinton | ANSI Compliant Kitchen & Details | 02/26/19 |
| A-300 | Architectural-721 Clinton | Building Elevations | 02/26/19 |
| A-301 | Architectural-721 Clinton | Glazing Schedule | 02/26/19 |
| A-400 | Architectural-721 Clinton | Building Section AA | 02/26/19 |
| A-401 | Architectural-721 Clinton | Building Section BB | 02/26/19 |
| A-402 | Architectural-721 Clinton | Building Section BB | 02/26/19 |
| A-420 | Architectural-721 Clinton | Egress Staircase Plans & Details | 02/26/19 |
| A-500 | Architectural-721 Clinton | Door Schedule & Hardware Schedule | 02/26/19 |
| A-501 | Architectural-721 Clinton | Door Types & Door Details | 02/26/19 |
| A-520 | Architectural-721 Clinton | Fire Protection Details/Radon Protection Details | 02/26/19 |
| A-521 | Architectural-721 Clinton | Metal Stud Framing Details | 02/26/19 |
| A-603 | Architectural-721 Clinton | Miscellaneous Details | 02/26/19 |
| A600 | Architectural-721 Clinton | Miscellaneous Details | 02/26/19 |
| D-444 | Interior Design | Lounge Elevations | 02/27/19 |
| E-001 | MEP-Electrical-5/1/19 Updates | Electrical Symbol List & General Notes | 05/01/19 |
| E-002 | MEP-Electrical-5/1/19 Updates | Electrical Notes & Specifications | 05/01/19 |
| E-003 | MEP-Electrical-5/1/19 Updates | Electrical Notes & Specifications | 05/01/19 |
| E-100 | MEP-Electrical-5/1/19 Updates | Electrical Lighting Plan-First & Second Floor | 05/01/19 |
| E-101 | MEP-Electrical-5/1/19 Updates | Electrical Lighting Plan-Third & Fourth Floor | 05/01/19 |
| E-102 | MEP-Electrical-5/1/19 Updates | Electrical Lighting Plan-Fifth Floor & Roof | 05/01/19 |
| E-200 | MEP-Electrical-5/1/19 Updates | Electrical Power Plan-First & Second Floor | 05/01/19 |
| E-201 | MEP-Electrical-5/1/19 Updates | Electrical Power Plan-Third & Fourth Floor | 05/01/19 |
| E-202 | MEP-Electrical-5/1/19 Updates | Electrical Power Plan-Fifth Floor & Roof | 05/01/19 |
| E-300 | MEP-Electrical-5/1/19 Updates | Electrical Panel Schedules | 05/01/19 |
| E-400 | MEP-Electrical-5/1/19 Updates | Electrical Riser Diagram & House Panel Schedule | 05/01/19 |
| FA-001 | MEP-Fire Alarm-5/1/19 Updates | Fire Alarm Riser, Legend & Notes | 05/01/19 |
| FA-100 | MEP-Fire Alarm-5/1/19 Updates | Fire Alarm Plan-First & Second Floor | 05/01/19 |
| FA-101 | MEP-Fire Alarm-5/1/19 Updates | Fire Alarm Plan-Third & Fourth Floor | 05/01/19 |
| FA-102 | MEP-Fire Alarm-5/1/19 Updates | Fire Alarm Plan-Fifth Floor & Roof | 05/01/19 |
| H-100 | MEP-HVAC 5/1/19 Updates | HVAC Notes, Symbols & Abbreviations | 05/01/19 |
| H-200 | MEP-HVAC 5/1/19 Updates | HVAC Plans | 05/01/19 |
| H-300 | MEP-HVAC 5/1/19 Updates | HVAC Schedules & Details | 05/01/19 |
| H-301 | MEP-HVAC 5/1/19 Updates | HVAC Details | 05/01/19 |
| ID-000 | Interior Design | Cover Sheet | 02/27/19 |
| ID-001 | Interior Design | General Notes | 02/27/19 |
| ID-100 | Interior Design | 731 Clinton Lobby-Finish Floor/Furniture/RCP/Power/Lighting Plan | 02/27/19 |

ATTACHMENT "A"-WONDER LOFTS
721 CLINTON DRAWING LIST

| | | | |
|---|---|---|---|
| ID-110 | Interior Design | 731 Clinton-Typical Corridor/Finish Floor/RCP/Lighting/Power | 02/27/19 |
| ID-120 | Interior Design | 720 Clinton Lobby-Finish Floor Plan & Furniture Plan | 02/27/19 |
| ID-121 | Interior Design | 720 Clinton Lobby-Reflected Ceiling & Power/Lighting Plan | 02/27/19 |
| ID-130 | Interior Design | Typical Corridor-Finish Floor/RCP/Lighting/Power Plan | 02/27/19 |
| ID-140 | Interior Design | Lounge & Kids Room-Finish Floor Plan & Furniture Plan | 02/27/19 |
| ID-141 | Interior Design | Lounge & Kids Room-Reflected Ceiling & Power/Lighting Plan | 02/27/19 |
| ID-150 | Interior Design | Gym-Finish Floor Plan & Furniture Plan | 02/27/19 |
| ID-151 | Interior Design | Gym-Reflected Ceiling & Power/Lighting Plan | 02/27/19 |
| ID-160 | Interior Design | Rooftop/Pool-Finish Floor Plan & Furniture Plan | 02/27/19 |
| ID-161 | Interior Design | Rooftop/Pool-Reflected Ceiling & Power/Lighting Plan | 02/27/19 |
| ID-170 | Interior Design | Model Unit#310-Finish Floor Plan & Furniture Plan | 02/27/19 |
| ID-171 | Interior Design | Model Unit#310-Reflected Ceiling Plan & Power/Lighting Plan | 02/27/19 |
| ID-400 | Interior Design | 731 Clinton Lobby-Elevations | 02/27/19 |
| ID-410 | Interior Design | 731 Clinton Lobby-Elevations | 02/27/19 |
| ID-420 | Interior Design | 720 Clinton Lobby-Elevations | 02/27/19 |
| ID-421 | Interior Design | 720 Clinton Lobby-Elevations | 02/27/19 |
| ID-422 | Interior Design | 720 Clinton Lobby-Elevations | 02/27/19 |
| ID-423 | Interior Design | 720 Clinton Lobby-Elevations | 02/27/19 |
| ID-430 | Interior Design | 720 Clinton-Typical Corridor & Elevator Vestibule Elevs. | 02/27/19 |
| ID-431 | Interior Design | 720 Clinton-Typical Corridor & Elevator Vestibule Elevs. | 02/27/19 |
| ID-440 | Interior Design | Lounge Elevations | 02/27/19 |
| ID-441 | Interior Design | Lounge Elevations | 02/27/19 |
| ID-442 | Interior Design | Lounge Elevations | 02/27/19 |
| ID-443 | Interior Design | Lounge Elevations | 02/27/19 |
| ID-450 | Interior Design | Gym/Yoga Elevations | 02/27/19 |
| ID-451 | Interior Design | Gym/Yoga Elevations | 02/27/19 |
| ID-452 | Interior Design | Gym/Yoga Elevations | 02/27/19 |
| ID-460 | Interior Design | Rooftop/Pool Elevations | 02/27/19 |
| ID-461 | Interior Design | Rooftop/Pool Elevations | 02/27/19 |
| ID-470 | Interior Design | Bathroom Plans & Elevations | 02/27/19 |
| ID-471 | Interior Design | Kitchen Elevations | 02/27/19 |
| ID-500 | Interior Design | Schedules-Appliances, Electrical & Lighting | 02/27/19 |
| ID-501 | Interior Design | Schedules-Plumbing | 02/27/19 |
| ID-502 | Interior Design | Schedules-Accessories, Cabinetry Hardware & Door Hardware | 02/27/19 |
| ID-503 | Interior Design | Schedules-Finishes | 02/27/19 |
| ID-700 | Interior Design | Amenities Details-Door Schedules, Elevations, & Details | 02/27/19 |
| ID-701 | Interior Design | Lobby Details | 02/27/19 |
| ID-702 | Interior Design | Lounge Details | 02/27/19 |
| ID-703 | Interior Design | Typical Details-Apartment | 02/27/19 |
| ID-704 | Interior Design | Typical Details-Apartment | 02/27/19 |
| ID-705 | Interior Design | Bathroom Details | 02/27/19 |
| ID-706 | Interior Design | Kitchen Details | 02/27/19 |
| P-001.00 | MEP-Plumbing-5/1/19 Updates | Plumbing Notes & Abbreviations | 05/01/19 |
| P-001.00 (731) | MEP-Plumbing | Plumbing Specifications 1 of 4 | 02/26/19 |
| P-002.00 | MEP-Plumbing-5/1/19 Updates | Plumbing Fixtures Schedule | 05/01/19 |
| P-002.00 (731) | MEP-Plumbing | Plumbing Specifications 2 of 4 | 02/26/19 |
| P-003.00 | MEP-Plumbing-5/1/19 Updates | Plumbing Specifications 1 | 05/01/19 |
| P-003.00 (731) | MEP-Plumbing | Plumbing Specifications 3 of 4 | 02/26/19 |
| P-004.00 | MEP-Plumbing-5/1/19 Updates | Plumbing Specifications 2 | 05/01/19 |
| P-004.00 (731) | MEP-Plumbing | Plumbing Specifications 4 of 4 | 02/26/19 |
| P-005.00 | MEP-Plumbing-5/1/19 Updates | Plumbing Specifications 3 | 05/01/19 |
| P-005.00 (731) | MEP-Plumbing | Schedules Plumbing | 02/26/19 |
| P-099.00 | MEP-Plumbing-5/1/19 Updates | 1st Floor Plumbing Utility Plan | 05/01/19 |
| P-100.00 | MEP-Plumbing-5/1/19 Updates | Plumbing 1st Floor Sanitary & Storm Plan | 05/01/19 |
| P-100.00 (720) | MEP-Plumbing | 1st Floor Plumbing Sanitary | 02/26/19 |
| P-101.00 (720) | MEP-Plumbing | 1st Floor Mezz Plumbing Sanitary | 02/26/19 |

ATTACHMENT "A"-WONDER LOFTS
721 CLINTON DRAWING LIST

| P-101.00 (731) | MEP-Plumbing | Plumbing 1st Floor Sanitary Plan | 02/26/19 |
|---|---|---|---|
| P-101.01 | MEP-Plumbing | Plumbing 1st Floor Sanitary Plan | 02/26/19 |
| P-102.00 | MEP-Plumbing-5/1/19 Updates | Plumbing 2nd Floor Sanitary & Storm Plan | 05/01/19 |
| P-102.00 (720) | MEP-Plumbing | 2nd Floor Plumbing Sanitary | 02/26/19 |
| P-102.00 (731) | MEP-Plumbing | Plumbing 2nd Floor Sanitary Plan | 02/26/19 |
| P-103.00 | MEP-Plumbing-5/1/19 Updates | Plumbing 3rd Floor Sanitary & Storm Plan | 05/01/19 |
| P-103.00 (720) | MEP-Plumbing | 3rd Floor Plumbing Sanitary | 02/26/19 |
| P-103.00 (731) | MEP-Plumbing | Plumbing 3rd Floor Sanitary Plan | 02/26/19 |
| P-104.00 | MEP-Plumbing-5/1/19 Updates | Plumbing 4th Floor Sanitary & Storm Plan | 05/01/19 |
| P-104.00 (720) | MEP-Plumbing | 4th Floor Plumbing Sanitary | 02/26/19 |
| P-104.00 (731) | MEP-Plumbing | Plumbing 4th Floor Sanitary Plan | 02/26/19 |
| P-105.00 | MEP-Plumbing-5/1/19 Updates | Plumbing 5th Floor Sanitary & Storm Plan | 05/01/19 |
| P-105.00 (720) | MEP-Plumbing | 5th Floor Plumbing Sanitary | 02/26/19 |
| P-105.00 (731) | MEP-Plumbing | Plumbing 5th Floor Sanitary Plan | 02/26/19 |
| P-106.00 | MEP-Plumbing-5/1/19 Updates | Plumbing Roof Sanitary & Storm Plan | 05/01/19 |
| P-106.00 (720) | MEP-Plumbing | 6th Floor Plumbing Sanitary | 02/26/19 |
| P-106.00 (731) | MEP-Plumbing | Plumbing Roof Sanitary Plan | 02/26/19 |
| P-107.00 | MEP-Plumbing | 7th Floor Plumbing Sanitary | 02/26/19 |
| P-108.00 | MEP-Plumbing | Roof Plumbing Sanitary | 02/26/19 |
| P-200 | MEP-Plumbing | 1st Floor Domestic Water & Gas Plan | 02/26/19 |
| P-200.00 (731) | MEP-Plumbing | Plumbing Details | 02/26/19 |
| P-201 | MEP-Plumbing | 1st Floor Mezzanine Domestic Water & Gas Plan | 02/26/19 |
| P-201.00 | MEP-Plumbing-5/1/19 Updates | 1st Floor Domestic Water & Gas Plan | 05/01/19 |
| P-201.00 (731) | MEP-Plumbing | 1st Floor Domestic Water & Gas Plan | 02/26/19 |
| P-202 | MEP-Plumbing | 2nd Floor Domestic Water & Gas Plan | 02/26/19 |
| P-202.00 | MEP-Plumbing-5/1/19 Updates | 2nd Floor Domestic Water & Gas Plan | 05/01/19 |
| P-202.00 (731) | MEP-Plumbing | 2nd Floor Domestic Water & Gas Plan | 02/26/19 |
| P-203 | MEP-Plumbing | 3rd Floor Domestic Water & Gas Plan | 02/26/19 |
| P-203.00 | MEP-Plumbing-5/1/19 Updates | 3rd Floor Domestic Water & Gas Plan | 05/01/19 |
| P-203.00 (731) | MEP-Plumbing | 3rd Floor Domestic Water & Gas Plan | 02/26/19 |
| P-204 | MEP-Plumbing | 4th Floor Domestic Water & Gas Plan | 02/26/19 |
| P-204.00 | MEP-Plumbing-5/1/19 Updates | 4th Floor Domestic Water & Gas Plan | 05/01/19 |
| P-204.00 (731) | MEP-Plumbing | 4th Floor Domestic Water & Gas Plan | 02/26/19 |
| P-205 | MEP-Plumbing | 5th Floor Domestic Water & Gas Plan | 02/26/19 |
| P-205.00 | MEP-Plumbing-5/1/19 Updates | 5th Floor Domestic Water & Gas Plan | 05/01/19 |
| P-205.00 (731) | MEP-Plumbing | 5th Floor Domestic Water & Gas Plan | 02/26/19 |
| P-206 | MEP-Plumbing | 6th Floor Domestic Water & Gas Plan | 02/26/19 |
| P-206.00 | MEP-Plumbing-5/1/19 Updates | Roof Domestic Water & Gas Plan | 05/01/19 |
| P-206.00 (731) | MEP-Plumbing | Roof Domestic Water & Gas Plan | 02/26/19 |
| P-207 | MEP-Plumbing | 7th Floor Domestic Water & Gas Plan | 02/26/19 |
| P-208 | MEP-Plumbing | Penthouse Level Domestic Water & Gas Plan | 02/26/19 |
| P-300.00 | MEP-Plumbing-5/1/19 Updates | Plumbing Sanitary Risers | 05/01/19 |
| P-300.00 (731) | MEP-Plumbing | Plumbing Sanitary Riser Diagram | 02/26/19 |
| P-301 | MEP-Plumbing | Water Riser Part 1 | 02/26/19 |
| P-301.00 | MEP-Plumbing-5/1/19 Updates | Water Risers Bldg 729 | 05/01/19 |
| P-301.00 (731) | MEP-Plumbing | Plumbing Water Riser Diagram | 02/26/19 |
| P-302 | MEP-Plumbing | Water Riser Part 2 | 02/26/19 |
| P-302.00 | MEP-Plumbing-5/1/19 Updates | Gas Risers Bldg 729 | 05/01/19 |
| P-302.00 (731) | MEP-Plumbing | Gas Supply Riser Diagram | 02/26/19 |
| P-303 | MEP-Plumbing | Water Riser Part 3 | 02/26/19 |
| P-303.00 | MEP-Plumbing-5/1/19 Updates | Plumbing Storm Risers | 05/01/19 |
| P-303.00 (731) | MEP-Plumbing | Plumbing Storm Riser Diagram | 02/26/19 |
| P-304 | MEP-Plumbing | Water Riser Part 4 | 02/26/19 |
| P-305 | MEP-Plumbing | Water Riser Part 5 | 02/26/19 |
| P-306 | MEP-Plumbing | Water Riser Part 6 | 02/26/19 |
| P-307 | MEP-Plumbing | Water Riser Part 7 | 02/26/19 |

ATTACHMENT "A"-WONDER LOFTS
721 CLINTON DRAWING LIST

| P-308 | MEP-Plumbing | Water Riser Part 8 | 02/26/19 |
|---|---|---|---|
| P-400 | MEP-Plumbing | Plumbing Sanitary Riser-Part 1 | 02/26/19 |
| P-401 | MEP-Plumbing | Plumbing Sanitary Riser-Part 2 | 02/26/19 |
| P-402 | MEP-Plumbing | Plumbing Sanitary Riser-Part 3 | 02/26/19 |
| P-403 | MEP-Plumbing | Plumbing Sanitary Riser-Part 4 | 02/26/19 |
| P-404 | MEP-Plumbing | Plumbing Sanitary Riser-Part 5 | 02/26/19 |
| P-405 | MEP-Plumbing | Plumbing Sanitary Riser-Part 6 | 02/26/19 |
| P-406 | MEP-Plumbing | Plumbing Sanitary Riser-Part 7 | 02/26/19 |
| P-407 | MEP-Plumbing | Plumbing Sanitary Riser-Part 8 | 02/26/19 |
| P-408 | MEP-Plumbing | Plumbing Sanitary Riser-Part 9 | 02/26/19 |
| P-409 | MEP-Plumbing | Plumbing Sanitary Riser-Part 10 | 02/26/19 |
| P-410 | MEP-Plumbing | Plumbing Sanitary Riser-Part 11 | 02/26/19 |
| P-411 | MEP-Plumbing | Plumbing Sanitary Riser-Part 12 | 02/26/19 |
| P-412 | MEP-Plumbing | Plumbing Sanitary Riser-Part 13 | 02/26/19 |
| P-500 | MEP-Plumbing | 1st Floor Storm Plan | 02/26/19 |
| P-501 | MEP-Plumbing | 1st Floor& Mezzanine Storm Plan | 02/26/19 |
| P-502 | MEP-Plumbing | 2nd Floor Storm Plan | 02/26/19 |
| P-503 | MEP-Plumbing | 3rd Floor Storm Plan | 02/26/19 |
| P-504 | MEP-Plumbing | 4th Floor Storm Plan | 02/26/19 |
| P-505 | MEP-Plumbing | 5th Floor Storm Plan | 02/26/19 |
| P-506 | MEP-Plumbing | 6th Floor Storm Plan | 02/26/19 |
| P-507 | MEP-Plumbing | 7th Floor Storm Plan | 02/26/19 |
| P-508 | MEP-Plumbing | Penthouse Floor Storm Plan | 02/26/19 |
| P-530 | MEP-Plumbing | Gas Riser-Part 1 | 02/26/19 |
| P-531 | MEP-Plumbing | Gas Riser-Part 2 | 02/26/19 |
| P-532 | MEP-Plumbing | Gas Riser-Part 3 | 02/26/19 |
| P-630 | MEP-Plumbing | Storm Riser-Part 1 | 02/26/19 |
| P-631 | MEP-Plumbing | Storm Riser-Part 2 | 02/26/19 |
| P-632 | MEP-Plumbing | Storm Riser-Part 3 | 02/26/19 |
| P-920 | MEP-Plumbing-5/1/19 Updates | Plumbing Details-1 | 05/01/19 |
| P-920 (720) | MEP-Plumbing | Plumbing Details-1 | |
| P-921 | MEP-Plumbing-5/1/19 Updates | Plumbing Details-2 | 05/01/19 |
| P-921 (729) | MEP-Plumbing | Plumbing Details-2 | 02/26/19 |
| S-101 | Structural-04/29/19 100% CD | Building E-Foundation Plan, 1st to 5th Floor and Roof Framing | 04/29/19 |
| S-102 | Structural-04/29/19 100% CD | Building E-Foundation Plan, 1st to 5th Floor and Roof Framing | 04/29/19 |
| S-210 | Structural-04/29/19 100% CD | Building E-Pile Cap Details | 04/29/19 |
| S-500 | Structural-04/29/19 100% CD | Building E-Column Schedule, Shear Walls & Punching Sheer Reinf. Details | 04/29/19 |
| S-700 | Structural-04/29/19 100% CD | Building E-General Notes & Design Criteria | 04/29/19 |
| S-701 | Structural-04/29/19 100% CD | Building E-Typical Details I | 04/29/19 |
| S-702 | Structural-04/29/19 100% CD | Building E-Typical Details II | 04/29/19 |
| S-703 | Structural-04/29/19 100% CD | Building E-Typical Details III | 04/29/19 |
| S02 | Architectural-721 Clinton | USG Drywall Suspension System Details | 02/26/19 |
| SP-001.00 | MEP-Fire Protection-5/1/19 Updates | Fire Protection Notes, Symbols & Details | 05/01/19 |
| SP-002.00 | MEP-Fire Protection-5/1/19 Updates | Fire Protection Specifications 1-2 | 05/01/19 |
| SP-003.00 | MEP-Fire Protection-5/1/19 Updates | Fire Protection Specifications 2-2 | 05/01/19 |
| SP-100.00-731 | MEP-Fire Protection | Fire Protection Notes & Details | 02/26/19 |
| SP-101.00 | MEP-Fire Protection-5/1/19 Updates | 1st Floor Sprinkler Plan | 05/01/19 |
| SP-101.00-731 | MEP-Fire Protection | 1st Floor Fire Sprinkler Plan | 02/26/19 |
| SP-102.00 | MEP-Fire Protection-5/1/19 Updates | 1st Floor Fire Sprinkler Plan | 05/01/19 |
| SP-102.00-731 | MEP-Fire Protection | 2nd Floor Fire Sprinkler Plan | 02/26/19 |
| SP-103.00 | MEP-Fire Protection-5/1/19 Updates | 3rd Floor Fire Sprinkler Plan | 05/01/19 |
| SP-103.00-731 | MEP-Fire Protection | 3rd Floor Fire Sprinkler Plan | 02/26/19 |
| SP-104.00 | MEP-Fire Protection-5/1/19 Updates | 4th Floor Fire Sprinkler Plan | 05/01/19 |
| SP-104.00-731 | MEP-Fire Protection | 4th Floor Fire Sprinkler Plan | 02/26/19 |
| SP-105.00 | MEP-Fire Protection-5/1/19 Updates | 5th Floor Fire Sprinkler Plan | 05/01/19 |

ATTACHMENT "A"-WONDER LOFTS
721 CLINTON DRAWING LIST

| SP-105.00-731 | MEP-Fire Protection | 5th Floor Fire Sprinkler Plan | 02/26/19 |
| SP-106.00 | MEP-Fire Protection | Roof Fire Sprinkler Plan | 02/26/19 |
| SP-106.00-729 | MEP-Fire Protection | Roof Fire Sprinkler Plan | 02/26/19 |

ATTACHMENT/EXHIBIT "A"
WONDER LOFTS DRAWING LIST-731 CLINTON

| Sheet Name | Version | Description | Date Issued |
|---|---|---|---|
| A-000 | Architectural-731 Clinton (Building D) | Title Sheet/Zoning Map/Tax Map/Drawing List/General Notes | 02/26/19 |
| A-100 | Architectural-731 Clinton (Building D) | Site Plans | 02/26/19 |
| A-101 | Architectural-731 Clinton (Building D) | Circulation Lighting & Landscaping Plan Signage/Flood Vent System | 02/26/19 |
| A-102 | Architectural-731 Clinton (Building D) | Site Details | 02/26/19 |
| A-150 | Architectural-731 Clinton (Building D) | Wall Partition Types/Floor Assemblies | 02/26/19 |
| A-151 | Architectural-731 Clinton (Building D) | Soundproofing/Signage | 02/26/19 |
| A-201 | Architectural-731 Clinton (Building D) | Architectural Plan Floor 1 | 02/26/19 |
| A-202 | Architectural-731 Clinton (Building D) | Architectural Plan Floor 2 | 02/26/19 |
| A-203 | Architectural-731 Clinton (Building D) | Architectural Plan Floor 3 | 02/26/19 |
| A-204 | Architectural-731 Clinton (Building D) | Architectural Plan Floor 4 | 02/26/19 |
| A-205 | Architectural-731 Clinton (Building D) | Architectural Plan Floor 5 | 02/26/19 |
| A-206 | Architectural-731 Clinton (Building D) | Architectural Plan Roof | 02/26/19 |
| A-210 | Architectural-731 Clinton (Building D) | Roof Details | 02/26/19 |
| A-211 | Architectural-731 Clinton (Building D) | Green Roof Details/Deck Details | 02/26/19 |
| A-221 | Architectural-731 Clinton (Building D) | RCP 1st Floor | 02/26/19 |
| A-222 | Architectural-731 Clinton (Building D) | RCP 2nd Floor | 02/26/19 |
| A-223 | Architectural-731 Clinton (Building D) | RCP 3rd Floor | 02/26/19 |
| A-224 | Architectural-731 Clinton (Building D) | RCP 4th Floor | 02/26/19 |
| A-225 | Architectural-731 Clinton (Building D) | RCP 5th Floor | 02/26/19 |
| A-226 | Architectural-731 Clinton (Building D) | RCP Roof | 02/26/19 |
| A-230 | Architectural-731 Clinton (Building D) | ANSI Compliant Bathrooms & Details | 02/26/19 |
| A-231 | Architectural-731 Clinton (Building D) | ANSI Compliant Bathroom & Details Floors 2-4 | 02/26/19 |
| A-232 | Architectural-731 Clinton (Building D) | ANSI Compliant Bathroom & Details Floors 5-Roof | 02/26/19 |
| A-240 | Architectural-731 Clinton (Building D) | ICC 117.1 Compliant Kitchen Plans | 02/26/19 |
| A-241 | Architectural-731 Clinton (Building D) | ICC/ANSI 117.1 Compliant Kitchen & Details | 02/26/19 |
| A-300 | Architectural-731 Clinton (Building D) | Building Elevations | 02/26/19 |
| A-301 | Architectural-731 Clinton (Building D) | Building Elevations | 02/26/19 |
| A-302 | Architectural-731 Clinton (Building D) | Building Elevations East (Rear) | 02/26/19 |
| A-303 | Architectural-731 Clinton (Building D) | Building Elevations North | 02/26/19 |
| A-304 | Architectural-731 Clinton (Building D) | Glazing Schedule-Windows | 02/26/19 |
| A-305 | Architectural-731 Clinton (Building D) | Glazing Schedule-Hybrid Walls on Clinton Street | 02/26/19 |
| A-306 | Architectural-731 Clinton (Building D) | Glazing Schedule-Hybrid Walls on 8th Street | 02/26/19 |
| A-400 | Architectural-731 Clinton (Building D) | Building Section AA | 02/26/19 |
| A-401 | Architectural-731 Clinton (Building D) | Building Section BB | 02/26/19 |
| A-402 | Architectural-731 Clinton (Building D) | Wall Sections | 02/26/19 |
| A-403 | Architectural-731 Clinton (Building D) | Wall Sections | 02/26/19 |
| A-404 | Architectural-731 Clinton (Building D) | Wall Section C/Wall Section D | 02/26/19 |
| A-405 | Architectural-731 Clinton (Building D) | Wall Section E/Wall Section F | 02/26/19 |
| A-420 | Architectural-731 Clinton (Building D) | Staircase Details | 02/26/19 |
| A-421 | Architectural-731 Clinton (Building D) | Duplex Staircase Plans & Details | 02/26/19 |
| A-500 | Architectural-731 Clinton (Building D) | Door Schedule/Hardware Schedule | 02/26/19 |

ATTACHMENT/EXHIBIT "A"
WONDER LOFTS DRAWING LIST-731 CLINTON

| A-501 | Architectural-731 Clinton (Building D) | Door Types/Door Details | 02/26/19 |
|---|---|---|---|
| A-600 | Architectural-731 Clinton (Building D) | Miscellaneous Details | 02/26/19 |
| A-603 | Architectural-731 Clinton (Building D) | Miscellaneous Details | 02/26/19 |
| Cover | Architectural-731 Clinton (Building D) | Cover Page | 02/26/19 |
| D-444 | Interior Design | Lounge Elevations | 02/27/19 |
| E-001 | MEP-Electrical-Updated 5/1/19 | Electrical Notes, Legend, Symbols & Abbreviations | 05/01/19 |
| E-002 | MEP-Electrical-Updated 5/1/19 | Electrical General Notes | 05/01/19 |
| E-003 | MEP-Electrical-Updated 5/1/19 | Electrical General Notes | 05/01/19 |
| E-100 | MEP-Electrical-Updated 5/1/19 | Electrical Lighting General Notes | 05/01/19 |
| E-101 | MEP-Electrical-Updated 5/1/19 | Electrical Lighting Plan-First Floor | 05/01/19 |
| E-102 | MEP-Electrical-Updated 5/1/19 | Electrical Lighting Plan-Second Floor | 05/01/19 |
| E-103 | MEP-Electrical-Updated 5/1/19 | Electrical Lighting Plan-Third Floor | 05/01/19 |
| E-104 | MEP-Electrical-Updated 5/1/19 | Electrical Lighting Plan-Fourth Floor | 05/01/19 |
| E-105 | MEP-Electrical-Updated 5/1/19 | Electrical Lighting Plan-Fifth Floor | 05/01/19 |
| E-106 | MEP-Electrical | Electrical Lighting Plan-Roof Floor | 02/26/19 |
| E-107 | MEP-Electrical | Electrical Unit Plan-Second Floor | 02/26/19 |
| E-108 | MEP-Electrical | Electrical Unit Plan-Third Floor | 02/26/19 |
| E-109 | MEP-Electrical | Electrical Unit Plan-Fourth Floor | 02/26/19 |
| E-110 | MEP-Electrical | Electrical Unit Plan-Fifth Floor | 02/26/19 |
| E-200 | MEP-Electrical | Electrical Power Notes | 02/26/19 |
| E-201 | MEP-Electrical-Updated 5/1/19 | Electrical Power Plan-First Floor | 05/01/19 |
| E-201-2 | MEP-Electrical-Updated 5/1/19 | | 05/01/19 |
| E-202 | MEP-Electrical-Updated 5/1/19 | Electrical Power Plan-Second Floor | 05/01/19 |
| E-203 | MEP-Electrical-Updated 5/1/19 | Electrical Power Plan-Third Floor | 05/01/19 |
| E-204 | MEP-Electrical-Updated 5/1/19 | Electrical Power Plan-Fourth Floor | 05/01/19 |
| E-205 | MEP-Electrical-Updated 5/1/19 | Electrical Power Plan-Fifth Floor | 05/01/19 |
| E-206 | MEP-Electrical | Electrical Power Plan-Roof Floor | 02/26/19 |
| E-300 | MEP-Electrical-Updated 5/1/19 | Electrical Panel Schedules | 05/01/19 |
| E-301 | MEP-Electrical-Updated 5/1/19 | Electrical Panel Schedules | 05/01/19 |
| E-302 | MEP-Electrical | Electrical Riser | 02/26/19 |
| E-303 | MEP-Electrical-Updated 5/1/19 | Electrical Riser & Details | 05/01/19 |
| FA-100 | MEP_Fire Alarm Updated 5/1/19 | Fire Alarm Riser, Notes & Legend | 05/01/19 |
| FA-101 | MEP_Fire Alarm Updated 5/1/19 | Fire Alarm Plan-First Floor | 05/01/19 |
| FA-102 | MEP_Fire Alarm Updated 5/1/19 | Fire Alarm Plan-Second Floor | 05/01/19 |
| FA-103 | MEP_Fire Alarm Updated 5/1/19 | Fire Alarm Plan-Third Floor | 05/01/19 |
| FA-104 | MEP_Fire Alarm Updated 5/1/19 | Fire Alarm Plan-Fourth Floor | 05/01/19 |
| FA-105 | MEP_Fire Alarm Updated 5/1/19 | Fire Alarm Plan-Fifth Floor | 05/01/19 |
| FA-106 | MEP_Fire Alarm Updated 5/1/19 | Fire Alarm Plan-Roof Floor | 05/01/19 |
| FP-001.00-720 | MEP-Fire Protection | Fire Protection Details & Notes-1 | 02/26/19 |
| FP-002.00-720 | MEP-Fire Protection | Fire Protection Details & Notes-2 | 02/26/19 |
| FP-003.00-720 | MEP-Fire Protection | Fire Protection Details & Notes-3 | 02/26/19 |
| FP-100.00-720 | MEP-Fire Protection | Fire Protection Plan-1st Floor | 02/26/19 |
| FP-110.00-720 | MEP-Fire Protection | Fire Protection Plan-1st Floor & Mezzanine | 02/26/19 |
| FP-200.00-720 | MEP-Fire Protection | Fire Protection Plan-2nd Floor | 02/26/19 |
| FP-300.00-720 | MEP-Fire Protection | Fire Protection Plan-3rd Floor | 02/26/19 |
| FP-400.00-720 | MEP-Fire Protection | Fire Protection Plan-4th Floor | 02/26/19 |
| FP-500.00-720 | MEP-Fire Protection | Fire Protection Plan-5th Floor | 02/26/19 |
| FP-600.00-720 | MEP-Fire Protection | Fire Protection Plan-6th Floor | 02/26/19 |
| FP-700.00-720 | MEP-Fire Protection | Fire Protection Plan-Penthouse Floor | 02/26/19 |

ATTACHMENT/EXHIBIT "A"
WONDER LOFTS DRAWING LIST-731 CLINTON

| FP-800.00-720 | MEP-Fire Protection | Fire Protection Plan-Roof | 02/26/19 |
|---|---|---|---|
| FP-901.00-720 | MEP-Fire Protection | Fire Protection Riser Diagram & Details-1 | 02/26/19 |
| FP-902.00-720 | MEP-Fire Protection | Fire Protection Riser Diagram & Details-2 | 02/26/19 |
| H-100 | MEP-HVAC Updates 5/1/19 | HVAC Notes, Symbols & Abbreviations | 05/01/19 |
| H-200 | MEP-HVAC Updates 5/1/19 | HVAC Ground Floor Plan | 05/01/19 |
| H-201 | MEP-HVAC Updates 5/1/19 | HVAC 2nd Floor Plan | 05/01/19 |
| H-202 | MEP-HVAC Updates 5/1/19 | HVAC 3rd Floor Plan | 05/01/19 |
| H-203 | MEP-HVAC Updates 5/1/19 | HVAC 4th Floor Plan | 05/01/19 |
| H-204 | MEP-HVAC Updates 5/1/19 | HVAC 5th Floor Plan | 05/01/19 |
| H-205 | MEP-HVAC Updates 5/1/19 | HVAC Roof Plan | 05/01/19 |
| H-300 | MEP-HVAC Updates 5/1/19 | HVAC Schedules | 05/01/19 |
| H-400 | MEP-HVAC Updates 5/1/19 | HVAC Detail Sheet 1 | 05/01/19 |
| H-401 | MEP-HVAC Updates 5/1/19 | HVAC Detail Sheet 2 | 05/01/19 |
| P-001.00 | MEP-Pluming Updates 5/1/19 | Plumbing Specifications 1 of 4 | 05/01/19 |
| P-001.00 (729) | MEP-Plumbing | Plumbing Notes & Abbreviations | 02/26/19 |
| P-002.00 | MEP-Pluming Updates 5/1/19 | Plumbing Specifications 2 of 4 | 05/01/19 |
| P-002.00 (729) | MEP-Plumbing | Plumbing Fixtures Schedule | 02/26/19 |
| P-003.00 | MEP-Pluming Updates 5/1/19 | Plumbing Specifications 3 of 4 | 05/01/19 |
| P-003.00 (729) | MEP-Plumbing | Plumbing Specifications 1 | 02/26/19 |
| P-004.00 | MEP-Pluming Updates 5/1/19 | Plumbing Specifications 4 of 4 | 05/01/19 |
| P-004.00 (729) | MEP-Plumbing | Plumbing Specifications 2 | 02/26/19 |
| P-005.00 | MEP-Pluming Updates 5/1/19 | Schedules Plumbing | 05/01/19 |
| P-005.00 (729) | MEP-Plumbing | Plumbing Specifications 1 | 02/26/19 |
| P-099.00 | MEP-Plumbing | 1st Floor Sanitary & Storm Plan | 02/26/19 |
| P-100.00 | MEP-Plumbing | Plumbing 1st Floor Sanitary & Storm Plan | 02/26/19 |
| P-100.00 (720) | MEP-Plumbing | 1st Floor Plumbing Sanitary | 02/26/19 |
| P-101.00 | MEP-Pluming Updates 5/1/19 | Plumbing 1st Floor Sanitary Plan | 05/01/19 |
| P-101.00 (720) | MEP-Plumbing | 1st Floor Mezz Plumbing Sanitary | 02/26/19 |
| P-101.01 | MEP-Pluming Updates 5/1/19 | Plumbing 1st Floor Sanitary Plan | 05/01/19 |
| P-102.00 | MEP-Pluming Updates 5/1/19 | Plumbing 2nd Floor Sanitary Plan | 05/01/19 |
| P-102.00 (720) | MEP-Plumbing | 2nd Floor Plumbing Sanitary | 02/26/19 |
| P-102.00 (729) | MEP-Plumbing | Plumbing 2nd Floor Sanitary & Storm Plan | 02/26/19 |
| P-103.00 | MEP-Pluming Updates 5/1/19 | Plumbing 3rd Floor Sanitary Plan | 05/01/19 |
| P-103.00 (720) | MEP-Plumbing | 3rd Floor Plumbing Sanitary | 02/26/19 |
| P-103.00 (729) | MEP-Plumbing | Plumbing 2nd Floor Sanitary & Storm Plan | 02/26/19 |
| P-104.00 | MEP-Pluming Updates 5/1/19 | Plumbing 4th Floor Sanitary Plan | 05/01/19 |
| P-104.00 (720) | MEP-Plumbing | 4th Floor Plumbing Sanitary | 02/26/19 |
| P-104.00 (729) | MEP-Plumbing | Plumbing 4th Floor Sanitary & Storm Plan | 02/26/19 |
| P-105.00 | MEP-Pluming Updates 5/1/19 | Plumbing 5th Floor Sanitary Plan | 05/01/19 |
| P-105.00 (720) | MEP-Plumbing | 5th Floor Plumbing Sanitary | 02/26/19 |
| P-105.00 (729) | MEP-Plumbing | Plumbing 5th Floor Sanitary & Storm Plan | 02/26/19 |
| P-106.00 | MEP-Pluming Updates 5/1/19 | Plumbing Roof Sanitary Plan | 05/01/19 |
| P-106.00 (720) | MEP-Plumbing | 6th Floor Plumbing Sanitary | 02/26/19 |
| P-106.00 (729) | MEP-Plumbing | Plumbing Roof Sanitary & Storm Plan | 02/26/19 |
| P-106.00-729 | MEP-Fire Protection | Roof Fire Sprinkler Plan | 02/26/19 |
| P-107.00 (720) | MEP-Plumbing | 7th Floor Plumbing Sanitary | 02/26/19 |
| P-108.00 (720) | MEP-Plumbing | Roof Plumbing Sanitary | 02/26/19 |
| P-200 | MEP-Plumbing | 1st Floor Domestic Water & Gas Plan | 02/26/19 |
| P-200.00 | MEP-Pluming Updates 5/1/19 | Plumbing Details | 05/01/19 |

ATTACHMENT/EXHIBIT "A"
WONDER LOFTS DRAWING LIST-731 CLINTON

| P-201 | MEP-Plumbing | 1st Floor Mezzanine Domestic Water & Gas Plan | 02/26/19 |
|---|---|---|---|
| P-201.00 | MEP-Pluming Updates 5/1/19 | 1st Floor Domestic Water & Gas Plan | 05/01/19 |
| P-201.00 (729) | MEP-Plumbing | 1st Floor Domestic Water & Gas Plan | 02/26/19 |
| P-202 | MEP-Plumbing | 2nd Floor Domestic Water & Gas Plan | 02/26/19 |
| P-202.00 | MEP-Pluming Updates 5/1/19 | 2nd Floor Domestic Water & Gas Plan | 05/01/19 |
| P-202.00 (729) | MEP-Plumbing | 2nd Floor Domestic Water & Gas Plan | 02/26/19 |
| P-203 | MEP-Plumbing | 3rd Floor Domestic Water & Gas Plan | 02/26/19 |
| P-203.00 | MEP-Pluming Updates 5/1/19 | 3rd Floor Domestic Water & Gas Plan | 05/01/19 |
| P-203.00 (729) | MEP-Plumbing | 3rd Floor Domestic Water & Gas Plan | 02/26/19 |
| P-204 | MEP-Plumbing | 4th Floor Domestic Water & Gas Plan | 02/26/19 |
| P-204.00 | MEP-Pluming Updates 5/1/19 | 4th Floor Domestic Water & Gas Plan | 05/01/19 |
| P-204.00 (729) | MEP-Plumbing | 4th Floor Domestic Water & Gas Plan | 02/26/19 |
| P-205 | MEP-Plumbing | 5th Floor Domestic Water & Gas Plan | 02/26/19 |
| P-205.00 | MEP-Pluming Updates 5/1/19 | 5th Floor Domestic Water & Gas Plan | 05/01/19 |
| P-205.00 (729) | MEP-Plumbing | 5th Floor Domestic Water & Gas Plan | 02/26/19 |
| P-206 | MEP-Plumbing | 6th Floor Domestic Water & Gas Plan | 02/26/19 |
| P-206.00 | MEP-Pluming Updates 5/1/19 | Roof Floor Domestic Water & Gas Plan | 05/01/19 |
| P-206.00 (729) | MEP-Plumbing | Roof Domestic Water & Gas Plan | 02/26/19 |
| P-207 | MEP-Plumbing | 7th Floor Domestic Water & Gas Plan | 02/26/19 |
| P-208 | MEP-Plumbing | Penthouse Level Domestic Water & Gas Plan | 02/26/19 |
| P-300.00 | MEP-Pluming Updates 5/1/19 | Plumbing Sanitary Riser Diagram (731) | 05/01/19 |
| P-300.00 (729) | MEP-Plumbing | Plumbing Sanitary Risers (729) | 02/26/19 |
| P-301 | MEP-Plumbing | Water Riser Part 1 | 02/26/19 |
| P-301.00 | MEP-Pluming Updates 5/1/19 | Plumbing Water Riser Diagram | 05/01/19 |
| P-301.00 (729) | MEP-Plumbing | Water Risers-Bldg 729 | 02/26/19 |
| P-302 | MEP-Plumbing | Water Riser Part 2 | 02/26/19 |
| P-302.00 | MEP-Pluming Updates 5/1/19 | Gas Supply Riser Diagram | 05/01/19 |
| P-302.00 (729) | MEP-Plumbing | Gas Risers-Bldg 729 | 02/26/19 |
| P-303 | MEP-Plumbing | Water Riser Part 3 | 02/26/19 |
| P-303.00 | MEP-Pluming Updates 5/1/19 | Plumbing Storm Riser Diagram | 05/01/19 |
| P-303.00 (729) | MEP-Plumbing | Plumbing Storm Risers | 02/26/19 |
| P-304 | MEP-Plumbing | Water Riser Part 4 | 02/26/19 |
| P-305 | MEP-Plumbing | Water Riser Part 5 | 02/26/19 |
| P-306 | MEP-Plumbing | Water Riser Part 6 | 02/26/19 |
| P-307 | MEP-Plumbing | Water Riser Part 7 | 02/26/19 |
| P-308 | MEP-Plumbing | Water Riser Part 8 | 02/26/19 |
| P-400 | MEP-Plumbing | Plumbing Sanitary Riser-Part 1 | 02/26/19 |
| P-401 | MEP-Plumbing | Plumbing Sanitary Riser-Part 2 | 02/26/19 |
| P-402 | MEP-Plumbing | Plumbing Sanitary Riser-Part 3 | 02/26/19 |
| P-403 | MEP-Plumbing | Plumbing Sanitary Riser-Part 4 | 02/26/19 |
| P-404 | MEP-Plumbing | Plumbing Sanitary Riser-Part 5 | 02/26/19 |
| P-405 | MEP-Plumbing | Plumbing Sanitary Riser-Part 6 | 02/26/19 |
| P-406 | MEP-Plumbing | Plumbing Sanitary Riser-Part 7 | 02/26/19 |
| P-407 | MEP-Plumbing | Plumbing Sanitary Riser-Part 8 | 02/26/19 |
| P-408 | MEP-Plumbing | Plumbing Sanitary Riser-Part 9 | 02/26/19 |
| P-409 | MEP-Plumbing | Plumbing Sanitary Riser-Part 10 | 02/26/19 |
| P-410 | MEP-Plumbing | Plumbing Sanitary Riser-Part 11 | 02/26/19 |
| P-411 | MEP-Plumbing | Plumbing Sanitary Riser-Part 12 | 02/26/19 |
| P-412 | MEP-Plumbing | Plumbing Sanitary Riser-Part 13 | 02/26/19 |

ATTACHMENT/EXHIBIT "A"
WONDER LOFTS DRAWING LIST-731 CLINTON

| P-500 | MEP-Plumbing | 1st Floor Storm Plan | 02/26/19 |
|---|---|---|---|
| P-501 | MEP-Plumbing | 1st Floor & Mezzanine Storm Plan | 02/26/19 |
| P-502 | MEP-Plumbing | 2nd Floor Storm Plan | 02/26/19 |
| P-503 | MEP-Plumbing | 3rd Floor Storm Plan | 02/26/19 |
| P-504 | MEP-Plumbing | 4th Floor Storm Plan | 02/26/19 |
| P-505 | MEP-Plumbing | 5th Floor Storm Plan | 02/26/19 |
| P-506 | MEP-Plumbing | 6th Floor Storm Plan | 02/26/19 |
| P-507 | MEP-Plumbing | 7th Floor Storm Plan | 02/26/19 |
| P-508 | MEP-Plumbing | Penthouse Floor Storm Plan | 02/26/19 |
| P-530 | MEP-Plumbing | Gas Riser-Part 1 | 02/26/19 |
| P-531 | MEP-Plumbing | Gas Riser-Part 2 | 02/26/19 |
| P-532 | MEP-Plumbing | Gas Riser-Part 3 | 02/26/19 |
| P-630 | MEP-Plumbing | Storm Riser-Part 1 | 02/26/19 |
| P-631 | MEP-Plumbing | Storm Riser-Part 2 | 02/26/19 |
| P-632 | MEP-Plumbing | Storm Riser-Part 3 | 02/26/19 |
| P-920 | MEP-Plumbing | Plumbing Details-1 | 02/26/19 |
| P-920 (729) | MEP-Plumbing | Plumbing Details-1 | 02/26/19 |
| P-921 | MEP-Plumbing | Plumbing Details-2 | 02/26/19 |
| P-921 (729) | MEP-Plumbing | Plumbing Details-1 | 02/26/19 |
| S-101 | Structural-4/29/19-100% CD | Building D-Foundation, 1st & 2nd Flr Framing Plans | 04/29/19 |
| S-102 | Structural-4/29/19-100% CD | Building D-3rd & 4th Floor Framing Plans | 04/29/19 |
| S-103 | Structural-4/29/19-100% CD | Building D-5th, Roof & Bulkhead Framing Plans | 04/29/19 |
| S-210 | Structural-4/29/19-100% CD | Building D-Pile Cap Details | 04/29/19 |
| S-300 | Structural-4/29/19-100% CD | Building D-Columns & Beams Schedule | 04/29/19 |
| S-301 | Structural-4/29/19-100% CD | Building D-Shear Wall Details | 04/29/19 |
| S-350 | Structural-4/29/19-100% CD | Punching Shear Reinforcement Details | 04/29/19 |
| S-700 | Structural-4/29/19-100% CD | Building D-General Notes & Design Criteria | 04/29/19 |
| S-701 | Structural-4/29/19-100% CD | Building D-Typical Details I | 04/29/19 |
| S-702 | Structural-4/29/19-100% CD | Building D-Typical Details II | 04/29/19 |
| S-703 | Structural-4/29/19-100% CD | Building D-Typical Details III | 04/29/19 |
| S02 | Architectural-731 Clinton (Building D) | USG Drywall Suspension System Details | 02/26/19 |
| SP-001.00-729 | MEP-Fire Protection | Fire Protection Notes, Symbols & Details | 02/26/19 |
| SP-002.00-729 | MEP-Fire Protection | Fire Protection Specifications 1-2 | 02/26/19 |
| SP-003.00-729 | MEP-Fire Protection | Fire Protection Specifications 2-2 | 02/26/19 |
| SP-100.00 | MEP-Fire Protection Updates 5/1/19 | Fire Protection Notes & Details | 05/01/19 |
| SP-100.00-731 | MEP-Fire Protection | Fire Protection Notes & Details | 02/26/19 |
| SP-101.00 | MEP-Fire Protection Updates 5/1/19 | 1st Floor Fire Sprinkler Plan | 05/01/19 |
| SP-101.00-729 | MEP-Fire Protection | 1st Floor Fire Sprinkler Plan | 02/26/19 |
| SP-101.00-731 | MEP-Fire Protection | 1st Floor Fire Sprinkler Plan | 02/26/19 |
| SP-102.00 | MEP-Fire Protection Updates 5/1/19 | 2nd Floor Fire Sprinkler Plan | 05/01/19 |
| SP-102.00-729 | MEP-Fire Protection | 2nd Floor Fire Sprinkler Plan | 02/26/19 |
| SP-102.00-731 | MEP-Fire Protection | 2nd Floor Fire Sprinkler Plan | 02/26/19 |
| SP-103.00 | MEP-Fire Protection Updates 5/1/19 | 3rd Floor Fire Sprinkler Plan | 05/01/19 |
| SP-103.00-729 | MEP-Fire Protection | 3rd Floor Fire Sprinkler Plan | 02/26/19 |
| SP-103.00-731 | MEP-Fire Protection | 3rd Floor Fire Sprinkler Plan | 02/26/19 |
| SP-104.00 | MEP-Fire Protection Updates 5/1/19 | 4th Floor Fire Sprinkler Plan | 05/01/19 |
| SP-104.00-729 | MEP-Fire Protection | 4th Floor Fire Sprinkler Plan | 02/26/19 |
| SP-104.00-731 | MEP-Fire Protection | 4th Floor Fire Sprinkler Plan | 02/26/19 |
| SP-105.00 | MEP-Fire Protection Updates 5/1/19 | 5th Floor Fire Sprinkler Plan | 05/01/19 |

ATTACHMENT/EXHIBIT "A"
WONDER LOFTS DRAWING LIST-731 CLINTON

| SP-105.00-729 | MEP-Fire Protection | 5th Floor Fire Sprinkler Plan | 02/26/19 |
| SP-105.00-731 | MEP-Fire Protection | 5th Floor Fire Sprinkler Plan | 02/26/19 |
| SP-106.00 | MEP-Fire Protection Updates 5/1/19 | Roof Fire Sprinkler Plan | 05/01/19 |
| SP-106.00-731 | MEP-Fire Protection | Roof Fire Sprinkler Plan | 02/26/19 |



| Task | Duration | Start | Finish |
|---|---|---|---|
| Arch, Struct and MEP Drawings -ABC Bldg | 301 days | Tue 1/2/18 | Tue 2/26/19 |
| Shoring Permit | 3 wks | Mon 4/30/18 | Fri 5/18/18 |
| Footing and Foundation Drawings - ABC Bldg | 41.5 wks | Tue 5/22/18 | Thu 3/7/19 |
| Building D & E Design Drawings | 35 wks | Mon 6/18/18 | Fri 2/15/19 |
| Set Internal GMP | 56 days | Wed 2/27/19 | Wed 5/15/19 |
| Footing and Foundation Permit | 4 wks | Thu 4/4/19 | Thu 5/2/19 |
| Building ABC Full Permits | 5 wks | Thu 5/2/19 | Thu 6/6/19 |
| Building D & E Full Permits | 5 wks | Thu 6/6/19 | Thu 7/11/19 |
| **Building ABC** | **741 days** | **Mon 2/26/18** | **Mon 12/28/20** |
| Lead Paint remediation | 10 wks | Mon 2/26/18 | Fri 5/4/18 |
| Asbestos removal | 6 wks | Mon 4/9/18 | Fri 5/18/18 |
| Scaffolding installation | 6 wks | Mon 5/21/18 | Fri 6/29/18 |
| Demolition B-Bldg shafts & slab | 3 wks | Wed 6/13/18 | Tue 7/3/18 |
| Shoring A-Bldg at corners | 6 wks | Wed 6/20/18 | Tue 7/31/18 |
| Environmental Remediation | 12 mons | Wed 6/27/18 | Tue 5/28/19 |
| Demo A Building elevator shafts, water tower | 35.5 wks | Wed 7/4/18 | Fri 3/8/19 |
| Load testing B & C buildings | 6 wks | Wed 8/15/18 | Tue 9/25/18 |
| Demolition A-Bldg 5th floor | 3 wks | Wed 10/10/18 | Mon 3/18/19 |
| Parapet demolition | 9 wks | Fri 10/26/18 | Thu 12/27/18 |
| Load test piles A building | 9 wks | Wed 12/5/18 | Tue 2/5/19 |
| Building C Shoring Foundations | 15 wks | Mon 1/21/19 | Fri 5/3/19 |
| Additional demo for shear walls | 7 wks | Mon 3/18/19 | Mon 5/6/19 |
| Façade Repair | 40 wks | Wed 5/1/19 | Tue 2/4/20 |
| Driving Piles | 10 wks | Wed 5/15/19 | Tue 7/23/19 |
| Foundations and Pile Caps | 16 wks | Mon 6/24/19 | Fri 10/11/19 |
| Misc Concrete Repair | 3 mons | Wed 6/26/19 | Tue 9/17/19 |
| Shoring C-Bldg | 11 wks | Mon 7/8/19 | Fri 9/20/19 |
| Structural Concrete / Flat Plate | 6 mons | Mon 7/15/19 | Fri 12/27/19 |
| Demolition A-Bldg 4th floor | 3 wks | Mon 7/8/19 | Mon 7/29/19 |
| Structural Steel | 8 wks | Mon 7/29/19 | Fri 9/20/19 |
| Windows | 6 mons | Mon 8/12/19 | Fri 1/24/20 |
| Sales Center | 10 wks | Mon 8/12/19 | Fri 10/18/19 |
| Exterior Framing | 4 mons | Mon 9/23/19 | Fri 1/10/20 |
| Masonry / Metal panel | 7 mons | Mon 9/30/19 | Fri 4/10/20 |

Project: Wonder Lofts Project
Date: May 3, 2019

| | | | |
|---|---|---|---|
| Task | | Project Summary | Inactive Milestone | Manual Summary Rollup |
| Split | | External Tasks | Inactive Summary | Manual Summary |
| Milestone | ◆ | External Milestone | Manual Task | |
| Summary | | Inactive Task | Duration-only | Start-only |
| | | | Finish-only | |

Page 1

Case 2:21-cv-02407-DLI-ST Document 29 Filed 04/30/21 Page 96 of 107

Case 2:21-cv-02407-LDH-ST    Document 1-2    Filed 04/30/21



| | Interior Framing | 6 mons | Tue 10/15/19 | Mon 3/30/20 |
|---|---|---|---|---|
| | Roofing | 8 wks | Mon 10/21/19 | Fri 12/13/19 |
| | MEP Roughing | 7 mons | Tue 11/12/19 | Mon 5/25/20 |
| | Gyp Board | 6 mons | Tue 1/21/20 | Mon 7/6/20 |
| | Finish Work | 41 wks | Tue 3/17/20 | Mon 12/28/20 |
| **Building E** | | **340 days** | **Mon 7/8/19** | **Fri 10/23/20** |
| | Piles / Foundations | 4 wks | Mon 7/8/19 | Fri 8/2/19 |
| | Structure (steel and concrete) | 4 mons | Mon 8/5/19 | Fri 11/22/19 |
| | Roofing | 2 wks | Mon 11/25/19 | Fri 12/6/19 |
| | Masonry | 2 mons | Mon 11/25/19 | Fri 1/17/20 |
| | Windows | 1 mon | Mon 1/20/20 | Fri 2/14/20 |
| | Interior Framing | 5 wks | Mon 2/3/20 | Fri 3/6/20 |
| | MEP Roughing | 2 mons | Mon 2/17/20 | Fri 4/10/20 |
| | Gyp Board | 2.5 mons | Mon 4/13/20 | Fri 6/19/20 |
| | Finish Work | 5 mons | Mon 6/8/20 | Fri 10/23/20 |
| **Building D** | | **410 days** | **Mon 7/29/19** | **Fri 2/19/21** |
| | Demolition of existing structure | 4 wks | Mon 7/29/19 | Fri 8/23/19 |
| | Piles / Foundations | 6 wks | Mon 8/26/19 | Fri 10/4/19 |
| | Structure (steel and concrete) | 4 mons | Mon 9/23/19 | Fri 1/10/20 |
| | Roofing | 3 wks | Mon 1/13/20 | Fri 1/31/20 |
| | Masonry | 3 mons | Mon 1/13/20 | Fri 4/3/20 |
| | Windows | 2 mons | Mon 4/6/20 | Fri 5/29/20 |
| | Interior Framing | 3 mons | Mon 4/6/20 | Fri 6/26/20 |
| | MEP Roughing | 4 mons | Mon 6/1/20 | Fri 9/18/20 |
| | Gyp Board | 3 mons | Mon 7/27/20 | Fri 10/16/20 |
| | Finish Work | 6 mons | Mon 9/7/20 | Fri 2/19/21 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Task | | | Project Summary | | Inactive Milestone | ◇ | | Manual Summary Rollup | | D |
| Split | | ............... | External Tasks | | Inactive Summary | | | Manual Summary | | P |
| Milestone | ◆ | | External Milestone | ◇ | Manual Task | | | Start-only | ⊏ | |
| Summary | | | Inactive Task | | Duration-only | | | Finish-only | ⊐ | |

Project: Wonder Lofts Project
Date: May 3, 2019

# CONTRACTUAL INSURANCE REQUIREMENTS

The information contained herein is to describe the contractual requirements that Geis Companies has indicated to myCOI. These contractual requirements should NOT be used to provide inaccurate information regarding current insurance policies. Questions regarding interpretation of this document can be directed to our support team at 888-692-6448 x105.

**INSURED NAME**

**CARRIER REQUIREMENTS**

| POLICY LINE | | POLICY LIMITS REQ'D BY CONTRACT | | OTHER CONTRACTUAL REQUIREMENTS |
|---|---|---|---|---|
| **GENERAL LIABILITY** | CLAIMS MADE / X OCCUR | EACH OCCURRENCE | $1,000,000 | Additional Insured applies to General Liability. Waiver of Subrogation is required for General Liability. General Liability is Primary and Non-contributory. |
| | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $100,000 | |
| | | MED EXP (Any one person) | $5,000 | |
| | | PERSONAL & ADV INJURY | $1,000,000 | |
| | | GENERAL AGGREGATE | $2,000,000 | |
| | GEN'L AGGREGATE LIMIT APPLIES PER: POLICY X PROJECT LOC | PRODUCTS - COMP/OP AGG | $2,000,000 | |
| **AUTO LIABILITY** | X ANY AUTO / ALL OWNED AUTOS / SCHEDULED AUTOS / HIRED AUTOS / NON-OWNED AUTOS | COMBINED SINGLE LIMIT (Ea accident) | $1,000,000 | Additional Insured applies to Automobile. Waiver of Subrogation is required for Automobile. |
| | | BODILY INJURY (Per person) | $ | |
| | | BODILY INJURY (Per accident) | $ | |
| | | PROPERTY DAMAGE (Per accident) | $ | |
| **GARAGE LIABILITY** | ANY AUTO | AUTO ONLY - EA ACCIDENT | $ | |
| | | OTHER THAN AUTO ONLY   EA ACC | $ | |
| | | AGG | $ | |
| **EXCESS/ UMBRELLA LIABILITY** | X OCCUR / CLAIMS MADE | EACH OCCURRENCE | $2,000,000 | Additional Insured applies to Umbrella. Waiver of Subrogation is required for Umbrella. Umbrella Liability is Primary and Non contributory. |
| | | AGGREGATE | $2,000,000 | |
| **WORK COMP AND EMPLOYERS' LIABILITY** | | X WC STATU-TORY LIMITS  OTHER | | Waiver of Subrogation is required for Workers Comp. |
| | | E.L. EACH ACCIDENT | $500,000 | |
| | | E.L. DISEASE - EA EMPLOYEE | $500,000 | |
| | | E.L. DISEASE - POLICY LIMIT | $500,000 | |

**CERTIFICATE HOLDER**

Geis Construction South, LLC

C/O: myCOI
1075 Broad Ripple Ave, Suite 313
Indianapolis, IN 46220

# CONTRACTUAL INSURANCE REQUIREMENTS

The information contained herein is to describe the contractual requirements that Geis Companies has indicated to myCOI. These contractual requirements should NOT be used to provide inaccurate information regarding current insurance policies. Questions regarding interpretation of this document can be directed to our support team at 888-692-6448 x105.

Division Name: [Template - Geis Construction South, LLC]. Endorsement(s) required: CG 2010 10 01 or its equivalent; CG 2037 10 01 or its equivalent. Additional Insured Names: Geis Construction South, LLC, owners, lessees or contractors.. 30 Days Notice of Cancellation Required. Waiver of Subrogation applies in favor of: Geis Construction South, LLC, Owner and Architect and their agents, officers, directors and employees..

General Liability: Additional Insured Endorsement Forms (CG 2010 07/04 and CG 2037 07/04 or their equivalent) are required.
Umbrella/Excess: Coverage must extend over general liability, automobile liability and employers liability.



# AFFIDAVIT OF (SUB ORIGINAL) CONTRACTOR

_____ Ohio, _____ 20 _____

STATE OF OHIO,    _____ COUNTY, ss:

_____ being first duly sworn, says that he is

_____ of _____ the

Sub
Original   Contractor having a contract with _____

the   _____
_____

for   _____
situated on or around or in front of the following described property:   _____
_____
_____

whereof   _____ was the owner, part owner or lessee.

Affiant further says that the following shows the names of every sub-contractor in employ of said _____
_____ Giving the amount, if any, which is due, or to become due, to them, or any of
them, for work done or machinery, material or fuel furnished to date hereof, under said contracts.

**NOTE:** This statement must be accompanied by a similar sworn statement signed by each of the sub-
contractors listed below.

SUB-CONTRACTORS

| NAME | TRADE | Amount due or to become due for work and material furnished to date hereof. |
|------|-------|------------------------------------------------------------------------------|
|      |       |                                                                              |
|      |       |                                                                              |
|      |       |                                                                              |
|      |       |                                                                              |
|      |       |                                                                              |
|      |       |                                                                              |
|      |       |                                                                              |

Said affiant further says that the following shows the names of every person furnishing machinery, material or
fuel, to   _____
Giving the amount, if any, which is due, or to become due, to them or any of them, for machinery, material or
Fuel furnished to date hereof, under said contracts.

MATERIAL MEN

| NAME | TRADE | Amount due or to become due for work and material furnished to date hereof. |
|------|-------|------------------------------------------------------------------------------|
|      |       |                                                                              |
|      |       |                                                                              |
|      |       |                                                                              |
|      |       |                                                                              |
|      |       |                                                                              |
|      |       |                                                                              |

Said affiant further says that the following shows the names of every unpaid laborer in the employ of _____ Furnishing labor under said contract, giving the amount, if any. which is due, or to become due for labor done to date hereof:

**LABOR**

| NAME | HOURS | Amount due or to become due for labor furnished to date hereof. | |
|------|-------|------|---|
| | | | |
| | | | |
| | | | |

That the amounts due or to become due to said sub-contractors, material men and laborers, for work done, or

machinery, material or fuel furnished to the date hereof, to _____
Is fully and correctly set forth opposite their names, respectively, in the aforesaid statements, and further by certificates of every person furnishing machinery, material or fuel, hereto attached, and made a part hereof.

Affiant further says that _____
has not employed or purchased or procured machinery, material or fuel from, or sub-contracted with any person, firm or corporation, other than those above mentioned, and owes for no labor performed, or machinery, material or fuel furnished under said contracts, other than above set forth.

SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE, at _____
Ohio, this _____ day of _____ A.D., 20 _____

_____
Notary Public

CERTIFICTE OF MATERIAL MEN

_____ Ohio _____ 20_____

The undersigned certify that to the date hereof they have furnished machinery, material or fuel as set out herein to _____ for

Situated on or around or in front of the property described I the foregoing affidavit; that the nature of said machinery, material or fuel furnished, the date when they commenced furnishing the same and the amount now due or owing to each of them, is correctly stated and set opposite their respective names or they have been paid in full, if so acknowledged hereon.

| NAME | Machinery, materials or fuel and nature of the same. | Commenced Furnishing | Amount due or to become due to date hereof. |
|------|------|------|------|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

# GEIS PAYMENT APPLICATION

JOB:
JOB #:

Contract No:
Invoice Number:

Period From:
Thru:

CONTRACTOR
ADDRESS

PHONE
FAX
E-MAIL

1 **ORIGINAL CONTRACT SUM** — $0.00
2 **Net change by Change Orders** — $0.00
3 **CONTRACT SUM TO DATE** (Line 1 +/- 2) — $0.00
4 **TOTAL COMPLETED & STORED TO DATE** — $0.00
5 **RETAINAGE:**
   a. _____ % of Completed Work — $0.00
      (Columns D + E)
   b. _____ % of Stored Material — $0.00
      (Column F)
      Total in Column I
6 **TOTAL EARNED LESS RETAINAGE** — $0.00
   (Line 4 less Line 5 Total)
7 **LESS PREVIOUS CERTIFICATES FOR PAYMENT** — $0.00
   (Line 6 from prior Certificate)
8 **CURRENT PAYMENT DUE** — $0.00
9 **BALANCE TO FINISH, INCLUDING RETAINAGE** — $0.00
   (Line 3 less Line 6)

**GENERAL NOTES:**

Breakdown of contract needs to be submitted to the Geis office within one week of receiving purchase order. Failure to do so will result in the purchase order being voided.
Only concern yourself with the items that pertain to your scope of work. This form is intended to be a supplement to your proposal which list items that are included and excluded.
Invoices MUST be received in our office no later than the 25th of the month in order to be processed the following month.
Conditional Lien Waivers and Affidavits must be submitted with each draw request.
We must have a current insurance certificate and workers compensation certificate on file in our office.

| A | B | C | D | E | F | G | H | |
|---|---|---|---|---|---|---|---|---|
| ITEM NO | DESCRIPTION OF WORK | SCHEDULED VALUE | WORK PERFORMED FROM PREVIOUS APPLICATION | THIS PERIOD | Materials Presently Stored (Not IN D OR E) | TOTAL COMPLETED AND STORED (D+E+F) | % (G/C) | BALANCE TO FINISH (C-G) |
| 1 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| 2 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| 3 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| 4 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| 5 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| 6 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| 7 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| 8 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| 9 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| 10 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| 11 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| 12 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| 13 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| 14 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| 15 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| 16 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| 17 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| 18 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| 19 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| 20 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| 21 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| 22 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| 23 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| 24 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| 25 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| **Total Base Contract** | | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **#DIV/0!** | **$0.00** |
| CHANGES | CHANGES ORDERS | | | | | | | |
| | | $0.00 | $0.00 | $0.00 | | $0.00 | #DIV/0! | $0.00 |
| | | $0.00 | $0.00 | $0.00 | | $0.00 | #DIV/0! | $0.00 |
| | Total Changes $0.00 | | | | $0.00 | | | |
| | **TOTAL CONTRACT** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **#DIV/0!** | **$0.00** |

Form **W-9**

(Rev. December 2014)
Department of the Treasury
Internal Revenue Service

# Request for Taxpayer
# Identification Number and Certification

**Give Form to the requester. Do not send to the IRS.**

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

**2** Business name/disregarded entity name, if different from above

**3** Check appropriate box for federal tax classification; check only **one** of the following seven boxes:

☐ Individual/sole proprietor or single-member LLC     ☐ C Corporation     ☐ S Corporation     ☐ Partnership     ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶ _____

**Note.** For a single-member LLC that is disregarded, do not check LLC; check the appropriate box in the line above for the tax classification of the single-member owner.

☐ Other (see instructions) ▶

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any) _____

Exemption from FATCA reporting code (if any) _____

*(Applies to accounts maintained outside the U.S.)*

**5** Address (number, street, and apt. or suite no.)

**6** City, state, and ZIP code

Requester's name and address (optional)

**7** List account number(s) here (optional)

Print or type
See **Specific Instructions** on page 2.

## Part I   Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** If the account is in more than one name, see the instructions for line 1 and the chart on page 4 for guidelines on whose number to enter.

Social security number

☐☐☐ – ☐☐ – ☐☐☐☐

**or**

Employer identification number

☐☐ – ☐☐☐☐☐☐☐

## Part II   Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and

3. I am a U.S. citizen or other U.S. person (defined below); and

4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 3.

**Sign Here**     Signature of U.S. person ▶                                Date ▶

# General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** Information about developments affecting Form W-9 (such as legislation enacted after we release it) is at *www.irs.gov/fw9*.

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following:

• Form 1099-INT (interest earned or paid)

• Form 1099-DIV (dividends, including those from stocks or mutual funds)

• Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)

• Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)

• Form 1099-S (proceeds from real estate transactions)

• Form 1099-K (merchant card and third party network transactions)

• Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)

• Form 1099-C (canceled debt)

• Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding.* See *What is backup withholding?* on page 2.

By signing the filled-out form, you:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income, and

4. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting, is correct. See *What is FATCA reporting?* on page 2 for further information.

Form W-9 (Rev. 12-2014)

**Note.** If you are a U.S. person and a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

• An individual who is a U.S. citizen or U.S. resident alien;

• A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States;

• An estate (other than a foreign estate); or

• A domestic trust (as defined in Regulations section 301.7701-7).

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax under section 1446 on any foreign partners' share of effectively connected taxable income from such business. Further, in certain cases where a Form W-9 has not been received, the rules under section 1446 require a partnership to presume that a partner is a foreign person, and pay the section 1446 withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid section 1446 withholding on your share of partnership income.

In the cases below, the following person must give Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States:

• In the case of a disregarded entity with a U.S. owner, the U.S. owner of the disregarded entity and not the entity;

• In the case of a grantor trust with a U.S. grantor or other U.S. owner, generally, the U.S. grantor or other U.S. owner of the grantor trust and not the trust; and

• In the case of a U.S. trust (other than a grantor trust), the U.S. trust (other than a grantor trust) and not the beneficiaries of the trust.

**Foreign person.** If you are a foreign person or the U.S. branch of a foreign bank that has elected to be treated as a U.S. person, do not use Form W-9. Instead, use the appropriate Form W-8 or Form 8233 (see Publication 515, Withholding of Tax on Nonresident Aliens and Foreign Entities).

**Nonresident alien who becomes a resident alien.** Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the payee has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement to Form W-9 that specifies the following five items:

1. The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.

2. The treaty article addressing the income.

3. The article number (or location) in the tax treaty that contains the saving clause and its exceptions.

4. The type and amount of income that qualifies for the exemption from tax.

5. Sufficient facts to justify the exemption from tax under the terms of the treaty article.

**Example.** Article 20 of the U.S.-China income tax treaty allows an exemption from tax for scholarship income received by a Chinese student temporarily present in the United States. Under U.S. law, this student will become a resident alien for tax purposes if his or her stay in the United States exceeds 5 calendar years. However, paragraph 2 of the first Protocol to the U.S.-China treaty (dated April 30, 1984) allows the provisions of Article 20 to continue to apply even after the Chinese student becomes a resident alien of the United States. A Chinese student who qualifies for this exception (under paragraph 2 of the first protocol) and is relying on this exception to claim an exemption from tax on his or her scholarship or fellowship income would attach to Form W-9 a statement that includes the information described above to support that exemption.

If you are a nonresident alien or a foreign entity, give the requester the appropriate completed Form W-8 or Form 8233.

## Backup Withholding

**What is backup withholding?** Persons making certain payments to you must under certain conditions withhold and pay to the IRS 28% of such payments. This is called "backup withholding." Payments that may be subject to backup withholding include interest, tax-exempt interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, payments made in settlement of payment card and third party network transactions, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

You will not be subject to backup withholding on payments you receive if you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return.

**Payments you receive will be subject to backup withholding if:**

1. You do not furnish your TIN to the requester,

2. You do not certify your TIN when required (see the Part II instructions on page 3 for details),

3. The IRS tells the requester that you furnished an incorrect TIN,

4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

5. You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See *Exempt payee code* on page 3 and the separate Instructions for the Requester of Form W-9 for more information.

Also see *Special rules for partnerships* above.

## What is FATCA reporting?

The Foreign Account Tax Compliance Act (FATCA) requires a participating foreign financial institution to report all United States account holders that are specified United States persons. Certain payees are exempt from FATCA reporting. See *Exemption from FATCA reporting code* on page 3 and the Instructions for the Requester of Form W-9 for more information.

## Updating Your Information

You must provide updated information to any person to whom you claimed to be an exempt payee if you are no longer an exempt payee and anticipate receiving reportable payments in the future from this person. For example, you may need to provide updated information if you are a C corporation that elects to be an S corporation, or if you no longer are tax exempt. In addition, you must furnish a new Form W-9 if the name or TIN changes for the account; for example, if the grantor of a grantor trust dies.

## Penalties

**Failure to furnish TIN.** If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**Civil penalty for false information with respect to withholding.** If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal penalty for falsifying information.** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**Misuse of TINs.** If the requester discloses or uses TINs in violation of federal law, the requester may be subject to civil and criminal penalties.

## Specific Instructions

### Line 1

You must enter one of the following on this line; **do not** leave this line blank. The name should match the name on your tax return.

If this Form W-9 is for a joint account, list first, and then circle, the name of the person or entity whose number you entered in Part I of Form W-9.

**a. Individual.** Generally, enter the name shown on your tax return. If you have changed your last name without informing the Social Security Administration (SSA) of the name change, enter your first name, the last name as shown on your social security card, and your new last name.

**Note.** ITIN applicant: Enter your individual name as it was entered on your Form W-7 application, line 1a. This should be the same as the name you entered on the Form 1040/1040A/1040EZ you filed with your application.

**b. Sole proprietor or single-member LLC.** Enter your individual name as shown on your 1040/1040A/1040EZ on line 1. You may enter your business, trade, or "doing business as" (DBA) name on line 2.

**c. Partnership, LLC that is not a single-member LLC, C Corporation, or S Corporation.** Enter the entity's name as shown on the entity's tax return on line 1 and any business, trade, or DBA name on line 2.

**d. Other entities.** Enter your name as shown on required U.S. federal tax documents on line 1. This name should match the name shown on the charter or other legal document creating the entity. You may enter any business, trade, or DBA name on line 2.

**e. Disregarded entity.** For U.S. federal tax purposes, an entity that is disregarded as an entity separate from its owner is treated as a "disregarded entity." See Regulations section 301.7701-2(c)(2)(iii). Enter the owner's name on line 1. The name of the entity entered on line 1 should never be a disregarded entity. The name on line 1 should be the name shown on the income tax return on which the income should be reported. For example, if a foreign LLC that is treated as a disregarded entity for U.S. federal tax purposes has a single owner that is a U.S. person, the U.S. owner's name is required to be provided on line 1. If the direct owner of the entity is also a disregarded entity, enter the first owner that is not disregarded for federal tax purposes. Enter the disregarded entity's name on line 2, "Business name/disregarded entity name." If the owner of the disregarded entity is a foreign person, the owner must complete an appropriate Form W-8 instead of a Form W-9. This is the case even if the foreign person has a U.S. TIN.

Form W-9 (Rev. 12-2014)                                                                                    Page **3**

## Line 2

If you have a business name, trade name, DBA name, or disregarded entity name, you may enter it on line 2.

## Line 3

Check the appropriate box in line 3 for the U.S. federal tax classification of the person whose name is entered on line 1. Check only one box in line 3.

**Limited Liability Company (LLC).** If the name on line 1 is an LLC treated as a partnership for U.S. federal tax purposes, check the "Limited Liability Company" box and enter "P" in the space provided. If the LLC has filed Form 8832 or 2553 to be taxed as a corporation, check the "Limited Liability Company" box and in the space provided enter "C" for C corporation or "S" for S corporation. If it is a single-member LLC that is a disregarded entity, do not check the "Limited Liability Company" box; instead check the first box in line 3 "Individual/sole proprietor or single-member LLC."

## Line 4, Exemptions

If you are exempt from backup withholding and/or FATCA reporting, enter in the appropriate space in line 4 any code(s) that may apply to you.

**Exempt payee code.**
• Generally, individuals (including sole proprietors) are not exempt from backup withholding.

• Except as provided below, corporations are exempt from backup withholding for certain payments, including interest and dividends.

• Corporations are not exempt from backup withholding for payments made in settlement of payment card or third party network transactions.

• Corporations are not exempt from backup withholding with respect to attorneys' fees or gross proceeds paid to attorneys, and corporations that provide medical or health care services are not exempt from backup withholding for payments reportable on Form 1099-MISC.

The following codes identify payees that are exempt from backup withholding. Enter the appropriate code in the space in line 4.

1—An organization exempt from tax under section 501(a), any IRA, or a custodial account under section 403(b)(7) if the account satisfies the requirements of section 401(f)(2)

2—The United States or any of its agencies or instrumentalities

3—A state, the District of Columbia, a U.S. commonwealth or possession, or any of their political subdivisions or instrumentalities

4—A foreign government or any of its political subdivisions, agencies, or instrumentalities

5—A corporation

6—A dealer in securities or commodities required to register in the United States, the District of Columbia, or a U.S. commonwealth or possession

7—A futures commission merchant registered with the Commodity Futures Trading Commission

8—A real estate investment trust

9—An entity registered at all times during the tax year under the Investment Company Act of 1940

10—A common trust fund operated by a bank under section 584(a)

11—A financial institution

12—A middleman known in the investment community as a nominee or custodian

13—A trust exempt from tax under section 664 or described in section 4947

The following chart shows types of payments that may be exempt from backup withholding. The chart applies to the exempt payees listed above, 1 through 13.

| IF the payment is for . . . | THEN the payment is exempt for . . . |
| --- | --- |
| Interest and dividend payments | All exempt payees except for 7 |
| Broker transactions | Exempt payees 1 through 4 and 6 through 11 and all C corporations. S corporations must not enter an exempt payee code because they are exempt only for sales of noncovered securities acquired prior to 2012. |
| Barter exchange transactions and patronage dividends | Exempt payees 1 through 4 |
| Payments over $600 required to be reported and direct sales over $5,000[1] | Generally, exempt payees 1 through 5[2] |
| Payments made in settlement of payment card or third party network transactions | Exempt payees 1 through 4 |

[1] See Form 1099-MISC, Miscellaneous Income, and its instructions.

[2] However, the following payments made to a corporation and reportable on Form 1099-MISC are not exempt from backup withholding: medical and health care payments, attorneys' fees, gross proceeds paid to an attorney reportable under section 6045(f), and payments for services paid by a federal executive agency.

**Exemption from FATCA reporting code.** The following codes identify payees that are exempt from reporting under FATCA. These codes apply to persons submitting this form for accounts maintained outside of the United States by certain foreign financial institutions. Therefore, if you are only submitting this form for an account you hold in the United States, you may leave this field blank. Consult with the person requesting this form if you are uncertain if the financial institution is subject to these requirements. A requester may indicate that a code is not required by providing you with a Form W-9 with "Not Applicable" (or any similar indication) written or printed on the line for a FATCA exemption code.

A—An organization exempt from tax under section 501(a) or any individual retirement plan as defined in section 7701(a)(37)

B—The United States or any of its agencies or instrumentalities

C—A state, the District of Columbia, a U.S. commonwealth or possession, or any of their political subdivisions or instrumentalities

D—A corporation the stock of which is regularly traded on one or more established securities markets, as described in Regulations section 1.1472-1(c)(1)(i)

E—A corporation that is a member of the same expanded affiliated group as a corporation described in Regulations section 1.1472-1(c)(1)(i)

F—A dealer in securities, commodities, or derivative financial instruments (including notional principal contracts, futures, forwards, and options) that is registered as such under the laws of the United States or any state

G—A real estate investment trust

H—A regulated investment company as defined in section 851 or an entity registered at all times during the tax year under the Investment Company Act of 1940

I—A common trust fund as defined in section 584(a)

J—A bank as defined in section 581

K—A broker

L—A trust exempt from tax under section 664 or described in section 4947(a)(1)

M—A tax exempt trust under a section 403(b) plan or section 457(g) plan

**Note.** You may wish to consult with the financial institution requesting this form to determine whether the FATCA code and/or exempt payee code should be completed.

## Line 5

Enter your address (number, street, and apartment or suite number). This is where the requester of this Form W-9 will mail your information returns.

## Line 6

Enter your city, state, and ZIP code.

## Part I. Taxpayer Identification Number (TIN)

**Enter your TIN in the appropriate box.** If you are a resident alien and you do not have and are not eligible to get an SSN, your TIN is your IRS individual taxpayer identification number (ITIN). Enter it in the social security number box. If you do not have an ITIN, see How to get a TIN below.

If you are a sole proprietor and you have an EIN, you may enter either your SSN or EIN. However, the IRS prefers that you use your SSN.

If you are a single-member LLC that is disregarded as an entity separate from its owner (see Limited Liability Company (LLC) on this page), enter the owner's SSN (or EIN, if the owner has one). Do not enter the disregarded entity's EIN. If the LLC is classified as a corporation or partnership, enter the entity's EIN.

**Note.** See the chart on page 4 for further clarification of name and TIN combinations.

**How to get a TIN.** If you do not have a TIN, apply for one immediately. To apply for an SSN, get Form SS-5, Application for a Social Security Card, from your local SSA office or get this form online at www.ssa.gov. You may also get this form by calling 1-800-772-1213. Use Form W-7, Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN, or Form SS-4, Application for Employer Identification Number, to apply for an EIN. You can apply for an EIN online by accessing the IRS website at www.irs.gov/businesses and clicking on Employer Identification Number (EIN) under Starting a Business. You can get Forms W-7 and SS-4 from the IRS by visiting IRS.gov or by calling 1-800-TAX-FORM (1-800-829-3676).

If you are asked to complete Form W-9 but do not have a TIN, apply for a TIN and write "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, generally you will have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

**Note.** Entering "Applied For" means that you have already applied for a TIN or that you intend to apply for one soon.

**Caution:** A disregarded U.S. entity that has a foreign owner must use the appropriate Form W-8.

Form W-9 (Rev. 12-2014)

## Part II. Certification

To establish to the withholding agent that you are a U.S. person, or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if items 1, 4, or 5 below indicate otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required). In the case of a disregarded entity, the person identified on line 1 must sign. Exempt payees, see *Exempt payee code* earlier.

**Signature requirements.** Complete the certification as indicated in items 1 through 5 below.

**1. Interest, dividend, and barter exchange accounts opened before 1984 and broker accounts considered active during 1983.** You must give your correct TIN, but you do not have to sign the certification.

**2. Interest, dividend, broker, and barter exchange accounts opened after 1983 and broker accounts considered inactive during 1983.** You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

**3. Real estate transactions.** You must sign the certification. You may cross out item 2 of the certification.

**4. Other payments.** You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills for merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services, payments made in settlement of payment card and third party network transactions, payments to certain fishing boat crew members and fishermen, and gross proceeds paid to attorneys (including payments to corporations).

**5. Mortgage interest paid by you, acquisition or abandonment of secured property, cancellation of debt, qualified tuition program payments (under section 529), IRA, Coverdell ESA, Archer MSA or HSA contributions or distributions, and pension distributions.** You must give your correct TIN, but you do not have to sign the certification.

## What Name and Number To Give the Requester

| For this type of account: | Give name and SSN of: |
|---|---|
| 1. Individual | The individual |
| 2. Two or more individuals (joint account) | The actual owner of the account or, if combined funds, the first individual on the account[1] |
| 3. Custodian account of a minor (Uniform Gift to Minors Act) | The minor[2] |
| 4. a. The usual revocable savings trust (grantor is also trustee) | The grantor-trustee[1] |
| b. So-called trust account that is not a legal or valid trust under state law | The actual owner[1] |
| 5. Sole proprietorship or disregarded entity owned by an individual | The owner[3] |
| 6. Grantor trust filing under Optional Form 1099 Filing Method 1 (see Regulations section 1.671–4(b)(2)(i) (A)) | The grantor* |

| For this type of account: | Give name and EIN of: |
|---|---|
| 7. Disregarded entity not owned by an individual | The owner |
| 8. A valid trust, estate, or pension trust | Legal entity[4] |
| 9. Corporation or LLC electing corporate status on Form 8832 or Form 2553 | The corporation |
| 10. Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 11. Partnership or multi-member LLC | The partnership |
| 12. A broker or registered nominee | The broker or nominee |
| 13. Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |
| 14. Grantor trust filing under the Form 1041 Filing Method or the Optional Form 1099 Filing Method 2 (see Regulations section 1.671–4(b)(2)(i) (B)) | The trust |

[1] List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished.
[2] Circle the minor's name and furnish the minor's SSN.

[3] You must show your individual name and you may also enter your business or DBA name on the "Business name/disregarded entity" name line. You may use either your SSN or EIN (if you have one), but the IRS encourages you to use your SSN.

[4] List first and circle the name of the trust, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity itself is not designated in the account title.) Also see *Special rules for partnerships* on page 2.

**\*Note.** Grantor also must provide a Form W-9 to trustee of trust.

**Note.** If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed.

## Secure Your Tax Records from Identity Theft

Identity theft occurs when someone uses your personal information such as your name, SSN, or other identifying information, without your permission, to commit fraud or other crimes. An identity thief may use your SSN to get a job or may file a tax return using your SSN to receive a refund.

To reduce your risk:

• Protect your SSN,

• Ensure your employer is protecting your SSN, and

• Be careful when choosing a tax preparer.

If your tax records are affected by identity theft and you receive a notice from the IRS, respond right away to the name and phone number printed on the IRS notice or letter.

If your tax records are not currently affected by identity theft but you think you are at risk due to a lost or stolen purse or wallet, questionable credit card activity or credit report, contact the IRS Identity Theft Hotline at 1-800-908-4490 or submit Form 14039.

For more information, see Publication 4535, Identity Theft Prevention and Victim Assistance.

Victims of identity theft who are experiencing economic harm or a system problem, or are seeking help in resolving tax problems that have not been resolved through normal channels, may be eligible for Taxpayer Advocate Service (TAS) assistance. You can reach TAS by calling the TAS toll-free case intake line at 1-877-777-4778 or TTY/TDD 1-800-829-4059.

**Protect yourself from suspicious emails or phishing schemes.** Phishing is the creation and use of email and websites designed to mimic legitimate business emails and websites. The most common act is sending an email to a user falsely claiming to be an established legitimate enterprise in an attempt to scam the user into surrendering private information that will be used for identity theft.

The IRS does not initiate contacts with taxpayers via emails. Also, the IRS does not request personal detailed information through email or ask taxpayers for the PIN numbers, passwords, or similar secret access information for their credit card, bank, or other financial accounts.

If you receive an unsolicited email claiming to be from the IRS, forward this message to *phishing@irs.gov*. You may also report misuse of the IRS name, logo, or other IRS property to the Treasury Inspector General for Tax Administration (TIGTA) at 1-800-366-4484. You can forward suspicious emails to the Federal Trade Commission at: *spam@uce.gov* or contact them at *www.ftc.gov/idtheft* or 1-877-IDTHEFT (1-877-438-4338).

Visit IRS.gov to learn more about identity theft and how to reduce your risk.

## Privacy Act Notice

Section 6109 of the Internal Revenue Code requires you to provide your correct TIN to persons (including federal agencies) who are required to file information returns with the IRS to report interest, dividends, or certain other income paid to you; mortgage interest you paid; the acquisition or abandonment of secured property; the cancellation of debt; or contributions you made to an IRA, Archer MSA, or HSA. The person collecting this form uses the information on the form to file information returns with the IRS, reporting the above information. Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation and to cities, states, the District of Columbia, and U.S. commonwealths and possessions for use in administering their laws. The information also may be disclosed to other countries under a treaty, to federal and state agencies to enforce civil and criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism. You must provide your TIN whether or not you are required to file a tax return. Under section 3406, payers must generally withhold a percentage of taxable interest, dividend, and certain other payments to a payee who does not give a TIN to the payer. Certain penalties may also apply for providing false or fraudulent information.

# M.D.C. 1900290-001

Final Audit Report                                                       2019-07-16

| Created: | 2019-06-24 |
|---|---|
| By: | Debra Gipson (debra@geisco.net) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA5Y_Bb7kHtLaYGF5Majv7OJuiCwc2zMk4 |

## "M.D.C. 1900290-001" History

📄 Document created by Debra Gipson (debra@geisco.net)
2019-06-24 - 6:09:33 PM GMT- IP address: 70.62.248.227

📧 Document emailed to Jaime Delahunt (jaimemdcinc@gmail.com) for signature
2019-06-24 - 6:10:01 PM GMT

📄 Email viewed by Jaime Delahunt (jaimemdcinc@gmail.com)
2019-06-24 - 7:53:37 PM GMT- IP address: 66.102.8.174

🖊 Document e-signed by Jaime Delahunt (jaimemdcinc@gmail.com)
Signature Date: 2019-07-16 - 2:29:04 PM GMT - Time Source: server- IP address: 69.123.234.40

📧 Document emailed to Jeff Martin (jm@geisco.net) for signature
2019-07-16 - 2:29:08 PM GMT

📄 Email viewed by Jeff Martin (jm@geisco.net)
2019-07-16 - 4:27:00 PM GMT- IP address: 174.202.14.94

🖊 Document e-signed by Jeff Martin (jm@geisco.net)
Signature Date: 2019-07-16 - 4:27:16 PM GMT - Time Source: server- IP address: 174.202.14.94

📧 Document emailed to Kevin Watts (kevinw@geisco.net) for signature
2019-07-16 - 4:27:19 PM GMT

📄 Email viewed by Kevin Watts (kevinw@geisco.net)
2019-07-16 - 5:02:46 PM GMT- IP address: 70.62.248.227

🖊 Document e-signed by Kevin Watts (kevinw@geisco.net)
Signature Date: 2019-07-16 - 5:03:33 PM GMT - Time Source: server- IP address: 70.62.248.227

✅ Signed document emailed to Jaime Delahunt (jaimemdcinc@gmail.com), Debra Gipson (debra@geisco.net), Kevin Watts (kevinw@geisco.net), and Jeff Martin (jm@geisco.net)
2019-07-16 - 5:03:33 PM GMT

Adobe Sign

# EXHIBIT   B



Congratulations on being awarded the contract for the **Wonder Lofts Project**. We look forward to working with you.

Your Project Manager is **Kevin Watts**. He can be reached at **440-454-5195**.

Our insurance certificates are reviewed and monitored by myCOI. You will receive an automated email from myCOI within 48 hours. The email will contain a portal link which will allow you to view a sample certificate of insurance and upload your certificate of insurance for review. We recommend you forward the email to your insurance broker so they can upload the correct information. If your insurance certificate does not meet the minimum requirements, it will be marked non-compliant and you will receive an automated email from myCOI with detailed non-compliance notes. Please amend your certificate of insurance and upload it into myCOI for review. If you have any questions, please contact the myCOI Customer Care Team Monday through Friday, between the hours of 8am-6pm EST.

myCOI Customer Care Team
support@mycoitracking.com
1-317-759-9426 ext 105
Certificates can be sent to: certificates@myCOItracking.com

Please note that if your subcontract is unsigned or your insurance is non-compliant your payment may be withheld. Please sign your agreement as soon as possible.

Please log on to https://app.procore.com/account/login to verify that you have the latest version of drawings for this project.

If you have any questions regarding payments, please contact Phil Teaford. If you have any questions regarding your subcontract, please contact me at the information listed below.

Thank You,

*Debra Gipson*

Debra Gipson
debra@geisco.net
Geis Companies
10020 Aurora-Hudson Rd.
Streetsboro, OH. 44241
330-528-3500 / 216-860-6201



|  |  |  |
|---|---|---|
| **P.O. No.:** | | **1900290-002** |
| **Project Name:** | | **Wonder Lofts** |
| **Address:** | | **720 Clinton Street** |
| | | **Hoboken, New Jersey 07030** |
| **Job No:** | | **19-00-290** |

**10020 Aurora – Hudson Road Streetsboro, Ohio 44241 Phone: (330) 528-3500 Fax: (330) 528-0008**

---

# SUBCONTRACT AGREEMENT

M.D.C.                                                        October 22, 2019
151 S. 11th Street
Lindenhurst, New York 11757

The undersigned subcontractor shall furnish all labor, material, and equipment to complete work in accordance with the Prime Contract which will be placed on Procore once fully executed, the terms of the attached proposal dated on or before July 8, 2019, not in conflict with this Agreement, and the terms of the attached Agreement, and the

Cost Codes, Descriptions and Amounts totaling: **$1,013,758.22**

RETAINAGE    Ten Percent (10%), or the amount withheld from Contractor by the Owner.

NOTE:        All permits required by State, City, or other jurisdictional authorities are the Subcontractor's responsibility, as it pertains to the attached scope of work.  Subcontractor shall also be responsible for the continuous cleanup of all debris related to the attached scope of work.

By signing this Agreement or commencing or supplying the work described in this Agreement, you agree to adhere to all the conditions as noted in this Agreement. Failure to do so could result in termination of your contract. No changes to this document are valid unless signed and accepted in writing by an authorized representative of Geis Construction South, LLC.

Contracted By:  M.D.C.
Signed By: *Jaime Delahunt*
Jaime Delahunt (Oct 29, 2019)
Geis Construction South, LLC.

Signed By: *Jeff Martin*
Jeff Martin (Oct 29, 2019)
Signed By: *Bein Warlt*

Subcontractor    *JD*
Initials         JD

1

**Geis Construction South, LLC.**



| | P.O. No.: | 1900290-002 |
| | Project Name: | Wonder Lofts |
| | Address: | 720 Clinton Street |
| | | Hoboken, New Jersey 07030 |
| | Job No: | 19-00-290 |

This Subcontract Agreement (the "**Agreement**") is entered into this 22nd day of October 2019, by and between Geis Construction South, LLC., an Ohio Corporation, 10020 Aurora–Hudson Road, Streetsboro, Ohio 44241 ("**Contractor**"), and <u>M.D.C.</u> ("**Subcontractor**"), having an address at <u>151 S. 11th Street, Lindenhurst, New York 11757</u>.

## ARTICLE 1
## THE WORK OF THIS AGREEMENT

**1.1**      Definitions.  For purposes of this Agreement, the term "**Subcontractor**" includes Subcontractor's employees and agents; "**Owner**" means the customer with which Contractor has entered into a contract relating to the Project and that is identified in Section 1.3 and, if such customer is not the owner of the Project, shall include the Project owner; "**Project**" means the project described on **Schedule 1** attached hereto and includes the premises on which the Project is located; "**Work**" means the goods, merchandise, materials, construction, and services related to the Project that is the subject matter of this Agreement, whether completed or partially completed, and includes all other labor, materials, equipment, and services provided or to be provided by Subcontractor to fulfill Subcontractor's obligations; and "**Lower Tier**" means any person or entity that has a direct contract with Subcontractor, or is otherwise in privity with Subcontractor, to furnish or perform a portion of the Work, and includes without limitation Subcontractor's subcontractors, materialmen, suppliers, and vendors, and their respective subcontractors, suppliers, and vendors.

**1.2**      Scope of Work.  The Subcontractor shall execute the Work as described in the Contract Documents (as hereinafter defined) and as detailed more fully in Contractor's agreement with the Owner (the "**Prime Contract**") and/or the attached proposal, which is incorporated by reference to the extent it does not conflict with this Agreement, except to the extent specifically indicated in this Agreement to be the responsibility of others.

**1.3**      The Project and Project Owner.  The Project, of which the Work may constitute the whole or a part, is described on **Schedule 1** attached hereto and made part.  The Project Owner, or person or entity contracting for the improvements, is Prism Construction Management, LLC having an address at 200 Broadacres Drive Suite 180, Bloomfield, NJ 07003.

**1.4**      Architect/Engineer.  The Architect or Engineer for the Project is GLSD Architects, LLC 10020 Aurora Hudson, Streetsboro, Ohio 44241.  In the event that no architect or engineer is named, then all references in this Agreement to the "**Architect**" or "**Engineer**" shall be understood to refer to Contractor.

**1.5**      Project Schedule**.**  The Project schedule applicable to the Subcontractor's work shall be the schedule dated as of the most current version on Procore (the "**Project Schedule**"), which is incorporated by reference, as the same may be amended from time to time in the Contractor's sole discretion.  If no Project Schedule exists as of the date of this Agreement, then Subcontractor shall be bound by the milestone and completion dates set forth in the Prime Contract and Contract Documents and any subsequently published schedule of Contractor, as the same may be amended or supplemented by Contractor in Contractor's sole discretion.

## ARTICLE 2
## DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

**2.1**      Date of Commencement.  The date of commencement shall be the date of this Agreement, as first written above, or the date listed in a Notice to Commence.

**2.2**      Substantial Completion.  Subcontractor shall achieve Substantial Completion of the entire Work not later than as set forth in the Project Schedule, subject to adjustments as provided in the Contract Documents, or such other time as required by the Contractor.  Substantial Completion shall be that point in time when the Work of Subcontractor has been completed with the exception of minor punch list items, the Work has been accepted by Contractor in writing, Subcontractor has obtained all necessary permits and inspections, and the Work is legally available for uninterrupted beneficial use and occupancy by Contractor and Owner without inconvenience.

Subcontractor
Initials    *JD*

2

**Geis Construction South, LLC.**



|  | | |
|---|---|---|
| **P.O. No.:** | | **1900290-002** |
| **Project Name:** | | **Wonder Lofts** |
| **Address:** | | **720 Clinton Street** |
| | | **Hoboken, New Jersey 07030** |
| **Job No:** | | **19-00-290** |

**2.3**     Schedule and Reporting.  Scheduling and reporting requirements of Subcontractor are detailed in the Prime Contract and/or the attached **Schedule**, which is incorporated by reference into this Agreement.

**ARTICLE 3**
CONTRACT SUM

**3.1**     <u>Contract Sum</u>.  Contractor, subject to the other terms and conditions of this Agreement, shall pay Subcontractor in current funds for Subcontractor's full performance of the Agreement the Contract Sum as set forth on page one and if applicable as detailed on **Schedule 3** attached hereto and made part hereof (the "**Contract Sum**").  To the fullest extent permitted by applicable law, Contractor's obligation to pay Subcontractor shall be conditioned upon Contractor's receipt of payment for the same from Owner'.

**ARTICLE 4**
PROGRESS PAYMENTS

**4.1**     <u>Invoicing Procedure</u>.  All Applications for Payment are to be filled out and submitted through www.procore.com.  Applications for Payment may not be accepted via any other method.  Subcontractor will receive an invitation to submit an Application for Payment through www.procore.com via email on the 18th day of every month.  If Subcontractor is going to be billing that month, Subcontractor must respond affirmatively to that invitation.  Subcontractor must provide the Contractor Project Manager a name and valid email address for its Account Receivable/Invoice contact person to be added to the Procore Directory.  Applications for Payment submitted through www.procore.com after the 25th of the month will not be processed until the following month's billing cycle.  Payments generally will be made after Contractor's billing to Owner for Subcontractor's Work and within seven (7) days of Contractor's receipt of payment for that work from Owner, subject to the provisions in ARTICLE 15.  Training on how to prepare the Application for Payment (or "Requisition") in www.procore.com is offered free through videos available on https://support.procore.com/.  The link to submit a Requisition as a Subcontractor is found at https://support.procore.com/products/online/user-guide/project-level/commitments/tutorials/submit-a-requisition-as-a-subcontractor

**4.2**     <u>Progress Payments</u>.  Based upon Applications for Payment submitted to Contractor by Subcontractor, required to be submitted through www.procore.com, and Certificates for Payment issued by the Architect/Engineer, Contractor shall make progress payments on account of the Contract Sum to Subcontractor as provided below and elsewhere in the Contract Documents.  The period covered by each Application for Payment shall be one calendar month ending on the 25th day of the month.  Contractor will withhold retainage as set forth in the Contract Documents.

**4.3**     <u>Late Payments</u>.  Payments due and unpaid under the Agreement by Contractor to Subcontractor shall bear no interest.

**ARTICLE 5**
FINAL PAYMENT

**5.1**     <u>Final Payment</u>.  Subject to the requirements and conditions below, final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by Contractor to Subcontractor when the Work has been fully completed to the satisfaction of Contractor and Owner, the Agreement has been fully performed, a Final Certificate for Payment has been issued by the Architect/Engineer and Owner for the Work and Project, and Contractor has received its final payment from Owner, including retainage.  A lien waiver must be returned before final payment is released, as set forth in Paragraph 15.1.

**ARTICLE 6**
ENUMERATION OF CONTRACT DOCUMENTS

**6.1**     <u>Contract Documents</u>.  The "**Contract Documents**" consist of this Agreement, any documents listed in any Schedules to this Agreement, Contractor's Subcontractor/Vendor Handbook (the "**Handbook**"), the Prime Contract, and any other documents referenced in, incorporated into, or otherwise made a part of this Agreement or the Prime Contract, including but not limited to Project bid requirements, general conditions, special conditions, supplementary conditions, drawings, specifications, addenda, and change orders.  In the event of any conflict, inconsistency, or ambiguity between the terms of this

Subcontractor
Initials     _JD_

3

**Geis Construction South, LLC.**



|  |  |  |
|---|---|---|
| **P.O. No.:** | | **1900290-002** |
| **Project Name:** | | **Wonder Lofts** |
| **Address:** | | **720 Clinton Street** |
| | | **Hoboken, New Jersey 07030** |
| **Job No:** | | **19-00-290** |

Agreement and any of the other Contract Documents, including the Handbook, or within this Agreement or any of the Contract Documents, then the provision imposing the higher quality, greater quantity, or greater duty or obligation on Subcontractor, or granting greater rights or remedies to Contractor or Owner, shall govern.

Subcontractor's quote(s), proposals, bids, assumptions, and qualifications shall not be considered part of this Agreement unless specifically identified herein.  In the event that a proposal or bid of Subcontractor is referenced in this Agreement, it is understood and agreed that the terms of this Agreement shall in all instances control in the event of any discrepancy, inconsistency, or ambiguity.'

**6.2**     Additional Provisions.  **Schedule 5** attached hereto and made part hereof contains additional terms and conditions of the Agreement.

## ARTICLE 7
### GENERAL PROVISIONS

**7.1**     The intent of the Contract Documents is to include all permits, items, labor, materials, equipment, and services necessary for the proper execution and completion of the Work by Subcontractor.  The Contract Documents are complementary and what is required by one shall be as binding as if required by all.  Performance by Subcontractor shall be required to the extent consistent with the Contract Documents and reasonably inferable from them as being necessary to produce the intended results.  It is understood and agreed that the Contract Documents are incorporated into this Agreement by reference, and that Subcontractor hereby assumes toward Contractor all the responsibilities, duties, and obligations that Contractor assumes toward Owner under the Contract Documents with regard to the Project and the scope of Work that is the subject of this Agreement.  Contractor, in addition to all rights of Contractor in this Agreement or at law, shall have against Subcontractor all rights and remedies of Owner against Contractor.

**7.2**     This Agreement and the Contract Documents shall not be construed to create a contractual relationship of any kind (1) between Owner and Subcontractor, (2) between Contractor any Lower Tier of Subcontractor, or (3) between any persons or entities other than the Contractor and Subcontractor.  Subcontractor covenants and agrees to make no claims against Owner or the Architect/Engineer concerning the Project except as provided in this Agreement and, in such instances, only with Contractor's prior written consent.  Subcontractor further releases any and all extra-contractual claims against Contractor, Owner, and Architect/Engineer, it being understood and agreed that all of Subcontractor's claims and rights shall be governed exclusively by this Agreement.

**7.3**     Execution of the Agreement or commencement or supply of Work by Subcontractor is a representation that Subcontractor has visited the Project site and become familiar with the physical and other conditions under which the Work is to be performed, including the local markets, labor pool, site conditions, restrictions affecting the Work, and other matters potentially affecting Subcontractor's performance.

## ARTICLE 8
### CONTRACTOR

**8.1**     Contractor, upon Subcontractor's written request, shall furnish to Subcontractor surveys, layouts, and other documentation in Contractor's possession, but Subcontractor shall be solely responsible for verifying the accuracy and completeness of the information and documentation to the extent that it affects Subcontractor's Work.

**8.2**     Subcontractor is responsible for all fees and permits as noted above.  Contractor shall secure and pay for all other necessary approvals, easements, assessments, and charges required to complete the Work, the construction, use, or occupancy of permanent structures or permanent changes in existing facilities, but only to the extent not applicable to the Work.

## ARTICLE 9
### SUBCONTRACTOR

**9.1**     Subcontractor shall supervise and direct the Work using the highest level of skill and attention.  Subcontractor shall be solely responsible for and have control over construction means, methods, techniques, sequences and procedures and for

4

Subcontractor
Initials   _JD_

**Geis Construction South, LLC.**



|                |                          |
|----------------|--------------------------|
| P.O. No.:      | 1900290-002              |
| Project Name:  | Wonder Lofts             |
| Address:       | 720 Clinton Street       |
|                | Hoboken, New Jersey 07030|
| Job No:        | 19-00-290                |

coordinating all portions of the Work under this Agreement, unless the Contract Documents give other specific instructions concerning these matters.

**9.2**     Unless otherwise provided in the Contract Documents, Subcontractor shall provide and pay, as bills are received by Subcontractor, for labor, materials, equipment, tools, construction equipment and machinery, water, heat, utilities, hoisting, transportation, and other facilities and services necessary for the proper execution and completion of the Work, whether temporary or permanent and whether or not incorporated or to be incorporated in the Work, to prevent Subcontractor's Lower Tiers from placing a lien against the Project.

**9.3**     Subcontractor represents and warrants to Contractor that it and all of its employees, agents, and Lower Tiers, as applicable, are duly licensed, authorized, and qualified to perform the Work in the jurisdiction(s) where the Project is located and in which a license, authorization, or qualification is required for their performance in connection with the Project and transaction of business of the character transacted by them.   Subcontractor shall comply with any and all rules and regulations, statutes and ordinances, whether state, federal, or local, applicable to the Work and the Project, whether required by the Contract Documents or otherwise, including without limitation equal employment opportunity, prevailing wage, occupational safety and health, minority and disadvantaged business, and other requirements.

**9.4**     Subcontractor shall enforce strict discipline and good order among Subcontractor's employees and other persons carrying out the Work, and in that regard:  (i) Subcontractor shall not permit employment of unfit persons or persons not skilled in tasks assigned to them; (ii) Subcontractor shall require its employees, agents, and Lower Tiers at the Project to wear and use safety and health equipment, to work in harmony with others working at the Premises, and to comply with Owner's and Contractor's regulations, and the rules and regulations imposed by law covering working conditions; (iii) Contractor shall have the right to furnish any safety or health equipment that Subcontractor fails to provide promptly, and Subcontractor shall upon demand pay Contractor's cost thereof plus twenty percent (20%) for Contractor's overhead and other indirect costs; (iv) Subcontractor shall indemnify Contractor and Owner for fines, penalties, corrective measures, and damages, and shall reimburse Contractor and Owner for costs and expenses, including attorney fees, that result from acts or omissions by Subcontractor, its Lower Tiers, or their respective employees and agents in failing to complying with such safety rules and regulations; (v) Subcontractor, immediately after the occurrence of any accident involving injury to or death of any person, or damage to the Project or any property at the Project or in any way relating to the Work, shall deliver to Contractor's Project Manager and Safety Director a written report thereof, which may be a copy of any accident report delivered to its insurance carrier; (vi) Contractor mandates a drug-free and alcohol-free Project, and Subcontractor shall comply with these requirements, and Subcontractor shall take appropriate precautions (including all requirements applicable to the Project under controlling law) and implement reasonable measures to ensure compliance by Subcontractor's employees and Lower Tiers; (vii) Subcontractor shall furnish to Contractor a copy of Subcontractor's safety plans, including, without limitation, plans for general safety, MSDS, Right to Know, and Drug and Alcohol Abuse; and (viii) Subcontractor and its employees and independent contractors to attend all jobsite Safety Meetings as Contractor may request from time to time.  Contractor shall have the right to demand removal or replacement of any employee of Subcontractor or its Lower Tiers that are working on the Project in Contractor's sole discretion.

**9.5**     Subcontractor warrants to Contractor that materials and equipment furnished under this Agreement will be of good quality and new unless otherwise required or permitted by the Contract Documents, that the Work will be free from defects not inherent in the quality required or permitted, and that the Work will strictly conform to the requirements of the Contract Documents.  Work not conforming to these requirements, including substitutions not properly approved and authorized, shall be considered defective.  If required by the Architect/Engineer, Owner, or Contractor, Subcontractor shall furnish satisfactory evidence as to the kind and quality of materials and equipment.  Manufacturer's warranties on materials and equipment purchased and installed by Subcontractor shall be assigned by Subcontractor to Contractor and Owner for their benefit prior to final payment.

**9.6**     Unless otherwise provided in the Contract Documents, Subcontractor shall pay sales, consumer, use, and other similar taxes which are legally enacted when bids are received or negotiations concluded, whether or not yet effective or merely scheduled to go into effect, and shall secure and pay for the building permit and other permits and governmental fees, licenses and inspections necessary for proper execution and completion of the Work.

Subcontractor
Initials    _JD_

5

**Geis Construction South, LLC.**



|  |  |
|---|---|
| **P.O. No.:** | **1900290-002** |
| **Project Name:** | **Wonder Lofts** |
| **Address:** | **720 Clinton Street** |
|  | **Hoboken, New Jersey 07030** |
| **Job No:** | **19-00-290** |

**9.7**     Subcontractor shall comply with and give notices required by laws, ordinances, rules, regulations, and lawful orders of public authorities bearing on performance of the Work.  Subcontractor shall promptly notify the Architect/Engineer and Contractor in writing, within two (2) days of discovery, if the Drawings and Specifications are at variance therewith, or if Subcontractor discovers or reasonably should have discovered other errors or omissions or other problems, affecting the Work or the Project.

**9.8**     Subcontractor shall be responsible to Contractor for the acts and omissions of Subcontractor's employees and Lower Tiers, and their respective agents and employees, and other persons performing portions of the Work under a contract with the Subcontractor or its Lower Tiers.

**9.9**     It is understood and agreed that the relationship of Contractor to Subcontractor shall be that of independent contractors.  Nothing contained herein or inferable here from shall be deemed or construed to (a) make Subcontractor the agent, servant, or employee of Contractor or (b) create any partnership, joint venture, or other association between Subcontractor and Contractor.  Any direction or instruction by Contractor in respect of the Work shall relate to the results Contractor desires to obtain from the Work and shall in no way affect Subcontractor's independent contractor status as described herein.  Subcontractor shall prevent any of its employees from representing himself or herself to be an employee of Contractor.  Subcontractor shall be solely responsible for its sequences, means, methods and techniques, and those of its Lower Tiers.

**9.10**    Subcontractor shall review, approve, and submit to Contractor and Architect/Engineer complete and accurate Shop Drawings, Product Data, Samples, and similar submittals required by the Contract Documents with reasonable promptness, so as not to delay progress of the Work.  The Work shall be in accordance only with approved submittals, which shall be evidenced exclusively by Contractor's stamp on such documents.  When professional certification of performance criteria of materials, systems, or equipment is required of Subcontractor by the Contract Documents, the Architect/Engineer and Contractor shall be entitled to rely upon the accuracy and completeness of such certifications.  All submittals, shop drawings, and related materials shall strictly comply with project requirements.

**9.11**    Subcontractor shall provide Contractor and Architect/Engineer with "Record Drawings" prior to final payment.

**9.12**    Subcontractor shall, under the direction of Contractor, furnish three complete sets of manuals, containing the manufacturer's instructions for maintenance and operation of each item of equipment and apparatus furnished under the Contract Documents and any additional data specifically requested under the various sections of the Specifications for each division of the Work.  The manuals shall be arranged in proper order, indexed, and suitably bound.

**9.13**    All plans, drawings, reports, manuals, specifications, test data, or other documents or information prepared by Subcontractor pursuant to this Agreement shall be furnished to Contractor and shall be the joint property of Contractor and Subcontractor.  Contractor shall have the unlimited right to publish, transfer, sell, license, and use all or any part of such documents or information without additional payment to Subcontractor.  Subcontractor grants Contractor an irrevocable, royalty-free license for such purposes.

**9.14**    During the progress of the Work, Subcontractor shall keep the premises and surrounding area free from accumulation of waste materials or rubbish caused by operations under the Agreement.  At completion of the Work, Subcontractor shall remove from and about the Project waste materials, rubbish, and Subcontractor's tools, construction equipment, machinery, and surplus materials.

**9.15**    Subcontractor shall, at all times, provide Contractor and Architect/Engineer access to the Work wherever located.

**9.16**    Subcontractor shall pay all royalties and license fees relating to its Work, shall defend suits or claims of infringement by the Work of a third party's intellectual property rights, and shall indemnify, defend, and hold Contractor harmless from loss on account thereof, but shall not be responsible for such defense or loss when a particular design, process, or product of a particular manufacturer or manufacturers is required by the Contract Documents, unless Subcontractor has reason to believe that there is an infringement of patent and fails to notify Contractor in writing prior to furnishing the Work.

**9.17**    To the fullest extent permitted by law, Subcontractor shall defend, indemnify, and hold harmless Contractor, Architect/Engineer, Owner, and the Owner's lessees, and each of them, and their respective agents and employees of any of

<span style="float:right">Subcontractor</span>
<span style="float:right">Initials</span>

6

**Geis Construction South, LLC.**



| | |
|---|---|
| **P.O. No.:** | **1900290-002** |
| **Project Name:** | **Wonder Lofts** |
| **Address:** | **720 Clinton Street** |
| | **Hoboken, New Jersey 07030** |
| **Job No:** | **19-00-290** |

them from and against claims, liens, damages, losses and expenses (including but not limited to attorneys' fees and expert and consulting costs), penalties, fines, assessments, arising out of or resulting from performance of the Work, including, without limitation, damage, loss or expense attributable to defective workmanship, non-conforming Work, non-conforming submittals, OSHA fines and assessments, bodily injury, sickness, disease or death, or injury to or destruction of tangible property, including loss of use resulting there from, but only to the extent caused in whole or in part by acts or omissions of the Subcontractor, Subcontractor's Lower Tiers, anyone directly or indirectly employed by them or anyone for whose acts they may be liable.  Subcontractor shall defend and indemnify Contractor and hold Contractor harmless from the above-referenced claims regardless of whether such claim is caused or alleged to be caused in part by any joint or concurrent negligent act (either active or passive) or omission by a party indemnified hereunder; provided however, that Subcontractor shall not be obligated to indemnify for those claims to the extent that the same arise from the sole negligence or willful misconduct of Contractor or Contractor's agents, servants or independent contractors who are directly responsible to Contractor, excluding Subcontractor herein,. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity that would otherwise exist as to a party or person described in this Paragraph.  To the fullest extent permitted by applicable law, the Subcontractor shall further indemnify and hold harmless the Contractor, Architect/Engineer and Owner from and against any and all costs, loss and expense, liability, damages, settlements, or claims for damages (including attorneys' fees and costs for defending any action) suffered, incurred or arising from mechanics' liens by Subcontractor, or liens or other payment claims by Subcontractor's laborers, unions, or Lower Tiers.  In the event that a Lower Tier of Subcontractor files a mechanics' lien against the Project or Property of Owner, Subcontractor shall, immediately upon demand of Contractor, promptly cause such lien to be formally released, bonded off in accordance with applicable statutes, or otherwise satisfied.  Until Subcontractor satisfies its obligations under this paragraph, Contractor shall be entitled to retain from any sums due Subcontractor, an amount equal to two (2) times the amount of any such claim, demand, damage, fine, assessment, penalty, lien or other potential liability.  If Subcontractor fails to immediately remove or satisfy a Lower Tier lien, then Contractor has the right to settle, pay, remove, or bond off Subcontractor's Lower Tier lien/claim and deduct that payment and/or all associated administrative costs, attorney's fees, and bond premium from the Subcontract balance.  If the Subcontract balance is deficient then Subcontractor must immediately refund the deficiency to Contractor.

**9.18**    In claims against any person or entity indemnified under Paragraph 9.17 by an employee of the Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts Subcontractor may be liable, the indemnification obligation shall not be limited by any limitation on amount or type of damages, compensation or benefits payable by or for the Subcontractor under workers' or workmen's compensation acts, disability benefit acts or other employee benefit acts, such immunity and related defenses being hereby expressly waived.  All such immunity and/or limitations of liability, including without limitation any such immunity or liability limitation defenses under Ohio Constitution Article 2, Section 35 and Ohio Revised Code, Workers' Compensation Act section 4123.74, are hereby waived by Subcontractor.

### ARTICLE 10
### ADMINISTRATION OF THE AGREEMENT

**10.1**    Contractor will provide administration of the Agreement (1) during construction, (2) until final payment is due, and (3) with Subcontractor's concurrence, from time to time during the correction period described in Paragraph 18.1.

**10.2**    Notwithstanding anything in this Agreement or the Contract Documents to the contrary, Contractor reserves the right to permit the Architect to handle review and certification of Applications for Payment and inspections (including, without limitation, for purposes of establishing Substantial Completion and Final Completion) directly.  Contractor shall be entitled, without limitation, to all the Architect/Engineer's rights under the Contract Documents to delay or refuse to certify Applications for Payment or Certificates for Payment or to determine whether and to what extent the Work or any designated portion thereof has achieved Substantial Completion or Final Completion.

**10.3**    Contractor shall have the unrestricted right to visit the Project site and access the Work (a) at all reasonable times to assess the progress of the Work, and (b) at any time, including without limitation on weekends or after hours, as may be necessary in the case of an emergency, work stoppage, or at any other time(s) that Contractor, in its sole discretion, requires such access.  Without limiting the foregoing, Contractor will visit the Project site at intervals appropriate to the stage of

Subcontractor
Initials   _JD_

7

**Geis Construction South, LLC.**



construction to become generally familiar with the progress and quality of the completed Work and to determine in general if the Work is being performed in a manner indicating that the Work, when completed, will be in accordance with the Contract Documents. However, Contractor will not be required to make exhaustive or continuous on-site inspections to check quality or quantity of the Work.

10.4     Contractor will not have control over or charge of and will not be responsible for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work, since these are solely Subcontractor's responsibility as provided in this Agreement. The Architect/Engineer will not be responsible to Subcontractor for Subcontractor's failure to carry out the Work in accordance with the Contract Documents. Subcontractor shall not be entitled to rely on Contractor's inspections to insure compliance with this Agreement. Subcontractor shall be solely responsible for such compliance and quality control.

10.5     Contractor will interpret and decide matters concerning performance under any requirements of the Agreement and the Contract Documents on written request of Subcontractor. All decisions of the Architect/Engineer that are final and binding on Contractor shall equally bind Subcontractor.

10.6     Contractor will have authority to reject Work that does not conform to the Contract Documents.

10.7     Contractor will review and approve or take other appropriate action upon Subcontractor's submittals such as Shop Drawings, Product Data and Samples, but only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents.

10.8     In Contractor's sole discretion, any and all claims or disputes between Contractor and Subcontractor arising out or relating to this Agreement or the Contract Documents, or the breach thereof, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect, unless the parties mutually agree otherwise. Notice of the demand for arbitration shall be filed in writing with the other party to this Agreement and with the American Arbitration Association and shall be made within a reasonable time after the dispute has arisen. The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof. Contractor, at its sole option, shall have the right to join in such proceedings any person or entity that is substantially involved in a common question of fact or law, and Subcontractor hereby waives the right to challenge Contractor's decisions relative to joinder. This agreement to arbitrate and any other written agreement to arbitrate referred to herein shall be specifically enforceable under applicable law in any court having jurisdiction thereof. Any arbitration or other dispute resolution shall be exclusively venued in Cleveland, Ohio unless Contractor, in its sole discretion, elects another venue.

10.9     This Project will utilize Procore's (www.procore.com) project management and collaboration system for all Project documentation. Subcontractor will be invited to, and is required to create a Procore username (email) and password if it does not already have one. Subcontractor must obtain drawings, sketches, RFIs, the Project Schedule (and any updates thereto), meeting minutes, coordination drawings, change information, etc. by using Procore. Contractor may notify Subcontractor as relevant items are added or revised; however, it will be the responsibility of Subcontractor to regularly check and review documents as they are added or updated. If Subcontractor does not promptly notify Contractor of any objection to an update to the Project Schedule, Subcontractor shall be deemed to have agreed to such updated Project Schedule. Applicable team members of Subcontractor are required to complete a free, one-hour subcontractor training certification course located at http://learn.procore.com/procore-certification-subcontractor within (2) two weeks following execution of this Agreement. There will be no cost to Subcontractor for use of Procore.

It is mandatory that Subcontractor provide mobile iOS or Android devices with the Procore App installed to on-site staff to provide real-time access to current posted drawings, specifications, RFIs, submittals, the Project Schedule, Change Orders, Commitments, project documents, as well as any deficient observations or punch list items. Providing mobile access will improve communication, efficiency, and productivity for all parties.

Failure to use Procore is a breach of this Agreement, and Subcontractor agrees to reimburse Contractor $65 an hour for administrative help and any direct costs (equipment purchases for subcontractor's benefit) Contractor incurs due to Subcontractor's failure to use Procore. Contractor may deduct these costs from amounts due Subcontractor.

Subcontractor
Initials                    _JD_

8

**Geis Construction South, LLC.**



|  | P.O. No.: | 1900290-002 |
| --- | --- | --- |
|  | Project Name: | Wonder Lofts |
|  | Address: | 720 Clinton Street |
|  |  | Hoboken, New Jersey 07030 |
|  | Job No: | 19-00-290 |

## ARTICLE 11
### SUBCONTRACTS

**11.1** Subcontractor, as soon as practicable after award of the Agreement, shall furnish in writing to Contractor the names of the Lower Tier subcontractors for each of the principal portions of the Work. Proposed Lower Tiers shall be established, reputable firms of recognized standing with a record of successful and satisfactory past performance with the type of work and/or items proposed to be provided or furnished by them. Subcontractor shall not contract with any lower-tier subcontractor to whom Contractor, Owner, or Architect/Engineer has made reasonable and timely objection. Contracts between Subcontractor and any Lower Tier shall (a) require each Lower Tier, to the extent of the Work to be performed by the Lower Tier, to be bound to Subcontractor by the terms of this Agreement and the Contract Documents and to assume toward Subcontractor all the obligations and responsibilities that Subcontractor, by the Contract Documents and this Agreement, assumes toward Contractor, and (2) to the maximum extent permitted by applicable law, prohibit the filing of mechanic's liens against the Project and property of Owner.

## ARTICLE 12
### CONSTRUCTION BY CONTRACTOR OR
### BY SEPARATE SUBCONTRACTORS

**12.1** Contractor reserves the right to perform construction or operations related to the Project with Contractor's own forces, and to award separate subcontracts in connection with other portions of the Project or other construction or operations on the Project site under conditions of the contract substantially similar to these, including those portions related to insurance and waiver of subrogation. If Subcontractor claims that delay, hindrance, interference, or additional cost is involved because of such action by Contractor, Subcontractor shall make such claim in writing within two (2) days of the occurrence giving rise to the claim, as provided herein or in the Contract Documents, otherwise Subcontractor waives such claim. Subcontractor acknowledges and agrees that Subcontractor's recovery of damages on account of any claims for delay, disruption, hindrance, interference, extra work, or other impact costs or damages shall be limited to the amounts actually paid by Owner or other subcontractor to Contractor as a result thereof, all other rights and claims being hereby expressly waived.

**12.2** Subcontractor shall afford Contractor and separate subcontractors of Contractor reasonable opportunity for the introduction and storage of their materials and equipment and performance of their activities, and shall connect and coordinate Subcontractor's construction and operations with theirs as required by the Contract Documents and Project Schedule.

**12.3** Costs caused by delays, hindrance, interference, improperly timed activities, or defective construction shall be borne by Subcontractor.

## ARTICLE 13
### CHANGES IN THE WORK / CLAIMS

**13.1** A Change Order is a written order signed by Contractor and Subcontractor authorizing a change in the Work and/or adjustment in the Contract Sum or Substantial Completion Date. The Contract Sum and Substantial Completion Date may be changed only by a signed Change Order.

**13.2** Contractor may order changes in the Work within the general scope of the Agreement consisting of additions, deletions, or other revisions, and the Contract Sum and Substantial Completion Date may be adjusted accordingly so long as Subcontractor notifies Contractor in writing within two (2) days that the proposed change order will require an adjustment to the Contract Sum or Substantial Completion Date and provides Contractor with information necessary to support Subcontractor's request, and if Contractor agrees with Subcontractor's request and then memorializes the same in the written Change Order. Such changes in the Work shall be authorized by Change Order prior to making the change or performing additional work, and shall be performed under applicable conditions of the Contract Documents. If after receipt of written notice from Subcontractor, there is the absence of complete or partial agreement relative to the adjustment of the Contract Sum or the Substantial Completion Date, the Contractor may direct the changed work to proceed by way of a written Construction Change Directive, which will advise Subcontractor of Contractor's selected method for pricing the change in accordance with this ARTICLE 13.

Subcontractor
Initials _JD_

9

**Geis Construction South, LLC.**



|  |  |
|---|---|
| P.O. No.: | 1900290-002 |
| Project Name: | Wonder Lofts |
| Address: | 720 Clinton Street |
|  | Hoboken, New Jersey 07030 |
| Job No: | 19-00-290 |

13.3    Subcontractor's failure to obtain a signed Change Order or Construction Change Directive prior to commencing or completing any extra work, or incurring any additional cost shall conclusively constitute a waiver of any and all claims for additional compensation or extension of time.  The cost of any work, or the extension of time, reflected in any Change Order or Construction Change Directive that is signed by Contractor and Subcontractor shall represent a full accord and satisfaction of any and all claims for additional time or compensation relating directly or indirectly to the work described therein, including ripple effect or cumulative impact costs.

13.4    The cost or credit to Contractor resulting from any change in the Work shall be in accordance with the Contract Documents, or if not identified in the Contract Documents, determined as follows:

(a)    The cost of such changed Work shall be determined on the basis of reasonable expenditures and savings of those performing the Work attributable to the change, including the expenditures for design services and revisions to the Contract Documents.  In case of an increase in the Contract Sum, Subcontractor shall be entitled to a maximum ten percent (10%) mark-up on cost as Subcontractor's fee for its overhead and profit.  Subcontractor shall keep and present an itemized accounting together with appropriate supporting data for inclusion in a Change Order.  In case of a decrease in the Contract Sum, Contractor shall be entitled to ten percent (10%) increase over Subcontractor's cost as reimbursement for Subcontractor's savings on overhead and profit.  Unless otherwise provided in the Contract Documents, cost shall be limited to the following:  cost of materials, including sales tax and cost of delivery; cost of labor, including social security, old age and unemployment insurance, and fringe benefits required by agreement or custom; workers' or workmen's compensation insurance; bond premiums; rental value of equipment and machinery; additional costs of supervision and field office personnel directly attributable to the change; and fees paid to design professionals, engineers, and other professionals; or

(b)    The unit costs, if any, contained in the Contract Documents or negotiated between the parties and confirmed in writing; or

(c)    An agreed upon lump sum price; or

(d)    With respect to additional design services provided by Subcontractor's own employees and personnel, Subcontractor agrees to charge, and Contractor agrees to pay, for such services according to the rate schedule attached as Exhibit E, without additional mark-up for overhead and profit.  It is understood and agreed that the hourly rates in Exhibit E are inclusive of all overhead and profit for such additional hourly services.

13.5    Pending final agreement on the total cost of a Construction Change Directive, amounts not in dispute for such changes in the Work shall be included in applications for payment accompanied by a Change Order indicating the parties' agreement with all or part of the costs.

13.6    If concealed or unknown conditions of an unusual nature affect the performance of the Work or are encountered above or below ground or in an existing structure other than the Work, which conditions are not ordinarily found to exist or which differ materially from those generally recognized as inherent in Work of the character provided for in the Contract Documents, then written notice by the observing party shall be given promptly to the other party and, if possible, before conditions are disturbed, and in no event later than forty eight (48) hours after first observance of the conditions.  To the extent permitted by the Contract Documents, the Contract Sum may be equitably adjusted for such concealed or unknown conditions by Change Order upon claim by either party made in writing within forty eight (48) hours after the claimant becomes aware of the conditions.  In the event that the Contract Documents transfer the risk of differing or changed conditions to Contractor, and Contractor has no recourse against Owner with regard thereto, then Subcontractor hereby assumes the risk of differing or changed conditions and waives such claims against Contractor.

13.7    To the maximum extent permitted by applicable law, Subcontractor agrees that it shall not be entitled to recover any damages from Contractor on account of claims for additional compensation of whatever kind or description unless and until Contractor recovers and collects such damages from Owner, it being agreed that such recovery and collection from Owner is an absolute condition precedent to Subcontractor's right of recovery from Contractor.  Contractor shall act as a conduit for

Subcontractor
Initials

10



| | | |
|---|---|---|
| P.O. No.: | | 1900290-002 |
| Project Name: | | Wonder Lofts |
| Address: | | 720 Clinton Street |
| | | Hoboken, New Jersey 07030 |
| Job No: | | 19-00-290 |

Subcontractor's claims, and Subcontractor shall be obligated to compensate Contractor for all costs and expenses, including legal and consulting fees and administrative expenses, that Contractor incurs to present Subcontractor's claims to Owner for consideration or payment or to arbitrate, mediate, or litigate such claims. Subcontractor shall furnish all required testimony and documentation to support its claims. Contractor assumes no fiduciary responsibility for prosecution and recovery on Subcontractor's behalf. In the event that Contractor recovers and collects damages from Owner on account of Subcontractor's claims through negotiation, litigation, mediation, or arbitration, then Contractor shall tender to Subcontractor the amount actually recovered and collected less the cost of prosecution and administration, and Subcontractor shall accept that amount as payment in full for its claims and damages releasing Contractor from any additional liability or damages on the claims. If the claim is denied or the amount claimed or recovered is not collected, Subcontractor shall release Contractor from any and all liability for the claims and damages.

13.8    It is understood and agreed that Subcontractor shall present all claims in strict accordance with the time limits and documentation requirements in this Agreement and in the Contract Documents, so as to permit Contractor to mitigate damages and advise the Owner. To the extent not covered elsewhere in the Agreement, all claims or requests relating to the Contract Sum or schedule of the Work must be made in writing with supporting detail and documentation within four (4) days of Subcontractor's discovery of the claim, or when Subcontractor otherwise should have discovered the claim with the exercise of reasonable diligence, whichever is earlier. Subcontractor's failure to strictly comply with this provision, and similar provisions in this Agreement and the Contract Documents, shall be conclusively presumed to constitute a waiver of Subcontractor's rights and claim.

13.9    To the extent any notice is required under this Agreement, Subcontractor shall give the Project Manager and Contractor President such written notice, of any and all claims related to the Work, with supporting detail and documentation, within the time required but no later than four (4) days of the occurrence of the event for which the claim is made; otherwise, such claims shall be deemed waived.

**ARTICLE 14**
TIME

14.1    Subcontractor shall provide services as expeditiously as is consistent with the standards of skill and care set forth in this Agreement applicable to the Work, and the orderly progress of design and construction.

14.2    Time limits stated in the Contract Documents are of the essence of this Agreement. The Work to be performed under this Agreement shall commence upon execution of this Agreement and, subject to authorized modifications, Substantial Completion shall be achieved on or before the Substantial Completion Date. Dates set forth on the Project Schedule shall not be modified without Contractor's prior written approval.

14.3    If Subcontractor fails to achieve Substantial Completion on or before the Substantial Completion Date, Subcontractor shall pay to Contractor (by direct payment or offset from the Contract Sum, at Contractor's sole option) the amount of $1,000.00 per day for each day that the Work is not substantially completed after the Substantial Completion Date, or any Milestone Date. Contractor and Subcontractor agree that the foregoing liquidated damages are reasonable and bear a relationship to the damages that Contractor might sustain for unanticipated Project-related administrative costs on account of Subcontractor's failure to timely complete the Work. The parties agree that the liquidated damages are not intended to be, and in no event shall be construed to be, a penalty, but are intended as fixed damages agreed to by the parties as settlement of damages in advance in the event of Subcontractor's failure to timely complete the Work. The foregoing liquidated damages are intended only to cover the Project-related administrative damages suffered by the Contractor as a result of delay and shall not be deemed to cover the cost of completion of the Work, damages resulting from defective Work, damages suffered by others who then seek to recover damages from Contractor (for example, liquidated damages of Owner, or delay claims of other contractors or subcontractors), and defense costs thereof or any other damages available to Contractor at law, in equity, or under the Agreement (the "delay claims"). All other delay claims of Contractor are reserved and will be resolved in accordance with the provisions in this Agreement.

14.4    If Subcontractor is delayed in the progress of the Project by acts or neglect of Contractor, Contractor's employees, changes ordered in the Work not caused by the fault of Subcontractor, fire, unusual and adverse weather conditions,

11

Subcontractor
Initials

**Geis Construction South, LLC.**



|  | P.O. No.: | 1900290-002 |
| --- | --- | --- |
|  | Project Name: | Wonder Lofts |
|  | Address: | 720 Clinton Street |
|  |  | Hoboken, New Jersey 07030 |
|  | Job No: | 19-00-290 |

unavoidable casualties, delay authorized by Contractor, code or building/zoning/occupancy permit-related delays beyond Subcontractor's reasonable control, or another cause that Contractor agrees is justifiable, or by any other reason beyond the reasonable control of Subcontractor, then the Substantial Completion Date may be equitably extended by Change Order; provided that (a) Subcontractor gives Contractor timely notice of the delay, (b) the Owner permits the Substantial Completion Date to be extended, and (c) the delay was to critical path Work.

**14.5**     Subcontractor expressly waives its right to recover extended home office overhead damages, extended field office overhead damages, additional supervision costs, additional equipment costs, or any other indirect expenses arising from or relating to a delay, disruption, suspension, hindrance or interference for which Contractor or Owner is responsible.  In the event of an excusable delay, suspension or disruption of Subcontractor's work, Subcontractor's claim for additional compensation shall be limited only to additional costs associated with escalation of material costs or escalation of hourly labor costs, and Subcontractor agrees to accept such damages as its sole remedy.

**ARTICLE 15**
**PAYMENTS AND COMPLETION**

**15.1**     Payments shall be made as provided in ARTICLE 4 and ARTICLE 5 of this Agreement.  Concurrent with the submittal of each Application for Payment, Subcontractor shall furnish Affidavits and Waivers of Lien by Subcontractor and all of Subcontractor's Lower Tiers evidencing that all wages for labor and all invoices for material or services that were included in the previous Application for Payment for which payment was made, have been paid in full.  Furnishing of such Affidavits and Waivers of Lien, in the form approved by Contractor, shall be a condition to payment.  Unconditional Lien Waivers from Subcontractor and all lower tiers shall be submitted with Subcontractor's Application for Final Payment.

**15.2**     Payments may be withheld on account of (a) defective Work not remedied, (b) claims filed by third parties, (c) failure of Subcontractor to make payments properly to its Lower Tiers, (d) reasonable evidence that the Work cannot be completed for the unpaid balance of the Contract Sum, (e) damage to Contractor, Owner, or another subcontractor of Contractor, (f) reasonable evidence that the Work will not be completed within the Contract Time and that the unpaid balance would not be adequate to cover actual or liquidated damages for the anticipated delay, (g) failure to carry out the Work in accordance with the Agreement or the Contract Documents, or (h) failure to carry and maintain the insurance coverage required by the Agreement.  Contractor may also nullify a previously authorized payment in whole or in part, to such extent as is necessary, in Contractor's opinion, to protect Contractor or Owner from loss for which Subcontractor is responsible.

**15.3**     When Contractor agrees that the Work is substantially complete, Contractor will, upon Subcontractor's written request and in Contractor's discretion, issue a Certificate of Substantial Completion.  If a certificate of occupancy is required by law in order for the Owner to lawfully occupy the Project, then the Work shall not be deemed substantially complete unless and until such certificate of occupancy is issued to the extent applicable to Subcontractor's Work.

**15.4**     Final payment shall not become due until Subcontractor has delivered to the Contractor all Warranties, Operating & Maintenance Manuals, test data and other close-out documents applicable to the Work, a complete release of all liens arising out of this Agreement or receipts and Waivers in full covering all labor, materials and equipment for which a lien could be filed, or a bond satisfactory to Contractor to indemnify Contractor and Owner against such lien.  If such lien remains unsatisfied after payments are made, Subcontractor shall refund to Contractor all money that Contractor may be compelled to pay in discharging such lien, including all costs, bond premiums, and reasonable attorneys' fees.

**15.5**     The making of final payment by Contractor shall not constitute a waiver of any rights or claims Contractor may have against Subcontractor, including those arising from:

(a)     liens, claims, security interests or encumbrances arising out of the Agreement and unsettled;

(b)     failure of the Work to comply with the requirements of the Agreement and the Contract Documents; or

(c)     terms of special warranties required by the Contract Documents.

12

Subcontractor
Initials   *JD*

**Geis Construction South, LLC.**



| | P.O. No.: | **1900290-002** |
|---|---|---|
| | Project Name: | **Wonder Lofts** |
| | Address: | **720 Clinton Street** |
| | | **Hoboken, New Jersey 07030** |
| | Job No: | **19-00-290** |

**15.6** Acceptance of final payment by Subcontractor shall constitute a waiver of claims by Subcontractor of all claims, demands and damages of Subcontractor, except those previously made in writing and identified by Subcontractor as unsettled at the time of submission of the final Application for Payment.

**15.7** Subcontractor acknowledges and agrees that, any payment that is allegedly due from Contractor to Subcontractor, whether for the original scope of Work or for any extra work or impact or schedule damage claims, are expressly conditioned upon Contractor's receipt of payment from Owner.  To the maximum extent permitted by applicable law, Contractor's obligation to pay Subcontractor expressly is contingent and conditioned on Contractor's actual receipt of payment from Owner for Subcontractor's Work or claims.  Subcontractor voluntarily assumes the risks associated with the creditworthiness of Owner, or Contractor's ability to actually recover damages from Owner for any reason.

## ARTICLE 16
### PROTECTION OF PERSONS AND PROPERTY

**16.1** Subcontractor shall be responsible for initiating, maintaining, and supervising all safety precautions and programs in connection with the performance of the Work required by this Agreement.  Subcontractor shall take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury, or loss to:

    (a)    employees engaged in the Work and other persons who may be affected thereby;

    (b)    the Work and materials and equipment to be incorporated therein; and

    (c)    other property at the Project site or adjacent thereto.

Subcontractor shall give notices and comply with applicable laws, ordinances, rules, regulations, and lawful orders of public authorities bearing on safety of persons and property and their protection from damage, injury, or loss.  Subcontractor shall promptly remedy damage and loss to property at the site caused in whole or in part by Subcontractor, a Lower Tier, or anyone directly or indirectly employed by any of them, or by anyone for whose acts they may be liable and for which Subcontractor is responsible, except for damage or loss attributable to acts or omissions of Contractor, or by anyone for whose acts Contractor may be liable, and not attributable in any way to any fault or negligence or omission of Subcontractor.  The foregoing obligations of Subcontractor are in addition to Subcontractor's obligations under ARTICLE 9.

## ARTICLE 17
### INSURANCE

**17.1** Subcontractor shall purchase and maintain insurance for protection from claims under workers' or workmen's compensation acts and other employee benefit acts which are applicable, claims for damages because of bodily injury, including death, and from claims for damages, other than to the Work itself, to property that may arise out of or result from Subcontractor's operations under the Agreement, whether such operations be by Subcontractor, a lower-tier of Subcontractor, or anyone directly or indirectly employed by any of them.  This insurance shall be written for not less than limits of liability specified in **Schedule 6** attached hereto and made a part hereof, and shall include contractual liability insurance applicable to Subcontractor's obligations under ARTICLE 9.

**17.2** myCOI REQUIREMENT.  Contractor's insurance is managed and monitored through myCOI.  Subcontractor agrees to utilize myCOI in connection with this Agreement.  Subcontractor or Subcontractor's insurance agent/broker will contact myCOI at support@mycoitracking.com and will timely respond to all emails, notices, and inquiries from myCOI within forty-eight (48) hours of receipt.

**17.3** In addition to the coverage listed in Schedule 6, Subcontractor, at its expense, shall obtain prior to the commencement of the Work and maintain in effect (and furnish Contractor certificates in triplicate or, if requested by Contractor, copies of the policies evidencing that it has in effect), the following insurance coverages and minimum limits with insurance carriers acceptable to Contractor:

    (a)    <u>Commercial General Liability</u> - This insurance shall be written on an occurrence basis with limits not less than $1,000,000.00 per occurrence and $2,000,000.00 annual aggregate.  The policy shall include coverage for Premises/Operations, Independent Contractors, Contractual Liability (sufficient to cover the liability

13

Subcontractor Initials _JD_

**Geis Construction South, LLC.**



|  | P.O. No.: | 1900290-002 |
|---|---|---|
|  | Project Name: | Wonder Lofts |
|  | Address: | 720 Clinton Street |
|  |  | Hoboken, New Jersey 07030 |
|  | Job No: | 19-00-290 |

assumed by the Subcontractor under the Agreement), Property Damage arising out of the "XCU" hazards, Completed Operations, Products Liability, Broad Form Property Damage, and Personal Injury. The Completed Operations coverage shall be maintained for at least three (3) years after the final completion of the Project of which the Work are a part. If the policy contains a general aggregate limitation, then the policy shall be endorsed to provide a $1,000,000.00 specific aggregate for the Work under this Agreement.

(b)    Business Automobile Liability - The policy shall contain limits of not less than $1,000,000.00 Combined Single Limit and include coverage for all Owned, Hired and Non-owned automobiles.

(c)    Excess/Umbrella Liability - The policy(ies) shall be written with limits of not less than $2,000,000.00 Combined Single Limit and shall be endorsed in the same form and manner as the Commercial General Liability, Business Automobile Liability, and Employer's Liability coverages.

(d)    Professional Liability - If Subcontractor is performing design or other professional Services, professional liability (errors and omissions) coverage with a minimum limit of $2,000,000 for each occurrence and $2,000,000 annual aggregate. If the professional liability (errors and omissions) insurance is written on a claims made basis, then such insurance shall have a retroactive date no later than the date of the Agreement and shall include a supplemental extended reporting period provision. Subcontractor shall require each of its subcontractors and consultants providing engineering or architectural services to maintain separate errors and omissions (professional liability) insurance coverages to protect against claims or damages arising out of the performance of their respective services in furtherance of the Agreement.

The policies of insurance and coverage forms shall be in a form acceptable to Contractor and Contractor's agent and shall be written by carriers who are duly licensed to provide coverage in the jurisdiction(s) where the Project is located (and the Work is performed, if different). Each policy (with the exception of any policies for professional liability) shall be properly endorsed to name Contractor as an additional insured for liabilities, claims, or risks arising out of the Work. Subcontractor's insurance policies and coverages also shall be endorsed so as to primary and noncontributory to any liability insurance carried by Contractor for the same risk. No policy of insurance naming Contractor as an additional insured shall contain any exclusion or prohibition against first-party claims or claims by any party named as an additional insured. In lieu of naming Contractor as an additional insured as required herein, and with Contractor's express written consent, Subcontractor, at its sole cost and expense, may purchase an Owner's & Contractor's Protective Liability Policy on behalf of Contractor, all in form and substance acceptable to Contractor. Certificates of Insurance, and copies of policies if requested, acceptable to the Contractor shall be delivered to the Contractor prior to commencement of the Work. Any insurance policies required by this paragraph shall not be canceled or allowed to expire until at least thirty days (30) prior written notice has been given to Contractor. The foregoing insurance coverages are required to remain in full force and effect for a period of three (3) years after final payment by Contractor to Subcontractor, and an additional certificate evidencing continuation of such coverage shall be submitted to the Contractor prior to final payment. Contractor or Subcontractor, as appropriate, shall require from its Lower Tiers by appropriate agreements, written where legally required for validity, similar waivers each in favor of other parties enumerated in this Paragraph.

17.4    Contractor and Subcontractor waive all rights against each other, each other's subcontractors, agents, and employees, and the Owner, Architect/Engineer, Architect/Engineer's consultants, and separate subcontractors described in Article 12, if any, for damages caused by fire or other perils to the extent covered by property insurance applicable to the Project or the Work, if any, except such rights as they may have to the proceeds of such insurance. Subcontractor shall require similar waivers in favor of Contractor and Owner from Subcontractor's Lower Tiers.

### ARTICLE 18
### CORRECTION OF WORK

18.1    Subcontractor shall (a) promptly correct Work rejected by Contractor or known by Subcontractor to be defective or failing to conform to the Contract Documents, whether observed before or after Substantial Completion and whether or not fabricated, installed or completed, and (b) correct Work found to be defective or nonconforming within a period of one (1)

14

Subcontractor
Initials 



|  |  |
|---|---|
| P.O. No.: | 1900290-002 |
| Project Name: | Wonder Lofts |
| Address: | 720 Clinton Street |
|  | Hoboken, New Jersey 07030 |
| Job No: | 19-00-290 |

year from the date of Substantial Completion of the Work or within such longer period provided by controlling law or any applicable warranty in the Contract Documents.

**18.2**    Nothing contained in this Agreement shall be construed to either (a) establish a period of limitation with respect to other obligations of Subcontractor, or (b) otherwise limit or waive any of Contractor's claims, rights, or remedies under this Agreement, at law, or in equity.  Paragraph 18.1 relates only to the specific obligation of Subcontractor to correct the Work and has no relationship to the time within which the obligation to comply with the Contract Documents may be sought to be enforced, nor to the time within which proceedings may be commenced to establish Subcontractor's liability with respect to Subcontractor's obligations other than correction of the Work.

**18.3**    If Subcontractor fails to correct Work that is not in accordance with the requirements of this Agreement and the Contract Documents, fails to adequately staff or man the Project, or fails to carry out Work in accordance with the Contract Documents or Project Schedule, then Contractor, by written order signed personally or by an agent specifically so empowered by Contractor in writing, and without waiving any of its other rights and remedies under this Agreement, at law, or in equity, may order Subcontractor to stop the Work or any portion thereof until the cause for such order has been eliminated, or Contractor may supplement Subcontractor's forces to complete or correct the defective Work and deduct all associated costs, including administrative and legal fees, from the balance of the Subcontract Sum; however, Contractor's right to stop the Work or supplement Subcontractors forces shall not give rise to a duty on the part of the Contractor to exercise the right for benefit of the Subcontractor or other persons or entities.  Contractor shall not be liable for damages on account of such suspension or stop work order.

**18.4**    If Subcontractor defaults or neglects to carry out the Work in accordance with the Contract Documents and fails within forty eight (48) hours after receipt of written notice from Contractor to commence and continue correction of such default or neglect with diligence and promptness, Contractor may, without prejudice to other remedies the Contractor may have, correct such deficiencies.  In such case an appropriate Change Order shall be issued deducting from payments then or thereafter due to Subcontractor the costs of correcting such deficiencies.  If the payments then or thereafter due to Subcontractor are not sufficient to cover the amount of the deduction, Subcontractor shall pay the difference to Contractor.  Such action by Contractor shall be without prejudice to any other rights or remedies of Contractor including, without limitation, those set forth in ARTICLE 9 and ARTICLE 10.

Furthermore, with regard to any loss covered or paid under any policy of insurance of Subcontractor, Subcontractor, for itself and its insurer, waive and release any and all claims of subrogation against Contractor and Contractor's insurer(s).

### ARTICLE 19
### MISCELLANEOUS PROVISIONS

**19.1**    This Agreement shall be governed by the law of the State of Ohio.

**19.2**    Should any workers performing the Work engage in a strike or other work stoppage or cease to work due to picketing or a labor dispute of any kind (except those to which Contractor is a party), Contractor may, at its option and without prejudice to any other remedies it may have, after five (5) days' notice to Subcontractor and opportunity to cure, provide any such labor and deduct the cost thereof from any monies then due or thereafter to become due Subcontractor. Further, Contractor may at its option, without prejudice to any other remedies it may have, after five (5) days' notice to Subcontractor and opportunity to cure, terminate this Agreement pursuant to ARTICLE 20.

**19.3**    (a) All rights granted to Contractor hereunder shall be in addition to, and not in lieu of, Contractor's rights arising by operation of law or in equity; (b) any provisions of this Agreement that are typewritten or handwritten by Contractor and initialed by Contractor shall supersede any contrary or inconsistent printed provisions; (c) no modification of the terms of this Agreement shall be valid unless in writing and signed by Contractor; (d) should any of the provisions of this Agreement be declared by a court of competent jurisdiction or any arbitrator to be invalid, such decision shall not affect the validity of any remaining provisions; (e) all of the terms herein shall apply to additional quantities of merchandise or services or work ordered by Contractor except to the extent covered by a new Agreement; (f) the failure of Contractor to enforce at any time or for any period of time any of the provisions hereof shall not be construed to be a waiver of such provisions or of the right of Contractor at any time to enforce each and every such provision, and (g) this Agreement, together with any information or

15

Subcontractor
Initials   _JD_

**Geis Construction South, LLC.**



| | |
|---|---|
| P.O. No.: | 1900290-002 |
| Project Name: | Wonder Lofts |
| Address: | 720 Clinton Street |
| | Hoboken, New Jersey 07030 |
| Job No: | 19-00-290 |

documents incorporated herein by reference, shall be deemed to contain the entire agreement between Contractor and Subcontractor and to constitute the complete and exclusive expression of the terms of the agreement, all prior or contemporaneous written or oral agreements or negotiations with respect to the subject matter hereof being merged herein.

**19.4** For good and valuable consideration, including the negotiated price for the Work, under this Agreement, and to the maximum extent permitted by applicable law, Subcontractor unconditionally waives and releases any and all mechanics' lien rights or claims of lien rights against the property or project or Contractor, or any and all attested account rights. To the maximum extent permitted by applicable law, Subcontractor agrees not to file any mechanics' liens or attested accounts to secure payment under this Agreement. Subcontractor further agrees that any such lien shall be void and unenforceable and shall constitute a substantial and material breach of this Agreement. Contractor shall be entitled to set off against any sums due or to become due Subcontractor under this Purchase Order an amount equal to two times the amount of the lien claim of Subcontractor or any of Subcontractor's Lower Tiers. Contractor shall be entitled to recover from Subcontractor the attorneys' fees, bond premiums, and expenses that Contractor incurs to defend and/or discharge any such mechanics' lien.

**19.5** Subcontractor shall not discriminate against any employee or applicant for employment because of race, religion, color, sex, sexual orientation, national origin, disability, age, ethnic group, military status, Vietnam era or disabled veteran status or ancestry. Subcontractor shall take affirmative action to ensure that applicants for employment are considered for employment, and that employees are treated during employment, without regard to their race, religion, color, sex, sexual orientation, national origin, disability, age, ethnic group, military status, Vietnam era or disabled veteran status or ancestry. "Treated" means and includes, without limitation, the following: recruited, whether by advertising or by other means; compensated, whether in the form of rates of pay or other forms of compensation; selected for training, including apprenticeship; promoted; upgraded; demoted; downgraded; transferred; laid off and terminated. Subcontractor will incorporate the requirements of this paragraph in all of its contracts for any of the work undertaken on the Project (other than contracts for standard commercial supplies or raw materials).

**ARTICLE 20**
**TERMINATION OF THE CONTRACT**

**20.1** If Subcontractor defaults or fails or neglects to carry out the Work in accordance with the Contract Documents or is in default of any provision of the Agreement, Contractor, after three (3) days' written notice to Subcontractor, and without prejudice to any other remedy Contractor may have under this Agreement, at law, or in equity, may make good such deficiencies and may deduct the cost thereof, including compensation for the Architect/Engineer's and Contractor's services and expenses made necessary thereby, from the payment then or thereafter due to Subcontractor. Alternatively, at Contractor's option, Contractor may terminate the Agreement and take possession of the site and of all materials, equipment, tools, and construction equipment and machinery thereon owned by Subcontractor and may finish the Work by whatever method Contractor may deem expedient. If the unpaid balance of the Contract Sum exceeds costs of finishing the Work, including compensation for the Architect/Engineer's services and Contractor's Services, together with a 25% markup for overhead and profit, and expenses made necessary thereby, such excess shall be paid to Subcontractor, but if such costs exceed such unpaid balance, Subcontractor shall pay the difference to Contractor, together with any legal fees incurred by Contractor in enforcing the Agreement. Any default termination under this Paragraph that subsequently may be determined to be unjustified or unwarranted shall be treated solely as a convenience termination under Paragraph 20.2, and Subcontractor's damages shall be limited accordingly, all other claims and rights of Subcontractor being expressly waived.

**20.2** Contractor may terminate this Agreement at any time for Contractor's convenience, and without cause. In such event, Subcontractor shall not be entitled to recover any anticipated lost profits on Work non-performed. Subcontractor shall only be entitled to recover the value of Work properly completed and stored as of the date of Contractor's written notice to Subcontractor of Contractor's intent to terminate the Agreement, plus any additional work performed thereafter at the written request of Contractor, together with the cost incurred to secure the site, and the cost of any previously fabricated and stored materials that Contractor desires to retain, plus reasonable restocking charges actually paid by Subcontractor to third parties and approved by Contractor. Cancellation costs are not permitted or compensable.

Subcontractor
Initials _JD_

16

**Geis Construction South, LLC.**



| | P.O. No.: | **1900290-002** |
|---|---|---|
| | **Project Name:** | **Wonder Lofts** |
| | **Address:** | **720 Clinton Street** |
| | | **Hoboken, New Jersey 07030** |
| | **Job No:** | **19-00-290** |

**ARTICLE 21**
OTHER CONDITIONS OR PROVISIONS

See **Schedule 5** for additional Terms and Conditions, if applicable.


Contractor:   Geis Construction South, LLC.

**By:** *Jeff Martin*
Jeff Martin (Oct 29, 2019)

**Title:** **President**



Subcontractor:   M.D.C.

**By:** *Jaime Delahunt*
Jaime Delahunt (Oct 29, 2019)

**Title:** president


Subcontractor
Initials 
JD

17

**Geis Construction South, LLC.**



<table>
<tr><td>P.O. No.:</td><td>1900290-002</td></tr>
<tr><td>Project Name:</td><td>Wonder Lofts</td></tr>
<tr><td>Address:</td><td>720 Clinton Street</td></tr>
<tr><td></td><td>Hoboken, New Jersey 07030</td></tr>
<tr><td>Job No:</td><td>19-00-290</td></tr>
</table>

**SCHEDULE 1**

**Contractor Contact Person:**

Project Manager:  Kevin Watts

Phone: 440-454-5195

**Procore Questions:** melissah@geisco,net

**Contract Questions:** debra@geisco.net

**Submit All Documentation To:**

Geis Construction South, LLC.

C/O Construction Accounting

10020 Aurora Hudson Road

Streetsboro, OH 44241

Phone: (330)528-3500

Facsimile: (330)528-0008

Subcontractor
Initials

18

**Geis Construction South, LLC.**



| | | |
|---|---|---|
| **P.O. No.:** | | **1900290-002** |
| **Project Name:** | | **Wonder Lofts** |
| **Address:** | | **720 Clinton Street** |
| | | **Hoboken, New Jersey 07030** |
| **Job No:** | | **19-00-290** |

## SCHEDULE 2

## Milestone Dates Schedule

Milestone Date                                              Date

To be Determined

### Construction Schedule

Within one week of the date of this Agreement, Subcontractor shall deliver to Contractor a construction schedule relating to Subcontractor's Work.  Contractor, in its discretion, will incorporate the information provided if acceptable to Contractor into the project construction schedule (the "Construction Schedule") consistent with the Milestone Dates Schedule and the Master Project Schedule.  The Construction Schedule information furnished by Subcontractor shall be a detailed and comprehensive schedule utilizing a critical path method (CPM) arrow diagram network that (a) shows all major elements and phases of the Project, (b) breaks down each element or phase by trade and (c) otherwise is in a form satisfactory to Contractor. Subcontractor shall investigate and recommend a schedule for the purchase of materials and equipment requiring long lead time procurement, and shall coordinate the schedule with the early preparation of the Construction Schedule.  The Subcontractor shall update the information relating to its work in relation to the Construction Schedule no less than every two weeks throughout the duration of the Project, and with each payment application.

### Meetings; Reports; Schedule Updates

Subcontractor shall attend pre-construction, construction and progress meetings to discuss such matters as procedures, progress, problems and scheduling as required and/or requested.

Subcontractor shall update and distribute, on a monthly basis, information incorporating the activities of Subcontractors and Sub-subcontractors on the Project, including processing of Shop Drawings and similar required submittals and delivery of products requiring long lead time procurement and showing current conditions and revisions required by actual experience. Subcontractor shall include the Project occupancy requirements showing portions of the Project having occupancy priority, as directed by Contractor.  Subcontractor shall maintain the progress of all Work in accordance with the Construction Schedule.

Subcontractor shall submit to Contractor a form of monthly progress report for use on the Project for Contractor's review, comment, and acceptance.  Upon acceptance by Contractor, the form of monthly Project progress report shall establish the standard for detail required for the remainder of the Project.  At a minimum, the monthly Progress Report will contain the following:  (a) listing of actual costs for completed activities and estimates for uncompleted tasks, (b) include the updated Construction Schedule, (c) progress photos, (d) an executive summary, (e) a discussion of pending items and existing or anticipated problems, status of RFIs, (f) a safety and accident report, (g) information on each Subcontractor and each Subcontractor's work as well as the entire Project, showing percentages of completion and the number and amounts of Change Orders and relating such information to the Construction Schedule, (h) if necessary, the schedule and action plan required by the Agreement and (i) such other relevant information as may be required by Contractor from time to time.  The Progress Report shall be indexed, bound and tabulated in a manner acceptable to Contractor.

Subcontractor shall keep a daily log containing a record of weather, Subcontractor's Work on the site number of workers, Work accomplished, problems encountered, and other similar relevant data as Contractor may require.  Subcontractor shall provide a copy of the log to Contractor upon request.

19

Subcontractor
Initials   *JD*

**Geis Construction South, LLC.**



|  | | | P.O. No.: | **1900290-002** |
|--|--|--|--|--|
|  | | | Project Name: | **Wonder Lofts** |
|  | | | Address: | **720 Clinton Street** |
|  | | | | **Hoboken, New Jersey 07030** |
|  | | | Job No: | **19-00-290** |

**SCHEDULE 3**

**Contract Sum**

| REFERENCE NO. / COST | ITEM NO. | DESCRIPTION | UNIT OF MEASURE | QUANTITY | UNIT PRICE | TOTAL |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
| **TOTAL SHEET 1** |  |  |  |  |  |  |

20

Subcontractor
Initials   *JD*
JD

**Geis Construction South, LLC.**

|  | P.O. No.: | 1900290-002 |
|  | Project Name: | Wonder Lofts |
|  | Address: | 720 Clinton Street |
|  |  | Hoboken, New Jersey 07030 |
|  | Job No: | 19-00-290 |

**SCHEDULE 4**

**List of Contract Documents**

1. **Affidavit of Sub (original) Contractor**
2. **Prime Contract documents (See ProCore for Copies)**

21

Initials _JD_____



|  |  |
|---|---|
| **P.O. No.:** | **1900290-002** |
| **Project Name:** | **Wonder Lofts** |
| **Address:** | **720 Clinton Street** |
|  | **Hoboken, New Jersey 07030** |
| **Job No:** | **19-00-290** |

## SCHEDULE 5

### PART 1

1. Pay Applications are to be submitted on the approved Contractor Pay Application Form.

2. Original Notarized Waivers of Lien are required to be submitted with each and every Pay Application from this Subcontractor, as well as this Subcontractor's Lower Tiers,

3. Insurance Requirements as outlined in this Agreement

4. **DAMAGE OR DESTRUCTION:** Subcontractor shall cover and at all times adequately protect the work and the Materials or Services from damage until final acceptance by Contractor's customer, and shall properly store and protect its own materials furnished to it by others. Subcontractor shall be responsible for any damage to or destruction of the work, the Materials or Services, and any other equipment, tools and personal property at the premises, whether owned, rented or used by Subcontractor or anyone performing any of the work. Subcontractor at its expense shall, as directed by Contractor, replace, repair, or restore any thereof which are damaged or destroyed, whether such destruction or damage results from acts of God, fire, public enemy, civil commotion, vandalism, acts of omission or commission by any person, firm, or corporation. Risk of loss with respect to the work, Materials, or Services shall remain with Subcontractor until final acceptance of the completed work and the Materials or Services. Until such final acceptance, any damage or destruction of the work or the Materials or Services, however caused, shall be made good by Subcontractor at no extra charge or cost to Contractor. Such rework at Subcontractor's expense shall not preclude Subcontractor from making a claim under any insurance maintained for the benefit of Subcontractor, but the right to make or the pendency of such claim shall not give cause to Subcontractor to delay the commencement or completion of such rework.

5. **PRECEDING WORK:** Subcontractor, before beginning the Work, shall carefully examine the work of others which may affect the work or the Materials or Services, determine whether it is in a fit, ready and suitable condition for the proper and accurate performance of the work and furnishing of the Materials or Services, use all means necessary to discover defects in such other work, and notify Contractor in writing of any claimed deficiencies which may affect the work or Materials or Services. If such notice is not so given, all such work shall be deemed acceptable to Subcontractor. In case of a dispute as to whether such other work is deficient, Subcontractor nevertheless shall proceed immediately with the Work when notified by Contractor to proceed.

6. **DEDUCTIONS AND SET-OFF:** Any sums payable to Subcontractor shall be subject to all claims and defenses of Contractor or any of its affiliated companies, whether arising from this or any other transaction or occurrence, and Contractor may set-off and deduct against any such sums all present and future indebtedness of Subcontractor or any of its affiliated companies to Contractor or any of its affiliated companies.

7. **SHOP DRAWINGS:** Subcontractor shall, at its own expense, prepare and submit to Contractor such shop drawings, samples, models and other submittals for the Materials or Services as may be requested by Contractor. Subcontractor must identify in writing any adjustments or modifications of the Contract requirements reflected in Subcontractor's shop drawings. Such shop drawings, samples, models, and other submittals shall be approved in writing by such persons as Contractor may designate before Subcontractor proceeds under this Agreement. No approval of any submittals nor the making of any payment to Subcontractor shall constitute an acceptance of any Materials or Services or impair Contractor's right of inspection or rejection or any other rights or remedies to which Contractor may be entitled, or relieve Subcontractor from any of its obligations or warranties hereunder.

22

Initials _JD_

**Geis Construction South, LLC.**



| | | |
|---|---|---|
| **P.O. No.:** | | **1900290-002** |
| **Project Name:** | | **Wonder Lofts** |
| **Address:** | | **720 Clinton Street** |
| | | **Hoboken, New Jersey 07030** |
| **Job No:** | | **19-00-290** |

**8.  NO ASSIGNMENT:**  Absent Contractor's written consent, Subcontractor may not assign any rights or delegate any duties that Subcontractor may have under this Agreement, in whole or in part.  Any assignments or delegation in violation of the foregoing is void and not binding on Contractor.  No such assignment or delegation shall bar Contractor from asserting against Subcontractor, or the transferee, or both, any claim or rights that Contractor may have against Subcontractor, including rights of recoupment or set-off.

23                                      Initials  JD

**Geis Construction South, LLC.**

Geis Form Rev. 2018-3
10935544.1



|  |  |
|---|---|
| **P.O. No.:** | **1900290-002** |
| **Project Name:** | **Wonder Lofts** |
| **Address:** | **720 Clinton Street** |
|  | **Hoboken, New Jersey 07030** |
| **Job No:** | **19-00-290** |

## SCHEDULE 5
## PART 2

## CONTRACTOR HOLD HARMLESS AND INDEMNITY

Subcontractor has agreed that from time to time it will perform as an independent contractor certain work for Geis Construction South, LLC. hereinafter referred to as the Contractor.  The Subcontractor agrees to do the work in a prudent manner, be responsible for the condition of the work site and take all proper steps to carry out the work in a safe manner.  Contractor and Subcontractor further agree as follows:

## INDEMNIFICATION

1.      (a) To the fullest extent permitted by law, Subcontractor shall defend, indemnify and hold harmless Contractor and any related entities ("Indemnitees") from any damages or liabilities which may be incurred by any Indemnitee due to personal injury or death, damage to property or violation by subcontractor of any governmental law, rule or regulation which is in any way connected with Subcontractor's performance of the work, except to the extent caused by the negligence or willful misconduct of an Indemnitee.

(b) In addition, to the fullest extent permitted by the law Subcontractor agrees to indemnify and hold harmless the Indemnitees against all claims for damages, losses, liens, causes of action or suits, brought by employees of Subcontractor to the extent such are caused by, or alleged to have been caused by, in whole or part the negligence of Subcontractor, Contractor's negligence in its decision to hire Subcontractor, and/or Contractor's failure to adequately supervise Subcontractor or subcontractor's employees.

2.      To the fullest extent permitted by law, Subcontractor shall indemnify and hold harmless all Indemnitees against all liens, claims, and demands which arise in connection with the work or materials supplied by Subcontractor and, upon request by Contractor, Subcontractor shall furnish Contractor with any evidence that it may require to satisfy itself that all such claims, liens or demands have been paid and discharged.

3.      To the fullest extent permitted by law, Subcontractor shall defend, protect, indemnify and hold harmless the Indemnitees against claimed or actual infringement or contributory infringement of any patent or infringement of any copyright or trademark arising from Subcontractor's work.

4.      Subcontractor's indemnity obligations shall not limit and shall not be limited by the insurance coverages set forth anywhere else in this Agreement or any other Agreement.

This Agreement will cover all business relations and transactions between the parties until revoked by written notice in writing to Contractor.  Please sign and return this form to Contractor.

Subcontractor:  M.D.C.                                    General Contractor:  Geis Construction South, LLC.

**By** *Jaime Delahunt*                                  **By** *Jeff Martin*
Jaime Delahunt (Oct 29, 2019)                            Jeff Martin (Oct 29, 2019)
        Authorized Representative

151 S. 11th Street, Lindenhurst, New York 11757

24                                      Initials  *JD*
                                                  JD

**Geis Construction South, LLC.**



|  |  |
|---|---|
| P.O. No.: | 1900290-002 |
| Project Name: | Wonder Lofts |
| Address: | 720 Clinton Street |
| | Hoboken, New Jersey 07030 |
| Job No: | 19-00-290 |

25

Initials _JD_____

**Geis Construction South, LLC.**

Geis Form Rev. 2018-3
10935544.1



|  | |
|---|---|
| **P.O. No.:** | **1900290-002** |
| **Project Name:** | **Wonder Lofts** |
| **Address:** | **720 Clinton Street** |
| | **Hoboken, New Jersey 07030** |
| **Job No:** | **19-00-290** |

## SCHEDULE 6

### INSURANCE AND WORKER'S COMPENSATION REQUIREMENTS:

All subcontractors shall purchase and maintain insurance of the following types of coverage and limits of liability (Section 17.2 of the Agreement shall govern over any inconsistent provision below). These coverages shall be primary and non-contributory:

1.  Commercial General Liability (CGL) with limits of Insurance of not less than $1,000,000 each occurrence and $2,000,000 Annual Aggregate.
    a.  If the CGL coverage contains a General Aggregate Limit, such General Aggregate shall apply separately to each project.
    b.  CGL coverage shall be written on ISO Occurrence from CG 00 01 1093 or a substitute form providing equivalent coverage and shall cover liability arising from premises, operations, independent contractors, products-completed operations, and personal and advertising injury.
    c.  Contractor, Owner, and all other parties required of the Contractor, shall be included as insured on CGL, using ISO Additional Insured Endorsement CG 2010 and CG 2037  04/13 or their equivalent. This insurance for the additional insureds shall be as broad as the coverage provided for the named insured subcontractor. It shall apply as primary and non-contributing insurance before any other insurance or self-insurance, including any deductible, maintained by, or provided to, the additional insured.
    d.  Subcontractor shall maintain CGL coverage for itself and all additional insureds for the duration of the project and maintain Completed Operations coverage for itself and each additional insured for at least 3 years after completion of the Work.
2.  Automobile Liability
    a.  Business Auto Liability with limits of at least $1,000,000 each accident.
    b.  Business Auto coverage must include coverage for liability arising out of all owned, leased, hired and non-owned automobiles.
    c.  Contractor, Owner, and all other parties required of the Contractor, shall be included as insureds on the auto policy.
3.  Commercial Umbrella
    a.  Umbrella Limits must be at least $2,000,000.
    b.  Umbrella coverage must include as insureds all entities that are additional insureds on the CGL.
    c.  Umbrella coverage for such additional insureds shall apply as primary before any other insurance of self-insurance, including any deductible, maintained by, or provided to, the additional insured other than the CGL, Auto Liability and Employers Liability coverages maintained by the Subcontractor.
4.  Workers' Compensation and Employers Liability
    a.  Employers Liability Insurance limits of at least $500,000 each accident for bodily injury by accident and $500,000 each employee for injury by disease.
    b.  Where applicable, U.S. Longshore and Harbor Workers Compensation Act Endorsement shall be attached to the policy.
    c.  Where applicable, the Maritime Coverage Endorsement shall be attached to the policy.

5.  Waiver of Subrogation. Subcontractor waives all rights against Contractor, Owner, and Architect and their agents, officers, directors and employees for recovery of damages to the extent these damages are covered by commercial general liability, commercial umbrella liability, business auto liability or workers compensation and employers liability insurance maintained per requirements stated above.

26                                    Initials _JD_____

**Geis Construction South, LLC.**



|  |  |  |
|---|---|---|
| **P.O. No.:** | | **1900290-002** |
| **Project Name:** | | **Wonder Lofts** |
| **Address:** | | **720 Clinton Street** |
| | | **Hoboken, New Jersey 07030** |
| **Job No:** | | **19-00-290** |

6.    Attached to each certificate of insurance shall be a copy of the Additional Insured Endorsement that is part of the Subcontractor's Commercial General Liability Policy.  These certificates and the insurance policies shall contain a provision that coverage under the policies will not be canceled or allowed to expire until at least 30 days prior written notice has been given to the Contractor.

27

Initials    _JD_

**Geis Construction South, LLC.**

Geis Form Rev. 2018-3
10935544.1



# Contract
# 1900290-002

Geis Companies
10020 Aurora Hudson
Streetsboro, Ohio 44241
Phone: (330) 528-3500
Fax: (330) 528-0008

**Project:** 19-00-290 - Wonder Lofts
720 Clinton Street
Hoboken, New Jersey 07030

## Masonry/Brick Repair

| | |
|---|---|
| **DATE CREATED:** | 10/22/2019 |

| | | | |
|---|---|---|---|
| **CONTRACT COMPANY:** | M.D.C.<br>151 S 11th Street<br>Lindenhurst, New York 11757<br>Phone: (631) 592-8072 | **CREATED BY:** | Kevin  Watts **(Geis Construction)**<br>10020 Aurora Hudson Road<br>Streetsboro,  44241 |
| **CONTRACT STATUS:** | Approved | **EXECUTED:** | No |
| **START DATE:** | | **ESTIMATED COMPLETION DATE:** | |
| **SIGNED CONTRACT RECEIVED DATE:** | | **ACTUAL COMPLETION DATE:** | |
| **DEFAULT RETAINAGE:** | 10.0% | | |

**DESCRIPTION:**

**INCLUSIONS:**
See attached Scope

**EXCLUSIONS:**

**ATTACHMENTS:**
MDC Contract Backup.pdf   Prism Contract Backup.pdf   Facade Bid sheet MDC.doc

| # | SUB JOBS | COST CODE | DESCRIPTION | TYPE | AMOUNT |
|---|---|---|---|---|---|
| 1 | Masonry Work | 01-010 - Mobilization | Mobilization | Other | $ 102,924.24 |
| 2 | Masonry Work | 01-011 - Brick Repointing per Drawing | 2. Brick Repointing per drawing | Other | $ 32,338.34 |
| 3 | Masonry Work | 01-012 - Brick Replacement per Drawing | Brick Replacement per drawing | Other | $ 395,272.87 |
| 4 | Masonry Work | 01-015 - Brick Arch Reconstruction | Brick Arch Reconstruction | Other | $ 16,161.21 |
| 5 | Masonry Work | 01-021 - Pinning Brick to Struct-Corner | Pinning brick to structure at corners | Other | $ 101,107.06 |
| 6 | Masonry Work | 01-022 - Pining Brick to Struct-Int Clm | Pinning Brick to Structure at Interior Columns | Other | $ 8,757.30 |
| 7 | Masonry Work | 01-023 - Replace Existing I-Beam Lintel | Replace Existing I-Beam Lintels | Other | $ 52,908.71 |
| 8 | Masonry Work | 01-024 - Sandblast Stl Beams/Clmns | Sandblast Steel Beams and Columns | Other | $ 19,047.14 |
| 9 | Masonry Work | 01-025 - Lower Existing Bluestone Sills | Lower Existing Bluestone Sills | Other | $ 27,864.15 |
| 10 | Masonry Work | 01-026 - New Lintel Replacement C Bld | New Lintel Replacement C Building | Other | $ 55,987.04 |
| 11 | Masonry Work | 01-027 - Building B Parpet Reconstruct | Building B Parapet Reconstruction | Other | $ 21,805.71 |
| 12 | Masonry Work | 01-028 - Demo-New Modified Openings | Demolition of New and Modified Openings | Other | $ 179,584.45 |
| | | | | **Grand Total:** | **$ 1,013,758.22** |



**Contract**
**1900290-002**

**Geis Companies**
10020 Aurora Hudson
Streetsboro, Ohio 44241

**M.D.C.**
151 S 11th Street
Lindenhurst, New York 11757

**SIGNATURE**          **DATE**        **SIGNATURE**          **DATE**

| TODAY: 10/1/2019 | | | | | | |
|---|---|---|---|---|---|---|
| PREPARATION DATE: 06/29/2019 | | | | | | |
| PROJECT: WONDER LOFTS 720 CLINTON STREET, HOBOKEN, NJ | | LABOR STATUS: O/Shop PLA | | PREVAILING WAGE NON-UNION(OSHOP) | | |
| CLIENT: | | INSURANCE: OWN CCIP | | OCIP | | |
| PROJECT SCOPE: | | TAX STATUS: YES NO | | | | |
| ATTENDANT: | | BOND: No NO | | | | |
| REFERENCES: ARCHITECTURAL DRAWINGS DATED 07/8/2019 | | CERTIFIED PAYROLL: No NO | | | | |
| | | WEATHER CONDITIONS: EASY MEDIUM DIFFICULT | | | | |
| | | ACCESSIBILITY/LOGISTICS: EASY MEDIUM DIFFICULT | | | | |
| | | START DATE: | | | | |

| CAT | TASK | | TAKEOFF | | PRICE | | |
|---|---|---|---|---|---|---|---|
| | TASK | | QUANTITY | UN | UNIT PRICE | TOTAL | REFERENCE |
| **FACADE DEMOLITION** | | | | | | | |
| EIGHT STREET | | | | | | | A-301 |
| *BRICK FACADE DEMOLITION FOR BUILDING A* | | | | | | | |
| | - DEMOLITION AND REMOVAL OF DEBRIS FROM SITE | | 1600 | SF | $ 12.00 | $ 19,200.00 | |
| | | | | | | $ - | |
| CLINTON STREET | | | | | | $ - | A-302 |
| *BRICK FACADE DEMOLITION FOR BUILDING A* | | | | | | $ - | |
| | - DEMOLITION AND REMOVAL OF DEBRIS FROM SITE | | 1550 | SF | $ 12.00 | $ 18,600.00 | |
| | | | | | | $ - | |
| GRAND STREET | | | | | | $ - | |
| *BRICK FACADE DEMOLITION FOR BUILDING B* | | | | | | $ - | |
| | - DEMOLITION AND REMOVAL OF DEBRIS FROM SITE (PARAPET) | | 948.75 | SF | $ 12.00 | $ 11,385.00 | A-307 |
| | | | | | | $ - | |
| EXISTING SECTION BUILDING A&COURTYARD(SECTION FF) | | | | | | $ - | A-309 |
| *ALSO REAR ELEVATION BUILDING B* | | | | | | | |
| | - DEMOLITION AND REMOVAL OF DEBRIS FROM SITE | | 950 | SF | $ 12.00 | $ 11,400.00 | |
| | | | | | | $ - | |
| EXISTING SECTION/ELEVATION-BUILDING A (SECTION AA) | | | | | | $ - | A-304 |
| *WALL AT INTERIOR TO BE DEMOLISHED* | | | | | | $ - | |
| | - DEMOLITION AND REMOVAL OF DEBRIS FROM SITE | | 1700 | SF | $ 12.00 | $ 20,400.00 | |
| | | | | | | $ - | |
| EXISTING ELEVATION | | | | | | $ - | A-303 |
| *INTERIOR OF BUILDING A* | | | | | | $ - | |
| | - DEMOLITION AND REMOVAL OF DEBRIS FROM SITE | | 4400 | SF | $ 12.00 | $ 52,800.00 | |
| | - CHIMNEY RESTORATION(WHOLE CHIMNEY AREA) | | 0 | SF | $ 60.00 | $ - | |
| | | | | | | $ - | |
| **BRICK REPAIR AND RESTORATION (BR-1,3,4,5,6)** | | | | | | $ - | |
| EIGHT STREET | | | | | | $ - | A-301 |
| *EXISTING ELEVATION* | | | | | | $ - | |
| | - BR-1 BRICK REPOINTING | | 1049 | SF | $ 11.50 | $ 12,063.50 | |
| | - BR-2&4 TYPIC AL OUTERMOST COURSE BRICK REPLACEMENT &BRICK FACADE PINNING TO CONCRETE CORNER COLUMN | | 135 | SF | $ 100.00 | $ 13,500.00 | |
| | - BR-2&11 TYPIC AL OUTERMOST COURSE BRICK REPLACEMENT &SAND BLAST AND PAINT EXISTING STEEL BEAMS/COLUMNS | | 135 | SF | $ 65.00 | $ 8,775.00 | |
| | - BR-5 BRICK FACADE PINNIN TO INTERIOR CONCRETE COLUMN | | 70 | SF | $ 30.00 | $ 2,100.00 | |
| | - BR-7 SUPPORT FOR NEW BRICK OPENINGS(I BEAMS) | | 150 | LF | $ 145.00 | $ 21,750.00 | |
| | - BR-8 SUPPORT FOR NEW BRICK OPENINGS(C CHANNEL) | | 16 | LF | $ 145.00 | $ 2,320.00 | |
| | - BR-11 SAND BLAST&PAINT EXISTING STEEL BEAMS AND COLUMNS | | 32 | LF | $ 65.00 | $ 2,080.00 | |
| | - BR-12 LOWER EXISTING 8" BLUSTONE WINDOW SILL | | 60 | LF | $ 105.00 | $ 6,300.00 | |
| | - NEW BRICK FOR EXISTING BUILDING | | 2640 | SF | $ 45.00 | $ 118,800.00 | $ 187,688.50 |
| | | | | | | $ - | |
| CLINTON STREET | | | | | | $ - | A-302 |
| *EXISTING ELEVATION* | | | | | | $ - | |
| | - BR-1 BRICK REPOINTING | | 650 | SF | $ 11.50 | $ 7,475.00 | |
| | - BR-2 TYPIC AL OUTERMOST COURSE BRICK REPLACEMENT | | 130 | SF | $ 55.00 | $ 7,150.00 | |
| | - BR-2&4 TYPIC AL OUTERMOST COURSE BRICK REPLACEMENT &BRICK FACADE PINNING TO CONCRETE CORNER COLUMN | | 190 | SF | $ 100.00 | $ 19,000.00 | |
| | - BR-5 BRICK FACADE PINNIN TO INTERIOR CONCRETE COLUMN | | 150 | SF | $ 30.00 | $ 4,500.00 | |
| | - BR-7 SUPPORT FOR NEW BRICK OPENINGS(I BEAMS) | | 70 | LF | $ 145.00 | $ 10,150.00 | |
| | - BR-10 BRICK ARCH RECONSTRUCTION | | 70 | SF | $ 150.00 | $ 10,500.00 | |
| | - BR-11 SAND BLAST&PAINT EXISTING STEEL BEAMS AND COLUMNS | | 170 | LF | $ 12.00 | $ 2,040.00 | |

| CAT | TASK | | TAKEOFF | | PRICE | | REFERENCE |
|---|---|---|---|---|---|---|---|
| | TASK | | QUANTITY | UN | UNIT PRICE | TOTAL | |
| **FACADE DEMOLITION** | | | | | | | |
| | - BR-2&11 TYPIC AL OUTERMOST COURSE BRICK REPLACEMENT &SAND BLAST AND PAINT EXISTING STEEL BEAMS/COLUMNS | | 150 | SF | $    65.00 | | |
| | | | | | | $    9,750.00 | |
| | - NEW BRICK FOR EXISTING BUILDING | | 1600 | SF | $    45.00 | $   72,000.00 | |
| | | | | | | | |
| *COURTYARD BLDG. A* | - NEW BRICK FOR EXISTING BUILDING | | | | | $         - | A 309 |
| | BR1 BRICK REPOINTING | | 132 | SF | $    11.50 | $    1,518.00 | |
| | BR2 | | 35 | SF | $    55.00 | $    1,925.00 | |
| | BR3 | | 40 | SF | $    36.00 | $    1,440.00 | |
| | BR6 | | 13 | SF | $    33.00 | $      429.00 | |
| | BR8 | | 190 | LF | $   145.00 | $   27,550.00 | |
| | BR10 | | 1 | LS | $ 1,680.00 | $    1,680.00 | |
| | BR11 | | 13 | LF | 65 | $      845.00 | |
| | - NEW BRICK FOR EXISTING BUILDING | | 40 | SF | $    45.00 | $    1,800.00 | |
| | | | | | | $         - | |
| | TOTALS: | | | | | $  501,225.50 | |
| | CONTINGENCY: | | 5% | | | $   25,061.28 | |
| | Insurance | | 6.00% | | | $   31,577.21 | |
| | General Condition, Overhead & Profit | | 25% | | | $  139,466.00 | |
| | BOND: | | 0% | | | $         - | |
| | | | | | | | |
| | TOTAL PRICE: | | | | | $  697,329.98 | |

See Summary on pg 4

| | | | | |
|---|---|---|---|---|
| **TODAY:** 10/1/2019 | | | | |
| **PREPARATION DATE:** 08/24/2019 | | | | |
| **PROJECT:** WONDER LOFTS 720 CLINTON STREET, HOBOKEN, NJ | **LABOR STATUS:** O/Shop O/Shop | | **PREVAILING WAGE** NON-UNION(OSHOP) | |
| **CLIENT:** | **INSURANCE:** OWN CCIP | | OCIP | |
| **PROJECT SCOPE:** | **TAX STATUS:** YES Yes | | | |
| **ATTENDANT:** | **BOND:** No NO | | | |
| **REFERENCES:** ARCHITECTURAL DRAWINGS DATED 07/8/2019 | **CERTIFIED PAYROLL:** no NO | | | |
| | **WEATHER CONDITIONS:** EASY MEDIUM | | DIFFICULT | |
| | **ACCESSIBILITY/LOGISTICS:** EASY MEDIUM | | DIFFICULT | |
| | **START DATE:** | | | |

| CAT | TASK | TAKEOFF | | PRICE | | |
|---|---|---|---|---|---|---|
| | **TASK** | **QUANTITY** | **UN** | **UNIT PRICE** | **TOTAL** | **REFERENCE** |
| **FACADE DEMOLITION** | | | | | | |
| **GRAND STREET** | | | | | | |
| *BRICK FACADE DEMOLITION FOR BUILDING A and B* | | | | | | |
| | - DEMOLITION AND REMOVAL OF DEBRIS FROM SITE (PARAPET) | 130 | SF | $   12.00 | $     1,560.00 | A-300 EXISTING ELEVATION |
| | | | | | | |
| **BRICK REPAIR AND RESTORATION (BR-1,2,4,5,6,7,8,12)** | | | | | | |
| **EIGHT STREET** | | | | | | A-300 |
| *EXISTING ELEVATION* | | | | | | |
| | - BR-1 BRICK REPOINTING | 200 | SF | $   12.00 | $     2,400.00 | EXISTING ELEVATION |
| | - BR-2 TYPICAL OUTERMOST COURSE BRICK REPLACEMENT | 405 | SF | $   55.00 | $   22,275.00 | EXISTING ELEVATION |
| | - BR-4&6 BRICK FACADE PINNING TO CONCRETE CORNER COLUMN&CRACK BRICK REPAIR REPAIR AT CORNERS | 130 | SF | $   95.00 | $   12,350.00 | EXISTING ELEVATION |
| | - BR-5 BRICK FACADE PINNIN TO INTERIOR CONCRETE COLUMN | 125 | SF | $   30.00 | $     3,750.00 | EXISTING ELEVATION |
| | - BR-7 SUPPORT FOR NEW BRICK OPENINGS(I BEAMS) | 55 | LF | $  145.00 | $     7,975.00 | EXISTING ELEVATION |
| | - BR-8 SUPPORT FOR NEW BRICK OPENINGS(C CHANNEL) | 85 | LF | $  145.00 | $   12,325.00 | EXISTING ELEVATION |
| | - BR-11 SAND BLAST&PAINT EXISTING STEEL BEAMS AND COLUMNS | 140 | LF | $   12.00 | $     1,680.00 | EXISTING ELEVATION |
| | - BR-12 LOWER EXISTING 8" BLUSTONE WINDOW SILL | 140 | LF | $  105.00 | $   14,700.00 | |
| | | | | | | |
| **NEW BRICK** | | | | | | A-300 |
| *PROPOSED ELEVATION* | | | | | | |
| | - RECONSTRUCTED BRICK | 2340 | SF | $   45.00 | 105,300.00 | PROPOSED ELEVATION |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | **TOTALS:** | | | | $   184,315.00 | |
| | **CONTINGENCY:** | 5% | | | $     9,215.75 | |
| | **Insurance** | 6.00% | | | $   11,611.85 | |
| | **General Condition, Overhead & Profit:** | 25% | | | $   51,285.65 | |
| | **BOND:** | 0% | | | $            - | |
| | **TOTAL PRICE:** | | | | $   256,428.24 | |

See Summary on pg 4

**Kevin Watts**

| | |
|---|---|
| **From:** | labroo anil <a_labroo@yahoo.com> |
| **Sent:** | Wednesday, September 18, 2019 11:25 AM |
| **To:** | Jaime Delahunt; Kevin Watts |
| **Subject:** | Fw: Wonder Loft Correction |

Kevin,
Please see answers in Red,
Regds.
Anil


We need to make the following changes to the brick proposal


1. Need a separate proposal for buildings D & E with costs for each separate. This is all of the brick and CMU pricing. (Lower Priority)
2. On our existing proposal we need the following changes (HOT ITEM)
   a. Parapet wall was called to be poured in concrete. They have asked for this to be priced as CMU.  Parapet was Priced as CMU only
   b. Need a unit price for lintels installed in $/LB    Unit Price is around 2$ Per Lb
   c. We missed a wall in building C. It is an interior wall that is 100' x 21'4". It is a single layer brick veneer. The Cost would be around $ 60,000.00 for Modular Brick.


We need the brick price revised ASAP. The pricing for building D & E are less important at this time.


Call with questions

**720 Clinton Summary**
$697,329.98 Proposal #1
$256,428.24 Proposal #2
$60,000.00 Modular Brick shown on A-304 dated 7/8/19
$1,013,758.22 Total for 720 Clinton

Thanks,

Kevin Watts

440-454-5195


**From:** jaimemdcinc <jaimemdcinc@gmail.com>
**Sent:** Thursday, September 12, 2019 7:57 PM
**To:** Kevin Watts <Kevinw@geisco.net>
**Subject:** Fwd: Re: Correction

1

Sent from my T-Mobile 4G LTE Device


-------- Original message --------

From: labroo anil <a_labroo@yahoo.com>

Date: 9/12/19 4:14 PM (GMT-05:00)

To: Jaime Delahunt <jaimemdcinc@gmail.com>

Subject: Re: Correction


Jaime,

Please see attached Estimate Revised. Sorry for goof up

Regards,

Anil Labroo

# ESTIMATE

*M D C*

*151 South 11St Lindenhurst, NY*

| | | |
|---|---|
| *Date 09/15/19* | *Estimate #001* |
| | |

*Proj Title: Building 721*
*Wonder Lofts, Hoboken, NJ*

*Name:*
*Fax:*
*Tel:*

| Description | Units | Qty | Rate | Total |
|---|---|---|---|---|
| **General Conditions** | | | | |
| Mobilization / Demobilization | LS | 1.00 | 1,500.00 | 1,500.00 |
| Shop Drawings & Sunmittals | LS | 1.00 | 2,000.00 | 2,000.00 |
| Supervision | LS | 1.00 | 7,500.00 | 7,500.00 |
| | | | | **11,000.00** |
| | | | | - |
| **Brick Veneer** | | | | - |
| Brick Veneer incl., Waterproofing, Rigid Insulation, Relieving Angles etc. complete. | SF | 1,330.00 | 60.00 | 79,800.00 |
| Extra for Expansion Joint & Recessed Brick Area | LF | 435.00 | 60.00 | 26,100.00 |
| Scaffolding | SF | - | 5.00 | - |
| | | | | - |
| **Subtotal Brick Veneer** | | | | 105,900.00 |
| | | | | |
| **Subtotal General Conditions** | | | | 11,000.00 |
| **Subtotal Removals** | | | | 105,900.00 |
| **Insurance** | | | | 7,014.00 |
| **Overhead & Profit** | | | | 18,587.10 |
| **GRAND TOTAL** HOLD: Pening Prism Change Order KW 10.21 | | | | **142,501.10** |
| | | | | |
| **ADD ALT** | | | | |
| | | | | - |
| | | | | |
| **Total Add Alt** | | | | - |
| | | | | - |
| *\* PRICES BASED ON NON UNION RATES* | | | | - |
| *\*\* Prices Based on Sketch Dated 07.30.2018* | | | | - |
| | | | | |
| *\*\*\* Standard Modular Bricks will be used in Brick Veneer.* | | | | |
| *\*\*\*\* Anykind of CMU is not Included* | | | | |
| | | | | |
| | | | | |
| *EXCLUSIONS : Anykind of Special Colored Bricks* | | | | - |

## NOTES / QUALIFICATIONS

Scope of work as specifically outlined in attached estimate.
All excavated mtrl presumed to be "clean" and uncontaminated.  Estimate reflects using this material as backfill.
This estimate must be part of final contract.  Any notes / qualifications / exclusions apply to our contract.
Security systems and/or guard services during construction are by owner / others.
All work performed during normal working hours (except as per bldg rules & regs).
No overtime work unless approved & agreed on.
All permits / building dept filing fees / inspections / expeditor fees are not included.
Architectural / engineering / consulting services by owner / tenant / others.
All pricing is valid for 30 days from our proposal date.
All SF costs are industry average.  Actual cost may be adjusted depending on final design & specifications.
Supplier material deposits may be required (payment to M D C will have to occur before we pay vendor).
We reserve the right to review and recommend contract changes between MDC and client.
Labor rate increases dependent upon union contract renewal dates per trade.

*Alternates must be accepted at time of contract awards or modifications may be required.*
*Unit prices will vary depending on condition of project & sequencing at time of commencement.*
*Credits for deleted work will vary depending on condition of project & sequencing at time of commencement.*
*Restocking charge will apply @ a percentage.*
*All change orders & related schedule impact must be approved and signed before being implemented on site.*

### EXCLUSIONS / WORK NOT INCLUDED

*Excavation in rock unless specifically noted.*
*Hazardous material conditions / mold / asbestos abatement*
*Building "service charges" (i.e. elevators, shutdowns, engineer's standby, utility charges, etc.)*
*Unforseen conditions at areas not yet demolished / excavated.*
*Data / telecom / audiovisual wiring, devices, & programming.*
*Traffic control.*
*Mark outs.*
*Handling / relocating / protecting / installing of furniture & furnishings.*
*Updating code violations due to new permit filing.*
*Furnishing & installation of signage & graphics unless specifically mentioned in our proposal.*
*Phasing / sequencing unless specifically mentioned in our proposal.*
*Overtime work, except as specifically noted & agreed upon.*
*Testing / probes, site borings, surveying, etc.*
*All "standby" trades (such as plumber, electrical, teamster, etc.)*
*Costs for city agency coordination (i.e. MTA / ConEd / DOB / Landmarks, etc.)*
*All controlled inspections / PE monitoring.*
*Removal of owner supplied protection & packaging.*
*Landscaping / trees / mulch / soil / etc. unless specifically mentioned in our proposal.*
*Testing of existing systems.*
*Repairs to existing conditions if unforseen and / or not indicated on drawings.*
*Delays due to inclement weather (i.e. snow, rain, wind, etc.) for exterior work.*
*Overtime permits as mandated by the city, SCA, DEP, and / or any other agencies.*
*Air quality testing & monitoring.*
*Temporary fence / protection & egress ways unless specifically included in our proposal.*
*Refurbishing / testing / modifying existing systems.*
*Dewatering / underpinning / rock excavation unless specifically included in our proposal.*
*Sidewalk sheds, bridges, scaffolding work unless specifically included in our proposal.*
*"Stripping", preparation of existing surfaces, or painting.*
*Inspections, certifications, and removal of contaminated soil unless specifically included in our proposal.*
*Waterproofing of any kind unless specifically noted.*
*Temporary water and power not included.*

# ESTIMATE

## M D C

151 South 11St Lindenhurst, NY

| Date 09/15/19 | | | Estimate #001 | |
|---|---|---|---|---|
| | | | | |
| Proj Title: Building 731 | | | | |
| Wonder Lofts, Hoboken, NJ | | | | |
| Name: | | | | |
| Fax: | | | | |
| Tel: | | | | |

| Description | Units | Qty | Rate | Total |
|---|---|---|---|---|
| **General Conditions** | | | | |
| Mobilization / Demobilization | LS | 1.00 | 1,500.00 | 1,500.00 |
| Shop Drawings & Sunmittals | LS | 1.00 | 2,000.00 | 2,000.00 |
| Supervision | LS | 1.00 | 10,000.00 | 10,000.00 |
| | | | | 13,500.00 |
| | | | | - |
| **Brick Veneer** | | | | - |
| Brick Veneer incl., Waterproofing, Rigid Insulation, Relieving Angles etc. complete. | SF | 1,830.00 | 60.00 | 109,800.00 |
| Extra for Expansion Joint & Recessed Brick Area | LF | 740.00 | 60.00 | 44,400.00 |
| Scaffolding | SF | - | 5.00 | - |
| | | | | - |
| **Subtotal Brick Veneer** | | | | 154,200.00 |
| | | | | |
| **Subtotal General Conditions** | | | | 13,500.00 |
| **Subtotal Removals** | | | | 154,200.00 |
| **Insurance** | | | | 10,062.00 |
| **Overhead & Profit** | | | | 26,664.30 |
| **GRAND TOTAL** HOLD: Pening Prism Change Order KW 10.21 | | | | **204,426.30** |
| | | | | |
| **ADD ALT** | | | | |
| | | | | - |
| | | | | |
| **Total Add Alt** | | | | - |
| | | | | - |
| * PRICES BASED ON NON UNION RATES | | | | - |
| ** Prices Based on Sketch Dated 02.26.2019 | | | | - |
| | | | | |
| *** Standard Modular Bricks will be used in Brick Veneer. | | | | |
| **** Anykind of CMU is not Included | | | | |
| | | | | |
| | | | | |
| **EXCLUSIONS**: Anykind of Special Colored Bricks | | | | - |

### NOTES / QUALIFICATIONS

Scope of work as specifically outlined in attached estimate.
All excavated mtrl presumed to be "clean" and uncontaminated.  Estimate reflects using this material as backfill.
This estimate must be part of final contract.  Any notes / qualifications / exclusions apply to our contract.
Security systems and/or guard services during construction are by owner / others.
All work performed during normal working hours (except as per bldg rules & regs).
No overtime work unless approved & agreed on.
All permits / building dept filing fees / inspections / expeditor fees are not included.
Architectural / engineering / consulting services by owner / tenant / others.
All pricing is valid for 30 days from our proposal date.
All SF costs are industry average.  Actual cost may be adjusted depending on final design & specifications.
Supplier material deposits may be required (payment to M D C will have to occur before we pay vendor).
We reserve the right to review and recommend contract changes between MDC and client.
Labor rate increases dependent upon union contract renewal dates per trade.

*Alternates must be accepted at time of contract awards or modifications may be required.*
*Unit prices will vary depending on condition of project & sequencing at time of commencement.*
*Credits for deleted work will vary depending on condition of project & sequencing at time of commencement.*
*Restocking charge will apply @ a percentage.*
*All change orders & related schedule impact must be approved and signed before being implemented on site.*

### *EXCLUSIONS / WORK NOT INCLUDED*

*Excavation in rock unless specifically noted.*
*Hazardous material conditions / mold / asbestos abatement*
*Building "service charges" (i.e. elevators, shutdowns, engineer's standby, utility charges, etc.)*
*Unforseen conditions at areas not yet demolished / excavated.*
*Data / telecom / audiovisual wiring, devices, & programming.*
*Traffic control.*
*Mark outs.*
*Handling / relocating / protecting / installing of furniture & furnishings.*
*Updating code violations due to new permit filing.*
*Furnishing & installation of signage & graphics unless specifically mentioned in our proposal.*
*Phasing / sequencing unless specifically mentioned in our proposal.*
*Overtime work, except as specifically noted & agreed upon.*
*Testing / probes, site borings, surveying, etc.*
*All "standby" trades (such as plumber, electrical, teamster, etc.)*
*Costs for city agency coordination (i.e. MTA / ConEd / DOB / Landmarks, etc.)*
*All controlled inspections / PE monitoring.*
*Removal of owner supplied protection & packaging.*
*Landscaping / trees / mulch / soil / etc. unless specifically mentioned in our proposal.*
*Testing of existing systems.*
*Repairs to existing conditions if unforseen and / or not indicated on drawings.*
*Delays due to inclement weather (i.e. snow, rain, wind, etc.) for exterior work.*
*Overtime permits as mandated by the city, SCA, DEP, and / or any other agencies.*
*Air quality testing & monitoring.*
*Temporary fence / protection & egress ways unless specifically included in our proposal.*
*Refurbishing / testing / modifying existing systems.*
*Dewatering / underpinning / rock excavation unless specifically included in our proposal.*
*Sidewalk sheds, bridges, scaffolding work unless specifically included in our proposal.*
*"Stripping", preparation of existing surfaces, or painting.*
*Inspections, certifications, and removal of contaminated soil unless specifically included in our proposal.*
*Waterproofing of any kind unless specifically noted.*
*Temporary water and power not included.*

# ATTACHMENT A
## DRAWING LIST

EXHIBIT "A" Drawing List -WONDER LOFTS-720 Clinton 10.10.19

| Sheet Name | Version | Description | Date Issued |
|---|---|---|---|
| A-000 | Architectural-Updates 08/19/19 | Title Sheet/Tax Map/General Notes/Drawing List | 8/19/2019 0:02 |
| A-001 | Architectural-Updates 08/19/19 | Building Data | 8/19/2019 0:02 |
| A-100 | Architectural-Updates 08/19/19 | Site & Impact Plans | 8/19/2019 0:02 |
| A-101 | Architectural-Updates 08/19/19 | Site Circulation & Lighting Plans | 8/19/2019 0:02 |
| A-102 | Architectural-Updates 08/19/19 | Site Landscaping & Topography Plan | 8/19/2019 0:02 |
| A-103 | Architectural-Updates 08/19/19 | Flood Proofing Plan | 8/19/2019 0:02 |
| A-150 | Architectural-Updates 08/19/19 | Wall Partition Types/Floor Assemblies | 8/19/2019 0:02 |
| A-151 | Architectural-Updates 08/19/19 | Soundproofing/Signage | 8/19/2019 0:02 |
| A-200 | Architectural-Updates 08/19/19 | Architectural Plan Floor 0 (Basement) | 8/19/2019 0:02 |
| A-201 | Architectural-Updates 08/19/19 | Architectural Plan Floor 1 | 8/19/2019 0:02 |
| A-201.1 | Architectural-Updates 08/19/19 | Architectural Plan 1st Floor Partial Plan | 8/19/2019 0:02 |
| A-201.3 | Architectural-Updates 08/19/19 | Architectural Plan 1st Floor Partial Plan | 8/19/2019 0:02 |
| A-201.4 | Architectural-Updates 08/19/19 | Architectural Plan 1st Floor Partial Plan | 8/19/2019 0:02 |
| A-201M | Architectural-Updates 08/19/19 | Architectural Plan Floor 1M Upper Parking | 8/19/2019 0:02 |
| A-201M.1 | Architectural-Updates 08/19/19 | Architectural Plan Floor 1M Upper Parking Partial Plan | 8/19/2019 0:02 |
| A-201M.2 | Architectural-Updates 08/19/19 | Architectural Plan Floor 1M Upper Parking | 8/19/2019 0:02 |
| A-202 | Architectural-Updates 08/19/19 | Architectural Plan Floor 2 | 8/19/2019 0:02 |
| A-202.1 | Architectural-Updates 08/19/19 | Architectural Plan 2nd Floor Partial Plan | 8/19/2019 0:02 |
| A-202.2 | Architectural-Updates 08/19/19 | Architectural Plan 2nd Floor Partial Plan | 8/19/2019 0:02 |
| A-202.3 | Architectural-Updates 08/19/19 | Architectural Plan 2nd Floor Partial Plan | 8/19/2019 0:02 |
| A-202.4 | Architectural-Updates 08/19/19 | Architectural Plan 2nd Floor Partial Plan | 8/19/2019 0:02 |
| A-203 | Architectural-Updates 08/19/19 | Architectural Plan 3rd | 8/19/2019 0:02 |
| A-203.1 | Architectural-Updates 08/19/19 | Architectural Plan 3rd Floor Partial Plan | 8/19/2019 0:02 |
| A-203.2 | Architectural-Updates 08/19/19 | Architectural Plan 3rd Floor Partial Plan | 8/19/2019 0:02 |
| A-203.3 | Architectural-Updates 08/19/19 | Architectural Plan 3rd Floor Partial Plan | 8/19/2019 0:02 |
| A-204 | Architectural-Updates 08/19/19 | Architectural Plan 4th Floor | 8/19/2019 0:02 |
| A-204.1 | Architectural-Updates 08/19/19 | Architectural Plan 4th Floor Partial Plan | 8/19/2019 0:02 |
| A-204.2 | Architectural-Updates 08/19/19 | Architectural Plan 4th Floor Partial Plan | 8/19/2019 0:02 |
| A-204.3 | Architectural-Updates 08/19/19 | Architectural Plan 4th Floor Partial Plan | 8/19/2019 0:02 |
| A-204.4 | Architectural-Updates 08/19/19 | Architectural Plan 4th Floor Partial Plan | 8/19/2019 0:02 |
| A-205 | Architectural-Updates 08/19/19 | Architectural Plan Floor 5 | 8/19/2019 0:02 |
| A-205.1 | Architectural-Updates 08/19/19 | Architectural Plan 5th Floor Partial Plan | 8/19/2019 0:02 |
| A-205.2 | Architectural-Updates 08/19/19 | Architectural Plan 4th Floor Partial Plan | 8/19/2019 0:02 |
| A-205.3 | Architectural-Updates 08/19/19 | Architectural Plan 4th Floor Partial Plan | 8/19/2019 0:02 |
| A-205.4 | Architectural-Updates 08/19/19 | Architectural Plan 4th Floor Partial Plan | 8/19/2019 0:02 |
| A-206 | Architectural-Updates 08/19/19 | Architectural Plan Floor 6 | 8/19/2019 0:02 |
| A-206.1 | Architectural-Updates 08/19/19 | Architectural Plan 6th Floor Partial Plan | 8/19/2019 0:02 |
| A-206.2 | Architectural-Updates 08/19/19 | Architectural Plan 6th Floor Partial Plan | 8/19/2019 0:02 |
| A-206.3 | Architectural-Updates 08/19/19 | Architectural Plan 6th Floor Partial Plan | 8/19/2019 0:02 |
| A-206.4 | Architectural-Updates 08/19/19 | Architectural Plan 6th Floor Partial Plan | 8/19/2019 0:02 |
| A-207 | Architectural-Updates 08/19/19 | Architectural Plan Floor 7 | 8/19/2019 0:02 |
| A-207.1 | Architectural-Updates 08/19/19 | Architectural Plan 7th Floor Partial Plan | 8/19/2019 0:02 |
| A-207.2 | Architectural-Updates 08/19/19 | Architectural Plan 7th Floor Partial Plan | 8/19/2019 0:02 |
| A-207.3 | Architectural-Updates 08/19/19 | Architectural Plan 7th Floor Partial Plan | 8/19/2019 0:02 |
| A-208 | Architectural-Updates 08/19/19 | Architectural Plan Floor 8-Bulkhead Plan | 8/19/2019 0:02 |
| A-211 | Architectural-Updates 08/19/19 | Roof Details | 8/19/2019 0:02 |
| A-212 | Architectural-Updates 08/19/19 | Roof Details/Extensive Green Roof | 8/19/2019 0:02 |
| A-213 | Architectural-Updates 08/19/19 | Roof Details/Pedestal System Details | 8/19/2019 0:02 |
| A-221.1 | Architectural-Updates 08/19/19 | Reflected Ceiling Plan 1st Floor | 8/19/2019 0:02 |
| A-221.2 | Architectural-Updates 08/19/19 | Reflected Ceiling Plan 1st Floor | 8/19/2019 0:02 |
| A-221.3 | Architectural-Updates 08/19/19 | Reflected Ceiling Plan 1st Floor | 8/19/2019 0:02 |
| A-221.4 | Architectural-Updates 08/19/19 | Reflected Ceiling Plan 1st Floor | 8/19/2019 0:02 |
| A-222.1 | Architectural-Updates 08/19/19 | Reflected Ceiling Plan 2nd Floor | 8/19/2019 0:02 |
| A-222.2 | Architectural-Updates 08/19/19 | Reflected Ceiling Plan 2nd Floor | 8/19/2019 0:02 |
| A-222.3 | Architectural-Updates 08/19/19 | Reflected Ceiling Plan 2nd Floor | 8/19/2019 0:02 |
| A-222.4 | Architectural-Updates 08/19/19 | Reflected Ceiling Plan 2nd Floor | 8/19/2019 0:02 |
| A-223.1 | Architectural-Updates 08/19/19 | Reflected Ceiling Plan 3rd Floor Partial Plan | 8/19/2019 0:02 |
| A-223.2 | Architectural-Updates 08/19/19 | Reflected Ceiling Plan 3rd Floor Partial Plan | 8/19/2019 0:02 |
| A-223.3 | Architectural-Updates 08/19/19 | Reflected Ceiling Plan 3rd Floor Partial Plan | 8/19/2019 0:02 |
| A-224.1 | Architectural-Updates 08/19/19 | Reflected Ceiling Plan 4th Floor Partial Plan | 8/19/2019 0:02 |
| A-224.2 | Architectural-Updates 08/19/19 | Reflected Ceiling Plan 4th Floor Partial Plan | 8/19/2019 0:02 |
| A-224.3 | Architectural-Updates 08/19/19 | Reflected Ceiling Plan 4th Floor Partial Plan | 8/19/2019 0:02 |
| A-224.4 | Architectural-Updates 08/19/19 | Reflected Ceiling Plan 4th Floor Partial Plan | 8/19/2019 0:02 |
| A-225.1 | Architectural-Updates 08/19/19 | Reflected Ceiling Plan 5th Floor Partial Plan | 8/19/2019 0:02 |
| A-225.2 | Architectural-Updates 08/19/19 | Reflected Ceiling Plan 5th Floor Partial Plan | 8/19/2019 0:02 |
| A-225.3 | Architectural-Updates 08/19/19 | Reflected Ceiling Plan 5th Floor Partial Plan | 8/19/2019 0:02 |
| A-225.4 | Architectural-Updates 08/19/19 | Reflected Ceiling Plan 5th Floor Partial Plan | 8/19/2019 0:02 |
| A-226.1 | Architectural-Updates 08/19/19 | Reflected Ceiling Plan 6th Floor Partial Plan | 8/19/2019 0:02 |
| A-226.2 | Architectural-Updates 08/19/19 | Reflected Ceiling Plan 6th Floor Partial Plan | 8/19/2019 0:02 |
| A-226.3 | Architectural-Updates 08/19/19 | Reflected Ceiling Plan 6th Floor Partial Plan | 8/19/2019 0:02 |
| A-226.4 | Architectural-Updates 08/19/19 | Reflected Ceiling Plan 6th Floor Partial Plan | 8/19/2019 0:02 |
| A-227 | Architectural-Updates 08/19/19 | Reflected Ceiling Plan Floor 7 Partial Plan | 8/19/2019 0:02 |
| A-227.1 | Architectural-Updates 08/19/19 | Reflected Ceiling Plan 7th Floor Partial Plan | 8/19/2019 0:02 |
| A-227.2 | Architectural-Updates 08/19/19 | Reflected Ceiling Plan 7th Floor Partial Plan | 8/19/2019 0:02 |
| A-227.3 | Architectural-Updates 08/19/19 | Reflected Ceiling Plan 7th Floor Partial Plan | 8/19/2019 0:02 |
| A-228 | Architectural-Updates 08/19/19 | Reflected Ceiling Plan 8th Floor | 8/19/2019 0:02 |
| A-230 | Architectural-Updates 08/19/19 | ANSI Compliant Bathrooms & Details | 8/19/2019 0:02 |

| | | | |
|---|---|---|---|
| A-240 | Architectural-Updates 08/19/19 | ANSI Compliant Kitchen & Details | 8/19/2019 0:02 |
| A-300 | Architectural-Updates 08/19/19 | Building Elevations Grand Street | 8/19/2019 0:02 |
| A-301 | Architectural-Updates 08/19/19 | Building Elevations Eighth Street | 8/19/2019 0:02 |
| A-302 | Architectural-Updates 08/19/19 | Building Elevations Clinton Street | 8/19/2019 0:02 |
| A-303 | Architectural-Updates 08/19/19 | Building Elevations South Building A Interior | 8/19/2019 0:02 |
| A-304 | Architectural-Updates 08/19/19 | Building Elevations/Sections -Section AA (Building A) | 8/19/2019 0:02 |
| A-305 | Architectural-Updates 08/19/19 | Building Elevations/Sections -Section BB (Building A) | 8/19/2019 0:02 |
| A-306 | Architectural-Updates 08/19/19 | Building Elevations/Sections -Section CC (Building B/C/Court) | 8/19/2019 0:02 |
| A-307 | Architectural-Updates 08/19/19 | Building Elevations/Sections -Section DD (Building A/B) | 8/19/2019 0:02 |
| A-308 | Architectural-Updates 08/19/19 | Building Elevations/Sections -Section EE (Building A/Court) | 8/19/2019 0:02 |
| A-309 | Architectural-Updates 08/19/19 | Building Elevations/Sections -Section FF (Building A/Court) | 8/19/2019 0:02 |
| A-310 | Architectural-Updates 08/19/19 | Building Elevations/Sections -Section GG (Building A/C) | 8/19/2019 0:02 |
| A-311 | Architectural-Updates 08/19/19 | Glazing Schedule | 8/19/2019 0:02 |
| A-312 | Architectural-Updates 08/19/19 | Glazing Schedule (Continued) | 8/19/2019 0:02 |
| A-313 | Architectural-Updates 08/19/19 | Glazing Schedule-Commercial (Continued) | 8/19/2019 0:02 |
| A-320 | Architectural-Updates 08/19/19 | Brick Repair Details | 8/19/2019 0:02 |
| A-411 | Architectural-Updates 08/19/19 | Wall Sections-Building A | 8/19/2019 0:02 |
| A-411A | Architectural-Updates 08/19/19 | | 8/19/2019 0:02 |
| A-412 | Architectural-Updates 08/19/19 | Wall Sections-Building B | 8/19/2019 0:02 |
| A-413 | Architectural-Updates 08/19/19 | Wall Sections-Building C | 8/19/2019 0:02 |
| A-414 | Architectural-Updates 08/19/19 | Wall Sections Building C | 8/19/2019 0:02 |
| A-415 | Architectural-Updates 08/19/19 | Section Details | 8/19/2019 0:02 |
| A-416 | Architectural-Updates 08/19/19 | Enlarged Sections-Building A | 8/19/2019 0:02 |
| A-417 | Architectural-Updates 08/19/19 | | 8/19/2019 0:02 |
| A-420 | Architectural-Updates 08/19/19 | Enlarged North West Stair Plans-Building A & Stair Details | 8/19/2019 0:02 |
| A-421 | Architectural-Updates 08/19/19 | Enlarged North East Stair Plans-Building A | 8/19/2019 0:02 |
| A-422 | Architectural-Updates 08/19/19 | Enlarged South West Stair Plans-Building B | 8/19/2019 0:02 |
| A-423 | Architectural-Updates 08/19/19 | Enlarged South East Stair Plans-Building C | 8/19/2019 0:02 |
| A-424 | Architectural-Updates 08/19/19 | Enlarged typical unit interior Stairs | 8/19/2019 0:02 |
| A-425 | Architectural-Updates 08/19/19 | Stair Section | 8/19/2019 0:02 |
| A-426 | Architectural-Updates 08/19/19 | Stair Section | 8/19/2019 0:02 |
| A-500 | Architectural-Updates 08/19/19 | Door Schedule-1st & 2nd Floor | 8/19/2019 0:02 |
| A-501 | Architectural-Updates 08/19/19 | Door Schedule-3rd Floor | 8/19/2019 0:02 |
| A-502 | Architectural-Updates 08/19/19 | Door Schedule-4th Floor | 8/19/2019 0:02 |
| A-503 | Architectural-Updates 08/19/19 | Door Schedule-5th Floor | 8/19/2019 0:02 |
| A-504 | Architectural-Updates 08/19/19 | Door Schedule-6th Floor | 8/19/2019 0:02 |
| A-505 | Architectural-Updates 08/19/19 | Door Schedule-7th, 8th & 9th Floor & Hardware Schedule | 8/19/2019 0:02 |
| A-506 | Architectural-Updates 08/19/19 | Door Types/Door Details | 8/19/2019 0:02 |
| A-510 | Architectural-Updates 08/19/19 | Title Sheet/Tax Map/General Notes/Drawing List | 8/19/2019 0:02 |
| A-600 | Architectural-Updates 08/19/19 | Miscellaneous Details 1 & Masonry/Firestopping | 8/19/2019 0:02 |
| A-601 | Architectural-Updates 08/19/19 | Metal Stud Framing Details | 8/19/2019 0:02 |
| A-602 | Architectural-Updates 08/19/19 | ACM Panel Details | 8/19/2019 0:02 |
| A-603 | Architectural-Updates 08/19/19 | Miscellaneous Details | 8/19/2019 0:02 |
| A-604 | Architectural-Updates 08/19/19 | | 8/19/2019 0:02 |
| A-701.1 | Architectural-Updates 08/19/19 | SLAB PROFILE PLAN-1st FLR PARTIAL PLAN BUILDING A | 8/19/2019 0:02 |
| A-701.2 | Architectural-Updates 08/19/19 | SLAB PROFILE PLAN-1st FLR PARTIAL PLAN BUILDING C | 8/19/2019 0:02 |
| A-701.3 | Architectural-Updates 08/19/19 | SLAB PROFILE PLAN-1st FLR PARTIAL PLAN BUILDING C | 8/19/2019 0:02 |
| A-701.4 | Architectural-Updates 08/19/19 | SLAB PROFILE PLAN-1st FLR PARTIAL PLAN BUILDING B | 8/19/2019 0:02 |
| BA7-01-CS | Shop Drawings-Rebar & Beam 09/30/19 | Building A-7th Floor Beam Reinforcement Details | 9/30/2019 0:00 |
| BC2-01-CS | Structural Updates-Rebar 7/29/19 | 2nd FLOOR BEAM REINFORCEMENT DETAILS BLDG-C | 7/29/2019 0:00 |
| BMA-01-CS | Shop Drawings-Rebar 08/12/19 | BUILDING A-BEAM REINFORCEMENT DETAILS | 8/12/2019 0:00 |
| BMC-01-CS | Shop Drawings-Rebar 07.05.19 | Building C-Tie Beam Grade Beam Reinforcement Details | 7/5/2019 0:00 |
| CLA-10-CS | Shop Drawings-Rebar 09/18/19 | Column Reinforcement Details | 9/18/2019 0:00 |
| CLA-11-CS | Shop Drawings-Rebar 09/18/19 | Column Reinforcement Details | 9/18/2019 0:00 |
| CLA-12-CS | Shop Drawings-Rebar 09/18/19 | Column Reinforcement Details | 9/18/2019 0:00 |
| CLA-13-CS | Shop Drawings-Rebar 09/18/19 | Column Reinforcement Details | 9/18/2019 0:00 |
| CLA-14-CS | Shop Drawings-Rebar 09/18/19 | Column Reinforcement Details | 9/18/2019 0:00 |
| CLA-15-CS | Shop Drawings-Rebar 09/18/19 | Column Reinforcement Details | 9/18/2019 0:00 |
| CLA-16-CS | Shop Drawings-Rebar 09/18/19 | Column Reinforcement Details | 9/18/2019 0:00 |
| CLB-01-CS | Shop drawings-Rebar 09/11/19 | COLUMN REINFORCEMENT DETAILS BLDG-B | 9/11/2019 0:00 |
| CLB-02-CS | Shop drawings-Rebar 09/11/19 | COLUMN REINFORCEMENT DETAILS BLDG-B | 9/11/2019 0:00 |
| CLB-03-CS | Shop drawings-Rebar 09/11/19 | COLUMN REINFORCEMENT DETAILS BLDG-B | 9/11/2019 0:00 |
| CLB-04-CS | Shop drawings-Rebar 09/11/19 | COLUMN REINFORCEMENT DETAILS BLDG-B | 9/11/2019 0:00 |
| CLC-01-CS | Shop Drawings-Rebar 09/20/19 | COLUMN REINFORCEMENT DETAILS BLDG-C | 9/20/2019 0:00 |
| CLC-02-CS | Shop Drawings-Rebar 09/20/19 | COLUMN REINFORCEMENT DETAILS BLDG-C | 9/20/2019 0:00 |
| CLC-03-CS | Shop Drawings-Rebar 09/20/19 | COLUMN REINFORCEMENT DETAILS BLDG-C | 9/20/2019 0:00 |
| CLC-04-C | Shop Drawings-Rebar 07/26/19 | COLUMN REINFORCEMENT DETAILS BLDG-C | 7/26/2019 0:00 |
| CLC-04-CS | Shop Drawings-Rebar 09/20/19 | COLUMN REINFORCEMENT DETAILS BLDG-C | 9/20/2019 0:00 |
| CLC-05-CS | Shop Drawings-Rebar 09/20/19 | COLUMN REINFORCEMENT DETAILS BLDG-C | 9/20/2019 0:00 |
| E-001 | MEP-Electrical 07.08.19 | Electrical Sybol List & General Notes | 7/8/2019 0:02 |
| E-002 | MEP-Electrical 07.08.19 | Electrical Specifications | 7/8/2019 0:02 |
| E-003 | MEP-Electrical 07.08.19 | Electrical Specifications | 7/8/2019 0:02 |
| E-100 | MEP-Electrical 07.08.19 | Electrical Lighting Plan-First Floor | 7/8/2019 0:02 |
| E-101 | MEP-Electrical 07.08.19 | Electrical Lighting Plan-Mezzanine | 7/8/2019 0:02 |
| E-102 | MEP-Electrical 07.08.19 | Electrical Lighting Plan-Second Floor | 7/8/2019 0:02 |
| E-103 | MEP-Electrical 07.08.19 | Electrical Lighting Plan-Third Floor | 7/8/2019 0:02 |
| E-104 | MEP-Electrical 07.08.19 | Electrical Lighting Plan-Fourth Floor | 7/8/2019 0:02 |
| E-105 | MEP-Electrical 07.08.19 | Electrical Lighting Plan-Fifth Floor | 7/8/2019 0:02 |
| E-106 | MEP-Electrical 07.08.19 | Electrical Lighting Plan-Sixth Floor | 7/8/2019 0:02 |
| E-107 | MEP-Electrical 07.08.19 | Electrical Lighting Plan-Seventh Floor | 7/8/2019 0:02 |
| E-108 | MEP-Electrical 07.08.19 | Electrical Lighting Plan-Roof | 7/8/2019 0:02 |
| E-200 | MEP-Electrical 07.08.19 | Electrical Power Plan-First Floor | 7/8/2019 0:02 |

| | | | |
|---|---|---|---|
| E-201 | MEP-Electrical 07.08.19 | Electrical Power Plan-Mezzanine | 7/8/2019 0:02 |
| E-202 | MEP-Electrical 07.08.19 | Electrical Power Plan-Second Floor | 7/8/2019 0:02 |
| E-203 | MEP-Electrical 07.08.19 | Electrical Power Plan-Third Floor | 7/8/2019 0:02 |
| E-204 | MEP-Electrical 07.08.19 | Electrical Power Plan-Fourth Floor | 7/8/2019 0:02 |
| E-205 | MEP-Electrical 07.08.19 | Electrical Power Plan-Fifth Floor | 7/8/2019 0:02 |
| E-206 | MEP-Electrical 07.08.19 | Electrical Power Plan-Sixth Floor | 7/8/2019 0:02 |
| E-207 | MEP-Electrical 07.08.19 | Electrical Power Plan-Seventh Floor | 7/8/2019 0:02 |
| E-208 | MEP-Electrical 07.08.19 | Electrical Power Plan-Roof | 7/8/2019 0:02 |
| E-209 | MEP-Electrical 07.08.19 | Electrical Power Plan-Bulkhead | 7/8/2019 0:02 |
| E-300 | MEP-Electrical 07.08.19 | Electrical Riser Diagram | 7/8/2019 0:02 |
| E-310 | MEP-Electrical 07.08.19 | Electrical Panel Schedules-Residential Typical | 7/8/2019 0:02 |
| E-311 | MEP-Electrical 07.08.19 | Electrical Panel Schedules | 7/8/2019 0:02 |
| E-312 | MEP-Electrical 07.08.19 | Electrical Panel Schedules | 7/8/2019 0:02 |
| FA-100 | MEP-Fire Alarm 07.08.19 | Fire Alarm Riser & Notes | 7/8/2019 0:01 |
| FA-200 | MEP-Fire Alarm 07.08.19 | Fire Alarm Plan-First Floor | 7/8/2019 0:01 |
| FA-201 | MEP-Fire Alarm 07.08.19 | Fire Alarm Plan-Mezzanine | 7/8/2019 0:01 |
| FA-202 | MEP-Fire Alarm 07.08.19 | Fire Alarm Plan-Second Floor | 7/8/2019 0:01 |
| FA-203 | MEP-Fire Alarm 07.08.19 | Fire Alarm Plan-Third Floor | 7/8/2019 0:01 |
| FA-204 | MEP-Fire Alarm 07.08.19 | Fire Alarm Plan-Fourth Floor | 7/8/2019 0:01 |
| FA-205 | MEP-Fire Alarm 07.08.19 | Fire Alarm Plan-Fifth Floor | 7/8/2019 0:01 |
| FA-206 | MEP-Fire Alarm 07.08.19 | Fire Alarm Plan-Sixth Floor | 7/8/2019 0:01 |
| FA-207 | MEP-Fire Alarm 07.08.19 | Fire Alarm Plan-Seventh Floor | 7/8/2019 0:01 |
| FA-208 | MEP-Fire Alarm 07.08.19 | Fire Alarm Plan-Eighth Floor | 7/8/2019 0:01 |
| FP-001.00 | MEP-Fire Protection Updates 07/08/19 | Fire Protection Details & Notes-1 | 7/8/2019 0:04 |
| FP-001.00-720 | MEP-Fire Protection | Fire Protection Details & Notes-1 | 2/26/2019 0:06 |
| FP-002.00 | MEP-Fire Protection Updates 07/08/19 | Fire Protection Details & Notes-2 | 7/8/2019 0:04 |
| FP-002.00-720 | MEP-Fire Protection | Fire Protection Details & Notes-2 | 2/26/2019 0:06 |
| FP-003.00 | MEP-Fire Protection Updates 07/08/19 | Fire Protection Details & Notes-3 | 7/8/2019 0:04 |
| FP-003.00-720 | MEP-Fire Protection | Fire Protection Details & Notes-3 | 2/26/2019 0:06 |
| FP-100.00 | MEP-Fire Protection Updates 07/08/19 | | 7/8/2019 0:04 |
| FP-100.00-720 | MEP-Fire Protection | Fire Protection Plan-1st Floor | 2/26/2019 0:06 |
| FP-110.00 | MEP-Fire Protection Updates 07/08/19 | Fire Protection Plan-1st Floor & Mezzanine | 7/8/2019 0:04 |
| FP-110.00-720 | MEP-Fire Protection | Fire Protection Plan-1st Floor & Mezzanine | 2/26/2019 0:06 |
| FP-200.00 | MEP-Fire Protection Updates 07/08/19 | Fire Protection Plan-2nd Floor | 7/8/2019 0:04 |
| FP-200.00-720 | MEP-Fire Protection | Fire Protection Plan-2nd floor | 2/26/2019 0:06 |
| FP-300.00 | MEP-Fire Protection Updates 07/08/19 | Fire Protection Plan-3rd Floor | 7/8/2019 0:04 |
| FP-300.00-720 | MEP-Fire Protection | Fire Protection Plan-3rd floor | 2/26/2019 0:06 |
| FP-400.00 | MEP-Fire Protection Updates 07/08/19 | Fire Protection Plan-4th Floor | 7/8/2019 0:04 |
| FP-400.00-720 | MEP-Fire Protection | Fire Protection Plan-4th floor | 2/26/2019 0:06 |
| FP-500.00 | MEP-Fire Protection Updates 07/08/19 | Fire Protection Plan-5th Floor | 7/8/2019 0:04 |
| FP-500.00-720 | MEP-Fire Protection | Fire Protection Plan-5th floor | 2/26/2019 0:06 |
| FP-600.00 | MEP-Fire Protection Updates 07/08/19 | Fire Protection Plan-6th Floor | 7/8/2019 0:04 |
| FP-600.00-720 | MEP-Fire Protection | Fire Protection Plan-6th floor | 2/26/2019 0:06 |
| FP-700.00 | MEP-Fire Protection Updates 07/08/19 | Fire Protection Plan-Penthouse Floor | 7/8/2019 0:04 |
| FP-700.00-720 | MEP-Fire Protection | Fire Protection Plan-Penthouse Floor | 2/26/2019 0:06 |
| FP-800.00 | MEP-Fire Protection Updates 07/08/19 | Fire Protection Plan-Roof | 7/8/2019 0:04 |
| FP-800.00-720 | MEP-Fire Protection | Fire Protection Plan-Roof | 2/26/2019 0:06 |
| FP-901.00 | MEP-Fire Protection Updates 07/08/19 | Fire Protection Riser Diagram & Details-1 | 7/8/2019 0:04 |
| FP-901.00-720 | MEP-Fire Protection | Fire Protection Riser Diagram & Details-1 | 2/26/2019 0:04 |
| FP-902.00 | MEP-Fire Protection Updates 07/08/19 | Fire Protection Riser Diagram & Details-2 | 7/8/2019 0:04 |
| FP-902.00-720 | MEP-Fire Protection | Fire Protection Riser Diagram & Details-2 | 2/26/2019 0:06 |
| H-100 | MEP-HVAC 07.08.19 | HVAC Notes, Symbols, & Abbreviations | 6/8/2019 0:00 |
| H-210 | MEP-HVAC 07.08.19 | HVAC 1st Floor Plan | 6/8/2019 0:00 |
| H-215 | MEP-HVAC 07.08.19 | HVAC 1st Floor Parking Mezzanine Plan | 6/8/2019 0:00 |
| H-220 | MEP-HVAC 07.08.19 | HVAC 2nd Floor Plan | 6/8/2019 0:00 |
| H-230 | MEP-HVAC 07.08.19 | HVAC 3rd Floor Plan | 6/8/2019 0:00 |
| H-240 | MEP-HVAC 07.08.19 | HVAC 4th Floor Plan | 6/8/2019 0:00 |
| H-250 | MEP-HVAC 07.08.19 | HVAC 5th Floor Plan | 6/8/2019 0:00 |
| H-260 | MEP-HVAC 07.08.19 | HVAC 6th Floor Plan | 6/8/2019 0:00 |
| H-270 | MEP-HVAC 07.08.19 | HVAC 7th Floor Plan | 6/8/2019 0:00 |
| H-280 | MEP-HVAC 07.08.19 | HVAC 8th Floor Plan | 6/8/2019 0:00 |
| H-290 | MEP-HVAC 07.08.19 | HVAC 8th Floor Roof Plan | 6/8/2019 0:00 |
| H-300 | MEP-HVAC 07.08.19 | HVAC Schedules-Sheet 1 | 6/8/2019 0:00 |
| H-310 | MEP-HVAC 4/29/19 Updates | HVAC Schedules-Sheet 2 | 5/29/2019 0:00 |
| H-320 | MEP-HVAC 07.08.19 | Ventilation Schedules Sheet 1 | 6/8/2019 0:00 |
| H-330 | MEP-HVAC 07.08.19 | Ventilation Schedules Sheet 2 | 6/8/2019 0:00 |
| H-350 | MEP-HVAC 07.08.19 | HVAC Diagrams | 6/8/2019 0:00 |
| H-400 | MEP-HVAC 07.08.19 | HVAC Details | 6/8/2019 0:00 |
| ID-000 | Interior Design | Cover Sheet | 2/27/2019 0:00 |
| ID-001 | Interior Design | General Notes | 2/27/2019 0:00 |
| ID-002 | Interior Design-Full Set | Sales Center Cover Sheet | 1/25/2019 0:00 |
| ID-003 | Interior Design-Full Set | Sales Center General Notes | 1/25/2019 0:00 |
| ID-100 | Interior Design | 731 Clinton Lobby Finish Floor/Furniture/RCP/Lighting/Power Plan | 2/27/2019 0:00 |
| ID-110 | Interior Design | 731 Clinton Typical Corridor Finish Floor/RCP/Lighting/Power Plan | 2/27/2019 0:00 |
| ID-120 | Interior Design | 720 Clinton Lobby Finish Floor Plan & Furniture Plan | 2/27/2019 0:00 |
| ID-121 | Interior Design | 720 Clinton Lobby Reflected Ceiling & Power/Lighting Plan | 2/27/2019 0:00 |
| ID-130 | Interior Design | Typical Corridor Finish Floor Plan/RCP/Lighting/Power Plan | 2/27/2019 0:00 |
| ID-140 | Interior Design | Lounge & Kids Room Finish Floor Plan & Furniture Plan | 2/27/2019 0:00 |
| ID-141 | Interior Design | Lounge & Kids Room Reflected Ceiling & Power/Lighting Plan | 2/27/2019 0:00 |
| ID-150 | Interior Design | Gym Finish Floor Plan & Furniture Plan | 2/27/2019 0:00 |
| ID-151 | Interior Design | Gym Reflected Ceiling & Power/Lighting Plan | 2/27/2019 0:00 |
| ID-160 | Interior Design | Rooftop/Pool Finish Floor Plan & Furniture Plan | 2/27/2019 0:00 |

| ID-161 | Interior Design | Rooftop/Pool Reflected Ceiling & Power/Lighting Plan | 2/27/2019 0:00 |
| ID-170 | Interior Design | Model Unit #310 Finish Floor Plan & Furniture Plan | 2/27/2019 0:00 |
| ID-171 | Interior Design | Model Unit #310 Reflected Ceiling Plan & Power/Lighting Plan | 2/27/2019 0:00 |
| ID-180 | Interior Design-Add | Sales enter Finish Floor & Furniture Plan | 2/27/2019 0:01 |
| ID-181 | Interior Design-Add | Sales Center Reflected Ceiling Plan & Power/Lighting Plan | 2/27/2019 0:00 |
| ID-400 | Interior Design | 731 Clinton Lobby Elevations | 2/27/2019 0:00 |
| ID-410 | Interior Design | 731 Clinton Lobby Elevations | 2/27/2019 0:00 |
| ID-420 | Interior Design | 720 Clinton Lobby Elevations | 2/27/2019 0:00 |
| ID-421 | Interior Design | 720 Clinton Lobby Elevations | 2/27/2019 0:00 |
| ID-422 | Interior Design | 720 Clinton Lobby Elevations | 2/27/2019 0:00 |
| ID-423 | Interior Design | 720 Clinton Lobby Elevations | 2/27/2019 0:00 |
| ID-430 | Interior Design | 720 Clinton Typical Corridor & Elevator Vestibule Elevs | 2/27/2019 0:00 |
| ID-431 | Interior Design | 720 Clinton Typical Corridor & Elevator Vestibule Elevs | 2/27/2019 0:00 |
| ID-440 | Interior Design | Lounge Elevations | 2/27/2019 0:00 |
| ID-441 | Interior Design | Lounge Elevations | 2/27/2019 0:00 |
| ID-442 | Interior Design | Lounge Elevations | 2/27/2019 0:00 |
| ID-443 | Interior Design | Lounge Elevations | 2/27/2019 0:00 |
| ID-444 | Interior Design | Lounge Elevations | 2/27/2019 0:00 |
| ID-450 | Interior Design | Gym/Yoga Elevations | 2/27/2019 0:00 |
| ID-451 | Interior Design | Gym/Yoga Elevations | 2/27/2019 0:00 |
| ID-452 | Interior Design | Gym/Yoga Elevations | 2/27/2019 0:00 |
| ID-460 | Interior Design | Rooftop/Pool Elevations | 2/27/2019 0:00 |
| ID-461 | Interior Design | Rooftop/Pool Elevations | 2/27/2019 0:00 |
| ID-470 | Interior Design | Bathroom Plans & Elevations | 2/27/2019 0:00 |
| ID-471 | Interior Design | Kitchen Elevations | 2/27/2019 0:00 |
| ID-480 | Interior Design-Full Set | Sales Center Elevations | 1/25/2019 0:00 |
| ID-481 | Interior Design-Full Set | Sales Center Elevations | 1/25/2019 0:00 |
| ID-482 | Interior Design-Full Set | Sales Center Elevations | 1/25/2019 0:00 |
| ID-483 | Interior Design-Full Set | Sales Center Kitchen, Kitchenette, & Laundry Elevations | 1/25/2019 0:00 |
| ID-484 | Interior Design-Full Set | Sales Center Elevations | 1/25/2019 0:00 |
| ID-485 | Interior Design-Full Set | Sales Center Bathroom Elevations | 1/25/2019 0:00 |
| ID-500 | Interior Design | Schedules-Appliances, Electrical & Lighting | 2/27/2019 0:00 |
| ID-501 | Interior Design | Schedules-Plumbing | 2/27/2019 0:00 |
| ID-502 | Interior Design | Schedules-Accessories, Cabinetry Hardware, Door Hardware | 2/27/2019 0:00 |
| ID-503 | Interior Design | Schedules-Finishes | 2/27/2019 0:00 |
| ID-504 | Interior Design-Full Set | Schedules Appliances, Electrical & Lighting | 1/25/2019 0:00 |
| ID-505 | Interior Design-Full Set | Schedules Plumbing | 1/25/2019 0:00 |
| ID-506 | Interior Design-Full Set | Schedules Accessories, Cabinetry Hardware, Door Hardware | 1/25/2019 0:00 |
| ID-700 | Interior Design | Amenities Detail, Door Schedules, Elevations & Details | 2/27/2019 0:00 |
| ID-701 | Interior Design | Lobby Details | 2/27/2019 0:00 |
| ID-702 | Interior Design | Lounge Details | 2/27/2019 0:00 |
| ID-703 | Interior Design | Typical Details-Apartment | 2/27/2019 0:00 |
| ID-704 | Interior Design | Typical Details-Apartment | 2/27/2019 0:00 |
| ID-705 | Interior Design | Bathroom Details | 2/27/2019 0:00 |
| ID-706 | Interior Design | Kitchen Details | 2/27/2019 0:00 |
| ID-780 | Interior Design-Full Set | Typical Details, Sales Center Door Schedule & Details | 1/25/2019 0:00 |
| ID-781 | Interior Design-Full Set | Typical Details, Sales Center, Doors Schedule & Details | 1/25/2019 0:00 |
| ID-782 | Interior Design-Full Set | Typical Details Sales Center | 1/25/2019 0:00 |
| ID-783 | Interior Design-Full Set | Bathroom Details | 1/25/2019 0:00 |
| ID-784 | Interior Design-Full Set | Sales Center Kitchen Details | 1/25/2019 0:00 |
| OA-018 | MEP-Plumbing | Plumbing Details-2 | 2/26/2019 0:08 |
| P-001 | MEP-Plumbing Updates | Plumbing Specification 1 of 3 | 7/8/2019 0:03 |
| P-002 | MEP-Plumbing Updates | Plumbing Specification 2 of 3 | 7/8/2019 0:03 |
| P-003 | MEP-Plumbing Updates | Plumbing Specification 3 of 3 | 7/8/2019 0:03 |
| P-098 | MEP-Plumbing Updates | Plumbing Legends, Notes and Schedules | 7/8/2019 0:03 |
| P-099 | MEP-Plumbing Updates | Plumbing Schedule | 7/8/2019 0:03 |
| P-100 | MEP-Plumbing Updates | 1st Floor Plumbing Sanitary | 7/8/2019 0:03 |
| P-100A | MEP-Plumbing Updates | Underside Plumbing Sanitary | 7/8/2019 0:03 |
| P-101 | MEP-Plumbing Updates | 1st Floor Mezz Plumbing Sanitary | 7/8/2019 0:03 |
| P-102.00 | MEP-Plumbing Updates | 2nd Floor Plumbing Sanitary | 7/8/2019 0:03 |
| P-103.00 | MEP-Plumbing Updates | 3rd Floor Plumbing Sanitary | 7/8/2019 0:03 |
| P-104.00 | MEP-Plumbing Updates | 4th Floor Plumbing Sanitary | 7/8/2019 0:03 |
| P-105.00 | MEP-Plumbing Updates | 5th Floor Plumbing Sanitary | 7/8/2019 0:03 |
| P-106.00 | MEP-Plumbing Updates | 6th Floor Plumbing Sanitary | 7/8/2019 0:03 |
| P-106.00-729 | MEP-Fire Protection | | 2/26/2019 0:06 |
| P-107.00 | MEP-Plumbing Updates | 7th Floor Plumbing Sanitary | 7/8/2019 0:03 |
| P-108.00 | MEP-Plumbing Updates | Roof Plumbing Sanitary | 7/8/2019 0:03 |
| P-199 | MEP-Plumbing Updates | Basement Water & Gas Plan | 7/8/2019 0:03 |
| P-200 | MEP-Plumbing Updates | 1st Floor Domestic Water & Gas Plan | 7/8/2019 0:03 |
| P-201 | MEP-Plumbing Updates | 1st Floor Mezzanine Domestic Water & Gas Plan | 7/8/2019 0:03 |
| P-202 | MEP-Plumbing Updates | 2nd Floor Domestic Water & Gas Plan | 7/8/2019 0:03 |
| P-203 | MEP-Plumbing Updates | 3rd Floor Domestic Water & Gas Plan | 7/8/2019 0:03 |
| P-204 | MEP-Plumbing Updates | 4th Floor Domestic Water & Gas Plan | 7/8/2019 0:03 |
| P-205 | MEP-Plumbing Updates | 5th Floor Domestic Water & Gas Plan | 7/8/2019 0:03 |
| P-206 | MEP-Plumbing Updates | 6th Floor Domestic Water & Gas Plan | 7/8/2019 0:03 |
| P-207 | MEP-Plumbing Updates | 7th Floor Domestic Water & Gas Plan | 7/8/2019 0:03 |
| P-208 | MEP-Plumbing Updates | Penthouse Domestic Water & Gas Plan | 7/8/2019 0:03 |
| P-301 | MEP-Plumbing Updates | Water Riser Part 1 | 7/8/2019 0:03 |
| P-302 | MEP-Plumbing Updates | Water Riser Part 2 | 7/8/2019 0:03 |
| P-303 | MEP-Plumbing Updates | Water Riser Part 3 | 7/8/2019 0:03 |
| P-304 | MEP-Plumbing Updates | Water Riser Part 4 | 7/8/2019 0:03 |
| P-305 | MEP-Plumbing Updates | Water Riser Part 5 | 7/8/2019 0:03 |

| P-306 | MEP-Plumbing Updates | Water Riser Part 6 | 7/8/2019 0:03 |
|---|---|---|---|
| P-307 | MEP-Plumbing Updates | Water Riser Part 7 | 7/8/2019 0:03 |
| P-308 | MEP-Plumbing Updates | Water Riser Part 8 | 7/8/2019 0:03 |
| P-400 | MEP-Plumbing Updates | Plumbing Sanitary Riser-Part 1 | 7/8/2019 0:03 |
| P-401 | MEP-Plumbing Updates | Plumbing Sanitary Riser-Part 2 | 7/8/2019 0:03 |
| P-402 | MEP-Plumbing Updates | Plumbing Sanitary Riser-Part 3 | 7/8/2019 0:03 |
| P-403 | MEP-Plumbing Updates | Plumbing Sanitary Riser-Part 4 | 7/8/2019 0:03 |
| P-404 | MEP-Plumbing Updates | Plumbing Sanitary Riser-Part 5 | 7/8/2019 0:03 |
| P-405 | MEP-Plumbing Updates | Plumbing Sanitary Riser-Part 6 | 7/8/2019 0:03 |
| P-406 | MEP-Plumbing Updates | Plumbing Sanitary Riser-Part 7 | 7/8/2019 0:03 |
| P-407 | MEP-Plumbing Updates | Plumbing Sanitary Riser-Part 8 | 7/8/2019 0:03 |
| P-408 | MEP-Plumbing Updates | Plumbing Sanitary Riser-Part 9 | 7/8/2019 0:03 |
| P-409 | MEP-Plumbing Updates | Plumbing Sanitary Riser-Part 10 | 7/8/2019 0:03 |
| P-410 | MEP-Plumbing Updates | Plumbing Sanitary Riser-Part 11 | 7/8/2019 0:03 |
| P-411 | MEP-Plumbing Updates | Plumbing Sanitary Riser-Part 12 | 7/8/2019 0:03 |
| P-412 | MEP-Plumbing Updates | Plumbing Sanitary Riser-Part 13 | 7/8/2019 0:03 |
| P-499.00 | MEP-Plumbing Updates | 1st Floor Plumbing Utility Plan | 7/8/2019 0:03 |
| P-499A.00 | MEP-Plumbing Updates | Plumbing Sanitary and Storm Utility Plan | 7/8/2019 0:03 |
| P-499B.00 | MEP-Plumbing Updates | Plumbing Details | 7/8/2019 0:03 |
| P-501.00 | MEP-Plumbing Updates | 1st Floor Mezzanine Storm Plan | 7/8/2019 0:03 |
| P-502.00 | MEP-Plumbing Updates | 2nd Floor Storm Plan | 7/8/2019 0:03 |
| P-503.00 | MEP-Plumbing Updates | 3rd Floor Storm Plan | 7/8/2019 0:03 |
| P-504.00 | MEP-Plumbing Updates | 4th Floor Storm Plan | 7/8/2019 0:03 |
| P-505.00 | MEP-Plumbing Updates | 5th Floor Storm Plan | 7/8/2019 0:03 |
| P-506.00 | MEP-Plumbing Updates | 6th Floor Storm Plan | 7/8/2019 0:03 |
| P-507.00 | MEP-Plumbing Updates | 7th Floor Storm Plan | 7/8/2019 0:03 |
| P-508.00 | MEP-Plumbing Updates | Roof Storm Plan | 7/8/2019 0:03 |
| P-530 | MEP-Plumbing Updates | Gas Riser-Part 1 | 7/8/2019 0:03 |
| P-531 | MEP-Plumbing Updates | Gas Riser-Part 2 | 7/8/2019 0:03 |
| P-532 | MEP-Plumbing Updates | Gas Riser-Part 3 | 7/8/2019 0:03 |
| P-630 | MEP-Plumbing Updates | Storm Riser-Part 1 | 7/8/2019 0:03 |
| P-631 | MEP-Plumbing Updates | Storm Riser-Part 2 | 7/8/2019 0:03 |
| P-632 | MEP-Plumbing Updates | Storm Riser-Part 3 | 7/8/2019 0:03 |
| P-920 | MEP-Plumbing Updates | Plumbing Details-1 | 7/8/2019 0:03 |
| P-921 | MEP-Plumbing Updates | Plumbing Details-2 | 7/8/2019 0:03 |
| PC-01-CS | Shop Drawings-07.11.19 Revisions | Building-A Pile Cap Reinf. Details | 7/11/2019 0:00 |
| PC-02-CS | Shop Drawings-07.11.19 Revisions | Building -A Pile Cap Reinf. Details | 7/11/2019 0:00 |
| PC-03-CS | Shop Drawings-07.11.19 Revisions | Building-C Pile Cap Reinf Details | 7/11/2019 0:00 |
| PC-04-CS | Shop Drawings-07.04.19 | Building-B Pile Cap Reinf. Details | 7/4/2019 0:00 |
| PC-05-CS | Shop Drawings-07.04.19 | Building-B Pile Cap Reinf. Details | 7/4/2019 0:00 |
| PHA732-S53-0038x4649 | MEP-HVAC 07.08.19 | Garage Ventilation Control Diagram & Sequence of Operation | 6/8/2019 0:00 |
| S-02 | USG DRYWALL SUSPENSION SYSTEM DETAILS | USG Drywall Suspension System Details | 6/5/2017 0:00 |
| S-100 | Structural-7/12/19 Updates | Cellar & Foundation Plan | 7/12/2019 0:00 |
| S-101 | Structural Updates-7/30/19 | First Floor Framing Plan (revised Foundations B&C 05.02.19) | 7/30/2019 0:00 |
| S-101 (PART 2) | Structural-7/12/19 Updates | First Floor Framing Plan | 7/12/2019 0:00 |
| S-101 (PART1) | Structural-7/12/19 Updates | First Floor Framing Plan | 7/12/2019 0:00 |
| S-101A | Structural Updates-7/30/19 | Building A-Pile Caps Sections & Details | 7/30/2019 0:00 |
| S-101M | Structural Updates-08/14/19 | First Floor Mezzanine Framing Plan | 8/14/2019 0:00 |
| S-102 | Structural Updates-08/14/19 | Building A Second Floor Framing Plan | 8/14/2019 0:00 |
| S-103 | Structural-7/12/19 Updates | Third Floor Framing Plan | 7/12/2019 0:00 |
| S-104 | Structural-7/12/19 Updates | Fourth Floor Framing Plan | 7/12/2019 0:00 |
| S-105 | Structural-7/12/19 Updates | Fifth Floor Framing Plan | 7/12/2019 0:00 |
| S-106 | Structural-7/12/19 Updates | Sixth Floor Framing Plan | 7/12/2019 0:00 |
| S-107 | Structural-7/12/19 Updates | Seventh Floor Framing Plan | 7/12/2019 0:00 |
| S-108 | Structural-7/12/19 Updates | High Roof Framing Plan | 7/12/2019 0:00 |
| S-109 | Structural-7/12/19 Updates | Building A Bulkhead & Dunnage Framing Plan | 7/12/2019 0:00 |
| S-201 | Structural Updates-08/14/19 | Sections I | 8/14/2019 0:00 |
| S-202 | Structural | Sections II | 12/14/2018 0:00 |
| S-210 | Structural-7/12/19 Updates | Pile Cap Details and Sections | 7/12/2019 0:00 |
| S-211 | Structural-7/12/19 Updates | Building B Pile Cap Details and Sections | 7/12/2019 0:00 |
| S-401 | Structural-7/12/19 Updates | Beam Schedule | 7/12/2019 0:00 |
| S-500 | Structural-7/12/19 Updates | Building A Existing Column Schedule | 7/12/2019 0:00 |
| S-501 | Structural-7/12/19 Updates | Building A Column Schedule I | 7/12/2019 0:00 |
| S-502 | Structural-7/12/19 Updates | Building A Column Schedule II & Sear Walls Loads | 7/12/2019 0:00 |
| S-503 | Structural-7/12/19 Updates | Building B Existing & New Column Schedule | 7/12/2019 0:00 |
| S-504 | Structural-7/12/19 Updates | Building C Column Schedule | 7/12/2019 0:00 |
| S-510 | Structural-7/12/19 Updates | Building A Columns Details | 7/12/2019 0:00 |
| S-520 | Structural-7/12/19 Updates | Building A Details | 7/12/2019 0:00 |
| S-521 | Structural Updates-08/14/19 | Building B Shear Rails Details | 8/14/2019 0:00 |
| S-522 | Structural-7/12/19 Updates | Building C Shear Rails Details | 7/12/2019 0:00 |
| S-530 | Structural-7/12/19 Updates | Building A Shear Wall Details | 7/12/2019 0:00 |
| S-531 | Structural-7/12/19 Updates | Building B Shear Wall Details | 7/12/2019 0:00 |
| S-532 | Structural-7/12/19 Updates | Building C Shear Wall Details & Beam Schedule | 7/12/2019 0:00 |
| S-601 | Structural-7/12/19 Updates | Typical Repair Details | 7/12/2019 0:00 |
| S-700 | Structural-7/12/19 Updates | Building A General Notes & Design Criteria | 7/12/2019 0:00 |
| S-701 | Structural-7/12/19 Updates | Building A Typical Details I | 7/12/2019 0:00 |
| S-702 | Structural-7/12/19 Updates | Building A Typical Details II | 7/12/2019 0:00 |
| S-703 | Structural-7/12/19 Updates | Building A Typical Details III | 7/12/2019 0:00 |
| S-704 | Structural-7/12/19 Updates | Building A Typical Details IV | 7/12/2019 0:00 |
| S-705 | Structural-7/12/19 Updates | Building A Typical Details V | 7/12/2019 0:00 |
| S-706 | Structural-7/12/19 Updates | Building A Typical Details VI | 7/12/2019 0:00 |
| S-707 | Structural-7/12/19 Updates | Building A Typical Details VII | 7/12/2019 0:00 |

| | | | |
|---|---|---|---|
| S-708 | Structural-7/12/19 Updates | Building A Typical Details VIII | 7/12/2019 0:00 |
| S-800 | Structural-7/12/19 Updates | Building C-Found, 1st,2nd,3rd flr Framing Plans-Partial Demo Ph1 Construction at Facade | 7/12/2019 0:00 |
| S-801 | Structural Updates-7/24/19 | Building C-Partial Demo & Ph.1 Construction Facada Bracing | 7/24/2019 0:00 |
| S02 | Architectural-720 Clinton | USG Drywall Suspension System Details | 2/26/2019 0:00 |
| SA2-01-CS | Shop Drawings-Rebar 08/12/19 | BUILDING A-2ND FLOOR SLAB REINF. DETAILS | 8/12/2019 0:00 |
| SA3-01-CS | Shop Drawings-Rebar Updates 9/10/19 | Building A-3rd Floor Slab Reinf. Details | 9/10/2019 0:00 |
| SA7-01-CS | Shop Drawings-Rebar & Beam 09/30/19 | Building A-7th Floor Slab Rein. Details | 9/30/2019 0:00 |
| SA7-02-CS | Shop Drawings-Rebar & Beam 09/30/19 | Building A-7th Floor Slab Rein. Details | 9/30/2019 0:00 |
| SA7-03-CS | Shop Drawings-Rebar & Beam 09/30/19 | Building A-7th Floor Slab Rein. Details | 9/30/2019 0:00 |
| SA7-04-CS | Shop Drawings-Rebar & Beam 09/30/19 | Building A-7th Floor Slab Rein. Details | 9/30/2019 0:00 |
| SB2-01-CS | Shop Drawings-Rebar 09/19/19 | Building B-2nd Floor Slab Reinforcement Details | 9/19/2019 0:00 |
| SBM-01-CS | Shop Drawings-Rebar Updates | BUILDING -1st MEZZANINE FLOOR SLAB REINFORCEMENT DETAILS | 8/27/2019 0:00 |
| SBM-02-CS | Shop Drawings-Rebar Updates | BUILDING B-1ST MEZZANINE FLOOR SLAB REINFORCEMENT DETAILS | 8/27/2019 0:00 |
| SBM-03-CS | Shop Drawings-Rebar Updates | BUILDING B-1ST MEZZANINE FLOOR SLAB REINFORCEMENT DETAILS | 8/27/2019 0:00 |
| SBM-04-CS | Shop Drawings-Rebar 09/12/19 | BUILDING B-1st Mezzanine Floor Shear Reinf. Details | 9/12/2019 0:00 |
| SC3-01-CS | Shop Drawings-Rebar 09/17/19 | Building C 3rd Floor Slab Reinforcement Details | 9/17/2019 0:00 |
| SC3-02-CS | Shop Drawings-Rebar 09/17/19 | Building C 3rd Floor Slab Reinforcement Details | 9/17/2019 0:00 |
| SCM-01-CS | Shop Drawings-Rebar 10/04/19 | BUILDING C-1ST MEZZ FLOOR SLAB REINFORCEMENT DETAILS | 10/4/2019 0:00 |
| SCM-02-CS | Shop Drawings-Rebar 10/04/19 | BUILDING C-1ST MEZZ FLOOR SLAB REINFORCEMENT DETAILS | 10/4/2019 0:00 |
| SCM-03-CS | Shop Drawings-Rebar 10/04/19 | BUILDING C-1ST MEZZ FLOOR SLAB REINFORCEMENT DETAILS | 10/4/2019 0:00 |
| SCM-04-CS | Shop Drawings-Rebar 10/04/19 | BUILDING C-1ST MEZZ FLOOR SLAB REINFORCEMENT DETAILS | 10/4/2019 0:00 |
| SD-100 | Structural-7/12/19 Updates | Cellar & Foundation Demolition Plan | 7/12/2019 0:00 |
| SD-101 | Structural-7/12/19 Updates | First Floor Demolition Plan | 7/12/2019 0:00 |
| SD-101 (Part 1) | Structural-7/12/19 Updates | 1st Floor demolition | 7/12/2019 0:00 |
| SD-102 | Structural-7/12/19 Updates | Existing Second Floor Demolition Plan | 7/12/2019 0:00 |
| .SD-103 | Structural-7/12/19 Updates | Existing Third Floor Demolition Plan | 7/12/2019 0:00 |
| SD-104 | Structural-7/12/19 Updates | Building A Existing 4th Floor Demolition Plan | 7/12/2019 0:00 |
| SD-105 | Structural-7/12/19 Updates | Existing 5th Floor Demolition Plan | 7/12/2019 0:00 |
| SD-106 | Structural-7/12/19 Updates | Existing Roof Demolition Plan | 7/12/2019 0:00 |
| SD103A | Structural-7/12/19 Updates | | 7/12/2019 0:00 |
| SE3-01-CS | Shop Drawings-Rebar Updates 9/10/19 | BLDG E-3rd Floor Slab & Beam Reinforcement Details | 9/10/2019 0:00 |
| SLA-01-CS | Shop Drawings-Rebar 08/12/19 | BUILDING A-SLAB ON GRADE REINFORCEMENT DETAILS | 8/12/2019 0:00 |
| SLB-01-CS | Shop Drawings-Rebar 08/13/19 Updated | Building B-Slab on Grade Reinforcement Details | 8/13/2019 0:02 |
| SLB-02-CS | Shop Drawings-Rebar 08/13/19 Updated | Building B-Slab on Grade Reinforcement Details | 8/13/2019 0:02 |
| SLC-01-CS | Shop Drawings-Rebar 08/13/19 Updated | Building C-1st floor Slab Reinforcement Details | 8/13/2019 0:02 |
| SLC-02-CS | Shop Drawings-Rebar 08/13/19 Updated | Building C-1st floor Slab Reinforcement Details | 8/13/2019 0:02 |
| SLC-03-CS | Shop Drawings-Rebar 08/13/19 Updated | Building C-1st floor Slab Reinforcement Details | 8/13/2019 0:02 |
| SLC-04-CS | Shop Drawings-Rebar 08/13/19 Updated | Building C-1st floor Slab Reinforcement Details | 8/13/2019 0:02 |
| SP-001.00-729 | MEP-Fire Protection | Fire Protection Notes, Symbols & Details | 2/26/2019 0:06 |
| SP-002.00-729 | MEP-Fire Protection | Fire Protection Specifications 1-2 | 2/26/2019 0:06 |
| SP-008.00-729 | MEP-Fire Protection | Fire Protection Specifications 2-2 | 2/26/2019 0:06 |
| SP-100.00-731 | MEP-Fire Protection | Fire Protection Notes and Details | 2/26/2019 0:06 |
| SP-101.00-729 | MEP-Fire Protection | 1st Floor Fire Sprinkler Plan | 2/26/2019 0:06 |
| SP-101.00-731 | MEP-Fire Protection | 1st Floor Fire Sprinkler Plan | 2/26/2019 0:06 |
| SP-102.00-729 | MEP-Fire Protection | 2nd Floor Fire Sprinkler Plan | 2/26/2019 0:06 |
| SP-102.00-731 | MEP-Fire Protection | 2nd Floor Fire Sprinkler Plan | 2/26/2019 0:06 |
| SP-103.00-729 | MEP-Fire Protection | 3rd Floor Fire Sprinkler Plan | 2/26/2019 0:06 |
| SP-103.00-731 | MEP-Fire Protection | 3rd Floor Fire Sprinkler Plan | 2/26/2019 0:06 |
| SP-104.00-729 | MEP-Fire Protection | 4th Floor Fire Sprinkler Plan | 2/26/2019 0:06 |
| SP-104.00-731 | MEP-Fire Protection | 4th Floor Fire Sprinkler Plan | 2/26/2019 0:06 |
| SP-105.00-729 | MEP-Fire Protection | | 2/26/2019 0:06 |
| SP-105.00-731 | MEP-Fire Protection | 5th Floor Fire Sprinkler Plan | 2/26/2019 0:06 |
| SP-106.00-731 | MEP-Fire Protection | Roof Fire Sprinkler Plan | 2/26/2019 0:06 |
| SSK-1 | Shop Drawings-Rebar 08/12/19 | PART-2ND FLOOR FRAMING PLAN | 8/12/2019 0:00 |
| SWA-01-CS | Structural Updates-Rebar 7/24/19 | BLDG A-SHEAR WALL SUPP. 1ST TO ROOF FLOOR DETAILS | 7/24/2019 0:01 |
| SWA-02-CS | Structural Updates-Rebar 7/24/19 | SHEAR WALL REINFORCEMENT DETAILS | 7/24/2019 0:01 |
| SWA-03-CS | Structural Updates-Rebar 7/24/19 | BLDG A-SHEAR WALL SUPP. 1ST TO ROOF FLOOR DETAILS | 7/24/2019 0:01 |
| SWA-04-CS | Structural Updates-Rebar 7/24/19 | BLDG A-SHEAR WALL SUPP. 1ST TO ROOF FLOOR DETAILS | 7/24/2019 0:01 |
| SWB-01-CS | Shop Drawings-Rebar Updates 9/10/19 | BLDG B-SHEAR WALL 1st to 2nd FLOOR REINF | 9/10/2019 0:00 |
| SWB-02-CS | Shop Drawing-Rebar Updated 09/04/19 | BLDG B-SHEAR WALL 3rd to HIGH ROOF REINF | 9/4/2019 0:00 |
| SWB-03-CS | Shop Drawings-Rebar Updated 09/04/19 | BLDG B-SHEAR WALL 3rd to HIGH ROOF REINF | 9/4/2019 0:00 |
| SWC-01-CS | Structural Updates-Rebar 7/24/19 | BLDG-C SHEAR WALL SUPP. 2ND FLR REINF. DETAILS | 7/24/2019 0:01 |
| SWC-02-CS | Shop Drawings-Rebar Updates 9/10/19 | BLDG C-SHEAR WALL. 2ND TO 3R FLOOR REINF. DETAILS | 9/10/2019 0:00 |
| SWC-04-CS | Shop Drawings-Rebar Updates 09/16/19 | BLDG C-SHEAR WALL 3rd to Roof Floor Reinf | 9/16/2019 0:00 |
| Z-4B | Landscaping-Pool Relocation Revisions | Proposed Landscaping Plans & Details (Upper Roof) | 3/5/2019 0:01 |

EXHIBIT "A" Drawing List -WONDER LOFTS-721 (729) Clinton 10.10.19

| Sheet Nam Version | | Description | Date Issued |
|---|---|---|---|
| A-000 | Architectural-721 Clinton | Zoning Map | 2/26/2019 0:01 |
| A-100 | Architectural-721 Clinton | Existing Demo & Staging/Building Impact Plan | 2/26/2019 0:01 |
| A-101 | Architectural-721 Clinton | Site Plans | 2/26/2019 0:01 |
| A-102 | Architectural-721 Clinton | Site Details | 2/26/2019 0:01 |
| A-105 | Architectural-721 Clinton | Flood Proofing Plan | 2/26/2019 0:01 |
| A-151-1 | Architectural-721 Clinton | Wall Partition Types/Signage Schedule | 2/26/2019 0:01 |
| A-151-2 | Architectural-721 Clinton | Soundproofing/Signage | 2/26/2019 0:01 |
| A-201 | Architectural-721 Clinton | First  & Second Floor Plans | 2/26/2019 0:01 |
| A-202 | Architectural-721 Clinton | Third & Fourth Floor Plans | 2/26/2019 0:01 |
| A-203 | Architectural-721 Clinton | Fifth Floor Plan & Roof Plan | 2/26/2019 0:01 |
| A-204 | Architectural-721 Clinton | Bulkhead Plan & Details | 2/26/2019 0:01 |
| A-221 | Architectural-721 Clinton | First & Second Floor Plans | 2/26/2019 0:01 |
| A-222 | Architectural-721 Clinton | Third & Fourth Floor Plans | 2/26/2019 0:01 |
| A-223 | Architectural-721 Clinton | Fifth & Roof Plans | 2/26/2019 0:01 |
| A-230 | Architectural-721 Clinton | ANSI Compliant Bathroom Plans | 2/26/2019 0:01 |
| A-231 | Architectural-721 Clinton | ANSI Compliant Bathrooms & Details | 2/26/2019 0:01 |
| A-240 | Architectural-721 Clinton | ANSI Compliant Kitchen Plans | 2/26/2019 0:01 |
| A-241 | Architectural-721 Clinton | ANSI Compliant Kitchen & Details | 2/26/2019 0:01 |
| A-300 | Architectural-721 Clinton | Building Elevations | 2/26/2019 0:01 |
| A-301 | Architectural-721 Clinton | Glazing Schedule | 2/26/2019 0:01 |
| A-400 | Architectural-721 Clinton | Building Section AA | 2/26/2019 0:00 |
| A-401 | Architectural-721 Clinton | Building Section BB | 2/26/2019 0:01 |
| A-402 | Architectural-721 Clinton | Building Section BB | 2/26/2019 0:01 |
| A-420 | Architectural-721 Clinton | Egress Staircase Plans & Details | 2/26/2019 0:01 |
| A-500 | Architectural-721 Clinton | Door Schedule & Hardware Schedule | 2/26/2019 0:01 |
| A-501 | Architectural-721 Clinton | Door Types & Door Details | 2/26/2019 0:01 |
| A-520 | Architectural-721 Clinton | Fire Protection Details/Radon Protection Details | 2/26/2019 0:01 |
| A-521 | Architectural-721 Clinton | Metal Stud Framing Details | 2/26/2019 0:01 |
| A-603 | Architectural-721 Clinton | Miscellaneous Details | 2/26/2019 0:01 |
| A600 | Architectural-721 Clinton | Miscellaneous Details | 2/26/2019 0:01 |
| D-444 | Interior Design | Lounge Elevations | 2/27/2019 0:00 |
| E-001 | MEP-Electrical-5/1/19 Updates | Electrical Symbol List & General Notes | 5/1/2019 0:00 |
| E-002 | MEP-Electrical-5/1/19 Updates | Electrical Notes & Specifications | 5/1/2019 0:00 |
| E-003 | MEP-Electrical-5/1/19 Updates | Electrical Notes & Specifications | 5/1/2019 0:00 |
| E-100 | MEP-Electrical-5/1/19 Updates | Electrical Lighting Plan-First & Second Floor | 5/1/2019 0:00 |
| E-101 | MEP-Electrical-5/1/19 Updates | Electrical Lighting Plan-Third & Fourth Floor | 5/1/2019 0:00 |
| E-102 | MEP-Electrical-5/1/19 Updates | Electrical Lighting Plan-Fifth Floor & Roof | 5/1/2019 0:00 |
| E-200 | MEP-Electrical-5/1/19 Updates | Electrical Power Plan-First & Second Floor | 5/1/2019 0:00 |
| E-201 | MEP-Electrical-5/1/19 Updates | Electrical Power Plan-Third & Fourth Floor | 5/1/2019 0:00 |
| E-202 | MEP-Electrical-5/1/19 Updates | Electrical Power Plan-Fifth Floor & Roof | 5/1/2019 0:00 |
| E-300 | MEP-Electrical-5/1/19 Updates | Electrical Panel Schedules | 5/1/2019 0:00 |
| E-400 | MEP-Electrical-5/1/19 Updates | Electrical Riser Diagram & House Panel Schedule | 5/1/2019 0:00 |
| FA-001 | MEP-Fire Alarm Updates 7/8/19 | Fire Alarm Riser, Legend & Notes | 7/8/2019 0:03 |
| FA-100 | MEP-Fire Alarm Updates 7/8/19 | Fire Alarm Plan-First & Second Floor | 7/8/2019 0:03 |
| FA-101 | MEP-Fire Alarm Updates 7/8/19 | Fire Alarm Plan-Third & Fourth Floor | 7/8/2019 0:03 |
| FA-102 | MEP-Fire Alarm Updates 7/8/19 | Fire Alarm Plan-Fifth Floor & Roof | 7/8/2019 0:03 |
| H-100 | MEP-HVAC Updates 7/8/19 | HVAC Notes, Symbols & Abbreviations | 7/8/2019 0:02 |
| H-200 | MEP-HVAC Updates 7/8/19 | HVAC Plans | 7/8/2019 0:02 |
| H-300 | MEP-HVAC Updates 7/8/19 | HVAC Schedules & Details | 7/8/2019 0:02 |
| H-301 | MEP-HVAC Updates 7/8/19 | HVAC Details | 7/8/2019 0:02 |
| ID-000 | Interior Design | Cover Sheet | 2/27/2019 0:00 |
| ID-001 | Interior Design | General Notes | 2/27/2019 0:00 |
| ID-100 | Interior Design | 731 Clinton Lobby-Finish Floor/Furniture/RCP/Power/Lighting Plan | 2/27/2019 0:00 |
| ID-110 | Interior Design | 731 Clinton-Typical Corridor/Finish Floor/RCP/Lighting/Power Plan | 2/27/2019 0:00 |
| ID-120 | Interior Design | 720 Clinton Lobby-Finish Floor Plan & Furniture Plan | 2/27/2019 0:00 |
| ID-121 | Interior Design | 720 Clinton Lobby-Reflected Ceiling & Power/Lighting Plan | 2/27/2019 0:00 |
| ID-130 | Interior Design | Typical Corridor-Finish Floor/RCP/Lighting/Power Plan | 2/27/2019 0:00 |
| ID-140 | Interior Design | Lounge & Kids Room-Finish Floor Plan & Furniture Plan | 2/27/2019 0:00 |
| ID-141 | Interior Design | Lounge & Kids Room-Reflected Ceiling & Power/Lighting Plan | 2/27/2019 0:00 |
| ID-150 | Interior Design | Gym-Finish Floor Plan & Furniture Plan | 2/27/2019 0:00 |
| ID-151 | Interior Design | Gym-Reflected Ceiling & Power/Lighting Plan | 2/27/2019 0:00 |
| ID-160 | Interior Design | Rooftop/Pool-Finish Floor Plan & Furniture Plan | 2/27/2019 0:00 |

| ID-161 | Interior Design | Rooftop/Pool-Reflected Ceiling & Power/Lighting Plan | 2/27/2019 0:00 |
|---|---|---|---|
| ID-170 | Interior Design | Model Unit#310-Finish Floor Plan & Furniture Plan | 2/27/2019 0:00 |
| ID-171 | Interior Design | Model Unit#310-Reflected Ceiling Plan & Power/Lighting Plan | 2/27/2019 0:00 |
| ID-400 | Interior Design | 731 Clinton Lobby-Elevations | 2/27/2019 0:00 |
| ID-410 | Interior Design | 731 Clinton Lobby-Elevations | 2/27/2019 0:00 |
| ID-420 | Interior Design | 720 Clinton Lobby-Elevations | 2/27/2019 0:00 |
| ID-421 | Interior Design | 720 Clinton Lobby-Elevations | 2/27/2019 0:00 |
| ID-422 | Interior Design | 720 Clinton Lobby-Elevations | 2/27/2019 0:00 |
| ID-423 | Interior Design | 720 Clinton Lobby-Elevations | 2/27/2019 0:00 |
| ID-430 | Interior Design | 720 Clinton-Typical Corridor & Elevator Vestibule Elevs. | 2/27/2019 0:00 |
| ID-431 | Interior Design | 720 Clinton-Typical Corridor & Elevator Vestibule Elevs. | 2/27/2019 0:00 |
| ID-440 | Interior Design | Lounge Elevations | 2/27/2019 0:00 |
| ID-441 | Interior Design | Lounge Elevations | 2/27/2019 0:00 |
| ID-442 | Interior Design | Lounge Elevations | 2/27/2019 0:00 |
| ID-443 | Interior Design | Lounge Elevations | 2/27/2019 0:00 |
| ID-450 | Interior Design | Gym/Yoga Elevations | 2/27/2019 0:00 |
| ID-451 | Interior Design | Gym/Yoga Elevations | 2/27/2019 0:00 |
| ID-452 | Interior Design | Gym/Yoga Elevations | 2/27/2019 0:00 |
| ID-460 | Interior Design | Rooftop/Pool Elevations | 2/27/2019 0:00 |
| ID-461 | Interior Design | Rooftop/Pool Elevations | 2/27/2019 0:00 |
| ID-470 | Interior Design | Bathroom Plans & Elevations | 2/27/2019 0:00 |
| ID-471 | Interior Design | Kitchen Elevations | 2/27/2019 0:00 |
| ID-500 | Interior Design | Schedules-Appliances, Electrical & Lighting | 2/27/2019 0:00 |
| ID-501 | Interior Design | Schedules-Plumbing | 2/27/2019 0:00 |
| ID-502 | Interior Design | Schedules-Accessories, Cabinetry Hardware & Door Hardware | 2/27/2019 0:00 |
| ID-503 | Interior Design | Schedules-Finishes | 2/27/2019 0:00 |
| ID-700 | Interior Design | Amenities Details-Door Schedules, Elevations, & Details | 2/27/2019 0:00 |
| ID-701 | Interior Design | Lobby Details | 2/27/2019 0:00 |
| ID-702 | Interior Design | Lounge Details | 2/27/2019 0:00 |
| ID-703 | Interior Design | Typical Details-Apartment | 2/27/2019 0:00 |
| ID-704 | Interior Design | Typical Details-Apartment | 2/27/2019 0:00 |
| ID-705 | Interior Design | Bathroom Details | 2/27/2019 0:00 |
| ID-706 | Interior Design | Kitchen Details | 2/27/2019 0:00 |
| P-001.00 | MEP-Plumbing Updates | Plumbing Notes & Abbreviations | 7/8/2019 0:00 |
| P-002.00 | MEP-Plumbing Updates | Plumbing Fixtures Schedule | 7/8/2019 0:00 |
| P-003.00 | MEP-Plumbing Updates | Plumbing Specifications 1 | 7/8/2019 0:00 |
| P-004.00 | MEP-Plumbing Updates | Plumbing Specifications 2 | 7/8/2019 0:00 |
| P-005.00 | MEP-Plumbing Updates | Plumbing Specifications 3 | 7/8/2019 0:00 |
| P-099.00 | MEP-Plumbing Updates | 1st Floor Plumbing Utility Plan | 7/8/2019 0:00 |
| P-100.00 | MEP-Plumbing Updates | Plumbing 1st Floor Sanitary and Storm Plan | 7/8/2019 0:00 |
| P-102.00 | MEP-Plumbing Updates | Plumbing 2nd Floor Sanitary and Storm Plan | 7/8/2019 0:00 |
| P-103.00 | MEP-Plumbing Updates | Plumbing 3rd Floor Sanitary and Storm Plan | 7/8/2019 0:00 |
| P-104.00 | MEP-Plumbing Updates | Plumbing 4th Floor Sanitary and Storm Plan | 7/8/2019 0:00 |
| P-105.00 | MEP-Plumbing Updates | Plumbing 5th Floor Sanitary and Storm Plan | 7/8/2019 0:00 |
| P-106.00 | MEP-Fire Protection Updates 7/8/19 | Plumbing Roof Sanitary & Storm Plan | 7/8/2019 0:04 |
| P-201.00 | MEP-Plumbing Updates | 1st Floor Domestic Water and Gas Plan | 7/8/2019 0:00 |
| P-202.00 | MEP-Plumbing Updates | 2nd Floor Domestic Water and Gas Plan | 7/8/2019 0:00 |
| P-203.00 | MEP-Plumbing Updates | 3rd Floor Domestic Water and Gas Plan | 7/8/2019 0:00 |
| P-204.00 | MEP-Plumbing Updates | 4th Floor Domestic Water and Gas Plan | 7/8/2019 0:00 |
| P-205.00 | MEP-Plumbing Updates | 5th Floor Domestic Water and Gas Plan | 7/8/2019 0:00 |
| P-206.00 | MEP-Plumbing Updates | Roof Domestic Water and Gas Plan | 7/8/2019 0:00 |
| P-300.00 | MEP-Plumbing Updates | Plumbing Sanitary Risers | 7/8/2019 0:00 |
| P-301.00 | MEP-Plumbing Updates | Water Risers-Bldg 729 | 7/8/2019 0:00 |
| P-302.00 | MEP-Plumbing Updates | Gas Risers-Bldg 729 | 7/8/2019 0:00 |
| P-303.00 | MEP-Plumbing Updates | Plumbing Storm Risers | 7/8/2019 0:00 |
| P-920 | MEP-Plumbing Updates | Plumbing Details-1 | 7/8/2019 0:00 |
| P-921 | MEP-Plumbing Updates | Plumbing Details-2 | 7/8/2019 0:00 |
| S-101 | Structural-04/29/19 100% CD | Building E-Foundation Plan, 1st to 5th Floor and Roof Framing Plans | 4/29/2019 0:00 |
| S-102 | Structural-04/29/19 100% CD | Building E-Foundation Plan, 1st to 5th Floor and Roof Framing Plans | 4/29/2019 0:00 |
| S-210 | Structural-04/29/19 100% CD | Building E-Pile Cap Details | 4/29/2019 0:00 |
| S-500 | Structural-04/29/19 100% CD | Building E-Column Schedule, Shear Walls & Punching Sheer Reinf. Details | 4/29/2019 0:00 |
| S-700 | Structural-04/29/19 100% CD | Building E-General Notes & Design Criteria | 4/29/2019 0:00 |
| S-701 | Structural-04/29/19 100% CD | Building E-Typical Details I | 4/29/2019 0:00 |
| S-702 | Structural-04/29/19 100% CD | Building E-Typical Details II | 4/29/2019 0:00 |
| S-703 | Structural-04/29/19 100% CD | Building E-Typical Details III | 4/29/2019 0:00 |
| S02 | Architectural-721 Clinton | USG Drywall Suspension System Details | 2/26/2019 0:01 |

| | | | |
|---|---|---|---|
| SE3-01-CS | Shop Drawings Rebar Updates 09/17/19 | Bldg-E 3rd Floor Slab & Beam Reinforcement Details | 9/17/2019 0:00 |
| SP-001.00 | MEP-Fire Protection Updates 7/8/19 | Fire Protection Notes, Symbols & Details | 7/8/2019 0:04 |
| SP-002.00 | MEP-Fire Protection Updates 7/8/19 | Fire Protection Specifications 1-2 | 7/8/2019 0:04 |
| SP-003.00 | MEP-Fire Protection Updates 7/8/19 | Fire Protection Specifications 2-2 | 7/8/2019 0:04 |
| SP-100.00- | MEP-Fire Protection | Fire Protection Notes & Details | 2/26/2019 0:02 |
| SP-101.00 | MEP-Fire Protection Updates 7/8/19 | 1st Floor Sprinkler Plan | 7/8/2019 0:04 |
| SP-101.00- | MEP-Fire Protection | 1st Floor Fire Sprinkler Plan | 2/26/2019 0:02 |
| SP-102.00 | MEP-Fire Protection Updates 7/8/19 | 1st Floor Fire Sprinkler Plan | 7/8/2019 0:04 |
| SP-102.00- | MEP-Fire Protection | 2nd Floor Fire Sprinkler Plan | 2/26/2019 0:02 |
| SP-103.00 | MEP-Fire Protection Updates 7/8/19 | 3rd Floor Fire Sprinkler Plan | 7/8/2019 0:04 |
| SP-103.00- | MEP-Fire Protection | 3rd Floor Fire Sprinkler Plan | 2/26/2019 0:02 |
| SP-104.00 | MEP-Fire Protection Updates 7/8/19 | 4th Floor Fire Sprinkler Plan | 7/8/2019 0:04 |
| SP-104.00- | MEP-Fire Protection | 4th Floor Fire Sprinkler Plan | 2/26/2019 0:02 |
| SP-105.00 | MEP-Fire Protection Updates 7/8/19 | 5th Floor Fire Sprinkler Plan | 7/8/2019 0:04 |
| SP-105.00- | MEP-Fire Protection | 5th Floor Fire Sprinkler Plan | 2/26/2019 0:02 |
| SP-106.00 | MEP-Fire Protection | Roof Fire Sprinkler Plan | 2/26/2019 0:02 |
| SP-106.00- | MEP-Fire Protection | Roof Fire Sprinkler Plan | 2/26/2019 0:02 |

Wonder Lofts-721 (729) Clinton

EXHIBIT "A" Drawing List -WONDER LOFTS-731 (727-733) Clinton 10.10.19

| Sheet Name | Version | Description | Date Issued |
|---|---|---|---|
| A-000 | Architectural-731 Clinton (Building D) | Title Sheet/Zoning Map/Tax Map/Drawing List/General Notes | 2/26/2019 0:00 |
| A-100 | Architectural-731 Clinton (Building D) | Site Plans | 2/26/2019 0:00 |
| A-101 | Architectural-731 Clinton (Building D) | Circulation Lighting & Landscaping Plan Signage/Flood Vent System | 2/26/2019 0:00 |
| A-102 | Architectural-731 Clinton (Building D) | Site Details | 2/26/2019 0:00 |
| A-150 | Architectural-731 Clinton (Building D) | Wall Partition Types/Floor Assemblies | 2/26/2019 0:00 |
| A-151 | Architectural-731 Clinton (Building D) | Soundproofing/Signage | 2/26/2019 0:00 |
| A-201 | Architectural-731 Clinton (Building D) | Architectural Plan Floor 1 | 2/26/2019 0:00 |
| A-202 | Architectural-731 Clinton (Building D) | Architectural Plan Floor 2 | 2/26/2019 0:00 |
| A-203 | Architectural-731 Clinton (Building D) | Architectural Plan Floor 3 | 2/26/2019 0:00 |
| A-204 | Architectural-731 Clinton (Building D) | Architectural Plan Floor 4 | 2/26/2019 0:00 |
| A-205 | Architectural-731 Clinton (Building D) | Architectural Plan Floor 5 | 2/26/2019 0:00 |
| A-206 | Architectural-731 Clinton (Building D) | Architectural Plan Roof | 2/26/2019 0:00 |
| A-210 | Architectural-731 Clinton (Building D) | Roof Details | 2/26/2019 0:00 |
| A-211 | Architectural-731 Clinton (Building D) | Green Roof Details/Deck Details | 2/26/2019 0:00 |
| A-221 | Architectural-731 Clinton (Building D) | RCP 1st Floor | 2/26/2019 0:00 |
| A-222 | Architectural-731 Clinton (Building D) | RCP 2nd Floor | 2/26/2019 0:00 |
| A-223 | Architectural-731 Clinton (Building D) | RCP 3rd Floor | 2/26/2019 0:00 |
| A-224 | Architectural-731 Clinton (Building D) | RCP 4th Floor | 2/26/2019 0:00 |
| A-225 | Architectural-731 Clinton (Building D) | RCP 5th Floor | 2/26/2019 0:00 |
| A-226 | Architectural-731 Clinton (Building D) | RCP Roof | 2/26/2019 0:00 |
| A-230 | Architectural-731 Clinton (Building D) | ANSI Compliant Bathrooms & Details | 2/26/2019 0:00 |
| A-231 | Architectural-731 Clinton (Building D) | ANSI Compliant Bathroom & Details Floors 2-4 | 2/26/2019 0:00 |
| A-232 | Architectural-731 Clinton (Building D) | ANSI Compliant Bathroom & Details Floors 5-Roof | 2/26/2019 0:00 |
| A-240 | Architectural-731 Clinton (Building D) | ICC 117.1 Compliant Kitchen Plans | 2/26/2019 0:00 |
| A-241 | Architectural-731 Clinton (Building D) | ICC/ANSI 117.1 Compliant Kitchen & Details | 2/26/2019 0:00 |
| A-300 | Architectural-731 Clinton (Building D) | Building Elevations | 2/26/2019 0:00 |
| A-301 | Architectural-731 Clinton (Building D) | Building Elevations | 2/26/2019 0:00 |
| A-302 | Architectural-731 Clinton (Building D) | Building Elevations East (Rear) | 2/26/2019 0:00 |
| A-303 | Architectural-731 Clinton (Building D) | Building Elevations North | 2/26/2019 0:00 |
| A-304 | Architectural-731 Clinton (Building D) | Glazing Schedule-Windows | 2/26/2019 0:00 |
| A-305 | Architectural-731 Clinton (Building D) | Glazing Schedule-Hybrid Walls on Clinton Street Facade | 2/26/2019 0:00 |
| A-306 | Architectural-731 Clinton (Building D) | Glazing Schedule-Hybrid Walls on 8th Street Facade | 2/26/2019 0:00 |
| A-400 | Architectural-731 Clinton (Building D) | Building Section AA | 2/26/2019 0:00 |
| A-401 | Architectural-731 Clinton (Building D) | Building Section BB | 2/26/2019 0:00 |
| A-402 | Architectural-731 Clinton (Building D) | Wall Sections | 2/26/2019 0:00 |
| A-403 | Architectural-731 Clinton (Building D) | Wall Sections | 2/26/2019 0:00 |
| A-404 | Architectural-731 Clinton (Building D) | Wall Section C/Wall Section D | 2/26/2019 0:00 |
| A-405 | Architectural-731 Clinton (Building D) | Wall Section E/Wall Section F | 2/26/2019 0:00 |
| A-420 | Architectural-731 Clinton (Building D) | Staircase Details | 2/26/2019 0:00 |
| A-421 | Architectural-731 Clinton (Building D) | Duplex Staircase Plans & Details | 2/26/2019 0:00 |
| A-500 | Architectural-731 Clinton (Building D) | Door Schedule/Hardware Schedule | 2/26/2019 0:00 |
| A-501 | Architectural-731 Clinton (Building D) | Door Types/Door Details | 2/26/2019 0:00 |
| A-600 | Architectural-731 Clinton (Building D) | Miscellaneous Details | 2/26/2019 0:00 |
| A-603 | Architectural-731 Clinton (Building D) | Miscellaneous Details | 2/26/2019 0:00 |
| Cover | Architectural-731 Clinton (Building D) | Cover Page | 2/26/2019 0:00 |
| D-444 | Interior Design | Lounge Elevations | 2/27/2019 0:00 |
| E-001 | MEP-Electrical Updates 7/8/19 | Electrical Notes, Legend, Symbols & Abbreviations | 7/8/2019 0:02 |
| E-002 | MEP-Electrical Updates 7/8/19 | Electrical General Notes | 7/8/2019 0:02 |
| E-003 | MEP-Electrical Updates 7/8/19 | Electrical General Notes | 7/8/2019 0:02 |
| E-100 | MEP-Electrical Updates 7/8/19 | Electrical Lighting General Notes | 7/8/2019 0:02 |
| E-101 | MEP-Electrical Updates 7/8/19 | Electrical Lighting Plan-First Floor | 7/8/2019 0:02 |
| E-102 | MEP-Electrical Updates 7/8/19 | Electrical Lighting Plan-Second Floor | 7/8/2019 0:02 |
| E-103 | MEP-Electrical Updates 7/8/19 | Electrical Lighting Plan-Third Floor | 7/8/2019 0:02 |
| E-104 | MEP-Electrical Updates 7/8/19 | Electrical Lighting Plan-Fourth Floor | 7/8/2019 0:02 |
| E-105 | MEP-Electrical Updates 7/8/19 | Electrical Lighting Plan-Fifth Floor | 7/8/2019 0:02 |
| E-106 | MEP-Electrical | Electrical Lighting Plan-Roof Floor | 2/26/2019 0:01 |
| E-107 | MEP-Electrical | Electrical Unit Plan-Second Floor | 2/26/2019 0:01 |
| E-108 | MEP-Electrical | Electrical Unit Plan-Third Floor | 2/26/2019 0:01 |
| E-109 | MEP-Electrical | Electrical Unit Plan-Fourth Floor | 2/26/2019 0:01 |
| E-110 | MEP-Electrical | Electrical Unit Plan-Fifth Floor | 2/26/2019 0:01 |

| E-200 | MEP-Electrical | Electrical Power Notes | 2/26/2019 0:01 |
| E-201 | MEP-Electrical Updates 7/8/19 | Electrical Power Plan-First Floor | 7/8/2019 0:02 |
| E-201 Part 2 | MEP-Electrical Updates 7/8/19 | Electrical Power Plan-Second Floor | 7/8/2019 0:02 |
| E-201-2 | MEP-Electrical-Updated 5/1/19 | | 5/1/2019 0:00 |
| E-202 | MEP-Electrical Updates 7/8/19 | Electrical Power Plan-Second Floor | 7/8/2019 0:02 |
| E-203 | MEP-Electrical Updates 7/8/19 | Electrical Power Plan-Third Floor | 7/8/2019 0:02 |
| E-204 | MEP-Electrical Updates 7/8/19 | Electrical Power Plan-Fourth Floor | 7/8/2019 0:02 |
| E-205 | MEP-Electrical Updates 7/8/19 | Electrical Power Plan-Fifth Floor | 7/8/2019 0:02 |
| E-206 | MEP-Electrical | Electrical Power Plan-Roof Floor | 2/26/2019 0:01 |
| E-300 | MEP-Electrical Updates 7/8/19 | Electrical Panel Schedules | 7/8/2019 0:02 |
| E-301 | MEP-Electrical Updates 7/8/19 | Electrical Panel Schedules | 7/8/2019 0:02 |
| E-302 | MEP-Electrical | Electrical Riser | 2/26/2019 0:01 |
| E-303 | MEP-Electrical Updates 7/8/19 | Electrical Riser & Details | 7/8/2019 0:02 |
| FA-100 | MEP-Electrical Updates 7/8/19 | Fire Alarm Riser, Notes & Legend | 7/8/2019 0:02 |
| FA-101 | MEP-Electrical Updates 7/8/19 | Fire Alarm Plan-First Floor | 7/8/2019 0:02 |
| FA-102 | MEP-Electrical Updates 7/8/19 | Fire Alarm Plan-Second Floor | 7/8/2019 0:02 |
| FA-103 | MEP-Electrical Updates 7/8/19 | Fire Alarm Plan-Third Floor | 7/8/2019 0:02 |
| FA-104 | MEP-Electrical Updates 7/8/19 | Fire Alarm Plan-Fourth Floor | 7/8/2019 0:02 |
| FA-105 | MEP-Electrical Updates 7/8/19 | Fire Alarm Plan-Fifth Floor | 7/8/2019 0:02 |
| FA-106 | MEP-Electrical Updates 7/8/19 | Fire Alarm Plan-Roof Floor | 7/8/2019 0:02 |
| FP-001.00-720 | MEP-Fire Protection | Fire Protection Details & Notes-1 | 2/26/2019 0:04 |
| FP-002.00-720 | MEP-Fire Protection | Fire Protection Details & Notes-2 | 2/26/2019 0:04 |
| FP-003.00-720 | MEP-Fire Protection | Fire Protection Details & Notes-3 | 2/26/2019 0:04 |
| FP-100.00-720 | MEP-Fire Protection | Fire Protection Plan-1st Floor | 2/26/2019 0:04 |
| FP-110.00-720 | MEP-Fire Protection | Fire Protection Plan-1st Floor & Mezzanine | 2/26/2019 0:04 |
| FP-200.00-720 | MEP-Fire Protection | Fire Protection Plan-2nd Floor | 2/26/2019 0:04 |
| FP-300.00-720 | MEP-Fire Protection | Fire Protection Plan-3rd Floor | 2/26/2019 0:04 |
| FP-400.00-720 | MEP-Fire Protection | Fire Protection Plan-4th Floor | 2/26/2019 0:04 |
| FP-500.00-720 | MEP-Fire Protection | Fire Protection Plan-5th Floor | 2/26/2019 0:04 |
| FP-600.00-720 | MEP-Fire Protection | Fire Protection Plan-6th Floor | 2/26/2019 0:04 |
| FP-700.00-720 | MEP-Fire Protection | Fire Protection Plan-Penthouse Floor | 2/26/2019 0:04 |
| FP-800.00-720 | MEP-Fire Protection | Fire Protection Plan-Roof | 2/26/2019 0:04 |
| FP-901.00-720 | MEP-Fire Protection | Fire Protection Riser Diagram & Details-1 | 2/26/2019 0:04 |
| FP-902.00-720 | MEP-Fire Protection | Fire Protection Riser Diagram & Details-2 | 2/26/2019 0:04 |
| H-100 | MEP-HVAC Updates 7/8/19 | HVAC Notes, Symbols & Abbreviations | 7/8/2019 0:03 |
| H-200 | MEP-HVAC Updates 7/8/19 | HVAC Ground Floor Plan | 7/8/2019 0:03 |
| H-201 | MEP-HVAC Updates 7/8/19 | HVAC 2nd Floor Plan | 7/8/2019 0:03 |
| H-202 | MEP-HVAC Updates 7/8/19 | HVAC 3rd Floor Plan | 7/8/2019 0:03 |
| H-203 | MEP-HVAC Updates 7/8/19 | HVAC 4th Floor Plan | 7/8/2019 0:03 |
| H-204 | MEP-HVAC Updates 7/8/19 | HVAC 5th Floor Plan | 7/8/2019 0:03 |
| H-205 | MEP-HVAC Updates 7/8/19 | HVAC Roof Plan | 7/8/2019 0:03 |
| H-300 | MEP-HVAC Updates 7/8/19 | HVAC Schedules | 7/8/2019 0:03 |
| H-400 | MEP-HVAC Updates 7/8/19 | HVAC Detail Sheet 1 | 7/8/2019 0:03 |
| H-401 | MEP-HVAC Updates 7/8/19 | HVAC Detail Sheet 2 | 7/8/2019 0:03 |
| ID-000 | Interior Design | Cover Sheet | 2/27/2019 0:00 |
| ID-001 | Interior Design | General Notes | 2/27/2019 0:00 |
| ID-100 | Interior Design | 731 Clinton Lobby Finish Floor/Furniture/RCP/Lighting/Power Plan | 2/27/2019 0:00 |
| ID-110 | Interior Design | 731 Clinton Typical Corridor Finish Floor/RCP/Lighting/Power Plan | 2/27/2019 0:00 |
| ID-120 | Interior Design | 720 Clinton Lobby Finish Floor Plan & Furniture Plan | 2/27/2019 0:00 |
| ID-121 | Interior Design | 720 Clinton Lobby Reflected Ceiling & Power/Lighting Plan | 2/27/2019 0:00 |
| ID-130 | Interior Design | Typical Corridor Finish Floor Plan/RCP/Lighting/Power Plan | 2/27/2019 0:00 |
| ID-140 | Interior Design | Lounge & Kids Room Finish Floor Plan & Furniture Plan | 2/27/2019 0:00 |
| ID-141 | Interior Design | Lounge & Kids Room Reflected Ceiling & Power/Lighting Plan | 2/27/2019 0:00 |
| ID-150 | Interior Design | Gym Finish Floor Plan & Furniture Plan | 2/27/2019 0:00 |
| ID-151 | Interior Design | Gym Reflected Ceiling & Power/Lighting Plan | 2/27/2019 0:00 |
| ID-160 | Interior Design | Rooftop/Pool Finish Floor Plan & Furniture Plan | 2/27/2019 0:00 |
| ID-161 | Interior Design | Rooftop/Pool Reflected Ceiling & Power/Lighting Plan | 2/27/2019 0:00 |
| ID-170 | Interior Design | Model Unit #310 Finish Floor Plan & Furniture Plan | 2/27/2019 0:00 |
| ID-171 | Interior Design | Model Unit #310 Reflected Ceiling Plan & Power/Lighting Plan | 2/27/2019 0:00 |
| ID-400 | Interior Design | 731 Clinton Lobby Elevations | 2/27/2019 0:00 |
| ID-410 | Interior Design | 731 Clinton Lobby Elevations | 2/27/2019 0:00 |
| ID-420 | Interior Design | 720 Clinton Lobby Elevations | 2/27/2019 0:00 |
| ID-421 | Interior Design | 720 Clinton Lobby Elevations | 2/27/2019 0:00 |
| ID-422 | Interior Design | 720 Clinton Lobby Elevations | 2/27/2019 0:00 |

| ID-423 | Interior Design | 720 Clinton Lobby Elevations | 2/27/2019 0:00 |
| ID-430 | Interior Design | 720 Clinton Lobby Elevations | 2/27/2019 0:00 |
| ID-431 | Interior Design | 720 Clinton Typical Corridor & Elevator Vestibule Elevs | 2/27/2019 0:00 |
| ID-440 | Interior Design | Lounge Elevations | 2/27/2019 0:00 |
| ID-441 | Interior Design | Lounge Elevations | 2/27/2019 0:00 |
| ID-442 | Interior Design | Lounge Elevations | 2/27/2019 0:00 |
| ID-443 | Interior Design | Lounge Elevations | 2/27/2019 0:00 |
| ID-450 | Interior Design | Gym/Yoga Elevations | 2/27/2019 0:00 |
| ID-451 | Interior Design | Gym/Yoga Elevations | 2/27/2019 0:00 |
| ID-452 | Interior Design | Gym/Yoga Elevations | 2/27/2019 0:00 |
| ID-460 | Interior Design | Rooftop/Pool Elevations | 2/27/2019 0:00 |
| ID-461 | Interior Design | Rooftop/Pool Elevations | 2/27/2019 0:00 |
| ID-470 | Interior Design | Bathroom Plans & Elevations | 2/27/2019 0:00 |
| ID-471 | Interior Design | Kitchen Elevations | 2/27/2019 0:00 |
| ID-500 | Interior Design | Schedules-Appliances, Electrical & Lighting | 2/27/2019 0:00 |
| ID-501 | Interior Design | Schedules-Plumbing | 2/27/2019 0:00 |
| ID-502 | Interior Design | Schedules-Accessories, Cabinetry Hardware, Door Hardware | 2/27/2019 0:00 |
| ID-503 | Interior Design | Schedules-Finishes | 2/27/2019 0:00 |
| ID-700 | Interior Design | Amenities Detail, Door Schedules, Elevations & Details | 2/27/2019 0:00 |
| ID-701 | Interior Design | Lobby Details | 2/27/2019 0:00 |
| ID-702 | Interior Design | Lounge Details | 2/27/2019 0:00 |
| ID-703 | Interior Design | Typical Details-Apartment | 2/27/2019 0:00 |
| ID-704 | Interior Design | Typical Details-Apartment | 2/27/2019 0:00 |
| ID-705 | Interior Design | Bathroom Details | 2/27/2019 0:00 |
| ID-706 | Interior Design | Kitchen Details | 2/27/2019 0:00 |
| P-001.00 | MEP-Plumbing Updates | Plumbing Specifications 1 of 4 | 7/8/2019 0:00 |
| P-002.00 | MEP-Plumbing Updates | Plumbing Specifications 2 of 4 | 7/8/2019 0:00 |
| P-003.00 | MEP-Plumbing Updates | Plumbing Specifications 3 of 4 | 7/8/2019 0:00 |
| P-004.00 | MEP-Plumbing Updates | Plumbing Specifications 4 of 4 | 7/8/2019 0:00 |
| P-005.00 | MEP-Plumbing Updates | Schedules Plumbing | 7/8/2019 0:00 |
| P-101.00 | MEP-Plumbing Updates | Plumbing 1st Floor Sanitary Plan | 7/8/2019 0:00 |
| P-101.01 | MEP-Plumbing Updates | Plumbing 1st Floor Sanitary Plan | 7/8/2019 0:00 |
| P-102.00 | MEP-Plumbing Updates | Plumbing 2nd Floor Sanitary Plan | 7/8/2019 0:00 |
| P-103.00 | MEP-Plumbing Updates | Plumbing 3rd Floor Sanitary Plan | 7/8/2019 0:00 |
| P-104.00 | MEP-Plumbing Updates | Plumbing 4th Floor Sanitary Plan | 7/8/2019 0:00 |
| P-105.00 | MEP-Plumbing Updates | Plumbing 5th Floor Sanitary Plan | 7/8/2019 0:00 |
| P-106.00 | MEP-Plumbing Updates | Plumbing Roof Sanitary Plan | 7/8/2019 0:00 |
| P-200.00 | MEP-Plumbing Updates | Plumbing Details | 7/8/2019 0:00 |
| P-201.00 | MEP-Plumbing Updates | 1st Floor Domestic Water and Gas Plan | 7/8/2019 0:00 |
| P-202.00 | MEP-Plumbing Updates | 1st Floor Domestic Water and Gas Plan | 7/8/2019 0:00 |
| P-203.00 | MEP-Plumbing Updates | 3rd Floor Domestic Water and Gas Plan | 7/8/2019 0:00 |
| P-204.00 | MEP-Plumbing Updates | 4th Floor Domestic Water and Gas Plan | 7/8/2019 0:00 |
| P-205.00 | MEP-Plumbing Updates | 5th Floor Domestic Water and Gas Plan | 7/8/2019 0:00 |
| P-206.00 | MEP-Plumbing Updates | Roof Domestic Water and Gas Plan | 7/8/2019 0:00 |
| P-300.00 | MEP-Plumbing Updates | Plumbing Sanitary Riser Diagram | 7/8/2019 0:00 |
| P-301.00 | MEP-Plumbing Updates | Plumbing Water Riser Diagram | 7/8/2019 0:00 |
| P-302.00 | MEP-Plumbing Updates | Gas Supply Riser Diagram | 7/8/2019 0:00 |
| P-303.00 | MEP-Plumbing Updates | Plumbing Storm Riser Diagram | 7/8/2019 0:00 |
| S-101 | Structural-4/29/19-100% CD | Building D-Foundation, 1st & 2nd Flr Framing Plans | 4/29/2019 0:00 |
| S-102 | Structural-4/29/19-100% CD | Building D-3rd & 4th Floor Framing Plans | 4/29/2019 0:00 |
| S-103 | Structural-4/29/19-100% CD | Building D-5th, Roof & Bulkhead Framing Plans | 4/29/2019 0:00 |
| S-210 | Structural-4/29/19-100% CD | Building D-Pile Cap Details | 4/29/2019 0:00 |
| S-300 | Structural-4/29/19-100% CD | Building D-Columns & Beams Schedule | 4/29/2019 0:00 |
| S-301 | Structural-4/29/19-100% CD | Building D-Shear Wall Details | 4/29/2019 0:00 |
| S-350 | Structural-4/29/19-100% CD | Punching Shear Reinforcement Details | 4/29/2019 0:00 |
| S-700 | Structural-4/29/19-100% CD | Building D-General Notes & Design Criteria | 4/29/2019 0:00 |
| S-701 | Structural-4/29/19-100% CD | Building D-Typical Details I | 4/29/2019 0:00 |
| S-702 | Structural-4/29/19-100% CD | Building D-Typical Details II | 4/29/2019 0:00 |
| S-703 | Structural-4/29/19-100% CD | Building D-Typical Details III | 4/29/2019 0:00 |
| S02 | Architectural-731 Clinton (Building D) | USG Drywall Suspension System Details | 2/26/2019 0:00 |
| SP-001.00-729 | MEP-Fire Protection | Fire Protection Notes, Symbols & Details | 2/26/2019 0:04 |
| SP-002.00-729 | MEP-Fire Protection | Fire Protection Specifications 1-2 | 2/26/2019 0:04 |
| SP-003.00-729 | MEP-Fire Protection | Fire Protection Specifications 2-2 | 2/26/2019 0:04 |
| SP-100.00 | MEP-Fire Protection Updates 7/8/19 | Fire Protection Notes & Details | 7/8/2019 0:01 |

| | | | |
|---|---|---|---|
| SP-100.00-731 | MEP-Fire Protection | Fire Protection Notes & Details | 2/26/2019 0:04 |
| SP-101.00 | MEP-Fire Protection Updates 7/8/19 | 1st Floor Fire Sprinkler Plan | 7/8/2019 0:01 |
| SP-101.00-729 | MEP-Fire Protection | 1st Floor Fire Sprinkler Plan | 2/26/2019 0:04 |
| SP-101.00-731 | MEP-Fire Protection | 1st Floor Fire Sprinkler Plan | 2/26/2019 0:04 |
| SP-102.00 | MEP-Fire Protection Updates 7/8/19 | 2nd Floor Fire Sprinkler Plan | 7/8/2019 0:01 |
| SP-102.00-729 | MEP-Fire Protection | 2nd Floor Fire Sprinkler Plan | 2/26/2019 0:04 |
| SP-102.00-731 | MEP-Fire Protection | 2nd Floor Fire Sprinkler Plan | 2/26/2019 0:04 |
| SP-103.00 | MEP-Fire Protection Updates 7/8/19 | 3rd Floor Fire Sprinkler Plan | 7/8/2019 0:01 |
| SP-103.00-729 | MEP-Fire Protection | 3rd Floor Fire Sprinkler Plan | 2/26/2019 0:04 |
| SP-103.00-731 | MEP-Fire Protection | 3rd Floor Fire Sprinkler Plan | 2/26/2019 0:04 |
| SP-104.00 | MEP-Fire Protection Updates 7/8/19 | 4th Floor Fire Sprinkler Plan | 7/8/2019 0:01 |
| SP-104.00-729 | MEP-Fire Protection | 4th Floor Fire Sprinkler Plan | 2/26/2019 0:04 |
| SP-104.00-731 | MEP-Fire Protection | 4th Floor Fire Sprinkler Plan | 2/26/2019 0:04 |
| SP-105.00 | MEP-Fire Protection Updates 7/8/19 | 5th Floor Fire Sprinkler Plan | 7/8/2019 0:01 |
| SP-105.00-729 | MEP-Fire Protection | 5th Floor Fire Sprinkler Plan | 2/26/2019 0:04 |
| SP-105.00-731 | MEP-Fire Protection | 5th Floor Fire Sprinkler Plan | 2/26/2019 0:04 |
| SP-106.00 | MEP-Fire Protection Updates 7/8/19 | Roof Fire Sprinkler Plan | 7/8/2019 0:01 |
| SP-106.00-731 | MEP-Fire Protection | Roof Fire Sprinkler Plan | 2/26/2019 0:04 |

Wonder Lofts-731 (727-733) Clin

# ATTACHMENT B
## PROJECT SCHEDULE



| # | Task Name | Duration | Start | Finish |
|---|-----------|----------|-------|--------|
| 1 | **Design / Budget /Permits** | 477.5 days | Tue 1/2/18 | Thu 10/31/19 |
| 2 | Arch, Struct and MEP Drawings -ABC Bldg | 301 days | Tue 1/2/18 | Tue 2/26/19 |
| 7 | Shoring Permit | 3 wks | Mon 4/30/18 | Fri 5/18/18 |
| 3 | Footing and Foundation Drawings - ABC Bldg | 41.5 wks | Tue 5/22/18 | Thu 3/7/19 |
| 4 | Building D & E Design Drawings | 40 wks | Mon 6/18/18 | Fri 3/22/19 |
| 5 | Set GMP | 115 days | Mon 3/25/19 | Fri 8/30/19 |
| 8 | Footing and Foundation Permit | 4 wks | Thu 4/4/19 | Thu 5/2/19 |
| 9 | Building ABC Full Permits | 18 wks | Thu 5/2/19 | Thu 9/5/19 |
| 6 | Building D & E Full Permits | 8 wks | Thu 9/5/19 | Thu 10/31/19 |
| 10 | **Building ABC** | 681 days | Mon 5/21/18 | Mon 12/28/20 |
| 11 | Scaffolding installation | 6 wks | Mon 5/21/18 | Fri 6/29/18 |
| 12 | Demolition B-Bldg shafts & slab | 3 wks | Wed 6/13/18 | Tue 7/3/18 |
| 19 | Shoring A-Bldg at corners | 6 wks | Wed 6/20/18 | Tue 7/31/18 |
| 18 | Environmental Remediation | 18 mons | Wed 6/27/18 | Tue 11/12/19 |
| 13 | Demo A Building elevator shafts, water tower | 35.5 wks | Wed 7/4/18 | Fri 3/8/19 |
| 17 | Load testing B & C buildings | 6 wks | Wed 8/15/18 | Tue 9/25/18 |
| 14 | Demolition A-Bldg 5th floor | 3 wks | Wed 10/10/18 | Mon 3/18/19 |
| 22 | Parapet demolition | 9 wks | Fri 10/26/18 | Thu 12/27/18 |
| 23 | Load test piles A building | 9 wks | Wed 12/5/18 | Tue 2/5/19 |
| 20 | Building C Shoring Foundations | 15 wks | Mon 1/21/19 | Fri 5/3/19 |
| 16 | Additional demo for shear walls | 7 wks | Mon 3/18/19 | Mon 5/6/19 |
| 25 | Driving Piles | 18 wks | Wed 5/15/19 | Tue 9/17/19 |
| 27 | Foundations and Pile Caps | 16 wks | Mon 6/24/19 | Fri 10/11/19 |
| 21 | Shoring C-Bldg | 11 wks | Mon 7/8/19 | Fri 9/20/19 |
| 29 | Structural Concrete / Flat Plate | 6 mons | Mon 7/15/19 | Fri 12/27/19 |
| 30 | Structural Steel | 10 wks | Mon 7/29/19 | Fri 10/4/19 |
| 26 | Misc Concrete Repair | 3 mons | Wed 8/21/19 | Tue 11/12/19 |
| 24 | Façade Repair | 40 wks | Mon 9/2/19 | Fri 6/5/20 |
| 32 | Windows (measure, order, install) | 6 mons | Mon 9/9/19 | Fri 2/21/20 |
| 15 | Demolition A-Bldg 4th floor | 3 wks | Mon 9/9/19 | Mon 9/30/19 |
| 35 | Exterior Framing | 4 mons | Mon 9/23/19 | Fri 1/10/20 |
| 31 | Masonry / Metal panel | 7 mons | Mon 9/30/19 | Fri 4/10/20 |
| 34 | Interior Framing | 6 mons | Tue 10/15/19 | Mon 3/30/20 |
| 28 | Roofing | 8 wks | Mon 10/21/19 | Fri 12/13/19 |
| 36 | MEP Roughing | 8 mons | Tue 11/12/19 | Mon 6/22/20 |

| | | | | |
|---|---|---|---|---|
| Project: Wonder Lofts Project | Task | | Project Summary | | Inactive Milestone | | Manual Summary Rollup | | Deadli |
| Date: Aug 23, 2019 | Split | | External Tasks | | Inactive Summary | | Manual Summary | | Progre |
| | Milestone | ♦ | External Milestone | ♦ | Manual Task | | Start-only | ⊏ | |
| | Summary | | Inactive Task | | Duration-only | | Finish-only | ⊐ | |

| ID | Task Name | Duration | Start | Finish |
|---|---|---|---|---|
| 33 | Sales Center | 10 wks | Fri 12/13/19 | Thu 2/20/20 |
| 37 | Gyp Board | 6 mons | Tue 1/21/20 | Mon 7/6/20 |
| 38 | Finish Work | 41 wks | Tue 3/17/20 | Mon 12/28/20 |
| 39 | **Building E** | **341 days?** | **Thu 8/15/19** | **Thu 12/3/20** |
| 40 | Site Plan approval | 1 day? | Thu 8/15/19 | Thu 8/15/19 |
| 41 | Piles / Foundations | 4 wks | Fri 8/16/19 | Thu 9/12/19 |
| 42 | Structure (steel and concrete) | 4 mons | Fri 9/13/19 | Thu 1/2/20 |
| 43 | Roofing | 2 wks | Fri 1/3/20 | Thu 1/16/20 |
| 44 | Masonry | 2 mons | Fri 1/3/20 | Thu 2/27/20 |
| 45 | Windows | 1 mon | Fri 2/28/20 | Thu 3/26/20 |
| 46 | Interior Framing | 5 wks | Fri 3/13/20 | Thu 4/16/20 |
| 47 | MEP Roughing | 2 mons | Fri 3/27/20 | Thu 5/21/20 |
| 48 | Gyp Board | 2.5 mons | Fri 5/22/20 | Thu 7/30/20 |
| 49 | Finish Work | 5 mons | Fri 7/17/20 | Thu 12/3/20 |
| 50 | **Building D** | **397.5 days?** | **Tue 9/10/19** | **Thu 3/18/21** |
| 51 | Site plan approval | 1 day? | Tue 9/10/19 | Tue 9/10/19 |
| 52 | Demolition of existing structure | 4 wks | Wed 9/11/19 | Tue 10/8/19 |
| 53 | Piles / Foundations | 6 wks | Thu 10/31/19 | Thu 12/12/19 |
| 54 | Structure (steel and concrete) | 4 mons | Thu 11/28/19 | Thu 3/19/20 |
| 55 | Roofing | 3 wks | Thu 3/19/20 | Thu 4/9/20 |
| 56 | Masonry | 3 mons | Thu 3/19/20 | Thu 6/11/20 |
| 57 | Windows | 2 mons | Thu 6/11/20 | Thu 8/6/20 |
| 58 | Interior Framing | 3 mons | Thu 6/11/20 | Thu 9/3/20 |
| 59 | MEP Roughing | 4 mons | Thu 8/6/20 | Thu 11/26/20 |
| 60 | Gyp Board | 3 mons | Thu 10/1/20 | Thu 12/24/20 |
| 61 | Finish Work | 5 mons | Thu 10/29/20 | Thu 3/18/21 |

Project: Wonder Lofts Project
Date: Aug 23, 2019

| | | | | | |
|---|---|---|---|---|---|
| Task | | Project Summary | Inactive Milestone | Manual Summary Rollup | Deadline |
| Split | | External Tasks | Inactive Summary | Manual Summary | Progress |
| Milestone | ◆ | External Milestone | Manual Task | Start-only | |
| Summary | | Inactive Task | Duration-only | Finish-only | |

Page 2

# ATTACHMENT C
## REQUISITION,
## INVOICING REQUIREMENTS
## FINAL AFFIDAVIT

# Attachment C-1

# INVOICING REQUIREMENTS

WITH THE CONTRACTOR:         Wonder Lofts Owner, LLC
                            c/o Prism Construction Management,LLC
                            200 Broadacres Drive, 1st Floor
                            Bloomfield, NJ 07003
PROJECT:

The consultant or trade vendor signing below is hereby notified of the following:

In order to be paid as per the terms of the trade contract agreement, invoices for work completed up to the 30th of the month must be received in the office of Prism Construction Management, LLC by the 20th day of the month.   This early cut-off date allows us enough time to approve the invoice, requisition for payment, and then process your invoice for payment.   Aside from mailing the original invoice, email a copy to dennis.thompson@prismpartners.net and nancy.murray@prismpartners.net no later than the 20th of the month.

**INVOICES MUST BE SUBMITTED ON THE ATTACHED APPLICATION FOR PAYMENT FORMS. PLEASE BE ADVISED THAT THE APPLICATION FOR PAYMENT WILL NOT BE CONSIDERED COMPLETE UNLESS ALL 3 sets (C2,C3,C4) of attachments (Requisition, Vendor List, Partial Lien Waivers (both standard & lender versions, and Final Affidavit when applicable ARE FILLED OUT IN TOTAL INCLUDING "ATTACHMENT C-4" WHICH IS A LISTING OF YOUR SUBCONTRACTORS, MATERIAL AND EQUIPMENT SUPPLIERS, AND CONSULTANTS ON THE PROJECT. IN ADDITION, Requisition, and all Lien Waivers must be witnessed and signed by a NOTARY.**

***INVOICES RECEIVED AFTER THE 20TH DAY OF THE MONTH WILL NOT BE PROCESSED FOR PAYMENT UNTIL THE FOLLOWING MONTH.***

In addition, any change requests must be submitted in writing to Prism Construction, Management LLC prior to the 10th of the month.   Changes will not be processed for payment unless they are fully executed with all appropriate signatures.

**THE ABOVE IS AGREED TO BY:**         _____
                                      CONSULTANT

_____         _____
PRINT NAME                            TITLE

_____         _____
SIGNATURE                             DATE

## Please sign and return this form immediately.

Project Name:   Wonder Lofts  _____

---

### CONDITIONAL WAIVER AND RELEASE UPON PROGRESS PAYMENT

The undersigned represents that neither it or any of its Trade Contractor or materialmen have filed a Construction Lien, Notice of unpaid Balance or Right to File Lien regarding the Project or have taken  any action to file or prefect to the Project for which any labor or materials or both has been furnished.

In consideration of this payment and all previous payments, the undersigned  hereby expressly waives, releases and discharges any and all construction liens and the right to file a notice of Unpaid Balance and/or Right to File Lien pertaining to the Project for which the aforesaid labor or material or both has been furnished by the undersigned to or for the account of Prism Construction Managment, L.L.C.

I have attached hereto as "Attachment C-3" an affidavit listing the names and addresses of all persons or entities providing services, labor, materials or equipment who may have a right to file a Construction Lien.

By: _____   Title: _____
    (Signature of Trade Contractor)

Company: _____0_____   Date: _____

State of          )
                  ) ss.
County of         )

BE IT REMEMBERED, that on this_____day of _____, 20_____, In the County and State aforesaid, personally appeared before me, the subsciber,a Notary Public of the State of_____, _____
(Name of person signing release) who I am satisfied is the Party Mentioned in the within instrument, to whom I first made known the contents thereof, and thereupon (he/she) signed, sealed and delivered the same as (his/her) voluntary act and deed for the uses and purposes therein expressed.

_____
        (Notary Public)

| | |
|---|---|
| **Contract Amount:** | — |
| **Amount of Approve Change Orders to  Date** | — |
| **Adjusted Contract Amount** | — |
| **Work Completed to Date** | — |
| **Less Retention(10%)** | — |
| **Amount Earned to Date** | — |
| **Previous Amounts Requested** | — |
| **Net Amount of this Requisition / retainage credit realease** | — |

For Use by Prism Construction Management, LLC

Job Number: _____     Extra: _____

Commitment/P.O.: _____     CC: _____

Project Name: _____

| Current Requisition | Retention | Net Requisition | |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

---

**NO REQUISITION WILL BE PROCESSED WITHOUT COPIES OF ALL EXECUTED CHANGE ORDERS ATTACHED.  IMPROPERLY EXECUTED CERTIFICATIONS WILL BE RETURNED**

## FINAL AFFIDAVIT AND UNCONDITIONAL WAIVER AND RELEASE

PROJECT NAME:

The undersigned, being duly sworn, deposes, certifies and says that:

(I) He(She) is an officer of, and is duly authorized to make this affidavit, waiver and release on behalf of _____("Contractor/ Material Supplier/Consultant").

(ii) Contractor/Material Supplier/Consultant upon payment of the balance currently due through the date of this instrument for all labor, services, equipment and materials (sometimes referred to as the "work") furnished on the job owned by **Wonder Lofts Owner, L.L.C. a Delaware limited liability company c/o Prism Construction Management, LLC.** located at **200 Broadacres Drive, 1st Floor** in the township of **Bloomfield** state of **NJ** completed for **Wonder Lofts** (the "Project") states the following:

    a) Contractor/Consultant has paid in full or otherwise satisfied all of its obligations for labor, materials, equipment and services and all other indebtedness associated with the performance of Contractor/Material Supplier/Consultant work on the Project, including without limitation payment in full to, or other satisfaction of, all persons and entities which have furnished labor, services, equipment or materials to Contractor.

    b) Contractor/Consultant agrees that in consideration of the current payment due in the sum of $_____dollars, paid simultaneously herewith, the receipt whereof is hereby acknowledged by the undersigned, he will be paid in full and Contractor/Consultant forever waives, releases and relinquishes any and all claims and rights to a construction lien, whether previously filed or not, bond right, equitable claim or right to any fund, any right to a labor and material bond or other bond on the project and all other rights and claims that Contractor/Consultant has on the Project. This waiver is expressly contingent and conditioned upon the check in payment of such sum being paid upon presentment.

    c) Contractor/Consultant guarantees to Owner that the work furnished by Contractor/Consultant (including work furnished by the Subcontractors) on the Project is and shall be lien free; that the Subcontractors have no right to any lien, whether previously filed or not, bond right, equitable claim or right to any fund, and right to a labor and material bond or other bond on the Project or other rights and claims with respect to the Project and Contractor agrees to indemnify Owner against any claim or lien asserted through or under Contractor with respect to the Project, including without limitations any claim or lien asserted by any person who has furnished labor, materials, equipment or services to Contractor.

| | |
|---|---|
| Original Contract Sum | $_____ |
| Net Change By Change Orders | $_____ |
| Contract Sum to Date | $_____ |
| Total Work Completed & Stored To Date | $_____ |
| Retainage Withheld To Date | $_____ |
| Total Amount Billed To Date | $_____ |
| Total Amount Paid To Date | $_____ |
| Payment Currently Due | $_____ |
| Balance After Current Payment | $_____ |

Firm Name_____     By: _____

Date: _____     Title: _____

*Subscribed and sworn to before me this*

_____ *day of* _____ *20* _____.
*Notary Public:* _____

**ATTACHMENT C_3 Partial Lien Waiver (Standard)**

Conditional Lien Waiver for Current Payment Application / Unconditional Lien Waiver for Payments Received

From:   (Contractor / Subcontractor Name)

To:    The Owner and Lenders named below

Period Ending (Date): ____

| | |
|---|---|
| Project: | Wonder Lofts, 720 Clinton St., Hoboken, NJ |
| Owner: | Wonder Lofts Owner L.L.C., a Delaware limited liability company |
| Lenders: | |

| |
|---|
| Contractor Name: |
| Contract Work: |
| Contract Date: |

| | |
|---|---|
| Original Contract Amount (A) | $ |
| Approved Change Orders to Date (B) | $ |
| Total Revised Contract Amount (C = A +B) | $ |
| Unconditional Waiver for Previous Payments Received (D) | $ |
| Retention associated with Previous Payments Received (E) | $ |
| Conditional Waiver for Current Payment Application (F) | $ |
| Retention associated with Current Payment Application (G) | $ |
| Unpaid Balance including Retention after Current Payment (C − D − F) | $ |

The undersigned contractor, subcontractor or supplier herby acknowledges receipt in cash, equivalents or other agreement of aggregate payments equal to the amount stated in D above, and further states that it has currently completed but has not been paid for work equal to the amount stated in F above.  Upon receipt of the amount stated in F above, the above amounts will represent payment in full (less the retention stated in E and G above), for all amounts due for the contract work under our contract with the general contractor and/or owner identified above as increased/decreased by the change order amounts also specified above, as of the date of this lien waiver.

The undersigned hereby certifies that the amounts set forth above are true and correct and acknowledges that there are no additional costs or claims for any extras or additions for labor and material on the above described Project other than those included in the Contract Amount and any Change Order Amounts set forth above.

Upon receipt of the amount stated in F above, the undersigned hereby specifically waives, quitclaims and releases any lien, right to lien or claim of any kind it may have against the Owner, the Contractor, the Owner's Lenders, the Owner's managers and agents, or any other person or entity with a legal or equitable interest in the Property, relative to the work or improvements at the Property with respect to the sums set forth in D and F above.

Duly authorized, executed and delivered by the undersigned this ____ of _____, _____

WITNESSED AND NOTARIZED BY

(1) _____    By: _____
                                           Contractor, Subcontractor or Supplier

(2) _____    By: _____
                                           Chief Financial Officer

Note: Fill out form completely or it will not be accepted

# APPLICATION AND CERTIFICATE FOR PAYMENT

## <u>ATTACHMENT C-4</u>

TO:
Prism Construction Management, LLC
200 Broadacres Drive, Suite 180
Bloomfield, NJ 07003
Phone: (973) 562-9580  Fax: (973) 562-9586

FROM:
Trade Contractor: _____
Address: _____
_____
_____
_____

| Owner's Name: | Wonder Loft Owner, LLC | |
|---|---|---|
| Commitment/PO Number: | | |
| Trade Contractor Payment Requisition No. | | Period Ending: |

List all subcontractors and material or equipment suppliers you have used on the above referenced job.
Include status of payments.

## This form must be filled out to receive payment.

| Vendor Name | Vendor Address | Vendor Phone # | Vendor Contract Amount | Amount Invoiced to Date | Amount Paid to Date |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**ATTACHMENT C_3 Partial Lien Waiver (LENDER)**

CONTRACTOR'S PARTIAL WAIVER OF LIEN AND RELEASE

Contractor:
Owner: WONDER LOFTS OWNER, LLC
Premises/Project: WONDER LOFTS
Contract Date:
Original Contract Amount: $
Change Order Amounts: $
Adjusted Contract Amount: $
Total Payments Received to Date: $
Requisition No:
Date of this Requisition:
Amount of this Requisition: $

STATE OF                    )
                           ) ss.:
COUNTY OF                   )

    The Contractor, for and in consideration of the payments made to it by Owner, for labor employed in and materials furnished for the construction of the above-referenced Project, the receipt and sufficiency of which is hereby acknowledged, hereby certifies as follows:

    1.    The Contractor acknowledges receipt of payment from Owner equal to the Total Payments Received to Date set forth above, and certifies that, through the date of the above-referenced Requisition, and conditional upon receipt of $XXXX the amount of said Requisition, (a) the aggregate of said amounts represents payment in full, less Contract retainage and claims previously asserted in writing and attached hereto; for all amounts due for labor and materials provided by the Contractor and all of its personnel, subcontractors and material and equipment suppliers in connection with the improvement of the Premises; and (b) the amounts set forth above are true and correct.

    2.    The Contractor, for itself, its successors and assigns and anyone else acting or claiming by or through it, hereby releases and waives entirely: (a) any mechanic's lien or other lien, stop notice, or any right against any labor or material payment bond, or claim to any mechanic's lien or other lien which the Contractor may now have for all labor, materials, equipment, services and supplies furnished for use in or performed upon the above-described Premises; (b) any and all claims, except claims regarding Contract retainage and claims previously asse11ed in writing and in accordance with the Contract (copies of such claims, if any, are annexed hereto), against Owner, the entities listed on the attached Exhibit I and/or their respective related, affiliated and parent persons and entities including, without limitation, the agents, attorneys, employees, heirs, executors, administrators, members, managers, officers, stockholders, partners (both general and limited), sureties, successors, and assigns of the foregoing (collectively referred to as "Released Pm1ies") on account of any action or cause of action which now exists relative to the Project, Premises, contracts, labor, materials, equipment, services and supplies referenced above; and (c) all actions or causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands whatsoever, in law or in equity, which Contractor may now have against the Released Parties and any entity providing or administering any construction loan to Owner upon or by reason of any matter, cause, or thing, whatsoever from the beginning of the world to the date of the above-referenced Requisition.

    3.    The Contractor further warrants that: (a) all workmen employed by it or its subcontractors upon this Project and all materialmen from whom the Contractor or its subcontractors have purchased materials used in the Project have been fully paid through the date of the above-referenced Requisition; and

## ATTACHMENT C_3 Partial Lien Waiver (LENDER)

(b) none of such workmen and materialmen has any claim or demand or right of lien against the land and improvements described above.

    4.                 ı is a duly authorized agent of the Contractor, which has authorized him/her to make this affidavit and agrees the Released Parties and any surety and title insurer may rely upon this instrument. With respect to the foregoing representations and warranties, the Contractor does hereby agree to indemnify and hold harmless the Released Parties and any others against whom a claim is asselted by virtue of involvement or relationship with them, from any and all claims, damages, losses, expenses, and the like incurred by reason of any claim that the Contractor has not fully paid for all labor, materials and expenses incurred in connection with its work on the Project, including reasonable attorneys' fees, court or arbitration costs, and expert witness and consultant fees expended in connection with the defense of any such claim.

    5.    The Contractor agrees to pay and/or cause to be discharged within fifteen (15) days from the date of filing of any and all mechanic's liens and other liens filed by others against the Project when such liens are claimed to have been filed as a result of the Contractor's failure to make payments for or in connection with any labor, materials, appliances, machinery, equipment, fixtures, or furnishings placed upon or installed in the Project. After such discharge by bonding, the Contractor shall take all steps necessary to effect cancellation, release or satisfaction of the lien. If Contractor fails to comply with the first two sentences of this Paragraph, then any or all of the Released Parties may, at their option: (a) directly settle with lienor and effect a satisfaction of lien, (b) post a bond and discharge such lien, (c) defend any action related to the lien, and/or (d) pay and satisfy any judgment or award in connection with such lien, and the Contractor shall be responsible for and pay all of such Released Parties' direct and indirect costs, including without limitation attorneys' fees within thirty (30) days from demand therefor.

    6.    This Partial Waiver of Lien and Release does not include any pending claims against the Released Parties asserted by Contractor as a result of third-party claims for death or personal injury or property damage arising from or related to Contractor's work.

    7.    The Contractor has not and will not assign any claim against the Released Parties, nor any lien or right to perfect a lien against the Project.

    8.    Any signature delivered via facsimile or other electronic means, e.g., Adobe Portable Document Fom1at (PDF) sent by electronic mail, shall be deemed an original signature hereto.

IN WITNESS WHEREOF, this Partial Waiver of Lien and Release has been executed this _ _ _ _ day of _ _ _ _ _ _ 20_ _ _ _ .

Subscribed and sworn to me this

_ _ _ _ _ _ _ day of _ _ _ _ _ _ _ _ 2019.

By: _____

Print Name: _____

Title: _____

Notary Public: _____

2

# ATTACHMENT D
## CERTIFICATE OF INSURANCE
## INSURANCE REQUIREMENTS

# Wonder Lofts Owner

---

Controlled Insurance Program (OCIP)

Wonder Lofts Owner, LLC
720 Clinton Street
Hoboken, NJ 07030

# OCIP Insurance Manual

## *** GENERAL LIABILITY COVERAGE ONLY ***
### (SEE MANUAL CONTENTS FOR ADDITIONAL INFORMATION)

This Manual is a Contract Document

This Manual Dated: 08/27/2018

© 2011 Turner Surety and Insurance Brokerage. All rights reserved.

PRISM CONTROLLED INSURANCE PROGRAM

# Insurance Manual

## Wonder Lofts Owner, LLC

### 720 CLINTON STREET
Hoboken, NJ 07030

# Table of Contents

TABLE OF CONTENTS .................................................................................... 2

CONTRACTOR FAQS ..................................................................................... 4

**Section 1**    **OVERVIEW** ........................................................................... 6

ABOUT THIS MANUAL .................................................................... 6

**Section 2**    **OCIP PROJECT DIRECTORY** .............................................. 8

**Section 3**    **PROJECT DEFINITIONS** ..................................................... 10

**Section 4**    **OCIP INSURANCE COVERAGE** ........................................ 13

OVERVIEW ..................................................................................... 13
EXCLUDED PARTIES AND PARTIES NO LONGER COVERED BY THE OCIP ... 13
RELEVANT COVERAGE .................................................................. 13
DESCRIPTION OF OCIP COVERAGES ............................................. 13

**Section 5**    **CONTRACTOR MAINTAINED COVERAGE** ..................... 16

VERIFICATION OF REQUIRED COVERAGES ..................................... 16
CONTRACTOR MAINTAINED COVERAGES ...................................... 16
COMMERCIAL GENERAL LIABILITY/UMBRELLA LIABILITY ............. 19
AUTOMOBILE LIABILITY ............................................................... 19
PROPERTY INSURANCE .................................................................. 20
WATERCRAFT AND AIRCRAFT LIABILITY ...................................... 20
PROFESSIONAL LIABILITY ............................................................. 20
POLLUTION LIABILITY ................................................................... 20
COMPLETED OPERATIONS COVERAGE ........................................... 20

**Section 6**    **CONTRACTOR RESPONSIBILITIES AND OBLIGATIONS** ........ 21

CONTRACTOR BIDS ....................................................................... 21
IDENTIFYING CONTRACTOR INSURANCE COSTS ............................ 21
ADJUSTMENTS FOR CONTRACTOR INSURANCE COSTS ................... 22
WITHHOLDING OF PAYMENTS ...................................................... 22
ENROLLMENT ............................................................................... 22
ASSIGNMENT OF PREMIUMS ......................................................... 22
PAYROLL REPORTS ....................................................................... 23
INSURANCE COMPANY PAYROLL AUDIT ....................................... 24
CLAIM REPORTING ....................................................................... 24
OCIP CLOSEOUT AND AUDIT PROCEDURES .................................. 24
OCIP TERMINATION OR MODIFICATION ....................................... 24
CONTRACTOR'S OCIP OBLIGATIONS ............................................ 25
CONTRACTOR REPRESENTATIONS AND WARRANTIES TO SPONSOR ...... 26
DUTY OF CARE ............................................................................. 26
CONFLICTS ................................................................................... 26
SAFETY ........................................................................................ 26

**Section 7**    **CLAIM PROCEDURES** ........................................................ 27

GENERAL PROCEDURES ................................................................ 27
INVESTIGATION ASSISTANCE ....................................................... 27
WORKERS' COMPENSATION CLAIMS ............................................. 27
LIABILITY CLAIMS ....................................................................... 28
PROPERTY CLAIMS ....................................................................... 28

TABLE OF CONTENTS

AUTOMOBILE CLAIMS.................................................................................28
POLLUTION CLAIMS...................................................................................29
JOINT REPRESENTATION.............................................................................29
WAIVER OF INSURED CROSS-CLAIMS............................................................29
AVAILABILITY OF CLAIMS DATA..................................................................29

**Section 8**      **CONTRACTOR PORTAL INSTRUCTIONS**.................................................**30**

**Section 9**

**FORMS**............................................................................................**32**

EXHIBIT 2 SAMPLE  ENROLLED PARTY  CERTIFICATE OF INSURANCE.....................33
EXHIBIT 2 SAMPLE  EXCLUDED PARTY  CERTIFICATE OF INSURANCE....................34
SERVICE TEAM AND CLAIM REPORTING..........................................................35

## NOTE:

TSIB Enrollment Application and TSIB On-Site Payroll Report are to be completed on-line.  Refer to Section 8 to obtain a User ID and Password.  If you have difficulties, contact the Turner Surety and Insurance Brokerage Wrap-Up Service Center.

See Section 2 (OCIP Project Directory) for the TSIB QAS on this Project.
Phone:        (866) 684-WRAP (9727)
Email:        Wrapup@tsibinc.com

FREQUENTLY ASKED QUESTIONS

# Contractor FAQs

<u>What is a "OCIP"?</u>
OCIP stands for "Owner Controlled Insurance Program." Once you are enrolled, this program provides your company with onsite General Liability and Excess/Umbrella coverage.

<u>Why do I have to enroll?</u>
Sponsor has requested your enrollment in the program. All Contractors of all tiers must enroll unless specifically excluded from the program by Sponsor. See this OCIP Manual (Section 3) for exclusions, or refer to your Bid Documents for additional information.

<u>Is there a charge for it?  I already have insurance?</u>
Sponsor pays the premium of the insurance(s) provided under the OCIP. You're not "double-covered" – the OCIP is onsite General Liability and Excess/Umbrella coverage only, and just for the OCIP job(s) you're enrolled on. You should receive credit from your insurance carrier for your OCIP participation; TSIB will provide you with a Certificate of Insurance and copies of any payroll reports, if needed. Keep OCIP project payroll *(if your General Liability is payroll rated)* or Construction Volume/Revenue separated from your corporate work for your insurance auditor, and keep a copy of your OCIP COI as evidence of enrollment.

<u>What do I do if I am hiring subcontractors to work for me?</u>
If you are required to enroll, your lower tier subcontractors must also enroll prior to beginning work on site. Please provide TSIB with their contact information, and make sure they receive a copy of the OCIP Manual. The Manual contains all of the information and forms.

<u>Can I enroll online?  How do I get a USER ID and Password?</u>
TSIB has a Contractor Portal that can be used for a variety of tasks -- from enrollment, to payroll reporting, to monitoring your delinquencies or those of your lower tiers. Please contact your QAS at the Wrap-Up Service Center to obtain a USER ID and Password. You can access our portal at **https://wrapup.vuewrapup.com/contractorportal**.

<u>I've been awarded a second contract for the same project.  Do I need to complete another enrollment form?</u>
Yes, you need to do a separate enrollment form for each contract you're awarded on a project. Also, on-site payroll must be reported separately for each enrollment *if your General Liability is payroll rated.*

**Insurance Cost Worksheet** <u>but keep getting a Delinquency Notice. Why?</u>
You probably missed sending in your insurance policy Rate Pages. .

<u>What exactly are Rate Pages?</u>
Rate pages are the policy pages from your General Liability and Excess/Umbrella policies that show your rate(s), credits and debits the insurance company used to determine the premium for your policies. They need to be from the policy period in which your contract was issued. Also, if your Excess/Umbrella policy is "flat rated", please send the page from your policy that states that, along with the exposure base noted on it. Your broker can often assist you with providing these pages.

<u>How do I report payroll?  Do you need certified reports?</u>
TSIB does not collect certified payroll. *Only if your General Liability is payroll rated,* you are required to report payroll using the on-line, via the Contractor Portal. Please report only your onsite hours and unburdened payroll. Reports are due by the 10th of each following month. If you have more than one enrollment on a project, payroll must be separated and reported for each enrollment.

**Sponsor Name** OCIP Insurance Manual Version 08/27/2018
Wonder Lofts Owner, LLC, 720 Clinton Street, Hoboken, NJ 07030

4

**F R E Q U E N T L Y   A S K E D   Q U E S T I O N S**

How can I avoid getting a payroll delinquency notice?
Please be sure to cover all dates in the month from the date your OCIP coverage began – even if it's a weekend or holiday, and no work is performed.  Make sure your dates run consecutive from report to report.  If one report ends on 12/31/2014, your next report needs to begin on 1/1/2015.  Also, if you are not on site in any month, you must submit a "ZERO" report for that month (zero dollars in payroll and zero manhours).

What's the difference between "Gross" and "Reportable" payroll?
Reportable payroll does not include the premium portion of any overtime pay.  Gross payroll includes the overtime pay. Please note:  If you are reporting payroll in a monopolistic state or Pennsylvania, Delaware, Nevada or Utah, they require the entire unburdened overtime payroll to be reported as Reportable payroll.  If you are unsure whether to include the unburdened overtime portion as Reportable payroll, please consult with the Workers' Compensation Bureau in the state where the project is located.

How do I get a sample Certificate of Insurance?
You can obtain a sample COI in the OCIP Manual for your project, on the Contractor Portal, or you can call the Wrap Up Service Center for assistance.

I keep getting a delinquency for "Missing Physical Copy of Endorsement".  What does this mean?
**Excluded Subcontractors** are required to provide an Additional Insured Endorsement (CG 20 10 11 85 endorsement, or its equivalent).  This needs to be attached to your Certificate of Insurance, and needs to cover both "ongoing" and "completed" operations.

My work on the project is complete.  What do I do now?
Please complete **Notice of Work Completion on line**.  The work completion must be approved by Sponsor in order to be accepted for processing (or by your parent tier, if you are a lower tier subcontractor).  Once processed, your OCIP contract will be closed, and you won't need to send us anything further.

I received a notice from TSIB that my OCIP policies are terminating.  What does that mean?
We're letting you know that the OCIP portion of the project is ending.  If you have any further work to do at the jobsite, you will simply need to provide your own certificate of insurance.  The Wrap Up Service Center can provide you with a sample Certificate of Insurance that will meet the program requirements.

Still have questions?
Please call your QAS directly, or the Wrap Up Service Center at 1.866.684.9727

OVERVIEW



Section 1

# Overview

Welcome to Sponsor's Controlled Insurance Program (OCIP).

You should notify your insurance agent(s) or broker(s) to endorse your coverage to be excess and contingent over the OCIP coverage provided under this Program for on-site activities and the related costs.

**Each bidder is required to bid with the cost of their on-site General Liability primary and Excess/Umbrella insurance included in their Price. Sponsor may modify this bidding and insurance cost identification as necessary based on the specific project requirements. Bidder's completed and verified along with its current Insurance Rate Sheets (see Section 6 "Identifying Contractor Insurance Costs") will be the basis for establishing what your corporate insurance costs are. Once verified, the Verified Insurance Cost amount will be deducted via Change Order.**

**NOTE:**
Insurance coverages and limits provided under the OCIP are limited in scope and are specific to work performed after the inception date of your enrollment into this program. <u>Your insurance representative should review this information.</u> Any additional coverage you may wish to purchase will be at your option and expense.

## About This Manual

Wonder Lofts Owner, LLC ("Sponsor") is Sponsor for this OCIP. Turner Surety and Insurance Brokerage, Inc. ("TSIB") is the OCIP Administrator for this OCIP. The Manual is designed to identify, define and assign responsibilities for the administration of the OCIP for this project. It also outlines the coverages provided by the OCIP, procedures for bidding, OCIP Enrollment process, and insurance coverage required of any contractor (both enrolled and excluded) outside of the OCIP.

This Manual:

- Generally describes the structure of the OCIP
- Identifies responsibilities of the various parties involved in the Project
- Provides a basic description of the OCIP coverage (the specifics of the OCIP coverage are governed exclusively by the terms of the OCIP insurance policies)
- Sets forth insurance requirements for contractors associated with the project
- Sets forth Enrollment requirements
- Describes audit and administrative procedures
- Provides answers to basic questions about the OCIP

This Manual does not:

- Provide coverage interpretations
- Provide complete information about coverages and exclusions
- Provide answers to specific claims questions

Section 2.

**Sponsor Name** OCIP Insurance Manual Version 08/27/2018
Wonder Lofts Owner, LLC, 720 Clinton Street, Hoboken, NJ 07030

6

**O V E R V I E W**

**ADVISORY:**
The information in this Manual is intended to outline the OCIP.  If any conflict exists between this Manual and the OCIP insurance policies, the OCIP insurance policies will govern.

The contract price *(or payrolls if your General Liability is payroll rated)* submitted for this project should be excluded from the contract price *(payrolls)* submitted to your corporate insurance carriers to avoid paying premiums for exposures covered by the OCIP Program.  The Certificate of Insurance showing you as a Named Insured on the General Liability Policy may be used to provide evidence of your enrollment in the OCIP to your corporate insurance carriers.

OCIP PROJECT DIRECTORY



# OCIP Project Directory

## OCIP Administration

| | |
|---|---|
| **CONTRACTOR CONTACT –** | |
| **Turner Surety and Insurance Brokerage Wrap-up Service** | |
| 35 Nutmeg Drive, Suite 300 | Telephone:   (866) 684-WRAP |
| Trumbull, CT  06611 | (866) 684-9727 |
| | |
| Service Center | |
| Quality Assurance Specialist | Email: ehobson@tsibinc.com |
| Eva Hobson | Direct Phone:  (203) 666-4316 |

| | |
|---|---|
| **SPONSOR STAFF CONTACT –** | |
| **Turner Surety and Insurance Brokerage** | |
| Regional Program Manager – | Telephone:  (201) 574-3885 |
| Denise Bianchi | E-mail:  dbianchi@tsibinc.com |

| | |
|---|---|
| **Navigators Speciality Insurance Company** | |
| Loss Control Manager – | Telephone: TBD |
| TBD | Cell:  TBD |
| | E-mail:  TBD |

| | |
|---|---|
| **Claim/Incident Reporting** | |
| William H. Connolly & Co. LLC | Telephone:  (973) 744-8500 |
| Jim Connolly | Cell:  (201) 704-5529 |
| | E-mail: Jconnolly@whconnolly.com |

| | |
|---|---|
| **Broker Of Record** | |
| William H. Connolly & Co. LLC | Telephone: (973) 744-8500 |
| Peter Koppisch | E-mail: pkoppisch@whconnolly.com |

**O C I P   P R O J E C T   D I R E C T O R Y**

| Sponsor – Project Team | |
|---|---|
| **Sponsor Project Manager –**<br>Dennis Thomason | Telephone:  (973)-219-5071<br>Cell:  (201) 510-2043<br>E-mail:  dennis.thompson@prismpartners.net |
| **Site Safety Manager --**<br>Kyle Winschuh | Telephone:<br>Cell:  973-980-3196<br>E-mail:  kw@parkwooddev.com |
| **Project Superintendent -**<br>Kevin Worthington | Telephone:<br>Cell:  973-619-5774<br>E-mail:  Kevin.Worthington@prismpartners.net |
| **Project Engineer -**<br>TBD | Telephone:<br>Cell:<br>E-mail: |
| **Claim Coordinator -**<br>Jim Connolly | Telephone:  (973) 744-8500<br>Cell:  (201) 704-5529<br>E-mail:  Jconnolly@whconnolly.com |
| **OCIP Coordinator–**<br>TBD | Telephone:  TBD<br>Cell:  TBD<br>E-mail:  TBD |

PROJECT DEFINITIONS



# Project Definitions

*The following list includes key OCIP definitions.*

| | |
|---|---|
| OCIP: | An "OCIP" or Owner Controlled Insurance Program is a coordinated insurance program providing certain coverages, as defined herein, eligible Enrolled Parties performing Work at the Project Site. |
| AGREEMENT FORM | Any contractual form between two entities (be they persons, firms, joint venture entities, corporations, or other parties) to perform services for the Project. For this Manual, it will be recognized as the contractual form between the General Contractor and OCIP Sponsor. |
| BROKER OF RECORD | Insurance agency or brokerage responsible for the placement of insurance policies for the OCIP Project. |
| OCIP ADMINISTRATOR: | Turner Surety and Insurance Brokerage, Inc. ("TSIB") |
| OCIP INSURER: | The insurance company(ies) named on a policy or certificate of insurance providing coverage for the OCIP. |
| OCIP SPONSOR: | Wonder Lofts Owner, LLC ("Sponsor" or "Sponsor Construction") |
| CERTIFICATE OF INSURANCE: | A document referencing coverage for a particular insurance policy or policies. |
| CONTRACTOR INSURANCE COST LETTER | Letter written by the OCIP Administrator identifying the Verified Insurance Costs and Verified Blended Rate. |
| CONTRACTOR OF ANY TIER/ CONTRACTORS OF ALL TIERS | Any entity working on the Project (both on-site and off-site) whether they are the General Contractor, Subcontractor or Sub-subcontractor. |
| ELIGIBLE PARTIES/ELIGIBLE GENERAL CONTRACTOR/ ELIGIBLE SUBCONTRACTOR (SUB-SUBCONTRACTOR) | Parties performing labor or services at the Project Site who are eligible to enroll in the OCIP. |
| ENROLLED PARTIES/ENROLLED GENERAL CONTRACTOR/ ENROLLED SUBCONTRACTOR (SUB-SUBCONTRACTOR): | Those Eligible Subcontractors who have submitted all necessary enrollment information as detailed in Section 6 and have been accepted into the OCIP receiving a Welcome Letter and Certificate of Insurance. |

**PROJECT DEFINITIONS**

| | |
|---|---|
| EXCLUDED PARTIES/EXCLUDED SUBCONTRACTORS: | At the discretion of Sponsor, or subject to State regulations, the following parties are excluded from (not eligible for) enrollment in the OCIP:<br><br>(1) Hazardous materials remediation, removal and/or transport companies and their consultants;<br><br>(2) Any Enrolled Contractor of any tier performing Structural Demolition (Structural Demolition is the moving or relocating of load bearing beams, columns, or walls);<br><br>(3) Architects, engineers, soil testing engineers, surveyors, and their consultants;<br><br>(4) Vendors, suppliers, fabricators, material dealers, truckers, haulers, drivers and others who merely transport, pickup, deliver, or carry materials, personnel, parts or equipment or any other items or persons to or from the Project Site;<br><br>(5) Contractors of any tier who do not perform any actual labor on the Project Site;<br><br>(6) Third Party Scaffolding Contractors of any tier;<br><br>(7) Third Party Crane Contractor of any tier as well as Contractors of any tier engaged in the erecting, dismantling or "jumping" of cranes;<br><br>(8) Building implosion Contractors of any tier involved with blasting or the use of explosives;<br><br>(9) Window Washing Systems (davit type systems or equivalent).<br><br>(10) Any Subcontractor of any tier involved with Exterior Insulation Finishing Systems (EIFS)<br><br>(11) Any other Contractor of any tier which Sponsor, at its sole discretion (and as permitted by law), seeks to exclude from enrollment. |
| GENERAL CONTRACTOR | Includes only those persons, firms, joint venture entities, corporations, or other parties that enter into a contractual agreement with the Sponsor to perform Work at the Project Site. |
| PARTY NO LONGER COVERED BY THE OCIP: | A Party whose OCIP insurance coverage has been terminated. Upon termination of OCIP coverages, the Party is to provide insurance coverage for both on and off the Project Site activities listed in Section 5 of this Manual and as otherwise required by their Agreement Form. |
| PROJECT SITE: | The "project location" (designated in this Manual and more fully identified in the Agreement Form) and adjacent or nearby areas as defined in the project documents where incidental operations are performed excluding permanent locations of any insured party. |
| SUBCONTRACTOR: | Includes only those persons, firms, joint venture entities, corporations, or other parties that enter into a contractual agreement with the General Contractor to perform Work at the Project Site |
| SUB-SUBCONTRACTOR: | Includes only those persons, firms, joint venture entities, corporations, or other parties that enter into a contractual agreement with a Subcontractor to perform Work at the Project Site |
| SUBCONTRACT / SUBCONTRACT AGREEMENT: | A written agreement between the General Contractor and the Subcontractor. |
| SUB-SUBCONTRACT / SUB-SUBCONTRACT AGREEMENT: | A written agreement between the Subcontractor and a Sub-subcontractor(s) of any tier. |

**PROJECT DEFINITIONS**

| | |
|---|---|
| CONTRACTOR INSURANCE COSTS: | A Contractor's (of any tier) corporate insurance costs that would be required if the OCIP insurance coverage was not provided. |
| VERIFIED BLENDED RATE: | *If Contractor's General Liability insurance is contract price based:*  Rate determined by dividing a Contractor's (of any tier) total Verified Insurance Cost by the Contractor's initial contract price then multiplied by 1,000.  The Rate is expressed as per $1,000 of contract price (a.k.a. contract volume). Verified Blended Rate = (Verified Insurance Costs / Initial Contract Price) * 1,000 |
| | *If Contractor's General Liability insurance is payroll based:*  Rate determined by dividing a Contractor's (of any tier) total Verified Insurance Cost by the Contractor's initial estimated payroll then multiplied by 100.  The Rate is expressed as per $100 of payroll. Verified Blended Rate = (Verified Insurance Costs / Initial Estimated Payroll) * 100. |
| VERIFIED INSURANCE COST: | The Contractor's (of any tier) corporate insurance cost that has been verified by the OCIP Administrator. |
| WELCOME LETTER: | A document issued by the OCIP Administrator that notifies the applicant of acceptance/ enrollment into the OCIP. |
| WORK: | Operations, as fully described in the Agreement Form, performed at the Project Site. |

**Sponsor Name** OCIP Insurance Manual Version 08/27/2018
Wonder Lofts Owner, LLC, 720 Clinton Street, Hoboken, NJ 07030

**12**

O C I P   I N S U R A N C E   C O V E R A G E



# OCIP Insurance Coverage

*This Section provides a brief description of the OCIP Coverage.  Contractors of any tier should refer to the actual OCIP insurance policies for details concerning coverage, exclusions and limitations.*

## Overview

Sponsor has arranged with TSIB (the "OCIP Administrator") for this Project to be insured under its Controlled Insurance

eligible to enroll in the OCIP unless that party is an **Excluded Party** or a **Party No Longer Covered by the OCIP**. The OCIP will provide Commercial General Liability Insurance, and Excess Liability Insurance for the benefit of **Enrolled Parties**, as summarily described below, in connection with the performance of the Work ("OCIP Coverages").

## Excluded Parties and Parties No Longer Covered by the OCIP

*Excluded Parties* are not granted any insurance coverage under the OCIP.  *Excluded Parties* and *Parties No Longer Covered by the OCIP* must meet the insurance requirements established in Section 5 and in the Agreement Form, and provide evidence of coverage to Sponsor and TSIB.

*Excluded Parties* and *Parties No Longer Covered by the OCIP* shall require each of its Subcontractors and its Sub-subcontractors to obtain and maintain the insurance coverage specified elsewhere in this Manual and in the Agreement Form.

## Relevant Coverage

OCIP Coverages shall cover only **Enrolled Parties** which are:  The General Contractor, Eligible Subcontractors, and Eligible Sub-subcontractors who enroll in the OCIP, and such other persons or entities as Sponsor at its sole discretion may designate.

The OCIP Administrator will provide a Certificate of Insurance identifying General Liability, and Excess Liability Insurance to each **Enrolled Party**, each of who will be added as an Additional Named Insured to the OCIP General Liability insurance policy. The Insurance Company will furnish other documents including claim forms, and posting notices to each **Enrolled Party**.  A copy of the primary General Liability policy can be obtained upon a Contractor's written request to Sponsor and after signing a Confidentiality Agreement.  Copies of Excess/Umbrella policies are not available for review.

## Description of OCIP Coverages

The summary descriptions of the OCIP coverages in this Manual are not intended to alter or amend the provisions of the actual OCIP coverages.  Rather, the OCIP coverages and exclusions summarized in this Manual are set forth in full detail in their respective insurance policy forms.  In the event any provision of this Manual conflicts with the OCIP insurance policies, the provisions of the actual OCIP insurance policies shall govern.

OCIP coverages shall apply only to **Enrolled Parties** and only for those operations performed at the Project Site in connection with the Work.

Sponsor will furnish the following coverages to all **Enrolled Parties** performing Work at the Project Site.

O C I P   I N S U R A N C E   C O V E R A G E

<u>Summary</u>

## THIS IS A GENERAL LIABILITY ONLY OCIP Program

### Commercial General Liability

A single General Liability policy will be issued for all **Enrolled Parties** with all **Enrolled Parties** Named as Insureds.

**Coverage:**  Third Party Bodily Injury and Property Damage Liability.

| Primary Policy: | Limits of Liability Shared by All Enrolled Parties |
|---|---|
| General Aggregate Per Project | $2,000,000 |
| Products/Completed Operations Aggregate Per Project | $2,000,000 |
| Each Occurrence Limit | $1,000,000 |
| Personal Injury/Adversity Injury | $50,000 |
| Damage to Rented Premises | $1,000,000 |
| Medical Expense Limit (any one person) | $5,000 |

### Terms

- Provides primary coverage for all covered occurrences at the Project Site.
- Will NOT provide coverage to any insured party, vendor, supplier, off-site fabricator, material dealer or other party for any product manufactured, assembled or otherwise worked upon away from the Project Site.
- Does not cover off-site operations of any **Enrolled Party**.
- Limits re-instate annually except for Products/Completed Operations.  Products & Completed Operations Extension of the Project with a single non-reinstated aggregate limit for the period beginning from the earliest occurrence of (i) when the Project is put to its intended use, (ii) project completion, or (iii) OCIP policy termination, and ending after the earlier occurrence of (a) ten (10) years or (b) the expiration of the applicable statute of repose established per the civil code of the state where the Project is located.
- Notable exclusions are:  Real & Personal Property in the care, custody or control of the insured; Asbestos; Exterior Insulation Finishing Systems (EIFS); Discrimination & Wrongful Termination; Architects & Engineers Errors & Omissions; Owned & Non-owned Aircraft, Watercraft, and Automobile Liability; Nuclear Broad Form Liability; Pollution except hostile fire.

### Excess Liability

Single Excess Liability policies will be issued for all **Enrolled Parties.**

| | Minimum Limits of Liability Shared by All Enrolled Parties |
|---|---|
| Each Occurrence Limit (Combined Single Limit) | $50,000,000 |
| Products/Completed Operations Aggregate Per Project | $50,000,000 |
| Annual General Aggregate Limit Per Project | $50,000,000 |

### Terms

- Excess Policies follows provisions and coverages of underlying Commercial General Liability and Employer's Liability policy wording.

### Enrolled Party General Liability Obligation

At Sponsor's discretion, any Contractor of any tier may be required to pay up to the first **$5,000** per occurrence to the extent losses payable are attributable to that Contractor's Work, or the acts or omissions of its Subcontractors or its Sub-subcontractors, or any other party performing any of the Work for whom the Contractor may be contractually or legally responsible.

OCIP INSURANCE COVERAGE

**Property of Subcontractors**

Contractors of any tier are advised to arrange their own insurance for rented, owned, leased or borrowed equipment and materials not intended for inclusion in the Project. The OCIP will not cover Contractor property.

CONTRACTOR MAINTAINED COVERAGE



Section 5

# Contractor Maintained Coverage

*Contractors of all tiers are required to maintain coverage to protect against losses that occur away from the Project Site or that are otherwise not covered under the OCIP. All Certificates of Insurance must be submitted to the OCIP Administrator prior to mobilization.*

The required coverage must be maintained for the duration of the contract (or for a longer period specified within the Agreement Form) and must protect the Contractor, Sponsor, and others as required from liabilities. These liabilities may arise from the Contractor's operations performed away from the Project Site, from coverages not provided by the OCIP, or from operations performed by Excluded Parties or Parties No Longer Covered by the OCIP

- **Enrolled Parties** are to provide evidence of Workers' Compensation (both on-site and off-site activities), General Liability and Excess/Umbrella Liability insurance for off-site activities, Automobile Liability (both on-site and off-site activity), and any other

- **Excluded Parties and Parties No Longer Covered by the OCIP** must provide evidence of Workers' Compensation, General Liability, Excess/Umbrella Liability, Automobile Liability, and any other insurance as per the insurance specifications in the Agreement Form for all activities both on and off the Project Site.

## Verification of Required Coverages

Contractors shall provide verification of insurance to the OCIP Administrator by way of an acceptable Certificate of Insurance prior to mobilization on-site and within three (3) days of any renewal, change or replacement of coverage. **A sample of an acceptable Certificate of Insurance that includes the requirements for waiver of subrogation, primary and non-contributory language and additional insured status is provided in Section 9 of this OCIP Insurance Manual.**

*Contractors of any tier are responsible for collecting, monitoring and retaining copies of their Subcontractors and Sub-subcontractor's Certificates of Insurance.* Sponsor, at its sole discretion, may request copies of lower tier Certificates of Insurance to ensure compliance with the requirements of this Manual. Sponsor reserves the right to disapprove the use of Contractors of any tier unable to meet the insurance requirements or who do not meet other Sponsor policy requirements.

The limits of liability shown for the insurance required of any Contractor of any tier are minimum limits only and are not intended to restrict the liability imposed on the Contractors for work performed under their contract.

## Contractor Maintained Coverages

### Insurance Required

Contractors of any tier shall obtain and maintain, and shall require each of its Subcontractors to obtain and maintain, the insurance coverage specified in this Section and in each Agreement in a form and from insurance companies reasonably acceptable to Sponsor. The insurance limits may be provided through a combination of primary and excess policies, including the umbrella form of policy. Each policy required under this Section, except for Workers' Compensation and Professional Liability (if required), shall name Sponsor, other additional insured parties, their respective officers, agents and employees, and any additional entities as Sponsor may request as additional insureds. Coverage is to be afforded on a primary and non-contributory basis with respect to any other insurance available to the additional insured. The additional insured endorsement utilized for the General Liability policy must provide coverage as broad as that available under the ISO CG 20 10 11 85 or its equivalent endorsement. The insurance obtained by Subcontractor and any Sub-subcontractor shall not contain any wrap-up

**Sponsor Name** OCIP Insurance Manual Version 08/27/2018
Wonder Lofts Owner, LLC, 720 Clinton Street, Hoboken, NJ 07030

16

**C O N T R A C T O R   M A I N T A I N E D   C O V E R A G E**

exclusion or wrap-up excess endorsement that would bar or limit available coverage where the Named Insured is not enrolled in the OCIP, or in instances where liability arises out of work performed by an enrolled Subcontractor away from the OCIP jobsite (i.e., off-site activities). Such insurance obtained by the Subcontractor and any Sub-subcontractor shall be primary to, and not contribute with, any OCIP insurance in any circumstance where the Named Insured is not enrolled in the OCIP or in instances where liability arises out of work performed by an enrolled Subcontractor away from the OCIP jobsite (i.e., off-site activities).

**In the event that the law of the state in which the project is located (or other applicable law) limits the indemnity obligations of any Contractor, then the indemnity obligations of the Contractor shall be enforced to the fullest extent permitted by applicable law, and this Manual shall be read to conform to such law.**

The Additional Insured Parties for the Project are:

| | |
|---|---|
| Wonder Lofts Owner, LLC | Wonder Lofts Manager, Inc. |
| Wonder Lofts Parent, LLC | AG Funds Wonder Lofts Member, LLC |
| Prism Capital Partners, LLC | AG Realty IX Investments (H-1), L.P. |
| Prism Property Services, LLC | AG Realty Fund IX, L.P. |
| Prism Construction Management, LLC | AG Realty Fund IX (A), L.P. |
| Prism Wonder Lofts Construction, LLC | AGR IX LLC |
| Prism Wonder Lofts Owner, LLC | Wonder Lofts, LLC |
| AG-Prism Wonder Lofts, LLC | Parkwood Development, LLC |
| WL Owner, LLC (NJ) | Bank OZK ISAOA ATIMA |
| Prism Capital Services, LLC | |

Sponsor may request other entities as may be reasonably requested as additional insureds.

**Waiver of Claim / Waiver of Subrogation.** Where permitted by law, Contractors of all tiers hereby waives all rights of recovery against Sponsor, the other additional insured parties, the OCIP Administrator, their respective officers, agents, or employees, and any other Contractor, Subcontractor, or Sub-subcontractor performing Work or rendering services on behalf of Sponsor in connection with the planning, development and construction of the Project because of deductible clauses, inadequacy of limits of any insurance policy, limitations or exclusions of coverage, or any other reason. Where permitted by law, Contractors of all tiers shall also require that all of its Subcontractor's maintained insurance coverage related to the Work include clauses providing that each insurer shall waive all of its rights of recovery by subrogation against the same parties referenced immediately above in this Section. Subcontractor shall require similar written express waivers and insurance clauses from each of its Sub-subcontractors. A waiver of claim / waiver of subrogation (as the case may be) shall be effective even if the party from the claim against has been waived (a) would otherwise have a duty of indemnification, contractual or otherwise, (b) did not pay the insurance premium directly or indirectly, and (c) whether or not such individual or entity has an insurable interest in the property damaged.

As to Eligible and **Enrolled Parties**, the Workers' Compensation, Employer's Liability, and Commercial General Liability insurance required by this Section shall be for on-site and off-site activities or operations not insured under the OCIP Coverages. The following insurance coverages are to be provided by an insurance carrier selected by each Contractor of any tier and satisfactory to Sponsor. All costs for insurance coverages for off-site activities or operations are included in the Agreement Form Price and are paid by the applicable Contractor.

(1) Standard Commercial Automobile Liability Insurance covering all owned, non-owned and hired automobiles, trucks, and trailers with a combined single limit of not less than $1,000,000.

(2) Statutory Workers' Compensation Insurance and Employer's Liability insurance, including Maritime coverage, if appropriate. Workers' Compensation limits shall comply with the requirements of the governing Jurisdiction. Employer's Liability limits shall be provided of not less than $1,000,000 each accident/$1,000,000 each employee/$1,000,000 policy limit.

**CONTRACTOR MAINTAINED COVERAGE**

(3) Commercial General Liability Insurance providing coverage on a standard ISO form providing "Occurrence" based coverage including Completed Operations and Contractual Liability Insurance against the Liability assumed herein. The required insurance shall also include Independent Contractors Liability Insurance (if the Contractor sublets to another all or any portion of the Work), Personal Injury Liability Insurance, and Broad Form Property Damage coverage (including Completed Operations, and Explosion, Collapse and Underground Hazards). The minimum insurance limits required are set forth in the "Invitation to Bid", the Agreement Form, or as otherwise instructed by Sponsor. If no indication is given, then the minimum required limits will be $5,000,000. Coverage shall be equivalent to the current ISO Occurrence Form.

(4) If required by Sponsor, Aviation and/or Watercraft Liability Insurance with limits of liability acceptable to Sponsor and from an insuring entity reasonably satisfactory to Sponsor.

(5) If required by Sponsor, Contractor's Pollution Liability Insurance with limits of liability acceptable to Sponsor and from an insuring entity reasonably satisfactory to Sponsor.

If any Contractor of any tier fails to procure and maintain the additional insurance required from **Enrolled Parties, Excluded Parties, and Parties No Longer Covered by the OCIP**, Sponsor shall have the right, but not the obligation, to procure and maintain said insurance for and in the name of the Contractor / Subcontractor and/or Sub-subcontractor and the Contractor / Subcontractor and/or Sub-subcontractor shall pay the cost thereof and shall furnish all necessary information to make effective and maintain such insurance. At Sponsor's option, Sponsor may offset the cost incurred by Sponsor against amounts otherwise payable to the Contractor/Subcontractor and/or Sub-subcontractor hereunder.

**Sponsor Name** OCIP Insurance Manual Version 08/27/2018
Wonder Lofts Owner, LLC, 720 Clinton Street, Hoboken, NJ 07030

18

**CONTRACTOR MAINTAINED COVERAGE**

<u>Summary</u>

### Workers' Compensation and Employer's Liability

- Enrolled Parties will provide evidence of Workers' Compensation insurance for all on-site and off-site activities at and away from the Project Site.
- Excluded Parties and Parties No Longer Covered by the OCIP will provide evidence of Workers' Compensation insurance for all activities at and away from the Project Site.

|  |  | **Limits of Liability** |
|---|---|---|
| Part One - | Workers' Compensation | Statutory Limit |
| Part Two - | Employer's Liability | **Annual Limits** |
|  | Bodily Injury by Accident, each accident | $1,000,000 |
|  | Bodily Injury by Disease, each employee | $1,000,000 |
|  | Bodily Injury by Disease, policy limit | $1,000,000 |

- Coverage will apply on and off-site for **Enrolled Parties**, **Excluded Parties** and **Parties No Longer Covered by the OCIP**.

### Commercial General Liability/Umbrella Liability

- **Enrolled Parties** shall provide evidence of General Liability insurance for off-site activities with Sponsor and other required parties named as additional insured (ISO CG 20 10 11 85 version or its equivalent) to the policy. Coverage will apply away from the Project Site.
- **Excluded Parties** and **Parties No Longer Covered by the OCIP** shall provide evidence of General Liability insurance applicable to this Project and must name Sponsor and other required parties named as additional insured (ISO CG 20 10 11 85 version or its equivalent) to their policy. Coverage will apply both on-site and off-site.

The required Commercial General Liability Insurance shall include Completed Operations, Contractual Liability Insurance against the Liability assumed herein, and including Independent Contractors Liability Insurance if any Contractor of any tier sublets to another all or any portion of the Work, Personal Injury Liability, Broad Form Property Damage (including completed operations), and Explosion, Collapse and Underground Hazards, with the following minimum limits: (coverage shall be equivalent to the current ISO Occurrence Form. The required Commercial General Liability/Umbrella Liability Insurance shall not contain any wrap-up exclusions or wrap-up excess endorsements that would bar or limit coverage in instances where the Named Insured is not enrolled in the OCIP (i.e., is an Excluded Party or Party No Longer Covered by the OCIP) or where liability arises out of work performed by an Enrolled Party away from the OCIP jobsite (i.e., involving off-site activities).

|  | **Limits of Liability** |
|---|---|
| Combined Single Limit | As stipulated in Agreement Form, in the Invitation to Bid, or as otherwise instructed by Sponsor. If no indication is given, then the minimum required limits are $6,000,000 |

### Automobile Liability

All Contractors of all tiers shall provide evidence of Automobile Liability Insurance with Sponsor and other required parties named as additional insureds to the policy. The OCIP does not cover Automobile Liability. For **Enrolled Parties, Excluded Parties and Parties No Longer Covered by the OCIP**, coverage will apply both on and off the Project Site.

The Commercial Automobile Liability Insurance shall cover all owned, hired and non-owned automobiles, trucks and trailers used in connection with the work with the following minimum limits:

|  | **Limits of Liability** |
|---|---|
| Combined Single Limit – Each Accident Bodily Injury And Property Damage | As stipulated in the Agreement Form, in the Invitation to Bid, or as otherwise instructed by Sponsor. If no indication is given, then the minimum required limit is $1,000,000 |

CONTRACTOR MAINTAINED COVERAGE

## Property Insurance

The OCIP does not provide coverage for any Contractor's personal property. Contractors must provide their own insurance for owned, leased, rented and borrowed equipment, whether such equipment is located at a Project Site or "in transit". Contractors of any tier are solely responsible for any loss or damage to their personal property including, without limitation, property or materials created or provided installed at the Project Site, Contractor tools and equipment, scaffolding and temporary structures.

## Watercraft and Aircraft Liability

The OCIP does not provide Watercraft or Aircraft Liability Insurance. The operator of any watercraft or aircraft of any kind must maintain liability insurance naming Sponsor, and others as required, and the respective Contractor as an additional insured with primary and non-contributory wording. In addition, the limit of liability must be satisfactory to Sponsor. Such project-specific insurance requirements will be indicated in the Agreement Form.

## Professional Liability

The OCIP does not provide Professional Liability Insurance. All professional service firms must provide professional liability insurance appropriate for their profession. Architect and engineering firms must provide insurance covering liability arising out of design errors and omissions. Professional Liability insurance requirements will be indicated in the Agreement Form.

## Pollution Liability

The OCIP does not provide Pollution Liability Insurance. A Contractor of any tier whose Work involves removal or treatment of hazardous materials will provide and maintain Contractors Pollution Liability insurance. Such coverage will specifically schedule the type of work defined in the Work. Such project-specific insurance requirements will be indicated in the Agreement Form.

## Completed Operations Coverage

Each Enrolled Party will provide Completed Operations coverage from termination of the OCIP provided Completed Operations coverage (as shown in Section 4, Commercial General Liability, Terms) through the Statute of Repose applicable for the State in which the Project is located. **All Enrolling Parties are strongly advised to provide a copy of this Manual and this provision to their insurance professional so the proper coverage extension is arranged.**

C O N T R A C T O R   R E S P O N S I B I L I T I E S   A N D   O B L I G A T I O N S



Section
6

# Contractor Responsibilities and Obligations

*Throughout the course of the Project, Contractors of any tier will be responsible for reporting and maintaining certain records as outlined in this Section.*

Contractors of any tier are required to cooperate with Sponsor, the insurance carrier(s), and the OCIP Administrator in all aspects of OCIP operation and administration.

### Notice to all Out-Of-State Contractors

All Out-of-State Contractors of any tier are advised to contact the Workers' Compensation department in the state where the project is located regarding requirements and compliance with the local Workers' Compensation Laws and Regulations.

## Contractor Bids

Under the OCIP, Sponsor provides General Liability and Excess Liability insurance only for all **Enrolled Parties** for Work performed at the Project Site (refer to Section 4 OCIP Insurance Coverage) . The section below, "Identifying Contractor Insurance Costs," describes the procedures for bidding, and how OCIP insurance amounts are paid. Section 9 of this Manual contains several worksheets that can help you determine your Contractor Insurance Costs for this Project. The OCIP Administrator can also help with this calculation.

## Identifying Contractor Insurance Costs

As part of the enrollment process Eligible Subcontractors of any tier are required to upload insurance policy pages that document their coverage and insurance rates using the Contractor Portal on the OCIP website. Required documentation includes the following pages from the, general liability and umbrella or excess liability policies as follows:

- Declaration or Information Page
- Rate Page(s)

Umbrella or excess liability policies that are "flat rated" will be converted to a rating basis that matches the general liability policy and pro-rated for this project in order to include a value for it in the Insurance Cost calculation. Deductible credits will not be allowed for retroactively rated programs, including LRARO programs, in order to reflect the contractor's loss fund for the program(s).

Enrolled Parties must also provide their estimated unburdened payroll for payroll based rates (payroll without taxes, fringes, benefits and overtime) for that portion of the work that will be performed at the Project Site (Initial Payroll Estimate) and their projected subcontract amount on the Contractor Portal. If the Subcontractors is unable to provide a payroll estimate TSIB will add 20% per contract value.

**Sponsor Name** OCIP Insurance Manual Version 08/27/2018
Wonder Lofts Owner, LLC, 720 Clinton Street, Hoboken, NJ 07030

21

**CONTRACTOR RESPONSIBILITIES AND OBLIGATIONS**

Once the Initial Payroll Estimate and all policy documents are submitted and reviewed, the OCIP Administrator will review the information to verify the Insurance Cost. The OCIP Administrator will perform an Insurance Cost calculation based upon estimated payroll, contract volume and the rating information from the policy pages. The OCIP Administrator will apply discounts and modifiers in the order used by the insurance carrier and shown on the policy pages.

The OCIP Administrator will provide each Enrolled Party & Prism with a Verified Insurance Cost calculation verification letter.

Until each Subcontractor or Sub-subcontractor submits all required documentation to enable verification and calculation of the Subcontractor of any tier's Insurance Cost, an Insurance Cost equal to 3% (three percent) of the contract value may be assigned by Prism. Failure to submit the required documentation may result in a higher Final Insurance Cost Adjustment, if applicable.

### Deductible and/or Dividend Credits

If any Contractor of any tier fails to submit the required Deductible Page(s), loss history and historical audited payroll information (summary level), the OCIP Administrator will make one (1) written request (email) for this information. If the necessary information is not received by the OCIP Administrator within seven (7) days of the written request, Contractor's Verified Insurance Cost and Verified Blended Rate (see below) will be calculated eliminating the deductible and/or dividend credit. Verified Insurance Cost and Verified Blended Rate may not be recalculated should Contractor submit the required information at a later date.

## Adjustments for Contractor Insurance Costs

The OCIP Administrator will perform an actual an Insurance Cost calculation based upon actual payroll, contract volume and the rating information from the policy pages.

At Sponsor's sole discretion, a final additional insurance cost for the CONTRACT may be calculated as follows:

|  | Contractor's Additional Insurance Cost |
|---|---|
| *Plus* | <u>Sum of all Subcontractor's Additional Insurance Costs</u> |
| *Equals* | Contractor's Final Additional Insurance Cost |

Sponsor, at its option, may choose to perform an interim insurance cost adjustment should the Contractor's (of any tier) man-hours or payroll exceed the estimated man-hours or payroll for the contract. Contractor is solely responsible for recovering insurance costs from its Subcontractors and Sub-subcontractors.

## Withholding of Payments

In the event Sponsor audits a Contractor's (of any tier) records which reveals a discrepancy in the insurance, payroll, safety, or any other information required by the Agreement Form, or reveals the inclusion of "Insurance Cost" amount in any payment for the Work, Sponsor shall have the right to withhold or deduct from the Price all such "Insurance Cost" amounts. If any Contractor of any tier fails to timely comply with the provisions of this Manual, Sponsor may withhold any payments due that Contractor and its Subcontractors until such time as they have performed the requirements of this Manual.

Failure to submit any OCIP insurance forms or other documents as required may result in the withholding of payments by Sponsor until required documentation is received.

## Enrollments

NOTE: The Application for Enrollment is required to be completed online via the Contractor Portal. Section 8 of this manual provides instructions on how to access the Contractor Portal and complete your online enrollment.

**CONTRACTOR RESPONSIBILITIES AND OBLIGATIONS**

Section 2 of this manual provides the corresponding Wrap Administrator's contact information if you require assistance.

Each Subcontractor and Sub-subcontractor shall provide details about its Sub-subcontractors as necessary for OCIP enrollment. The information requested on the online Application for Enrollment is mandatory for enrollment. The online application must be completed through the Contractor Portal, and OCIP coverage subsequently confirmed by the OCIP Administrator, prior to Mobilization or the start of Work to obtain OCIP Coverage.

A separate online Application for Enrollment is required for each Eligible Sub-subcontractor of any tier that performs Work at the Project Site.

The OCIP Administrator will issue to each Enrolled Party a Welcome Letter and a OCIP Certificate of Insurance acknowledging acceptance of the applicant into the OCIP. The insurance carrier will issue a separate Workers' Compensation policy to each Enrolled Party.

Enrollment Is Not Automatic.
Eligible Subcontractors and Sub-subcontractors MUST complete the online enrollment forms through the Contractor Portal. Once successfully completed the OCIP Administrator who will confirm enrollment into the OCIP. Access to the Project Site will not be permitted until enrollment is complete. Enrollment is confirmed by a Welcome Letter and a OCIP Certificate of Insurance. If a Subcontractor of any tier obtains access to the Project Site, with or without Prism's knowledge, no OCIP Coverage is provided if Subcontractor or Sub-subcontractor is not enrolled. There is no OCIP Coverage for unenrolled parties, Excluded Parties and Parties No Longer Covered by the OCIP.

Fines for Late Enrollments / Late Reporting
Should the insurance carrier(s) or any regulatory agency assess a fine or penalty for late enrollment and/or late reporting, Prism reserves the right to assess these fines to the Subcontractor. This reservation of rights applies whether fines and/or penalties are due to a Subcontractor or any of its Sub-subcontractors. If a fine or penalty is assessed to a Sub-subcontractor, the prime tier Subcontractor is solely responsible for recovering the fine or penalty amount from its Sub-subcontractor(s).

## Assignment of Premiums

Sponsor pays the cost of the OCIP insurance coverage. All Enrolled Parties will assign to Sponsor all adjustments, refunds, premium discounts, dividends, costs or any other monies due from the OCIP insurer(s). Contractors of all tiers will ensure that its Subcontractor(s) execute such an assignment. The on-line Application for Enrollment Form 1 will be used for this purpose.

## Payroll Reports

### *Only if your General Liability policy is payroll rated:*

By the 10th of each month every Enrolled Party must submit to the OCIP Administrator an on-line On-Site Payroll Report Information identifying man-hours and unburdened payroll for all work performed at the Project Site.

A monthly payroll report must be submitted for each month, including months where there was zero payroll or work hours, until completion of the Work under each Subcontract. For those Subcontractors performing Work under multiple Subcontract Agreements, a separate monthly payroll report is required for each Subcontract.

The monthly on-line On-Site Payroll Report Information should include the unburdened "straight-time" payroll and the unburdened "straight-time" portion of any "overtime" payroll (except in the states of Pennsylvania, Nevada, Utah, Delaware and applicable Workers' Compensation monopolistic States which require the entire unburdened "overtime" payroll to be reported) for all OCIP qualified employees, including on-site supervisors and on-site clerical personnel.

**CONTRACTOR RESPONSIBILITIES AND OBLIGATIONS**

All payrolls submitted for this project should be excluded from the payrolls submitted to your corporate insurance carriers to avoid paying premiums for exposures covered by the Sponsor's OCIP. The Certificate of Insurance showing you as a Named Insured on the General Liability Policy may be used to provide evidence of your enrollment in the Sponsor's OCIP to your corporate insurance carriers.

**Failure to submit the on-line payroll report, along with any other OCIP form or documentation, may result in the withholding of payments by Sponsor until required documentation is received.**

## Insurance Company Payroll Audit

Each **Enrolled Party** is required to maintain payroll records for each contract. Such records will allocate the payroll by Workers' Compensation classification(s) and exclude the excess or premium paid for overtime (i.e., except for projects in the state of Pennsylvania, Nevada, Utah, Delaware and applicable Workers' Compensation monopolistic States), only the straight time rate will apply to overtime hours worked. Furthermore, such records will limit the payroll for Executive Officers and Partners/Sole Proprietors to the limitations as stated in the applicable State manual rules. It is important that you properly classify payrolls, as these are reported to the rating bureau for promulgation of future Experience Modifiers for your firm.

**All Enrolled Parties shall make available their books, vouchers, contracts, documents, payroll records, certified copies of insurance coverages, declaration pages of coverages, certificates of insurance, underwriting data, insurance cost information, prior loss history information, safety records or history, OSHA citations, or such other data or information as Sponsor, the OCIP Administrator, OCIP Insurers including the OCIP Insurer Auditors, or other Sponsor Representative may request in the administration or payroll audit of the OCIP, or as required by this Manual. Availability of records must be for a reasonable time during the policy period, any extension, or during a final audit period as required by the insurance policies.**

## Claim Reporting

All Parties (**Enrolled, Excluded, or Parties No Longer Covered by the OCIP**) must report all injuries, occupational-related illnesses or property damage to the Site Safety Manager immediately. All Parties will instruct employees and other personnel to report, in writing, within 24 hours all Accidents and Occurrences of any type to the Project Site Safety Manager. **Failure to report a claim immediately and issue a written report to the Site Safety Manager or Project Superintendent within 24 hours of an occurrence may result in a $5,000 penalty.**

## OCIP Closeout and Audit Procedures

When a Subcontractor has completed its Work at the Project Site and no longer has onsite workers, the Subcontractor must complete and submit the Work Completion Form electronically via the Contractor Portal. The Work Completion form should be e-signed by Prism for all Subcontractors and e-signed by the Subcontractors for all Sub-subcontractors of any tier. Note: Subcontractor electronic Completion Form closes out all Sub-subcontractors. The form will be used to initiate the final audit of payroll and man-hours by the OCIP insurance carrier. Should the Subcontractor, or any of its Sub-subcontractors, return to the Project Site for any reason, they will not be insured under the OCIP but will be required to be insured under its own insurance program. In order to return to the Project Site a Subcontractor must provide Prism with a Certificate of Insurance that meets all requirements in the Subcontract Agreement prior to performing any Work at the Project Site.

Prism will not release final retention payment until all necessary OCIP forms and documents have been submitted and accepted by the OCIP Administrator for Subcontractor and all of its Sub-subcontractors as well as all other requirements of the Subcontract Agreement. Any outstanding general liability obligations for which the Subcontractor of any tier is responsible but unpaid will be considered at the time of closeout.

# OCIP Termination or Modification

Sponsor reserves the right to terminate or modify the OCIP or any portion thereof, or modify this Manual. If Sponsor exercises this right, Contractors will be provided written notice as required by the terms of their individual contracts. At its option, Sponsor may procure alternate coverage or may require the Contractors of every tier to procure and maintain alternate insurance coverage.

Upon written notice, Sponsor may, for any reason, modify the OCIP coverages, discontinue the OCIP, or request that any Contractor of any tier, including its Subcontractors, to withdraw from the OCIP. Upon such notice, Contractor and/or one or more of its Subcontractors, shall obtain and thereafter maintain replacement insurance. The form, content, limits of liability, cost, and the insurer issuing such replacement insurance shall be subject to Sponsor's approval. The final cost of such insurance shall not exceed the amount of the applicable Contractor Insurance Cost, or its pro rata portion, as described elsewhere in this document.

# Contractor's OCIP Obligations

Each **Enrolled Contractor** of any tier shall:
(1) Incorporate the terms of this Manual in all Subcontract agreements.
(2) Within five (5) days of execution of its Agreement or no less than forty five (45) days before mobilization on-site, enroll in the OCIP and maintain enrollment in the OCIP, and ensure that eligible Subcontractors enroll in the OCIP and maintain enrollment in the OCIP within five (5) days of subcontracting or no less than forty five (45) days before mobilization.
(3) Comply with all of the administrative, safety, claims management, insurance, and other requirements contained in this Manual, the OCIP insurance policies, and the Contract Documents.
(4) Provide each of its Subcontractors with a copy of this Manual and ensure Subcontractor compliance with the provisions of this Manual, the OCIP insurance policies, and the Contract Documents. The failure of (a) Sponsor to include this Manual in the bid documents, or (b) Contractor to provide each of its eligible Subcontractors with a copy of it shall not relieve Contractor, Subcontractor or any of its Sub-subcontractors from any of the obligations contained therein.
(5) Provide timely evidence of required insurance to Sponsor's OCIP Administrator (TSIB).
(6) Subcontractor shall access the Contractor Portal and upload copies of its, general liability and umbrella or excess rates, deductible endorsement/page (if applicable), and other requirements set forth in Section 6 to verify the Insurance Cost calculation.
(7) Be solely responsible for the recovery of any Subcontractor or Sub-subcontractor Insurance Cost attributable to such Subcontractor's or Sub-subcontractors' eligibility for participation in the OCIP. If unit pricing is the basis for the Price, Sponsor may, at its option, apply a "per unit" Contractor Insurance Cost where appropriate.
(8) Notify the CCIP Administrator and Prism's Project Site Superintendent of all Sub-subcontracts awarded (first tier and subsequent tiers). Accordingly, Subcontractor shall cause all Sub-subcontractors to submit an online Application for Enrollment and all documents required to verify their Insurance Cost.
(9) Acknowledge, and require all of its Subcontractors and Sub-subcontractors to acknowledge in writing that Sponsor and the OCIP Administrator are not agents, partners or guarantors of the insurance companies providing coverage under the OCIP (each such insurer, a "OCIP Insurer") and that Sponsor is not responsible for any claims or disputes between or among Contractor, Subcontractor, its Sub-subcontractors, and any OCIP Insurer(s). Any type of insurance coverage or limits of liability in addition to the OCIP coverages that Contractor, Subcontractor or any Sub-subcontractor requires for its or their own protection, or that is required by applicable laws or regulations, shall be Contractor's, Subcontractor's or its Sub-subcontractor's sole responsibility and expense and shall not be billed to Sponsor.
(10) Cooperate fully with the OCIP Administrator and the OCIP Insurers, as applicable, in its or their administration of the OCIP.
(11) Notify the OCIP Administrator immediately of any insurance cancellation or non-renewal of your own and Subcontractor and/or Sub-subcontractor required insurance and any subsequent reinstatement of coverage.
(12) At Sponsor's discretion, **be required to pay a sum of up to $5,000 of each occurrence, including court costs, attorney's fees and costs of defense for bodily injury or property damage to the extent losses payable under the OCIP General Liability Policy are attributable to Contractor's Work, acts or omissions, or the Work, acts or omissions of any of Subcontractor's and/or Sub-subcontractors, or any other entity or party for whom Contractor may be contractually or legally responsible ("General Liability Obligation")**. The General Liability Obligation shall remain uninsured by Contractor and will not be covered by the OCIP Coverages.
(13) Acknowledge that Sponsor shall pay the costs of premiums for the OCIP coverages on behalf of all **Enrolled Parties** and

**Sponsor Name** OCIP Insurance Manual Version 08/27/2018
Wonder Lofts Owner, LLC, 720 Clinton Street, Hoboken, NJ 07030

25

CONTRACTOR RESPONSIBILITIES AND OBLIGATIONS

will receive or pay, as the case may be, all adjustments to such costs, whether by way of dividends, retroactive adjustments, return premiums, other moneys due, audits or otherwise.  Accordingly, each Contractor and each of its Subcontractors and Sub-subcontractors hereby assigns to Sponsor the right to receive all such adjustments.

**(14)** *If General Liability is payroll rated,* Contractor of any tier shall report payroll on a monthly basis using the TSIB on line Reporting.

**DISCLAIMER**

Sponsor assumes no obligation to provide insurance other than that specified in this Manual and the OCIP insurance policies. Sponsor's arranging of OCIP coverages shall in no way relieve or limit, or be construed to relieve or limit, Contractor or any of its Subcontractors and/or Sub-subcontractors of any responsibility, liability, or obligation imposed by the Contract Documents or by law, including without limitation any indemnification obligations which Contractor or any of its Subcontractors and/or Sub-subcontractors has to Sponsor thereunder.  Sponsor reserves the right at its option, without obligation to do so, to arrange other insurance coverage of various types and limits provided that such coverage is not less than that specified in the Contract Documents.

# Contractor Representations and Warranties to Sponsor

Each Contractor of any tier represents and warrants to Sponsor, on behalf of itself and its Subcontractors:

(1)  That all information it submits to Sponsor or the OCIP Administrator shall be accurate and complete.

(2)  That they have had the opportunity to read and analyze copies of the OCIP insurance policies that are on file in Sponsor's office and that they understand the OCIP coverages.

(3)  Enrollment is not automatic and must be confirmed by TSIB as evidenced by a Certificate of Insurance

(4)  Premiums for this Program are the responsibility of the Sponsor and they agree that any and all return of premiums, dividends, discounts, or other adjustments to any Program policy(ies) is assigned, transferred and set over absolutely to the Sponsor.  This assignment applies to the Program policy(ies) as now written or as subsequently modified, rewritten or replaced.

(5)  Rights of Cancellation for all Program insurance policy(ies) arranged by the Sponsor are assigned to the Sponsor.

(6)  They are responsible for premium(s) for all other insurance coverage specified in the Contract Documents with the Sponsor that are not included in the Sponsor's OCIP Program.

(7)  They authorize the release of all claim information for all insurance policies under this Program.

(8)  They recognize it is their responsibility to notify their insurance agent to exclude all work that is done at the project site and covered under the wrap-up program policy(ies).

# Duty of Care

Nothing contained in this Manual shall relieve any Contractor of any tier or any of its Subcontractors of their respective obligations to exercise due care in the performance of their duties in connection with the Work and to complete the Work in strict compliance with the Contract Documents.

# Conflicts

In the event of a conflict, the provisions of the Agreement Form and its other related Contract Documents shall supersede the provisions of this Manual.  Likewise, in cases of conflict regarding the OCIP coverages provided, the provisions of the policies supersede the provisions of this Manual.

# Safety

Please see safety manual issued for this project.

CLAIM PROCEDURES



# Claim Procedures

*This Section describes basic procedures for reporting various types of Claims: Workers' Compensation, Liability, and damage to the Project.*

## General Procedures

Report all injuries, occupational-related illnesses or property damage to the Site Safety Manager *immediately*. All Parties will instruct employees and other personnel to report, in writing, within 24 hours *all* Accidents and Occurrences of any type to the Site Safety Manager or Project Superintendent.

*The Site Safety Manager or Project Superintendent contact information can be found in Section 2 of this Manual.*

While all injuries and property damage must be reported immediately, the following list identifies losses which could represent substantial exposure. It is essential that the Site Safety Manager or the Project Superintendent be notified immediately of the following events so that a comprehensive investigation can be initiated at once:

- Any injury for which an ambulance is called
- Injury to head or neck
- Possible injury to back or spinal cord
- Unconscious employee
- Possible blindness
- Amputation of limbs
- Fatality
- Heart attack or stroke
- Hospitalization
- Property damage estimated over $1,000

**Subcontractors may be assessed a $5,000 penalty for any claim not reported immediately and a written report submitted within 24 hours of occurrence.**

## Investigation Assistance

All Parties will assist in the investigation of any accident or occurrence involving injury to persons or property. All Parties will cooperate with authorized companies by securing and giving evidence and obtaining the participation and attendance of witnesses required for the adjustment, investigation and defense of any claim or suit.

## Workers' Compensation Claims

The main responsibility for any Party is first to see that the injured worker receives immediate medical care. Next, you should immediately notify the Site Safety Manager or Project Superintendent.

CLAIM PROCEDURES

**THIS IS A GENERAL LIABILITY ONLY OCIP. NO COVERAGE FOR WORKERS' COMPENSATION IS PROVIDED UNDER THE OCIP. IT IS THE SOLE RESPONSIBILITY OF EACH PARTY TO REPORT ACCIDENTS OR CLAIMS INVOLVING THEIR EMPLOYEES TO THEIR OWN INSURERS.**

Contractor's (of every tier) on-site personnel will follow these procedures if any employee is involved in an accident or occurrence resulting in bodily injury:

1. Contact designated first aid/medical personnel and transport the injured party to the on-site first aid or medical facility, as necessary.
2. Report all injuries or occupational-related illnesses immediately to the Site Safety Manager or Project Superintendent.
3. Complete an *Accident Investigation Report* and return to the Site Safety Manager within 24 hours of employee's notice of injury/claim. The Site Safety Manager will fax/mail the completed form to the Claims Manager within 24 hours of receipt.
4. Supply the Injured Party with a Medical Information Claim Folder which shall include a Doctor's Initial Report Form, the Modified Alternate Duty Program, Position Description and a Medical Authorization Form which are to be returned by the Injured Party to the Site Safety Manager by the end of the business day.
5. Provide for Modified Alternate Duty based upon the work abilities given to the Injured Party from the treating physician.
6. Immediately send all subsequent medical return to work notes, inquiries or correspondence about an Injured Party to the Site Safety Manager. No Injured Party will be allowed on a job site unless they have provided the Site Safety Manager with the proper return to work note, either full duty or modified duty.

## Liability Claims

Every Contractor of every tier must **immediately** report all **Accidents** at the **Project Site** involving death, injury, or damage to property of non-employee personnel (the public, tenants, and visitors) to the Site Safety Manager or Project Superintendent. As soon as the on-site personnel become aware of the accident or occurrence, they must:

1. Take appropriate emergency measures to prevent additional injury or damage, including contacting police and fire authorities.
2. Complete and submit an *Accident Investigation Report and General Liability Loss Notice* to the Site Safety Manager within 24 hours of the incident.
3. Immediately send all subsequent inquires or correspondence about an insured loss or claim, including a summons or other legal documents, to the Site Safety Manager immediately.

**Do *not* voluntarily admit liability or responsibility. Cooperate with Sponsor and the OCIP insurer representatives in the accident investigation. Do not discuss the accident with anyone other than Sponsor's Personnel, OCIP insurer representatives, or legal counsel retained on our behalf.**

## Property Claims

Immediately Report any damages to your Work or the Work of any other Subcontractor to the Project Site Safety Manager.

## Automobile Claims

*No coverage is provided for automobile accidents under the OCIP. It is the sole responsibility of each Party to report accidents/claims involving their automobiles to their own insurers.*

HOWEVER, all accidents occurring in or around the Project site must be reported to the Site Safety Manager. Accident investigations will occur and focus on liability arising out of the Project construction activities that could result in future claims (i.e. due to the conditions of the roads, etc.). Each Party shall cooperate in the investigation of all automobile accidents.

**Sponsor Name** OCIP Insurance Manual Version 08/27/2018
Wonder Lofts Owner, LLC, 720 Clinton Street, Hoboken, NJ 07030

28

CLAIM PROCEDURES

## Pollution Claims

The OCIP general liability policy may provide some coverage for sudden and accidental pollution *but only if the incidents are discovered and reported promptly in writing.* Report claims by immediately notifying the Site Safety Manager of any known or suspected pollution incidents.

## Joint Representation

In the event legal representation is required to defend parties insured under this OCIP, absent an actual conflict of interest between two or more insureds, the insurer shall have the right to retain one counsel to represent all such insureds in any action or proceeding in which more than one insured is joined.

An insured has an actual conflict, and is entitled to separate counsel, only in the following circumstances:

a.    the OCIP insurer has issued a reservation of its rights to one, but not all, insureds joined in such action or proceeding;

b.    a OCIP insurer's reservation of rights issued to one insured contains reservations different that a reservation issued to another insured(s) joined in such action or proceeding; or

c.    adequate, unexhausted limits of OCIP insurance are not available for the damages sought in such action or proceeding.

Any insured with an actual conflict of interest may waive that conflict.

Enrollment in this OCIP program shall be deemed a waiver of any conflict which does not meet the above definition of an actual conflict.  As a condition of enrollment in this OCIP program, all insureds agree to perform any additional acts required to effectuate the waiver of any conflict which does not meet the above definition of an actual conflict.

## Waiver of Insured Cross-Claims

As a condition of enrollment in this OCIP program, no insured shall be entitled to make a cross-claim (or any similar legal claim) against another insured if that cross-claim arises from "bodily injury", "property damage" or "personal injury" to which this OCIP's insurance applies and for which there is adequate unexhausted limits of insurance to pay damages in any such proceeding.  Enrollment in this OCIP program shall be deemed a waiver of such claims.  As a condition of enrollment in this OCIP program, all insureds agree to perform any additional acts required to effectuate the waiver of any such claim.  This paragraph shall not apply to any suit or claim necessary to trigger OCIP coverage.

## Availability of Claims Data

Sponsor has made claims data available to all OCIP **Enrolled Parties**.  Data is accessible through the Contractor Portal of the Wrapworks application (program administration website).  Claim data is updated no less than quarterly.  Claims are associated with your contract.

If you need a User ID and Password to access the Contractor Portal, please contact the Quality Assurance Specialist listed in Section 2, **OR** send an email to WrapUp@tsibinc.com.  Please include your full name, employer's company name, the name of each project, and each contract number.

If you already have a User ID and Password, the address of the Contractor Portal is:
https://wrapup.vuewrapup.com/contractorportal

**Please direct all claim related questions to the Claim Coordinator/Claim Manager listed in Section 2, OCIP Project Directory.**

CONTRACTOR PORTAL INSTRUCTIONS



# Contractor Portal Instructions

Contractor Portal Web Address: https://wrapup.vuewrapup.com/contractorportal

Please have your documents in hand and ready to upload - This will speed up the process.

### *** MUST BE UPLOADED ***

- Your Rate Pages from your Workers Compensation, General Liability and Excess/Umbrella Policies, and Deductible Endorsement (if applicable)
- Your Non-CIP Certificate of Insurance (offsite COI) along with required endorsements

If you know your User ID and Password, then please proceed.

If you do not have one, then click on "Register Me". You will need to know your Federal ID (with the dash). Your User ID and Password information will be emailed to you.



**Welcome to VUE Wrap-Up™ Contractor Portal!**

WrapWorks (SM) is customized to allow you to quickly enroll in your CIP program and manage all of your current projects.

You can:

- Enter Monthly Payroll
- Upload your Non-CIP COIs
- Upload your Declaration & Rate Pages
- Enter Project Close Out
- View your Subcontractor's CIP account
- View Non-Compliant Items

Login to get started!

New User? Click Register Me.



**How to Login/Register**



CONTRACTOR PORTAL INSTRUCTIONS
## Welcome to the 1, 2, 3s of wrapworks℠

I am on a CIP Project What do I do?
BASIC FLOW CHART – Easy as 1,2,3
Everything is completed online via the Contractor Portal:
https://wrapup.vuewrapup.com/contractorportal

### Step 1
Complete Enrollment – Coverage will not start until you are enrolled.
Answer ALL questions – You must check a Primary Contact and Address.
(This is the person who will receive all delinquency letters)
Enter any lower tier contractors you will have working for you.

### Step 2
Upload ALL Required Documents (Name them appropriately)
1. Rate Pages (Declaration pages) for all applicable lines of coverage: Workers' Compensation, General Liability and Excess/Umbrella (This supports your insurance cost entered for this contract).
2. Non-CIP Certificate of Insurance (offsite COI) with applicable Endorsements for Ongoing and Completed Operations as per sample in Manual.

### Step 3
Report Payroll Monthly by the due date in the Manual.
All days need to be accounted for from the Start of your Enrollment date (Policy Start Date) until your contract is complete.
This is not certified payroll – Only man hours/gross and reportable payroll.

Got Delinquencies?
Print the Missing Data Report by Contract.
This will tell you exactly what is missing from each category:
Enrollment / ICW / Payroll / Non-CIP COI / Closeout

# Forms



*This Section contains the forms needed for administration of the OCIP.*

Exhibit 1        SAMPLE ENROLLED PARTY Certificate of Insurance

Exhibit 2        SAMPLE EXCLUDED PARTY AND PARTIES NO LONGER COVERED BY THE OCIP
Certificate of Insurance

GL Claim Form    Report of General Liability Accident

For assistance in completing the enrollment, please contact the Turner Surety and Insurance Brokerage Wrap up Service Center

See Section 2 (OCIP Project Directory) for the TSIB QAS on this Project

Phone:    (866) 684-WRAP (9727)

**EXHIBIT 1 – SAMPLE ENROLLED PARTY Contractor Certificate of Insurance**

# CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY)

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | | |
|---|---|---|---|
| Insurance Agency's/Brokerage's Name And Address | PHONE (A/C, No, Ext): | | FAX (A/C, No): |
| | E-MAIL ADDRESS: | | |
| | PRODUCER CUSTOMER ID #: | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| INSURED | INSURER A: | | |
| Contractor's Name and Address | INSURER B: | | |
| | INSURER C: | | |
| Sample Certificate for <u>Enrolled Parties</u> | INSURER D: | | |
| Required Insurance | INSURER E: | | |

| COVERAGES | CERTIFICATE NUMBER: | REVISION NUMBER: |
|---|---|---|

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| X | COMMERCIAL GENERAL LIABILITY | | | | | | EACH OCCURRENCE | $1,000,000 |
| | CLAIMS-MADE [ ] X OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $50,000 |
| | | | | | | | MED EXP (Any one person) | $5,000 |
| | | X | X | Policy Number | | | PERSONAL & ADV INJURY | $1,000,000 |
| | | | | | | | GENERAL AGGREGATE | $2,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | PRODUCTS - COMP/OP AGG | $2,000,000 |
| | [ ] POLICY [X] PROJECT [ ] LOC | | | | | | | |
| | [ ] OTHER | | | | | | | |
| | AUTOMOBILE LIABILITY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $1,000,000 |
| X | ANY AUTO | | | | | | BODILY INJURY (Per person) | |
| X | ALL OWNED AUTOS [ ] SCHEDULED AUTOS | X | X | Policy Number | | | BODILY INJURY (Per accident) | |
| X | HIRED AUTOS [ ] NON-OWNED AUTOS | | | | | | PROPERTY DAMAGE (Per Accident) | |
| X | UMBRELLA LIAB [ ] OCCUR | | | | | | EACH OCCURRENCE | $5,000,000 |
| | EXCESS LIAB [ ] CLAIMS-MADE | X | X | Policy Number | | | AGGREGATE | $5,000,000 |
| | [ ] DED [ ] RETENTION $ | | | | | | PRODUCTS - COMP/OP AGG | |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y/N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? [N] (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | X | Policy Number | | | [X] PER STATUTE [X] OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $1,000,000 |
| | | | | | | | E.L. DISEASE EACH EMPLOYEE | $1,000,000 |
| | | | | | | | E.L. DISEASE POLICY LIMIT | $1,000,000 |
| | OTHER: EQUIPMENT FLOATER | | | Policy Number | | | Limit equal to Full Coverage of Subcontractor's owned or rented machinery, equipment, tools, & temporary structures not designed to become a permanent part of the Work | |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach Additional Remarks Schedule if more space is required): RE: Work performed at the DGP Urban Renewal, LLC project: Wonder Lofts Owner, LLC. Additional Insureds on a Primary and Non-contributing basis on the General Liability (ISO endorsement CG 20 10 11 85 or its equivalent), Automobile and Excess/Umbrella Liability Policies, Waiver of Subrogation in favor of Certificate Holders applies to all policies. GL coverage apply off-site.

Construction, LLC, Prism Wonder Lofts Owner, LLC, AG-Prism Wonder Lofts, LLC, WL Owner, LLC (NJ), Wonder Lofts Manager, LLC, AG Funds Wonder Lofts Member, LLC, AG Realty IX Investments (H-1), L.P., AG Realty Fund IX, L.P., AG Realty Fund IX (A), L.P., AGR IX LLC, Wonder Lofts, LLC, Parkwood Development, LLC, Prism Capital Services, LLC, Bank OZK ISAOA ATIMA

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| CERTIFICATE HOLDER Turner Surety and Insurance Brokerage, Inc. 35 Nutmeg Drive, Suite 300 Trumbull, CT 06611 Attention: Eve Hobson | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. AUTHORIZED REPRESENTATIVE |

ACORD 25 (2014/01)

© 1988-2014 ACORD CORPORATION. All rights reserved.

**EXHIBIT 2 – SAMPLE EXCLUDED PARTY and PARTIES NO LONGER COVERED BY THE OCIP**
Certificate of Insurance

# CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY)

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | | |
|---|---|---|---|
| Insurance Agency's/Brokerage's Name And Address | PHONE (A/C, No, Ext): | | FAX (A/C, No): |
| | E-MAIL ADDRESS: | | |
| | PRODUCER CUSTOMER ID #: | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| INSURED | INSURER A: | | |
| Contractor's Name and Address | INSURER B: | | |
| Sample Certificate for <u>Excluded Parties</u> and <u>Parties No Longer Covered by the OCIP</u> Required Insurance | INSURER C: | | |
| | INSURER D: | | |
| | INSURER E: | | |

COVERAGES        CERTIFICATE NUMBER:                    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|---|
| X | COMMERCIAL GENERAL LIABILITY | | | | | | | EACH OCCURRENCE | $1,000,000 |
| | CLAIMS-MADE | X OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $50,000 |
| | | | | | Policy Number | | | MED EXP (Any one person) | $5,000 |
| | | | X | X | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | | GENERAL AGGREGATE | $2,000,000 |
| | POLICY | X PROJECT | LOC | | | | | PRODUCTS - COMP/OP AGG | $2,000,000 |
| | OTHER | | | | | | | | |
| | AUTOMOBILE LIABILITY | | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $1,000,000 |
| X | ANY AUTO | | | | | | | BODILY INJURY (Per person) | |
| X | ALL OWNED AUTOS | SCHEDULED AUTOS | X | X | Policy Number | | | BODILY INJURY (Per accident) | |
| X | HIRED AUTOS | NON-OWNED AUTOS | | | | | | PROPERTY DAMAGE (Per Accident) | |
| X | UMBRELLA LIAB | OCCUR | | | | | | EACH OCCURRENCE | $5,000,000 |
| | EXCESS LIAB | CLAIMS-MADE | X | X | Policy Number | | | AGGREGATE | $5,000,000 |
| | DED | RETENTION $ | | | | | | PRODUCTS - COMP/OP AGG | |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | Y/N [N] | N/A | X | Policy Number | | X PER STATUTE X OTHER | | |
| | | | | | | | E.L. EACH ACCIDENT | $1,000,000 |
| | | | | | | | E.L. DISEASE EACH EMPLOYEE | $1,000,000 |
| | | | | | | | E.L. DISEASE POLICY LIMIT | $1,000,000 |
| | OTHER: EQUIPMENT FLOATER | | | | Policy Number | | Limit equal to Full Coverage of Subcontractor's owned or rented machinery, equipment, tools, & temporary structures not designed to become a permanent part of the Work | |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach Additional Remarks Schedule if more space is required): RE: Work performed at the DGP Urban Renewal, LLC project: Wonder Lofts Owner, LLC. Additional Insureds are on a Primary and Non-contributing basis on the General Liability (ISO endorsement CG 20 10 11 85 or its equivalent), Automobile and Excess/Umbrella Liability Policies. Waiver of Subrogation in favor of Certificate Holders applies to all policies. ALL COVERAGES LISTED APPLY ON-SITE FOR ALL OPERATIONS OF THE INSURED.

ADDITIONAL INSURED: Wonder Lofts Owner, LLC, Wonder Lofts Parent, LLC, Prism Capital Partners, LLC, Prism Property Services, LLC, Prism Construction Management, LLC, Prism Wonder Lofts Construction, LLC, Prism Wonder Lofts Owner, LLC, AG-Prism Wonder Lofts, LLC, WL Owner, LLC (NJ), Wonder Lofts Manager, Inc., AG Funds Wonder Lofts Member, LLC, AG Realty IX Investments (H-1), L.P., AG Realty Fund IX, L.P., AG Realty Fund IX (A), L.P., AGR IX LLC, Wonder Lofts, LLC, Parkwood Development, LLC, Prism Capital Services, LLC, Bank OZK ISAOA ATIMA

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| **CERTIFICATE HOLDER** Turner Surety and Insurance Brokerage, Inc. 35 Nutmeg Drive, Suite 300 Trumbull, CT 06611 Attention: Eva Hobson | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. AUTHORIZED REPRESENTATIVE |

ACORD 25 (2014/01)                                                                    © 1988-2014 ACORD CORPORATION. All rights reserved.

## Service Team and Claims Reporting

The primary servicing responsibility will be by Kathryn Coughlin.  We operate on a team approach.  Your team consists of:

**Peter Koppisch** – Client Advocate
Office: 1-973-744-8500 ext. 336
Cell #: 1-908-227-7856
E-Mail:  pkoppisch@whconnolly.com

**Kathryn Coughlin** – Vice President – Account Executive
Office: 1-973-744-8500 ext. 317
Cell #: 1-201-663-0775
E-Mail:  kcoughlin@whconnolly.com

**Amanda Conforti** – Senior Account Manager
Office: 1-973-744-8500 ext. 361
E-Mail:  aconforti@whconnolly.com

**Viki Rizos-Vega** – Technical Assistant
Office: 1-973-744-8500 ext. 339
E-Mail:  vrizos@whconnolly.com

**Nancy Peet –** Vice President – Claims Director
Office: 1-973-744-8500 ext. 326
E-Mail: Npeet@whconnolly.com

**Tom Coticchio** – Senior Vice President – Safety / Loss Control
Office: 1-973-744-8500 ext. 307
E-Mail: Tcoticchio@whconnolly.com

**Doris Dicristina** – Senior Vice President – Claims/Safety/Loss Control
Office: 1-973-744-8500 ext. 317
E-Mail: Ddicristina@whconnoly.com

## Claims Reporting

### Report to William H. Connolly & Co., LLC

**Jim Connolly –** Claims Specialist
Office: 1-973-744-8500 ext. 372
E-Mail: jconnolly@whconnoly.com

EXHIBIT D-1

# Wonder Lofs Owner, LLC
## General Liability Owner Controlled Insurance Program (OCIP)
## Project: Wonder Lofts

The Owner has implemented a General Liability Owner Controlled Insurance Program (OCIP) for the West Orange Redevelopment project. Bidders are required to <u>INCLUDE</u> their normal insurance costs in their bids for this project. Please refer to the OCIP Insurance Manual dated 08/27/2018 for more information on the program. The manual is available on the Prism Box.Net website. Please note that the OCIP Insurance manual is a contract document.

1) Upon award of a contract you will be provided with the OCIP enrollment form package. The forms are also available on the Box.net site for review. The forms are to be submitted to the OCIP administrator, Turner Surety and Insurance Brokerage (TSIB), as noted on the next page. You are also to submit your Certificate of Insurance to TSIB for review and processing. TSIB will monitor all certificates for compliance with your contractual requirements. The Enrollment Form 1GL and Certificate of Insurance are required prior to starting work onsite.

   A. **FORM -1GL** Application for Enrollment
   The Form-1GL enrolls the Contractor in the OCIP program & provides the Contractor with General Liability coverage on site. Please complete the Form prior to working on site.

   B. **FORM- 2GL** Insurance Cost Worksheet
   The Form 2GL will calculate the cost of insurance that you would have paid your insurance carrier if you had not participated in the OCIP. Please contact your insurance broker for assistance & copies of your General and Excess/Umbrella rating pages.

   C. **FORM- 3GL Quarterly** On-Site Payroll Report
   If your General Liability cost is rated on your onsite payroll exposure you will be required to submit quarterly payrolls identifying your payroll expended onsite during execution of your work. TSIB will follow up for this documentation with all contractors who will be required to submit payrolls.

   D. **FORM-4GL** Work Completion Form
   The Form-4GL is completed when your work is complete on site. This form is to be completed then forwarded to Prism Construction Management for approval prior to processing by TSIB.

2) Upon receipt and processing of the Form 1GL, TSIB will issue a welcome letter to each participant and include the OCIP GL certificate of insurance. <u>Please keep this certificate as you will need it to document your coverage under the OCIP to your Insurance Carriers.</u>

3) Upon receipt of the Form 2GL and rate pages, TSIB will evaluate the information and issue an Insurance Credit letter. The letter will identify the cost of insurance that you would have paid if

you were not enrolled in the OCIP.  Since this cost is included in your Contract Price, Prism Construction management will issue a credit change order to deduct this from your contract price.

4)  Change orders:  All change orders shall be priced to INCLUDE the cost of your insurance.  If your general liability is rated on payroll you will also be required to identify your payroll associated with the changed work.  Insurance Cost adjustments to your contract price associated with change orders will be reconciled by Prism Construction Management at close out of your contract.  The adjustments will be based on your changes in exposure due to change orders and the rating information provided with your Form 2 GL.

5)  Form 3GL Payrolls will be collected from all subs whose GL cost is based on their payroll exposure.  TSIB will capture this information and follow up with the contractors for any missing data.  The payroll data will be used in conjunction with change order payroll data to determine the contractors final credit owed for participation in the OCIP.

6)  Contact Information:

**Forms and OCIP Insurance Manual are available on the Prism Partners Website:**
**WWW.Prismpartners.net**
**(Please contact Prism Partner for a Username & Password)**

**Please send all the Forms to the:**
**Turner Surety and Insurance Brokerage Wrap-Up Service (TSIB)**
**Email: Smartwrap@tsibinc.com**
Fax: 1-203-666-4352
Mail: 35 Nutmeg Drive, Suite 300
Trumbull, CT 06611

For assistance please contact TSIB:

| | |
|---|---|
| Service Center Quality Assurance Specialist | Regional Wrap-Up Manager |
| Eva Hobson | Denise Bianchi |
| Email: hobson@tsibinc.com | Email: dbianchi@tsibinc.com |
| Direct Phone:  (203) 283-2007 | Direct Phone:  (201) 574-3885 |

EXHIBIT D-3

**EXHIBIT 1 – SAMPLE ENROLLED PARTY Contractor Certificate of Insurance**

# CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY)

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | | |
|---|---|---|---|
| Insurance Agency's/Brokerage's Name And Address | PHONE (A/C, No, Ext): | | FAX (A/C, No): |
| | E-MAIL ADDRESS: | | |
| | PRODUCER CUSTOMER ID #: | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| INSURED | INSURER A: | | |
| Contractor's Name and Address | INSURER B: | | |
| | INSURER C: | | |
| Sample Certificate for Enrolled Parties Required Insurance | INSURER D: | | |
| | INSURER E: | | |

| COVERAGES | CERTIFICATE NUMBER: | REVISION NUMBER: |
|---|---|---|

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|---|
| X | COMMERCIAL GENERAL LIABILITY | | | | | | | EACH OCCURRENCE | $1,000,000 |
| | ☐ CLAIMS-MADE | X OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $50,000 |
| | | | X | X | Policy Number | | | MED EXP (Any one person) | $5,000 |
| | | | | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | | GENERAL AGGREGATE | $2,000,000 |
| | POLICY | X PROJECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $2,000,000 |
| | OTHER | | | | | | | | |
| X | AUTOMOBILE LIABILITY | | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $1,000,000 |
| X | ANY AUTO | | | | | | | BODILY INJURY (Per person) | |
| X | ALL OWNED AUTOS | ☐ SCHEDULED AUTOS | X | X | Policy Number | | | BODILY INJURY (Per accident) | |
| X | HIRED AUTOS | X NON-OWNED AUTOS | | | | | | PROPERTY DAMAGE (Per Accident) | |
| X | UMBRELLA LIAB | ☐ OCCUR | | | | | | EACH OCCURRENCE | $5,000,000 |
| | EXCESS LIAB | ☐ CLAIMS-MADE | X | X | Policy Number | | | AGGREGATE | $5,000,000 |
| | ☐ DED | ☐ RETENTION $ | | | | | | PRODUCTS - COMP/OP AGG | |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y / N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | N | N/A | X | Policy Number | | | X PER STATUTE   X OTHER | |
| | | | | | | | | E.L. EACH ACCIDENT | $1,000,000 |
| | | | | | | | | E.L. DISEASE EACH EMPLOYEE | $1,000,000 |
| | | | | | | | | E.L. DISEASE POLICY LIMIT | $1,000,000 |
| | OTHER: EQUIPMENT FLOATER | | | | Policy Number | | | Limit equal to Full Coverage of Subcontractor's owned or rented machinery, equipment, tools, & temporary structures not designed to become a permanent part of the Work | |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach Additional Remarks Schedule if more space is required): RE: Work performed at the Project: Wonder Lofts Owner, LLC. Additional Insureds are on a Primary and Non-contributing basis on the General Liability (ISO endorsement CG 20 10 11 85 or its equivalent), Automobile and Excess/Umbrella Liability Policies. Waiver of Subrogation in favor of Certificate Holders applies to all policies. GL coverage apply off-site.

ADDITIONAL INSURED: Wonder Lofts Owner, LLC, Wonder Lofts Parent, LLC, Prism Capital Partners, LLC, Prism Property Services, LLC, Prism Construction Management, LLC, Prism Wonder Lofts Construction, LLC, Prism Wonder Lofts Owner, LLC, AG-Prism Wonder Lofts, LLC, WL Owner, LLC (NJ), Wonder Lofts Manager, Inc., AG Funds Wonder Lofts Member, LLC, AG Realty IX Investments (H-1), L.P., AG Realty Fund IX L.P., AG Realty Fund IX (A), L.P., AGR IX LLC, Wonder Lofts, LLC, Parkwood Development, LLC, Prism Capital Services, LLC, Bank OZK ISAOA ATIMA

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| CERTIFICATE HOLDER c/o Turner Surety and Insurance Brokerage, Inc. 35 Nutmeg Drive, Suite 300 Trumbull, CT 06611 Attention:  Eva Hobson | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. AUTHORIZED REPRESENTATIVE |

ACORD 25 (2014/01)                        © 1988-2014 ACORD CORPORATION. All rights reserved.

# ATTACHMENT E
# General Conditions



## ATTACHMENT E

### SUPPLEMENTARY GENERAL CONDITIONS FOR BUILDINGS OWNED BY PRISM

1. If any of the Work to be performed by Trade Contractor is in or adjacent to a building occupied by tenants, the convenience and comfort of the tenants shall take priority over the construction operations. While some tenant inconvenience is anticipated, Trade Contractor shall be considerate of the tenants in all cases, as more specifically set forth below.

2. The loading of materials, tools, etc., in common areas, such as the lobby, shall be performed cleanly, quietly, and inconspicuously.

3. Any core drilling, impact fastening, or work in an existing tenant's ceiling plenum shall be performed after working hours, when possible. If such operations are attempted during regular working hours, and a tenant complaint is registered, the Work shall cease immediately and be rescheduled for a time, which is more convenient to the tenant.

4. Finished areas of the building must be protected and restored to good condition when affected by Trade Contractor's construction activity. Clean-up shall be performed on a daily basis, and Trade Contractor shall be backcharged if Construction Manager performs the clean -up.

5. Trade Contractor is responsible for the conduct and attitude of its employees.

6. Due to the constraints imposed by working in an occupied building, Trade Contractor shall perform the Work in a diligent, expeditious fashion, such that working operations shall not be prolonged for an unacceptable length of time.

7. Trade Contractor shall direct its employees to park in an area designated by Construction Manager after unloading materials, etc., and Trade Contractor shall not leave vehicles in unloading zones or visitor parking areas.

8. Building's dumpster shall **NOT** be used to dispose of construction debris.

9. Key(s) (and all copies thereof) issued or loaned to Trade Contractor for the purpose of locking and/or unlocking any part or portion of the Project's site are to be safeguarded at all times and returned to the party issuing said key(s) immediately upon demand by said issuing party.

10. Special working hours (ie, nights, weekends, etc.) shall be arranged in advance with Construction Manager.

11. Trade Contractor shall be **CONSCIOUS** of other building tenants with regard to noise, debris, and disruptions.

12. Elevator walls and floors shall be protected prior to construction materials being delivered.

13. Trade Contractor shall protect hallway walls, doors, etc., when delivering materials.

14. Trade Contractor shall only use designated areas for ingress and egress of construction personnel and materials.

15. Entry doors shall be properly held open.

16. Trade Contractor shall **NOT** use cleaning service's vacuums, etc.



## ATTACHMENT E

### SUPPLEMENTARY GENERAL CONDITIONS FOR BUILDINGS OWNED BY PRISM

17. Slop sinks may be available by arrangement with Construction Manager. **Trade Contractor shall NOT** use lavatory sinks to wash/clean contracting materials.

18. Suite doors to lobbies shall be kept closed during construction.

19. Materials and tools shall not be stored in hallways.

20. All mechanical and electrical rooms shall be locked at 4:00 PM unless prior arrangements have been made.

21. Any questions arising throughout the day shall be directed to Construction Manager.

22. Any construction activity that shall take place in a tenant-occupied area shall be pre-arranged and scheduled through Construction Manager.

23. The shut down of any mechanical equipment shall be pre-arranged with Construction Manager.

24. A designated lavatory for Trade Contractor's employees shall be identified by Construction Manager and scheduled through same.

25. The main lobby shall **not** be used for ingress/egress by Trade Contractor's employees.

26. Trade Contractor shall be responsible for the appropriate attire of its employees (ie, without limitation, no cutoff jeans, shorts and/or sleeveless T-shirts, in a tenant occupied building.

# ATTACHMENT F
# SAFETY REQUIREMENTS



# ATTACHMENT F

## SUPPLEMENT TO TRADE CONTRACT CONCERNING SAFETY

**PROJECT:**                          **Wonder Lofts**
                                      **Clinton Street, Hoboken, NJ**

**IN THE EVENT OF ANY INCONSISTENCIES BETWEEN THE ATTACHMENT F AND THE CONTRACT TO WHICH THE ATTACHMENT F IS ATTACHED, THEN, THE TERMS OF THE CONTRACT SHALL GOVERN, PREVAIL AND CONTROL.**

The Trade Contract or is hereby notified that it is the policy of Contractor to provide a safe and healthful work environment.  The Trade Contractor's signature below indicates acceptance of and agreement to the following:

A.   Adhere to the *Safety and Health Policy Statement,* which follows as part of Attachment F.

B.   Adhere to the full *Project Safety Manual,* which is available for review at the Prism Construction Management, LLC offices and at the jobsite.

C.   Adhere to the *Contractors Safety Handbook,* which follows as part of Attachment F.

D.   Acknowledgment and Acceptance of Safety and Health Enforcement Practices (Attachment F-1) by Prism Construction Management, LLC (for completion and signature)

E.   Adhere to the Personal Protective Equipment Safety Guideline that all trade contractors and their employees and visitors wear hard hats and Safety glasses at all times (Attachment F, page F-5).

F.   All Trade Contractors and their on site employees are required to attend the Prism Construction Management, LLC's job site safety orientation  (Attachment F, page 3).

G.   All Trade Contractors are required to provide a copy of the job specific Hazard Communication (MSDS, Material Safety Data Sheets) binder to the project site superintendent.  This information is required before any contractor can start work.

H.   All Trade Contractors understand that fines of $1,000.00 and or removal from site will be the consequence for non-compliance with the project's safety requirements, at the sole discretion of Prism Wonder Lofts Construction, LLC or the Project Owner.

_____          _____
Signature of Authorized Company Representative                    Date



## ATTACHMENT F

### SUPPLEMENT TO TRADE CONTRACT CONCERNING SAFETY

---

**SAFETY AND HEALTH POLICY STATEMENT**

It is the policy of Prism Construction Management, LLC to provide a safe and healthful work environment for subcontractors' site workers at every level through the awareness and prevention of occupational injuries and illness.

The objective of Prism Construction Management LLC's Build Safe is to eliminate work-related accidents (thereby injuries) and illness and to promote safety and health in every task undertaken by workers involved with projects managed by Prism Wonder Lofts Construction, LLC.  To this end, Prism Construction Management, LLC's Build Safe will include:

A.   Implementation of a Trade Contractor safety committee for overseeing all aspects of safety and health activities at each project.

B.   Implementation of a program for conducting routine safety and health inspections to identify and eliminate unsafe working conditions or practices and control health hazards.

C.   A comprehensive list of safety and health training requirements for all contractors and subcontractors' personnel.

D.   Provisions for the use of personal protective equipment by contracted employees as identified by their respective job task requirements.

E.   Provisions for mechanical and physical safeguards to the maximum extent possible.

F.   Trade Contractor safety and health policies, requiring <u>every</u> site worker of the various companies to comply with these policies as a condition of their contract.

G.   Provisions for a thorough and prompt investigation of every accident to determine its cause, correct the problem and reduce the likelihood of it happening again.

H.   Trade Contractor shall implement a safety incentive program for promoting safety and health, encouraging the <u>active</u> participation of all site workers and acknowledging through rewards individuals whose safety record exemplifies the standards set forth in this program.  Trade Contractors shall provide a copy of their safety incentive program to Prism Construction Management, LLC upon request.



## ATTACHMENT F

### SUPPLEMENT TO TRADE CONTRACT CONCERNING SAFETY

**CONTRACTOR'S SAFETY HANDBOOK**

<u>Introduction</u>

Prism Wonder Lofts Construction, LLC is committed to providing a work environment which promotes the health, safety and well-being of employees of our company and those of our Trade Contractors.  To this end, sound safety practices are the responsibility of every site worker working on this project.

This Safety Handbook outlines the rules and regulations that the employees of Trade Contractors must adhere to at all times.  Prism Wonder Lofts Construction, LLC does not permit nor tolerate unsafe working conditions or practices that might compromise the safety of employees, visitors or property.

It is the responsibility of Trade Contractors and their employees to read this handbook and familiarize themselves with the rules and regulations as they apply to the work to be performed on this project.

**Site Safety Orientation- It is the responsibility of Trade Contractors and their employees to attend the Prism Wonder Lofts Construction Site Safety Orientation.  The site Superintendent with the support of Prism Wonder Lofts Construction will provide this on site training.  A form will be signed by each worker to verify the training and a Prism Site Safety sticker will be placed on their helmet to show their attendance.  The orientation provides an overview of the site safety requirements and pertinent OSHA regulations to all contractors personnel prior to entry onto our sites.**

<u>Rules of Conduct</u>

- Never bring alcoholic beverages, illegal drugs, explosives, guns, knives, ammunition or other weapons on the project site.

- Comply with all posted notices at all times.

- Always wear protective equipment such as hard hats, safety goggles, gloves or respirators if required by the job you are performing.

- Never work alone in a hazardous area.  Always employ the buddy system.

<u>Compliance</u>

- Trade Contractors must have in place, prior to beginning work on this project, OSHA-required and other regulatory agency required written programs as dictated by the work they are to perform on this project.  Copies of said programs shall be forwarded to Prism Wonder Lofts Construction, LLC Project Safety Coordinator upon request.

- Trade Contractors shall ensure that their site workers comply with policies and procedures outlined in their written programs as well as with the policies and procedures set forth in Prism Wonder Lofts Construction, LLC's BuildSafe.



## ATTACHMENT F

### SUPPLEMENT TO TRADE CONTRACT CONCERNING SAFETY

Housekeeping

- Trade Contractors shall ensure that all aisles and work areas are kept clear of obstructions.

- Trade Contractors shall remove or bend all protruding nails.

- Trade Contractors shall keep all emergency equipment readily available for use. Emergency equipment includes fire extinguishers, SCBA's, blankets, first aid supplies, emergency eyewash stations, stairways, fixed ladders and the like.

- Trade Contractors shall ensure that all broken glass is swept and discarded in designated containers as soon as the breakage occurs.

- Trade Contractors shall always store materials, equipment and tools in their designated storage areas.

- Trade Contractors shall ensure that materials, tools or equipment are never stored in stairwells or beneath stairways.

- Trade Contractors shall ensure that all scrap, metal, and trash is removed from the site at the end of each shift.

- Trade Contractors shall ensure that all secondary containers under their control are labeled.

Fire Safety

- Trade Contractors shall ensure that all emergency equipment be inspected on a monthly basis.

- Trade Contractors shall ensure that site workers have been trained in the selection, use and inspection of fire extinguishers including fire classifications.

- Trade Contractors shall ensure site workers have been trained in project site evacuation and reassembly procedures.

- Trade Contractors shall ensure that site workers have been familiarized with Prism Wonder Lofts Construction, LLC's Emergency Fire Protection and Prevention Plan.

- Trade Contractors shall ensure that they have posted emergency numbers and evacuation routes throughout their work area.

- Trade Contractors shall ensure that fire extinguishers are kept charged and are inspected on a monthly basis by on-site personnel, and annually by an outside source.

Hazard Communication

- Trade Contractors shall ensure that a list of all chemicals brought on site have been identified and listed on the form located in Section 7.4 of Prism Wonder Lofts Construction, LLC's BuildSafe.



## ATTACHMENT F

### SUPPLEMENT TO TRADE CONTRACT CONCERNING SAFETY

- ♦ Trade Contractors shall ensure that a copy of all MSDS's have been forwarded to Prism Wonder Lofts Construction, LLC's Project Safety Coordinator for insertion into the Project MSDS Control Book.

- ♦ Trade Contractors shall ensure that site workers maintain a list of all approved chemicals in their tool boxes.

- ♦ Trade Contractors shall ensure that they maintain an MSDS binder with copies of all of their MSDS's.

- ♦ Trade Contractors shall ensure that they compile a list of non-routine tasks that may be performed by site workers and submit a copy of this list to Prism Wonder Lofts Construction, LLC.

- ♦ Trade Contractors shall ensure that they adopt Prism Wonder Lofts Construction, LLC's Hazard Communication Program or provide a copy of their own program to be maintained on the project site for the duration of the project.

- ♦ Trade Contractors shall ensure that if they do not adopt the NFPA labeling system, they will forward a description of their labeling requirements to Prism Wonder Lofts Construction, LLC's Project Safety Coordinator.

<u>Warning Signs</u>

- ♦ Trade Contractors are required to comply with all warning signs.

<u>Protective Clothing and Equipment</u>

It is the responsibility of Trade Contractors to provide their employees with Personal Protective Clothing and Equipment as dictated by the job to be performed.  Employees are required to wear personal protective equipment and clothing required by the job to be performed.

### *Hard Hat Requirement*

**It is mandatory that all Contractors and their employees wear hard hats on all Prism Wonder Lofts Construction, LLC's sites.  It is the responsibility of all Trade Contractors to provide their employees with helmets and that they are worn at all times.  Workers are not permitted on Prism Wonder Lofts Construction, LLC's sites without this equipment.  Protective hats shall be in accordance with the provisions of ANSI Z89.31971 Industrial Protective Helmets for Electrical Workers, Class B, and shall be worn at the jobsite by employees who are exposed to the hazards of falling objects, electric shock, or burns.**

### *Eye Protection*

**It is the responsibility of Trade Contractors to provide their employees with eye protection.  All workers and visitors are required to wear eye protection that will comply with ANSI Z87.1-1989.**



## ATTACHMENT F

### SUPPLEMENT TO TRADE CONTRACT CONCERNING SAFETY

Hearing Protection

Hearing protection is required in all posted areas and whenever noise levels exceed 85 decibels.  It is the responsibility of Trade Contractors to provide their employees with hearing protection as required.

Safety Shoes

Trade Contractors shall ensure that sturdy shoes are worn by all project personnel.  Whenever there is the potential for injury to toes, safety shoes with toe protection are required.

Chemical Protective, Chemical Resistant Suits and Rubber Boots

It is the responsibility of Trade Contractors to provide employees with the necessary protective suits, gloves and boots whenever their job requires the handling of chemicals or hazardous materials.

Overhead Work

Prior to performing any overhead work that requires the use of a ladder, Trade Contractors are required to barricade the area, and evacuate the area of all non-essential personnel.  **Note: Prior to barricading an area that restricts aisles or access routes, be sure to provide for alternate routes or ensure that the area has been vacated.**

Ladders

- Prior to using ladders, Trade Contractors are required to inspect them for defects such as broken or loose steps or rungs, cracks or weak side rails, frayed rope on extension ladders, and damaged feet on extension ladders.

- Prior to using an extension ladders, Trade Contractors are required to secure them from slipping, shifting or other potential hazards.

- Prior to using step ladders, Trade Contractors are required to prevent them from slipping, shifting or other potential hazards.

- Trade Contractors are prohibited from separating extension ladders.

- Trade Contractors are required to extend ladders a minimum of 36 inches (3 rungs) above the level to be reached.  If this cannot be accomplished, Trade Contractors shall ensure that a grab rail is accessible.

- Trade Contractors are prohibited from using stepladders as straight ladders.

- Trade Contractors are required to secure unopened ladders, left leaning against a wall, to keep from falling.

- Trade Contractors shall ensure that site workers always face the ladder when climbing up or down.



## ATTACHMENT F
### SUPPLEMENT TO TRADE CONTRACT CONCERNING SAFETY

- Trade Contractors shall ensure that all materials are hoisted or lowered in a safe manner to prevent dropping.

Floor Openings and Stairs

- It is the responsibility of Trade Contractors to ensure that all floor openings are guarded with barriers on all exposed sides.

- Trade Contractors shall ensure that temporary hatchways and floor openings are guarded by a hinged cover or a removable standard railing with toe board on no more than two sides.

- Trade Contractors shall ensure that all stairs with four or more risers be equipped with handrails approximately 34 inches from the tread.

- Trade Contractors shall ensure that stairs intended for two-way passage be a minimum of 44 inches wide with maximum 12 feet height between landings.

Scaffolds

- Trade Contractors shall always inspect upright scaffolds to ensure they are plumb, secure and have firm footing.

- Trade Contractors shall always secure stationary upright scaffolds to a building or other structure.

- Trade Contractors shall ensure that all portable maintenance staging be outfitted with outriggers.

- Trade Contractors shall ensure that scaffold planks or platforms be designed to hold a minimum of four times the weight they are intended to hold.

- Trade Contractors shall ensure that platform planks be overlapped by a minimum of twelve inches or secured.

- Trade Contractors shall always provide for safe access to work platforms.

- Trade Contractors shall ensure that scaffolds less than 45 inches wide and more than 4 feet above the ground be equipped with guardrails.

- Trade Contractors shall ensure that scaffolds more than 8 feet above ground be equipped with guardrails and toe boards on all open sides and ends.

- Trade Contractors are required to provide safety harnesses for all work performed on swinging or portable scaffolds and on all scaffolds 8 feet above ground level.

- Trade Contractors shall ensure that all swinging scaffolds are anchored and suspension ropes be designed to hold a minimum of 6 times the weight intended to hold.



## ATTACHMENT F

### SUPPLEMENT TO TRADE CONTRACT CONCERNING SAFETY

- Trade Contractors are required to provide guardrails, intermediate rails and toe boards on all open sides of scaffolds ten feet above ground level.

- Trade Contractors shall ensure that strong, secure locations are selected as anchors for suspension ropes and lifelines.
- Trade Contractors are required to provide safety harnesses whenever employees are suspended from lifelines that are anchored independently.

Compressed Air, Compressed Nitrogen or Other Gases

- Eye protection is required for all work performed using compressed air.  It is the responsibility of Trade Contractors to provide their employees with eye protection.

- Trade Contractors when using compressed air for cleaning purposes shall do so only when employing the safest work practices.

- Trade Contractors are required to always direct air stream away from face or other individuals.

- Trade Contractors shall ensure that pressure relief valves on air gun nozzles are never blocked.

Compressed Gas Cylinders

- Employees of Trade Contractors are required to immediately report cylinder leaks, to their Manager/Supervisor/Foreman, and are prohibited from moving leaking cylinders.

- Trade Contractors shall ensure that compressed gas cylinders are *always* maintained in an upright position and secured by strap, chain bar or other rigid retaining device.

- Trade Contractors shall ensure that compressed gas cylinders are kept free from rust and leaks.

- Cylinders are outfitted with regulators to reduce compressed gases to safe operating levels. Trade Contractors shall ensure that regulators are marked for only one type of gas cylinder and will be used for that purpose only.

- Trade Contractors shall ensure that all cylinders are permanently labeled in accordance with American National Standards Institute (ANSI) to identify the type of gas in the cylinder.

- Trade Contractors shall ensure that cylinders are stored in a safe manner in their designated storage area only.

- Trade Contractors shall ensure that grease or oil is never used to lubricate the valve or joints of compressed gas cylinders.  Oxygen and oil react violently under pressure.  Using grease to lubricate an oxygen valve can result in an explosion.

- Trade Contractors shall ensure that oxygen and acetylene cylinders are stored a minimum of 20 feet apart in an upright position only.



# ATTACHMENT F

## SUPPLEMENT TO TRADE CONTRACT CONCERNING SAFETY

- Trade Contractors shall ensure that cylinder valves are closed tightly when not in use as well as at the end of each work day, and that protective caps are placed on cylinders when not in use.

- Trade Contractors shall ensure that prior to moving cylinders, regulators are removed and caps are securely fastened.

- Trade Contractors shall ensure that cylinders are not subjected to dropping, bumping or to atmospheres or cylinder temperatures exceeding 130 degrees.

Hand and Power Tools

- Trade Contractors shall ensure that they have familiarized themselves with Prism Wonder Lofts Construction, LLC's general safety policies set forth in Section 9.1 of the BuildSafe.

- Trade Contractors shall ensure that hand and power tools are inspected prior to use to ensure safe operating condition.

- Prior to using hand or power tools, Trade Contractors shall ensure that their employees have received proper training for safe operation.  Certification of training shall be provided to Prism Wonder Lofts Construction, LLC upon request.

- Trade Contractors shall ensure that tools are not over strained to accomplish work they are not intended for.

- Trade Contractors shall ensure that tools are not left on stepladders, scaffolds, stairs or any place where they may become dislodged and fall.

- Trade Contractors shall ensure that only non-sparking tools be used in areas where flammables are handled or where sparks could create an explosion.

- Trade Contractors shall ensure that pneumatic or air-powered tools are handled with care and that air hoses are turned off when not in use.

- When operating a jack-hammer, hearing protection and metal toe guards are required.  It is the responsibility of Trade Contractors to provide their employees with protective equipment.

- Trade Contractors shall ensure that all pneumatic impact (percussion) tools be outfitted with safety clips or retainers to prevent attachments from being ejected.

Grinding

- Trade Contractors are required to provide their employees with goggles prior to their performing grinding, buffing or working with wire brushes.

- Trade Contractors are required to provide their employees with face shields whenever the potential for flying objects presents itself.



## ATTACHMENT F
### SUPPLEMENT TO TRADE CONTRACT CONCERNING SAFETY

- ◆ Trade Contractors shall ensure that grinding wheels or buffers be equipped with safety guards prior to operation.

Smoking and Using Open Flames

Trade Contractors shall ensure that smoking policies are adhered to and that employees never smoke or use open flames in areas where flammable liquids, gases or highly combustible materials are stored, handled, or processed.

Gas Heaters, Burning, Welding, Cutting or Grinding

- ◆ It is the responsibility of Trade Contractors to ensure that they familiarized themselves with the policies set forth in Section 10.1 of Prism Wonder Lofts Construction, LLC's BuildSafe entitled Welding, Cutting and Brazing.

- ◆ It is the responsibility of Trade Contractors to provide their employees with adequate training prior to their use of open-flame or spark-producing equipment for the purpose of burning, soldering, cutting, grinding or prior to operating gas heaters or salamanders. Certification of training shall be provided to Prism Wonder Lofts Construction, LLC upon request.

- ◆ Whenever burning, welding, cutting or grinding operations are performed in and around combustible materials, Trade Contractors must first ensure that a fire watch be assigned and maintained for a period of one-half hour upon completion of the job.

- ◆ Prior to welding or cutting operations, Trade Contractors shall ensure that the immediate area is wetted down.

- ◆ Trade Contractors shall ensure that a fire watch is provided on both sides of the roof or wall prior to cutting through or welding an existing roof or wall.

- ◆ Trade Contractors are required to provide welding shields or screens whenever employees may be exposed to flash burns, and they shall ensure that this protective equipment is worn by employees.

- ◆ It is the responsibility of Trade Contractors to provide their employees with fire extinguisher training including the proper selection and use of fire extinguishers prior to engaging in any operation utilizing equipment that produces open flames or sparks.  Certification of training shall be provided to Prism Wonder Lofts Construction, LLC upon request.

Mobile Cranes

- ◆ Trade Contractors shall ensure that proper clearance from overhead electrical power lines be maintained prior to operating cranes, derricks, power shovels or similar equipment.

- ◆ Trade Contractors engaged in crane operations shall ensure that all cranes are certified annually.   Copies of certification shall be forwarded to Prism Wonder Lofts Construction, LLC upon request.



# ATTACHMENT F

## SUPPLEMENT TO TRADE CONTRACT CONCERNING SAFETY

- ♦ Trade Contractors shall ensure that all backhoes and other excavating equipment are certified annually whenever this equipment is used as a crane. Copies of certification shall be forwarded to Prism Wonder Lofts Construction, LLC upon request.

- ♦ Trade Contractors shall ensure that loads are not lifted over the front area of a truck-mounted crane unless approval is granted by the manufacturer of the crane.

Excavations and Trenching

- ♦ Prior to the start of any excavation, Trade Contractors are responsible for identifying the location of all underground utilities by calling **DIGSAFE (1-800-272-1000)**, the utility companies or other appropriate agency.

- ♦ Trade Contractors are required to brace or slope holes, when 5 feet deep or more, to prevent cave-ins.

- ♦ Trade Contractors are required to use additional bracing whenever excavations are subject to vibration from vehicles or machinery.

- ♦ Whenever working in trenches more than 4 feet deep, Trade Contractors are required to provide for exiting via ladders or steps.

- ♦ Whenever excavating in or around a structure, Trade Contractors are required to exercise caution so as not to weaken the structure.

- ♦ Trade Contractors are required to barricade and restrict access to excavations.

- ♦ Trade Contractors are required to use warning lights, outdoors, by excavation and trenches.

- ♦ Trade Contractors shall ensure that whenever walkways are installed over open trenches, the walkways will be strong enough to handle pedestrian traffic, and will be equipped with guardrails on both sides which are bevelled to the ground on both ends.

Safety Harnesses

- ♦ OSHA and ANSI standards are being revised and may change in the near future. Trade Contractor shall strictly abide by all of said revisions and changes.

- ♦ Trade Contractors shall ensure that employees performing confined space entry are provided with and required to wear safety harnesses with O rings.

- ♦ Trade Contractors are required to provide safety harnesses with a minimum of 1/2 inch diameter nylon lanyard. Safety harnesses must have a suitable means for adjustment and a minimum breaking strength of 5,400 pounds.

- ♦ Trade Contractors shall ensure that safety harnesses are inspected for damage or worn parts prior to each use.



## ATTACHMENT F
### SUPPLEMENT TO TRADE CONTRACT CONCERNING SAFETY

- Trade Contractors are required to provide lifelines for all work performed on roofs within 10 feet of an unprotected edge and shall ensure that an attendant be present under these circumstances. Whenever lifelines are impractical, a safety net must be used.

Confined Spaces

- Prior to performing confined space entry work, Trade Contractors must provide Prism Wonder Lofts Construction, LLC with a copy of their Confined Space Safety Program.

- Prior to allowing entry into a confined space, Trade Contractors must first secure a permit to ensure the atmosphere is safe for entry.

- Trade Contractors shall ensure that their site workers have been trained to perform the confined space entry operations.

- Whenever required, Trade Contractors must provide for atmospheric testing.

- Trade Contractors must always use the entry-attendant system when entering confined spaces. Trade Contractors must ensure that their entry attendant never enters a confined space.

- Trade Contractors shall ensure that the entry attendant outside the confined space is responsible for maintaining constant verbal communication with his/her coworker inside the confined space.

- Trade Contractors shall provide a two-way radio or other communication device whenever access to a telephone is restricted.

- Trade Contractors shall ensure that confined spaces have positive ventilation prior to entry.

Performing Electrical Work

- All electrical work regardless of the nature must be approved by Prism Wonder Lofts Construction, LLC or the project electrical Trade Contractor.

- Trade Contractors shall ensure that, **prior to working on any system greater than 120 volts**, the system be totally de-energized, properly grounded out and tested dead.

- Trade Contractors shall ensure that **"do not operate"** tags are placed on all electrical switches or circuit breakers used to de-energize a system.

- Trade Contractors are required to make available lockout devices for placement on energy isolating devices to hold them in a safe position.

- Trade Contractors shall ensure that employees never remove covers or panels from any compartment in which there are exposed energized connections greater than 600 volts.

- Trade Contractors shall ensure that, **prior to working on any system less than 600 volts**, power is turned off to the maximum extent possible.



## ATTACHMENT F
### SUPPLEMENT TO TRADE CONTRACT CONCERNING SAFETY

- Trade Contractors shall ensure that the scope of work to be performed is approved by Prism Wonder Lofts Construction, LLC prior to beginning work.

- Trade Contractors shall ensure that only employees who are qualified electricians, journeymen or master electricians are permitted to perform electrical work.

- Trade Contractors shall ensure that only qualified authorized personnel be allowed in the work area.

- Trade Contractors are required to barricade the area prior to work commencing.

- Trade Contractors are required to provide their employees with safety glasses for all electrical work.

- Trade Contractors shall ensure that only proper tools that are in good repair are used.

- Trade Contractors shall ensure that Prism Wonder Lofts Construction, LLC be notified of any changes to the sequence of work prior to implementing the change.

- When working in high-voltage rooms, Trade Contractors shall ensure that aisles with switches and controls be kept free from tools and equipment at all times.

- Trade Contractors are required to provide proper protective equipment and clothing and ensure its use by employees working on electrical equipment. Such equipment and clothing may include:

| — Rubber Gloves | — Rubber Blankets | — Safety Glasses |
| — Glow Lamp Tester | — Grounding Sets | — Hot Sticks |
| — Glow Tector | — Tags and Lockouts | — High-Dielectric Safety Helmets |

### Tarpaulins

Trade Contractors shall ensure that tarpaulins be flame resistant (asbestos free) and in good condition.

### Salamanders

- Trade Contractors shall ensure that salamanders be positioned away from all combustible materials.

- Trade Contractors shall ensure that salamanders are equipped with overheating and tip-over protection devices.

### Combustible Trash

Trade Contractors are required to remove all combustible trash from work areas and store it a safe distance from all buildings at the end of each workday.



## ATTACHMENT F
### SUPPLEMENT TO TRADE CONTRACT CONCERNING SAFETY

Emergency Equipment

Trade Contractors are required to label all emergency equipment and store it in a readily accessible location.

Chemicals and Paints

- Trade Contractors shall ensure that all containers are properly labeled with the original manufacturer's label and includes the chemical name and its hazards.

- Trade Contractors shall ensure that employees take all precautions when handling chemicals and that they review the MSDS prior to handling chemicals.

- Trade Contractors shall ensure that all chemical waste or empty chemical containers are disposed of in accordance with the standards set forth in Prism Wonder Lofts Construction, LLC's BuildSafe.

- Contractor/Trade Contractor employees must report all chemical spills immediately to their Manager/Supervisor/Foreman.  Contractor/Trade Contractor Manager/Supervisor/Foreman must report all chemical spills to Prism Wonder Lofts Construction, LLC as soon as possible.

Transporting Material and Equipment

- Prism Wonder Lofts Construction, LLC recommends that when carrying pipe or conduit in excess of ten feet in length, the services of two men is employed.

- Trade Contractors shall ensure that carts, tools, equipment or materials are never left unattended in aisles unless providing for a barricade.

Motor Vehicle Requirements

- Trade Contractors are required to park vehicles in designated parking areas.

- Trade Contractors shall ensure that vehicles do not block exits, fire hydrants, walkways or emergency equipment.

- Trade Contractors shall ensure that speed limits are obeyed at all times.

- Trade Contractors are required to enforce the wearing of safety belts by employees whenever operating a company vehicle on the project premises.

- Trade Contractors shall ensure that all vehicles used on the project are equipped with emergency equipment.

### SITE SAFETY ENFORCEMENT PRACTICES



## ATTACHMENT F

### SUPPLEMENT TO TRADE CONTRACT CONCERNING SAFETY

Policy Statement

The Occupational Safety and Health Administration (OSHA) establishes minimum regulatory requirements under 29 CFR 1926 for the construction industry. Trade Contractor shall adhere to these standards during all construction activities. The Environmental Protection Agency (EPA) also establishes minimum environmental standards that have been adopted by every State in the country.  It is the responsibility of every Trade Contractor to be knowledgeable of these regulations and know which regulations need to be followed based on the activities of their employees. **Prism Wonder Lofts Construction provides Trade Contractor with *guidance documents* which are intended to provide compliance assistance and are <u>not</u> substitutes for the necessary regulatory knowledge and understanding that each Trade Contractor is responsible to have concerning their employees activities**.

Trade Contractor Accountability

**Included with this Contract is the *Trade Contractor Project Information Form*. This document <u>must</u> be filled out for each project and returned to Prism Wonder Lofts Construction.** When these forms are returned, Prism Wonder Lofts Construction will send you the *Prism Wonder Lofts Construction Project Information Form* which will provide particular site specific safety information about the project.  Each Prism Wonder Lofts Construction Project Manager will maintain a copy of the Project Safety Manual for your review.

Enforcement Practices

As stated previously, each subcontractor is responsible for following the necessary safety and health practices specific to OSHA. Trade Contractor shall adhere to these standards.  Trade Contractor may be requested to furnish written programs, training documentation and records as required by OSHA.  In addition, subcontractor employees will be expected to comply with these requirements and you will be held accountable for their actions.

Prism Wonder Lofts Construction Job Superintendent may report any violations to the Prism Wonder Lofts Construction Project Manager who will be required to take one of two options; issue a written warning to the subcontractor Project Manager/Supervisor, or issue a Violation Report to Prism Wonder Lofts Construction Corporate Offices where fines will be assessed based on frequency and severity.  *Non-Serious Violations* (not an imminent threat to an employee(s) health and safety but a violation of OSHA standards or activities that resulted in the injury of an employee(s)) will carry a $100.00 fine.  Repeat non-serious violations will be added to previous fines.

*Serious Violations* (an imminent threat to the health and safety of an employee(s) or actions which have resulted in the injury of an employee(s)) will carry a fine of $500.00.  Repeat violations of the same offense will be added to previous fines and may be grounds for dismissal from the project. **All fines will be subtracted from monies owed to the Trade Contractor by Prism Wonder Lofts Construction, LLC.**



## ATTACHMENT F

### SUPPLEMENT TO TRADE CONTRACT CONCERNING SAFETY

It is sincerely hoped that this course of action is not necessary and we can all work together to provide a quality product as safely as possible.  Any questions regarding this policy should be directed to Prism Wonder Lofts Construction **973-562-9580**.



## ATTACHMENT F
### SUPPLEMENT TO TRADE CONTRACT CONCERNING SAFETY

---

### *Prism Wonder Lofts Construction, LLC*
### TRADE CONTRACTOR PROJECT INFORMATION FORM

Subcontractor Name:_____          Date:_____

Address:_____          Project Number:_____

_____

_____

Project Manager Name:_____

Telephone Number:_____

---

### Chemical List:

|  | Product Name | Manufacturer |
|---|---|---|
| 1. | _____ | _____ |
| 2. | _____ | _____ |
| 3. | _____ | _____ |
| 4. | _____ | _____ |
| 5. | _____ | _____ |
| 6. | _____ | _____ |
| 7. | _____ | _____ |
| 8. | _____ | _____ |
| 9. | _____ | _____ |
| 10. | _____ | _____ |

**ATTENTION: Provide the Prism Wonder Lofts Construction Site Superintendent with the job specific MSDS Binder. The Binder will be returned at the end of the project.**

# ATTACHMENT G
# PERFORMANCE PARAMETERS

# ATTACHMENT "G"
## Performance and Productivity Information

Provide all of the open items in the box below:

**Submittal Lead Time:**
Indicate the amount of time from notification to proceed, to prepare and furnish all of the required shop drawings, cut sheets, specification data sheets, samples, etc. Submit separate lead time information for each major component of the work.

**Material Lead Time:**
Indicate the days/weeks for fabrication, shipping, and delivery of equipment and materials to the job site. Submit separate lead time information is to be submitted for each major component of the work.

**Installation Duration:**
Indicate the number of days/weeks that it will take to start and complete the work of each activity.

**Crew Size:**
Indicate the crew size for each specific project activity.

**Quantities:**
List the quantity of materials required for each work activity.

| ACTIVITY | SUBMITTAL LEAD TIME | MATERIAL LEAD TIME | INSTALL DURATION | CREW SIZE | QUANTITY | UNIT |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

# ATTACHMENT H
# PROJECT REQUIREMENTS

# ATTACHMENT H
## PRISM CONSTRUCTION MANAGEMENT, LLC

### GENERAL PROJECT REQUIREMENTS FOR TRADE CONTRACTORS

**I.  CONTRACT ADMINISTRATION REQUIREMENTS**

A.  Contract Documents
The form of contract shall Wonder Lofts Owner LLC c/o Prism Construction Management, LLC (hereafter referred to as "Contractor") "Form of Trade Contract between Contractor and Trade Contractor". By submitting a bid, the trade contractor acknowledges receipt and review of the contract form and agrees to be bound by its terms and to satisfy all requirements of the contract and its attachments.

B.  Insurance
Trade contractor shall satisfy the insurance requirements as described in Article 9 and Attachment "D".

C.  Invoicing
All billings are to be in accordance with the "Invoicing Requirements" attachment to the contract, and are to be submitted on the forms provided.

**II.  COORDINATION REQUIREMENTS**

A.  Design Clarifications
Any design clarifications and/or supplemental information required to facilitate proper execution of the subcontract work are to be requested in writing by the trade contractor in a timely, expeditious, and specific manner so as to avoid delays to execution of the work.

B.  Layout
All trade contractors are responsible for laying out their own work.  Start of work by this Trade Contractor signifies acceptance of all work in place by others.

C.  Work Hours
Normal jobsite work hours are 8:00 AM to 4:00 PM Monday through Friday.

D.  Overall Coordination
Trade contractor shall coordinate its work with the work of all adjoining and interfacing trades. Trade contractor is obligated to review and understand the intent of all of the design documents, and shall maintain its own complete set of drawings at the jobsite for reference purposes. Any questions and clarifications (conflicts of available space, interface discrepancies, etc.) are to be requested well in advance of the execution of the work.  Any work that proceeds without appropriate consideration and coordination of other trades is to be removed and/or modified as required at the trade contractor's expense.

E.  Delays
Any delays to the progress schedule which are caused by a trade contractor's failure to perform or satisfy the contract requirements shall be the sole responsibility of that trade contractor, and any costs associated with the delays will be assigned to that trade contractor.

F.  Progress Meetings

## ATTACHMENT H
### GENERAL PROJECT REQUIREMENTS

All trade contractors shall attend and participate in the coordination and progress meetings as requested and required by Contractor. All contractors are required to have an approved representative of the company attend all meetings. The approved individual shall be empowered to represent the company and make decisions for the company. The approved individual must remain the same throughout the project unless otherwise requested or approved by Contractor. Failure to attend any meeting will be considered a delay to the project.

G. Inspections, Permits, & Approvals

Trade contractor shall cooperate and coordinate its work with all applicable inspectors and/or testing agencies. This includes local code officials and inspectors, and independent testing agencies. Trade contractor is responsible for obtaining its own inspections and approvals from authorities having jurisdiction. Trade contractor shall provide all necessary documentation relative to its work that may be required for permitting, approvals, or inspections. Permit fees will be paid by others.

H. Material & Equipment Storage

Storage of material and equipment at the site shall be permitted only to the extent approved in advance by Contractor. If anything so stored obstructs the progress of any portion of work, it shall be promptly removed or relocated by the subcontractor without reimbursement. Facilities for storage at the site will be limited and it shall be the subcontractor's responsibility to make whatever arrangements may be necessary to ensure proper material availability for maintenance of job progress. This includes items furnished by other contractors.

I. Trade Contractor Trailers

The Trade Contractor shall place and relocate its trailers when and where directed by Contractor. The Trade Contractor is responsible for the acquisition, maintenance, and removal of all utilities and telephone services required for its trailers. All energy charges for same will be the Trade Contractors responsibility. The Trade Contractor shall be responsible to replace, at no cost to the project, any trailer determined to be in a condition unacceptable for the Project.

## III. MANPOWER AND EQUIPMENT REQUIREMENTS

A. Field Supervision

All subcontractors shall provide adequate field supervision.

B. Tools & Equipment

All trade contractors are responsible for providing all necessary tools, equipment, scaffolding, etc. required to execute the work. Trade contractors are responsible for reasonable safeguarding of their own tools, equipment, and materials.

C. Labor

All jobsite labor shall be competent and fully qualified to perform the work.

D. Temporary Power

Temporary power is to be 110 volt only provided between the hours of 8:00 AM to 4:00 PM weekdays. Any other voltage or times of operation will be at the Trade Contractor's expense. Any Trade Contractors working at the site prior to the establishment of temporary construction power are responsible for providing their own power at their own expense.

E. Access To Jobsite

Normal jobsite work hours are 8:00 AM to 4:00 PM Monday to Friday. Trade Contractor is responsible for any costs of standby trades should work be performed other than during normal working hours or on Saturdays, Sundays, and Holidays. All trade contractors shall keep their materials, equipment, workers, and representatives within the limits of the work area only, and shall access the site only from the construction entrances provided. Trade contractors are strictly

**ATTACHMENT H**
**GENERAL PROJECT REQUIREMENTS**

prohibited from accessing adjoining properties. All trade contractors shall comply. Violators will be subject to dismissal and banishment from the jobsite.

F.   Schedule

Contractor shall establish the construction schedule and sequence, which will be updated and modified periodically. All trade contractors shall submit specific man-day and proposed crew size information for discrete work activities, as determined and requested by Contractor. Trade contractor shall supply adequate manpower and supervision, and expedite all materials and equipment as necessary, to meet the schedule requirements. All "float" belongs to Contractor.

## IV.   PERFORMANCE REQUIREMENTS

A.   Daily Cleanup

All trade contractors are responsible for clean up of their own work, and shall place their debris on a daily basis in dumpsters provided by Contractor. All Hazardous waste must be disposed of from the jobsite, by approved methods and personnel, at the expense of the Trade Contractor.

B.   Accessories

All accessory and appurtenant items necessary for a complete installation of the trade contractor's work, and work "normal to the trade", are included in the subcontract price; whether or not such items are specifically noted on the contract documents.

C.   Safety

All trade contractors are to comply with all applicable state and federal safety guidelines and regulations. All requirements of Attachment "F" to the contract, "Supplement to Trade Contract Concerning Safety", are to be fulfilled and strictly adhered to by the trade contractor.

D.   Existing Conditions

Trade contractor has visited the site and familiarized himself to all existing conditions that may affect the work of this subcontract.

E.   Cutting & Patching

All subcontractors are responsible for their own cutting, patching, core drilling, and fire stopping.

F.   Finishes

Subcontractor is to clean and protect all finished surfaces and equipment that are to remain. Provide temporary protection of all surfaces installed by this subcontractor for the duration of the project. This Trade Contractor is responsible for protecting the work of others from damage due to this Trade Contractor's operations.

G.   Deliveries

Subcontractors are solely responsible for ordering and accepting delivery of their own material.

H.   Workmanship

All work is to be performed in a professional and workman-like manner.

## V.   SUBMITTAL / SHOP DRAWING REQUIREMENTS

A.   Submittals

All submittals are to be made by the trade contractor expeditiously upon contract award, and in a timely, complete, and coordinated manner, so as to avoid delays to material fabrication and execution of the work.

## ATTACHMENT H
### GENERAL PROJECT REQUIREMENTS

B. <u>Design Clarification</u>

Any design clarifications and/or supplemental information required to facilitate proper execution of the subcontract work are to be requested in writing by the trade contractor in a timely, expeditious, and specific manner so as to avoid delays to execution of the work.

C. <u>Submittals</u>

Submittals are to be submitted to the Contractor as follows:

1.  Shop Drawings – Reproducible Transparencies and six (6) folded 8½" x 11" size) black line prints.

2.  Catalog Cuts, Brochures, etc. – six (6) copies for approvals, ten (10) copies for distribution.

3.  Samples – Four (4) each.

D. <u>Substitution Process</u>

1.  Submission of request for substitution shall constitute a representation that the entity making the request:

    a.  Has investigated the proposed product and determined that it is equal to or better than the specified product.

    b.  Will provide the same warranty for the proposed product as for the specified product.

    c.  Will coordinate the installation and make other changes which may be required for the work to be complete in all respects, including;

        ➢ Re-design.

        ➢ Additional components and capacity required by other work affected by the change.

        ➢ Waives all claims for additional costs and time extensions which subsequently may become apparent and which are caused by the change.

        ➢ Will reimburse the Owner for additional costs for evaluation of the substitution request, redesign by the Architect if required, and re-approval by authorities having jurisdiction if required.

    d.  Substitutions will not be considered when acceptance would require substantial revision of the contract documents.

    e.  Substitutions will not be considered when they are indicated or implied on shop drawing or product data Submittals without separate written request.

    f.  Substitution requests will not be considered when submitted directly by sub-Subcontractor, supplier or vendor.

    g.  Substitution Request Procedure:  Submit written request with complete date sustaining compliance of the proposed product with the requirements of the contract documents.

    h.  Submit request within 15 days of the issuance of construction documents by Contractor.

    i.  Submit request to Contractor.

    j.  Submittal quantities must be in accordance with the requirements of Section 5.3.

    k.  Submit request accompanied by the "Request for Substitution" form included in the Project Manual.

2.  The Architect will determine acceptability of the proposed substitution.

E. <u>As-Builts</u>

Provide final as-builts, warranties, guarantees, part lists, owner manuals, maintenance guides, instruction manuals, user manuals, etc. for equipment provided and as required by the Contract Documents.

# ATTACHMENT I
## SCOPE OF WORK

Wonder Lofts
729 Clinton Street
Hoboken, NJ

Wonder Lofts Owner, LLC
200 Broadacres Drive, Bloomfield, NJ 07003

GEIS CONSTRUCTION-MASONRY

### A.  SCOPE OF WORK

This Trade Contractor shall furnish, deliver and install all necessary labor, material and equipment required to complete all Facade repair and brick work in accordance with the Project Drawings, Specifications, all
applicable building codes and as noted herein. Each bidding Trade Contractor is directed to visit the Project Site to examine all existing conditions. No additional charges will be allowed due to the failure of this Trade Contractor to fully understand all existing conditions.

This Project is the construction of a 64-unit condo building (floors 2 to 7) and ground floor retail space and parking. This portion of the project is the Fa9ade repair and brick masonry including the demo required for new openings.

This written scope of work is provided to identify and clarify the major items of work, but it is not intended to list every item required to complete this work. Therefore, this scope of work shall include, but is in no way limited to, the following:

1.  Brick Repointing
2.  Brick Replacement
3.  Cracked Brick Stitching
4.  Pinning brick to structure at corners
5.  Pinning brick to structure at interior columns
6.  Pinning brick to structure at interior columns
7.  Cracked brick repair at corners
8.  New angle lintels
9.  Replace existing I-beam lintels
10. Reinforcing existing garage window openings
11. Reconstruction of corner columns
12. Sandblast steel beams and columns
13. Lower existing bluestone sills
14. New sloped brick rowlock at sills
15. New ground flood door openings NE corner
16. New ground flood garage openings 8th street
17. New lintel replacement C building
18. Building B parapet reconstruction
19. Demolition of new and modified openings
20. Demolition of corners

21. General Notes:
    - This subcontractor shall be responsible for the clean-up of all debris resulting from this scope of work. All debris and rubbish shall be placed in dumpsters, provided by others. All work areas shall be kept clean on a daily basis. All excess material shall be removed from the jobsite by this Subcontractor upon completion of the work.

- This Subcontractor shall comply with all OSHA rules and regulations and applicable state and federal safety guidelines, in addition to the Prism Construction Management Safety Plan requirements. This Subcontractor shall provide appropriate safety protection as required, and will furnish MSDS forms for materials when applicable, attend weekly safety meetings on site, and employ competent personnel at the site as required for the operation of all tools, equipment, scaffolding and lifts.

- This subcontractor shall provide a one-year guarantee on all work performed from the date of final completion and acceptance of the work.

- This Subcontractor shall agree to execute and use the standard Prism Construction Management Subcontract Agreement, Application for Payment Form and Waiver of Lien forms. These forms are available for inspection upon request.

- This Subcontractor shall provide a Certificate of Insurance within five (5) days of contract award and shall maintain coverage throughout the duration of the work in accordance with the Project Documents.

- This subcontractor shall attend job meetings and review information provided by other contractors as necessary to coordinate its own work with other trades. This includes verifying size and location of floor openings for elevator shafts and pits, construction of shafts and pits, sizing of elevator sill angles, coordination with the electrical contractor for wiring, etc. Subcontractor shall provide a project manager and full-time on-site superintendent/foreman.

**B.**  EXCLUSIONS

The following items are specifically excluded from this Scope of Work:

1.  Building permit fees

2.  Furnishings of trash dumpsters.

3.  Scaffolding except that the moving of planks as required shall be included in this contract.

# ATTACHMENT K
## ADDENDUM TO
## TRADE CONTRACT



# ATTACHMENT "K"

## SUPPLEMENTAL INFORMATION

The following supplementary project requirements have been developed to ensure proper coordination of the project and apply to all trade contractors. Prism Construction Management, LLC reserves the right to amend these requirements as needed:

1.     Construction activities are only permitted as follows:

    -    Monday through Friday 8:00 AM – 4:00 PM

    No heavy equipment shall be permitted to arrive or depart outside of the above listed hours.

2.     Subcontractor employees shall sign in and out of the site daily.

3.     Excavation of any kind shall require a permit issued by Prism Construction Management LLC.

4.     Subcontractor employees shall park in areas designated by Prism Construction Management LLC.  Failure to park in designated areas will result in permanent dismissal from the Project.

5.     All subcontractor invoices/requisitions must be submitted to Prism Construction Management LLC by the 20th of each month – no exceptions.  See Attachment C "Invoicing Requirements" in the contract for detailed information.

6.     All subcontractors are responsible for hoisting their materials into the building.

# Geis Construction LLC Bid Form

10020 Aurora Hudson Road, Streetsboro OH 44241
Telephone: (330) 528-3500

## TRADE CONTRACT BID FORM (Attachment J)
### Cost Code 20-001: Masonry / Brick Repair
Aug 1, 2019

*Project:*   Wonder Lofts
729 Clinton Street
Hoboken, NJ

*Owner:*   Wonder Lofts Owner, LLC
200 Broadacres Drive, Bloomfield, NJ 07003

*Bidding Trade Contractor Information:*

Company Name:   ___MDC Inc_____

Address:   ___151 South 11st Lindenhurst, New York_____

Telephone:   _____(862) 684-2078_____   Fax: _____

Bid Estimator:   _____Anil Labroo_____

E-mail Address:   _____a_labroo@yahoo.com_____

Date Submitted:   _____September 19, 2019_____

This Bid Form is due in the office of Geis Construction South LLC, Attn: Kevin Watts no later than **9/15/19** Email copies are acceptable to KevinW@Geisco.net This Bid Form must be completed and returned in its entirety, including all breakdowns, alternate pricing, unit pricing, labor rates, and scheduling information as requested.

***Base Bid Amount:***
This Trade Contractor hereby proposes to furnish all labor, material, equipment and documentation necessary for the completion of all Façade Renovation, in accordance with the Project Drawings, Specifications and all information contained in this Bid Form for the total amount of:

$_____1,013,758.22_____

One Million Thirteen Thousand Seven Hundred Fifty Eight Dollars and twenty two cents
_____
(Print Amount of Bid)

## A. SCOPE OF WORK
This Trade Contractor shall furnish, deliver and install all necessary labor, material and equipment required to complete all Façade repair and brick work in accordance with the Project Drawings, Specifications, all applicable building codes and as noted herein. Each bidding Trade Contractor is directed to visit the Project Site

to examine all existing conditions.  No additional charges will be allowed due to the failure of this Trade Contractor to fully understand all existing conditions. Furnish the labor and material to complete the masonry scope of work in accordance with drawings A-300, A-301, A-302, A-309 with specifications prepared by Minervini Vandermark Architects dated 7/8/19. 721 and 731 Clinton shall be completed in accordance with drawings A300, A301, A302, & A303 dated 2/26/9 and the following specifications

This Project is the construction of a 64-unit  condo building (floors 2 to 7) and ground floor retail space and parking.  This portion of the project is the Façade repair and brick masonry including the demo required for new openings.

This written scope of work is provided to identify and clarify the major items of work, but it is not intended to list every item required to complete this work.  Therefore, this scope of work shall include, but is in no way limited to, the following:

1. Brick Repointing
2. Brick Replacement
3. Cracked Brick Stitching
4. Pinning brick to structure at corners
5. Pinning brick to structure at interior columns
6. Pinning brick to structure at interior columns
7. Cracked brick repair at corners
8. New angle lintels
9. Replace existing I-beam lintels
10. Reinforcing existing garage window openings
11. Reconstruction of corner columns
12. Sandblast steel beams and columns
13. Lower existing bluestone sills
14. New sloped brick rowlock at sills
15. New ground flood door openings NE corner
16. New ground flood garage openings 8th street
17. New lintel replacement C building
18. Building B parapet reconstruction
19. Demolition of new and modified openings
20. Demolition of corners
21. Low pressure washing new masonry veneer
22. Using cast stone at copings, caps, headers for arched parapets to replicate original (720 Clinton only)
23. Re-Construct brick as shown on drawings
24. Furnish and Install all Steel Lintels, bolts, & Plates as shown
25. Caulking and Joint Sealants
26. Pricing based upon parapet walls constructed of CMU in lieu of concrete (720 Clinton only)
27. Unit cost for additional repointing beyond contract documents is $12.00/SF (Under 500sf)
28. Unit cost for additional repointing beyond contract documents is $11.50/SF (Over 500sf)
29. Unit cost for brick replacement beyond contract documents is $45/SF
30. Unit cost for Lintels installed is $2.00/LB
31. Proposal includes brick work shown on A-304 dated 7/8/19

32. General Notes:
    - This subcontractor shall be responsible for the clean-up of all debris resulting from this scope of work. All debris and rubbish shall be placed in dumpsters, provided by others. All work areas shall be kept clean on a daily basis. All excess material shall be removed from the jobsite by this Subcontractor upon completion of the work.

    - This Subcontractor shall comply with all OSHA rules and regulations and applicable state and federal safety guidelines, in addition to the Prism Construction Management & Geis Construction South Safety Plan requirements.  This Subcontractor shall provide appropriate safety protection as required, and will furnish MSDS forms for materials when applicable, attend weekly safety meetings on site, and employ competent personnel at the site as required for the operation of all tools, equipment, scaffolding and lifts.

- This subcontractor shall provide a one-year guarantee on all work performed from the date of final completion and acceptance of the work.

- This Subcontractor shall agree to execute and use the standard Geis Construction South Subcontract Agreement, Application for Payment Form and Waiver of Lien forms. These forms are available for inspection upon request.

- This Subcontractor shall provide a Certificate of Insurance within five (5) days of contract award and shall maintain coverage throughout the duration of the work in accordance with the Project Documents.

- This subcontractor shall attend job meetings and review information provided by other contractors as necessary to coordinate its own work with other trades. This includes verifying size and location of floor openings for elevator shafts and pits, construction of shafts and pits, sizing of elevator sill angles, coordination with the electrical contractor for wiring, etc. Subcontractor shall provide a project manager and full-time on-site superintendent/foreman.

- This subcontractor will be responsible for the hoisting of all materials and equipment required.

- It is the responsibility of this trade contractor to fully review the contract documents provided and bring any discrepancies noted the attention of the Construction Manager immediately.

- Proceeding with extra work without receiving written approval from Geis Construction South LLC shall constitute a waiver of claims to extra work.

- If there is a conflict between the scope of work document and the subcontractors quote, it is agreed and understood that this scope of work shall supersede all proposals

## B. EXCLUSIONS

The following items are specifically excluded from this Scope of Work:
1. Building permits fees.
2. Furnishing of trash dumpsters.
3. Scaffolding except that the moving of planks as required shall be included in this contract

## C. COST BREAKDOWN

Provide each line item prices as requested. Each price shall include all applicable costs such as labor, material, equipment, delivery, taxes, overhead and profit.

Provide all pricing on the separate Bid Breakdown sheet provided with this Bid Form. This bid is not valid without the attachment of the separate Bid Breakdown sheet. Provide the following line item costs here for each floor, as taken from the breakdown sheet.

| | | |
|---|---|---|
| 1. | Mobilization | $102,924.24 |
| 2. | Brick Repointing per drawing | $32,338.34 |
| 3. | Brick Replacement per drawing | $395,272.87 |
| 4. | Brick Arch Reconstruction | $16,161.21 |
| 5. | Pinning brick to structure at corners | $101,107.06 |
| 6. | Pinning brick to structure at interior columns | $8,757.30 |
| 7. | Cracked brick repair at corners | $inc with item #5 |
| 8. | New angle lintels | $Inc with item #17 |
| 9. | Replace existing I-beam lintels | $52,908.71 |

10. Reinforcing existing garage window openings        $Inc

11. Reconstruction of corner columns        $W/item #5

12. Sandblast steel beams and columns        $19,047.14

13. Lower existing bluestone sills        $27,864.15

14. New sloped brick rowlock at sills        $Inc with item #3

15. New ground flood door openings NE corner        $Inc in item #19

16. New ground flood garage openings 8th street        $Inc with item #19

17. New lintel replacement C building        $55,987.04

18. Building B parapet reconstruction        $21,805.71

19. Demolition of new and modified openings        $179,584.45

20. Demolition of corners        $Inc in item #19

21. Sales Tax        $Inc above

**Total Base Bid (Enter this Amount on Page 1):**        $1,013,758.22


## D.  ALTERNATE PRICES

Alternate Price No. 1: New brick work at 720 Clinton

Total Amount of Alternate No. 1:        $1,013,758.22

Alternate Price No. 2:  New brick work at elevator overruns, stair shafts, bulkheads

Total Amount of Alternate No. 2:        $45/SF

Alternate Price No. 3:  New brick work at 721 Clinton

Total Amount of Alternate No. 3:        $142,501.10

Alternate Price No. 4:  New brick work at 731 Clinton

Total Amount of Alternate No. 4:        $204,426.30

Alternate Price No. 5:  Repointing balance or project

Total Amount of Alternate No. 5:        $11.50/SF


## E.  UNIT PRICES

The unit prices as indicated below shall be included as part of this proposal.   Each price shall include all applicable costs such as labor, equipment, materials, delivery, overhead and profit.

| Contract Item | Unit | Unit Price |
|---|---|---|

| New brick | | SF | $45.00 |
| Re Pointing (Under 500 SF) | | SF | $12.00 |
| Re Pointing (Over 500 SF) | | SF | $11.50 |
| Lintel replacement | | LB | $2.00 |
| | | | |
| | | | |

## F.  LABOR RATES (HOURLY WAGE RATES)

The hourly wage rates indicated below shall be included as part of this proposal, and shall be applied in the event of additional work performed on a T&M basis.  Each rate shall include all costs, applicable taxes, overhead and profit.  These rates shall remain fixed for the duration of the project.

| Labor Type | Total Straight Time | Total Overtime | Premium Time Only |
|---|---|---|---|
| Foreman | | | |
| Mason | | | |
| Laborer | | | |

## G.  PROJECT SCHEDULE AND PERFORMANCE INFORMATION

This Project is anticipated to commence work on site on or about Fall 2019 and be completed Summer 2020.

## H.  SIGNATURE

The undersigned individual acknowledges that he has read and understands all of the Bid Documents and is authorized to submit this Bid Form on behalf of the Trade Contractor.  This Bid shall remain valid for not less than 90 days from the date of submission.

Trade Contractor Name: _____

Submitted by (Print Name): _____

Signature: _____

Title: _____

Date: _____

Case 2:21-0240-DH-ST Document 13 Filed 04/20/21



| Task Name | Duration | Start | Finish |
|---|---|---|---|
| Arch, Struct and MEP Drawings -ABC Bldg | 301 days | Tue 1/2/18 | Tue 2/26/19 |
| Shoring Permit | 3 wks | Mon 4/30/18 | Fri 5/18/18 |
| Footing and Foundation Drawings - ABC Bldg | 41.5 wks | Tue 5/22/18 | Thu 3/7/19 |
| Building D & E Design Drawings | 35 wks | Mon 6/18/18 | Fri 2/15/19 |
| Set Internal GMP | 56 days | Wed 2/27/19 | Wed 5/15/19 |
| Footing and Foundation Permit | 4 wks | Thu 4/4/19 | Thu 5/2/19 |
| Building ABC Full Permits | 5 wks | Thu 5/2/19 | Thu 6/6/19 |
| Building D & E Full Permits | 5 wks | Thu 6/6/19 | Thu 7/11/19 |
| **Building ABC** | **741 days** | **Mon 2/26/18** | **Mon 12/28/20** |
| Lead Paint remediation | 10 wks | Mon 2/26/18 | Fri 5/4/18 |
| Asbestos removal | 6 wks | Mon 4/9/18 | Fri 5/18/18 |
| Scaffolding installation | 6 wks | Mon 5/21/18 | Fri 6/29/18 |
| Demolition B-Bldg shafts & slab | 3 wks | Wed 6/13/18 | Tue 7/3/18 |
| Shoring A-Bldg at corners | 6 wks | Wed 6/20/18 | Tue 7/31/18 |
| Environmental Remediation | 12 mons | Wed 6/27/18 | Tue 5/28/19 |
| Demo A Building elevator shafts, water tower | 35.5 wks | Wed 7/4/18 | Fri 3/8/19 |
| Load testing B & C buildings | 6 wks | Wed 8/15/18 | Tue 9/25/18 |
| Demolition A-Bldg 5th floor | 3 wks | Wed 10/10/18 | Mon 3/18/19 |
| Parapet demolition | 9 wks | Fri 10/26/18 | Thu 12/27/18 |
| Load test piles A building | 9 wks | Wed 12/5/18 | Tue 2/5/19 |
| Building C Shoring Foundations | 15 wks | Mon 1/21/19 | Fri 5/3/19 |
| Additional demo for shear walls | 7 wks | Mon 3/18/19 | Mon 5/6/19 |
| Façade Repair | 40 wks | Wed 5/1/19 | Tue 2/4/20 |
| Driving Piles | 10 wks | Wed 5/15/19 | Tue 7/23/19 |
| Foundations and Pile Caps | 16 wks | Mon 6/24/19 | Fri 10/11/19 |
| Misc Concrete Repair | 3 mons | Wed 6/26/19 | Tue 9/17/19 |
| Shoring C-Bldg | 11 wks | Mon 7/8/19 | Fri 9/20/19 |
| Structural Concrete / Flat Plate | 6 mons | Mon 7/15/19 | Fri 12/27/19 |
| Demolition A-Bldg 4th floor | 3 wks | Mon 7/8/19 | Mon 7/29/19 |
| Structural Steel | 8 wks | Mon 7/29/19 | Fri 9/20/19 |
| Windows | 6 mons | Mon 8/12/19 | Fri 1/24/20 |
| Sales Center | 10 wks | Mon 8/12/19 | Fri 10/18/19 |
| Exterior Framing | 4 mons | Mon 9/23/19 | Fri 1/10/20 |
| Masonry / Metal panel | 7 mons | Mon 9/30/19 | Fri 4/10/20 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Task | | Project Summary | | Inactive Milestone | ◇ | Manual Summary Rollup | | |
| Split | ............... | External Tasks | | Inactive Summary | ▽ ▽ | Manual Summary | | |
| Milestone | ◆ | External Milestone | ◇ | Manual Task | | Start-only | ⊏ | |
| Summary | | Inactive Task | | Duration-only | | Finish-only | ⊐ | |

Project: Wonder Lofts Project
Date: May 3, 2019



| Task | Duration | Start | Finish |
|---|---|---|---|
| Interior Framing | 6 mons | Tue 10/15/19 | Mon 3/30/20 |
| Roofing | 8 wks | Mon 10/21/19 | Fri 12/13/19 |
| MEP Roughing | 7 mons | Tue 11/12/19 | Mon 5/25/20 |
| Gyp Board | 6 mons | Tue 1/21/20 | Mon 7/6/20 |
| Finish Work | 41 wks | Tue 3/17/20 | Mon 12/28/20 |
| **Building E** | **340 days** | **Mon 7/8/19** | **Fri 10/23/20** |
| Piles / Foundations | 4 wks | Mon 7/8/19 | Fri 8/2/19 |
| Structure (steel and concrete) | 4 mons | Mon 8/5/19 | Fri 11/22/19 |
| Roofing | 2 wks | Mon 11/25/19 | Fri 12/6/19 |
| Masonry | 2 mons | Mon 11/25/19 | Fri 1/17/20 |
| Windows | 1 mon | Mon 1/20/20 | Fri 2/14/20 |
| Interior Framing | 5 wks | Mon 2/3/20 | Fri 3/6/20 |
| MEP Roughing | 2 mons | Mon 2/17/20 | Fri 4/10/20 |
| Gyp Board | 2.5 mons | Mon 4/13/20 | Fri 6/19/20 |
| Finish Work | 5 mons | Mon 6/8/20 | Fri 10/23/20 |
| **Building D** | **410 days** | **Mon 7/29/19** | **Fri 2/19/21** |
| Demolition of existing structure | 4 wks | Mon 7/29/19 | Fri 8/23/19 |
| Piles / Foundations | 6 wks | Mon 8/26/19 | Fri 10/4/19 |
| Structure (steel and concrete) | 4 mons | Mon 9/23/19 | Fri 1/10/20 |
| Roofing | 3 wks | Mon 1/13/20 | Fri 1/31/20 |
| Masonry | 3 mons | Mon 1/13/20 | Fri 4/3/20 |
| Windows | 2 mons | Mon 4/6/20 | Fri 5/29/20 |
| Interior Framing | 3 mons | Mon 4/6/20 | Fri 6/26/20 |
| MEP Roughing | 4 mons | Mon 6/1/20 | Fri 9/18/20 |
| Gyp Board | 3 mons | Mon 7/27/20 | Fri 10/16/20 |
| Finish Work | 6 mons | Mon 9/7/20 | Fri 2/19/21 |

Project: Wonder Lofts Project
Date: May 3, 2019

| | Task | | Project Summary | | Inactive Milestone | | Manual Summary Rollup | |
|---|---|---|---|---|---|---|---|---|
| | Split | | External Tasks | | Inactive Summary | | Manual Summary | |
| | Milestone | | External Milestone | | Manual Task | | Start-only | |
| | Summary | | Inactive Task | | Duration-only | | Finish-only | |

Page 2

Case 2:21-cv-02407-LDH-ST   Document 13   Filed 04/30/21   Page 146 of 156

# AFFIDAVIT OF (SUB ORIGINAL) CONTRACTOR

_____ Ohio, _____ 20 _____

STATE OF OHIO, _____ COUNTY, ss:

_____ being first duly sworn, says that he is

_____ of _____ the

Sub
Original   Contractor having a contract with _____

the _____

for _____
situated on or around or in front of the following described property: _____

_____

whereof _____ was the owner, part owner or lessee.

Affiant further says that the following shows the names of every sub-contractor in employ of said _____
_____ Giving the amount, if any, which is due, or to become due, to them, or any of
them, for work done or machinery, material or fuel furnished to date hereof, under said contracts.

**NOTE:** This statement must be accompanied by a similar sworn statement signed by each of the sub-
contractors listed below.

### SUB-CONTRACTORS

| NAME | TRADE | Amount due or to become due for work and material furnished to date hereof. |
|------|-------|---------------------------------------------------|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

Said affiant further says that the following shows the names of every person furnishing machinery, material or
fuel, to _____
Giving the amount, if any, which is due, or to become due, to them or any of them, for machinery, material or
Fuel furnished to date hereof, under said contracts.

### MATERIAL MEN

| NAME | TRADE | Amount due or to become due for work and material furnished to date hereof. |
|------|-------|---------------------------------------------------|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

Said affiant further says that the following shows the names of every unpaid laborer in the employ of _____
_____ Furnishing labor under said contract, giving the amount, if any.
which is due, or to become due for labor done to date hereof:

**LABOR**

| NAME | HOURS | Amount due or to become due for labor furnished to date hereof. | |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

That the amounts due or to become due to said sub-contractors, material men and laborers, for work done, or

machinery, material or fuel furnished to the date hereof, to _____
Is fully and correctly set forth opposite their names, respectively, in the aforesaid statements, and further by
certificates of every person furnishing machinery, material or fuel, hereto attached, and made a part hereof.

Affiant further says that _____
has not employed or purchased or procured machinery, material or fuel from, or sub-contracted with any
person, firm or corporation, other than those above mentioned, and owes for no labor performed, or
machinery, material or fuel furnished under said contracts, other than above set forth.

SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE, at _____
Ohio, this _____ day of _____ A.D., 20 _____

_____
Notary Public

CERTIFICTE OF MATERIAL MEN

_____ Ohio _____ 20_____

The undersigned certify that to the date hereof they have furnished machinery, material or fuel as set out herein
to _____ for

Situated on or around or in front of the property described I the foregoing affidavit; that the nature of said
machinery, material or fuel furnished, the date when they commenced furnishing the same and the amount
now due or owing to each of them, is correctly stated and set opposite their respective names or they have
been paid in full, if so acknowledged hereon.

| NAME | Machinery, materials or fuel and nature of the same. | Commenced Furnishing | Amount due or to become due to date hereof. |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

# CONTRACTUAL INSURANCE REQUIREMENTS

The information contained herein is to describe the contractual requirements that Geis Companies has indicated to myCOI. These contractual requirements should NOT be used to provide inaccurate information regarding current insurance policies. Questions regarding interpretation of this document can be directed to our support team at 888-692-6448 x105.

**INSURED NAME**

**CARRIER REQUIREMENTS**

| | POLICY LINE | | POLICY LIMITS REQ'D BY CONTRACT | | OTHER CONTRACTUAL REQUIREMENTS |
|---|---|---|---|---|---|
| GENERAL LIABILITY | ☐ CLAIMS MADE  ☒ OCCUR | | EACH OCCURRENCE | $1,000,000 | Additional Insured applies to General Liability. Waiver of Subrogation is required for General Liability. General Liability is Primary and Non-contributory. |
| | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $100,000 | |
| | | | MED EXP (Any one person) | $5,000 | |
| | | | PERSONAL & ADV INJURY | $1,000,000 | |
| | | | GENERAL AGGREGATE | $2,000,000 | |
| | GEN'L AGGREGATE LIMIT APPLIES PER:  ☐ POLICY ☒ PRO-JECT ☐ LOC | | PRODUCTS - COMP/OP AGG | $2,000,000 | |
| AUTO LIABILITY | ☒ ANY AUTO  ☐ ALL OWNED AUTOS  ☐ SCHEDULED AUTOS  ☐ HIRED AUTOS  ☐ NON-OWNED AUTOS | | COMBINED SINGLE LIMIT (Ea accident) | $1,000,000 | Additional Insured applies to Automobile. Waiver of Subrogation is required for Automobile. |
| | | | BODILY INJURY (Per person) | $ | |
| | | | BODILY INJURY (Per accident) | $ | |
| | | | PROPERTY DAMAGE (Per accident) | $ | |
| GARAGE LIABILITY | ☐ ANY AUTO | | AUTO ONLY - EA ACCIDENT | $ | |
| | | | OTHER THAN AUTO ONLY  EA ACC | $ | |
| | | | AGG | $ | |
| EXCESS/ UMBRELLA LIABILITY | ☒ OCCUR  ☐ CLAIMS MADE | | EACH OCCURRENCE | $2,000,000 | Additional Insured applies to Umbrella. Waiver of Subrogation is required for Umbrella. Umbrella Liability is Primary and Non contributory. |
| | | | AGGREGATE | $2,000,000 | |
| WORK COMP AND EMPLOYERS' LIABILITY | | ☒ WC STATU-TORY LIMITS ☐ OTHER | | | Waiver of Subrogation is required for Workers Comp. |
| | | | E.L. EACH ACCIDENT | $500,000 | |
| | | | E.L. DISEASE - EA EMPLOYEE | $500,000 | |
| | | | E.L. DISEASE - POLICY LIMIT | $500,000 | |
| | | | | | |
| | | | | | |
| | | | | | |

**CERTIFICATE HOLDER**

Geis Construction South, LLC

C/O: myCOI
1075 Broad Ripple Ave, Suite 313
Indianapolis, IN 46220

# CONTRACTUAL INSURANCE REQUIREMENTS

The information contained herein is to describe the contractual requirements that Geis Companies has indicated to myCOI. These contractual requirements should NOT be used to provide inaccurate information regarding current insurance policies. Questions regarding interpretation of this document can be directed to our support team at 888-692-6448 x105.

Division Name: [Template - Geis Construction South, LLC]. Endorsement(s) required: CG 2010 10 01 or its equivalent; CG 2037 10 01 or its equivalent. Additional Insured Names: Geis Construction South, LLC, owners, lessees or contractors.. 30 Days Notice of Cancellation Required. Waiver of Subrogation applies in favor of: Geis Construction South, LLC, Owner and Architect and their agents, officers, directors and employees..

General Liability: Additional Insured Endorsement Forms (CG 2010 07/04 and CG 2037 07/04 or their equivalent) are required.
Umbrella/Excess: Coverage must extend over general liability, automobile liability and employers liability.



# GEIS PAYMENT APPLICATION

JOB: _____
JOB #: _____

Contract No: _____
Invoice Number: _____

Period From: _____
Thru: _____

CONTRACTOR _____
ADDRESS _____

PHONE _____
FAX _____
E-MAIL _____

| | |
|---|---|
| 1 ORIGINAL CONTRACT SUM | $0.00 |
| 2 Net change by Change Orders | $0.00 |
| 3 CONTRACT SUM TO DATE (Line 1 +/- 2) | $0.00 |
| 4 TOTAL COMPLETED & STORED TO DATE | $0.00 |
| 5 RETAINAGE: | |
| a. _____ % of Completed Work (Columns D + E) | $0.00 |
| b. _____ % of Stored Material (Column F) | $0.00 |
| Total in Column I | |
| 6 TOTAL EARNED LESS RETAINAGE (Line 4 less Line 5 Total) | $0.00 |
| 7 LESS PREVIOUS CERTIFICATES FOR PAYMENT (Line 6 from prior Certificate) | $0.00 |
| 8 CURRENT PAYMENT DUE | $0.00 |
| 9 BALANCE TO FINISH, INCLUDING RETAINAGE (Line 3 less Line 6) | $0.00 |

**GENERAL NOTES:**

Breakdown of contract needs to be submitted to the Geis office within one week of receiving purchase order. Failure to do so will result in the purchase order being voided.
Only concern yourself with the items that pertain to your scope of work. This form is intended to be a supplement to your proposal which list items that are included and excluded.
Invoices MUST be received in our office no later than the 25th of the month in order to be processed the following month.
Conditional Lien Waivers and Affidavits must be submitted with each draw request.
We must have a current insurance certificate and workers compensation certificate on file in our office.

| A | B | C | D | E | F | G | H | |
|---|---|---|---|---|---|---|---|---|
| | | | WORK PERFORMED | | | | | |
| ITEM NO | DESCRIPTION OF WORK | SCHEDULED VALUE | FROM PREVIOUS APPLICATION | THIS PERIOD | Materials Presently Stored (Not IN D OR E) | TOTAL COMPLETED AND STORED (D+E+F) | % (G/C) | BALANCE TO FINISH (C-G) |
| 1 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| 2 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| 3 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| 4 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| 5 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| 6 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| 7 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| 8 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| 9 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| 10 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| 11 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| 12 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| 13 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| 14 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| 15 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| 16 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| 17 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| 18 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| 19 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| 20 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| 21 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| 22 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| 23 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| 24 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| 25 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| Total Base Contract | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |
| CHANGES | CHANGES ORDERS | | | | | | | |
| | | $0.00 | $0.00 | $0.00 | | $0.00 | #DIV/0! | $0.00 |
| | | $0.00 | $0.00 | $0.00 | | $0.00 | #DIV/0! | $0.00 |
| | Total Changes $0.00 | | | | $0.00 | | | |
| | TOTAL CONTRACT | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | #DIV/0! | $0.00 |

**Form W-9**
(Rev. December 2014)
Department of the Treasury
Internal Revenue Service

# Request for Taxpayer
# Identification Number and Certification

**Give Form to the requester. Do not send to the IRS.**

**Print or type**
**See Specific Instructions on page 2.**

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

**2** Business name/disregarded entity name, if different from above

**3** Check appropriate box for federal tax classification; check only **one** of the following seven boxes:

☐ Individual/sole proprietor or single-member LLC   ☐ C Corporation   ☐ S Corporation   ☐ Partnership   ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶ _____

**Note.** For a single-member LLC that is disregarded, do not check LLC; check the appropriate box in the line above for the tax classification of the single-member owner.

☐ Other (see instructions) ▶

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any) _____

Exemption from FATCA reporting code (if any) _____

*(Applies to accounts maintained outside the U.S.)*

**5** Address (number, street, and apt. or suite no.)

**6** City, state, and ZIP code

Requester's name and address (optional)

**7** List account number(s) here (optional)

## Part I   Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** If the account is in more than one name, see the instructions for line 1 and the chart on page 4 for guidelines on whose number to enter.

**Social security number**

☐☐☐ – ☐☐ – ☐☐☐☐

**or**

**Employer identification number**

☐☐ – ☐☐☐☐☐☐☐

## Part II   Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and

3. I am a U.S. citizen or other U.S. person (defined below); and

4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 3.

**Sign Here**

Signature of U.S. person ▶ _____

Date ▶ _____

# General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** Information about developments affecting Form W-9 (such as legislation enacted after we release it) is at *www.irs.gov/fw9*.

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following:

• Form 1099-INT (interest earned or paid)

• Form 1099-DIV (dividends, including those from stocks or mutual funds)

• Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)

• Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)

• Form 1099-S (proceeds from real estate transactions)

• Form 1099-K (merchant card and third party network transactions)

• Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)

• Form 1099-C (canceled debt)

• Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See What is backup withholding? on page 2.*

By signing the filled-out form, you:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income, and

4. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting, is correct. See *What is FATCA reporting?* on page 2 for further information.

Cat. No. 10231X

Form **W-9** (Rev. 12-2014)

**Note.** If you are a U.S. person and a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

• An individual who is a U.S. citizen or U.S. resident alien;

• A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States;

• An estate (other than a foreign estate); or

• A domestic trust (as defined in Regulations section 301.7701-7).

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax under section 1446 on any foreign partners' share of effectively connected taxable income from such business. Further, in certain cases where a Form W-9 has not been received, the rules under section 1446 require a partnership to presume that a partner is a foreign person, and pay the section 1446 withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid section 1446 withholding on your share of partnership income.

In the cases below, the following person must give Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States:

• In the case of a disregarded entity with a U.S. owner, the U.S. owner of the disregarded entity and not the entity;

• In the case of a grantor trust with a U.S. grantor or other U.S. owner, generally, the U.S. grantor or other U.S. owner of the grantor trust and not the trust; and

• In the case of a U.S. trust (other than a grantor trust), the U.S. trust (other than a grantor trust) and not the beneficiaries of the trust.

**Foreign person.** If you are a foreign person or the U.S. branch of a foreign bank that has elected to be treated as a U.S. person, do not use Form W-9. Instead, use the appropriate Form W-8 or Form 8233 (see Publication 515, Withholding of Tax on Nonresident Aliens and Foreign Entities).

**Nonresident alien who becomes a resident alien.** Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the payee has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement to Form W-9 that specifies the following five items:

1. The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.

2. The treaty article addressing the income.

3. The article number (or location) in the tax treaty that contains the saving clause and its exceptions.

4. The type and amount of income that qualifies for the exemption from tax.

5. Sufficient facts to justify the exemption from tax under the terms of the treaty article.

**Example.** Article 20 of the U.S.-China income tax treaty allows an exemption from tax for scholarship income received by a Chinese student temporarily present in the United States. Under U.S. law, this student will become a resident alien for tax purposes if his or her stay in the United States exceeds 5 calendar years. However, paragraph 2 of the first Protocol to the U.S.-China treaty (dated April 30, 1984) allows the provisions of Article 20 to continue to apply even after the Chinese student becomes a resident alien of the United States. A Chinese student who qualifies for this exception (under paragraph 2 of the first protocol) and is relying on this exception to claim an exemption from tax on his or her scholarship or fellowship income would attach to Form W-9 a statement that includes the information described above to support that exemption.

If you are a nonresident alien or a foreign entity, give the requester the appropriate completed Form W-8 or Form 8233.

## Backup Withholding

**What is backup withholding?** Persons making certain payments to you must under certain conditions withhold and pay to the IRS 28% of such payments. This is called "backup withholding." Payments that may be subject to backup withholding include interest, tax-exempt interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, payments made in settlement of payment card and third party network transactions, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

You will not be subject to backup withholding on payments you receive if you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return.

**Payments you receive will be subject to backup withholding if:**

1. You do not furnish your TIN to the requester,

2. You do not certify your TIN when required (see the Part II instructions on page 3 for details),

3. The IRS tells the requester that you furnished an incorrect TIN,

4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

5. You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See Exempt payee code on page 3 and the separate Instructions for the Requester of Form W-9 for more information.

Also see Special rules for partnerships above.

## What is FATCA reporting?

The Foreign Account Tax Compliance Act (FATCA) requires a participating foreign financial institution to report all United States account holders that are specified United States persons. Certain payees are exempt from FATCA reporting. See Exemption from FATCA reporting code on page 3 and the Instructions for the Requester of Form W-9 for more information.

## Updating Your Information

You must provide updated information to any person to whom you claimed to be an exempt payee if you are no longer an exempt payee and anticipate receiving reportable payments in the future from this person. For example, you may need to provide updated information if you are a C corporation that elects to be an S corporation, or if you no longer are tax exempt. In addition, you must furnish a new Form W-9 if the name or TIN changes for the account; for example, if the grantor of a grantor trust dies.

## Penalties

**Failure to furnish TIN.** If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**Civil penalty for false information with respect to withholding.** If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal penalty for falsifying information.** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**Misuse of TINs.** If the requester discloses or uses TINs in violation of federal law, the requester may be subject to civil and criminal penalties.

## Specific Instructions

### Line 1

You must enter one of the following on this line; do not leave this line blank. The name should match the name on your tax return.

If this Form W-9 is for a joint account, list first, and then circle, the name of the person or entity whose number you entered in Part I of Form W-9.

**a. Individual.** Generally, enter the name shown on your tax return. If you have changed your last name without informing the Social Security Administration (SSA) of the name change, enter your first name, the last name as shown on your social security card, and your new last name.

**Note.** ITIN applicant: Enter your individual name as it was entered on your Form W-7 application, line 1a. This should be the same as the name you entered on the Form 1040/1040A/1040EZ you filed with your application.

**b. Sole proprietor or single-member LLC.** Enter your individual name as shown on your 1040/1040A/1040EZ on line 1. You may enter your business, trade, or "doing business as" (DBA) name on line 2.

**c. Partnership, LLC that is not a single-member LLC, C Corporation, or S Corporation.** Enter the entity's name as shown on the entity's tax return on line 1 and any business, trade, or DBA name on line 2.

**d. Other entities.** Enter your name as shown on required U.S. federal tax documents on line 1. This name should match the name shown on the charter or other legal document creating the entity. You may enter any business, trade, or DBA name on line 2.

**e. Disregarded entity.** For U.S. federal tax purposes, an entity that is disregarded as an entity separate from its owner is treated as a "disregarded entity." See Regulations section 301.7701-2(c)(2)(iii). Enter the owner's name on line 1. The name of the entity entered on line 1 should never be a disregarded entity. The name on line 1 should be the name shown on the income tax return on which the income should be reported. For example, if a foreign LLC that is treated as a disregarded entity for U.S. federal tax purposes has a single owner that is a U.S. person, the U.S. owner's name is required to be provided on line 1. If the direct owner of the entity is also a disregarded entity, enter the first owner that is not disregarded for federal tax purposes. Enter the disregarded entity's name on line 2, "Business name/disregarded entity name." If the owner of the disregarded entity is a foreign person, the owner must complete an appropriate Form W-8 instead of a Form W-9. This is the case even if the foreign person has a U.S. TIN.

## Line 2

If you have a business name, trade name, DBA name, or disregarded entity name, you may enter it on line 2.

## Line 3

Check the appropriate box in line 3 for the U.S. federal tax classification of the person whose name is entered on line 1. Check only one box in line 3.

**Limited Liability Company (LLC).** If the name on line 1 is an LLC treated as a partnership for U.S. federal tax purposes, check the "Limited Liability Company" box and enter "P" in the space provided. If the LLC has filed Form 8832 or 2553 to be taxed as a corporation, check the "Limited Liability Company" box and in the space provided enter "C" for C corporation or "S" for S corporation. If it is a single-member LLC that is a disregarded entity, do not check the "Limited Liability Company" box; instead check the first box in line 3 "Individual/sole proprietor or single-member LLC."

## Line 4, Exemptions

If you are exempt from backup withholding and/or FATCA reporting, enter in the appropriate space in line 4 any code(s) that may apply to you.

**Exempt payee code.**
• Generally, individuals (including sole proprietors) are not exempt from backup withholding.

• Except as provided below, corporations are exempt from backup withholding for certain payments, including interest and dividends.

• Corporations are not exempt from backup withholding for payments made in settlement of payment card or third party network transactions.

• Corporations are not exempt from backup withholding with respect to attorneys' fees or gross proceeds paid to attorneys, and corporations that provide medical or health care services are not exempt with respect to payments reportable on Form 1099-MISC.

The following codes identify payees that are exempt from backup withholding. Enter the appropriate code in the space in line 4.

1—An organization exempt from tax under section 501(a), any IRA, or a custodial account under section 403(b)(7) if the account satisfies the requirements of section 401(f)(2)

2—The United States or any of its agencies or instrumentalities

3—A state, the District of Columbia, a U.S. commonwealth or possession, or any of their political subdivisions or instrumentalities

4—A foreign government or any of its political subdivisions, agencies, or instrumentalities

5—A corporation

6—A dealer in securities or commodities required to register in the United States, the District of Columbia, or a U.S. commonwealth or possession

7—A futures commission merchant registered with the Commodity Futures Trading Commission

8—A real estate investment trust

9—An entity registered at all times during the tax year under the Investment Company Act of 1940

10—A common trust fund operated by a bank under section 584(a)

11—A financial institution

12—A middleman known in the investment community as a nominee or custodian

13—A trust exempt from tax under section 664 or described in section 4947

The following chart shows types of payments that may be exempt from backup withholding. The chart applies to the exempt payees listed above, 1 through 13.

| IF the payment is for . . . | THEN the payment is exempt for . . . |
|---|---|
| Interest and dividend payments | All exempt payees except for 7 |
| Broker transactions | Exempt payees 1 through 4 and 6 through 11 and all C corporations. S corporations must not enter an exempt payee code because they are exempt only for sales of noncovered securities acquired prior to 2012. |
| Barter exchange transactions and patronage dividends | Exempt payees 1 through 4 |
| Payments over $600 required to be reported and direct sales over $5,000[1] | Generally, exempt payees 1 through 5[2] |
| Payments made in settlement of payment card or third party network transactions | Exempt payees 1 through 4 |

[1] See Form 1099-MISC, Miscellaneous Income, and its instructions.

[2] However, the following payments made to a corporation and reportable on Form 1099-MISC are not exempt from backup withholding: medical and health care payments, attorneys' fees, gross proceeds paid to an attorney reportable under section 6045(f), and payments for services paid by a federal executive agency.

**Exemption from FATCA reporting code.** The following codes identify payees that are exempt from reporting under FATCA. These codes apply to persons submitting this form for accounts maintained outside of the United States by certain foreign financial institutions. Therefore, if you are only submitting this form for an account you hold in the United States, you may leave this field blank. Consult with the person requesting this form if you are uncertain if the financial institution is subject to these requirements. A requester may indicate that a code is not required by providing you with a Form W-9 with "Not Applicable" (or any similar indication) written or printed on the line for a FATCA exemption code.

A—An organization exempt from tax under section 501(a) or any individual retirement plan as defined in section 7701(a)(37)

B—The United States or any of its agencies or instrumentalities

C—A state, the District of Columbia, a U.S. commonwealth or possession, or any of their political subdivisions or instrumentalities

D—A corporation the stock of which is regularly traded on one or more established securities markets, as described in Regulations section 1.1472-1(c)(1)(i)

E—A corporation that is a member of the same expanded affiliated group as a corporation described in Regulations section 1.1472-1(c)(1)(i)

F—A dealer in securities, commodities, or derivative financial instruments (including notional principal contracts, futures, forwards, and options) that is registered as such under the laws of the United States or any state

G—A real estate investment trust

H—A regulated investment company as defined in section 851 or an entity registered at all times during the tax year under the Investment Company Act of 1940

I—A common trust fund as defined in section 584(a)

J—A bank as defined in section 581

K—A broker

L—A trust exempt from tax under section 664 or described in section 4947(a)(1)

M—A tax exempt trust under a section 403(b) plan or section 457(g) plan

**Note.** You may wish to consult with the financial institution requesting this form to determine whether the FATCA code and/or exempt payee code should be completed.

## Line 5

Enter your address (number, street, and apartment or suite number). This is where the requester of this Form W-9 will mail your information returns.

## Line 6

Enter your city, state, and ZIP code.

## Part I. Taxpayer Identification Number (TIN)

**Enter your TIN in the appropriate box.** If you are a resident alien and you do not have and are not eligible to get an SSN, your TIN is your IRS individual taxpayer identification number (ITIN). Enter it in the social security number box. If you do not have an ITIN, see *How to get a TIN* below.

If you are a sole proprietor and you have an EIN, you may enter either your SSN or EIN. However, the IRS prefers that you use your SSN.

If you are a single-member LLC that is disregarded as an entity separate from its owner (see *Limited Liability Company (LLC)* on this page), enter the owner's SSN (or EIN, if the owner has one). Do not enter the disregarded entity's EIN. If the LLC is classified as a corporation or partnership, enter the entity's EIN.

**Note.** See the chart on page 4 for further clarification of name and TIN combinations.

**How to get a TIN.** If you do not have a TIN, apply for one immediately. To apply for an SSN, get Form SS-5, Application for a Social Security Card, from your local SSA office or get this form online at *www.ssa.gov.* You may also get this form by calling 1-800-772-1213. Use Form W-7, Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN, or Form SS-4, Application for Employer Identification Number, to apply for an EIN. You can apply for an EIN online by accessing the IRS website at *www.irs.gov/businesses* and clicking on Employer Identification Number (EIN) under Starting a Business. You can get Forms W-7 and SS-4 from the IRS by visiting IRS.gov or by calling 1-800-TAX-FORM (1-800-829-3676).

If you are asked to complete Form W-9 but do not have a TIN, apply for a TIN and write "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, generally you will have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

**Note.** Entering "Applied For" means that you have already applied for a TIN or that you intend to apply for one soon.

**Caution:** A disregarded U.S. entity that has a foreign owner must use the appropriate Form W-8.

Form W-9 (Rev. 12-2014)

## Part II. Certification

To establish to the withholding agent that you are a U.S. person, or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if items 1, 4, or 5 below indicate otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required). In the case of a disregarded entity, the person identified on line 1 must sign. Exempt payees, see *Exempt payee code* earlier.

**Signature requirements.** Complete the certification as indicated in items 1 through 5 below.

**1. Interest, dividend, and barter exchange accounts opened before 1984 and broker accounts considered active during 1983.** You must give your correct TIN, but you do not have to sign the certification.

**2. Interest, dividend, broker, and barter exchange accounts opened after 1983 and broker accounts considered inactive during 1983.** You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

**3. Real estate transactions.** You must sign the certification. You may cross out item 2 of the certification.

**4. Other payments.** You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills for merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services, payments made in settlement of payment card and third party network transactions, payments to certain fishing boat crew members and fishermen, and gross proceeds paid to attorneys (including payments to corporations).

**5. Mortgage interest paid by you, acquisition or abandonment of secured property, cancellation of debt, qualified tuition program payments (under section 529), IRA, Coverdell ESA, Archer MSA or HSA contributions or distributions, and pension distributions.** You must give your correct TIN, but you do not have to sign the certification.

## What Name and Number To Give the Requester

| For this type of account: | Give name and SSN of: |
|---|---|
| 1. Individual | The individual |
| 2. Two or more individuals (joint account) | The actual owner of the account or, if combined funds, the first individual on the account[1] |
| 3. Custodian account of a minor (Uniform Gift to Minors Act) | The minor[2] |
| 4. a. The usual revocable savings trust (grantor is also trustee) | The grantor-trustee[1] |
| b. So-called trust account that is not a legal or valid trust under state law | The actual owner[1] |
| 5. Sole proprietorship or disregarded entity owned by an individual | The owner[3] |
| 6. Grantor trust filing under Optional Form 1099 Filing Method 1 (see Regulations section 1.671-4(b)(2)(i) (A)) | The grantor* |

| For this type of account: | Give name and EIN of: |
|---|---|
| 7. Disregarded entity not owned by an individual | The owner |
| 8. A valid trust, estate, or pension trust | Legal entity[4] |
| 9. Corporation or LLC electing corporate status on Form 8832 or Form 2553 | The corporation |
| 10. Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 11. Partnership or multi-member LLC | The partnership |
| 12. A broker or registered nominee | The broker or nominee |
| 13. Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |
| 14. Grantor trust filing under the Form 1041 Filing Method or the Optional Form 1099 Filing Method 2 (see Regulations section 1.671-4(b)(2)(i) (B)) | The trust |

[1] List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished.

[2] Circle the minor's name and furnish the minor's SSN.

[3] You must show your individual name and you may also enter your business or DBA name on the "Business name/disregarded entity" name line. You may use either your SSN or EIN (if you have one), but the IRS encourages you to use your SSN.

[4] List first and circle the name of the trust, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity itself is not designated in the account title.) Also see *Special rules for partnerships* on page 2.
**\*Note.** Grantor also must provide a Form W-9 to trustee of trust.

**Note.** If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed.

## Secure Your Tax Records from Identity Theft

Identity theft occurs when someone uses your personal information such as your name, SSN, or other identifying information, without your permission, to commit fraud or other crimes. An identity thief may use your SSN to get a job or may file a tax return using your SSN to receive a refund.

To reduce your risk:

• Protect your SSN,

• Ensure your employer is protecting your SSN, and

• Be careful when choosing a tax preparer.

If your tax records are affected by identity theft and you receive a notice from the IRS, respond right away to the name and phone number printed on the IRS notice or letter.

If your tax records are not currently affected by identity theft but you think you are at risk due to a lost or stolen purse or wallet, questionable credit card activity or credit report, contact the IRS Identity Theft Hotline at 1-800-908-4490 or submit Form 14039.

For more information, see Publication 4535, Identity Theft Prevention and Victim Assistance.

Victims of identity theft who are experiencing economic harm or a system problem, or are seeking help in resolving tax problems that have not been resolved through normal channels, may be eligible for Taxpayer Advocate Service (TAS) assistance. You can reach TAS by calling the TAS toll-free case intake line at 1-877-777-4778 or TTY/TDD 1-800-829-4059.

**Protect yourself from suspicious emails or phishing schemes.** Phishing is the creation and use of email and websites designed to mimic legitimate business emails and websites. The most common act is sending an email to a user falsely claiming to be an established legitimate enterprise in an attempt to scam the user into surrendering private information that will be used for identity theft.

The IRS does not initiate contacts with taxpayers via emails. Also, the IRS does not request personal detailed information through email or ask taxpayers for the PIN numbers, passwords, or similar secret access information for their credit card, bank, or other financial accounts.

If you receive an unsolicited email claiming to be from the IRS, forward this message to *phishing@irs.gov*. You may also report misuse of the IRS name, logo, or other IRS property to the Treasury Inspector General for Tax Administration (TIGTA) at 1-800-366-4484. You can forward suspicious emails to the Federal Trade Commission at: *spam@uce.gov* or contact them at *www.ftc.gov/idtheft* or 1-877-IDTHEFT (1-877-438-4338).

Visit IRS.gov to learn more about identity theft and how to reduce your risk.

## Privacy Act Notice

Section 6109 of the Internal Revenue Code requires you to provide your correct TIN to persons (including federal agencies) who are required to file information returns with the IRS to report interest, dividends, or certain other income paid to you; mortgage interest you paid; the acquisition or abandonment of secured property; the cancellation of debt; or contributions you made to an IRA, Archer MSA, or HSA. The person collecting this form uses the information on the form to file information returns with the IRS, reporting the above information. Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation and to cities, states, the District of Columbia, and U.S. commonwealths and possessions for use in administering their laws. The information also may be disclosed to other countries under a treaty, to federal and state agencies to enforce civil and criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism. You must provide your TIN whether or not you are required to file a tax return. Under section 3406, payers must generally withhold a percentage of taxable interest, dividend, and certain other payments to a payee who does not give a TIN to the payer. Certain penalties may also apply for providing false or fraudulent information.

# M.D.C. 1900290-002

Final Audit Report                                                              2019-10-29

| | |
|---|---|
| Created: | 2019-10-24 |
| By: | Debra Gipson (debra@geisco.net) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA3wWx2N51xyoQ-iHNZIsM5XzpajPWTwtK |

## "M.D.C. 1900290-002" History

📄 Document created by Debra Gipson (debra@geisco.net)
2019-10-24 - 3:01:51 PM GMT- IP address: 70.62.248.227

✉ Document emailed to Jaime Delahunt (jaimemdcinc@gmail.com) for signature
2019-10-24 - 3:02:24 PM GMT

📄 Email viewed by Jaime Delahunt (jaimemdcinc@gmail.com)
2019-10-29 - 4:50:19 PM GMT- IP address: 66.102.8.39

✍ Document e-signed by Jaime Delahunt (jaimemdcinc@gmail.com)
Signature Date: 2019-10-29 - 5:04:31 PM GMT - Time Source: server- IP address: 69.123.234.40

✉ Document emailed to Jeff Martin (jm@geisco.net) for signature
2019-10-29 - 5:04:36 PM GMT

📄 Email viewed by Jeff Martin (jm@geisco.net)
2019-10-29 - 5:10:31 PM GMT- IP address: 70.62.248.227

✍ Document e-signed by Jeff Martin (jm@geisco.net)
Signature Date: 2019-10-29 - 5:10:54 PM GMT - Time Source: server- IP address: 70.62.248.227

✉ Document emailed to Kevin Watts (kevinw@geisco.net) for signature
2019-10-29 - 5:10:58 PM GMT

📄 Email viewed by Kevin Watts (kevinw@geisco.net)
2019-10-29 - 5:56:15 PM GMT- IP address: 70.62.248.227

✍ Document e-signed by Kevin Watts (kevinw@geisco.net)
Signature Date: 2019-10-29 - 5:57:54 PM GMT - Time Source: server- IP address: 70.62.248.227

✅ Signed document emailed to Kevin Watts (kevinw@geisco.net), Jaime Delahunt (jaimemdcinc@gmail.com), Debra Gipson (debra@geisco.net), and Jeff Martin (jm@geisco.net)
2019-10-29 - 5:57:54 PM GMT

Adobe Sign

# EXHIBIT   C

AMERICAN ARBITRATION ASSOCIATION
CONSTRUCTION INDUSTRY ARBITRATION TRIBUNAL

| | | |
|---|---|---|
| GEIS CONSTRUCTION SOUTH, LLC | ) | AAA CASE NO. 01-20-0005-2715 |
| | ) | |
| Claimant | ) | |
| | ) | |
| vs. | ) | FINAL AWARD |
| | ) | |
| MDC HOME IMPROVEMENTS, INC. | ) | |
| | ) | |
| Respondent | ) | |

We, THE UNDERSIGNED ARBITRATORS, having been designated in accordance

with the arbitration agreement provisions contained within the subcontracts, dated June 18,

2019 and October 22, 2019, entered into between Claimant, Geis Construction South, LLC,

represented by Aaron Evenchik, Esq. of the firm of Hahn, Loeser & Parks, LLP, and

Respondent, unrepresented, having been duly sworn, and having duly heard the proofs and

allegations of Claimant and the Respondent having failed to appear after due notice by mail in

accordance with the Rules of the American Arbitration Association, hereby AWARD as

follows:

## I. INTRODUCTION

On or about May 15, 2020, Claimant, Geis Construction South, LLC, filed its Demand

for Arbitration, pursuant to the Construction Arbitration Rules of the American Arbitration

Association.  Respondent, MDC Home Improvements, Inc., never responded to the Demand.

A Preliminary Hearing Scheduling Order was entered on August 14, 2020.  It provides

for the Award to be in the Standard form containing a concise written breakdown.

The hearing in this matter was held on March 11, 2021.  Respondent did not appear at the

hearing and the Panel proceeded to hear testimony after a sufficient period of time to allow

{01551701-1}

Respondent's representatives to appear.  Claimant offered numerous and extensive exhibits in support of its claims at the hearing, all of which were admitted into evidence.  Exhibit G established that Respondent was properly served with Claimant's Demand for Arbitration.

## II.  FACTUAL BACKGROUND

This dispute is about a project in Hoboken, NJ referred to as The Wonder Lofts ("the Project").  In connection with the Project, Claimant and Respondent entered into two subcontracts (Exhs. A-1, A-2), one with a scope including concrete, CMU, masonry, and site work/earth work, and the other with a scope of masonry/brick repair.  Eventually, Respondent, according to the testimony of Mr. Kevin Watts, Claimant's Project Manager, abandoned its work on the Project, leaving Claimant to complete it.  To this day, the Project continues.

There is no question that Respondent breached the subcontracts it entered into with Claimant causing it substantial damage, and the Panel so finds.  As to damages suffered by Claimant resulting from Respondent's breach of the two subcontracts, Claimant presented testimony from Mr. Watts and extensive documentary evidence, summarized in Exhibit D as follows:

| **MDC Concrete Summary**          2/24/2021 | |
|---|---|
| MDC Contract Amount | $7,678,660.00 |
| MDC Change Orders | ($11,163,439.51) |
| Revised Contract Value | ($3,484,779.51) |
| MDC Previously Paid | $5,536,775.19 |
| Current Amount owed to Geis from MDC | ($9,021,554.70) |
| Projected Amount to Complete (Sitework, D & E Roof, Punchlist Work) | $977,355.88 |
| Projected MDC Deficit | ($9,998,910.58) |

{01551701-1}

2

**Masonry Summary           2/24/2021**

| | |
|---|---|
| MDC Contract Value | $1,013,758.22 |
| MDC Change Orders - Cost to Complete | ($774,114.36) |
| Revised Contract Value | $239,643.86 |
| MDC Previously Paid | $130,447.14 |
| Projected Amount to Complete (Balance of J&G Contract) | $65,000.00 |
| MDC Deficit | $44,196.72 |

**Total Deficit Between Contracts**      **($9,954,713.86)**

The Panel finds that Claimant proved it was damaged in the amount of $9,954,713.86, as shown on Exhibit D.

Claimant has also made a claim for attorney's fees, pursuant to Sections 9.17 and 18.3 of the subcontracts. Exhibit D and written exhibits supported by oral testimony from Claimant's counsel were admitted into evidence establishing that Claimant's attorney's fees total $45,139.75. The Panel finds that both the hourly rates charged and the amount of work done by Claimant's law firm were reasonable and necessary. Claimant, therefore, is entitled to recover its attorney's fees.

III. <u>AWARD</u>

The Panel awards Claimant damages plus attorney's fees in the total amount of $9,999,853.61.

The administrative fees of the American Arbitration Association totaling $14,700.00 and the compensation of the Arbitrators totaling $7,277.50, shall be borne by Respondent.

{01551701-1}

3

Therefore, Respondent shall reimburse Claimant the sum of $21,977.50, representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by Claimant.

The above sums are to be paid on or before ten (10) days from the date of this Award. Thereafter, interest shall accrue at the statutory rate then in effect.

This Award is in full settlement of all claims submitted to this Arbitration. All claims not expressly granted herein are hereby denied.


_____          3-29-21
ARBITRATOR, DONALD W. GREGORY             _____
                                          DATE


_____          _____
ARBITRATOR, JOSEPH B. JEROME              DATE


_____          _____
ARBITRATOR, DAVID A. SCHAEFER             DATE


{01551701-1}

4

Therefore, Respondent shall reimburse Claimant the sum of $21,977.50, representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by Claimant.

The above sums are to be paid on or before ten (10) days from the date of this Award. Thereafter, interest shall accrue at the statutory rate then in effect.

This Award is in full settlement of all claims submitted to this Arbitration. All claims not expressly granted herein are hereby denied.

_____          _____
ARBITRATOR, DONALD W. GREGORY                         DATE

_____          _____
ARBITRATOR, JOSEPH B. JEROME                           DATE

_____          _____
ARBITRATOR, DAVID A. SCHAEFER                          DATE

{01551701-1}

4

JS 44   (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Geis Construction South, LLC

**(b)** County of Residence of First Listed Plaintiff   Portage County, OH
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Chris Nucifora, Kaufman Dolowich Voluck LLP
25 Main Street, Suite 500, Hackensack, NJ 07601
cnucifora@kdvlaw.com   201.488.6655

## DEFENDANTS

MDC Home Improvements, Inc.

County of Residence of First Listed Defendant   Nassau County, NY
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government
Plaintiff

☐ 2 U.S. Government
Defendant

☐ 3 Federal Question
*(U.S. Government Not a Party)*

☒ 4 Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                     *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | **FEDERAL TAX SUITS** | ☒ 896 Arbitration |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act<br><br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | ☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C § 1332(a)(1)
Brief description of cause:
Application to Confirm Arbitration Award

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE   Judge Denis R. Hurley
DOCKET NUMBER   2:20-cv-03834

DATE
4/30/2021

SIGNATURE OF ATTORNEY OF RECORD
/s/ Mr. Christopher Nucifora, Esq.

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

# CERTIFICATION OF ARBITRATION ELIGIBILITY

Local Arbitration Rule 83.7 provides that with certain exceptions, actions seeking money damages only in an amount not in excess of $150,000, exclusive of interest and costs, are eligible for compulsory arbitration. The amount of damages is presumed to be below the threshold amount unless a certification to the contrary is filed.

Case is Eligible for Arbitration ☐

I, _Christopher Nucifora_____, counsel for ____Geis Construction South, LLC____, do hereby certify that the above captioned civil action is ineligible for compulsory arbitration for the following reason(s):

☑ monetary damages sought are in excess of $150,000, exclusive of interest and costs,

☐ the complaint seeks injunctive relief,

☐ the matter is otherwise ineligible for the following reason

## DISCLOSURE STATEMENT - FEDERAL RULES CIVIL PROCEDURE 7.1

Identify any parent corporation and any publicly held corporation that owns 10% or more or its stocks:

Geis Construction South, LLC is 100% owned by Geis Construction, Inc.

There is no publicly-held corporation owning 10% or more of Geis Construction South, LLC.

## RELATED CASE STATEMENT (Section VIII on the Front of this Form)

Please list all cases that are arguably related pursuant to Division of Business Rule 50.3.1 in Section VIII on the front of this form. Rule 50.3.1 (a) provides that "A civil case is "related" to another civil case for purposes of this guideline when, because of the similarity of facts and legal issues or because the cases arise from the same transactions or events, a substantial saving of judicial resources is likely to result from assigning both cases to the same judge and magistrate judge." Rule 50.3.1 (b) provides that " A civil case shall not be deemed "related" to another civil case merely because the civil case: (A) involves identical legal issues, or (B) involves the same parties." Rule 50.3.1 (c) further provides that "Presumptively, and subject to the power of a judge to determine otherwise pursuant to paragraph (d), civil cases shall not be deemed to be "related" unless both cases are still pending before the court."

## NY-E DIVISION OF BUSINESS RULE 50.1(d)(2)

1.) Is the civil action being filed in the Eastern District removed from a New York State Court located in Nassau or Suffolk County? ☐ Yes ☑ No

2.) If you answered "no" above:
a) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in Nassau or Suffolk County? ☐ Yes ☑ No

b) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in the Eastern District? ☐ Yes ☑ No

c) If this is a Fair Debt Collection Practice Act case, specify the County in which the offending communication was received: ____.

If your answer to question 2 (b) is "No," does the defendant (or a majority of the defendants, if there is more than one) reside in Nassau or Suffolk County, or, in an interpleader action, does the claimant (or a majority of the claimants, if there is more than one) reside in Nassau or Suffolk County? ☑ Yes ☐ No
*(Note: A corporation shall be considered a resident of the County in which it has the most significant contacts).*

## BAR ADMISSION

I am currently admitted in the Eastern District of New York and currently a member in good standing of the bar of this court.

☑ Yes ☐ No

Are you currently the subject of any disciplinary action (s) in this or any other state or federal court?

☐ Yes (If yes, please explain) ☑ No

I certify the accuracy of all information provided above.

**Signature:** _Christopher Nucifora_____

# **Defendant's Exhibit 2**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
-------------------------------------------------------------------X
JOSE VELAZQUEZ,

                                  Plaintiff,

        - against -

MOXEY RIGBY LLC, and JOBCO, INC. and
THE FREEPORT AFFORDABLE HOUSING
DEVELOPMENT FUND CORP.,
                             Defendants.
-------------------------------------------------------------------X

MOXEY RIGBY LLC, JOBCO, INC., and
THE FREEPORT AFFORDABLE HOUSING
DEVELOPMENT FUND CORP.,

                        Third-Party Plaintiffs,

        - against –

MDC HOME IMPROVEMENTS, INC.

                        Third-Party Defendant

-------------------------------------------------------------------X

**Index No.: 605528/2019**

**STATEMENT PURSUANT
TO CPLR 3042(b)**

**COUNSEL:**

      **PLEASE TAKE NOTICE**, that the Defendants/Third-Party Plaintiffs, MOXEY RIGBY

LLC, JOBCO, INC. and THE FREEPORT AFFORDABLE HOUSING DEVELOPMENT

FUND, CORP., have impleaded the above-named Third-Party Defendant, MDC HOME

IMPROVEMENTS, INC., and that henceforth, the caption of this action shall be set forth as

above.

      **PLEASE TAKE FURTHER NOTICE**, that this action has not been placed upon the

trial calendar of this Court. A copy of this statement is being served upon all parties to this

action.

Dated: Mineola, New York
      November 13, 2019

**HAVKINS ROSENFELD RITZERT**
**& VARRIALE, LLP**

By: _____
            Richard Harms, Esq.
*Attorneys for Defendants/Third-Party*
*Plaintiffs*
MOXEY RIGBY LLC, JOBCO, INC. and
THE FREEPORT AFFORDABLE HOUSING
DEVELOPMENT FUND CORP.
114 Old Country Road
Mineola, New York 11501
Telephone: (516) 620-1700
HRRV File No. 10310-000442

TO:

Kenneth Klein
**GORAYEB & ASSOCIATES, P.C.**
Attorney for Plaintiff
JOSE VELAZQUEZ
100 William Street, Suite 1900
New York, New York 10038
(212) 257-9222/A10287-LL/JV
(212) 962-5418-Facsimile

**MDC HOME IMPROVEMENTS, INC.**
151 S. 11th Street
Lindenhurst, New York 11757
Via (Personal Service)
& Via Secretary of State

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
-------------------------------------------------------------------X
JOSE VELAZQUEZ,                                    **Index No.: 605528/2019**

                              Plaintiff,           **THIRD-PARTY**
                                                   **SUMMONS**

MOXEY RIGBY LLC, and JOBCO, INC., and
THE FREEPORT AFFORDABLE HOUSING
DEVELOPMENT FUND CORP.,
                              Defendants.
-------------------------------------------------------------------X
MOXEY RIGBY LLC, JOBCO, INC. and
THE FREEPORT AFFORDABLE HOUSING
DEVELOPMENT FUND CORP.,

                              Third-Party Plaintiffs,

               - against –

MDC HOME IMPROVEMENTS, INC.

                              Third-Party Defendant

-------------------------------------------------------------------X
**TO MDC HOME IMPROVEMENTS, INC.:**

       **YOU ARE HEREBY SUMMONED** and required to answer the Third-Party Complaint

of the Defendants/Third-Party Plaintiffs, MOXEY RIGBY LLC, JOBCO, INC. and

THE FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., a copy of

which is hereby served upon you, and to serve copies of your Answer upon the undersigned,

Havkins Rosenfeld Ritzert & Varriale, LLP, 114 Old Country Road, Suite 300, Mineola, New

York 11501, attorneys for defendants/third-party plaintiffs, MOXEY RIGBY LLC, JOBCO,

INC. and THE FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., ; and

upon Plaintiff's counsel, Gorayeb & Associates, P.C., 100 William Street, Suite 1900, New

York, New York 10038, within twenty (20) days after service of this summons, exclusive of the

day of service, or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York. In case of your failure to answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: Mineola, New York
November 13, 2019

HAVKINS ROSENFELD RITZERT
& VARRIALE, LLP
By: _____
Richard Harms, Esq.
Defendants/Third-Party Plaintiffs, MOXEY RIGBY
LLC, JOBCO, INC. and THE FREEPORT
AFFORDABLE HOUSING DEVELOPMENT
FUND CORP.,
114 Old Country Road
Mineola, New York 11501
Telephone: (516) 620-1700
HRRV File No. 10310-000442

TO:

Kenneth Klein
GORAYEB & ASSOCIATES, P.C.
Attorney for Plaintiff
JOSE VELAZQUEZ
100 William Street, Suite 1900
New York, New York 10038
(212) 257-9222/A10287-LL/JV
(212) 962-5418-Facsimile

MDC HOME IMPROVEMENTS, INC.
151 S. 11th Street
Lindenhurst, New York 11757
Via (Personal Service)
& Via Secretary of State

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
-------------------------------------------------------------------X
JOSE VELAZQUEZ,

         Plaintiff,

**Index No.: 605528/2019**

**THIRD-PARTY**
**COMPLAINT**

MOXEY RIGBY LLC, and JOBCO, INC.,
THE FREEPORT AFFORDABLE HOUSING
DEVELOPMENT FUND CORP.,
         Defendants.
-------------------------------------------------------------------X

MOXEY RIGBY LLC, JOBCO, INC. and
THE FREEPORT AFFORDABLE HOUSING
DEVELOPMENT FUND CORP.,

         Third-Party Plaintiffs,

   - against –

MDC HOME IMPROVEMENTS, INC.

         Third-Party Defendant

-------------------------------------------------------------------X

    Defendants/Third-Party Plaintiffs, MOXEY RIGBY LLC, JOBCO, INC. and

THE FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., by their

attorneys, HAVKINS ROSENFELD RITZERT & VARRIALE, LLP, as and for its Third-Party

Complaint against MDC HOME IMPROVEMENTS, INC., respectfully allege, upon information

and belief, as follows:

    1.   That at all times mentioned herein, Defendant/Third-Party Plaintiff, MOXEY

RIGBY LLC, is a domestic limited liability company organized and existing under and by virtue

of the laws of the State of New York, and authorized to do business in the State of New York.

2. That at all times mentioned herein, defendant/third-party plaintiff, JOBCO INCORPORATED ("JOBCO") is and was a domestic corporation organized and existing under and by virtue of the laws of the State of New York, and authorized to do business in the State of New York.

3. At all times mentioned herein, defendant/third-party plaintiff, THE FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP. ("FAHDF") is and was a domestic not for profit corporation organized and existing under and by virtue of the laws of the State of New York, authorized to do business in the State of New York.

4. At all times mentioned herein, third-party defendant, MDC HOME IMPROVEMENTS, INC. (hereinafter "MDC") is and was a domestic business corporation organized and existing under and by virtue of the laws of the State of New York, and authorized to do business in the State of New York.

5. That at all times mentioned herein, third-party defendant, MDC was and is a foreign corporation authorized to do business under and by virtue of the laws of the State of New York.

6. At all times mentioned herein, third-party defendant, MDC did domestic business under and by virtue of the laws of the State of New York.

7. That at all times mentioned herein, third-party defendant MDC maintained its principal place of business at 17B Seaman Avenue, Bethpage, New York 11714.

8. That at all times mentioned herein, third-party defendant MDC maintained its principal place of business at 151 South 11th Street, Lindenhurst, New York 11751.

2

9. At all times mentioned herein, third-party defendant MDC transacted business within the State of New York.

10. That without admitting any of the allegations contained therein, the plaintiff JOSE VELAZQUEZ commenced an action in the Supreme Court, State of New York, County of Nassau, against MOXEY and JOBCO by the filing of a Summons and Verified Complaint, to recover for personal injuries, a copy of which is annexed hereto as *Exhibit "A".*

11. That without admitting any of the allegations contained therein, the plaintiff JOSE VELAZQUEZ, commenced an action in the Supreme Court, State of New York, County of Nassau against FAHDF by the filing of a summons and complaint to recover for personal injuries, a copy of which is annexed hereto as *Exhibit "B".*

12. That MOXEY and JOBCO interposed an Answer on or about November 13, 2018, a copy of which is annexed hereto as *Exhibit "C".*

13. That FAHDF interposed an Answer on or about May 29, 2019, a copy of which is annexed hereto as *Exhibit "D".*

14. That both actions were consolidated by a "So Ordered" Stipulation signed by Judge Libert on October 29, 2019 under index #605528/2019.

15. That without admitting any of the allegations contained therein, in the plaintiff's Verified Complaints, he claims to have been injured on August 16, 2018 while working at a construction project at 12 Buffalo Avenue, Freeport, New York.

16. That in or about July of 2018, MDC entered into a contract or agreement with JOBCO wherein MDC agreed to provide contracting services for the construction project at 12 Buffalo Avenue, Freeport, New York.

3

17. That in or about July of 2018, MDC contracted with Commercial Contracting Services, Inc. for work at the construction project at 12 Buffalo Avenue, Freeport, New York.

18. That without admitting any of the plaintiff's allegations, the plaintiff alleges that he was injured performing work at 12 Buffalo Avenue, Freeport, New York.

19. That the contract or agreement between Jobco and MDC, referenced in paragraph "16" was in full force and effect at all relevant times, and applied to the work that the plaintiff was performing when the alleged accident occurred.

20. That without admitting any of the plaintiff's allegations, the plaintiff was performing work in accordance with the terms of the contracts or agreements between Jobco and MDC referenced in paragraph "16".

21. That without admitting any of the plaintiff's allegations, the plaintiff was performing work in accordance with the terms of the contracts or agreements between MDC and Commercial Contracting referenced in paragraph "16".

22. That at all times mentioned herein, including August 16, 2018, MDC was present at the construction project at 12 Buffalo Avenue, Freeport, New York.

23. That at all times mentioned herein, including August 16, 2018, MDC controlled the work that the plaintiff was allegedly engaged in at the construction project at 12 Buffalo Avenue, Freeport, New York.

24. That at all times mentioned herein, including August 16, 2018, MDC supervised the work that the plaintiff was allegedly engaged in at the construction project at 12 Buffalo Avenue, Freeport, New York.

4

25.    That at all times mentioned herein, including August 16, 2018, MDC managed the work that the plaintiff was allegedly engaged in at the construction project at 12 Buffalo Avenue, Freeport, New York.

26.    That at all times mentioned herein, including August 16, 2018, MDC was responsible for maintaining and did maintain the construction project at 12 Buffalo Avenue, Freeport, New York.

27.    That at all times mentioned herein, including August 16, 2018, MDC was responsible for site safety at the construction project at 12 Buffalo Avenue, Freeport, New York, including but not limited to the safety of plaintiff JOSE VELAZQUEZ.

28.    That at all times mentioned herein, including August 16, 2018, the contract between JOBCO and MDC was in full force and effect.

### AS AND FOR A FIRST CAUSE OF ACTION AGAINST MDC

29.    MOXEY RIGBY LLC, JOBCO, INC. and THE FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP. repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "27" inclusive and with the same force and effect as if the same were more fully set forth at length herein.

30.    If the plaintiff sustained damages and/or injuries in the manner alleged in the Verified Complaints, all of which is denied by the third-party plaintiffs, such damages and/or injuries were caused by reason of the negligence, acts and/or omissions MDC, and not by any negligence or culpable conduct of the part of the third-party plaintiffs.

31.    That without admitting the existence of the same, the plaintiff sustained a "grave injury" as defined by Section 11 of the Workers' Compensation Law.

5

32. By reason of the foregoing, the third-party plaintiffs are entitled to common law indemnification from, and to have judgment over and against MDC for all or part of any verdict or judgment that plaintiff may recover against the third-party plaintiffs.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST MDC

33. MOXEY RIGBY LLC, JOBCO, INC. and THE FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP. repeat, reiterate, and reallege each and every allegation contained in paragraphs "1" through "31" inclusive and with the same force and effect as if the same were more fully set forth at length herein.

34. If the plaintiff sustained damages and/or injuries in the manner alleged in the Verified Complaints, all of which is denied by the third-party plaintiffs, such damages and/or injuries were caused by reason of the negligence, acts and/or omissions MDC and not by any negligence or culpable conduct of the third-party plaintiffs.

35. That without admitting the existence of the same, the plaintiff sustained a "grave injury" as defined by Section 11 of the Workers' Compensation Law.

36. By reason of the foregoing, the third-party plaintiffs are entitled to contribution from, and to have judgment over and against MDC for all or part of any verdict or judgment that plaintiff may recover against the third-party plaintiffs, for Common Law contribution.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST MDC

37. MOXEY RIGBY LLC, JOBCO, INC. and THE FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP. repeat, reiterate, and reallege each and every allegation contained in paragraphs "1" through "35" inclusive and with the same force and effect as if same were more fully set forth at length herein.

6

38.     That on or before August 16, 2018, third-party defendant MDC entered into a contract and/or agreement with JOBCO. See *Exhibit "C".*

39.     That pursuant to said contract and/or agreement, third-party defendant MDC is obligated to defend, indemnify and hold harmless defendants/third-party plaintiffs from and against the claims asserted in plaintiff's Verified Complaints.

40.     That said contract and/or agreement was in effect on August 16, 2018.

41.     That if plaintiff sustained any of the injuries and/or damages alleged and complained of, in the manner alleged in the Verified Complaints, all of which is denied by defendants/third-party plaintiffs, such injuries and damages were caused wholly and solely by reason of the negligence, recklessness, carelessness and/or culpable conduct of third-party defendant MDC, its agents, servants and/or employees, without any negligence or culpable conduct on the part of the defendants/third-party plaintiffs.

42.     By reason of the foregoing, defendants/third-party plaintiffs are entitled to contractual indemnification from, and to have judgment over and against third-party defendant MDC for all or part of any judgment that plaintiff may recover against defendants/third-party plaintiffs.

**AS AND FOR A FOURTH CAUSE OF ACTION AGAINST MDC**

43.     MOXEY RIGBY LLC, JOBCO, INC. and THE FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP. repeat, reiterate, and reallege each and every allegation contained in paragraphs "1" through "41" inclusive and with the same force and effect as if the same were more fully set forth at length herein.

7

44.    That on or before August 16, 2018, third-party defendant MDC entered into a contract and/or agreement with JOBCO. See *Exhibit "C"*.

45.    That pursuant to said contract and/or agreement, third-party defendant MDC is obligated to defend, indemnify and hold harmless defendants/third-party plaintiffs from and against the claims asserted in the plaintiff's Verified Complaints.

46.    That said contract and/or agreement was in effect on August 16, 2018.

47.    That if plaintiff sustained any of the injuries and/or damages alleged and complained of, in the manner alleged in the Verified Complaints, all of which is denied by defendants/third-party plaintiffs such injuries and damages were caused wholly and solely by reason of the negligence, recklessness, carelessness and/or culpable conduct of third-party defendant MDC, its agents, servants and/or employees, without any negligence or culpable conduct on the part of defendants/third-party plaintiffs.

48.    By reason of the foregoing, defendants/third-party plaintiffs are entitled to contractual contribution from, and to have judgment over and against third-party defendant MDC for all or part of any judgment that plaintiff may recover against defendants/third-party plaintiffs.

## AS AND FOR A FIFTH CAUSE OF ACTION AGAINST MDC

49.    MOXEY RIGBY LLC, JOBCO, INC. and THE FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP. repeat, reiterate, and reallege each and every allegation contained in paragraphs "1" through "47" inclusive and with the same force and effect as if the same were more fully set forth at length herein.

50.    That on or before August 16, 2018, third-party defendant MDC entered into a contract and/or agreement with JOBCO. See *Exhibit "C"*.

8

51. That pursuant to said contract and/or agreement, third-party defendant MDC was obligated to procure insurance coverage in favor of defendants/third-party plaintiffs that would have covered the defendants/third-party plaintiffs for the claims asserted in plaintiff's Verified Complaints.

52. That said contract and/or agreement was in effect at all relevant times.

53. That third-party defendant MDC breached said contract and/or agreement by failing to procure the requisite insurance coverage.

54. By reason of the foregoing, defendants/third-party plaintiffs are entitled to recover damages from third-party defendant MDC including but not limited to all sums expended in the defense of this action and/or in satisfaction of any settlement or judgment.

## AS AND FOR A SIXTH CAUSE OF ACTION AGAINST MDC

55. MOXEY RIGBY LLC, JOBCO, INC. and THE FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP. repeat, reiterate, and reallege each and every allegation contained in paragraphs "1" through "53" inclusive and with the same force and effect as if the same were more fully set forth at length herein.

56. That on or before August 16, 2018, third-party defendant MDC entered into a contract and/or agreement with JOBCO. See *Exhibit "C".*

57. That said contract and/or agreement was in effect on August 16, 2018.

58. In said contract and/or agreement MDC agreed to defend and indemnify defendants/third-party plaintiffs and otherwise fully reimburse defendants/third-party plaintiffs for all costs, fees and expenses incurred in this lawsuit including but not limited to satisfaction of

9

any judgment, payment of any settlement and payment of attorneys' fees and other costs and expenses incurred.

59. That MDC agreed to procure insurance coverage for the benefit of defendants/third-party plaintiffs on a primary, non-contributory basis.

60. That if plaintiff sustained damages in the manner alleged in plaintiff's Verified Complaints, all of which is denied by defendants/third-party plaintiffs and should the plaintiff recover judgment against the defendants/third-party plaintiffs then the third-party plaintiffs shall be entitled to full indemnification from MDC for all claims asserted in plaintiff's Verified Complaints.

**WHEREFORE**, defendants/third-party plaintiffs, MOXEY RIGBY LLC, JOBCO, INC. and THE FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., hereby demand judgment as follows:

a. For common-law indemnification against third-party defendant, MDC, for its proportional share of liability as determined in accordance with the relative culpability of each party including costs, disbursements and expenses including reasonable attorneys' fees;

b. For common law contribution against third-party defendant, MDC for the full amount of any recovery, judgment or verdict obtained against the defendants/third-party plaintiffs, MOXEY RIGBY LLC, JOBCO, INC. and THE FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., by reason of the allegations set forth in the plaintiff's Verified Complaints, together with all costs, disbursements, expenses, including attorneys' fees incurred by the defendants/third-party plaintiffs; and

c. For contractual indemnification against third-party defendant, MDC for the full amount of any recovery, judgment or verdict obtained against the defendants/third-party plaintiffs, MOXEY RIGBY LLC, JOBCO, INC. and THE FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., by reason of the allegations set forth in the plaintiff's Verified Complaints, together with all costs, disbursements, expenses, including attorneys' fees incurred by the defendants/third-party plaintiffs; and

d. For contractual contribution against third-party defendant, MDC for the full amount of any recovery, judgment or verdict obtained against the defendants/third-party

plaintiffs, MOXEY RIGBY LLC, JOBCO, INC. and THE FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., by reason of the allegations set forth in the plaintiff's Verified Complaints, together with all costs, disbursements, expenses, including attorneys' fees incurred by the defendants/third-party plaintiffs;

     e. For breach of contract against third-party defendant, MDC for the full amount of any recovery, judgment or verdict obtained against the defendants/third-party plaintiffs, MOXEY RIGBY LLC, JOBCO, INC. and THE FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., by reason of the allegations set forth in the plaintiff's Verified Complaints, together with all costs, disbursements, expenses, including attorneys' fees incurred by the defendants/third-party plaintiffs;

     f. For indemnification against third-party defendant, MDC for the full amount of any recovery, judgment or verdict obtained against the defendants/third-party plaintiffs, MOXEY RIGBY LLC, JOBCO, INC. and THE FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., by reason of the allegations set forth in the plaintiff's Verified Complaints, together with all costs, disbursements, expenses, including attorneys' fees incurred by the defendants/third-party plaintiffs; and

     g. For such other relief as this Court deems just and proper.

Dated: Mineola, New York
      November 13, 2019

          **HAVKINS ROSENFELD RITZERT & VARRIALE, LLP**

          By: _____
               Richard Harms, Esq.
          *Attorneys for Defendants/Third-Party Plaintiffs*
          MOXEY RIGBY LLC, JOBCO, INC. and THE FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP.
          114 Old Country Road
          Mineola, New York 11501
          Telephone: (516) 620-1700
          HRRV File No. 10310-000442

11

## ATTORNEY CERTIFICATION
## PURSUANT TO 22 NYCRR 130-1.1a

Pursuant to 22 NYCRR 130-1.1a, the undersigned, an attorney admitted to practice in the Courts of New York State, certifies that, upon information and belief, and after reasonable inquiry, the contentions contained in the annexed document(s) are not frivolous as defined by Section 130-1.1(c) and was not obtained through illegal conduct, nor was it obtained in violation of 22 NYCRR 1200.41-a.

Dated:                                November 13, 2019

Signature:

Print Signer's Name:          Richard Harms, Esq.

# Defendant's Exhibit 3

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
------------------------------------------------------------------------x

GERSON VASQUEZ,

                                  Plaintiff,

                -against-

MOXEY RIGBY LLC; G&G MOXEY RIGBY LLC;
MOXEY RIGBY DEVELOPER LLC; G&G MOXEY
RIGBY DEVELOPER LLC; MOXEY RIGBY
MANAGERS LLC; JOBCO INC.; MDC HOME
IMPROVEMENTS, INC.; K-SQUARE DEVELOPERS,
INC.; COMMERCIAL CONTRACTING SERVICES INC.;
FREEPORT AFFORDABLE HOUSING
DEVELOPMENT FUND CORP.; THE FREEPORT
HOUSING AUTHORITY; THE INCORPORATED
VILLAGE OF FREEPORT; and THE COUNTY OF
NASSAU,

                             Defendants.
------------------------------------------------------------------------X

**SUMMONS**

Index No.:

Date Filed:

TO THE ABOVE-NAMED DEFENDANTS:

       YOU ARE HEREBY SUMMONED to answer the Complaint in this action, and to serve a copy of your Answer, or if the Complaint is not served with this Summons, to serve a Notice of Appearance on the their attorney within twenty days after the service of this Summons exclusive of the day of service, where service is made by delivery upon you personally within the state, or within thirty days after completion of service where service is made in any other manner. In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

       This basis of venue is the residence of Defendant, THE FREEPORT HOUSING AUTHORITY.

Defendant, THE FREEPORT HOUSING AUTHORITY, resides and maintains its principal office at 240 South Main Street, Freeport, NY 11520.

Dated: New York, New York
      May 3, 2019

Yours, etc.,

_____
Ernest N. Reece, Esq.
**MILLER, LEIBY & ASSOCIATES, P.C.**
*Attorneys for Plaintiff*
*Gerson Vasquez*
32 Broadway, 13th Floor
New York, NY 10004
(212) 227-4200

Defendants' Addresses:

Moxey Rigby LLC
*Pro Se*
50 Jericho Quadrangle, Suite 200
Jericho, NY 11753

G&G Moxey Rigby LLC
*Pro Se*
50 Jericho Quadrangle, Suite 200
Jericho, NY 11753

Moxey Rigby Developer LLC
*Pro Se*
50 Jericho Quadrangle, Suite 200
Jericho, NY 11753

G&G Moxey Rigby Developer LLC
*Pro Se*
50 Jericho Quadrangle, Suite 200
Jericho, NY 11753

Moxey Rigby Managers LLC
*Pro Se*
50 Jericho Quadrangle, Suite 200
Jericho, NY 11753

2 / 4

Jobco Inc.
*Pro Se*
277 Northern Blvd, Suite 203
Great Neck, NY  11021

MDC Home Improvements, Inc.
*Pro Se*
17B Seaman Avenue
Bethpage, NY  11714

MDC Home Improvements, Inc.
*Pro Se*
13 Baldwin Place
Bethpage, NY  11714-3703

MDC Home Improvements, Inc.
*Pro Se*
57 Brenner Avenue
Bethpage, NY  11714

K-Square Developers, Inc.
*Pro Se*
118 49th Street
Brooklyn, NY  11232

Commercial Contracting Services Inc.
*Pro Se*
15 Sherman Avenue
Bethpage, NY  11714

Freeport Affordable Housing Development Fund Corp.
*Pro Se*
c/o Freeport Housing Authority
240 South Main Street
Freeport, NY 11520

The Freeport Housing Authority
*Pro Se*
240 South Main Street
Freeport, NY  11520

The Incorporated Village of Freeport
*Pro Se*

46 North Ocean Avenue
Freeport, NY  11520

County of Nassau
*Pro Se*
240 Old Country Road
Mineola, NY  11501

4 / 4

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
------------------------------------------------------------------------X

GERSON VASQUEZ,

                                Plaintiff,

                 -against-

MOXEY RIGBY LLC; G&G MOXEY RIGBY LLC;
MOXEY RIGBY DEVELOPER LLC; G&G MOXEY
RIGBY DEVELOPER LLC; MOXEY RIGBY
MANAGERS LLC; JOBCO INC.; MDC HOME
IMPROVEMENTS, INC.; K-SQUARE DEVELOPERS,
INC.; COMMERCIAL CONTRACTING SERVICES INC.;
FREEPORT AFFORDABLE HOUSING
DEVELOPMENT FUND CORP.; THE FREEPORT
HOUSING AUTHORITY; THE INCORPORATED
VILLAGE OF FREEPORT; and THE COUNTY OF
NASSAU,

                                Defendants.
------------------------------------------------------------------------X

**COMPLAINT**

Index No.:

Date Filed:

**JURY TRIAL DEMANDED**

       GERSON VASQUEZ, by his attorneys, MILLER, LEIBY & ASSOCIATES, P.C., complaining of the Defendants herein, respectfully show to the Court, and allege as follows:

NATURE OF THE ACTION

       1.      This is an action to recover money damages arising out of negligence and violations of Labor Law §§ 200, 240(1), and 241(6) resulting in personal injuries to Plaintiff, GERSON VASQUEZ, while at the interior of the first floor of the building(s) under the construction/replacement/installation project occurring at, within and about the northernmost of the three buildings located at 12 Buffalo Avenue/195 East Merrick Road in Freeport, New York 11520 (hereinafter collectively referred to as "the Subject Location").

1 / 46

JURISDICTION AND VENUE

2.      Defendant, THE FREEPORT HOUSING AUTHORITY, resides and maintains its

principal office at 240 South Main Street, Freeport, NY 11520.

3.      This action falls within one or more of the exemptions set forth in N.Y. Civ. Proc.

L. & R. § 1602.

JURY DEMAND

4.      Plaintiff demands a trial by jury in this action.

NOTICE OF CLAIM

5.      On or about October 9, 2018, Plaintiff served upon, presented, and filed with

Defendant, THE COUNTY OF NASSAU, a Notice of Claim in writing.

6.      Defendant, THE COUNTY OF NASSAU, was provided with the opportunity to

hold a hearing pursuant to General Municipal Law § 50-h on or about March 15, 2019.

7.      Defendant, THE COUNTY OF NASSAU, has refused or neglected to make any

adjustment or payment.

8.      On or about October 10, 2018, Plaintiff served upon, presented, and filed with

Defendant, THE INCORPORATED VILLAGE OF FREEPORT, a Notice of Claim in writing.

9.      Defendant, THE INCORPORATED VILLAGE OF FREEPORT, was provided

with the opportunity to hold a hearing pursuant to General Municipal Law § 50-h on or about

December 10, 2018.

INDEX NO. 606124/2019

RECEIVED NYSCEF: 05/03/2019

10.     Defendant, THE INCORPORATED VILLAGE OF FREEPORT, has refused or neglected to make any adjustment or payment.

11.     On or about October 11, 2018, Plaintiff served upon, presented, and filed with Defendant, THE FREEPORT HOUSING AUTHORITY, a Notice of Claim in writing.

12.     Defendant, THE FREEPORT HOUSING AUTHORITY, was provided with the opportunity to hold a hearing pursuant to General Municipal Law § 50-h on or about December 10, 2018.

13.     Defendant, THE FREEPORT HOUSING AUTHORITY, has refused or neglected to make any adjustment or payment.

## AS AND FOR A FIRST CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF, GERSON VASQUEZ

14.     Plaintiff, GERSON VASQUEZ, repeats and re-alleges each and every preceding allegation as if fully set forth herein.

15.     Plaintiff, GERSON VASQUEZ is a resident of the County of Bronx, State of New York.

16.     Defendant, MOXEY RIGBY LLC, is a domestic limited liability company duly organized and existing pursuant to the laws of the State of New York.

17.     Defendant, G&G MOXEY RIGBY LLC, is a domestic limited liability company duly organized and existing pursuant to the laws of the State of New York.

18.     Defendant, MOXEY RIGBY DEVELOPER LLC, is a domestic limited liability company duly organized and existing pursuant to the laws of the State of New York.

19.     Defendant, G&G MOXEY RIGBY DEVELOPER LLC, is a domestic limited liability company duly organized and existing pursuant to the laws of the State of New York.

20.     Defendant, MOXEY RIGBY MANAGERS LLC, is a domestic limited liability company duly organized and existing pursuant to the laws of the State of New York.

21.     Defendant, JOBCO INC., is a domestic business corporation authorized to do business in the State of New York.

22.     Defendant, JOBCO INC., is a corporation organized under the laws of the State of New York.

23.     Defendant, JOBCO INC., is a duly authorized corporation, duly organized and existing under and by virtue of the laws of the State of New York.

24.     Defendant, JOBCO INC., is a duly authorized domestic corporation doing business in the State of New York.

25.     Defendant, JOBCO INC., is a duly organized foreign corporation authorized to do business in the State of New York.

26.     Defendant, JOBCO INC., is a duly organized foreign corporation transacting business in the State of New York.

27.     Defendant, JOBCO INC., does and/or solicits business within the State of New York.

28.     Defendant, JOBCO INC., derives substantial revenues from goods used or consumed or services rendered in the State of New York.

29.     Defendant, JOBCO INC., is a duly organized partnership existing and doing business under the laws of the State of New York.

30.     Defendant, JOBCO INC., is a duly organized proprietorship existing and doing business under the laws of the State of New York.

31.     Defendant, MDC HOME IMPROVEMENTS, INC., is a domestic business corporation duly organized and existing pursuant to the laws of the State of New York.

32.     Defendant, K-SQUARE DEVELOPERS, INC., is a domestic business corporation duly organized and existing pursuant to the laws of the State of New York.

33.     Defendant, COMMERCIAL CONTRACTING SERVICES INC., is a domestic business corporation duly organized and existing pursuant to the laws of the State of New York.

34.     Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., is a domestic not-for-profit corporation duly organized and existing pursuant to the laws of the State of New York.

35.     Defendant, THE FREEPORT HOUSING AUTHORITY, is a municipal organization organized under the laws of the State of New York.

36.     Defendant, THE FREEPORT HOUSING AUTHORITY, is a domestic municipal public authority, department, or agency of Defendant, THE INCORPORATED VILLAGE OF FREEPORT.

37.     Defendant, THE FREEPORT HOUSING AUTHORITY, is a domestic municipal public authority, department, or agency of Defendant, THE COUNTY OF NASSAU.

38.     Defendant, THE INCORPORATED VILLAGE OF FREEPORT, is a municipal organization organized under the laws of the State of New York.

39.     Defendant, THE INCORPORATED VILLAGE OF FREEPORT, is a domestic municipal public authority, department, or agency of Defendant, THE COUNTY OF NASSAU.

40.     Defendant, THE COUNTY OF NASSAU, is a municipal organization organized under the laws of the State of New York.

41.     That at all times hereinafter mentioned, there existed a premises located at 12 Buffalo Avenue/195 East Merrick Road in Freeport, New York 11520 (hereinafter referred to as "the premises").

42.     Defendant, MOXEY RIGBY LLC, owned the premises.

43.     Defendant, MOXEY RIGBY LLC, operated the premises.

44.     Defendant, MOXEY RIGBY LLC, maintained the premises.

45.     Defendant, MOXEY RIGBY LLC, managed the premises.

46.     Defendant, MOXEY RIGBY LLC, supervised the premises.

47.     Defendant, MOXEY RIGBY LLC, controlled the premises.

48.     Defendant, MOXEY RIGBY LLC, managed, supervised, directed and controlled the work being performed at the premises.

49.     On or before August 10, 2018, Defendant, MOXEY RIGBY LLC, was retained to perform construction, excavation, demolition, repair or alteration work at the premises.

50.     Defendant, MOXEY RIGBY LLC, performed construction, excavation, demolition, repair and/or alteration work on the premises.

51.     Defendant, MOXEY RIGBY LLC, performed construction, excavation, demolition, repair and/or alteration work on the premises, pursuant to a contract.

52.     On August 10, 2018, Defendant, MOXEY RIGBY LLC, managed, supervised, directed and controlled the construction, renovation, alteration and/or repair work at the premises.

53.     On August 10, 2018, Defendant, MOXEY RIGBY LLC, was the general contractor

for the construction work at the premises.

54.    On or before August 10, 2018, Defendant, MOXEY RIGBY LLC, retained contractors to perform construction, excavation, demolition, repair or alteration work at the premises.

55.    On or before August 10, 2018, Defendant, MOXEY RIGBY LLC, retained Defendant, G&G MOXEY RIGBY LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

56.    On or before August 10, 2018, Defendant, MOXEY RIGBY LLC, retained Defendant, MOXEY RIGBY DEVELOPER LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

57.    On or before August 10, 2018, Defendant, MOXEY RIGBY LLC, retained Defendant, G&G MOXEY RIGBY DEVELOPER LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

58.    On or before August 10, 2018, Defendant, MOXEY RIGBY LLC, retained Defendant, MOXEY RIGBY MANAGERS LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

59.    On or before August 10, 2018, Defendant, MOXEY RIGBY LLC, retained Defendant, JOBCO INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

60.    On or before August 10, 2018, Defendant, MOXEY RIGBY LLC, retained Defendant, MDC HOME IMPROVEMENTS, INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

61.    On or before August 10, 2018, Defendant, MOXEY RIGBY LLC, retained Defendant, K-SQUARE DEVELOPERS, INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

62.    On or before August 10, 2018, Defendant, MOXEY RIGBY LLC, retained Defendant, COMMERCIAL CONTRACTING SERVICES INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

63.    On or before August 10, 2018, Defendant, MOXEY RIGBY LLC, retained Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., to perform construction, excavation, demolition, repair or alteration work at the premises.

64.    On or before August 10, 2018, Defendant, MOXEY RIGBY LLC, retained Defendant, THE FREEPORT HOUSING AUTHORITY, to perform construction, excavation, demolition, repair or alteration work at the premises.

65.    On or before August 10, 2018, Defendant, MOXEY RIGBY LLC, retained Defendant, THE INCORPORATED VILLAGE OF FREEPORT, to perform construction, excavation, demolition, repair or alteration work at the premises.

66.    On or before August 10, 2018, Defendant, MOXEY RIGBY LLC, retained Defendant, THE COUNTY OF NASSAU, to perform construction, excavation, demolition, repair or alteration work at the premises.

67.    Defendant, G&G MOXEY RIGBY LLC, owned the premises.

68.    Defendant, G&G MOXEY RIGBY LLC, operated the premises.

69.    Defendant, G&G MOXEY RIGBY LLC, maintained the premises.

70.    Defendant, G&G MOXEY RIGBY LLC, managed the premises.

71.     Defendant, G&G MOXEY RIGBY LLC, supervised the premises.

72.     Defendant, G&G MOXEY RIGBY LLC, controlled the premises.

73.     Defendant, G&G MOXEY RIGBY LLC, managed, supervised, directed and controlled the work being performed at the premises.

74.     On or before August 10, 2018, Defendant, G&G MOXEY RIGBY LLC, was retained to perform construction, excavation, demolition, repair or alteration work at the premises.

75.     Defendant, G&G MOXEY RIGBY LLC, performed construction, excavation, demolition, repair and/or alteration work on the premises.

76.     Defendant, G&G MOXEY RIGBY LLC, performed construction, excavation, demolition, repair and/or alteration work on the premises, pursuant to a contract.

77.     On August 10, 2018, Defendant, G&G MOXEY RIGBY LLC, managed, supervised, directed and controlled the construction, renovation, alteration and/or repair work at the premises.

78.     On August 10, 2018, Defendant, G&G MOXEY RIGBY LLC, was the general contractor for the construction work at the premises.

79.     On or before August 10, 2018, Defendant, G&G MOXEY RIGBY LLC, retained contractors to perform construction, excavation, demolition, repair or alteration work at the premises.

80.     On or before August 10, 2018, Defendant, G&G MOXEY RIGBY LLC, retained Defendant, MOXEY RIGBY LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

81.     On or before August 10, 2018, Defendant, G&G MOXEY RIGBY LLC, retained Defendant, MOXEY RIGBY DEVELOPER LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

82.     On or before August 10, 2018, Defendant, G&G MOXEY RIGBY LLC, retained Defendant, G&G MOXEY RIGBY DEVELOPER LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

83.     On or before August 10, 2018, Defendant, G&G MOXEY RIGBY LLC, retained Defendant, MOXEY RIGBY MANAGERS LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

84.     On or before August 10, 2018, Defendant, G&G MOXEY RIGBY LLC, retained Defendant, JOBCO INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

85.     On or before August 10, 2018, Defendant, G&G MOXEY RIGBY LLC, retained Defendant, MDC HOME IMPROVEMENTS, INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

86.     On or before August 10, 2018, Defendant, G&G MOXEY RIGBY LLC, retained Defendant, K-SQUARE DEVELOPERS, INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

87.     On or before August 10, 2018, Defendant, G&G MOXEY RIGBY LLC, retained Defendant, COMMERCIAL CONTRACTING SERVICES INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

88.     On or before August 10, 2018, Defendant, G&G MOXEY RIGBY LLC, retained Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., to perform construction, excavation, demolition, repair or alteration work at the premises.

89.     On or before August 10, 2018, Defendant, G&G MOXEY RIGBY LLC, retained Defendant, THE FREEPORT HOUSING AUTHORITY, to perform construction, excavation, demolition, repair or alteration work at the premises.

90.     On or before August 10, 2018, Defendant, G&G MOXEY RIGBY LLC, retained Defendant, THE INCORPORATED VILLAGE OF FREEPORT, to perform construction, excavation, demolition, repair or alteration work at the premises.

91.     On or before August 10, 2018, Defendant, G&G MOXEY RIGBY LLC, retained Defendant, THE COUNTY OF NASSAU, to perform construction, excavation, demolition, repair or alteration work at the premises.

92.     Defendant, MOXEY RIGBY DEVELOPER LLC, owned the premises.

93.     Defendant, MOXEY RIGBY DEVELOPER LLC, operated the premises.

94.     Defendant, MOXEY RIGBY DEVELOPER LLC, maintained the premises.

95.     Defendant, MOXEY RIGBY DEVELOPER LLC, managed the premises.

96.     Defendant, MOXEY RIGBY DEVELOPER LLC, supervised the premises.

97.     Defendant, MOXEY RIGBY DEVELOPER LLC, controlled the premises.

98.     Defendant, MOXEY RIGBY DEVELOPER LLC, managed, supervised, directed and controlled the work being performed at the premises.

99.     On or before August 10, 2018, Defendant, MOXEY RIGBY DEVELOPER LLC, was retained to perform construction, excavation, demolition, repair or alteration work at the

11 / 46

premises.

100.    Defendant, MOXEY RIGBY DEVELOPER LLC, performed construction, excavation, demolition, repair and/or alteration work on the premises.

101.    Defendant, MOXEY RIGBY DEVELOPER LLC, performed construction, excavation, demolition, repair and/or alteration work on the premises, pursuant to a contract.

102.    On August 10, 2018, Defendant, MOXEY RIGBY DEVELOPER LLC, managed, supervised, directed and controlled the construction, renovation, alteration and/or repair work at the premises.

103.    On August 10, 2018, Defendant, MOXEY RIGBY DEVELOPER LLC, was the general contractor for the construction work at the premises.

104.    On or before August 10, 2018, Defendant, MOXEY RIGBY DEVELOPER LLC, retained contractors to perform construction, excavation, demolition, repair or alteration work at the premises.

105.    On or before August 10, 2018, Defendant, MOXEY RIGBY DEVELOPER LLC, retained Defendant, MOXEY RIGBY LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

106.    On or before August 10, 2018, Defendant, MOXEY RIGBY DEVELOPER LLC, retained Defendant, G&G MOXEY RIGBY LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

107.    On or before August 10, 2018, Defendant, MOXEY RIGBY DEVELOPER LLC, retained Defendant, G&G MOXEY RIGBY DEVELOPER LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

108.     On or before August 10, 2018, Defendant, MOXEY RIGBY DEVELOPER LLC, retained Defendant, MOXEY RIGBY MANAGERS LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

109.     On or before August 10, 2018, Defendant, MOXEY RIGBY DEVELOPER LLC, retained Defendant, JOBCO INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

110.     On or before August 10, 2018, Defendant, MOXEY RIGBY DEVELOPER LLC, retained Defendant, MDC HOME IMPROVEMENTS, INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

111.     On or before August 10, 2018, Defendant, MOXEY RIGBY DEVELOPER LLC, retained Defendant, K-SQUARE DEVELOPERS, INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

112.     On or before August 10, 2018, Defendant, MOXEY RIGBY DEVELOPER LLC, retained Defendant, COMMERCIAL CONTRACTING SERVICES INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

113.     On or before August 10, 2018, Defendant, MOXEY RIGBY DEVELOPER LLC, retained Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., to perform construction, excavation, demolition, repair or alteration work at the premises.

114.     On or before August 10, 2018, Defendant, MOXEY RIGBY DEVELOPER LLC, retained Defendant, THE FREEPORT HOUSING AUTHORITY, to perform construction, excavation, demolition, repair or alteration work at the premises.

115.    On or before August 10, 2018, Defendant, MOXEY RIGBY DEVELOPER LLC, retained Defendant, THE INCORPORATED VILLAGE OF FREEPORT, to perform construction, excavation, demolition, repair or alteration work at the premises.

116.    On or before August 10, 2018, Defendant, MOXEY RIGBY DEVELOPER LLC, retained Defendant, THE COUNTY OF NASSAU, to perform construction, excavation, demolition, repair or alteration work at the premises.

117.    Defendant, G&G MOXEY RIGBY DEVELOPER LLC, owned the premises.

118.    Defendant, G&G MOXEY RIGBY DEVELOPER LLC, operated the premises.

119.    Defendant, G&G MOXEY RIGBY DEVELOPER LLC, maintained the premises.

120.    Defendant, G&G MOXEY RIGBY DEVELOPER LLC, managed the premises.

121.    Defendant, G&G MOXEY RIGBY DEVELOPER LLC, supervised the premises.

122.    Defendant, G&G MOXEY RIGBY DEVELOPER LLC, controlled the premises.

123.    Defendant, G&G MOXEY RIGBY DEVELOPER LLC, managed, supervised, directed and controlled the work being performed at the premises.

124.    On or before August 10, 2018, Defendant, G&G MOXEY RIGBY DEVELOPER LLC, was retained to perform construction, excavation, demolition, repair or alteration work at the premises.

125.    Defendant, G&G MOXEY RIGBY DEVELOPER LLC, performed construction, excavation, demolition, repair and/or alteration work on the premises.

126.    Defendant, G&G MOXEY RIGBY DEVELOPER LLC, performed construction, excavation, demolition, repair and/or alteration work on the premises, pursuant to a contract.

127.    On August 10, 2018, Defendant, G&G MOXEY RIGBY DEVELOPER LLC,

managed, supervised, directed and controlled the construction, renovation, alteration and/or repair work at the premises.

128.     On August 10, 2018, Defendant, G&G MOXEY RIGBY DEVELOPER LLC, was the general contractor for the construction work at the premises.

129.     On or before August 10, 2018, Defendant, G&G MOXEY RIGBY DEVELOPER LLC, retained contractors to perform construction, excavation, demolition, repair or alteration work at the premises.

130.     On or before August 10, 2018, Defendant, G&G MOXEY RIGBY DEVELOPER LLC, retained Defendant, MOXEY RIGBY LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

131.     On or before August 10, 2018, Defendant, G&G MOXEY RIGBY DEVELOPER LLC, retained Defendant, G&G MOXEY RIGBY LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

132.     On or before August 10, 2018, Defendant, G&G MOXEY RIGBY DEVELOPER LLC, retained Defendant, MOXEY RIGBY DEVELOPER LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

133.     On or before August 10, 2018, Defendant, G&G MOXEY RIGBY DEVELOPER LLC, retained Defendant, MOXEY RIGBY MANAGERS LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

134.     On or before August 10, 2018, Defendant, G&G MOXEY RIGBY DEVELOPER LLC, retained Defendant, JOBCO INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

15 / 46

135.    On or before August 10, 2018, Defendant, G&G MOXEY RIGBY DEVELOPER LLC, retained Defendant, MDC HOME IMPROVEMENTS, INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

136.    On or before August 10, 2018, Defendant, G&G MOXEY RIGBY DEVELOPER LLC, retained Defendant, K-SQUARE DEVELOPERS, INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

137.    On or before August 10, 2018, Defendant, G&G MOXEY RIGBY DEVELOPER LLC, retained Defendant, COMMERCIAL CONTRACTING SERVICES INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

138.    On or before August 10, 2018, Defendant, G&G MOXEY RIGBY DEVELOPER LLC, retained Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., to perform construction, excavation, demolition, repair or alteration work at the premises.

139.    On or before August 10, 2018, Defendant, G&G MOXEY RIGBY DEVELOPER LLC, retained Defendant, THE FREEPORT HOUSING AUTHORITY, to perform construction, excavation, demolition, repair or alteration work at the premises.

140.    On or before August 10, 2018, Defendant, G&G MOXEY RIGBY DEVELOPER LLC, retained Defendant, THE INCORPORATED VILLAGE OF FREEPORT, to perform construction, excavation, demolition, repair or alteration work at the premises.

141.    On or before August 10, 2018, Defendant, G&G MOXEY RIGBY DEVELOPER LLC, retained Defendant, THE COUNTY OF NASSAU, to perform construction, excavation, demolition, repair or alteration work at the premises.

142.    Defendant, MOXEY RIGBY MANAGERS LLC, owned the premises.

16 / 46

143. Defendant, MOXEY RIGBY MANAGERS LLC, operated the premises.

144. Defendant, MOXEY RIGBY MANAGERS LLC, maintained the premises.

145. Defendant, MOXEY RIGBY MANAGERS LLC, managed the premises.

146. Defendant, MOXEY RIGBY MANAGERS LLC, supervised the premises.

147. Defendant, MOXEY RIGBY MANAGERS LLC, controlled the premises.

148. Defendant, MOXEY RIGBY MANAGERS LLC, managed, supervised, directed and controlled the work being performed at the premises.

149. On or before August 10, 2018, Defendant, MOXEY RIGBY MANAGERS LLC, was retained to perform construction, excavation, demolition, repair or alteration work at the premises.

150. Defendant, MOXEY RIGBY MANAGERS LLC, performed construction, excavation, demolition, repair and/or alteration work on the premises.

151. Defendant, MOXEY RIGBY MANAGERS LLC, performed construction, excavation, demolition, repair and/or alteration work on the premises, pursuant to a contract.

152. On August 10, 2018, Defendant, MOXEY RIGBY MANAGERS LLC, managed, supervised, directed and controlled the construction, renovation, alteration and/or repair work at the premises.

153. On August 10, 2018, Defendant, MOXEY RIGBY MANAGERS LLC, was the general contractor for the construction work at the premises.

154. On or before August 10, 2018, Defendant, MOXEY RIGBY MANAGERS LLC, retained contractors to perform construction, excavation, demolition, repair or alteration work at the premises.

17 / 46

155.     On or before August 10, 2018, Defendant, MOXEY RIGBY MANAGERS LLC, retained Defendant, MOXEY RIGBY LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

156.     On or before August 10, 2018, Defendant, MOXEY RIGBY MANAGERS LLC, retained Defendant, G&G MOXEY RIGBY LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

157.     On or before August 10, 2018, Defendant, MOXEY RIGBY MANAGERS LLC, retained Defendant, MOXEY RIGBY DEVELOPER LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

158.     On or before August 10, 2018, Defendant, MOXEY RIGBY MANAGERS LLC, retained Defendant, G&G MOXEY RIGBY DEVELOPER LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

159.     On or before August 10, 2018, Defendant, MOXEY RIGBY MANAGERS LLC, retained Defendant, JOBCO INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

160.     On or before August 10, 2018, Defendant, MOXEY RIGBY MANAGERS LLC, retained Defendant, MDC HOME IMPROVEMENTS, INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

161.     On or before August 10, 2018, Defendant, MOXEY RIGBY MANAGERS LLC, retained Defendant, K-SQUARE DEVELOPERS, INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

162.    On or before August 10, 2018, Defendant, MOXEY RIGBY MANAGERS LLC, retained Defendant, COMMERCIAL CONTRACTING SERVICES INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

163.    On or before August 10, 2018, Defendant, MOXEY RIGBY MANAGERS LLC, retained Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., to perform construction, excavation, demolition, repair or alteration work at the premises.

164.    On or before August 10, 2018, Defendant, MOXEY RIGBY MANAGERS LLC, retained Defendant, THE FREEPORT HOUSING AUTHORITY, to perform construction, excavation, demolition, repair or alteration work at the premises.

165.    On or before August 10, 2018, Defendant, MOXEY RIGBY MANAGERS LLC, retained Defendant, THE INCORPORATED VILLAGE OF FREEPORT, to perform construction, excavation, demolition, repair or alteration work at the premises.

166.    On or before August 10, 2018, Defendant, MOXEY RIGBY MANAGERS LLC, retained Defendant, THE COUNTY OF NASSAU, to perform construction, excavation, demolition, repair or alteration work at the premises.

167.    Defendant, JOBCO INC., owned the premises.

168.    Defendant, JOBCO INC., operated the premises.

169.    Defendant, JOBCO INC., maintained the premises.

170.    Defendant, JOBCO INC., managed the premises.

171.    Defendant, JOBCO INC., supervised the premises.

172.    Defendant, JOBCO INC., controlled the premises.

19 / 46

173.    Defendant, JOBCO INC., managed, supervised, directed and controlled the work being performed at the premises.

174.    On or before August 10, 2018, Defendant, JOBCO INC., was retained to perform construction, excavation, demolition, repair or alteration work at the premises.

175.    Defendant, JOBCO INC., performed construction, excavation, demolition, repair and/or alteration work on the premises.

176.    Defendant, JOBCO INC., performed construction, excavation, demolition, repair and/or alteration work on the premises, pursuant to a contract.

177.    On August 10, 2018, Defendant, JOBCO INC., managed, supervised, directed and controlled the construction, renovation, alteration and/or repair work at the premises.

178.    On August 10, 2018, Defendant, JOBCO INC., was the general contractor for the construction work at the premises.

179.    On or before August 10, 2018, Defendant, JOBCO INC., retained contractors to perform construction, excavation, demolition, repair or alteration work at the premises.

180.    On or before August 10, 2018, Defendant, JOBCO INC., retained Defendant, MOXEY RIGBY LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

181.    On or before August 10, 2018, Defendant, JOBCO INC., retained Defendant, G&G MOXEY RIGBY LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

182.    On or before August 10, 2018, Defendant, JOBCO INC., retained Defendant, MOXEY RIGBY DEVELOPER LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

183.    On or before August 10, 2018, Defendant, JOBCO INC., retained Defendant, G&G MOXEY RIGBY DEVELOPER LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

184.    On or before August 10, 2018, Defendant, JOBCO INC., retained Defendant, MOXEY RIGBY MANAGERS LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

185.    On or before August 10, 2018, Defendant, JOBCO INC., retained Defendant, MDC HOME IMPROVEMENTS, INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

186.    On or before August 10, 2018, Defendant, JOBCO INC., retained Defendant, K-SQUARE DEVELOPERS, INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

187.    On or before August 10, 2018, Defendant, JOBCO INC., retained Defendant, COMMERCIAL CONTRACTING SERVICES INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

188.    On or before August 10, 2018, Defendant, JOBCO INC., retained Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., to perform construction, excavation, demolition, repair or alteration work at the premises.

189. On or before August 10, 2018, Defendant, JOBCO INC., retained Defendant, THE FREEPORT HOUSING AUTHORITY, to perform construction, excavation, demolition, repair or alteration work at the premises.

190. On or before August 10, 2018, Defendant, JOBCO INC., retained Defendant, THE INCORPORATED VILLAGE OF FREEPORT, to perform construction, excavation, demolition, repair or alteration work at the premises.

191. On or before August 10, 2018, Defendant, JOBCO INC., retained Defendant, THE COUNTY OF NASSAU, to perform construction, excavation, demolition, repair or alteration work at the premises.

192. Defendant, MDC HOME IMPROVEMENTS, INC., owned the premises.

193. Defendant, MDC HOME IMPROVEMENTS, INC., operated the premises.

194. Defendant, MDC HOME IMPROVEMENTS, INC., maintained the premises.

195. Defendant, MDC HOME IMPROVEMENTS, INC., managed the premises.

196. Defendant, MDC HOME IMPROVEMENTS, INC., supervised the premises.

197. Defendant, MDC HOME IMPROVEMENTS, INC., controlled the premises.

198. Defendant, MDC HOME IMPROVEMENTS, INC., managed, supervised, directed and controlled the work being performed at the premises.

199. On or before August 10, 2018, Defendant, MDC HOME IMPROVEMENTS, INC., was retained to perform construction, excavation, demolition, repair or alteration work at the premises.

200. Defendant, MDC HOME IMPROVEMENTS, INC., performed construction, excavation, demolition, repair and/or alteration work on the premises.

201. Defendant, MDC HOME IMPROVEMENTS, INC., performed construction, excavation, demolition, repair and/or alteration work on the premises, pursuant to a contract.

202. On August 10, 2018, Defendant, MDC HOME IMPROVEMENTS, INC., managed, supervised, directed and controlled the construction, renovation, alteration and/or repair work at the premises.

203. On August 10, 2018, Defendant, MDC HOME IMPROVEMENTS, INC., was the general contractor for the construction work at the premises.

204. On or before August 10, 2018, Defendant, MDC HOME IMPROVEMENTS, INC., retained contractors to perform construction, excavation, demolition, repair or alteration work at the premises.

205. On or before August 10, 2018, Defendant, MDC HOME IMPROVEMENTS, INC., retained Defendant, MOXEY RIGBY LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

206. On or before August 10, 2018, Defendant, MDC HOME IMPROVEMENTS, INC., retained Defendant, G&G MOXEY RIGBY LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

207. On or before August 10, 2018, Defendant, MDC HOME IMPROVEMENTS, INC., retained Defendant, MOXEY RIGBY DEVELOPER LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

208. On or before August 10, 2018, Defendant, MDC HOME IMPROVEMENTS, INC., retained Defendant, G&G MOXEY RIGBY DEVELOPER LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

209.     On or before August 10, 2018, Defendant, MDC HOME IMPROVEMENTS, INC., retained Defendant, MOXEY RIGBY MANAGERS LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

210.     On or before August 10, 2018, Defendant, MDC HOME IMPROVEMENTS, INC., retained Defendant, JOBCO INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

211.     On or before August 10, 2018, Defendant, MDC HOME IMPROVEMENTS, INC., retained Defendant, K-SQUARE DEVELOPERS, INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

212.     On or before August 10, 2018, Defendant, MDC HOME IMPROVEMENTS, INC., retained Defendant, COMMERCIAL CONTRACTING SERVICES INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

213.     On or before August 10, 2018, Defendant, MDC HOME IMPROVEMENTS, INC., retained Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., to perform construction, excavation, demolition, repair or alteration work at the premises.

214.     On or before August 10, 2018, Defendant, MDC HOME IMPROVEMENTS, INC., retained Defendant, THE FREEPORT HOUSING AUTHORITY, to perform construction, excavation, demolition, repair or alteration work at the premises.

215.     On or before August 10, 2018, Defendant, MDC HOME IMPROVEMENTS, INC., retained Defendant, THE INCORPORATED VILLAGE OF FREEPORT, to perform construction, excavation, demolition, repair or alteration work at the premises.

216.     On or before August 10, 2018, Defendant, MDC HOME IMPROVEMENTS, INC., retained Defendant, THE COUNTY OF NASSAU, to perform construction, excavation, demolition, repair or alteration work at the premises.

217.     Defendant, K-SQUARE DEVELOPERS, INC., owned the premises.

218.     Defendant, K-SQUARE DEVELOPERS, INC., operated the premises.

219.     Defendant, K-SQUARE DEVELOPERS, INC., maintained the premises.

220.     Defendant, K-SQUARE DEVELOPERS, INC., managed the premises.

221.     Defendant, K-SQUARE DEVELOPERS, INC., supervised the premises.

222.     Defendant, K-SQUARE DEVELOPERS, INC., controlled the premises.

223.     Defendant, K-SQUARE DEVELOPERS, INC., managed, supervised, directed and controlled the work being performed at the premises.

224.     On or before August 10, 2018, Defendant, K-SQUARE DEVELOPERS, INC., was retained to perform construction, excavation, demolition, repair or alteration work at the premises.

225.     Defendant, K-SQUARE DEVELOPERS, INC., performed construction, excavation, demolition, repair and/or alteration work on the premises.

226.     Defendant, K-SQUARE DEVELOPERS, INC., performed construction, excavation, demolition, repair and/or alteration work on the premises, pursuant to a contract.

227.     On August 10, 2018, Defendant, K-SQUARE DEVELOPERS, INC., managed, supervised, directed and controlled the construction, renovation, alteration and/or repair work at the premises.

228.     On August 10, 2018, Defendant, K-SQUARE DEVELOPERS, INC., was the general contractor for the construction work at the premises.

229.     On or before August 10, 2018, Defendant, K-SQUARE DEVELOPERS, INC., retained contractors to perform construction, excavation, demolition, repair or alteration work at the premises.

230.     On or before August 10, 2018, Defendant, K-SQUARE DEVELOPERS, INC., retained Defendant, MOXEY RIGBY LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

231.     On or before August 10, 2018, Defendant, K-SQUARE DEVELOPERS, INC., retained Defendant, G&G MOXEY RIGBY LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

232.     On or before August 10, 2018, Defendant, K-SQUARE DEVELOPERS, INC., retained Defendant, MOXEY RIGBY DEVELOPER LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

233.     On or before August 10, 2018, Defendant, K-SQUARE DEVELOPERS, INC., retained Defendant, G&G MOXEY RIGBY DEVELOPER LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

234.     On or before August 10, 2018, Defendant, K-SQUARE DEVELOPERS, INC., retained Defendant, MOXEY RIGBY MANAGERS LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

235.     On or before August 10, 2018, Defendant, K-SQUARE DEVELOPERS, INC., retained Defendant, JOBCO INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

236.   On or before August 10, 2018, Defendant, K-SQUARE DEVELOPERS, INC., retained Defendant, MDC HOME IMPROVEMENTS, INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

237.   On or before August 10, 2018, Defendant, K-SQUARE DEVELOPERS, INC., retained Defendant, COMMERCIAL CONTRACTING SERVICES INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

238.   On or before August 10, 2018, Defendant, K-SQUARE DEVELOPERS, INC., retained Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., to perform construction, excavation, demolition, repair or alteration work at the premises.

239.   On or before August 10, 2018, Defendant, K-SQUARE DEVELOPERS, INC., retained Defendant, THE FREEPORT HOUSING AUTHORITY, to perform construction, excavation, demolition, repair or alteration work at the premises.

240.   On or before August 10, 2018, Defendant, K-SQUARE DEVELOPERS, INC., retained Defendant, THE INCORPORATED VILLAGE OF FREEPORT, to perform construction, excavation, demolition, repair or alteration work at the premises.

241.   On or before August 10, 2018, Defendant, K-SQUARE DEVELOPERS, INC., retained Defendant, THE COUNTY OF NASSAU, to perform construction, excavation, demolition, repair or alteration work at the premises.

242.   Defendant, COMMERCIAL CONTRACTING SERVICES INC., owned the premises.

243.   Defendant, COMMERCIAL CONTRACTING SERVICES INC., operated the premises.

27 / 46

244. Defendant, COMMERCIAL CONTRACTING SERVICES INC., maintained the premises.

245. Defendant, COMMERCIAL CONTRACTING SERVICES INC., managed the premises.

246. Defendant, COMMERCIAL CONTRACTING SERVICES INC., supervised the premises.

247. Defendant, COMMERCIAL CONTRACTING SERVICES INC., controlled the premises.

248. Defendant, COMMERCIAL CONTRACTING SERVICES INC., managed, supervised, directed and controlled the work being performed at the premises.

249. On or before August 10, 2018, Defendant, COMMERCIAL CONTRACTING SERVICES INC., was retained to perform construction, excavation, demolition, repair or alteration work at the premises.

250. Defendant, COMMERCIAL CONTRACTING SERVICES INC., performed construction, excavation, demolition, repair and/or alteration work on the premises.

251. Defendant, COMMERCIAL CONTRACTING SERVICES INC., performed construction, excavation, demolition, repair and/or alteration work on the premises, pursuant to a contract.

252. On August 10, 2018, Defendant, COMMERCIAL CONTRACTING SERVICES INC., managed, supervised, directed and controlled the construction, renovation, alteration and/or repair work at the premises.

253. On August 10, 2018, Defendant, COMMERCIAL CONTRACTING SERVICES

28 / 46

INC., was the general contractor for the construction work at the premises.

254.    On or before August 10, 2018, Defendant, COMMERCIAL CONTRACTING SERVICES INC., retained contractors to perform construction, excavation, demolition, repair or alteration work at the premises.

255.    On or before August 10, 2018, Defendant, COMMERCIAL CONTRACTING SERVICES INC., retained Defendant, MOXEY RIGBY LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

256.    On or before August 10, 2018, Defendant, COMMERCIAL CONTRACTING SERVICES INC., retained Defendant, G&G MOXEY RIGBY LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

257.    On or before August 10, 2018, Defendant, COMMERCIAL CONTRACTING SERVICES INC., retained Defendant, MOXEY RIGBY DEVELOPER LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

258.    On or before August 10, 2018, Defendant, COMMERCIAL CONTRACTING SERVICES INC., retained Defendant, G&G MOXEY RIGBY DEVELOPER LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

259.    On or before August 10, 2018, Defendant, COMMERCIAL CONTRACTING SERVICES INC., retained Defendant, MOXEY RIGBY MANAGERS LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

260.    On or before August 10, 2018, Defendant, COMMERCIAL CONTRACTING SERVICES INC., retained Defendant, JOBCO INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

261. On or before August 10, 2018, Defendant, COMMERCIAL CONTRACTING SERVICES INC., retained Defendant, MDC HOME IMPROVEMENTS, INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

262. On or before August 10, 2018, Defendant, COMMERCIAL CONTRACTING SERVICES INC., retained Defendant, K-SQUARE DEVELOPERS, INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

263. On or before August 10, 2018, Defendant, COMMERCIAL CONTRACTING SERVICES INC., retained Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., to perform construction, excavation, demolition, repair or alteration work at the premises.

264. On or before August 10, 2018, Defendant, COMMERCIAL CONTRACTING SERVICES INC., retained Defendant, THE FREEPORT HOUSING AUTHORITY, to perform construction, excavation, demolition, repair or alteration work at the premises.

265. On or before August 10, 2018, Defendant, COMMERCIAL CONTRACTING SERVICES INC., retained Defendant, THE INCORPORATED VILLAGE OF FREEPORT, to perform construction, excavation, demolition, repair or alteration work at the premises.

266. On or before August 10, 2018, Defendant, COMMERCIAL CONTRACTING SERVICES INC., retained Defendant, THE COUNTY OF NASSAU, to perform construction, excavation, demolition, repair or alteration work at the premises.

267. Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., owned the premises.

268. Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., operated the premises.

269. Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., maintained the premises.

270. Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., managed the premises.

271. Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., supervised the premises.

272. Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., controlled the premises.

273. Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., managed, supervised, directed and controlled the work being performed at the premises.

274. On or before August 10, 2018, Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., was retained to perform construction, excavation, demolition, repair or alteration work at the premises.

275. Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., performed construction, excavation, demolition, repair and/or alteration work on the premises.

276. Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., performed construction, excavation, demolition, repair and/or alteration work on the premises, pursuant to a contract.

277. On August 10, 2018, Defendant, FREEPORT AFFORDABLE HOUSING

DEVELOPMENT FUND CORP., managed, supervised, directed and controlled the construction, renovation, alteration and/or repair work at the premises.

278.    On August 10, 2018, Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., was the general contractor for the construction work at the premises.

279.    On or before August 10, 2018, Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., retained contractors to perform construction, excavation, demolition, repair or alteration work at the premises.

280.    On or before August 10, 2018, Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., retained Defendant, MOXEY RIGBY LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

281.    On or before August 10, 2018, Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., retained Defendant, G&G MOXEY RIGBY LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

282.    On or before August 10, 2018, Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., retained Defendant, MOXEY RIGBY DEVELOPER LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

283.    On or before August 10, 2018, Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., retained Defendant, G&G MOXEY RIGBY DEVELOPER LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

284. On or before August 10, 2018, Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., retained Defendant, MOXEY RIGBY MANAGERS LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

285. On or before August 10, 2018, Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., retained Defendant, JOBCO INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

286. On or before August 10, 2018, Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., retained Defendant, MDC HOME IMPROVEMENTS, INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

287. On or before August 10, 2018, Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., retained Defendant, K-SQUARE DEVELOPERS, INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

288. On or before August 10, 2018, Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., retained Defendant, COMMERCIAL CONTRACTING SERVICES INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

289. On or before August 10, 2018, Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., retained Defendant, THE FREEPORT HOUSING AUTHORITY, to perform construction, excavation, demolition, repair or alteration work at the premises.

290. On or before August 10, 2018, Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., retained Defendant, THE INCORPORATED VILLAGE OF FREEPORT, to perform construction, excavation, demolition, repair or alteration work at the premises.

291. On or before August 10, 2018, Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., retained Defendant, THE COUNTY OF NASSAU, to perform construction, excavation, demolition, repair or alteration work at the premises.

292. Defendant, THE FREEPORT HOUSING AUTHORITY, owned the premises.

293. Defendant, THE FREEPORT HOUSING AUTHORITY, operated the premises.

294. Defendant, THE FREEPORT HOUSING AUTHORITY, maintained the premises.

295. Defendant, THE FREEPORT HOUSING AUTHORITY, managed the premises.

296. Defendant, THE FREEPORT HOUSING AUTHORITY, supervised the premises.

297. Defendant, THE FREEPORT HOUSING AUTHORITY, controlled the premises.

298. Defendant, THE FREEPORT HOUSING AUTHORITY, managed, supervised, directed and controlled the work being performed at the premises.

299. On or before August 10, 2018, Defendant, THE FREEPORT HOUSING AUTHORITY, was retained to perform construction, excavation, demolition, repair or alteration work at the premises.

300. Defendant, THE FREEPORT HOUSING AUTHORITY, performed construction, excavation, demolition, repair and/or alteration work on the premises.

301. Defendant, THE FREEPORT HOUSING AUTHORITY, performed construction, excavation, demolition, repair and/or alteration work on the premises, pursuant to a contract.

302. On August 10, 2018, Defendant, THE FREEPORT HOUSING AUTHORITY, managed, supervised, directed and controlled the construction, renovation, alteration and/or repair work at the premises.

303. On August 10, 2018, Defendant, THE FREEPORT HOUSING AUTHORITY, was the general contractor for the construction work at the premises.

304. On or before August 10, 2018, Defendant, THE FREEPORT HOUSING AUTHORITY, retained contractors to perform construction, excavation, demolition, repair or alteration work at the premises.

305. On or before August 10, 2018, Defendant, THE FREEPORT HOUSING AUTHORITY, retained Defendant, MOXEY RIGBY LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

306. On or before August 10, 2018, Defendant, THE FREEPORT HOUSING AUTHORITY, retained Defendant, G&G MOXEY RIGBY LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

307. On or before August 10, 2018, Defendant, THE FREEPORT HOUSING AUTHORITY, retained Defendant, MOXEY RIGBY DEVELOPER LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

308. On or before August 10, 2018, Defendant, THE FREEPORT HOUSING AUTHORITY, retained Defendant, G&G MOXEY RIGBY DEVELOPER LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

309.   On or before August 10, 2018, Defendant, THE FREEPORT HOUSING AUTHORITY, retained Defendant, MOXEY RIGBY MANAGERS LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

310.   On or before August 10, 2018, Defendant, THE FREEPORT HOUSING AUTHORITY, retained Defendant, JOBCO INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

311.   On or before August 10, 2018, Defendant, THE FREEPORT HOUSING AUTHORITY, retained Defendant, MDC HOME IMPROVEMENTS, INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

312.   On or before August 10, 2018, Defendant, THE FREEPORT HOUSING AUTHORITY, retained Defendant, K-SQUARE DEVELOPERS, INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

313.   On or before August 10, 2018, Defendant, THE FREEPORT HOUSING AUTHORITY, retained Defendant, COMMERCIAL CONTRACTING SERVICES INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

314.   On or before August 10, 2018, Defendant, THE FREEPORT HOUSING AUTHORITY, retained Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., to perform construction, excavation, demolition, repair or alteration work at the premises.

315.   On or before August 10, 2018, Defendant, THE FREEPORT HOUSING AUTHORITY, retained Defendant, THE INCORPORATED VILLAGE OF FREEPORT, to perform construction, excavation, demolition, repair or alteration work at the premises.

316. On or before August 10, 2018, Defendant, THE FREEPORT HOUSING AUTHORITY, retained Defendant, THE COUNTY OF NASSAU, to perform construction, excavation, demolition, repair or alteration work at the premises.

317. Defendant, THE INCORPORATED VILLAGE OF FREEPORT, owned the premises.

318. Defendant, THE INCORPORATED VILLAGE OF FREEPORT, operated the premises.

319. Defendant, THE INCORPORATED VILLAGE OF FREEPORT, maintained the premises.

320. Defendant, THE INCORPORATED VILLAGE OF FREEPORT, managed the premises.

321. Defendant, THE INCORPORATED VILLAGE OF FREEPORT, supervised the premises.

322. Defendant, THE INCORPORATED VILLAGE OF FREEPORT, controlled the premises.

323. Defendant, THE INCORPORATED VILLAGE OF FREEPORT, managed, supervised, directed and controlled the work being performed at the premises.

324. On or before August 10, 2018, Defendant, THE INCORPORATED VILLAGE OF FREEPORT, was retained to perform construction, excavation, demolition, repair or alteration work at the premises.

325. Defendant, THE INCORPORATED VILLAGE OF FREEPORT, performed construction, excavation, demolition, repair and/or alteration work on the premises.

326. Defendant, THE INCORPORATED VILLAGE OF FREEPORT, performed construction, excavation, demolition, repair and/or alteration work on the premises, pursuant to a contract.

327. On August 10, 2018, Defendant, THE INCORPORATED VILLAGE OF FREEPORT, managed, supervised, directed and controlled the construction, renovation, alteration and/or repair work at the premises.

328. On August 10, 2018, Defendant, THE INCORPORATED VILLAGE OF FREEPORT, was the general contractor for the construction work at the premises.

329. On or before August 10, 2018, Defendant, THE INCORPORATED VILLAGE OF FREEPORT, retained contractors to perform construction, excavation, demolition, repair or alteration work at the premises.

330. On or before August 10, 2018, Defendant, THE INCORPORATED VILLAGE OF FREEPORT, retained Defendant, MOXEY RIGBY LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

331. On or before August 10, 2018, Defendant, THE INCORPORATED VILLAGE OF FREEPORT, retained Defendant, G&G MOXEY RIGBY LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

332. On or before August 10, 2018, Defendant, THE INCORPORATED VILLAGE OF FREEPORT, retained Defendant, MOXEY RIGBY DEVELOPER LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

333.    On or before August 10, 2018, Defendant, THE INCORPORATED VILLAGE OF FREEPORT, retained Defendant, G&G MOXEY RIGBY DEVELOPER LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

334.    On or before August 10, 2018, Defendant, THE INCORPORATED VILLAGE OF FREEPORT, retained Defendant, MOXEY RIGBY MANAGERS LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

335.    On or before August 10, 2018, Defendant, THE INCORPORATED VILLAGE OF FREEPORT, retained Defendant, JOBCO INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

336.    On or before August 10, 2018, Defendant, THE INCORPORATED VILLAGE OF FREEPORT, retained Defendant, MDC HOME IMPROVEMENTS, INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

337.    On or before August 10, 2018, Defendant, THE INCORPORATED VILLAGE OF FREEPORT, retained Defendant, K-SQUARE DEVELOPERS, INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

338.    On or before August 10, 2018, Defendant, THE INCORPORATED VILLAGE OF FREEPORT, retained Defendant, COMMERCIAL CONTRACTING SERVICES INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

339.    On or before August 10, 2018, Defendant, THE INCORPORATED VILLAGE OF FREEPORT, retained Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., to perform construction, excavation, demolition, repair or alteration work at the premises.

340.     On or before August 10, 2018, Defendant, THE INCORPORATED VILLAGE OF FREEPORT, retained Defendant, THE FREEPORT HOUSING AUTHORITY, to perform construction, excavation, demolition, repair or alteration work at the premises.

341.     On or before August 10, 2018, Defendant, THE INCORPORATED VILLAGE OF FREEPORT, retained Defendant, THE COUNTY OF NASSAU, to perform construction, excavation, demolition, repair or alteration work at the premises.

342.     Defendant, THE COUNTY OF NASSAU, owned the premises.

343.     Defendant, THE COUNTY OF NASSAU, operated the premises.

344.     Defendant, THE COUNTY OF NASSAU, maintained the premises.

345.     Defendant, THE COUNTY OF NASSAU, managed the premises.

346.     Defendant, THE COUNTY OF NASSAU, supervised the premises.

347.     Defendant, THE COUNTY OF NASSAU, controlled the premises.

348.     Defendant, THE COUNTY OF NASSAU, managed, supervised, directed and controlled the work being performed at the premises.

349.     On or before August 10, 2018, Defendant, THE COUNTY OF NASSAU, was retained to perform construction, excavation, demolition, repair or alteration work at the premises.

350.     Defendant, THE COUNTY OF NASSAU, performed construction, excavation, demolition, repair and/or alteration work on the premises.

351.     Defendant, THE COUNTY OF NASSAU, performed construction, excavation, demolition, repair and/or alteration work on the premises, pursuant to a contract.

352.     On August 10, 2018, Defendant, THE COUNTY OF NASSAU, managed, supervised, directed and controlled the construction, renovation, alteration and/or repair work at

the premises.

353.    On August 10, 2018, Defendant, THE COUNTY OF NASSAU, was the general contractor for the construction work at the premises.

354.    On or before August 10, 2018, Defendant, THE COUNTY OF NASSAU, retained contractors to perform construction, excavation, demolition, repair or alteration work at the premises.

355.    On or before August 10, 2018, Defendant, THE COUNTY OF NASSAU, retained Defendant, MOXEY RIGBY LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

356.    On or before August 10, 2018, Defendant, THE COUNTY OF NASSAU, retained Defendant, G&G MOXEY RIGBY LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

357.    On or before August 10, 2018, Defendant, THE COUNTY OF NASSAU, retained Defendant, MOXEY RIGBY DEVELOPER LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

358.    On or before August 10, 2018, Defendant, THE COUNTY OF NASSAU, retained Defendant, G&G MOXEY RIGBY DEVELOPER LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

359.    On or before August 10, 2018, Defendant, THE COUNTY OF NASSAU, retained Defendant, MOXEY RIGBY MANAGERS LLC, to perform construction, excavation, demolition, repair or alteration work at the premises.

41 / 46

360.    On or before August 10, 2018, Defendant, THE COUNTY OF NASSAU, retained Defendant, JOBCO INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

361.    On or before August 10, 2018, Defendant, THE COUNTY OF NASSAU, retained Defendant, MDC HOME IMPROVEMENTS, INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

362.    On or before August 10, 2018, Defendant, THE COUNTY OF NASSAU, retained Defendant, K-SQUARE DEVELOPERS, INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

363.    On or before August 10, 2018, Defendant, THE COUNTY OF NASSAU, retained Defendant, COMMERCIAL CONTRACTING SERVICES INC., to perform construction, excavation, demolition, repair or alteration work at the premises.

364.    On or before August 10, 2018, Defendant, THE COUNTY OF NASSAU, retained Defendant, FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., to perform construction, excavation, demolition, repair or alteration work at the premises.

365.    On or before August 10, 2018, Defendant, THE COUNTY OF NASSAU, retained Defendant, THE FREEPORT HOUSING AUTHORITY, to perform construction, excavation, demolition, repair or alteration work at the premises.

366.    On or before August 10, 2018, Defendant, THE COUNTY OF NASSAU, retained Defendant, THE INCORPORATED VILLAGE OF FREEPORT, to perform construction, excavation, demolition, repair or alteration work at the premises.

367.    On or before August 10, 2018, Plaintiff, GERSON VASQUEZ, was an employee

42 / 46

of Defendant, COMMERCIAL CONTRACTING SERVICES INC.

368.     On or before August 10, 2018, Plaintiff, GERSON VASQUEZ, was not afforded, covered by, and/or provided with Workers' Compensation Insurance while employed with and/or by Defendant, COMMERCIAL CONTRACTING SERVICES INC.

369.     On or after August 10, 2018, Plaintiff, GERSON VASQUEZ, was not afforded, covered by, and/or provided with Workers' Compensation Insurance through and/or from Defendant, COMMERCIAL CONTRACTING SERVICES INC.

370.     On August 10, 2018, while Plaintiff, GERSON VASQUEZ, was performing construction, renovation, repair and/or alteration work as aforesaid at the premises, he was working at an elevated work location.

371.     On August 10, 2018, while Plaintiff, GERSON VASQUEZ, was performing construction, renovation, repair and/or alteration work as aforesaid at the premises, he was working on a ladder.

372.     On August 10, 2018, while Plaintiff, GERSON VASQUEZ, was performing construction, excavation, demolition, repair or alteration work on the premises, when he was caused to fall.

373.     On August 10, 2018, while Plaintiff, GERSON VASQUEZ, was performing construction, excavation, demolition, repair or alteration work on the premises, when an object was caused to fall onto his person.

374.     Plaintiff, GERSON VASQUEZ, was injured.

375.     Plaintiff, GERSON VASQUEZ, was seriously injured.

376.     Said injuries were caused by the negligence of the defendants, their agents,

43 / 46

servants, contractors and/or employees.

377. The premises and work area were in a dangerous condition, hazardous to the workers thereat.

378. The dangerous conditions were caused and created by the defendants, and their agents, servants and/or employees.

379. The limitations on liability set forth in CPLR Section 1601 do not apply to this action.

380. The limitations on liability set forth in CPLR Section 1601 do not apply to this action by reason of one or more of the exemptions set forth in CPLR Section 1602, including, but not limited to, Sections 1602(2)(iv), 1602(4), 1602(7) and 1602(8).

381. As a result of the foregoing, Plaintiff, GERSON VASQUEZ, has been damaged in an amount in excess of the jurisdictional limits of all lower courts in which this matter might otherwise have been brought.

AS AND FOR A SECOND CAUSE OF ACTION
ON BEHALF OF PLAINTIFF, GERSON VASQUEZ

382. Plaintiff, GERSON VASQUEZ, repeats and re-alleges each and every preceding allegation as if fully set forth herein.

383. On August 10, 2018, Defendants failed to furnish or erect or cause to be furnished or erected, for the performance of plaintiff's labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes and other devices, which were so constructed, placed and operated as to give proper protection to Plaintiff, GERSON VASQUEZ.

384. Defendants were in violation of Sections 200, 240 and 241(6) of the Labor Law of

44 / 46

the State of New York, Rule 23 of the Industrial Code of the State of New York.

385.    The defendants' violation of the above sections of the Labor Law the Industrial Code and OSHA were substantial factors in causing this occurrence.

386.    Plaintiff, GERSON VASQUEZ, was injured.

387.    Plaintiff, GERSON VASQUEZ, was seriously injured.

388.    The serious injuries were due to the defendants' violations of Labor Law §§200, 240, and 241(6) and the provisions of the Industrial Code and OSHA regulations.

389.    As a result of the foregoing, defendants are liable or strictly liable to plaintiff for his injuries.

390.    The limitations on liability set forth in CPLR §1601 do not apply to this action.

391.    The limitations on liability set forth in CPLR §1601 do not apply to this action by reason of one or more of the exemptions set forth in CPLR §1602, including, but not limited to Sections 1602(2)(iv), 1602(4), 1602(7) and 1602(8).

392.    As a result of the foregoing, Plaintiff, GERSON VASQUEZ, has been damaged in an amount in excess of the jurisdictional limits of all lower courts in which this matter might otherwise have been brought.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff, GERSON VASQUEZ demands judgment against each of the Defendants on each of the causes of action alleged herein, each separately in a sum of money having a present value that exceeds the jurisdictional limits of all lower courts which would

45 / 46

otherwise have jurisdiction of this matter; the costs and disbursements of this action; and such

other and further relief as this Court deems just and proper.

Dated: New York, New York
      May 3, 2019

                                     Yours, etc.,

                                     _____

                                     Ernest N. Reece, Esq.
                                     **MILLER, LEIBY & ASSOCIATES, P.C.**
                                     *Attorneys for Plaintiff*
                                     *Gerson Vasquez*
                                     32 Broadway, 13th Floor
                                     New York, NY 10004
                                     (212) 227-4200

## ATTORNEY VERIFICATION

ERNEST N. REECE, an attorney at law, duly admitted to practice in the Courts of the State of New York, affirms under the penalties of perjury that:

He is the attorney for the plaintiff(s) in the above entitled action. That he has read the foregoing COMPLAINT and knows the contents thereof, and upon information and belief, deponent believes the matters alleged therein to be true.

The reason this Verification is made by deponent and not by the plaintiff(s) is that the plaintiff(s) herein reside(s) in a county other than the one in which the plaintiff's attorneys maintain their office.

The source of deponent's information and the grounds of his belief are communication, papers, reports and investigation contained in the file.

DATED: New York, New York
May 3, 2019

_____
Ernest N. Reece, Esq.

Index No.

_____

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

_____

GERSON VASQUEZ,

Plaintiff,

-against-

MOXEY RIGBY LLC; G&G MOXEY RIGBY LLC; MOXEY RIGBY DEVELOPER LLC;
G&G MOXEY RIGBY DEVELOPER LLC; MOXEY RIGBY MANAGERS LLC; JOBCO
INC.; MDC HOME IMPROVEMENTS, INC.; K-SQUARE DEVELOPERS, INC.;
COMMERCIAL CONTRACTING SERVICES INC.; FREEPORT AFFORDABLE HOUSING
DEVELOPMENT FUND CORP.; THE FREEPORT HOUSING AUTHORITY; THE
INCORPORATED VILLAGE OF FREEPORT; and THE COUNTY OF NASSAU,

Defendants.

_____

SUMMONS & VERIFIED COMPLAINT

_____

MILLER, LEIBY & ASSOCIATES, P.C.
ATTORNEYS AT LAW

_____

32 Broadway, 13th Floor • New York, NY 10004
Tel 212.227.4200 • Fax 212.504.8369 • MillerLeiby.com

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

————————————————————————————X

GERSON VASQUEZ,

**Index No.: 606124/2019**

Plaintiff,

- against –

**VERIFIED ANSWER TO
COMPLAINT**

MOXEY RIGBY LLC; G&G MOXEY RIGBY LLC; MOXEY
RIGBY DEVELOPER LLC; G&G MOXEY RIGBY
DEVELOPER LLC; MOXEY RIGBY MANAGERS LLC;
JOBCO INC.; MDC HOME IMPROVEMENTS, INC.; K-
SQUARE DEVELOPERS, INC.; COMMERCIAL
CONTRACTING SERVICES INC.;  FREEPORT
AFFORDABLE HOUSING DEVELOPMENT FUND CORP.;
THE FREEPORT HOUSING AUTHORITY; THE
INCORPORATED VILLAGE OF FREEPORT; and THE
COUNTY OF NASSAU,

Defendants.

————————————————————————————X

PLEASE TAKE NOTICE that Defendant MDC HOME IMPROVEMENTS, INC., by its

attorneys, The Chartwell Law Offices, LLP, as and for Defendant's Answer to the Verified

Complaint, states upon information and belief, as follows:

## NATURE OF ACTION

1.  No response is required for Paragraph "1" to plaintiff's Complaint. To the extent

that a response is required, defendant denies each and every allegation contained in Paragraph

"1" of Plaintiff's Verified Complaint, and refers all questions of law to the Court.

## JURISDICTION AND VENUE

2.  Denies knowledge or information sufficient to form a belief as to the allegations

contained in Paragraph "2" of Plaintiff's Verified Complaint.

3.  Denies each and every allegation contained in Paragraph "3" of Plaintiff's Verified

Complaint, and refers all questions of law to the Court.

**JURY DEMAND**

4. No response is required for Paragraph "4" to plaintiff's Complaint.

**NOTICE OF CLAIM**

5. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "5" of Plaintiff's Verified Complaint.

6. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "6" of Plaintiff's Verified Complaint.

7. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "7" of Plaintiff's Verified Complaint.

8. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "8" of Plaintiff's Verified Complaint.

9. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "9" of Plaintiff's Verified Complaint.

10. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "10" of Plaintiff's Verified Complaint.

11. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "11" of Plaintiff's Verified Complaint.

12. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "12" of Plaintiff's Verified Complaint.

13. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "13" of Plaintiff's Verified Complaint.

**AS TO THE FIRST CAUSE OF ACTION**

14. In response to the allegations contained in the paragraph designated as "14" of the Verified Complaint, the answering Defendant repeats and reiterates all responses to the

allegations contained in the paragraphs designated as "1" through "13" of the Verified Complaint as if fully set forth at length herein.

15. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "15" of Plaintiff's Verified Complaint.

16. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "16" of Plaintiff's Verified Complaint.

17. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "17" of Plaintiff's Verified Complaint.

18. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "18" of Plaintiff's Verified Complaint.

19. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "19" of Plaintiff's Verified Complaint.

20. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "20" of Plaintiff's Verified Complaint.

21. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "21" of Plaintiff's Verified Complaint.

22. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "22" of Plaintiff's Verified Complaint.

23. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "23" of Plaintiff's Verified Complaint.

24. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "24" of Plaintiff's Verified Complaint.

25. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "25" of Plaintiff's Verified Complaint.

26. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "26" of Plaintiff's Verified Complaint.

27. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "27" of Plaintiff's Verified Complaint.

28. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "28" of Plaintiff's Verified Complaint.

29. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "29" of Plaintiff's Verified Complaint.

30. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "30" of Plaintiff's Verified Complaint.

31. Admits to the allegations contained in Paragraph "31" of Plaintiff's Verified Complaint.

32. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "32" of Plaintiff's Verified Complaint.

33. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "33" of Plaintiff's Verified Complaint.

34. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "34" of Plaintiff's Verified Complaint.

35. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "35" of Plaintiff's Verified Complaint.

36. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "36" of Plaintiff's Verified Complaint.

37. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "37" of Plaintiff's Verified Complaint.

38. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "38" of Plaintiff's Verified Complaint.

39. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "39" of Plaintiff's Verified Complaint.

40. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "40" of Plaintiff's Verified Complaint.

41. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "41" of Plaintiff's Verified Complaint.

42. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "42" of Plaintiff's Verified Complaint.

43. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "43" of Plaintiff's Verified Complaint.

44. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "44" of Plaintiff's Verified Complaint.

45. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "45" of Plaintiff's Verified Complaint.

46. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "46" of Plaintiff's Verified Complaint.

47. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "47" of Plaintiff's Verified Complaint.

48. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "48" of Plaintiff's Verified Complaint. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "2" of Plaintiff's Verified Complaint.

49. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "49" of Plaintiff's Verified Complaint.

50. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "50" of Plaintiff's Verified Complaint.

51. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "51" of Plaintiff's Verified Complaint.

52. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "52" of Plaintiff's Verified Complaint.

53. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "53" of Plaintiff's Verified Complaint.

54. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "54" of Plaintiff's Verified Complaint.

55. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "55" of Plaintiff's Verified Complaint.

56. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "56" of Plaintiff's Verified Complaint.

57. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "57" of Plaintiff's Verified Complaint.

58. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "58" of Plaintiff's Verified Complaint.

59. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "59" of Plaintiff's Verified Complaint.

60. Denies each and every allegation contained in Paragraph "60" of Plaintiff's Verified Complaint.

61. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "61" of Plaintiff's Verified Complaint.

62. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "62" of Plaintiff's Verified Complaint.

63. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "63" of Plaintiff's Verified Complaint.

64. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "64" of Plaintiff's Verified Complaint.

65. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "65" of Plaintiff's Verified Complaint.

66. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "66" of Plaintiff's Verified Complaint.

67. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "67" of Plaintiff's Verified Complaint.

68. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "68" of Plaintiff's Verified Complaint.

69. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "69" of Plaintiff's Verified Complaint.

70. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "70" of Plaintiff's Verified Complaint.

71. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "71" of Plaintiff's Verified Complaint.

72. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "72" of Plaintiff's Verified Complaint.

73. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "73" of Plaintiff's Verified Complaint.

74. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "74" of Plaintiff's Verified Complaint.

75. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "75" of Plaintiff's Verified Complaint.

76. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "76" of Plaintiff's Verified Complaint.

77. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "77" of Plaintiff's Verified Complaint.

78. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "78" of Plaintiff's Verified Complaint.

79. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "79" of Plaintiff's Verified Complaint.

80. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "80" of Plaintiff's Verified Complaint.

81. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "81" of Plaintiff's Verified Complaint.

82. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "82" of Plaintiff's Verified Complaint.

83. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "83" of Plaintiff's Verified Complaint.

84. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "84" of Plaintiff's Verified Complaint.

85. Denies each and every allegation contained in Paragraph "85" of Plaintiff's Verified Complaint.

86. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "86" of Plaintiff's Verified Complaint.

87. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "87" of Plaintiff's Verified Complaint.

88. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "88" of Plaintiff's Verified Complaint.

89. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "89" of Plaintiff's Verified Complaint.

90. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "90" of Plaintiff's Verified Complaint.

91. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "91" of Plaintiff's Verified Complaint.

92. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "92" of Plaintiff's Verified Complaint.

93. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "93" of Plaintiff's Verified Complaint.

94. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "94" of Plaintiff's Verified Complaint.

95. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "95" of Plaintiff's Verified Complaint.

96. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "96" of Plaintiff's Verified Complaint.

97. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "97" of Plaintiff's Verified Complaint.

98. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "98" of Plaintiff's Verified Complaint.

99. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "99" of Plaintiff's Verified Complaint.

100. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "100" of Plaintiff's Verified Complaint.

101. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "101" of Plaintiff's Verified Complaint.

102. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "102" of Plaintiff's Verified Complaint.

103. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "103" of Plaintiff's Verified Complaint.

104. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "104" of Plaintiff's Verified Complaint.

105. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "105" of Plaintiff's Verified Complaint.

106. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "106" of Plaintiff's Verified Complaint.

107. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "107" of Plaintiff's Verified Complaint.

108. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "108" of Plaintiff's Verified Complaint.

109.      Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "109" of Plaintiff's Verified Complaint.

110.      Denies each and every allegation contained in Paragraph "110" of Plaintiff's Verified Complaint.

111.      Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "111" of Plaintiff's Verified Complaint.

112.      Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "112" of Plaintiff's Verified Complaint.

113.      Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "113" of Plaintiff's Verified Complaint.

114.      Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "114" of Plaintiff's Verified Complaint.

115.      Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "115" of Plaintiff's Verified Complaint.

116.      Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "116" of Plaintiff's Verified Complaint.

117.      Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "117" of Plaintiff's Verified Complaint.

118.      Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "118" of Plaintiff's Verified Complaint.

119.      Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "119" of Plaintiff's Verified Complaint.

120.      Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "120" of Plaintiff's Verified Complaint.

121.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "121" of Plaintiff's Verified Complaint.

122.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "122" of Plaintiff's Verified Complaint.

123.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "123" of Plaintiff's Verified Complaint.

124.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "124" of Plaintiff's Verified Complaint.

125.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "125" of Plaintiff's Verified Complaint.

126.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "126" of Plaintiff's Verified Complaint.

127.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "127" of Plaintiff's Verified Complaint.

128.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "128" of Plaintiff's Verified Complaint.

129.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "129" of Plaintiff's Verified Complaint.

130.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "130" of Plaintiff's Verified Complaint.

131.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "131" of Plaintiff's Verified Complaint.

132.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "132" of Plaintiff's Verified Complaint.

133.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "133" of Plaintiff's Verified Complaint.

134.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "134" of Plaintiff's Verified Complaint.

135.     Denies each and every allegation contained in Paragraph "135" of Plaintiff's Verified Complaint.

136.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "136" of Plaintiff's Verified Complaint.

137.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "137" of Plaintiff's Verified Complaint.

138.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "138" of Plaintiff's Verified Complaint.

139.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "139" of Plaintiff's Verified Complaint.

140.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "140" of Plaintiff's Verified Complaint.

141.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "141" of Plaintiff's Verified Complaint.

142.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "142" of Plaintiff's Verified Complaint.

143.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "143" of Plaintiff's Verified Complaint.

144.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "144" of Plaintiff's Verified Complaint.

145.　　　Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "145" of Plaintiff's Verified Complaint.

146.　　　Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "146" of Plaintiff's Verified Complaint.

147.　　　Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "147" of Plaintiff's Verified Complaint.

148.　　　Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "148" of Plaintiff's Verified Complaint.

149.　　　Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "149" of Plaintiff's Verified Complaint.

150.　　　Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "150" of Plaintiff's Verified Complaint.

151.　　　Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "151" of Plaintiff's Verified Complaint.

152.　　　Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "152" of Plaintiff's Verified Complaint.

153.　　　Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "153" of Plaintiff's Verified Complaint.

154.　　　Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "154" of Plaintiff's Verified Complaint.

155.　　　Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "155" of Plaintiff's Verified Complaint.

156.　　　Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "156" of Plaintiff's Verified Complaint.

157.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "157" of Plaintiff's Verified Complaint.

158.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "158" of Plaintiff's Verified Complaint.

159.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "159" of Plaintiff's Verified Complaint.

160.     Denies each and every allegation contained in Paragraph "160" of Plaintiff's Verified Complaint.

161.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "161" of Plaintiff's Verified Complaint.

162.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "162" of Plaintiff's Verified Complaint.

163.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "163" of Plaintiff's Verified Complaint.

164.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "164" of Plaintiff's Verified Complaint.

165.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "165" of Plaintiff's Verified Complaint.

166.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "166" of Plaintiff's Verified Complaint.

167.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "167" of Plaintiff's Verified Complaint.

168.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "168" of Plaintiff's Verified Complaint.

169.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "169" of Plaintiff's Verified Complaint.

170.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "170" of Plaintiff's Verified Complaint.

171.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "171" of Plaintiff's Verified Complaint.

172.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "172" of Plaintiff's Verified Complaint.

173.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "173" of Plaintiff's Verified Complaint.

174.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "174" of Plaintiff's Verified Complaint.

175.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "175" of Plaintiff's Verified Complaint.

176.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "176" of Plaintiff's Verified Complaint.

177.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "177" of Plaintiff's Verified Complaint.

178.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "178" of Plaintiff's Verified Complaint.

179.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "179" of Plaintiff's Verified Complaint.

180.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "180" of Plaintiff's Verified Complaint.

181.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "181" of Plaintiff's Verified Complaint.

182.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "182" of Plaintiff's Verified Complaint.

183.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "183" of Plaintiff's Verified Complaint.

184.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "184" of Plaintiff's Verified Complaint.

185.     Denies each and every allegation contained in Paragraph "185" of Plaintiff's Verified Complaint.

186.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "186" of Plaintiff's Verified Complaint.

187.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "187" of Plaintiff's Verified Complaint.

188.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "188" of Plaintiff's Verified Complaint.

189.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "189" of Plaintiff's Verified Complaint.

190.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "190" of Plaintiff's Verified Complaint.

191.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "191" of Plaintiff's Verified Complaint.

192.     Denies each and every allegation contained in Paragraph "192" of Plaintiff's Verified Complaint.

193.     Denies each and every allegation contained in Paragraph "193" of Plaintiff's Verified Complaint.

194.     Denies each and every allegation contained in Paragraph "194" of Plaintiff's Verified Complaint.

195.     Denies each and every allegation contained in Paragraph "195" of Plaintiff's Verified Complaint.

196.     Denies each and every allegation contained in Paragraph "196" of Plaintiff's Verified Complaint.

197.     Denies each and every allegation contained in Paragraph "197" of Plaintiff's Verified Complaint.

198.     Denies each and every allegation contained in Paragraph "198" of Plaintiff's Verified Complaint.

199.     Denies each and every allegation contained in Paragraph "199" of Plaintiff's Verified Complaint.

200.     Denies each and every allegation contained in Paragraph "200" of Plaintiff's Verified Complaint.

201.     Denies each and every allegation contained in Paragraph "201" of Plaintiff's Verified Complaint.

202.     Denies each and every allegation contained in Paragraph "202" of Plaintiff's Verified Complaint.

203.     Denies each and every allegation contained in Paragraph "203" of Plaintiff's Verified Complaint.

204.     Denies each and every allegation contained in Paragraph "204" of Plaintiff's Verified Complaint.

205.    Denies each and every allegation contained in Paragraph "205" of Plaintiff's Verified Complaint.

206.    Denies each and every allegation contained in Paragraph "206" of Plaintiff's Verified Complaint.

207.    Denies each and every allegation contained in Paragraph "207" of Plaintiff's Verified Complaint.

208.    Denies each and every allegation contained in Paragraph "208" of Plaintiff's Verified Complaint.

209.    Denies each and every allegation contained in Paragraph "209" of Plaintiff's Verified Complaint.

210.    Denies each and every allegation contained in Paragraph "210" of Plaintiff's Verified Complaint.

211.    Denies each and every allegation contained in Paragraph "211" of Plaintiff's Verified Complaint.

212.    Denies each and every allegation contained in Paragraph "212" of Plaintiff's Verified Complaint.

213.    Denies each and every allegation contained in Paragraph "213" of Plaintiff's Verified Complaint.

214.    Denies each and every allegation contained in Paragraph "214" of Plaintiff's Verified Complaint.

215.    Denies each and every allegation contained in Paragraph "215" of Plaintiff's Verified Complaint.

216.    Denies each and every allegation contained in Paragraph "216" of Plaintiff's Verified Complaint.

217.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "217" of Plaintiff's Verified Complaint.

218.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "218" of Plaintiff's Verified Complaint.

219.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "219" of Plaintiff's Verified Complaint.

220.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "220" of Plaintiff's Verified Complaint.

221.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "221" of Plaintiff's Verified Complaint.

222.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "222" of Plaintiff's Verified Complaint.

223.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "223" of Plaintiff's Verified Complaint.

224.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "224" of Plaintiff's Verified Complaint.

225.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "225" of Plaintiff's Verified Complaint.

226.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "226" of Plaintiff's Verified Complaint.

227.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "227" of Plaintiff's Verified Complaint.

228.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "228" of Plaintiff's Verified Complaint.

229.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "229" of Plaintiff's Verified Complaint.

230.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "230" of Plaintiff's Verified Complaint.

231.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "231" of Plaintiff's Verified Complaint.

232.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "232" of Plaintiff's Verified Complaint.

233.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "233" of Plaintiff's Verified Complaint.

234.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "234" of Plaintiff's Verified Complaint.

235.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "235" of Plaintiff's Verified Complaint.

236.     Denies each and every allegation contained in Paragraph "36" of Plaintiff's Verified Complaint.

237.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "237" of Plaintiff's Verified Complaint.

238.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "238" of Plaintiff's Verified Complaint.

239.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "239" of Plaintiff's Verified Complaint.

240.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "240" of Plaintiff's Verified Complaint.

241.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "241" of Plaintiff's Verified Complaint.

242.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "242" of Plaintiff's Verified Complaint.

243.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "243" of Plaintiff's Verified Complaint.

244.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "244" of Plaintiff's Verified Complaint.

245.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "245" of Plaintiff's Verified Complaint.

246.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "246" of Plaintiff's Verified Complaint.

247.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "247" of Plaintiff's Verified Complaint.

248.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "248" of Plaintiff's Verified Complaint.

249.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "249" of Plaintiff's Verified Complaint.

250.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "250" of Plaintiff's Verified Complaint.

251.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "251" of Plaintiff's Verified Complaint.

252.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "252" of Plaintiff's Verified Complaint.

253.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "253" of Plaintiff's Verified Complaint.

254.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "254" of Plaintiff's Verified Complaint.

255.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "255" of Plaintiff's Verified Complaint.

256.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "256" of Plaintiff's Verified Complaint.

257.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "257" of Plaintiff's Verified Complaint.

258.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "258" of Plaintiff's Verified Complaint.

259.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "2259" of Plaintiff's Verified Complaint.

260.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "260" of Plaintiff's Verified Complaint.

261.     Denies each and every allegation contained in Paragraph "261" of Plaintiff's Verified Complaint.

262.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "262" of Plaintiff's Verified Complaint.

263.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "263" of Plaintiff's Verified Complaint.

264.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "264" of Plaintiff's Verified Complaint.

265.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "265" of Plaintiff's Verified Complaint.

266.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "266" of Plaintiff's Verified Complaint.

267.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "267" of Plaintiff's Verified Complaint.

268.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "268" of Plaintiff's Verified Complaint.

269.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "269" of Plaintiff's Verified Complaint.

270.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "270" of Plaintiff's Verified Complaint.

271.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "271" of Plaintiff's Verified Complaint.

272.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "272" of Plaintiff's Verified Complaint.

273.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "273" of Plaintiff's Verified Complaint.

274.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "274" of Plaintiff's Verified Complaint.

275.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "275" of Plaintiff's Verified Complaint.

276.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "276" of Plaintiff's Verified Complaint.

277.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "277" of Plaintiff's Verified Complaint.

278.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "278" of Plaintiff's Verified Complaint.

279.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "279" of Plaintiff's Verified Complaint.

280.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "280" of Plaintiff's Verified Complaint.

281.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "281" of Plaintiff's Verified Complaint.

282.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "282" of Plaintiff's Verified Complaint.

283.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "283" of Plaintiff's Verified Complaint.

284.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "284" of Plaintiff's Verified Complaint.

285.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "285" of Plaintiff's Verified Complaint.

286.     Denies each and every allegation contained in Paragraph "286" of Plaintiff's Verified Complaint.

287.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "287" of Plaintiff's Verified Complaint.

288.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "288" of Plaintiff's Verified Complaint.

289.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "289" of Plaintiff's Verified Complaint.

290.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "290" of Plaintiff's Verified Complaint.

291.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "291" of Plaintiff's Verified Complaint.

292.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "292" of Plaintiff's Verified Complaint.

293.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "293" of Plaintiff's Verified Complaint.

294.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "294" of Plaintiff's Verified Complaint.

295.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "295" of Plaintiff's Verified Complaint.

296.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "296" of Plaintiff's Verified Complaint.

297.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "297" of Plaintiff's Verified Complaint.

298.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "298" of Plaintiff's Verified Complaint.

299.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "299" of Plaintiff's Verified Complaint.

300.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "300" of Plaintiff's Verified Complaint.

301.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "301" of Plaintiff's Verified Complaint.

302.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "302" of Plaintiff's Verified Complaint.

303.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "303" of Plaintiff's Verified Complaint.

304.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "304" of Plaintiff's Verified Complaint.

305.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "305" of Plaintiff's Verified Complaint.

306.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "306" of Plaintiff's Verified Complaint.

307.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "307" of Plaintiff's Verified Complaint.

308.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "308" of Plaintiff's Verified Complaint.

309.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "309" of Plaintiff's Verified Complaint.

310.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "310" of Plaintiff's Verified Complaint.

311.     Denies each and every allegation contained in Paragraph "311" of Plaintiff's Verified Complaint.

312.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "312" of Plaintiff's Verified Complaint.

313. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "313" of Plaintiff's Verified Complaint.

314. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "314" of Plaintiff's Verified Complaint.

315. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "315" of Plaintiff's Verified Complaint.

316. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "316" of Plaintiff's Verified Complaint.

317. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "317" of Plaintiff's Verified Complaint.

318. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "318" of Plaintiff's Verified Complaint.

319. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "319" of Plaintiff's Verified Complaint.

320. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "320" of Plaintiff's Verified Complaint.

321. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "321" of Plaintiff's Verified Complaint.

322. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "322" of Plaintiff's Verified Complaint.

323. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "323" of Plaintiff's Verified Complaint.

324. Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "324" of Plaintiff's Verified Complaint.

325.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "325" of Plaintiff's Verified Complaint.

326.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "326" of Plaintiff's Verified Complaint.

327.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "327" of Plaintiff's Verified Complaint.

328.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "328" of Plaintiff's Verified Complaint.

329.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "329" of Plaintiff's Verified Complaint.

330.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "330" of Plaintiff's Verified Complaint.

331.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "331" of Plaintiff's Verified Complaint.

332.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "332" of Plaintiff's Verified Complaint.

333.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "333" of Plaintiff's Verified Complaint.

334.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "334" of Plaintiff's Verified Complaint.

335.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "335" of Plaintiff's Verified Complaint.

336.     Denies each and every allegation contained in Paragraph "336" of Plaintiff's Verified Complaint.

337.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "337" of Plaintiff's Verified Complaint.

338.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "338" of Plaintiff's Verified Complaint.

339.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "339" of Plaintiff's Verified Complaint.

340.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "340" of Plaintiff's Verified Complaint.

341.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "341" of Plaintiff's Verified Complaint.

342.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "342" of Plaintiff's Verified Complaint.

343.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "343" of Plaintiff's Verified Complaint.

344.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "344" of Plaintiff's Verified Complaint.

345.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "345" of Plaintiff's Verified Complaint.

346.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "346" of Plaintiff's Verified Complaint.

347.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "347" of Plaintiff's Verified Complaint.

348.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "348" of Plaintiff's Verified Complaint.

349.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "349" of Plaintiff's Verified Complaint.

350.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "350" of Plaintiff's Verified Complaint.

351.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "351" of Plaintiff's Verified Complaint.

352.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "352" of Plaintiff's Verified Complaint.

353.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "353" of Plaintiff's Verified Complaint.

354.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "354" of Plaintiff's Verified Complaint.

355.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "355" of Plaintiff's Verified Complaint.

356.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "356" of Plaintiff's Verified Complaint.

357.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "357" of Plaintiff's Verified Complaint.

358.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "358" of Plaintiff's Verified Complaint.

359.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "359" of Plaintiff's Verified Complaint.

360.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "360" of Plaintiff's Verified Complaint.

361.     Denies each and every allegation contained in Paragraph "361" of Plaintiff's Verified Complaint.

362.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "362" of Plaintiff's Verified Complaint.

363.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "363" of Plaintiff's Verified Complaint.

364.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "364" of Plaintiff's Verified Complaint.

365.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "365" of Plaintiff's Verified Complaint.

366.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "366" of Plaintiff's Verified Complaint.

367.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "367" of Plaintiff's Verified Complaint.

368.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "368" of Plaintiff's Verified Complaint.

369.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "369" of Plaintiff's Verified Complaint.

370.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "370" of Plaintiff's Verified Complaint.

371.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "371" of Plaintiff's Verified Complaint.

372.     Denies each and every allegation contained in Paragraph "372" of Plaintiff's Verified Complaint.

373.      Denies each and every allegation contained in Paragraph "373" of Plaintiff's Verified Complaint.

374.      Denies each and every allegation contained in Paragraph "374" of Plaintiff's Verified Complaint.

375.      Denies each and every allegation contained in Paragraph "375" of Plaintiff's Verified Complaint.

376.      Denies, as to the answering defendant, each and every allegation contained in Paragraph "376" of Plaintiff's Verified Complaint.

377.      Denies each and every allegation contained in Paragraph "377" of Plaintiff's Verified Complaint.

378.      Denies, as to the answering defendant, each and every allegation contained in Paragraph "378" of Plaintiff's Verified Complaint.

379.      Denies each and every allegation contained in Paragraph "379" of Plaintiff's Verified Complaint, and refers all questions of law to the Court.

380.      Denies each and every allegation contained in Paragraph "380" of Plaintiff's Verified Complaint, and refers all questions of law to the Court.

381.      Denies each and every allegation contained in Paragraph "381" of Plaintiff's Verified Complaint, and refers all questions of law to the Court.

## AS TO THE SECOND CAUSE OF ACTION

382.      In response to the allegations contained in the paragraph designated as "382" of the Verified Complaint, the answering Defendant repeats and reiterates all responses to the allegations contained in the paragraphs designated as "1" through "381" of the Verified Complaint as if fully set forth at length herein.

383.     Denies, as to the answering defendant, each and every allegation contained in Paragraph "383" of Plaintiff's Verified Complaint.

384.     Denies, as to the answering defendant, each and every allegation contained in Paragraph "384" of Plaintiff's Verified Complaint, and refers all questions of law to the Court.

385.     Denies, as to the answering defendant, each and every allegation contained in Paragraph "385" of Plaintiff's Verified Complaint, and refers all questions of law to the Court.

386.     Denies each and every allegation contained in Paragraph "386" of Plaintiff's Verified Complaint.

387.     Denies each and every allegation contained in Paragraph "387" of Plaintiff's Verified Complaint.

388.     Denies, as to the answering defendant, each and every allegation contained in Paragraph "388" of Plaintiff's Verified Complaint, and refers all questions of law to the Court.

389.     Denies, as to the answering defendant, each and every allegation contained in Paragraph "389" of Plaintiff's Verified Complaint, and refers all questions of law to the Court.

390.     Denies, as to the answering defendant, each and every allegation contained in Paragraph "390" of Plaintiff's Verified Complaint, and refers all questions of law to the Court.

391.     Denies, as to the answering defendant, each and every allegation contained in Paragraph "391" of Plaintiff's Verified Complaint, and refers all questions of law to the Court.

392.     Denies each and every allegation contained in Paragraph "392" of Plaintiff's Verified Complaint.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

393.     In the event that plaintiff recovers a verdict or judgment against the answering defendant, then said verdict or judgment must be reduced pursuant to CPLR 4545 by those amounts which have been, or will, with reasonable certainty, replace or indemnify plaintiff,

in whole or in part, for any past or future claimed medical expenses or other such economic loss, paid from any collateral source such as insurance, Social Security, Workers' Compensation or employee benefit program.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

394.     If plaintiff suffered the injuries complained of, all of which are denied, said injuries were caused in whole or in part by the conduct of one or more parties for whose conduct the answering defendant is not responsible, has no control over, or with whom it has no legal relation.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

395.     The liability of the answering defendant is limited to the percentage of culpability found against it and it shall not be responsible for any percentage of culpability attributed to other individuals and/or entities whether named or unnamed, over whom plaintiff could have obtained personal jurisdiction by use of due diligence pursuant to the provisions of Articles 14 and 16 of the CPLR.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

396.     That all the alleged dangers and risks incident to the situation mentioned in the Verified Complaint were open, obvious and apparent, and were assumed by plaintiff.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

397.     The liability of the answering defendant is limited by the provisions of CPLR Article 16.

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

398.     If plaintiff sustained the injuries alleged in the Verified Complaint, said injuries were proximately caused by independent, intervening and superseding causes which could not have reasonably been foreseen and for which defendant is not liable or responsible.

## AS AND FOR AN SEVENTH AFFIRMATIVE DEFENSE

399.     That whatever injuries and/or damages were sustained by plaintiff at the time and place alleged were the result of plaintiff's assumption of risk, in realizing and knowing the hazards and dangers thereof, and that plaintiff assumed all the risk necessarily incidental to such an undertaking.

## AS AND FOR A EIGHTH AFFIRMATIVE DEFENSE

400.     That answering defendant lacked actual or constructive notice of the acts or occurrences alleged in the Verified Complaint.

## AS AND FOR A NINTH AFFIRMATIVE DEFENSE

401.     Plaintiff was a recalcitrant worker.

## AS AND FOR A TENTH AFFIRMATIVE DEFENSE

402.     That any injuries and/or damages sustained by plaintiff, as alleged in the Verified Complaint herein, were caused in whole or in part by the comparative negligence and/or culpable conduct of plaintiff and not as result of the comparative negligence and/or culpable conduct on the part of the answering defendant.

## AS AND FOR A ELEVENTH AFFIRMATIVE DEFENSE

403.     The plaintiff failed to properly mitigate his damages so as to prevent or reduce the extent of the injuries sustained.

## AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE

404.     That if the plaintiff shall have a judgment and/or verdict entered in his favor over and against the answering defendant, the judgment and/or verdict shall be precluded, modified, offset and/or reduced by any and all sums or consideration paid or promised to the plaintiff by any person, corporation, or parties claimed to be liable for the injuries and/or damages alleged in the Verified Complaint to the extent of the greater of either of the sum or

consideration paid or promised to the plaintiff, or the amount of the released tortfeasor's equitable share of the liability and the damages in accordance with Article 15 of the General Obligations Law §§ 15-105 and 15-108.

## AS AND FOR A THIRTEENTH AFFIRMATIVE DEFENSE

405.     The answering defendant did not breach any duties owed to the plaintiff or other parties, neither contractually nor by common law duty and/or any alleged breach of duties were not the proximate cause of plaintiff or other parties' alleged damages.

## AS AND FOR A FOURTEENTH AFFIRMATIVE DEFENSE

406.     Plaintiff's injuries, if any, were increased or caused by plaintiff's failure or neglect to properly utilize safety equipment at the time of the occurrence, and, therefore, plaintiff may not recover for those injuries which would not otherwise have been sustained.

## AS AND FOR A FIFTEENTH AFFIRMATIVE DEFENSE

407.     The Verified Complaint fails to state a claim upon which relief can be granted as against the answering defendant.

## AS AND FOR A SIXTEENTH AFFIRMATIVE DEFENSE

408.     Plaintiff is not entitled to protection under any section of the New York Labor Law for he was not engaged in the type of work covered by the applicable statutes at the time that the alleged incident occurred.

## AS AND FOR A SEVENTEENTH AFFIRMATIVE DEFENSE

409.     Liability cannot be imposed on the answering defendant because the sole proximate cause of plaintiff's injuries as alleged in the Verified Complaint, was plaintiff's own acts and/or omissions.

## AS AND FOR A EIGHTEENTH AFFIRMATIVE DEFENSE

410.     Plaintiff cannot maintain a Labor Law §§ 240 and 241 action against defendant, as defendant is not an owner, general contractor or agent of an owner or general contractor to which sections 240 and 241 apply.

## AS AND FOR A NINETEENTH AFFIRMATIVE DEFENSE

411.     Plaintiff cannot maintain a Labor Law §§ 200, 240 and 241 action against answering defendant, as the plaintiff was not a worker as defined under New York State Labor Law §§ 200, 240 and 241.

## AS AND FOR A NINETEENTH AFFIRMATIVE DEFENSE

412.     Plaintiff cannot maintain a Labor Law §§ 240 and 241 action against answering defendant, as the alleged work is not protected under these provisions.

## AS AND FOR A FIRST CROSS-CLAIM AGAINST MOXEY RIGBY LLC, G&G MOXEY RIGBY LLC, MOXEY RIGBY DEVELOPER LLC, G&G MOXEY RIGBY DEVELOPER LLC, MOXEY RIGBY MANAGERS LLC, JOBCO INC., K-SQUARE DEVELOPERS, INC., COMMERCIAL CONTRACTING SERVICES INC., FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., THE FREEPORT HOUSING AUTHORITY, THE INCORPORATED VILLAGE OF FREEPORT, and THE COUNTY OF NASSAU FOR COMMON LAW INDEMNIFICATION

413.     Upon information and belief, that if and in the event the Plaintiff sustained any damages as alleged in the Verified Complaint, all of which are denied by the answering Defendant, TOP CITY CONTRACTING CORPORATION, said damages were caused by the negligence, culpable conduct, intentional and/or wrongful acts of Defendants, MOXEY RIGBY LLC; G&G MOXEY RIGBY LLC, MOXEY RIGBY DEVELOPER LLC, G&G MOXEY RIGBY DEVELOPER LLC, MOXEY RIGBY MANAGERS LLC, JOBCO INC., K-SQUARE DEVELOPERS, INC., COMMERCIAL CONTRACTING SERVICES INC., FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., THE FREEPORT HOUSING AUTHORITY, THE

INCORPORATED VILLAGE OF FREEPORT, and THE COUNTY OF NASSAU, and not through any acts of negligence, culpable or wrongful conduct on the part of the answering Defendant.

414.     109.     By reason of the foregoing, the answering Defendant is entitled to common-law indemnity from, and to have judgment over and against, Defendants, MOXEY RIGBY LLC; G&G MOXEY RIGBY LLC, MOXEY RIGBY DEVELOPER LLC, G&G MOXEY RIGBY DEVELOPER LLC, MOXEY RIGBY MANAGERS LLC, JOBCO INC., K-SQUARE DEVELOPERS, INC., COMMERCIAL CONTRACTING SERVICES INC., FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., THE FREEPORT HOUSING AUTHORITY, THE INCORPORATED VILLAGE OF FREEPORT, and THE COUNTY OF NASSAU, for all or part of any verdict of judgment that Plaintiff may recover against said answering Defendant.

**AS AND FOR A SECOND CROSS-CLAIM AGAINST
MOXEY RIGBY LLC, G&G MOXEY RIGBY LLC, MOXEY RIGBY DEVELOPER LLC, G&G
MOXEY RIGBY DEVELOPER LLC, MOXEY RIGBY MANAGERS LLC, JOBCO INC., K-
SQUARE DEVELOPERS, INC., COMMERCIAL CONTRACTING SERVICES INC.,
FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., THE FREEPORT
HOUSING AUTHORITY, THE INCORPORATED VILLAGE OF FREEPORT, and
THE COUNTY OF NASSAU FOR COMMON-LAW CONTRIBUTION**

415.     Upon information and belief, that if and in the event the Plaintiff sustained any damages as alleged in the Verified Complaint, all of which is denied by the answering Defendant, TOP CITY CONTRACTING CORPORATION, said damages were caused by the negligence, culpable conduct, intentional and/or wrongful acts of Defendants, MOXEY RIGBY LLC; G&G MOXEY RIGBY LLC, MOXEY RIGBY DEVELOPER LLC, G&G MOXEY RIGBY DEVELOPER LLC, MOXEY RIGBY MANAGERS LLC, JOBCO INC., K-SQUARE DEVELOPERS, INC., COMMERCIAL CONTRACTING SERVICES INC., FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., THE FREEPORT HOUSING AUTHORITY, THE

INCORPORATED VILLAGE OF FREEPORT, and THE COUNTY OF NASSAU, and not through any acts of negligence, culpable or wrongful conduct on the part of the answering Defendant.

416.     By reason of the foregoing, the answering Defendant is entitled to common-law contribution from, and to have judgment over and against, Defendants, MOXEY RIGBY LLC; G&G MOXEY RIGBY LLC, MOXEY RIGBY DEVELOPER LLC, G&G MOXEY RIGBY DEVELOPER LLC, MOXEY RIGBY MANAGERS LLC, JOBCO INC., K-SQUARE DEVELOPERS, INC., COMMERCIAL CONTRACTING SERVICES INC., FREEPORT AFFORDABLE HOUSING DEVELOPMENT FUND CORP., THE FREEPORT HOUSING AUTHORITY, THE INCORPORATED VILLAGE OF FREEPORT, and THE COUNTY OF NASSAU, for all or part of any verdict of judgment that Plaintiff may recover against said answering Defendant.

Dated: White Plains, New York
       January 3, 2020



Yours, etc.

THE CHARTWELL LAW OFFICES, LLP

By:     Carmen Nicolaou, Esq.
        Attorneys for Defendant
        MDC HOME IMPROVEMENTS, INC.
        81 Main Street, Suite 100
        White Plains, New York 10601
        (212) 968-2300

TO:

**MILLER, LEIBY & ASSOCIATES, P.C.**
*Attorneys for Plaintiff*
32 Broadway, 13th Floor
New York, New York  10004
P:  (212) 227-4200
F:  (212) 504-8369

**HAVKINS ROSENFELD RITZERT & VARRIALE, LLP**
*Attorneys for Defendants*
*MOXEY RIGBY LLC, G&G MOXEY RIGBY LLC,*
*MOXEY RIGBY DEVELOPER LLC,*
*MOXEY RIGBY MANAGERS, JOBCO INC.,*
*FREEPORT AFFORDABLE HOUSING*
*DEVELOPMENT FUND CORP.,*
*THE FREEPORT HOUSING AUTHORITY, and*
*THE INCORPORATED VILLAGE OF FREEPORT*
114 Old County Road, Suite 300
Mineola, New York 11501
P: (516) 620-1700
F: (516) 746-0833

**COMMERCIAL CONTRACTING SERVICES INC.**
15 Sherman Ave
Bethpage, New York 11714

## ATTORNEY VERIFICATION
## PURSUANT TO CPLR § 3020(d)(3)

**CARMEN A. NICOLAOU, ESQ.,** an attorney at law, duly admitted to practice in the Courts of the State of New York, affirms under penalties of perjury that:

I am a Partner with The Chartwell Law Offices, LLP, the attorneys for the Defendant, MDC HOME IMPROVEMENTS, INC. in the above-entitled action. I have read the foregoing Verified Answer and know the contents thereof, and upon information and belief, I believe the matters alleged therein to be true.

The reason this verification is made by me and not by the Defendant, MDC HOME IMPROVEMENTS, INC. is because the Defendant is not located in the county in which their attorneys maintain their offices.

The source of my information and the grounds of my beliefs are privileged communications and/or a review of the documents contained in the file.

Dated: White Plains, New York
January 3, 2020

**CARMEN A. NICOLAOU**