UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
GEIS CONSTRUCTION SOUTH, LLC,

        Plaintiff,

-against-

JAIME DELAHUNT,

        Defendant.
------------------------------------------------------------X

**REPORT AND RECOMMENDATION**
20-CV-03834 (MKB) (JMW)

**A P P E A R A N C E S:**

Christopher Nucifora, Esq.
Aaron Evenchik, Esq.
Charles Pugh, Esq.
**Kaufman Dolowich & Voluck, LLP**
25 Main Street
Court Plaza North, Suite 500
Hackensack, NJ 07601
*For Plaintiff Geis Construction South, LLC*

Joseph Z. Amsel, Esq.
**Law Offices of Joseph Z. Amsel**
43 West 43rd Street, Suite 265
New York, NY 10036
*For Defendant Jaime Delahunt*

**WICKS,** Magistrate Judge:

      Plaintiff Geis Construction South, LLC commenced this action against Defendant Jaime Delahunt alleging that Defendant fraudulently induced Plaintiff to enter into two subcontracts with Defendant's company, MDC Home Improvements, Inc. ("MDC"), in connection with Plaintiff's work on the Wonder Lofts Project in Hoboken, New Jersey. Before the Court, on referral from the Honorable Chief Judge Margo K. Brodie, is Defendant's motion for order

1

vacating the certificate of default pursuant to Rule 55(b). (DE 26.)[1]  Oral argument was held on September 30, 2022.[2]

For the reasons that follow, the undersigned respectfully recommends that Defendant's motion be denied.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In light of the undersigned's previously issued R&R (*see* DE 19), the Court assumes the parties' familiarity with the underlying facts and allegations of this case.

As relevant here, Defendant is the president of MDC, a company that acts as a concrete subcontractor. (DE 1 at 2.) Plaintiff sought to work on the Wonder Lofts Project (the "Project") in Hoboken, New Jersey, and selected MDC as concrete subcontractor on the Project. (*Id.*)

Under Plaintiff's prime contract with the owner of the Project, a payment and performance bond was not required of a subcontractor "in the event that a surety reasonably approved by the [o]wner's lender provides a surety letter demonstrating the bond capacity of [the subcontractor]." (*Id.*) Plaintiff accordingly shared this requirement with Defendant and requested a bond availability letter. (*Id.* at 3.) In response, Defendant submitted a letter to

---

[1] Defendant's motion also includes objections to the undersigned's Report and Recommendation ("R&R"), dated December 2, 2021, recommending that the Court grant Plaintiff's motion for a default judgment as to Defendant's liability but that the determination of damages be based on written submission rather than an evidentiary hearing (*see* DE 15; 19), and a request to seal Defendant's declaration and a portion of his moving brief. (DE 26.) Being that it is improper for the undersigned to consider objections to his own R&R, that issue is preserved for Chief Judge Brodie's consideration. (*See* 28 U.S.C. § 636(b)(1) (providing a district court judge may designate a magistrate judge to submit proposed findings of fact and recommendations on dispositive motions in a pending case); *Smith v. Marcellus*, 917 F. Supp. 168, 170 (W.D.N.Y. 1995) (the district court is not bound by the recommendation of the magistrate judge, rather it may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge). As to Defendant's sealing request, the undersigned issued an Order on September 12, 2022, denying the same. (*See* Electronic Order, dated September 12, 2022.)

[2] The Court commends counsel for both parties for their excellent oral presentations during argument.

Plaintiff that purported to be from Sean P. Flaherty (the "Flaherty letter") from Edwards & Company Insurance which stated that "MDC HI Inc. has a Surety Bond Program with $10,000.00 aggregate limit." (*Id.*) Plaintiff relied on the Flaherty letter and awarded a number of subcontracts to Defendant and MDC. (*Id.* at 4.)

Plaintiff alleges that, after being awarded the subcontracts, Defendant consistently demanded that Plaintiff advance payments to MDC for work not yet performed. (*Id.* at 5.) During the course of working on the Project, Defendant executed at least eight lien waivers under oath, representing that he was properly paying all sub-sub-contractors for the Project. (*Id.* at 5–6.) Plaintiff avers that it relied on these lien waivers in continuing to make payments to Defendant for work on the Project. (*Id.* at 6.)

Ultimately, Plaintiff was forced to terminate the subcontracts with Defendant and MDC, allegedly costing Plaintiff more than $2,500,000.00. (*Id.* at 8.) Moreover, Plaintiff alleges that it contacted Edwards & Company to inquire about the status of MDC. (*Id.* at 9.) The CEO of Edwards & Company responded that it does not offer a surety program, did not have a surety bond with MDC, and that Flaherty was not an officer of Edwards & Company and could not have written the Flaherty letter. (*Id.*) Plaintiff alleges that, based on its discussion with Edwards & Company, Defendant forged the Flaherty letter to induce Plaintiff into awarding him and MDC the subcontracts. (*Id.*)

In May of 2020, Plaintiff commenced an arbitration proceeding claiming breach of contract against MDC only, alleging that Plaintiff is entitled to full reimbursement of cost overruns relating to MDC's breaches of two subcontracts in connection with the Project. (DE 26-1 at 10.) MDC did not participate in the arbitration proceedings. (*Id.*) On April 1, 2021, the arbitration panel issued a Final Award in Plaintiff's favor finding (i) "[t][here is no question that

3

[MDC] breached the subcontracts it entered into with [MDC]"; (ii) that Plaintiff proved it was damaged in the amount of $9,954,713.86; (iii) awarding attorney's fees of $45,139.75; and (iv) concluding that MDC was responsible for the AAA administrative fees and the compensation of the Arbitrators, for a total amount of damages awarded to Plaintiff in the amount of $10,021,831.10. (*Id.*) Plaintiff then commenced an action in the Eastern District to confirm the award. (*Id.*) (*See Geis Construction South, LLC v. MDC Home Improvements, Inc.* (2:21-cv-02407-LDH-ST)).[3]

Plaintiff commenced this lawsuit on August 20, 2020, asserting two claims of fraudulent inducement. (DE 1.) Defendant did not file an answer or otherwise respond to Plaintiff's Complaint, prompting Plaintiff to request a certificate of default from the Clerk's office. (DE 13.) On April 14, 2021, the Clerk entered a Certificate of Default, which was closely followed by a motion by Plaintiff for a default judgment pursuant to Rule 55 on April 26, 2021. On December 12, 2021, the undersigned issued a Report and Recommendation ("R&R") recommending that the Court grant Plaintiff's motion for a default judgment as to Defendant's liability but that the determination of damages be based on written submission rather than an evidentiary hearing as requested by Plaintiff. (DE 19.) Just eight days later, Defendant appeared in the action, represented by counsel. (DE 21.) The parties then bundle-filed the instant motion to vacate the certificate of default on April 11, 2022. (DE 26-27.)

---

[3] On September 23, 2022, the Honorable LaShann DeArcy Hall adopted the Report and Recommendation of Magistrate Judge Steven L. Tiscione, confirming the arbitration award. (*See* 21-cv-02407, Electronic Order, dated September 23, 2022.) A final judgment has since been entered in that case. (*Id.* at DE 23.)

4

## II. **DISCUSSION**

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . the clerk shall enter the party's default." Fed. R. Civ. P. 55(a). Once a default is entered, "[t]he court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c); *see Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 455 (2d Cir. 2013). The standard for good cause requires a court to weigh (1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party." *Id*. The burden is on the defaulting defendant to show that their default was not willful, that they have meritorious defenses, and that no prejudice would result from reopening the judgment. *State St. Bank & Tr. Co. v. Inversiones Errazuriz, Limitada*, 230 F. Supp. 2d 313, 316 (S.D.N.Y. 2002). "This burden is not trivial: if the moving party fails to make even one of the three aforementioned showings, vacatur should be denied." *Id*. However, "[t]hese criteria must be construed in light of the Second Circuit's strong preference for resolving disputes on the merits." *E. Sav. Bank, FSB v. Johnson*, No. 13 CV 6070 (AMD) (ST), 2020 WL 1452461, at *2 (E.D.N.Y. Mar. 25, 2020). The disposition of motions for vacatur of entries of default is left to the sound discretion of the district court. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993).[4]

Each of these factors is considered below.

---

[4] The Court is mindful that when a certificate of default has been entered by the Clerk of the Court, but no default judgment has been entered, then Rule 55(c) applies, which is more lenient than the standard to be applied set aside a default judgment under Rule 60(b). *See Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981) ("[T]he standard for setting aside the entry of a default pursuant to Rule 55(c) is less rigorous than the 'excusable neglect' standard for setting aside a default judgment by motion pursuant to Rule 60(b)"). Even though a Report & Recommendation for a default judgment has been issued by the undersigned (DE 19), that remains *sub judice* before Chief Judge Margo K. Brodie, and therefore the more lenient standard is applied here.

### A. Willfulness

A default is willful if it is "more than merely negligent or careless, but is instead egregious and not satisfactorily explained." *Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 186 (2d Cir. 2015) (quotes omitted). A finding of bad faith is not a necessary pre-condition to conclude a defendant acted willfully. *Id.* "Rather, it is sufficient to conclude that the defendant defaulted deliberately." *Id.* (quotes omitted). A default is willful when the defendant "simply ignores the complaint without action" and accordingly, "where a party is notified that he is in default and he apparently makes no effort to appear *pro se* or to explain his situation to the court, such neglect is inexcusable." *Circuito Cerrado, Inc. v. Velasquez*, 296 F.R.D. 122, 127 (E.D.N.Y. 2013). Of the criteria weighed by the court when considering whether to vacate a default, "willfulness is preeminent, and a willful default will not normally be set aside." *Arista Recs., Inc. v. Musemeci*, No. 03CV4465(DGT)(RML), 2007 WL 3124545, at *4 (E.D.N.Y. Sept. 18, 2007), *report and recommendation adopted*, No. CIV.A. CV-03-4465(DG), 2007 WL 3145861 (E.D.N.Y. Oct. 25, 2007) (quotes omitted). Indeed, a "[d]efendant's willful default alone justifies denial of the motion to vacate." *United Pet Grp., Inc. v. Axon US, Corp.*, No. 13-CV-126 WFK MDG, 2013 WL 5592617, at *4 (E.D.N.Y. Oct. 10, 2013) (citing *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 507 (2d Cir. 1991) ("A default should not be set aside if it is found to be willful.")); *Kulwa v. Obiakor OB/GYN P.C.*, No. 12-CV-1868 JG MDG, 2013 WL 504383, at *7 (E.D.N.Y. Feb. 8, 2013) ("A finding of willfulness can, on its own, support a finding of good cause support entry of default judgment").

Defendant argues that his failure to respond to the Complaint was not willful because at the time the action was commenced, he was going through "an extremely emotional and

turbulent time." (DE 26 at 10.) Specifically, Defendant contends that he was "simply incapable of dealing with the instant lawsuit" because at the time he was on the verge of getting divorced. (*Id.* at 10-11; Declaration of Jamie Delahunt, dated March 16, 2022 ("Delahunt Declaration") at ¶ 3.) According to Defendant, the pandemic added to the pressures in his personal life and these "external stresses" exacerbated his pre-existing mental health conditions of ADHD[5] and complex post-traumatic stress disorder ("C-PTSD"). (Delahunt Declaration at ¶¶ 3-4.) Defendant allegedly sought the help of a mental health professional to deal with these issues (*id.* at 5), but no further detail was offered, nor was a declaration or affidavit offered from a health care professional.

In opposition, Plaintiff argues Defendant's default was willful because Plaintiff was personally served with the Summons and Complaint and affirmatively chose to ignore the pleading for nearly fifteen months. (DE 26-1 at 14.) Further, despite being notified of Plaintiff's intention to move for a default judgment, Defendant failed to appear for nearly eight months and until the entry of default and the undersigned issued its Report and Recommendation at DE 19. (*Id.*) Lastly, Plaintiff contends that Defendant's proffered excuses for failing to timely appear, namely Plaintiff's alleged mental health issues, pending divorce, and effects of the pandemic, are simply not sufficient to demonstrate a lack of willfulness as a matter of law. (*Id.* at 14-19.)

The Court agrees. Here, Defendant had adequate notice of this lawsuit and ample opportunity to appear by attorney, or appear *pro se*, or simply to explain his situation to the court. *See Circuito Cerrado, Inc.*, 296 F.R.D. at 127. *First*, Defendant was personally served with the Summons and Complaint on September 14, 2020. (DE 10.) Neither service nor notice

---

[5] Attention-Deficit / Hyperactivity Disorder. *See What is ADHD?*, CENTERS FOR DISEASE CONTROL AND PREVENTION, *https://www.cdc.gov/ncbddd/adhd/facts.html*.

of the action is contested by Defendant. Rather, he in fact concedes that he became aware of this lawsuit filed against him in September 2020. (Delahunt Declaration at ¶ 2.) He did nothing. *Second*, on March 26, 2021, Defendant was served by mail and email Plaintiff's Status Report wherein it stated that, *inter alia*, (i) "[b]ased on Defendant's prolonged failure to answer, plead, or otherwise move, Plaintiff intends to move this Court for a Default Judgment against Defendant in the near future." (DE 26-1 at 14; DE 11.) *Third*, on April 8, 2021, Defendant was served by mail and email with Plaintiff's Supplemental Status Report wherein Plaintiff again stated that, *inter alia*, "[b]ased on Defendant's prolonged failure to answer, plead, or otherwise move, Plaintiff intends to move this Court for a Default Judgment against Defendant." (DE 26-1 at 14; DE 12.) *Fourth*, on April 14, 2021, Defendant was served, by mail and email, with Plaintiff's Request for Certificate of Default. (DE 26-1 at 5; DE 13.) *Fifth*, Plaintiff emailed the Court's Certificate of Default to Defendant on April 15, 2021. (DE 26-1; Declaration of Charles W. Pugh in Support of Opposition to Defendant's Motion to Vacate Entry of Default and Response to Defendant's Objections to the Report and Recommendation ("Pugh Declaration"), dated April 4, 2022, at ¶ 4, Ex. C). *Sixth*, on April 26, 2021, Plaintiff filed its Motion for Default Judgment and emailed and mailed the same to Defendant that same day. (DE 26-1 at 14; DE 16-17.) It was not until after the undersigned issued a Report and Recommendation in December 2021 that Defendant finally took action and an attorney appeared on his behalf. (*See* DE 19-21.)[6] The fact that Defendant had adequate notice of the default but simply did not respond weighs in favor of finding that Defendant's default was willful. *See Jeri-Jo Knitwear, Inc. v.*

---

[6] The Report and Recommendation was filed on December 2, 2021. (DE 19.) Plaintiff served Defendant with the same by mail and email on December 2, 2021. (DE 20.) Attorney Joseph Z. Amsel appeared on Defendant's behalf eight days later on December 10, 2021. (DE 21.)

8

*E.S. Sutton, Inc.*, No. 94 CIV. 8551 (DC), 1995 WL 714367, at *2 (S.D.N.Y. Dec. 1, 1995) (finding defendant's default was willful where defendant received a letter stating plaintiff would "shortly be seeking entry of judgment by default" but defendant "simply disregarded this letter").

Further, Plaintiff cites to a laundry list of other actions against Defendant and/or his companies where there were failures to appear. (*See* DE 26-1 at 6-10.) Are these relevant? He's been sued. His companies have been sued. He and his companies have both defaulted and defended actions. This is not an instance of an individual defendant, having no prior experience in litigated matters, defaulting. *Au fond,* Defendant is no stranger to the litigation process, and resultant the risks of ignoring a served complaint for over a year. He knew better of the consequences of ignoring a lawsuit.

Defendant's handlist of excuses — the confluence of his potential divorce, the pandemic, and his ADHD and C-PTSD diagnosis, although the Court is sympathetic — do not save Defendant here. The Court recognizes that there are instances where turbulence in a defendant's personal life, including illness, can in fact mitigate or even negate a finding of willfulness. Defendant here, however, has not established that his circumstances rise to the level of excusing fifteen months of complete inaction. The undersigned has reviewed the authority provided by Defendant and, as it relates to Defendant's mental conditions, the circumstances in the cases cited by Defendant are far different and readily distinguishable from the facts here.

For instance, in *HICA Educ. Loan Corp. v. Feintuch*, No. 12-CV-5243 (ADS), 2013 WL 1898997 (E.D.N.Y. May 7, 2013), the defendant was the father to triplets, one of which was hospitalized for the first three years of life with "bronchopulmonary dysplasia and other life-threatening conditions," and was able to return home just before the action was commenced. Upon her homecoming, the daughter required a respirator, was unable to walk or eat on her own,

experienced frequent hospitalizations, and overall required constant care and attention, which was provided by the defendant. *Id.* Roughly at the same time, defendant's father, who lived with defendant, died just 3 months before the complaint was filed. *Id.* Further, considering that the defendant's motion to vacate was unopposed *and* that there was "only [a] two-week delay between the entry of default and Defendant's motion to vacate," the court in *HICA* found good cause to vacate the entry of default. The situation presented to Judge Spatt in *HICA* is unlike what is presented here. Defendant waited nearly eight months between the time the Certificate of Default was entered, to have an attorney appear on his behalf. Further, based on the record before it, including Defendant's seven-paragraphed declaration, the Court cannot conclude that Defendant's medical issues were as severe and time consuming as those experienced by the defendant in *HICA*.

The second case relied on by Defendant, *Murray Engineering, P.C. v. Windermere Properties LLC*, No. 12 Civ. 0052 (JPO), 2013 WL 1809637 (S.D.N.Y. Apr. 30, 2013) is equally unavailing and similarly distinguishable. In *Murray*, the court found defendant's conduct "undoubtedly negligent" but not willful where defendant's attorney, upon being retained, "had to turn [his] attention to a dire family crisis … [his son] was suffering severe seizures" and he and his wife "had to devote days and nights at the home attending to" his son. *Id.* at *4-5. Both defendants in *HICA* and *Murray* had family members with severe medical conditions that required their full care and attention during the relevant time period, understandably drawing all attention away from the lawsuits at hand. The delays in appearing in those cases were also relatively short. Defendant has not presented similar facts here.

Finally, Defendant relies on a state court case, namely, *Pierot v. Leopold*, 154 A.D.3d 791 (2d Dept. 2017), for the proposition that "mental health issues" are valid grounds to vacate a

10

default. (DE 26 at 10.) Although mental health issues are appropriate in determining willfulness, the rule of law discerned from *Pierot* is clear: "[m]ental health issues during the relevant period, *established by a doctor's affidavit*, may serve as a reasonable excuse sufficient to vacate a default." *Id.* (emphasis added). As noted above, Defendant failed to provide any affidavit from any health care professional. And assertions of situational stresses of litigation are not sufficient. There is simply no support in the cases to ignore the willfulness displayed here.

As it relates to Defendant's potential divorce, Defendant fails to identify any authority—nor has the Court been able to find any—which suggests marital discord or divorce is a sufficient ground excuse to vacate default. (*See* DE 26 at 9-11.) Moreover, while the Defendant was "simply incapable of dealing with the instant lawsuit" (DE 26 at 10-11), he *was* capable of participating in other lawsuits involving his company, MDC. (*See* DE 26-1 at 16-17.) Based on these circumstances, it is respectfully recommended that Defendant's default be found as willful.

Having found willfulness, that alone would be a sufficient ground standing alone to deny the motion to vacate. *See Arista,* 2007 WL 3124545, at *4. Notwithstanding, the undersigned considers the remaining two prongs.

### B. Meritorious Defense

"To satisfy the criterion of a 'meritorious defense,' the defense need not be ultimately persuasive at this stage." *Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996). "A defense is meritorious if it is good at law so as to give the factfinder some determination to make." Nonetheless, a "defendant must still articulate [the] defense with a degree of specificity which directly relates that defense to the allegations set forth in the plaintiff's pleadings and raises a 'serious question' as to the validity of those allegations." *New Falls Corp. v. Soni Holdings, LLC*, No. CV 190449 (ADS) (AKT), 2020 WL 2770922, at *6 (E.D.N.Y. May 8,

2020), *report and recommendation adopted*, No. 219 CV 00449 (ADS) (AKT), 2020 WL 2770015 (E.D.N.Y. May 28, 2020). "The Second Circuit has held that a defaulting defendant's failure to demonstrate the existence of a meritorious defense, standing alone, is a sufficient reason to deny the motion to vacate the entry of default." *Kulwa*, 2013 WL 504383 at *7 n.6 (citing *Sony Corp. v. Elm State Elecs., Inc.*, 800 F.2d 317, 320 (2d Cir. 1980)).

Defendant argues he has a meritorious defense to Plaintiff's claims of fraudulent inducement because Plaintiff's claims require piercing of the corporate veil, which Plaintiff did not sufficiently plead, and that Plaintiff failed to join MDC as a necessary party under Rule 19. (DE 26 at 3-4.) Both are considered below.

### i. Piercing the Corporate Veil

Defendant asserts Plaintiff's sole allegation is related to Defendant's role as an officer behalf of MDC but Plaintiff has failed to plead sufficient facts to warrant piercing the corporate veil. (DE 26 at 5.) Defendant argues that Plaintiff is trying to hold Defendant personally responsible for "what amounts to a breach of contract claim against MDC masquerading as a purported fraud." (*Id.*) On those grounds, Defendant contends Plaintiff's claims fail as a matter of law. (*See id.*)

Plaintiff argues that this defense is a non-issue because, as Plaintiff has alleged here, an officer or director can be held individually liable for their own acts of fraud and therefore no piercing of the corporate veil is required. (DE 26-1 at 20-21.)

It is well settled that under New York law, "[a] corporate officer who participates in the commission of a tort may be held individually liable, ... regardless of whether the corporate veil is pierced." *Cargo Logistics Int'l, LLC v. Overseas Moving Specialists, Inc.*, 557 F. Supp. 3d 381, 396 (E.D.N.Y. 2021) (citing *FLB, LLC v. Cellco P'ship*, 536 F. App'x 132, 133 (2d Cir.

12

2013)); *Unique Lotus Gems v. Gholian Enterprises Inc.*, No. 18CIV10808(ATG)(WG), 2019 WL 6227856, at *9 (S.D.N.Y. Nov. 22, 2019), *report and recommendation adopted*, No. 18CIV10808(ATG)(WG), 2019 WL 6701953 (S.D.N.Y. Dec. 9, 2019) ("[A] corporate officer who participates in the commission of a tort may be held individually liable, regardless of whether the officer acted on behalf of the corporation in the course of official duties and regardless of whether the corporate veil is pierced").

Here, Plaintiff asserts two counts of fraudulent inducement, the first involving the forged Flaherty letter and the second involving the lien waivers. (DE 1 at 9–15.) As it relates to the Flaherty letter, Plaintiff alleges that in order to satisfy Plaintiff's subcontractor requirement for a surety letter, Defendant submitted the Flaherty letter, which represented that Defendant "ha[d] a surety bond program with a $10,000.00 aggregate limit." (*Id.* at 10.) However, Plaintiff alleges that it subsequently discovered that Defendant's insurer did not offer a surety program, did not have a surety bond with MDC, and that Flaherty was not an officer of Edwards and Company and could not have written the letter. (*Id.* at 9.) Plaintiff alleges that Defendant forged this letter with knowledge of its falsity, that Plaintiff reasonably relied on the Flaherty letter in entering subcontracts with Defendant, and that Plaintiff has been damaged in excess of $2,500,000.00 as a result of its reliance on the letter. (*Id.* at 10–11.)

As it relates to the lien waivers, Plaintiff alleges that Defendant personally executed approximately eight lien waivers representing that Defendant was properly paying all subcontractors for the project when he was not. (*Id.* at 12–13.) Moreover, Plaintiff avers that Defendant told Plaintiff that MDC was unable to pay its suppliers, and that Defendant executed the lien waivers intending to deceive Plaintiff. (*Id.* at 13–14.) It is clear that Defendant personally participated in the commission of the alleged fraud with regard to the Flaherty letter

13

and the lien waivers. Defendant cannot be shielded from personal liability where he took "personal actions to perpetrate the fraud and was aware of it." *See Sun Prod. Corp. v. Bruch*, No. 10 CIV. 4816 SAS, 2011 WL 5120307, at *5 (S.D.N.Y. Oct. 28, 2011), *aff'd*, 507 F. App'x 46 (2d Cir. 2013).

To the extent Defendant argues that this Court should decline to hold Defendant, as a corporate officer, liable for fraud claim that is a "simply a breach of contract claim in the tort clothing" (DE 26-2) (citing *Telecom Int'l Am., Ltd. v. AT & T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001), such argument is easily rebuffed. While it is true that fraud claims which are duplicative of breach of contract claims in that they arise from the same series of events should be dismissed, "a fraud claim may be dismissed as duplicative only as against a defendant against whom the related contract claim is viable." *Sun Prod. Corp. v. Bruch*, 507 F. App'x 46, 48 (2d Cir. 2013). Therefore, because Defendant was not a party to the contract between Plaintiff and MDC, the fraud claims asserted against Defendant are not duplicative of the breach of contract claim. *See In re Fyre Festival Litig.*, 399 F. Supp. 3d 203, 212 (S.D.N.Y. 2019) (" Because neither Margolin nor Atkins were party to the contract at issue, the fraud claims against them are not duplicative of the breach of contract claim"); *McKnight as Tr. of Stacia L. McKnight Revocable Tr. v. 65 Dune Rd. LLC*, No. 19-CV-4172 (MKB), 2020 WL 9816015, at *15 (E.D.N.Y. Nov. 16, 2020) ("However, corporate officers may not be held personally liable on contracts of their corporations, provided they did not purport to bind themselves individually under such contracts").

For these reasons, it is respectfully recommended that the purported defense of piercing the corporate veil is without merit as to the claims asserted in the complaint.

### ii. Failure to Join MDC as a Necessary Party under Rule 19

Defendant next claims that he "has a meritorious basis to dismiss this action under FRCP Rule 19 because Defendant's company, MDC, is a necessary and indispensable party that Plaintiff failed to join in this action." (DE 26 at 5-6.) Defendant asserts that because Plaintiff's contract is with MDC and because Plaintiff has already sought and obtained a nearly $10 million arbitration award against MDC for the same conduct, MDC clearly shares responsibility along with Defendant and is indispensable under Rule 19. (*Id.*) Further, by obtaining the arbitration award and separately filing the instant action against Defendant personally, Plaintiff has created a risk of inconsistent awards, something Rule 19 is designed to prevent. *Id.*

Plaintiff counters that MDC's status as a signatory to the contract does not make it indispensable for the purposes of Rule 19 and that complete relief can be awarded here, without the risk of MDC being bound by findings made in its absence. (DE 26-1.)

There is a two-step test for determining whether the court must dismiss an action for failure to join an indispensable party under Rule 19. *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000). "First, the court must determine whether an absent party belongs in the suit, *i.e.*, whether the party qualifies as a "necessary" party under Rule 19(a)." *Id.* If the party is not necessary under Rule 19(a), then the Court need not decide whether dismissal is warranted under Rule 19(b). *Id.* "But where the court makes a threshold determination that a party is necessary under Rule 19(a), and joinder of the absent party is not feasible for jurisdictional or other reasons, the court must finally determine whether the party is 'indispensable.'" *Id.* (internal citations omitted). If the party is indispensable, the action must be dismissed. *Id.*

MDC's role as a party to the contract and the subject of a separate, yet related, arbitration action, is not dispositive on the issue of whether MDC is a necessary and indispensable party in

15

this action. *STMicroelectronics v. Credit Suisse Grp.* (775 F. Supp. 2d 525 (E.D.N.Y. 2011)) is instructive here. In *STMicroelectronics*, STMicroelectronics ("ST") sought to hold defendant Credit Suisse Group ("CSG") liable under Securities Exchange Act as a "controlling person" of non-party subsidiary Credit Suisse Securities ("CSS"), for the intentional breach of investment obligations and under related claims for conversion, unjust enrichment, and aiding and abetting common law fraud. *Id.* at 530-31. Before commencing the action against CSG, ST commenced an arbitration action against CSS for violations of the Securities Exchange Act as well as, *inter alia*, claims of fraud and unjust enrichment, which resulted in award in ST's favor. *Id.* at 534. Accordingly, when ST brought an action against CSG for similar conduct, CSG sought to dismiss the action for ST's failure to join CSS under Rule 19. *Id.* at 543. As relevant here, the Court held,

> The actions of CSG and its officers during the relevant time period are the focus of this litigation. The arbitration proceedings involving CSS are complete, and the amount of compensatory damages under Section 10(b) has been fully litigated. Thus, there is little danger of CSS being bound by findings made in its absence, and CSS need not worry about "the effect of the doctrines of issue and claim preclusion on a parallel, subsequently-filed" action.

*Id.* at 544. The Court also found that CSS's absence will not subject CSG to multiple or inconsistent awards or prevent the Court from awarding complete relief among the parties. *Id.* For these reasons, CSS was found not to be a necessary party.

*STMicroelectronics* is analogous to the facts here. T his action focuses on the independent tortious actions of MDC's officer, the Defendant. If relief is awarded to the Plaintiff in this action it will have no effect on the obligations of MDC, for the award would be individually against the Plaintiff. Further, the Court will be able to award complete relief in this action as against the Plaintiff in MDC's absence. Simply put, Plaintiff's claims against MDC for

16

breach of contract do not preclude Plaintiff from seeking relief as against Defendant for his individual, tortious acts. For these reasons, Defendant's argument that MDC is a necessary and indispensable party under Rule 19 fails. Accordingly, it is respectfully recommended that the Court find no meritorious defense exists.

### C. Prejudice Toward Plaintiff and Other Equitable Factors

Defendant argues that Plaintiff would not be prejudiced by this Court granting Defendant's motion to vacate because if this Court vacates the certificate of default, Plaintiff would be in the same position that they would have been had Defendant responded when this action was initially filed. (DE 26 at 8.) Further, other equitable factors warrant vacatur including (i) the significance of the potential award; (ii) the Court's overall preference that cases be decided on their merits; and (iii) because Plaintiff has already obtained an arbitration award against MDC, permitting Plaintiff to obtain a default judgment here would result in Plaintiff obtaining a windfall, double recovery for the same alleged wrong.

Plaintiff argues that it will, in fact, be prejudiced if the Court vacates default because it will thwart Plaintiff's recovery or remedy. (DE 26-1 at 24.) Plaintiff lists a sampling of other lawsuits and resulting judgments against Defendant and his companies and contends that in light of these competing creditors any delay may prevent Plaintiff from collecting on a judgment here. (*Id.* at 24-26.) Plaintiff further argues that equity does not require default to be vacated based on the amount of damages sought because Defendant will be able to participate in the future damages phase of this lawsuit and may voice any objections at that time. (*Id.* at 27.) Further, Plaintiff argues the fact that Plaintiff has obtained an arbitration award as against MDC is of no consequence because its fraud claims are not duplicative of the breach of contract claim brought against MDC. (*Id.*)

It is true that delay may constitute prejudice when factors such as other pending lawsuits, threat of insolvency are present, and "where there is a "substantial likelihood that the speediest creditor will be the creditor most likely to be paid." *Trustees of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity, & Apprenticeship, & Skill Improvement & Safety Funds v. Intercounty Paving Assocs. of New York, LLC*, No. 19-CV-4322 (BMC), 2020 WL 32466, at *2 (E.D.N.Y. Jan. 2, 2020). Here, Plaintiff identifies a list of lawsuits and judgments against Defendant and his companies, but the Court only finds relevant the actions which assert liability as against Defendant, individually. For instance, the "Cronolly Fraud Lawsuit" as against Defendant and his company Premier County Construction Corp. ("Premier") resulted in a $72,463.50 judgment, but such judgment has since been satisfied. (DE 26-1 at 6.) Also, Defendant and his company Commercial Contracting Services, Inc. ("CCS") are subject to indemnification cross-claims in the "Pineda Class Action Lawsuit" where a settlement of $208,000.00 is currently pending. (*Id.*) However, the remaining lawsuits and judgements Plaintiff brings to the Court's attention here are all as against Defendant's companies, not Defendant. Plaintiff identifies no other grounds for prejudice.

Defendant raises the issue that damages in this action may be significant and by permitting Plaintiff to obtain a default judgment here would result in Plaintiff obtaining double recovery for the same alleged wrong as the arbitration action.[7] However, the measure of

---

[7] The Court recognizes that the Second Circuit has held that under certain circumstances the court may consider "whether entry of default would lead to a harsh result or to the entry of a large money judgment." *See Sony Corp.*, 800 F.2d at 320 (citing *Phillips v. Weiner*, 103 F.R.D. 177, 179, 182 (D. Me.1984); *Horn v. Intelectron Corp.*, 294 F. Supp. 1153, 1154–55 (S.D.N.Y.1968)). However, the facts of the cases relied on by the Second Circuit are unlike the circumstances of the facts here. *See Phillips*, 103 F.R.D. at 182 ("Further, as Plaintiffs themselves point out, this is a very significant case involving kidnapping, robbery, rape, assault and battery, and a damage claim of $16,000,000"); *Horn*, 294 F. Supp. at 1154–55 (S.D.N.Y.1968) (motion for relief under both Rule 55(c) and Rule 60(b) and defendant raised both "respectable factual and legal defenses on the merits").

damages recoverable for being fraudulently induced to enter into a contract is distinct from contract damages. *See Cho v. Kalliagas*, No. 04-CV-3371 NGG/SMG, 2008 WL 924750, at *6 (E.D.N.Y. Apr. 4, 2008). Indeed, damages in a fraudulent inducement action represent the "loss suffered through th[e] inducement" distinct from damages recoverable for breach of contract. *Spinelli v. Nat'l Football League*, 903 F.3d 185, 211 (2d Cir. 2018). Here, if adopted, the R&R grants Plaintiff's motion as to liability only. (*See* DE 19.) In the event default is not vacated here, the Defendant would be able to participate in the written submissions and any resulting evidentiary hearing to ensure that the damages sought by Plaintiff are those stemming from the fraudulent inducement, rather than the breach recoverable by Plaintiff in its arbitration action. For these reasons, it is respectfully recommended that the Court find that while Plaintiff may not have identified prejudice, the Defendant has not demonstrated that equitable factors outweigh the Defendant's willfulness of default and failure to present a meritorious defense such that the Court should vacate default.

### III. CONCLUSION

Based on the foregoing, the undersigned respectfully recommends that Defendant's motion to vacate the certificate of default be DENIED.

### IV. OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel for Plaintiff. Plaintiff is directed to serve a copy of this Report and Recommendation on Defendant via first-class mail and via email and promptly file proof of service on ECF. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district

judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated: Central Islip, New York
October 3, 2022

**S O  O R D E R E D**

/s/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge